## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, LUKE LOE, RICHARD ROE, and MARY MOE, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> *v.* <br><br> THE TRUMP CORPORATION, DONALD J. TRUMP, in his personal capacity, DONALD TRUMP JR., ERIC TRUMP, and IVANKA TRUMP, <br><br> *Defendants*. | No. 18 Civ. 9936 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM

Roberta A. Kaplan, Esq.
John C. Quinn, Esq.
Joshua Matz, Esq.
Alexander J. Rodney, Esq.
Matthew J. Craig, Esq.

KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Telephone: (212) 763-0883
Facsimile: (212) 564-0883


Katherine Rosenfeld, Esq.
Andrew G. Celli, Jr., Esq.
Matthew D. Brinckerhoff, Esq.
O. Andrew F. Wilson, Esq.

EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue at Rockefeller Center
New York, NY 10020
Telephone: (212) 763-5000


*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 3

    A.    President Trump's Campaign Against Class Representative Plaintiff Tarla Makaeff ....................................................................................................................... 3

    B.    President Trump's Onslaught Against Plaintiff Marvin Roffman ......................... 4

    C.    President Trump's Supporters Target Trump Critics with Threats and Bombs ..................................................................................................................... 5

ARGUMENT ..................................................................................................................... 7

    A.    The Risks to Plaintiffs and Their Families Strongly Favor Allowing Plaintiffs to File This Case Using Pseudonyms ................................................. 9

        1.    Identification Poses a Risk of Retaliatory Mental and Physical Harm to Plaintiffs ................................................................................... 9

        2.    Identification of the Plaintiffs Poses Other Identifiable Harms ............... 12

    B.    The Concerns of Stigma and "Minority" Status that Arise in Suits Against the Government Apply Here ................................................................. 14

    C.    There Is No Prejudice to Defendants If Plaintiffs Use Pseudonyms ................... 15

    D.    Plaintiffs Have Taken Steps to Keep Their Identities Confidential ..................... 16

    E.    Disclosure of Plaintiffs' Names Does Not Advance the Public Interest ............. 17

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Balance Studio, Inc.* v. *Cybernet Ent., LLC*,
204 F. Supp. 3d 1098 (N.D. Cal. 2016) ........................................................................ 18

*Corley* v. *Vance*,
No. 15 Civ. 1800, 2015 WL 4164377 (S.D.N.Y. June 22, 2015) .................................... 16

*Doe No. 2* v. *Kolko*,
242 F.R.D. 193 (E.D.N.Y. 2006) .............................................................................. 9, 14

*Doe* v. *Bridgeport Police Dep't*,
198 F.R.D. 325 (D. Conn. 2001) .................................................................................. 11

*Doe* v. *City of Indianapolis, Ind.*,
No. 12. Civ. 62, 2012 WL 639537 (S.D. Ind. Feb. 27, 2012) ....................................... 11

*Doe* v. *City of New York*,
No. 15 Civ. 117 (S.D.N.Y.) .......................................................................................... 16

*Doe* v. *Delta Airlines, Inc.*,
310 F.R.D. 222 (S.D.N.Y. 2015) ................................................................................ 16

*Doe* v. *Fedcap. Rehab. Services, Inc.*,
No. 17 Civ. 8220, 2018 WL 2021588 (S.D.N.Y. Apr. 27, 2018) .................................... 16

*Doe* v. *Pittsylvania County, Va.*,
844 F. Supp. 2d 724 (W.D. Va. 2012) .......................................................................... 18

*Doe* v. *Stegall*,
653 F.2d 180 (5th Cir. 1981) ........................................................................................ 11

*Does I thru XXIII* v. *Advanced Textile Corp.*,
214 F.3d 1058 (9th Cir. 2000) ..................................................................................... 11

*EW* v. *New York Blood Ctr.*,
213 F.R.D. 108 (E.D.N.Y. 2003) ................................................................................. 14

*Grottano* v. *City of New York*,
No. 15 Civ. 9242, 2016 WL 2604803 (S.D.N.Y. Mar. 30, 2016) .................................. 15

*L.H.* v. *Schwarzenegger*,
No. 06 Civ. 2042, 2007 WL 662463 (E.D. Cal. Feb. 8, 2007) ....................................... 12

Page(s)

*Makaeff* v. *Trump University, LLC,*
    No. 10 Civ. 940 (S.D. Cal.)...............................................................................3, 4, 10, 11

*Plaintiffs # 1-21* v. *Cty. of Suffolk,*
    138 F. Supp. 3d 264 (E.D.N.Y. 2015) ........................................................... 9, 11

*Roffman* v. *Trump,*
    754 F. Supp. 411 (E.D. Pa. 1990) ..................................................................5, 17

*Sealed Plaintiff* v. *Sealed Defendant,*
    537 F.3d 185 (2d Cir. 2008)...........................................................................8, 9, 10

## Other Authorities

Allie Malloy et al., *Trump mocks Christine Blasey Ford's testimony, tells people to 'think of your son,'* CNN (Oct. 3, 2018), https://www.cnn.com/2018/10/02/politics/ trump-mocks-christine-blasey-ford-kavanaugh-supreme-court/index.html .......................6

Benjamin P. Edwards, *When Fear Rules in Law's Place: Pseudonymous Litigation As A Response to Systematic Intimidation*, 20 Va. J. Soc. Pol'y & L. 437 (2013) .................. 13

