UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE, LUKE LOE, RICHARD ROE, and MARY MOE, individually and on behalf of all others similarly situated,

                *Plaintiffs*,

              *v.*

THE TRUMP CORPORATION, DONALD J. TRUMP, in his personal capacity, DONALD TRUMP JR., ERIC TRUMP, and IVANKA TRUMP,

                *Defendants*.

No. 18 Civ. 9936

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM

Roberta A. Kaplan, Esq.
John C. Quinn, Esq.
Joshua Matz, Esq.
Alexander J. Rodney, Esq.
Matthew J. Craig, Esq.

KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Telephone: (212) 763-0883

Katherine Rosenfeld, Esq.
Andrew G. Celli, Jr., Esq.
Matthew D. Brinckerhoff, Esq.
O. Andrew F. Wilson, Esq.

EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue at Rockefeller Center
New York, NY 10020
Telephone: (212) 763-5000

*Attorneys for Plaintiffs*

December 14, 2018

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ....................................................................................................................................... 2

I.   DEFENDANTS ERR ON THE LAW AND IGNORE KEY FACTS IN CLAIMING "SPECULATIVE" RISK .............................................................................. 2

II.  PLAINTIFFS ARE NOT TYPICAL LITIGANTS IN A RUN-OF-THE-MILL DISPUTE ............................................................................................................ 6

III. DEFENDANTS ARE THE CAUSE OF ANY REAL PREJUDICE THEY MIGHT CLAIM ................................................................................................................ 7

IV.  PLAINTIFFS' EXISTING ANONYMITY CANNOT BE SET ASIDE ............................ 9

V.   DEFENDANTS RELY ON INAPT GENERALIZATIONS TO IDENTIFY A PUBLIC INTEREST IN PLAINTIFFS' NAMES ............................................................. 9

VI.  DEFENDANTS HAVE NO SUPPORT FOR THEIR *PER SE* CLAIM .......................... 10

CONCLUSION .................................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Doe* v. *Del Rio*,
  241 F.R.D. 154 (S.D.N.Y. 2006) ...................................................................................... 2

*Doe* v. *Fedcap Rehabilitation Services, Inc.*,
  No. 17 Civ. 8220, 2018 WL 2021588 (S.D.N.Y. Apr. 27, 2018) ..................................... 8

*Doe* v. *Kamehameha Schools/Bernice Pauahi Bishop Estate*,
  596 F.3d 1036 (9th Cir. 2010) ......................................................................................... 5

*Doe* v. *Pittsylvania County, Virginia*,
  844 F. Supp. 2d 724 (W.D. Va. 2012) ............................................................................. 4

*Doe* v. *Smith*,
  105 F. Supp. 2d 40 (E.D.N.Y. 1999) ............................................................................... 2

*EW* v. *New York Blood Ctr.*,
  213 F.R.D. 108 (E.D.N.Y. 2003) ................................................................................. 2, 6

*Grottano* v. *City of New York*,
  No. 15 Civ. 9242, 2016 WL 2604803 (S.D.N.Y. Mar. 30, 2016) .................................... 8

*Jane Doe* v. *Quest Diagnostics, Inc.*,
  No. 15 Civ. 8992 (S.D.N.Y. Mar. 3, 2016) ..................................................................... 7

*People* v. *Trump*,
  No. 451130/2018, 2018 WL 6166296 (Sup. Ct., N.Y. Cty., Nov. 21, 2018) ................... 4

*Plaintiffs # 1-21* v. *County of Suffolk*,
  138 F. Supp. 3d 264 (E.D.N.Y. 2015) ......................................................................... 7, 8

*Sealed Plaintiff* v. *Sealed Defendant*,
  537 F.3d 185 (2d Cir. 2008) ................................................................................... *passim*

*Shattil* v. *Donald J. Trump for President, Inc.*,
  No. 16 Civ. 2162 (S.D.N.Y.) ........................................................................................... 3

*T.W.* v. *N.Y. State Bd. of Law Examiners*,
  No. 16 Civ. 3029, 2017 WL 4296731 (E.D.N.Y. Sept. 26, 2017) ................................... 2

