# KAPLAN HECKER & FINK LLP

350 Fifth Avenue
Suite 7110
New York, NY 10118
(212) 763-0883
www.kaplanhecker.com

Direct Dial: (212) 763-0884
Direct Email: rkaplan@kaplanhecker.com

December 21, 2018

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *Doe* v. *The Trump Corporation*, No. 18 Civ. 9936

Dear Judge Schofield:

      We submit this letter on behalf of Plaintiffs in the above-referenced action in response to Defendants' December 10, 2018 letter concerning their anticipated motion to dismiss.

      ***Subject Matter Jurisdiction.*** Defendants lead with an argument that could only be relevant if the Court at some point dismissed all of Plaintiffs' RICO claims, and then declined to retain jurisdiction over Plaintiffs' remaining state law claims. Defendants do not address the possibility that, even in the absence of diversity and CAFA jurisdiction, the Court could properly retain jurisdiction over state law claims in their hypothetical scenario. *E.g.*, *N.Y. Transp., Inc.* v. *Naples Transp., Inc.*, 116 F. Supp. 2d 382, 390 (E.D.N.Y. 2000) (retaining jurisdiction over state law claims given, *inter alia*, burden of dismissal on plaintiffs and the "serious nature of plaintiffs' allegations"). Defendants' jurisdictional argument is also legally flawed. Defendants confine their argument to economic damages (ECF No. 50), ignoring the punitive damages that count toward the jurisdictional threshold. *See AFA Tours, Inc.* v. *Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991). Defendants also fail to consider that if thousands of class members experienced harm similar to Plaintiffs', economic damages alone could exceed CAFA's $5 million threshold.

      ***Puffery and Omissions.*** After a broad appeal to Rule 9(b)'s particularity requirements,[1] Defendants attempt to pass off all of the many specific misrepresentations alleged in the complaint as mere "puffery" that "could not have misled a reasonable investor" and that were "obviously so unimportant" as to be "immaterial as a matter of law." (Defs. Ltr. at 2.) But, as we noted during yesterday's conference, binding precedent is to the contrary. For instance, in *United States* v. *Autuori*, the Second Circuit found the evidence legally sufficient to convict an accountant for mail and wire fraud based on his efforts to promote a real estate venture.

---

[1] To the extent Defendants argue that the certain allegations are insufficient because not every misrepresentation is quoted, their argument misses the mark. *See Kalin* v. *Xanboo, Inc.*, 526 F. Supp. 2d 392, 401 (S.D.N.Y. 2007) (complaint satisfied Rule 9(b) because although it did "not provide direct quotations, it sufficiently specifie[d] the content of the fraudulent statements such that [the defendant could] identify the statements alleged to be misleading"). The same is true with respect to their argument about Plaintiffs' time and place allegations, *see id.*, which are pleaded in substantial detail in any event. (*See, e.g.,* Compl. ¶¶ 20-23, 153, 155-60, 168, 170, 177-78, 180, 187-91, 195, 197-99, 203-05, 207-08, 216, 222-226, 391, 403, 414, 444, 453.)

212 F.3d 105, 108 (2d Cir. 2000).  The accountant told investors that the financial forecasts for the investment were "good" and "credible," that the project was "safe," and that his firm "stood behind the numbers."  *Id.* at 118-19.  The Second Circuit rejected the argument that the accountant's statements were mere "puffing, or sales tactics," because a jury could infer that the statements "contradicted his honest view" about the venture's financial prospects and, further, because investors testified that the "imprimatur" of the accountant's firm was important to their decision to invest.  *Id.* at 119.  The same is true here.  The complaint alleges that Defendants' delivered a message to investors touting ACN as a low-risk business opportunity with a huge potential for profit, when they knew that the reality was the exact opposite.  (*E.g.*, Compl. ¶¶ 3, 8, 91, 93, 95.)[2]  The complaint also alleges that the Trump brand added important legitimacy to ACN in the eyes of potential investors.  (*E.g.*, *id.* ¶¶ 10, 145, 249.)

Defendants also argue that the alleged omissions are not actionable "as mail or wire fraud" because there was no "fiduciary or similar legal duty between the parties."  (Defs. Ltr. at 2.)  But a fiduciary duty "is not the *sine qua non* of fraudulent omissions."  *Autuori*, 212 F.3d at 119.  As we also noted at the initial conference, even in the absence of a pre-existing relationship that imposes a duty to disclose, such a duty can arise "where one party has made partial or ambiguous statements that require further disclosure in order to avoid being misleading, that is, so called 'half-truths.'"  *Lavastone Capital LLC* v. *Coventry First LLC*, No. 14 Civ. 7139, 2015 WL 1939711, at *5 (S.D.N.Y. Apr. 22, 2015) (citation and quotation marks omitted).  Here, Plaintiffs allege that Defendants' consistent message was that President Trump was "endorsing and promoting the Investments because he believed that they offered a reasonable probability of commercial success (rather than because the Trump Enterprise was being paid)."  (Compl. ¶ 8; *see also, e.g.*, *id.* ¶¶ 117, 123-24.)  In other words, President Trump made statements about his reasons for promoting ACN, yet left out the critical detail that Defendants were being paid millions to make those statements.  Such omissions are actionable under the law.

