**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
JANE DOE, LUKE LOE, RICHARD ROE, and MARY        :
MOE, individually and on behalf of all others similarly   :
situated,                                                :
                                                         :
                        *Plaintiffs,*                    :
                                                         :    No. 1:18-cv-09936 (LGS)
            v.                                           :
                                                         :
THE TRUMP CORPORATION, DONALD J. TRUMP, in :
his personal capacity, DONALD TRUMP, JR., ERIC           :
TRUMP, and IVANKA TRUMP,                                 :
                                                         :
                        *Defendants.*                    :
                                                         :
------------------------------------------------------------------------X


**REPLY BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**


Joanna C. Hendon
Cynthia Chen
Bradley Pollina
SPEARS & IMES LLP
51 Madison Avenue
New York, New York  10010
Tel:  (212) 213-6996

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii

1.    Plaintiffs Fail to Plead a RICO Violation – Loss Causation ...................................................2

2.    Plaintiffs Fail to Plead Mail or Wire Fraud with Particularity by The Trump Corporation
      or the President's Children ....................................................................................................5

3.    Plaintiffs Fail to Plead Mail or Wire Fraud – Materiality....................................................6

4.    Plaintiffs Fail to Plead Mail or Wire Fraud – Opinion Statements ......................................8

5.    Plaintiffs Fail to Plead Mail or Wire Fraud – Puffery .........................................................9

6.    The Court May Not Consider Statements Plaintiffs Did Not Hear ...................................10

## <u>TABLE OF AUTHORITIES</u>

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)............................................................................................2, 3, 4

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008)...................................................................................................11

*Chanayil v. Gulati*,
169 F.3d 168 (2d Cir. 1999)........................................................................................5

*D. Penguin Bros Ltd. v. City Nat. Bank*,
2014 WL 982859 (S.D.N.Y. Mar. 11, 2014) ............................................................6

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
822 F.2d 1242 (2d Cir. 1987)......................................................................................5

*Eclectic Properties E., LLC v. The Marcus & Millichap Co.*,
2012 WL 713289 (N.D. Cal. Mar. 5, 2012)..........................................................3 n.1

*Empire Merchants, LLC v. Reliable Churchill LLLP*,
902 F.3d 132 (2d Cir. 2018)........................................................................................4

*Fait v. Regions Fin. Corp.*,
655 F.3d 105 (2011)......................................................................................................8

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
783 F.3d 395 (2d Cir. 2015)........................................................................................2

*Hemi Grp., LLC v. City of New York, N.Y.*,
559 U.S. 1 (2010)..........................................................................................................2

*Loreley Financing (Jersey) No. 3 Ld. v. Wells Fargo Securities, LLC*,
797 F.3d 160 (2d Cir. 2015)........................................................................................2

*Lukaszuk v. Sudeen*,
2007 WL 4699018 (E.D.N.Y. Nov. 27, 2007)......................................................2 n.1

*Omnicare Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
135 S. Ct. 1319 (2015)..................................................................................................8

*Perry v. NYSARC, Inc.*,
424 F. App'x 23 (2d Cir. 2011) ..................................................................................8

*Procapui-Productores de Camaroes De Icapui Ltda. v. Layani*,
2008 WL 3338199 (S.D.N.Y. Jan. 11, 2008) ...........................................................5

*United States v. Corsey,*
    723 F.3d 366 (2d Cir. 2013)................................................................................6

*United States v. Weaver,*
    860 F.3d 90 (2d Cir. 2017)..................................................................................6

*Virginia Bankshares, Inc. v. Sandberg,*
    501 U.S. 1083 (1991)..........................................................................................8

Plaintiffs' effort to recast as criminal a celebrity endorsement of a company whose business model is lawful and longstanding is not sustainable and must be dismissed.  The alleged statements and omissions upon which Plaintiffs rely are either classic puffery, uttered by a famous TV star and self-promoter, or, with few exceptions, opinion statements, inactionable because Plaintiffs fail to particularize facts showing the speaker disbelieved any of his opinions. These are fatal defects, recognition of which depends not upon the drawing of improper inferences and burden-shifting, as Plaintiffs argue, but upon the straightforward application of basic legal principles understood by lawyers who prosecute, defend, and decide mail and wire fraud cases in federal court.

