July 19, 2019

**BY ECF**
Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York  10007

Re:  *Jane Doe, et al. v. The Trump Corporation, et al.*, 18-cv-09936 (LGS)

Dear Judge Schofield:

On October 29, 2018, Plaintiffs filed a putative class action Complaint.  Defendants timely moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6).  On January 31, 2019, Defendants filed an Amended Complaint, which Defendants again timely moved to dismiss.  That motion has been fully briefed since March 14, 2019.  Discovery has been stayed since December 20, 2018, and Plaintiffs remain anonymous.

Defendants have determined that, in addition to failing to state a claim upon which relief may be granted, Plaintiffs' claims are arbitrable.  On July 11 and July 18, 2019, pursuant to Rule III(A)(3) of the Court's Individual Rules and Procedures for Civil Cases, the parties exchanged letters regarding an anticipated motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4.  Copies of those letters are attached.

The Court's Individual Rules and Procedures ordinarily do not provide for such correspondence to be filed with the Court.  Because the contemplated motion to compel arbitration would be dispositive, if granted, and because there is already pending a dispositive motion, we write respectfully to request the Court's guidance as to how to proceed.

Respectfully,

*/s/ Joanna Hendon*

Joanna C. Hendon

*Encl.*

# Exhibit A

# SPEARS & IMES LLP

51 Madison Avenue
New York, NY 10010
tel 212-213-6996
fax 212-213-0849

Joanna C. Hendon
tel 212-213-6553
jhendon@spearsimes.com

July 11, 2019

**By E-Mail & FedEx**

Roberta A. Kaplan, Esq.
Kaplan Hecker & Fink LLP
350 Fifth Avenue
Suite 7110
New York, New York 10118

Re: *Jane Doe, et al. v. The Trump Corporation, et al.*, 18-cv-09936 (LGS)

Dear Ms. Kaplan:

Pursuant to Rule III(A)(3) of the Court's Individual Rules and Procedures for Civil Cases, we write to advise you that, in the event the Court denies the pending motion to dismiss, or grants it, giving Plaintiffs leave to replead, Defendants intend to move the Court for an order compelling Plaintiffs to arbitrate their claims against Defendants, and to stay litigation of this action pending completion of the arbitration, under the Federal Arbitration Act, 9 U.S.C. §§ 3-4 (the "FAA"). Such a motion will be timely filed because the case is still at an early stage and no prejudice will result to Plaintiffs. *See Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887-91 (2d Cir. 1985) (finding motion to compel arbitration timely after defendant filed its motion to dismiss, answered, and participated in discovery); *accord Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463-66 (2d Cir. 1985) (motion to compel arbitration timely after 12(b)(6) motion was briefed and decided); *Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 434 F. Supp. 2d 211, 219 (S.D.N.Y. 2006) (granting motion to compel arbitration after decision on 12(b)(6) motion).[1]

***The Relevant Facts as Alleged or Incorporated in the Complaint.*** Plaintiffs allege they paid money to American Communications Network ("ACN"), a multi-level marketing company, in order to become ACN Independent Business Owners ("IBOs"). Plaintiffs further allege that they failed to recoup those fees – and sustained economic damage – because of a fraud perpetrated by ACN (whom Plaintiffs have not sued) and the Defendants. In particular, Plaintiffs contend that, while acting as ACN's paid spokesperson, Donald Trump understated the risks and overstated the benefits of the ACN business opportunity, and that Mr. Trump and ACN omitted to state that ACN was paying Mr. Trump a fee for his endorsement.

---

[1] *Cf. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp.*, 376 F. App'x 70, 73 (2d Cir. 2010) (party waived right to compel arbitration where it first engaged in fact and expert depositions and litigated motions for summary judgment); *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 86 (2d Cir. 1998) (same where party sought to compel arbitration after taking depositions and attending settlement conferences).

Roberta A. Kaplan, Esq. - 2 -

In order to become IBOs, ACN required Plaintiffs to enter into written agreements with ACN (the "IBO Agreement"). In 2013, the year in which Plaintiff Moe became an IBO, and also in 2014, the year in which Plaintiffs Doe and Loe became IBOs, the operative provision stated that, "[i]n the event of a dispute between me and ACN as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is agreed that such disputes shall be exclusively resolved through binding arbitration before the American Arbitration Association" ("AAA"), Exh. 7, Affirmation of Cynthia Chen in Support of Defendants Motion to Dismiss the Complaint, dated February 21, 2019 ("Chen Aff."); Exh. 8, Chen. Aff. In 2016, when Plaintiff Roe signed up to be an IBO, the contract stated that "ACN and I will resolve all disputes through binding arbitration before the [AAA] . . . . Both ACN and I agree that all disputes will be resolved on an individual basis and that each may only bring claims against the other in an individual capacity (and not as a claimant or class member in any purported class or representative proceeding)." Exh. 9, Chen. Aff. The Defendants are not signatories to these agreements.

