# Exhibit A

# SPEARS & IMES LLP

51 Madison Avenue
New York, NY 10010
tel 212-213-6996
fax 212-213-0849

Joanna C. Hendon
tel 212-213-6553
jhendon@spearsimes.com

July 11, 2019

**By E-Mail & FedEx**

Roberta A. Kaplan, Esq.
Kaplan Hecker & Fink LLP
350 Fifth Avenue
Suite 7110
New York, New York 10118

      Re: *Jane Doe, et al. v. The Trump Corporation, et al.*, 18-cv-09936 (LGS)

Dear Ms. Kaplan:

      Pursuant to Rule III(A)(3) of the Court's Individual Rules and Procedures for Civil Cases, we write to advise you that, in the event the Court denies the pending motion to dismiss, or grants it, giving Plaintiffs leave to replead, Defendants intend to move the Court for an order compelling Plaintiffs to arbitrate their claims against Defendants, and to stay litigation of this action pending completion of the arbitration, under the Federal Arbitration Act, 9 U.S.C. §§ 3-4 (the "FAA"). Such a motion will be timely filed because the case is still at an early stage and no prejudice will result to Plaintiffs. *See Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887-91 (2d Cir. 1985) (finding motion to compel arbitration timely after defendant filed its motion to dismiss, answered, and participated in discovery); *accord Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463-66 (2d Cir. 1985) (motion to compel arbitration timely after 12(b)(6) motion was briefed and decided); *Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 434 F. Supp. 2d 211, 219 (S.D.N.Y. 2006) (granting motion to compel arbitration after decision on 12(b)(6) motion).[1]

      ***The Relevant Facts as Alleged or Incorporated in the Complaint.*** Plaintiffs allege they paid money to American Communications Network ("ACN"), a multi-level marketing company, in order to become ACN Independent Business Owners ("IBOs"). Plaintiffs further allege that they failed to recoup those fees – and sustained economic damage – because of a fraud perpetrated by ACN (whom Plaintiffs have not sued) and the Defendants. In particular, Plaintiffs contend that, while acting as ACN's paid spokesperson, Donald Trump understated the risks and overstated the benefits of the ACN business opportunity, and that Mr. Trump and ACN omitted to state that ACN was paying Mr. Trump a fee for his endorsement.

---

[1] *Cf. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp.*, 376 F. App'x 70, 73 (2d Cir. 2010) (party waived right to compel arbitration where it first engaged in fact and expert depositions and litigated motions for summary judgment); *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 86 (2d Cir. 1998) (same where party sought to compel arbitration after taking depositions and attending settlement conferences).

Roberta A. Kaplan, Esq.                                                                                          - 2 -

In order to become IBOs, ACN required Plaintiffs to enter into written agreements with ACN (the "IBO Agreement"). In 2013, the year in which Plaintiff Moe became an IBO, and also in 2014, the year in which Plaintiffs Doe and Loe became IBOs, the operative provision stated that, "[i]n the event of a dispute between me and ACN as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is agreed that such disputes shall be exclusively resolved through binding arbitration before the American Arbitration Association" ("AAA"), Exh. 7, Affirmation of Cynthia Chen in Support of Defendants Motion to Dismiss the Complaint, dated February 21, 2019 ("Chen Aff."); Exh. 8, Chen. Aff. In 2016, when Plaintiff Roe signed up to be an IBO, the contract stated that "ACN and I will resolve all disputes through binding arbitration before the [AAA] . . . . Both ACN and I agree that all disputes will be resolved on an individual basis and that each may only bring claims against the other in an individual capacity (and not as a claimant or class member in any purported class or representative proceeding)." Exh. 9, Chen. Aff. The Defendants are not signatories to these agreements.

***The Legal Standard.*** The FAA "is an expression of 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010). In fact, the Second Circuit "has said that 'it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied.'" *Id.* Second Circuit law is clear that, "[u]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed, and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Id.* at 126-27 (internal quotation marks omitted). "In addition to the 'intertwined' factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Id.* at 127 (internal quotation marks omitted).

