# Exhibit B

# KAPLAN HECKER & FINK LLP

Direct Dial: (212) 763-0883
Direct Email: rkaplan@kaplanhecker.com

350 Fifth Avenue
Suite 7110
New York, NY 10118
(212) 763-0883
www.kaplanhecker.com

July 18, 2019

**By ECF**

Joanna C. Hendon
Spears & Imes LLP
51 Madison Avenue
New York, NY 10010

      Re:    *Doe* v. *The Trump Corporation*, No. 18 Civ. 9936

Dear Ms. Hendon:

      We write on behalf of Plaintiffs in the above-referenced action in response to your July 11, 2019 letter, in which you advise that "in the event the Court denies the pending motion to dismiss, or grants it, giving Plaintiffs leave to replead, Defendants intend to move the Court for an order compelling Plaintiffs to arbitrate their claims against Defendants, and to stay litigation of this action pending completion of the arbitration." Pursuant to Rule III(A)(3) of this Court's Individual Rules and Practices for Civil Cases, we hereby notify you that Plaintiffs do not concur in any of your contentions and provide below a brief statement of the reasons and controlling authority that compel denial of your potential future motion. In short, any motion to compel arbitration following a decision on the pending motion to dismiss will be both untimely and unfounded.

## Timeliness

      Any request to arbitrate this dispute at this point would be too late; Defendants have waived any such right by actively participating in this litigation. In assessing whether a litigant has waived its right to move to compel arbitration, courts generally assess the extent of the movant's delay and the prejudice to the non-moving party. *See La. Stadium & Expo. Dist.* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 626 F.3d 156, 159 (2d Cir. 2010).[1] Here, both considerations require the conclusion that Defendants have waived any purported right to arbitrate this dispute.

      Starting with the dilatory nature of Defendants' request, there is no "bright-line rule" as to how much delay causes waiver of a party's right to arbitrate claims following its participation in litigation. *Id.* at 105. Rather, when assessing a movant's delay in this context, courts look to whether the movant's "conduct has been largely inconsistent with its present assertion of its right to compel arbitration." *Leadertex, Inc.* v. *Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (holding actions inconsistent with right to compel arbitration where party "could have invoked the arbitration clause at the outset of the litigation . . . but it chose not to").

---

[1] The extent of delay is itself generally assessed with respect to two separate factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; [and] (2) the amount of litigation to date, including motion practice and discovery." *La. Stadium*, 626 F.3d at 159.

Applied here, this standard weighs heavily toward a finding of waiver. Defendants served their letter expressing an intent to move to compel arbitration more than eight months after this case was filed—and after knowingly invoking this Court's jurisdiction by filing two motions to dismiss (a procedural right they would not have in arbitration) and taking advantage of the Court's subpoena power by serving a battery of nonparty subpoenas on friends and family members of the pseudonymous Plaintiffs. Defendants do not explain why they waited until now to assert a purported right to arbitration. *See Leadertex, Inc.*, 67 F.3d at 26 (in assessing a mid-litigation motion to compel arbitration, a court should assess the movant's "proffered excuse for the delay"). And no explanation is apparent. As your letter recognizes, Plaintiffs' complaint contained all of the facts needed to assess the relevance (if any) of the ACN arbitration agreements.

In fact, Defendants criticized this case as a "ploy" to "bypass contractually mandated arbitration" just thirty days after it was filed, Dkt. No. 46 at 1, and repeatedly referred to the arbitration agreements in subsequent filings. *See* Dkt. No. 48, at 2, 5; Dkt. No. 65, at 6; Dkt. No. 66 ¶¶ 28–30; Dkt. No. 84 at 6; Dkt. No. 85 ¶¶ 10–11. In one letter to the Court, Defendants argued that Plaintiffs had waived *their* right to arbitrate against ACN by filing this lawsuit against Defendants. *See* Dkt. No. 48 at 5 (contending that Plaintiffs "elect[ed] to forego their contractual right to pursue arbitration against ACN in favor of this litigation against Defendants"). In that same letter, Defendants identified their "[c]ontemplated [m]otions," and nowhere stated their intent to move to compel arbitration (but did preview their motions to dismiss and to stay discovery, opposition to class certification, and a motion for summary judgment). *Id.* at 4. Defendants' about-face on the issue of arbitration is the height of audacity.