Dan Mangan, *Kevin Breuninger, Judge in Paul Manafort trial says he has been threatened and is now under US Marshal protection*, CNBC (Aug. 17, 2018), https://www.cnbc.com/2018/ 08/17/judge-in-paul-manafort-trial-said-hes-been-threatened.html................................................................................................................ 5

Daniel J. Solove, *The Future of Reputation: Gossip, Rumor and Privacy on the Internet* (2007), *available at* http://scholarship.law.gwu.edu/cgi/viewcontent.cgi? article=2081&context= faculty_publications ................................................. 13

Eliza Relman, *The 22 Women Who Have Accused Trump of Sexual Misconduct*, Business Insider (Sept. 26, 2018), https://www.businessinsider.com/women-accused-trump-sexual-misconduct-list-2017-12............................................................ 14

Emily Birnbaum, *Christine Blasey Ford still unable to live at home due to death threats, lawyers say*, The Hill (Oct. 7, 2018), https://thehill.com/homenews/senate/ 410340-christine-blasey-ford-still-unable-to-live-at-home-due-to-death-threats............. 7

Frances Stead Sellers, *How 'thin-skinned' Donald Trump uses insults, threats and lawsuits to quiet critics*, Washington Post (July 14, 2016), https://www.washingtonpost.com/politics/how-thin-skinned-donald-trump-uses-insults-threats-and-lawsuits-to-quiet-critics/2016/07/14/252ae148-1b83-11e6-8c7b-6931e66333e7_story.html............................................................................ 4, 5

iii

**Page(s)**

Jayne S. Ressler, *#worstplaintiffever*: *Popular Public Shaming and Pseudonymous Plaintiffs*, 84 Tenn. L. Rev. 779, 801 (2017) ............................................................ 12, 13

Jeff Mordock, *Manafort Trial Judge Says He Has Received Threats*, Washington Times (Aug. 17, 2018), https://www.washingtontimes.com/news/2018/aug/17/manafort-trial-judge-says-hes-received-threats/ ................................................................................. 6

Michael Isikoff, *Trump is accused of financially threatening woman during secret deposition*, Yahoo News (Feb. 19, 2016), https://www.yahoo.com/news/trump-is-accused-of-financially-threatening-woman-170253552.html............................................. 3

Michael Kruse, *The Man Who Beat Donald Trump*, Politico Magazine (Apr. 25, 2016), https://www.politico.com/magazine/story/2016/04/donald-trump-marvin-roffman-casino-lawsuit-213855?o=0 ............................................................................. 5

Stavros Agorakis, *A list of everyone who's been sent a pipe bomb so far — that we know of*, Vox (Oct. 26 2018), https://www.vox.com/2018/10/25/18022376/pipe-bomb-targets-packages-democrats-clinton-obama-soros-de-niro .................................................. 7

William K. Rashbaum et al., *Outspoken Trump Supporter in Florida Charged in Attempted Bombing Spree, N.Y. Times* (Oct. 26, 2018), https://www.nytimes.com/2018/10/26/nyregion/cnn-cory-booker-pipe-bombs-sent.html.......................................... 7

Written Testimony of Dr. Christine Blasey Ford, U.S. Sen. Jud. Comm. (Sept. 26, 2018), *available at* https://sc.cnbcfm.com/applications/cnbc.com/resources/editorialfiles/2018/09/26/Ford-Testimony-2018-09-26.pdf.................................................................. 6

Plaintiffs Jane Doe, Luke Loe, Richard Roe, and Mary Moe ("Plaintiffs"), by their undersigned attorneys, respectfully submit this memorandum of law in support of their motion for leave to proceed under pseudonyms, until such time as the Court may order their names to be disclosed.[1]

## PRELIMINARY STATEMENT

Even for the most sophisticated and well-resourced adversaries, filing suit to hold the President of the United States accountable for breaking the law is a perilous decision. The current President, Donald J. Trump, has a documented history of wielding his wealth, stature, and Twitter account to attack people whom he perceives to be his enemies, including people who file lawsuits against him. That has been true for decades, and it has remained true since he was elected to a position that affords him the largest bully pulpit on the planet. But the threat to Plaintiffs here now extends far beyond President Trump's own tweets or rallies. In the current environment, President Trump's political followers instantly unleash harassment, verbal assaults, cyberattacks, and even death threats against anyone who dares to challenge him—whether politically or in a court of law. Only last week, as is well known, several prominent critics of President Trump were targeted with pipe bombs. In this volatile climate, those who sue President Trump over sensitive subjects face a clear and present danger of retaliation. So, too, do their friends and families. This risk is especially grave for plaintiffs who are economically marginalized, who allege that they were personally betrayed by President Trump, and who claim

---

[1] The only relief being sought pursuant to this motion is permission for Plaintiffs to proceed under pseudonyms until such time as the Court may order Plaintiffs' names to be disclosed. Obviously, if this motion is granted, issues will subsequently arise regarding who has knowledge of Plaintiffs' identities and at what stage in the case. Counsel for Plaintiffs intend to meet and confer about these issues with counsel for Defendants and to bring disputes (if any) to the Court for resolution as appropriate.

that President Trump is responsible for executing a massive consumer fraud to shore up his depleted fortune.