**OTHER AUTHORITIES**

*Ivanka Trump*, White House, https://www.whitehouse.gov/people/ivanka-trump/
 (last visited Dec. 13, 2018) ................................................................................................ 6

Jacob Pramuk, *Union Leader Who Called Out Donald Trump Says He's Getting Threats
 from Trump Supporters*, CNBC (Dec. 8, 2016), https://www.cnbc.com/
 2016/12/08/union-leader-who-called-out-donald-trump-says-hes-getting-
 threats-from-trump-supporters.html............................................................................... 3

**PRELIMINARY STATEMENT**

Plaintiffs filed this motion because of a genuine, reasonable fear that they will face brutal retaliation for suing Defendant Donald J. Trump. Plaintiffs' fears are based on the experience of other litigants who have sued President Trump and endured harassment, cyberattacks, and threats. Plaintiffs' fears are also grounded in many recent examples of vicious attacks against those seen as challenging President Trump's honesty. Defendants cannot deny any of the factual premises supporting Plaintiffs' position. Nor can they offer any reassurance that Plaintiffs' fear for their own safety (and that of their families) is misplaced. Instead, Defendants assert that these concerns are unduly speculative and warn against unleashing a tidal wave of pseudonymous suits against the President. Defendants also fault Plaintiffs for coming to court in the first place.

These responses are unconvincing on the merits and inadequate as a matter of law. Plaintiffs have set forth a detailed account of why anonymity is required to maintain their safety. In addition, they have identified relevant factors that set this case apart, including their vulnerable socio-economic position, their efforts to preserve anonymity, the early stage of the litigation, the irrelevance of their personal data to their allegations about Defendants' conduct, and the sensitive nature of their claims about President Trump's dishonesty (a subject known to inflame and infuriate some of his supporters). To address any concerns about possible prejudice to Defendants, Plaintiffs have already offered to share their identities with Defendants' counsel pursuant to a protective order. This step would address nearly all of Defendants' concerns, but Defendants have rejected it out of hand.

Applying *Sealed Plaintiff* v. *Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), this Court should protect Plaintiffs and their families. At bottom, *Sealed Plaintiff* is a balancing test. And here, the potential harm to Plaintiffs massively outweighs the hypothetical concerns raised by Defendants about their litigation tactics and the public's interest in Plaintiffs' names.

# ARGUMENT

## I. DEFENDANTS ERR ON THE LAW AND IGNORE KEY FACTS IN CLAIMING "SPECULATIVE" RISK

The second and third *Sealed Plaintiff* factors direct the Court's attention to whether Plaintiffs are at risk of physical, mental, or other harm should their identities be revealed. *See* 537 F.3d at 190. Defendants do not dispute that plaintiffs in other suits against Defendants have been subjected to threats, backlash, intimidation, and reprisal—occasionally by Defendants, but far more often (over the past two years) by Defendants' political supporters. (Pls. Mem. 3-7, 10-11.) Nor do they dispute that perceived public opponents of President Trump have been harassed, threatened, and targeted with violence. (*Id.*) Instead, offering cold comfort, Defendants insist that it is conjectural to claim that the same pattern will repeat here. This response falls flat.

*First*, Defendants assert that Plaintiffs' identities must be exposed to all the world because Plaintiffs explained their position through a motion, rather than in affidavits. (Opp. 8.) But that is not the law. *See, e.g.*, *T.W.* v. *N.Y. State Bd. of Law Examiner*s, No. 16 Civ. 3029, 2017 WL 4296731, at *4-*5 (E.D.N.Y. Sept. 26, 2017) (allowing pseudonyms based on "letter application"); *EW* v. *New York Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003) (allowing pseudonyms even though plaintiff made "no particularized showing of any specific harm or stigma to her caused by prosecuting the case under her own name").