**Remaining RICO Arguments.**  *First,* Defendants argue that Plaintiffs have not "connect[ed] any alleged statement by Defendants to Plaintiffs' failure to recoup the fees they paid ACN" and thus fail to plead proximate cause.  (Defs. Ltr. at 2.)  Defendants miss the point.  Plaintiffs lost money because Defendants duped them into investments that Defendants knew were bound to fail.  (Compl. ¶¶ 9, 153-238, 381.)  As the case Defendants cite makes plain, such allegations are sufficient to permit an inference of proximate cause.  *See Moore* v. *PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999) (proximate clause sufficiently plead where the plaintiffs alleged that their "losses from investing in [a life insurance policy] (rather than doing something else with the money) were manifestly foreseeable to the defendants at the time of the transaction").  Although Defendants hint that Plaintiffs themselves allege an intervening cause for their losses (Defs. Ltr. at 2), the specific allegations they cite—describing Plaintiffs' efforts to make money through ACN—only underscore why Defendants are liable:  despite their efforts, Plaintiffs were unable to achieve a modicum of financial success, which Defendants knew was the likely outcome.  (Compl. ¶ 19.)

*Second*, Defendants argue that Plaintiffs cannot make out the predicate acts of mail and wire fraud because it is "undisputed that Defendants sought and obtained no money from

---

[2] On *The Celebrity Apprentice*, for example, President Trump promoted ACN with the false claim that "ACN is the largest distributor of videophones [] in the world," with "half-a-billion dollars" in annual sales.  (Compl. ¶ 106.)

Plaintiffs." (Defs. Ltr. at 3.) But mail and wire fraud are not limited to schemes in which money passes directly from the victim's hands to the fraudster's. *See, e.g.*, *Autuori*, 212 F.3d at 115 (sufficient evidence regarding scheme to defraud in case where accountant promoted third party's venture to investors). Moreover, a "defendant does not need to literally 'obtain' money or property to violate the statute." *United States* v. *Males*, 459 F.3d 154, 158 (2d Cir. 2006) (quotation marks omitted). It is "sufficient that a defendant's scheme was intended to deprive another of property rights," *id.*, and such property rights include the right not to "make economic decisions . . . based on misleading information," *United States* v. *Carlo*, 507 F.3d 799, 802 (2d Cir. 2007). Defendants' mens rea argument thus rests on a flawed premise.

*Third*, Defendants argue that allegations concerning the Trump Association-in-Fact are insufficient because the complaint does not allege a "common purpose." (Defs. Ltr. at 3.) But "the existence of an enterprise may be inferred from evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity." *Equinox Gallery Ltd.* v. *Dorfman*, 306 F. Supp. 3d 560, 571 (S.D.N.Y. 2018). Here, the complaint alleges that various Trump Organizations entities were part of Defendants' scheme: Trump Productions, LLC, DSN Licensing, LLC, and Trump University, LLC enhanced the legitimacy of the Endorsed Entities through television spots and licensing of Donald Trump's name and brand. (Compl. ¶¶ 42, 55, 273-74, 278, 306, 313, 328, 379.) T International Realty, LLC, Trump National Golf Club, LLC, and TNCC Charlotte, LLC helped facilitate cash payments and other benefits from ACN to Defendants. (*Id.* ¶¶ 17, 240, 244-45, 248-254.) Donald Trump Jr. and Ivanka Trump both appeared on *The Celebrity Apprentice* to promote ACN, and all three children were part of a small team that controlled the Trump empire. (*Id.* ¶¶ 36-38, 45-47, 85.)

Defendants also argue that an enterprise involving The Trump Corporation "fails as a matter of law because the purported enterprise is not sufficiently 'distinct' from any Defendant." (Defs. Ltr. at 3.) But this argument is refuted by the very case on which Defendants rely. In *Cedric Kushner Promotions, Ltd.* v. *King*, the Supreme Court vacated the dismissal of RICO claims against Don King, the president and owner of Don King Productions, who allegedly conducted the affairs of his corporation through a pattern of racketeering. 533 U.S. 158, 160-61 (2001). The Court held that a "corporate owner/employee . . . is distinct from the corporation itself," and "nothing in the statute . . . requires more 'separateness' than that." *Id.* at 163. The same is true here. Plaintiffs allege an alternative enterprise that consists solely of The Trump Corporation. (Compl. ¶¶ 48, 380.) Defendants' distinctness challenge to this enterprise is thus foreclosed by *King*.

*Amendment.* Finally, pursuant to section III.C.2 of the Court's Individual Rules, and mindful of the briefing schedule set by the Court at the initial conference, Plaintiffs respectfully state that they currently anticipate amending their complaint as of right after reviewing Defendants' motion to dismiss, as permitted by Rule 15(a)(1)(B) and as contemplated by the parties' Proposed Case Management Plan (ECF No. 48 at 8). Plaintiffs have continued to investigate Defendants' scheme, in particular with respect to President Trump's three children, including their relationship to ACN and their roles within the Trump Enterprise, a topic raised by the Court at yesterday's conference. Plaintiffs expect that their amendment would narrow the issues the Court would need to decide assuming Defendants seek dismissal of Plaintiffs' amended pleading. If Defendants move again to dismiss, Plaintiffs will agree to a briefing schedule similar to the one outlined by the Court yesterday.

KAPLAN HECKER & FINK LLP                                                                                          4

Respectfully submitted,

_____
Roberta A. Kaplan