So too, the required showing of loss causation.  Binding Supreme Court precedent, which Plaintiffs *do not address*, requires dismissal of the RICO claims because the Complaint fails to allege facts sufficient to establish a "direct" causal link between Mr. Trump's exhortations to purchase the ACN business opportunity, in the first instance, and Plaintiffs' failure to monetize that opportunity, thereafter.  Numerous alternative factors exist that plausibly "could have" caused Plaintiffs' losses, including that cold-calling customers and recruiting others to do so proved more difficult and less satisfying than expected.  Plaintiffs object to this as improper "argument" at the pleading stage, but it is in fact precisely the type of "counterfactual reasoning" that the Supreme Court requires of district courts in order to protect our courts from meritless RICO litigation.

The Federal Reporters are awash in opinions construing the mail and wire fraud statutes. That Plaintiffs can identify no case alleging a scheme to defraud based upon a paid celebrity endorsement should signal the Court that the strictures of Rule 9(b), and of the mail fraud, wire fraud, and RICO statutes, themselves, preclude such a claim.

1. ***Plaintiffs Fail to Plead a RICO Violation – Loss Causation.***  To state a claim under civil RICO, a plaintiff must show a "direct relationship" between the alleged RICO violation and the asserted injury.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006).  As the Supreme Court has held, "[o]ur precedent makes clear . . . that the compensable injury flowing from a [RICO] violation . . . necessarily is the harm caused by [the] predicate acts."  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 13 (2010) (internal citation and quotation marks omitted).  But where the pleadings suggest the injury results from a set of actions "entirely distinct" from the predicate acts, *Anza*, 547 at 458, or that the injury "could have resulted from factors other than the [defendants'] acts of fraud," *id*. at 459, dismissal is required.  *See id*.  (vacating reversal of the District Court's dismissal of RICO claims for failure to plead loss causation).  The reason for this stricter pleading standard, the Supreme Court has held, is "to prevent . . . intricate, uncertain inquiries [into causation] from overrunning RICO litigation."  *Id.* at 460.

Plaintiffs' claims fail at this hurdle.  *First*, Plaintiffs ignore *Anza* and its progeny, cited in our brief (MTD at 22-23 & n.9), referring the Court, instead, to nine cases, all irrelevant to this motion because none involved a RICO claim.  For example, Plaintiffs cite *Loreley Financing (Jersey) No. 3 Ld. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015), and *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395 (2d Cir. 2015), for the proposition that they need plead only "a causal link," between the alleged predicate acts and their injury, *Loreley*, 797 F.3d at 189, or "some indication" of causation, *Fin. Guar. Ins. Co.*, 783 F.3d at 404.  They further assert that, on this motion, the Court need not "rule out other contributing factors or causal explanations," again citing *Loreley*.  But none of this law applies to RICO claims.[1]

---

[1] Of the two RICO cases Plaintiffs do cite, neither is helpful.  The first arose in the context of a default judgment in which the magistrate judge issued a report and recommendation reasoning that "[u]pon a defendant's default, proximate causation is irrefutably established when it is properly alleged in the complaint," *Lukaszuk v. Sudeen*, No. 02 Civ. 5143 (JG) (MDG), 2007 WL 4699018, at *5 (E.D.N.Y. Nov. 27, 2007), and the second, a California case,

*Second*, the Complaint fails to plead facts showing how a taped celebrity endorsement that allegedly induced Plaintiffs to pay $499 for the opportunity to market ACN goods and services then caused Plaintiffs to fail to sell enough to recoup those fees.  While the Complaint plausibly pleads a relationship between Mr. Trump's endorsement of ACN and Plaintiffs' decision to purchase the ACN business opportunity (but-for causation), it is silent with respect to any causal connection between that endorsement and the challenges these four Plaintiffs faced trying to market ACN cellular telephone or television services to their friends and family (Compl. ¶ 203), or to recruit others to do so.