***The Legal Standard.*** The FAA "is an expression of 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010). In fact, the Second Circuit "has said that 'it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied.'" *Id.* Second Circuit law is clear that, "[u]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed, and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Id.* at 126-27 (internal quotation marks omitted). "In addition to the 'intertwined' factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Id.* at 127 (internal quotation marks omitted).

***Discussion.*** Here, the claims against Defendants are plainly "intertwined with" the agreement Plaintiffs signed with ACN, and the relationship between ACN and its paid spokesman is more than sufficient to trigger principles of equitable estoppel. Plaintiffs claim to have been damaged by statements and omissions allegedly made by Mr. Trump about ACN, while he was employed as the company's spokesperson. The statements and omissions about which Plaintiffs complain appeared in ACN media: on ACN DVDs, in magazine articles published by ACN, and at ACN rallies, in response to questions put by an ACN host. (Compl. ¶¶ 88-96, 139-47; *see also id.* ¶ 138 ("ACN promotional videos . . . failed to disclose that Trump was being paid for his endorsement"); *id.* ¶ 139 ("Neither Trump nor ACN disclosed to the audience that Trump was paid for this appearance").) Indeed, the Amended Complaint declares ACN "central to" the claims asserted against Defendants (*id.* ¶ 16), and Mr. Trump's endorsement "critical" to the success of ACN (*id.* ¶ 85). According to Plaintiffs, "[i]t was ACN's ability to associate itself with the Trump brand – a right that ACN secretly bought from the Trump Enterprise – that drove the fraudulent message home and pushed investors to overcome lingering doubts and invest in the ACN business opportunity." (*Id.* ¶ 177; *see also id.* ¶ 170 ("ACN itself . . . boasted of its relationship with Trump and the legitimacy the Trump

Roberta A. Kaplan, Esq. - 3 -

brand afforded the Company"); *id.* ¶ 173 ("ACN made . . . clear that Trump's brand was an impactful recruiting tool for [IBOs] in two principal ways: first, it attracted the interest of prospective [IBOs] and second, it would help close the deal with prospective recruits"); *id.* ¶ 174 ("One of the most important tools available to ACN representatives today is obviously the Donald J. Trump endorsement" (emphasis removed)).)

Courts in this Circuit have not hesitated to apply principles of equitable estoppel to compel arbitration on facts such as these. *See, e.g., Ragone,* 595 F.3d at 128 (affirming ruling compelling arbitration where claims of harassment relied on the concerted actions of both signatory and non-signatory to arbitration agreement); *Denney v. BDO Seidman, L.L.P.,* 412 F.3d 58, 70 (2d Cir. 2005) (reversing denial of motion to compel arbitration where plaintiffs alleged signatory and non-signatory acted in concert); *Bankers Conseco Life Ins. Co. v. Feuer,* No. 16 CIV. 7646 (ER), 2018 WL 1353279, at *6-7 (S.D.N.Y. Mar. 15, 2018) (compelling arbitration where plaintiff alleged non-signatory defendants fraudulently induced it to enter contract with signatory); *Cooper v. Ruane Cunniff & Goldfarb Inc.,* No. 16-CV-1900 (WHP), 2017 WL 3524682, at *7-8 (S.D.N.Y. Aug. 15, 2017), *appeal withdrawn,* 2017 WL 8219086 (2d Cir. Dec. 19, 2017) (granting motion to compel where signatory employer and non-signatory investment advisor allegedly acted together to breach fiduciary duties owed plaintiff); *In re A2P SMS Antitrust Litig.,* 972 F. Supp. 2d 465, 476 (S.D.N.Y. 2013) (compelling putative class action to arbitration on equitable estoppel grounds).

Finally, on a motion to compel arbitration, the Court may authorize fact discovery and take evidence sufficient to establish, for example, that Plaintiffs agreed to submit disputes arising from their relationship with ACN to mandatory arbitration. *See Dreyfuss v. eTelecare Glob. Sols.-US, Inc.,* No. 08 CIV. 1115 (RJS), 2008 WL 4974864, at *2 (S.D.N.Y. Nov. 19, 2008), *aff'd,* 349 F. App'x 551 (2d Cir. 2009) (deciding motion to compel arbitration only after allowing limited discovery into existence of arbitration agreement); *Brennan v. Bally Total Fitness,* 153 F. Supp. 2d 408, 416-17 (S.D.N.Y. 2001) (finding limited discovery necessary to decide motion to compel arbitration).

Sincerely,

*Joanna C. Hendon*/c.c.