***Discussion.*** Here, the claims against Defendants are plainly "intertwined with" the agreement Plaintiffs signed with ACN, and the relationship between ACN and its paid spokesman is more than sufficient to trigger principles of equitable estoppel. Plaintiffs claim to have been damaged by statements and omissions allegedly made by Mr. Trump about ACN, while he was employed as the company's spokesperson. The statements and omissions about which Plaintiffs complain appeared in ACN media: on ACN DVDs, in magazine articles published by ACN, and at ACN rallies, in response to questions put by an ACN host. (Compl. ¶¶ 88-96, 139-47; *see also id.* ¶ 138 ("ACN promotional videos . . . failed to disclose that Trump was being paid for his endorsement"); *id.* ¶ 139 ("Neither Trump nor ACN disclosed to the audience that Trump was paid for this appearance").) Indeed, the Amended Complaint declares ACN "central to" the claims asserted against Defendants (*id.* ¶ 16), and Mr. Trump's endorsement "critical" to the success of ACN (*id.* ¶ 85). According to Plaintiffs, "[i]t was ACN's ability to associate itself with the Trump brand – a right that ACN secretly bought from the Trump Enterprise – that drove the fraudulent message home and pushed investors to overcome lingering doubts and invest in the ACN business opportunity." (*Id.* ¶ 177; *see also id.* ¶ 170 ("ACN itself . . . boasted of its relationship with Trump and the legitimacy the Trump

Roberta A. Kaplan, Esq. -3-

brand afforded the Company"); *id.* ¶ 173 ("ACN made . . . clear that Trump's brand was an impactful recruiting tool for [IBOs] in two principal ways: first, it attracted the interest of prospective [IBOs] and second, it would help close the deal with prospective recruits"); *id.* ¶ 174 ("One of the most important tools available to ACN representatives today is obviously the Donald J. Trump endorsement" (emphasis removed)).)

Courts in this Circuit have not hesitated to apply principles of equitable estoppel to compel arbitration on facts such as these. *See, e.g., Ragone*, 595 F.3d at 128 (affirming ruling compelling arbitration where claims of harassment relied on the concerted actions of both signatory and non-signatory to arbitration agreement); *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005) (reversing denial of motion to compel arbitration where plaintiffs alleged signatory and non-signatory acted in concert); *Bankers Conseco Life Ins. Co. v. Feuer*, No. 16 CIV. 7646 (ER), 2018 WL 1353279, at *6-7 (S.D.N.Y. Mar. 15, 2018) (compelling arbitration where plaintiff alleged non-signatory defendants fraudulently induced it to enter contract with signatory); *Cooper v. Ruane Cunniff & Goldfarb Inc.*, No. 16-CV-1900 (WHP), 2017 WL 3524682, at *7-8 (S.D.N.Y. Aug. 15, 2017), *appeal withdrawn*, 2017 WL 8219086 (2d Cir. Dec. 19, 2017) (granting motion to compel where signatory employer and non-signatory investment advisor allegedly acted together to breach fiduciary duties owed plaintiff); *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476 (S.D.N.Y. 2013) (compelling putative class action to arbitration on equitable estoppel grounds).

Finally, on a motion to compel arbitration, the Court may authorize fact discovery and take evidence sufficient to establish, for example, that Plaintiffs agreed to submit disputes arising from their relationship with ACN to mandatory arbitration. *See Dreyfuss v. eTelecare Glob. Sols.-US, Inc.*, No. 08 CIV. 1115 (RJS), 2008 WL 4974864, at *2 (S.D.N.Y. Nov. 19, 2008), *aff'd*, 349 F. App'x 551 (2d Cir. 2009) (deciding motion to compel arbitration only after allowing limited discovery into existence of arbitration agreement); *Brennan v. Bally Total Fitness*, 153 F. Supp. 2d 408, 416-17 (S.D.N.Y. 2001) (finding limited discovery necessary to decide motion to compel arbitration).

Sincerely,

*Joanna C. Hendon/c.c.*

Joanna C. Hendon

cc: All counsel of record (by e-mail)