Forcing Plaintiffs to arbitrate at this point would also cause them unnecessary prejudice. As noted, Defendants offer neither explanation nor excuse for their delay, which distinguishes the cases cited by Defendants and highlights the prejudice to Plaintiffs if Defendants' gamesmanship is rewarded. Specifically, in both *Rush* v. *Oppenheimer & Co.*, 779 F.2d 885 (2d Cir. 1985), and *Sweater Bee by Banff, Ltd.* v. *Manhattan Indus., Inc.*, 754 F.2d 457 (2d Cir. 1985), the court excused delayed arbitration requests because the plaintiffs there asserted both arbitrable and non-arbitrable claims and the court concluded that it was reasonable for the defendants to choose to litigate the non-arbitrable claims while reserving their right to later move to arbitrate the other claims. In *Kramer* v. *Hammond*, 943 F.2d 176 (2d Cir. 1991), the court distinguished *Rush* and *Sweater Bee* on precisely this basis and made plain that a party is prejudiced where, as here, its opponent has offered no "sound, nonprejudicial reasons to justify the delays and the additional expenses incurred when the parties did not immediately invoke arbitration." *Id.* at 179–80. Defendants here offer *no* reasons—let alone "sound, nonprejudicial" ones—for their delay. Plaintiffs have devoted substantial time, resources, and effort to pressing their claims in this Court, and Defendants have never (until now) suggested that the case must proceed elsewhere because of a contract to which Defendants are not even parties. Now Defendants say that, if they do not get what they want on the motion to dismiss, they should be permitted to start over in arbitration. As a matter of equity, the Court should not countenance Defendants' procedural hijinks.

**Merits**

Defendants' anticipated motion also would be unfounded for the simple reason that Defendants are not signatories to the agreements containing the purportedly relevant arbitration provisions and therefore may not invoke those agreements to compel Plaintiffs (who are signatories) to arbitrate. While it is true that, under a principle of "equitable estoppel," a non-

KAPLAN HECKER & FINK LLP                                                                          3

signatory to an arbitration agreement may, in rare circumstances, compel a signatory to that agreement to arbitrate claims against it, *see Ragone* v. *Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 126–27 (2d Cir. 2010), there is no basis for the application of estoppel here.

The Second Circuit applies a two-part test to determine when a signatory to an arbitration agreement may be estopped from challenging a non-signatory's effort to drag it into arbitration. *See Sokol Holdings, Inc.* v. *BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008). *First*, "the issues the non-signatory is seeking to resolve in arbitration [must] be intertwined with the agreement that the estopped party has signed." *Id.* at 358 (quotation marks omitted). *Second*, "there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Id.*

Your letter focuses almost entirely on *Sokol*'s first prong, but virtually ignores its second. That omission speaks volumes because the second prong speaks to the key question in any equitable estoppel analysis: consent. As *Sokol* clarified, estoppel in this context is a basic application of the "black letter rule that the obligation to arbitrate depends on consent," and that it "simply extend[s] its contours somewhat by establishing that the consent need not always be expressed in a formal contract made with the party demanding arbitration." *See* 542 F.3d at 361–62 (a "necessary circumstance [for application of estoppel is] a relationship among the parties which . . . supported the conclusion that $x$ had consented to extend its agreement to arbitrate to $y$"); *see also Ross* v. *Am. Exp. Co.*, 547 F.3d 137, 143 (2d Cir. 2008) (rejecting non-signatory's effort to compel signatory to arbitrate because "arbitration is a matter of consent, not coercion," and that "arbitration agreements [are to be] as enforceable as other contracts, *but not more so*").

Consequently, Plaintiffs may be forced to arbitrate with Defendants only upon a finding that when Plaintiffs signed their agreements with ACN, they, in fact, subjectively consented to arbitrate their present claims against Defendants. *See Ross*, 547 F.3d at 148 ("there [was] no reason for someone signing up for a Chase Visa card, for example, to believe that he (or she) was entering into any kind of relationship with [Amex]"). But the Amended Complaint belies that possibility. Plaintiffs had no reason to know that Donald Trump and ACN had any formal relationship—in large part because Defendants deliberately concealed that fact. *See* SAC ¶ 8 ("the Trump Enterprise deliberately misled consumers by delivering a common and consistent message: . . . that Trump was endorsing and promoting the [ACN] Investments because he believed that they offered a reasonable probability of commercial success (rather than because the Trump Enterprise was being paid")). Each Plaintiff alleged that they were induced to invest in ACN precisely because they thought Trump and ACN were distinct and that Defendants were endorsing ACN's business opportunity as purportedly objective observers. For example, Plaintiff Doe alleged that she "was convinced that Trump believed that investing in ACN was a great business opportunity— and that was why he was endorsing it," and that she "had no idea Trump was being paid lavishly for his endorsement." SAC ¶¶ 191, 193.[2] In light of these allegations, it is non-sensical (and flatly at odds with the Amended Complaint) to surmise that when Plaintiffs came to a meeting of the minds with ACN, they believed that they were also constraining themselves as to the Trumps.[3]

---

[2] These allegations also show that Plaintiffs' claims against the Trumps are not "intertwined with" the ACN agreement.
[3] For the avoidance of doubt, if the motion to dismiss is denied, Plaintiffs reserve their right to oppose any request for limited and/or phased discovery and to seek discovery on all issues including merits issues.

KAPLAN HECKER & FINK LLP

4

Respectfully submitted,

*/s/ Roberta A. Kaplan*

Roberta A. Kaplan

cc:   Counsel of Record (via email)