Plaintiffs here are a hospice worker, a self-employed formerly homeless man, a food delivery driver, and a mother of three who works at a national retail store. They bring this putative class action on behalf of themselves and thousands of others who were systematically defrauded by President Trump, his family, and the corporations that bear their name. In short, Plaintiffs allege that Defendants—including President Trump—knowingly engaged in a decade-long, illegal scheme. Pursuant to this scheme, Defendants defrauded vulnerable Americans into giving up hundreds or thousands of dollars to participate in certain purported "business opportunities" and "training programs," all based on a series of lies that Defendants peddled while secretly being paid millions of dollars for their endorsements.

If Plaintiffs' identities are made public, they and their families will undoubtedly be exposed to crushing mental, economic, and professional harm—whether by President Trump, his supporters, or both. Indeed, in light of recent events, it is also likely that Plaintiffs and their families will face credible threats of violence (or actual violence) if they are revealed to the world as litigants against President Trump.

The law does not require victims of wrongdoing to endanger themselves, or to set their lives ablaze, as a condition of holding the powerful to account. To the contrary, in cases like this, courts balance all relevant interests—those of the plaintiffs, the defendants, and the public—and hold that plaintiffs may proceed under pseudonyms. Simply stated, publicly revealing Plaintiffs' identities would needlessly put them at grave risk of harm. Defendants, on the other hand, will suffer no prejudice at this stage of the litigation from not knowing Plaintiffs' names. And the public interest is best achieved by preserving anonymity, which will allow these important

claims to be evaluated on the merits, rather than distorted by a campaign to intimidate and harm Plaintiffs.

## STATEMENT OF FACTS

President Donald J. Trump has a long history of retaliating against anyone who has the temerity to sue him. Indeed, public humiliation and attacks are hallmarks of his approach to litigation. "Trump has made little secret of his inclination to strike back hard—on the campaign trail and in the courts—against anybody who opposes him."[2] President Trump's agents and supporters have joined these extra-legal efforts, unleashing a tsunami of negative consequences against anyone who litigates against, or criticizes, President Trump. The tendency of President Trump and his agents and supporters to lash out against litigants and critics has only intensified since Trump assumed the Presidency. Just in the past week, several public critics of President Trump have received pipe bombs in the mail from a man reported to be one of his supporters.

The following are examples of what has happened to plaintiffs who have sued President Trump in other cases or challenged him in the public sphere.

### A. President Trump's Campaign Against Class Representative Plaintiff Tarla Makaeff

In 2010, years before Trump ran for President, a woman named Tarla Makaeff filed a federal class action fraud lawsuit against the now-defunct Trump University ("TU"). Makaeff alleged that she and thousands of other student-victims like herself were scammed into paying up exorbitant fees for TU seminars in hotel ballrooms and for "mentoring" by Trump's "handpicked" real estate experts. *See Makaeff* v. *Trump University, LLC*, No. 10 Civ. 940 (S.D. Cal.) ("*Makaeff* Dkt."), ECF No. 1. After Makaeff filed suit, Trump bombarded Makaeff with

---

[2] Michael Isikoff, *Trump is accused of financially threatening woman during secret deposition*, Yahoo News (Feb. 19, 2016), https://www.yahoo.com/news/trump-is-accused-of-financially-threatening-woman-170253552.html.

vituperative personal attacks on the national stage, calling her a "horrible, horrible witness," *id.*, ECF No. 462-2 at 2, and tweeting that she was "Disgraceful!"[3] Less than a month after she filed her lawsuit, Trump "slapped" Makaeff with a million-dollar counterclaim. *Id.*, ECF No. 4. That suit was later rejected by a federal judge, who ordered Trump to pay Makaeff $800,000 in legal bills. *See id.*, ECF No. 404.

In 2016, as a result of these attacks, Makaeff formally sought to withdraw from the suit as a named plaintiff, citing the intense media attention on the case drawn by Trump's celebrity, the public barbs from Trump and his agents and followers, her credible and well-justified fear of continuing retaliation, and the resulting enormous personal strain and toll on her by virtue of her status as a publicly named plaintiff. *Id.*, ECF No. 443. In her motion, Makaeff's lawyers noted: "Makaeff cannot match, or even scratch, Trump's pulpit. For years, Trump has tried his case in the press through a website and taunting media quotes." *Id.*, ECF No. 443-1. The district court subsequently granted Makaeff's motion to withdraw as a class representative. *Id.*, ECF No. 472.

### B.    President Trump's Onslaught Against Plaintiff Marvin Roffman

Former TU customer Makaeff is not the only plaintiff to suffer retaliation after filing a lawsuit against Trump. Marvin Roffman, an investment analyst who also sued Trump before he became President, faced similar attacks. In that lawsuit, Roffman publicly questioned Trump's investment in the Taj Mahal casino in Atlantic City and (correctly) predicted its failure. In response, Trump unleashed a fury of personal attacks on Roffman, including disparaging comments about Roffman's professional abilities and personal integrity. The situation became so

---

[3] *See* Frances Stead Sellers, *How 'thin-skinned' Donald Trump uses insults, threats and lawsuits to quiet critics*, Washington Post (July 14, 2016), https://www.washingtonpost.com/politics/how-thin-skinned-donald-trump-uses-insults-threats-and-lawsuits-to-quiet-critics/2016/07/14/252ae148-1b83-11e6-8c7b-6931e66333e7_story.html.