The two cases on which Defendants rely (Opp. 9) do not say otherwise. In *Doe* v. *Smith*, the court allowed the plaintiff to proceed under a pseudonym after she presented affidavits from herself and a psychiatrist demonstrating that the "revelation of her identity will likely cause [intense] psychological and emotional pain." 105 F. Supp. 2d 40, 44-45 (E.D.N.Y. 1999). In *Doe* v. *Del Rio*, by contrast, the declaration from the plaintiff's therapist was insufficient because the declaration presented PTSD as "an inevitable consequence of litigation itself," and did not "link

2

[it to] public disclosure of plaintiff's name." 241 F.R.D. 154, 161 (S.D.N.Y. 2006) (emphasis omitted). Neither case described a sworn statement from the plaintiff as necessary—or even as important. Instead, each case focused on whether a plaintiff's submission, irrespective of form, supported the claim that public disclosure itself might expose that plaintiff to harm.

Here, the question is whether Defendants and/or their supporters might subject Plaintiffs to harassment, threats, cyberattacks, or physical harm upon revelation of their names. Plaintiffs do not have personal knowledge about whether that pattern would repeat here, and appropriately supported their motion by documenting past and ongoing instances in which similarly situated people have experienced such harms. No declarations from Plaintiffs are required.

*Second*, Defendants argue that if Plaintiffs are allowed to proceed under pseudonyms, everyone else suing President Trump will seek the same relief. (Opp. 10.) Not so. For one thing, the vast majority of cases involving President Trump involve issues unlikely to excite anybody's interest. *E.g.*, *Shattil* v. *Donald J. Trump for President, Inc.*, No. 16 Civ. 2162 (S.D.N.Y.) (dispute over alleged unauthorized use of a copyrighted image by President Trump's campaign).

Further, this case is unusual in many respects. One of the key issues here is whether President Trump tells the truth, or instead knowing lied to enrich himself at the expense of ordinary Americans. Unlike a standard regulatory, statutory, or constitutional case, it turns on assessments of his honesty and integrity—an issue with considerable political salience, and one known to spark backlash from his supporters. *See, e.g.*, Jacob Pramuk, *Union Leader Who Called Out Donald Trump Says He's Getting Threats from Trump Supporters*, CNBC (Dec. 8, 2016), https://www.cnbc.com/2016/12/08/union-leader-who-called-out-donald-trump-says-hes-getting-threats-from-trump-supporters.html. Plaintiffs' claims may therefore evoke a uniquely hostile response.

In addition, not all litigants are equally vulnerable to the risks involved in challenging the President in court. New York's Attorney General, for example, has sued each of the individual Defendants in this case for having "transacted business illegally and abusively over a number of years." *People* v. *Trump*, No. 451130/2018, 2018 WL 6166296, at *1 (Sup. Ct., N.Y. Cty., Nov. 21, 2018) (substantially denying defendants' motion to dismiss). But there is a world of difference between a state attorney general and the vulnerable plaintiffs in this litigation. Critically, Plaintiffs lack the resources to protect against any personal, professional, and cyber threats that may arise.

Finally, as discussed below, the early stage of the litigation, the irrelevance of Plaintiffs' personal information to decisions that must be made in the short-to-medium term, and Plaintiffs' efforts to preserve their anonymity all set this case apart from run-of-the-mill litigation.

*Third*, Defendants point to two out-of-circuit cases to demand a showing of extreme and imminent harm. But that is not what those cases require, and it is not what *Sealed Plaintiff* holds.

In *Doe* v. *Pittsylvania County, Virginia*, the plaintiff's opening evidence was the "'alarming history of violence and threats of violence against Establishment Clause plaintiffs.'" 844 F. Supp. 2d 724, 733 (W.D. Va. 2012). Moreover, the plaintiff's identity was "known to some [of her detractors], certainly to defendants, and there [was] no evidence" that she had received communications expressing similar threats. *Id.* at 735. That is why her motion to proceed under a pseudonym failed. While it is true that *Pittsylvania* discussed some other serious threats, the actual threats that Defendants quote in their brief here were all directed at the ACLU, "a high-profile national civil rights organization," not the plaintiff seeking anonymity. *Id. Pittsylvania* simply does not hold that threats of this kind must already have occurred to permit pseudonymous pleading by a private person. Defendants' reliance on it is misplaced.