Indeed, the two events – Plaintiffs' failure to sell enough ACN products and services to recoup their $499 after signing up to become IBOs, on the one hand, and Mr. Trump's extolling the virtues of ACN, on the other – are so "entirely distinct" from one another, *Anza*, 547 U.S. at 458, that Plaintiffs themselves make no serious attempt to state a "direct relationship" between them.  Plaintiffs instead liken the business opportunity they purchased from ACN to shares of stock, a work of art, or a used car, investments whose value exists (or does not exist) independently of the purchaser.  (Opp. Br. at 27-28 & n.13-14.)  But Plaintiffs did not purchase stock, a painting, or a car, such that misrepresentations at the point of purchase plausibly could have caused their injury (the stock proves worthless upon the disclosure of the CFO's fraud; the painting, once proven a fake, commands only a fraction of its purchase price; the car becomes worthless once its true mileage is known).  Plaintiffs acquired a business opportunity that authorized them, in exchange for $499, to market the goods and services of ACN for one year, and to recruit others to do so, to enable Plaintiffs to make money as "Independent Business

---

involved lies told about commercial real estate which, when exposed, affected the value of the property, facts far afield from those alleged here, *Eclectic Props. E., LLC v. The Marcus & Millichap Co.*, No. 09 Civ. 511 (RMW), 2012 WL 713289, at *14 (N.D. Cal. Mar. 5, 2012).

Owners." (Compl. ¶¶ 80-83.) ACN did not guarantee the opportunity, as Plaintiffs suggest (Opp. Br. at 28 & n.15). To the contrary, ACN required each Plaintiff to acknowledge at the outset that she was guaranteed no income as an IBO and might earn none (MTD at 6 & n.2). And the reasons Plaintiff failed to recoup their initiation fees – whether lack of customers, lack of effort, lack of skill, loss of interest, bad luck or bad weather – are too many to speculate.

This is not improper argument, as Plaintiffs aver (Opp. Br. at 27), it is exactly the kind of counterfactual reasoning that the Supreme Court requires of trial judges, at the pleading stage, in order to weed out RICO claims, such as this, which risk miring the courts in burdensome and uncertain inquiries into causation. And it is precisely this reasoning that dooms Plaintiffs' RICO claims. As the Second Circuit recently held:

> [I]n the pleadings phase, we ordinarily accept well-pled allegations as true, notwithstanding possible alternative causal explanations. But in the RICO context 'the element of proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation.' That is why the Supreme Court engaged in this exact same kind of counterfactual reasoning at the pleadings stage in *Anza*. . . .

*Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 143 (2d Cir. 2018) (quoting *Anza*, 547 U.S. at 460); *see also Anza*, 547 U.S. at 458 (vacating reversal of dismissal because "National [] *could have* lowered its prices for any number of reasons unconnected to the asserted pattern of fraud") (emphasis added); *id*. at 459 ("Ideal's lost sales *could have* resulted from factors other than [National's] alleged acts of fraud.") (emphasis added); *Empire*, 902 F.3d at 143 (dismissal required because "Empire *might have* lost sales due to bootlegging from states with even lower alcohol excise taxes") (emphasis added) (quotation marks omitted); *id*. ("[V]arious retailers *might have* purchased wine, beer, or a brand of liquor not subject to Empire's exclusive distribution contracts . . . . ") (emphasis added).

**2.** ***Plaintiffs Fail to Plead Mail or Wire Fraud with Particularity by The Trump Corporation or the President's Children.***  The Complaint alleges a scheme to defraud Plaintiffs who paid money to become IBOs on the basis of an allegedly false and misleading endorsement of ACN by its spokesperson.  The law is clear that, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."  *DiVittorio v. Equidyne Extractive Indus., Inc*., 822 F.2d 1242, 1247 (2d Cir. 1987); *see also Procapui-Productores de Camaroes De Icapui Ltda. v. Layani*, No. 07 Civ. 6627 (BSJ), 2008 WL 3338199, at *2 (S.D.N.Y. Jan. 11, 2008) ("[I]t is necessary for a [RICO] plaintiff to particularize and prove each defendant's participation in the fraud . . . . ").