Joanna C. Hendon

cc: All counsel of record (by e-mail)

# Exhibit B

# KAPLAN HECKER & FINK LLP

Direct Dial: (212) 763-0883
Direct Email: rkaplan@kaplanhecker.com

350 Fifth Avenue
Suite 7110
New York, NY 10118
(212) 763-0883
www.kaplanhecker.com

July 18, 2019

**By ECF**

Joanna C. Hendon
Spears & Imes LLP
51 Madison Avenue
New York, NY 10010

      Re:    *Doe* v. *The Trump Corporation*, No. 18 Civ. 9936

Dear Ms. Hendon:

      We write on behalf of Plaintiffs in the above-referenced action in response to your July 11, 2019 letter, in which you advise that "in the event the Court denies the pending motion to dismiss, or grants it, giving Plaintiffs leave to replead, Defendants intend to move the Court for an order compelling Plaintiffs to arbitrate their claims against Defendants, and to stay litigation of this action pending completion of the arbitration." Pursuant to Rule III(A)(3) of this Court's Individual Rules and Practices for Civil Cases, we hereby notify you that Plaintiffs do not concur in any of your contentions and provide below a brief statement of the reasons and controlling authority that compel denial of your potential future motion. In short, any motion to compel arbitration following a decision on the pending motion to dismiss will be both untimely and unfounded.

**Timeliness**

      Any request to arbitrate this dispute at this point would be too late; Defendants have waived any such right by actively participating in this litigation. In assessing whether a litigant has waived its right to move to compel arbitration, courts generally assess the extent of the movant's delay and the prejudice to the non-moving party. *See La. Stadium & Expo. Dist.* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 626 F.3d 156, 159 (2d Cir. 2010).[1] Here, both considerations require the conclusion that Defendants have waived any purported right to arbitrate this dispute.

      Starting with the dilatory nature of Defendants' request, there is no "bright-line rule" as to how much delay causes waiver of a party's right to arbitrate claims following its participation in litigation. *Id.* at 105. Rather, when assessing a movant's delay in this context, courts look to whether the movant's "conduct has been largely inconsistent with its present assertion of its right to compel arbitration." *Leadertex, Inc.* v. *Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (holding actions inconsistent with right to compel arbitration where party "could have invoked the arbitration clause at the outset of the litigation . . . but it chose not to").

---

[1] The extent of delay is itself generally assessed with respect to two separate factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; [and] (2) the amount of litigation to date, including motion practice and discovery." *La. Stadium*, 626 F.3d at 159.

Applied here, this standard weighs heavily toward a finding of waiver. Defendants served their letter expressing an intent to move to compel arbitration more than eight months after this case was filed—and after knowingly invoking this Court's jurisdiction by filing two motions to dismiss (a procedural right they would not have in arbitration) and taking advantage of the Court's subpoena power by serving a battery of nonparty subpoenas on friends and family members of the pseudonymous Plaintiffs. Defendants do not explain why they waited until now to assert a purported right to arbitration. *See Leadertex, Inc.*, 67 F.3d at 26 (in assessing a mid-litigation motion to compel arbitration, a court should assess the movant's "proffered excuse for the delay"). And no explanation is apparent. As your letter recognizes, Plaintiffs' complaint contained all of the facts needed to assess the relevance (if any) of the ACN arbitration agreements.

In fact, Defendants criticized this case as a "ploy" to "bypass contractually mandated arbitration" just thirty days after it was filed, Dkt. No. 46 at 1, and repeatedly referred to the arbitration agreements in subsequent filings. *See* Dkt. No. 48, at 2, 5; Dkt. No. 65, at 6; Dkt. No. 66 ¶¶ 28–30; Dkt. No. 84 at 6; Dkt. No. 85 ¶¶ 10–11. In one letter to the Court, Defendants argued that Plaintiffs had waived *their* right to arbitrate against ACN by filing this lawsuit against Defendants. *See* Dkt. No. 48 at 5 (contending that Plaintiffs "elect[ed] to forego their contractual right to pursue arbitration against ACN in favor of this litigation against Defendants"). In that same letter, Defendants identified their "[c]ontemplated [m]otions," and nowhere stated their intent to move to compel arbitration (but did preview their motions to dismiss and to stay discovery, opposition to class certification, and a motion for summary judgment). *Id.* at 4. Defendants' about-face on the issue of arbitration is the height of audacity.