bad that Roffman took the step of suing Trump for defamation and for damaging his business

relationships. *See Roffman* v. *Trump*, 754 F. Supp. 411 (E.D. Pa. 1990). Although Trump

eventually settled on favorable terms to Roffman, Roffman described the impact of suing Trump

as life-changing: "Roffman, who estimates that his legal costs were 'in the seven figures,'

described the emotional impact as 'horrendous. . . . It really affects your mental health,' he

said."[4] Decades later, he was quoted as saying:

> "If you have a brand that strong, associated with success, power
> and class, that brand name must never be tarnished, ever,"
> Roffman told me, attempting to explain Trump's motive for trying
> to ruin the life and reputation of a person he knew was right. "You
> must defend it. You must protect it. I was the monkey wrench in
> the gears. I was the monkey wrench threatening the integrity of the
> brand."[5]

### C.    President Trump's Supporters Target Trump Critics with Threats and Bombs

In addition to the threats and harassment from President Trump himself, many outspoken

Trump critics have become victims of attacks by President Trump's supporters. There is an

extensive public record of threats, acts of online retaliation, and other forms of severe harassment

from supporters who act to intimidate those who are cast as the President's enemies.

For example, Judge T.S. Ellis—who presided over the fraud trial of President Trump's

past campaign chairman, Paul Manafort—said earlier this year "that he has received threats

about the case—and now travels with protection from the U.S. Marshal Service."[6] Judge Ellis

---

[4] Frances Stead Sellers, *How 'thin-skinned' Donald Trump uses insults, threats and lawsuits to quiet critics*, Washington Post (July 14, 2016).

[5] Michael Kruse, *The Man Who Beat Donald Trump*, Politico Magazine (Apr. 25, 2016), https://www.politico.com/magazine/story/2016/04/donald-trump-marvin-roffman-casino-lawsuit-213855?o=0.

[6] Dan Mangan, *Kevin Breuninger, Judge in Paul Manafort trial says he has been threatened and is now under US Marshal protection*, CNBC (Aug. 17, 2018), https://www.cnbc.com/2018/08/17/judge-in-paul-manafort-trial-said-hes-been-threatened.html.

denied a request brought by a coalition of news outlets to unseal the names and addresses of jurors, citing these threats against him, and stating that he feared for the "peace and safety" of the jurors. When denying the request to unseal the names of the jurors, Judge Ellis stated, "I have no reason to believe that if those names are unsealed there won't be threats against them."[7]

One high-profile challenger to President Trump's agenda, Dr. Christine Blasey Ford, has publicly detailed the trauma she endured as a result of testifying against the appointment of President Trump's Supreme Court nominee. In her prepared remarks before the Senate Judiciary Committee, Dr. Ford described both public support and a violent backlash against her. "[M]y greatest fears have been realized," she testified,

> and the reality has been far worse than what I expected. My family and I have been the target of constant harassment and death threats. I have been called the most vile and hateful names imaginable. These messages, while far fewer than the expressions of support, have been terrifying to receive and have rocked me to my core. People have posted my personal information on the internet. This has resulted in additional emails, calls, and threats. My family and I were forced to move out of our home. Since September 16, my family and I have been living in various secure locales, with guards. This past Tuesday evening, my work email account was hacked and messages were sent out supposedly recanting my description of the sexual assault.[8]

Dr. Ford was subsequently the victim of public taunts by President Trump himself, as he sought to undermine her credibility in advance of the vote on Justice Kavanaugh.[9] And on

---

[7] Jeff Mordock, *Manafort Trial Judge Says He Has Received Threats*, Washington Times (Aug. 17, 2018), https://www.washingtontimes.com/news/2018/aug/17/manafort-trial-judge-says-hes-received-threats/.

[8] Written Testimony of Dr. Christine Blasey Ford, U.S. Sen. Jud. Comm., at 7 (Sept. 26, 2018), *available at* https://sc.cnbcfm.com/applications/cnbc.com/resources/editorialfiles/2018/09/26/Ford-Testimony-2018-09-26.pdf.

[9] Allie Malloy et al., *Trump mocks Christine Blasey Ford's testimony, tells people to 'think of your son*,' CNN (Oct. 3, 2018), https://www.cnn.com/2018/10/02/politics/trump-mocks-christine-blasey-ford-kavanaugh-supreme-court/index.html.

October 7, 2018, three weeks after her testimony, Dr. Ford's attorney told NBC news that

Dr. Ford had still not been able to return to her home. "Her family has been through a lot," Debra

Katz reported. "They are not living at home. It's going to be quite some time before they're able

to live at home. The threats have been unending. It's deplorable."[10]

The latest—and most disturbing—example of the dangers to those who are involved in

high-profile challenges to President Trump has been the mailing of pipe bombs. On October 26,

2018, a man reported to an outspoken supporter of President Trump, Cesar Altieri Sayoc Jr., was

arrested and charged "with sending explosive packages to at least a dozen of the president's

critics."[11] More than a dozen pipe bombs were mailed to outspoken critics of President Trump,

including: New Jersey Senator Cory Booker; former director of National Intelligence James

Clapper; George Soros; former CIA director John Brennan; former Attorney General Eric

Holder; U.S. Representative Maxine Waters; actor and prominent Democrat, Robert De Niro;

former Vice President Joe Biden; and former Presidents and First Ladies Barack and Michelle

Obama and Bill and Hillary Clinton.[12] These explosive devices are an extreme example of the

very real dangers inherent in publicly challenging President Trump and his agenda.