4

*Doe* v. *Kamehameha Schools/Bernice Pauahi Bishop Estate*, 596 F.3d 1036 (9th Cir. 2010), involved many factors that are not present here. For one, the plaintiffs challenging the school's exclusionary admission policy had "conce[ded] that they [were] not fearful of retaliation and ostracism [at the school]." *Id.* at 1045 (quotation marks omitted). In addition, the magistrate judge had determined that "many of the 'threats' were accompanied by statements supporting non-violence," leading him to conclude that people might have said things on the internet that they had "no intention of carrying out." *Id.* Finally, *Kamehameha* is a textbook example of why the standard of review matters: the Ninth Circuit described the threats to the plaintiffs there as "undoubtedly severe" and identified "several facts militating in favor of a finding that the Doe children's fears are reasonable," but was constrained because it was reviewing only for abuse of discretion. *Id.* at 1044-45. The question presented here is how *this* Court will choose to exercise the discretion it possesses, not what qualifies as a reversible abuse of that discretion.

*Finally*, Defendants contend that Plaintiffs misunderstand the third *Sealed Plaintiff* factor. They claim that this factor concerns only whether a plaintiff will experience harm of the *exact type* "litigated against." (Opp. 16.) They add that because revealing Plaintiffs' identities will not cause Plaintiffs to re-experience consumer fraud, the factor "is plainly inapplicable." (*Id.*)

But *Sealed Plaintiff* makes clear that the third factor is a catch-all, instructing courts to consider "whether identification presents other harms and the likely severity of those harms, *including* whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity." 537 F.3d at 190 (emphasis added, quotation marks and citations omitted). Under Defendants' view, it would be legally irrelevant if President Trump's supporters announced highly detailed plans to hack Plaintiffs' computers to dig up dirt against them, empty their bank accounts, and steal their identities. Thankfully, the law does not require that the Court

blind itself to threats beyond an exact repeat of Defendants' RICO conspiracy. The threat of online retaliation by the President's supporters is relevant, and weighs in favor of granting Plaintiffs' motion. (*See* Pls. Mem. 12-13.)

## II. PLAINTIFFS ARE NOT TYPICAL LITIGANTS IN A RUN-OF-THE-MILL DISPUTE

The fourth and fifth *Sealed Plaintiff* factors concern Plaintiffs' susceptibility to harm, asking whether they are particularly vulnerable and whether their suit challenges government actions or private conduct. *See* 537 F.3d at 190. Defendants' principal response is that Plaintiffs cannot satisfy these factors because they are "merely pursuing a civil lawsuit for money damages based on prior, now-concluded commercial dealings." (Opp. 17.)

Defendants' view is overly formalistic. Plaintiffs who challenge governmental activity have a "particularly strong" interest in pseudonymity because such plaintiffs "represent[] a minority interest (and may be subject to stigmatization), and there is arguably a public interest in vindication of [their] rights." *EW*, 213 F.R.D. at 111. As Plaintiffs have explained, the circumstances of this case mirror those typically associated with a challenge to government conduct. (Pls. Mem. 14-15.) President Trump occupies the most powerful office in the world.[1] His responses to perceived opponents are amplified as a result. Moreover, his position serves to galvanize supporters, exposing Plaintiffs to harassment and threats from a constituency that would be absent from the prototypical private lawsuit. When it comes to Plaintiffs' exposure to harm—and the risks of stigmatization from challenging an official's conduct—this case is much closer to a suit against the government than it is a workaday consumer dispute.

---

[1] Defendants incorrectly state that "none of [President Trump's children] are government actors." (Opp. 18.) As Defendants know, Ivanka Trump serves as Advisor to the President. *See Ivanka Trump*, White House, https://www.whitehouse.gov/people/ivanka-trump/ (last visited Dec. 13, 2018).

Defendants also argue that Plaintiffs do not resemble the Latino immigrants who were granted anonymity in *Plaintiffs # 1-21* v. *County of Suffolk*, 138 F. Supp. 3d 264, 274 (E.D.N.Y. 2015). Fair enough, but so what? The Second Circuit has not limited the definition of particularly vulnerable persons to cover only certain classes. And here, Plaintiffs' economic marginalization, coupled with Defendants' media access and the unpredictability of the President's supporters, make Plaintiffs particularly vulnerable to the risks involved in litigating their claims. In fact, Plaintiffs' lawsuit alleges that they were vulnerable to Defendants' frauds precisely because they were working-class individuals, looking for economic opportunities, and not experienced in commercial and financial matters. (Compl. ¶¶ 13, 153, 185, 187, 201-02, 222, 284, 295.) These same facts—and the stark imbalance of power between the parties—counsel in favor of permitting Plaintiffs to use pseudonyms at this stage of their case.