Yet allegations that Eric, Ivanka, and Donald Trump, Jr. licensed the Trump name as part of the family's business; appeared on *The Celebrity Apprentice* (Ivanka and Donald Jr.); used the program to promote other businesses; held senior positions within their own business; "or otherwise exercised control over" them (Opp. Br. at 23) establish only that these Defendants worked for the business that bears their name.  The Complaint contains nothing – much less particularized facts – tending to show these Defendants (a) made any false or misleading statement concerning ACN, themselves; (b) agreed with anyone else to make such statements; or (c) acted with criminal intent with respect to any alleged act or omission by anyone.  Dismissal is therefore required.  *See Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999) (affirming dismissal of civil RICO claim brought by victims of securities fraud against a partnership that aired the television program on which Gulati promoted fraudulent investments, the executive director of the program, and one employee, because the plaintiffs "fail[ed] to set forth any basis whatsoever for the inference that the [television] defendants *knew* that Gulati's claims about the Notes were false or otherwise knowingly participated in a fraudulent scheme" (emphasis

added)); *D. Penguin Bros Ltd. v. City Nat. Bank*, No. 13 Civ. 706 (TPG), 2014 WL 982859, at

*5-*6 (S.D.N.Y. Mar. 11, 2014), *aff'd* 587 F. App'x 663 (2d Cir. 2014) (dismissing civil RICO

claim based on wire fraud alleging bank defendant "knew the funds . . . had been stolen" because

it "conspired and collaborated" with others, because plaintiffs' allegations of the bank's

"knowing participation in a scheme to defraud" were "conclusory and insufficient under Rule

9(b)").[2]

      **3.   *Plaintiffs Fail to Plead Mail or Wire Fraud – Materiality*.**  Materiality is an objective,

not a subjective standard.  "[A] lie can support a fraud conviction only if it is material, that is, if

it would affect a reasonable person's evaluation of a proposal."  *United States v. Corsey*, 723

F.3d 366, 373 (2d Cir. 2013); *accord United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017).

Plaintiffs cite these cases but omit reference to the reasonableness test.  (Opp. Br. at 11.)  And

while Plaintiffs are correct that the Court must consider the context in which a statement was

made, including its tendency to influence the decisionmaker to whom it was addressed (*id*.), that

analysis favors dismissal here.

      Plaintiffs suggest that Mr. Trump's statements should be assessed from the standpoint of

an unsophisticated person, because that is whom he targeted.  (Opp. Br. at 13.)  That is incorrect,

both because the test for materiality is a purely objective one, and because, while the Complaint

asserts generally that Defendants "targeted" inexperienced customers (Compl. ¶ 14), it pleads in

exhaustive detail (a) that ACN promoted Mr. Trump's endorsement continuously, and without

limitation, to the broadest audience possible, targeting neither the least nor the most savvy

customers, and (b) that it was ACN, and not its spokesman, who packaged and repackaged Mr.

---

[2] Allegations that the Trump Corporation is "the principal operating company" for the Trump Organization, and that it "exercised substantial control" over certain Trump businesses are likewise insufficient under Rule 9(b).  (Compl. ¶¶ 36, 430; *see also id*. ¶¶ 5, 47.)

Trump's endorsement and determined to whom to distribute it (*see, e.g.*, Compl. ¶¶ 86-95, 170-74; *see also* MTD at n.10).  Indeed, to the extent Plaintiffs were targeted, it was by the friends and family who recruited them.  (Compl. ¶¶ 183-96, 220-25, 238-46.)  The Court must consider whether the challenged statements would have influenced the decision of a "reasonable person" in the context in which they were made, here, recruitment events and ACN rallies.

Plaintiffs ignore other context within which materiality must be assessed, including statements that clearly reference the transactional nature of Mr. Trump's relationship with ACN (*see* MTD at 10-11), and that, by 2012, it was well known that the Trump Family received compensation for using the Trump brand to promote products.[3]  Far from an impermissible inference, as Plaintiffs argue (Opp. Br. at 16), this is a proposition stated, repeated and expounded upon in the various Trump biographies and exposés on which the Complaint expressly relies.  (*See, e.g.*, Compl. n.4 at 8 (reviewing "decades" of press scrutiny); *id.* n.9 (same); MTD at 23.)  Against this backdrop, it is Plaintiffs who ask the Court to draw the unreasonable, and therefore impermissible, inference that they were familiar enough with Mr. Trump's brand to find his endorsement compelling, but unaware of facts that – according to their own Complaint – were thoroughly digested and publicly known for years before they heard him endorse ACN.  (Opp. Br. at 15.)