Forcing Plaintiffs to arbitrate at this point would also cause them unnecessary prejudice. As noted, Defendants offer neither explanation nor excuse for their delay, which distinguishes the cases cited by Defendants and highlights the prejudice to Plaintiffs if Defendants' gamesmanship is rewarded. Specifically, in both *Rush* v. *Oppenheimer & Co.*, 779 F.2d 885 (2d Cir. 1985), and *Sweater Bee by Banff, Ltd.* v. *Manhattan Indus., Inc.*, 754 F.2d 457 (2d Cir. 1985), the court excused delayed arbitration requests because the plaintiffs there asserted both arbitrable and non-arbitrable claims and the court concluded that it was reasonable for the defendants to choose to litigate the non-arbitrable claims while reserving their right to later move to arbitrate the other claims. In *Kramer* v. *Hammond*, 943 F.2d 176 (2d Cir. 1991), the court distinguished *Rush* and *Sweater Bee* on precisely this basis and made plain that a party is prejudiced where, as here, its opponent has offered no "sound, nonprejudicial reasons to justify the delays and the additional expenses incurred when the parties did not immediately invoke arbitration." *Id.* at 179–80. Defendants here offer *no* reasons—let alone "sound, nonprejudicial" ones—for their delay. Plaintiffs have devoted substantial time, resources, and effort to pressing their claims in this Court, and Defendants have never (until now) suggested that the case must proceed elsewhere because of a contract to which Defendants are not even parties. Now Defendants say that, if they do not get what they want on the motion to dismiss, they should be permitted to start over in arbitration. As a matter of equity, the Court should not countenance Defendants' procedural hijinks.

**Merits**

Defendants' anticipated motion also would be unfounded for the simple reason that Defendants are not signatories to the agreements containing the purportedly relevant arbitration provisions and therefore may not invoke those agreements to compel Plaintiffs (who are signatories) to arbitrate. While it is true that, under a principle of "equitable estoppel," a non-

signatory to an arbitration agreement may, in rare circumstances, compel a signatory to that agreement to arbitrate claims against it, *see Ragone* v. *Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 126–27 (2d Cir. 2010), there is no basis for the application of estoppel here.

The Second Circuit applies a two-part test to determine when a signatory to an arbitration agreement may be estopped from challenging a non-signatory's effort to drag it into arbitration. *See Sokol Holdings, Inc.* v. *BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008). *First*, "the issues the non-signatory is seeking to resolve in arbitration [must] be intertwined with the agreement that the estopped party has signed." *Id.* at 358 (quotation marks omitted). *Second*, "there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Id.*

Your letter focuses almost entirely on *Sokol*'s first prong, but virtually ignores its second. That omission speaks volumes because the second prong speaks to the key question in any equitable estoppel analysis: consent. As *Sokol* clarified, estoppel in this context is a basic application of the "black letter rule that the obligation to arbitrate depends on consent," and that it "simply extend[s] its contours somewhat by establishing that the consent need not always be expressed in a formal contract made with the party demanding arbitration." *See* 542 F.3d at 361–62 (a "necessary circumstance [for application of estoppel is] a relationship among the parties which . . . supported the conclusion that $x$ had consented to extend its agreement to arbitrate to $y$"); *see also Ross* v. *Am. Exp. Co.*, 547 F.3d 137, 143 (2d Cir. 2008) (rejecting non-signatory's effort to compel signatory to arbitrate because "arbitration is a matter of consent, not coercion," and that "arbitration agreements [are to be] as enforceable as other contracts, *but not more so*").

Consequently, Plaintiffs may be forced to arbitrate with Defendants only upon a finding that when Plaintiffs signed their agreements with ACN, they, in fact, subjectively consented to arbitrate their present claims against Defendants. *See Ross*, 547 F.3d at 148 ("there [was] no reason for someone signing up for a Chase Visa card, for example, to believe that he (or she) was entering into any kind of relationship with [Amex]"). But the Amended Complaint belies that possibility. Plaintiffs had no reason to know that Donald Trump and ACN had any formal relationship—in large part because Defendants deliberately concealed that fact. *See* SAC ¶ 8 ("the Trump Enterprise deliberately misled consumers by delivering a common and consistent message: . . . that Trump was endorsing and promoting the [ACN] Investments because he believed that they offered a reasonable probability of commercial success (rather than because the Trump Enterprise was being paid")). Each Plaintiff alleged that they were induced to invest in ACN precisely because they thought Trump and ACN were distinct and that Defendants were endorsing ACN's business opportunity as purportedly objective observers. For example, Plaintiff Doe alleged that she "was convinced that Trump believed that investing in ACN was a great business opportunity— and that was why he was endorsing it," and that she "had no idea Trump was being paid lavishly for his endorsement." SAC ¶¶ 191, 193.[2] In light of these allegations, it is non-sensical (and flatly at odds with the Amended Complaint) to surmise that when Plaintiffs came to a meeting of the minds with ACN, they believed that they were also constraining themselves as to the Trumps.[3]

---

[2] These allegations also show that Plaintiffs' claims against the Trumps are not "intertwined with" the ACN agreement.
[3] For the avoidance of doubt, if the motion to dismiss is denied, Plaintiffs reserve their right to oppose any request for limited and/or phased discovery and to seek discovery on all issues including merits issues.

KAPLAN HECKER & FINK LLP

4

Respectfully submitted,

Roberta A. Kaplan

cc:    Counsel of Record (via email)