### ARGUMENT

Although Federal Rule of Civil Procedure 10(a) provides that the "title of the complaint

must name all the parties," courts have "approved of litigating under a pseudonym in certain

---

[10] Emily Birnbaum, *Christine Blasey Ford still unable to live at home due to death threats, lawyers say*, The Hill (Oct. 7, 2018), https://thehill.com/homenews/senate/410340-christine-blasey-ford-still-unable-to-live-at-home-due-to-death-threats.

[11] William K. Rashbaum et al., *Outspoken Trump Supporter in Florida Charged in Attempted Bombing Spree, N.Y. Times* (Oct. 26, 2018), https://www.nytimes.com/2018/10/26/nyregion/cnn-cory-booker-pipe-bombs-sent.html.

[12] Stavros Agorakis, *A list of everyone who's been sent a pipe bomb so far — that we know of*, Vox (Oct. 26 2018), https://www.vox.com/2018/10/25/18022376/pipe-bomb-targets-packages-democrats-clinton-obama-soros-de-niro.

circumstances" in order to protect plaintiffs appearing in federal court. *Sealed Plaintiff* v. *Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008). In deciding whether a plaintiff may be allowed to maintain an action under a pseudonym, "the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id*. This is a "factor-driven balancing inquiry [that] requires a district court to exercise its discretion in the course of weighing competing interests." *Id*. at 190.

The Second Circuit has set forth a list of ten non-exhaustive factors that courts may consider in determining whether to permit a plaintiff to proceed pseudonymously:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature;
>
> (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;
>
> (3) whether identification presents other harms and the likely severity of those harms;
>
> (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of the plaintiff's age;
>
> (5) whether the suit is challenging the actions of the government or that of private parties;
>
> (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated;
>
> (7) whether the plaintiff's identity has thus far been kept confidential;
>
> (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;
>
> (9) whether, due to the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10) whether there are any alternative mechanisms for protecting
the confidentiality of the plaintiff.

*Id.* (internal quotation marks, citations, brackets, and ellipses omitted).

Courts are "not required to list each of the factors or use any particular formulation as

long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Id*. at

191 n.4. The same non-exhaustive list of factors governs analysis of anonymity in class action

litigation. *See Plaintiffs # 1-21* v. *Cty. of Suffolk*, 138 F. Supp. 3d 264, 270-71 (E.D.N.Y. 2015).

Here, all of the relevant factors strongly weigh in favor of granting Plaintiffs' motion to

file this case using pseudonyms.

### A.  The Risks to Plaintiffs and Their Families Strongly Favor Allowing Plaintiffs to File This Case Using Pseudonyms

The Second Circuit's multi-factor list begins with three factors that concern potential

harms to plaintiffs (and others) if their identities are disclosed. *See Sealed Plaintiff*, 537 F.3d at

189. In particular, the second and third factors militate strongly in favor of Plaintiffs here.[13]

### 1.  Identification Poses a Risk of Retaliatory Mental and Physical Harm to Plaintiffs

Plaintiffs easily satisfy the second, and arguably the most important factor in this group:

whether identification poses a risk of retaliatory physical or mental harm to the party seeking to

proceed anonymously—or poses such a risk to innocent non-parties. *See id*. As discussed above,

this lawsuit is being filed in an unprecedented climate of vitriol and violence against critics of

---

[13] The first factor is neutral. This case does not require Plaintiffs to reveal details that courts have deemed particularly sensitive. *See Doe No. 2* v. *Kolko*, 242 F.R.D. 193, 196 (E.D.N.Y. 2006) (collecting cases granting anonymity in cases involving abortion, sexual assault, sexual orientation, or AIDS status). But the case does reveal details about the financial status of economically marginalized people. Indeed, Plaintiffs' limited resources are exactly what made them targets of Defendants in the first place.

President Trump. Plaintiffs themselves face a serious risk of retaliatory mental and even physical harm if their identities are made public. Public disclosure also could result in harm to "innocent non-parties," *Sealed Plaintiff*, 537 F.3d at 190, such as family members of Plaintiffs who live with them and would be exposed to the media glare.

Named plaintiffs in other suits against President Trump have for many years faced threats, public backlash, intimidation, and reprisals. *See supra* at 3-7. Plaintiffs here are rightfully concerned that they will experience the same. Litigants against and critics of President Trump have been, among other things, attacked online and in the press, verbally and physically assaulted, threatened with physical harm, and forced to flee their homes and take refuge with friends or family to avoid public harassment.