## III.  DEFENDANTS ARE THE CAUSE OF ANY REAL PREJUDICE THEY MIGHT CLAIM

The sixth *Sealed Plaintiff* factor asks whether protecting a plaintiff through pseudonyms prejudices the defendant. *See* 537 F.3d at 190. Defendants claim that they will be placed at a major disadvantage. (Opp. 18-20.) But any prejudice they might experience now is self-imposed, and the specific disadvantages they cite are irrelevant at this stage of the litigation.

Plaintiffs have offered to meet and confer with Defendants about a protective order so that Defendants' counsel may obtain Plaintiffs' identities. (Joint Letter at 3, ECF No. 48.) Defendants have refused that offer. (*Id.*) In so doing, Defendants have rejected the very information they say they need, and now claim prejudice because they don't have it. That is no basis for denying this motion. *See* Order at 3, *Jane Doe* v. *Quest Diagnostics, Inc.*, No. 15 Civ. 8992 (S.D.N.Y. Mar. 3, 2016) (Schofield, *J.*) ("Defendants also will not be prejudiced because Plaintiff has consented to reveal her identity subject to a protective order.").

Defendants' claim of prejudice falls particularly flat at this early stage. *See id.* at 2 (allowing plaintiff to proceed anonymously "at least during the pre-trial phase of the litigation"). *Sealed Plaintiff* requires courts to consider whether "the nature of the prejudice (if any) differs at any particular stage of the litigation." 537 F.3d at 190. Here, where Defendants' next step is to serve discovery requests and challenge the pleadings through a motion to dismiss, Defendants will not be prejudiced if Plaintiffs' identities are subject to a protective order. *See Grottano* v. *City of New York*, No. 15 Civ. 9242, 2016 WL 2604803, at *3 (S.D.N.Y. Mar. 30, 2016).

Moreover, the specific disadvantages that Defendants recite are untethered to the realities of this case. Defendants first claim a lack of "settlement leverage" (Opp. 18.), but it is unclear why public knowledge of Plaintiffs' identities would be a necessary (or even a relevant) condition for productive settlement discussions. Defendants have considerable wealth and resources; if anything, they are far better equipped to hold out for a desirable settlement than Plaintiffs.[2] Defendants also claim that they would be deprived of the opportunity that an "unknown witness" will come forward. (Opp. 19.) But witness testimony cannot support a motion to dismiss—and Defendants' argument thus fails to account for the current status of this case. For purposes of discovery, an appropriately tailored protective order will permit Defendants' counsel to obtain documents about Plaintiffs that they deem important.

Finally, Defendants speculate that anonymous plaintiffs might lob accusations against defendants in a manner that they would avoid if their identities were public. But Defendants appeal only to generalized concerns that purportedly apply "*anytime* [a] plaintiff is allowed to

---

[2] Settlement was a concern mentioned in *Doe* v. *Fedcap Rehabilitation Services, Inc.*, No. 17 Civ. 8220, 2018 WL 2021588 (S.D.N.Y. Apr. 27, 2018), but was not key to the court's decision, and the specific language Defendants quote from that case is the court's description of the *defendant's argument*, not the court's reasoning. (Opp. 18.)

8

proceed anonymously." (Opp. 19.) They identify no ways in which Plaintiffs are "indulg[ing] their worst instincts in the way they litigate this case." (*Id.* at 21.)

## IV. PLAINTIFFS' EXISTING ANONYMITY CANNOT BE SET ASIDE

Defendants do not dispute that Plaintiffs satisfy the seventh factor, which asks whether a plaintiff's identity has remained confidential. *Sealed Plaintiff*, 537 F.3d at 190. Instead, they argue that the factor is "important only where the plaintiff is unable to satisfy it." (Opp. 20.) Defendants offer no authority for that counterintuitive position. And the fact remains that Plaintiffs have done everything possible to keep their names private.