The decision to annotate their lawsuit with material dating back decades, to support a thesis that Donald Trump is self-serving, untruthful, and concerned only with promoting his brand, was Plaintiffs' to make, but it forecloses any argument that a "reasonable" person in 2013

---

[3] Plaintiffs' invective aside, to promote one's brand for profit as the Defendants have for decades does not imply any "propensity to lie for profit."  (Opp. Br. at 1.)

or later would have understood Mr. Trump to be endorsing ACN for free.[4]  *See Perry v.
NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (on a motion to dismiss, "the court must
generally accept as true all of the factual assertions in the complaint.  However, there is a narrow
exception to this rule for factual assertions that are contradicted by the complaint itself, by
documents upon which the pleadings rely, or by facts of which the court may take judicial
notice" (internal citation omitted)).[5]

**4.** ***Plaintiffs Fail to Plead Mail or Wire Fraud – Opinion Statements.***  Plaintiffs do not
dispute that, to be actionable as fraud an opinion must be "both objectively false and disbelieved
by the defendant at the time it was expressed."  *Fait v. Regions Fin. Corp.* 655 F.3d 105, 110
(2011) (citing *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991)).  Nor do they
disagree that the Complaint fails to particularize facts showing that Mr. Trump disbelieved
anything he said about ACN.  Plaintiffs muster only that Mr. Trump "worked closely" with the
ACN founders (Opp. Br. at 21), an allegation wholly inadequate under *Virginia Bankshares*.

Instead, Plaintiffs seek to rewrite opinion ("the new videophone is going to be
tremendous") as statements of fact by relying on *Omnicare Inc. v. Laborers Dist. Council Const.
Indus. Pension Fund*, 135 S. Ct. 1318 (2015) (Opp. Br. at 20), a decision the Second Circuit has
never extended to mail or wire fraud cases or even applied outside the context of issuer
statements in securities offerings, much less to a celebrity sales pitch.

---

[4] Defendants disagree that Mr. Trump's statement "No," he did not keep appearing for ACN "for any money" must
be read as a "flat denial of any financial incentive."  (Opp. Br. at 14.)  Read in context with other statements by
ACN during the same interview and in print materials about the parties' partnership, it reasonably can be read to
mean, "I do not do this just for the money."  (MTD at 10-11.)

[5] Plaintiffs ignore other statements with which Mr. Trump's must be contextualized, for example, those made by
their own friends and family who became IBOs and then recruited Plaintiffs to do so; the testimonials and success
stories of other IBOs to which they were exposed at the point of sale (Compl. ¶¶ 186-88, 222, 240, 260-61, 276;
MTD at 5-6); and the disclaimers contained in the IBO agreements they signed (MTD at 6).

**5.** ***Plaintiffs Fail to Plead Mail or Wire Fraud – Puffery***.  The parties agree that puffery is immaterial as a matter of law, and that a District Court must dismiss fraud claims predicated upon it.  Nonetheless, citing a case decided in 1918, before the advent of television, Plaintiffs suggest the rule is available to "sellers" only (Opp. Br. at 16), and not to third parties, a position not taken by this Circuit in 1918 or since, and one of dubious force in an era soaked in celebrity promotions.[6]  That celebrities are paid to endorse products, and that, when doing so, they do not state that they are being paid, are facts to which the parties may stipulate, and of which no adult reasonably can claim ignorance.  To suggest otherwise (*id.* at 17), is disingenuous.[7]

Plaintiffs quibble with whether particular statements of Mr. Trump are puffery or factual and "capable of being proven false" (Opp. Br. at 18), but even if false (and we concede nothing on this score), allegations of falsity, without proof the speaker knew the statements to be untrue, are not actionable as fraud.  And the Complaint contains no facts tending to show, or from which an inference reasonably could be drawn, that Mr. Trump knew any of the statements he made about ACN or its technology to be untrue.  The Complaint describes apparent regulatory inquiries by authorities in France, Canada, and Montana (Compl. ¶¶ 109-12), but it does not allege Mr. Trump knew, or had reason to know, of them.  The Complaint also alleges in conclusory fashion that the SEC filings of a company called Worldgate were "available to" Mr.