In a different federal consumer class action filed by individuals who alleged that they were defrauded by President Trump, Judge Curiel granted a class representative permission to *withdraw* as a named plaintiff in 2016 because she could no longer bear the retaliation and other consequences of being publicly named in the suit. *See Makaeff* Dkt., ECF No. 472. In so ruling, Judge Curiel stated:

> Makaeff has undoubtedly suffered stress as a result of this litigation well before now, not least because of the $1 million counterclaim filed against her that was pending from 2010 until 2014. But Defendants' assertion that Makaeff anticipated in 2011 the degree to which this case would attract public attention due to the 2016 presidential campaign is risible. Neither pundits, counsel, or the parties anticipated the media obsession that this case would create due to Defendant Trump becoming a candidate for President of the United States. It is also plain that with every additional candidates' debate and state primary, the attention given to the case has grown.
>
> ***
>
> While Makaeff's request to withdraw at the pre-trial stage is unusual, so is the unforeseen degree of attention this case has

> engendered at the present stage of the litigation. Nor, given the
> degree of public scrutiny to which Makaeff has been recently
> subjected, is her apprehension that experiencing further publicity
> as a named plaintiff would have a negative impact on her
> professional prospects unreasonable.

*Id.* at 12-13.

Obviously, the same concerns and analyses apply with equal force here. Plaintiffs are at risk of an onslaught of harassment, mental harm, cyberattacks, and real-world violence because they have sued President Trump for his business frauds. As did Makaeff in the class action against TU, Plaintiffs face a legitimate risk to their well-being, privacy, and safety in this case because of the broader social and political context in which it is filed.

Courts have not hesitated to allow class representatives to proceed anonymously where they have a credible fear of retaliation based on broader social and political context. *See Plaintiffs # 1-21*, 138 F. Supp. 3d at 274 (noting that credible fear of retaliation by police officers in a class action alleging racial discrimination in policing justified anonymity); *Doe* v. *Bridgeport Police Dep't*, 198 F.R.D. 325, 328 n.1, 332-34 (D. Conn. 2001) (granting motion for class certification with anonymous lead plaintiffs).

Notably, the feared retaliation need not be by the defendant itself; fear of retaliation from third parties who support the defendant can justify anonymity as well. *See, e.g.*, *Does I thru XXIII* v. *Advanced Textile Corp.*, 214 F.3d 1058, 1070 (9th Cir. 2000) (noting that, even in class actions, plaintiffs may proceed anonymously "to protect themselves from retaliation by third parties"); *Doe* v. *Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (reversing denial of leave to proceed anonymously where "[e]vidence on the record indicates that the Does may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed to a . . . community hostile to the viewpoint reflected in plaintiffs' complaint"); *Doe* v. *City of Indianapolis, Ind.*, No.

11

12 Civ. 62, 2012 WL 639537, at *2 (S.D. Ind. Feb. 27, 2012) (fear of retaliation by members of public who supported policy being challenged supported anonymity). And in demonstrating the reasonableness of their fears of retaliation, plaintiffs can rely on a history of similar retaliation against others. *See L.H.* v. *Schwarzenegger*, No. 06 Civ. 2042, 2007 WL 662463, at *16 (E.D. Cal. Feb. 8, 2007) (granting leave to proceed anonymously based on fears of retaliation, where fear was supported by other incidents of retaliation against those who criticized same entity).

Individuals who might harbor animosity towards critics of President Trump do not currently know Plaintiffs' identities. The only way that Plaintiffs' identities would become public is by the filing of this lawsuit without the protection that pseudonyms offer. Disclosure of Plaintiffs' identities would therefore massively increase the risks faced by Plaintiffs, including the risk that Defendants or third parties will injuriously retaliate against Plaintiffs for participating in this class action lawsuit.

## 2.   Identification of the Plaintiffs Poses Other Identifiable Harms

The third factor—whether identification presents other serious harms—also supports anonymity. If Plaintiffs are publicly identified, they are likely to face a barrage of online threats and harassment by President Trump and his supporters, as well as the possible hacking of their personal accounts. This suit risks harassment on a scale unimaginable to the typical litigant.

As a general matter, rapid technological advances are making the need for plaintiff pseudonymity even more compelling. *See* Jayne S. Ressler, *#worstplaintiffever*: *Popular Public Shaming and Pseudonymous Plaintiffs*, 84 Tenn. L. Rev. 779, 801 (2017). Social media spreads information faster than ever. The emergence of social media as a news source means that "consumers no longer have to seek out their news—it comes directly to them. Therefore, when a plaintiff files a suit using her real name, that plaintiff's identity and her claim can swiftly be

revealed to millions of people." *Id*. at 802-03. And attacks on the Internet are permanent. The Internet can be "a cruel historian."[14] "One of the chief drawbacks of Internet shaming is the permanence of its effects. . . . It's similar to being forced to wear a digital scarlet letter or being branded or tattooed. People acquire permanent digital baggage. They are unable to escape their past, which is forever etched into Google's memory." *Id.* at 808 (citation omitted). "Compounding the issue, modern technology has made it easier for non-parties to disseminate litigants' contact information and to encourage others to harass plaintiffs." Benjamin P. Edwards, *When Fear Rules in Law's Place: Pseudonymous Litigation As A Response to Systematic Intimidation*, 20 Va. J. Soc. Pol'y & L. 437, 439 (2013).

Technological advances do not change the dynamics in the vast majority of federal cases, where the threat of online harassment remains a theoretical possibility. That cannot be said here. It is a matter of public record that President Trump uses social media as a weapon against anyone he perceives as a threat. His supporters, operating under the anonymity that the Internet offers, often follow suit. It requires no speculation or imagination to say that if Plaintiffs' identities were disclosed, any online accounts they maintain would be overwhelmed with threatening and harassing messages, their addresses and other personal information would be widely distributed, and they would be forced to take burdensome measures to protect sensitive information from hackers.