## V. DEFENDANTS RELY ON INAPT GENERALIZATIONS TO IDENTIFY A PUBLIC INTEREST IN PLAINTIFFS' NAMES

The final three factors concern the harm to the public and whether there is any alternative mechanism for protecting Plaintiffs' confidentiality. *Sealed Plaintiff*, 537 F.3d at 190. Once again, Defendants' arguments fall short.

*First*, Defendants respond to the eighth factor by referring to "all of the policy reasons . . . that favor open court proceedings" and "the inherent unfairness [of pseudonymity] to the defendant in every case." (Opp. 20.) But the eighth factor asks whether, in the circumstances of a particular case, the "public's interest is furthered by" disclosure of the plaintiff's identity. *Sealed Plaintiff*, 537 F.3d at 190. Defendants err in treating the factor as if it universally favors defendants, and the particulars of this case make the factor weigh in Plaintiffs' favor.

Plaintiffs have filed a 160-page complaint that details the wide-ranging scheme that Defendants perpetrated over the course of a decade, and explains how Plaintiffs were caught up in it. The complaint goes much further than most in educating the public about what this case is about. Moreover, Plaintiffs allege Defendants' fraud was indiscriminate and had nothing to do with the specific identities of the victims. Defendants delivered a "common and consistent"

9

message to thousands of people as part of a common scheme to defraud class members. (Compl. ¶¶ 8, 87, 380.) The public has an interest in understanding how this fraud occurred, but Plaintiffs' names do little to advance their understanding. (*See* Pls. Mem. 17-18.)

*Second,* Defendants contend that the ninth factor, which asks whether the public interest is weaker because of the legal nature of the issues presented, weighs in their favor. *See Sealed Plaintiff*, 537 F.3d at 190. But, at this point, there is little reason to assume that the case turns on "plaintiffs' credibility and factual knowledge" (Opp. 21), rather than the legal effect of the fraudulent statements that Defendants indisputably made. And if anything, matters of credibility will be important only at a later stage of this litigation.

*Finally*, Defendants tacitly admit that there are no alternative mechanisms for protecting Plaintiffs' confidentiality, and instead belittle the notion that Plaintiffs should be protected at this stage if their names might be disclosed at "some future time." (Opp. 22.) But it is not uncommon for a litigant to proceed under pseudonym only during the early stages of a case. That Plaintiffs' anonymity might not be justified forever is no reason to deny it today.

## VI. DEFENDANTS HAVE NO SUPPORT FOR THEIR *PER SE* CLAIM

Defendants end their opposition where they started: by castigating Plaintiffs for filing a lawsuit against Defendants in the first place. (Opp. 22-23.) But the law does not obligate Plaintiffs to pursue other claims against other parties in private arbitration—and it certainly does not penalize them for not doing so. Plaintiffs have sued the parties responsible for defrauding them, in the only forum that is available. Defendants argue that this decision provides a *per se* basis for denying Plaintiffs' motion. There is no authority for this sweeping proposition.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' moving papers, the Court should grant Plaintiffs' motion to proceed under pseudonyms.

Dated: New York, New York
       December 14, 2018

Respectfully submitted,

*/s/ Roberta A. Kaplan*

Roberta A. Kaplan, Esq.
John C. Quinn, Esq.
Joshua Matz, Esq.
Alexander J. Rodney, Esq.
Matthew J. Craig, Esq.

KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Telephone: (212) 763-0883
rkaplan@kaplanhecker.com
jquinn@kaplanhecker.com
jmatz@kaplanhecker.com
arodney@kaplanhecker.com
mcraig@kaplanhecker.com


Andrew G. Celli, Jr., Esq.
Matthew D. Brinckerhoff, Esq.
O. Andrew F. Wilson, Esq.
Katherine Rosenfeld, Esq.

EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue at Rockefeller Center
New York, NY 10020
Telephone: (212) 763-5000
acelli@ecbalaw.com
mbrinckerhoff@ecbalaw.com
awilson@ecbalaw.com
krosenfeld@ecbalaw.com


*Attorneys for Plaintiffs*