---

[6] *See, e.g.,* https://blog.hollywoodbranded.com/top-5-celerity-endorsements; https://reverse.mortgage/5-memorable-spokesmen; https://www.gobankingrates.com/net-worth/celebrities/celebrity-endorsement-deals-paid-how-much/; http://www.people.hbs.edu/aelberse/publications/Elberse_Verleun_2012.pdf.

[7] Plaintiffs suggest the Court evaluate Mr. Trump's promotion of ACN differently than it would that of a "any old run-of-the-mill" celebrity touting shampoo, because Mr. Trump's endorsement contained statements of fact as well as opinion, and because he promoted ACN for nearly a decade, such that prospective IBOs would have placed more weight upon it than they would another endorsement.  (Opp. Br. at 18.)  But the Complaint alleges none of these facts, and the inferences Plaintiffs would draw are unreasonable.  The airwaves are crowded with endorsements containing statements of fact and opinion, promoting everything from health insurance and reverse mortgages to perfume, by celebrities who have endorsed those products for years.

Trump (*id.* ¶ 125), but the Complaint fails to allege that Mr. Trump in fact reviewed these records, or how, had he done so, he would have discovered that anything in his endorsement was false.

Confronted with this defect, Plaintiffs claim that certain factual statements made by Mr. Trump were "objectively false," for example, that ACN had a "new technology," and its videophone was at "the forefront of innovation."  (Opp. Br. at 12, 21.)  But the Court may not accept Plaintiffs' *ipse dixit* on this point, because the Complaint, even after substantial amendment, does not allege that any of Mr. Trump's statements about ACN's technology was "objectively false," and there is reason to doubt that any was, given that Mr. Trump began endorsing ACN in 2006 (Compl. ¶ 86), one year before Apple introduced the first iPhone and four years before it launched the now-ubiquitous FaceTime application.[8]

**6.  *The Court May Not Consider Statements Plaintiffs Did Not Hear.***  Plaintiffs heard a total of eleven statements made by Mr. Trump about ACN before they signed up to become IBOs.  (MTD at 7-8.)  None is sufficient to state a claim for mail or wire fraud because they are puffery, or with respect to statements of fact and opinion, Plaintiffs have not particularized facts tending to show Mr. Trump knew the facts to be false or disbelieved his opinions.  In an effort to salvage their RICO claims, Plaintiffs pivot to statements none of them heard, on the theory that, because reliance is not an element of the email and wire fraud statutes, their lawsuit may proceed on the basis of any of the hundreds of statements referenced or incorporated in the Complaint that no Plaintiff is alleged to have heard.  Plaintiffs are mistaken.  They are limited to proceeding

---

[8] The cases to which Plaintiffs cite the Court in their discussion of puffery are all inapposite, either because they arose under the Lanham Act (*Lipton*, *DIRECTV*, *Sussman-Automatic*, and *Verizon Directories*) and analyze whether a plaintiff has adequately pled unfair competition based on misleading advertising, a different inquiry than that required under the mail and wire fraud statutes – or because they involved more concrete statements of fact than those at issue here, clear proof that the speaker knew his statements to be false, or because Plaintiffs cite them for dicta only (*Regent Office Supply*) – and none involved a celebrity endorsement.  (Opp. Br. at n 4-7.)

on the basis of statements they heard, because – under the RICO statute – they cannot establish

that a statement they did not hear was the but-for cause of their decision to sign up for ACN, let

alone the proximate cause of their losses.  As the Supreme Court has stated in *Bridge v. Phoenix*

*Bond & Indem. Co.*, 553 U.S. 639, 658-59 (2008):

> "In most cases, the plaintiff will not be able to establish even but-for causation if
> no one relied on the misrepresentation. . . . Accordingly, it may well be that a
> RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish
> . . . reliance in order to prove causation."

*Id.* at 658-59.

*       *       *       *

For the reasons set forth above and in Defendants' main brief, the Complaint should be

dismissed.

Respectfully submitted,

/s/ Joanna C. Hendon

Joanna C. Hendon
Cynthia Chen
Bradley Pollina

SPEARS & IMES LLP
51 Madison Avenue
New York, New York 10010
Tel:  (212) 213-6996
Fax:  (212) 213-0849

jhendon@spearsimes.com
cchen@spearsimes.com
bpollina@spearsimes.com

*Attorneys for Defendants*