---

[14] Daniel J. Solove, *The Future of Reputation: Gossip, Rumor and Privacy on the Internet* (2007), *available at* http://scholarship.law.gwu.edu/cgi/viewcontent.cgi?article=2081&context= faculty_publications.

### B. The Concerns of Stigma and "Minority" Status that Arise in Suits Against the Government Apply Here

The fourth and fifth factors of the Second Circuit's test—whether the plaintiffs are uniquely vulnerable and whether the suit challenges the actions of the government or of private parties—also favor anonymity. Typically, plaintiffs who challenge "governmental activity" have a "particularly strong" interest in proceeding anonymously because such plaintiffs "presumably represent[] a minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of [their] rights." *EW* v. *New York Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003). In addition, "the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant." *Id.*; *accord Doe No. 2*, 242 F.R.D. at 195.

Although this lawsuit challenges private conduct, the power differential between Plaintiffs and Defendants is no less than in a suit where minority interests challenge government actors. President Trump occupies the highest government office in the land and has not hesitated to speak from his bully pulpit against those who make claims of private misconduct. *See, e.g.*, Eliza Relman, *The 22 Women Who Have Accused Trump of Sexual Misconduct*, Business Insider (Sept. 26, 2018), https://www.businessinsider.com/women-accused-trump-sexual-misconduct-list-2017-12 (detailing public remarks Trump has made against women who have accused him of sexual misconduct). Moreover, President Trump's political position serves as an organizing force for his supporters, meaning Plaintiffs will face backlash from politically motivated third parties in a way that plaintiffs in suits against purely private actors do not.

In fact, Plaintiffs are even more at risk than the typical litigant who has filed suit against the government. Even where a private litigant challenging a government statute represents a minority interest, that litigant often has the backing of a broader constituency that shares the

litigant's political views and may seek to serve as a counterforce to the powerful interests that the litigant is challenging. Here, Plaintiffs' claims do not reflect any policy or ideological preferences around which other citizens have organized, but rather challenge an unlawful, fraudulent scheme that caused economic harm to a specific group of working-class individuals. Plaintiffs are the first to come forward to vindicate their rights.

In light of this posture, the fourth and fifth factors weigh in favor of allowing the use of pseudonyms.

### C.     There Is No Prejudice to Defendants If Plaintiffs Use Pseudonyms

Protecting Plaintiffs by allowing their use of pseudonyms in no way prejudices Defendants, and thus the sixth factor weighs in Plaintiffs' favor. The Complaint sets forth the factual basis for Plaintiffs' claims in great detail, and this case turns on Defendants' systematic distribution of a fraudulent message to thousands of people linked together only by their financial vulnerability and experience. Defendants did not know or care about the identities of the people they defrauded *then*, and have no real interest in exposing their identities *now*. Given Plaintiffs' comprehensive pleading, Defendants can (i) understand the allegations against them, (ii) make their own determination regarding the extent of their liability, (iii) undertake their own investigation about their decade-long fraudulent scheme, and (iv) take appropriate discovery from Plaintiffs (and other appropriate parties) about the matters at issue.

Indeed, we are at the very earliest stages of this case. Defendants' next step is to answer the complaint or move to dismiss, neither of which requires disclosure of Plaintiffs' identities. Any arguments regarding Defendants' need for additional information about Plaintiffs later in the case are, therefore, premature—and as noted above, can be dealt with in the ordinary course as this case proceeds. *See Grottano* v. *City of New York*, No. 15 Civ. 9242, 2016 WL 2604803, at *3 (S.D.N.Y. Mar. 30, 2016) (granting motion filed early in class action to permit lead plaintiffs

to proceed anonymously and rejecting defendants' argument about how use of pseudonyms might impact later stages of litigation).

This Court has routinely granted initial leave to file a complaint anonymously or pseudonymously while reserving the right to order disclosure of a plaintiff's identity at a later stage of litigation, suggesting that the standard for making the requisite showing is lower at the pleading stage. *See*, *e.g.*, *Doe* v. *Delta Airlines, Inc.*, 310 F.R.D. 222, 223 (S.D.N.Y. 2015) (denying motion to proceed pseudonymously at trial after having previously "granted Doe's *ex parte* motion for leave to file her Complaint under a pseudonym"); *Doe* v. *City of New York*, No. 15 Civ. 117 (S.D.N.Y.), ECF No. 24 at 8. ("Plaintiff's motion to proceed anonymously is GRANTED at this time and the Court authorizes Plaintiff to file the proposed Amended Complaint. However, Defendants may move to revisit the issue of Plaintiff's anonymity before the case proceeds to trial.").

### D.      Plaintiffs Have Taken Steps to Keep Their Identities Confidential

Yet another reason why Plaintiffs will almost certainly face substantial prejudice from disclosure is that their identities are not already known to the larger public. Indeed, Plaintiffs have not initiated the lawsuit in their own names, and they have not made any statements in the media. The seventh factor thus weighs in favor of granting Plaintiffs' motion. This is not a situation where Plaintiffs have already appeared in the press to discuss their claims, yet now seek anonymity in the court proceedings. *See Corley* v. *Vance*, No. 15 Civ. 1800, 2015 WL 4164377, at *9 (S.D.N.Y. June 22, 2015) (denying motion to proceed pseudonymously because the underlying facts were already a matter of public record); *Doe* v. *Fedcap. Rehab. Services, Inc.*, No. 17 Civ. 8220, 2018 WL 2021588, at *2 (S.D.N.Y. Apr. 27, 2018) (vacating order permitting plaintiff to proceed under pseudonym where plaintiff had already voluntarily disclosed the

16

sensitive issues plaintiff sought to keep secret in the case by participating in a news story to major news outlet). Instead, Plaintiffs are four individuals who lead private lives and have not held themselves out for public scrutiny.

### E. Disclosure of Plaintiffs' Names Does Not Advance the Public Interest

The eighth and ninth factors of the multi-prong test ask the Court to examine how granting anonymity to Plaintiffs impacts the public interest, and the tenth asks whether there are any alternative mechanisms for protecting Plaintiffs' confidentiality.

By filing a putative class action lawsuit that brings to light a pervasive fraud perpetrated by Defendants, Plaintiffs' suit furthers a significant public interest in enforcing consumer protections and seeking compensation for thousands of individuals. *See* Compl. ¶¶ 349-74. Defendants targeted the scheme's victims because they were inexperienced in financial and commercial matters *See* Compl ¶ 13. Those consumers then suffered considerable financial losses because of President Trump's actions and those of his family. By bringing this class action, Plaintiffs seek to vindicate important social and legal norms—and seek to do so on behalf of a group of individuals who may not otherwise be made whole.

The public's interest in this lawsuit is not furthered by requiring Plaintiffs to disclose their identities. "The public does not know the identity of most plaintiffs in class action lawsuits, yet these cases have provided invaluable information regarding various legal issues. Indeed, in the overwhelming number of cases it is not the plaintiff's name that is relevant to the public, but rather the specifics about the cause of action." Ressler, *supra*, at 823. There is no material difference to the public if Plaintiffs are identified by their actual names or by pseudonyms. The important public aspect of this cases concerns the issues involved—namely, a practice of fraud and self-enrichment by Defendants that harmed thousands of people—not the specific injured

victims raising these issues in court. *See Balance Studio, Inc.* v. *Cybernet Ent.*, *LLC*, 204 F. Supp. 3d 1098, 1102 (N.D. Cal. 2016) (business owner's anonymity would not obstruct public scrutiny of important issues in the case since there was nothing about owner's identity that made it critical to workings of justice to reveal her legal name).

The public has little legitimate interest in knowing the identity of a party suing if that party's identity has little or no bearing on the case itself. As one court has noted, "[i]f a plaintiff is granted leave to proceed using a fictitious name, the public is not denied its right to attend the proceedings or inspect the orders or opinions of the court on the underlying constitutional issue." *Doe* v. *Pittsylvania County, Va.*, 844 F. Supp. 2d 724, 728 (W.D. Va. 2012). The identities of the particular parties bringing this lawsuit are largely irrelevant to any legitimate public concern. Using a pseudonym here does not impact societal access to the workings of the judiciary.

Moreover, there are no alternative mechanisms for protecting Plaintiffs' identities. If Plaintiffs are required to use their actual names in this lawsuit, there is no doubt that they will be immediately publicly identified in the press and on the Internet, at their jobs and on social media, and subjected to retaliation. This is not a case where it would be sufficient to use a protective order to shield disclosure of certain confidential information, such as medical records. Here, harm to Plaintiffs will occur by the public disclosure of their names alone.

## CONCLUSION

Balancing all relevant factors, the unique circumstances outlined herein outweigh any interest that Defendants or the public may have in disclosure of Plaintiffs' identities. Plaintiffs have a legitimate and reasonable concern that they will face substantial retaliation, harassment, and even violence if their identities are publicly disclosed. The Court should grant Plaintiffs' motion and allow them to file this complaint using pseudonyms.

Dated: October 29, 2018                    Respectfully submitted,

                                           Roberta A. Kaplan, Esq.
                                           John C. Quinn, Esq.
                                           Joshua Matz, Esq.
                                           Alexander J. Rodney, Esq.
                                           Matthew J. Craig, Esq.

                                           KAPLAN HECKER & FINK LLP
                                           350 Fifth Avenue, Suite 7110
                                           New York, New York 10118
                                           Telephone: (212) 763-0883
                                           Facsimile: (212) 564-0883
                                           rkaplan@kaplanhecker.com
                                           jquinn@kaplanhecker.com
                                           jmatz@kaplanhecker.com
                                           arodney@kaplanhecker.com
                                           mcraig@kaplanhecker.com


                                           Katherine Rosenfeld, Esq.
                                           Andrew G. Celli, Jr., Esq.
                                           Matthew D. Brinckerhoff, Esq.
                                           O. Andrew F. Wilson, Esq.

                                           EMERY CELLI BRINCKERHOFF & ABADY LLP
                                           600 Fifth Avenue at Rockefeller Center
                                           New York, NY 10020
                                           Telephone: (212) 763-5000
                                           krosenfeld@ecbalaw.com
                                           acelli@ecbalaw.com
                                           mbrinckerhoff@ecbalaw.com
                                           awilson@ecbalaw.com


                                           *Attorneys for Plaintiffs*