August 29, 2019

VIA ECF
Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:     *Jane Doe, et al.* v. *Trump Corp., et al.,* 1:18-cv-9936 (LGS)

Dear Judge Schofield:

The Court has directed the Parties to set forth their respective positions "regarding Defendants' proposed motion to compel arbitration and any other issue the parties would like the Court to address." (Doc. No. 98; *accord* Doc. No. 100.) The parties therefore submit this joint letter, as well as a modified proposed Case Management Plan and Scheduling Order (based on the Court's form), to which they have made adjustments reflecting the current stage of the proceedings.

**<u>Plaintiffs' Statement</u>**

Defendants' proposed motion to compel arbitration is both meritless and untimely. Further, although the Court dismissed Plaintiffs' RICO claims, it denied Defendants' motion to dismiss Plaintiffs' common law and other statutory claims, and discovery on those claims should now commence. Plaintiffs have proposed a workable approach to pseudonymity for discovery, one that is routinely used in other cases in this District. A proposed protective order is attached.

**A.  Defendants' Motion to Compel Arbitration Lacks Merit**

***Merits.*** Defendants' anticipated motion will not succeed because "arbitration is a matter of consent, not coercion," and "arbitration agreements [are to be] as enforceable as other contracts, *but not more so*." *Ross* v. *Am. Exp. Co.*, 547 F.3d 137, 143 (2d Cir. 2008). There is no dispute that Defendants are not signatories to the agreements containing the purportedly relevant arbitration provisions—and the doctrine of "equitable estoppel" that Defendants invoke to avoid the foundational requirement of a signature is, in this case, unavailable.

A non-signatory may compel a signatory to arbitrate in rare circumstances and only where two requirements are met. First, "the issues the non-signatory is seeking to resolve in arbitration [must] be intertwined with the agreement that the estoped party has signed." *Sokol Holdings, Inc.* v. *BMB Munai, Inc.*, 542 F.3d 354, 358 (2d Cir. 2008) (citation omitted). Second, "there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Id.*

Defendants can satisfy neither prong of *Sokol Holdings*. While it is true, as Defendants suggest, that Plaintiffs were "damaged by statements and omissions allegedly made by Mr. Trump about ACN while he was employed as the company's spokesperson" (Doc. No. 94-1 at 2.), the intertwinement inquiry is centered not on damages, but on whether "the subject matter of the dispute was intertwined with *the contract* providing for arbitration." *Sokol*, 542 F.3d at 361 (emphasis added). In *JLM Industries, Inc.* v. *Stolt-Nielsen SA*, for example, the plaintiffs' claims

were held to be intertwined with contracts providing for arbitration because the claims turned on "allegedly inflated price terms" in the contracts themselves. 387 F.3d 163, 178 (2d Cir. 2004). And in *Choctaw Generation Ltd. Partnership* v. *American Home Assurance Co.*, the plaintiffs' claims were held to be intertwined because they concerned a demand for a letter of credit "arguably [made] pursuant to a provision of the construction contract" that provided for arbitration. 271 F.3d 403, 403 (2d Cir. 2001). Here, in stark contrast, Plaintiffs' claims do not require resolution of any term of *any* contract between Plaintiffs and ACN—and are not intertwined with those agreements in any way. Plaintiffs' claims instead turn on Defendants' false and misleading statements about ACN, and their deliberate efforts to mislead ACN recruits about the nature of their relationship with ACN.

Defendants' motion also fails *Sokol*'s second prong. As *Sokol* clarified, because it remains a "black letter rule that the obligation to arbitrate depends on consent," the estoppel doctrine "simply extend[s] its contours somewhat by establishing that the consent need not always be expressed in a formal contract made with the party demanding arbitration." 542 F.3d at 361–62. Thus, a "necessary circumstance" for the application of estoppel is "a relationship among the parties which . . . support[s] the conclusion that *x* had consented to extend its agreement to arbitrate to *y*." *Id.*; *accord JLM Indus., Inc.*, 387 F.3d at 177 (concluding that a court may allow a non-signatory to compel a signatory into arbitration only after a "careful review of the relationship among the parties [and] the contracts they signed"). Defendants must therefore show that when Plaintiffs signed their agreements with ACN, they *actually*, *subjectively* consented to arbitrate their present claims against Defendants because of some agency or employee relationship between Defendants and ACN. *See Ross*, 547 F.3d at 148. Here, the entire theory of the case is to the contrary: each Plaintiff affirmatively alleges that they were induced to invest in ACN precisely because they thought Trump was distinct from ACN—and that Defendants were endorsing ACN's business opportunity as objective observers, not as agents or employees. (*E.g.*, AC ¶¶ 191, 193.)

Not surprisingly, for these reasons, there is not a single reported case that compels arbitration with a non-signatory to an arbitration agreement that comes even close to the circumstances present here. To the contrary, cases invoking equitable estoppel succeed only where they involve an employee, executive, or the patently obvious assent of the named defendant. *See Meyer* v. *Uber Technologies, Inc.*, 868 F.3d 66, 80 n.11 (2d Cir. 2017) ("Courts in this and other circuits consistently have held that *employees or disclosed agents* of an entity that is a party to an arbitration agreement are protected by that agreement." (emphasis added)); *see also Medidata Solutions, Inc.* v. *Veeva Sys. Inc.*, No. 17 Civ. 589, 2018 WL 1083968, at *2 (S.D.N.Y. Feb. 27, 2018) (Schofield, J.) (concluding that relationships "of co-conspirators and employer-employee . . . are insufficient to compel arbitration under principles of equitable estoppel"), *aff'd*, 748 F. App'x 363 (2d Cir. 2018). The Amended Complaint belies the notion that Plaintiffs actually and subjectively believed that they were agreeing to arbitrate with the Trumps when signing any agreements with ACN.

***Untimeliness.*** Defendants offer no explanation for their considerable delay in filing their motion—and none exists, beyond their flagrant desire for tactical advantage. There are no new facts. There is no new law. There is only delay—inexplicable and unjustifiable delay—constituting more than an eight-month period after the filing of the original complaint. For good reason, courts regularly conclude that parties waive their right to arbitrate when they delay seeking such relief and there is prejudice to the non-moving party. *See La. Stadium & Expo. Dist.* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 626 F.3d 156, 159 (2d Cir. 2010).

While there is no "bright-line rule" that controls exactly how much delay causes waiver of a party's right to arbitrate claims, *id.*, courts look to whether the movant's litigation conduct "has been largely inconsistent with its present assertion of its right to compel arbitration." *Leadertex, Inc.* v. *Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995). The Second Circuit has concluded that a party's actions were inconsistent with its asserted right to compel arbitration where it "could have invoked the arbitration clause at the outset of the litigation . . . *but it chose not to.*" *Id.* (emphasis added); *accord Beach* v. *JPMorgan Chase Bank, N.A.*, 2019 WL 2428631, at *5 (S.D.N.Y. June 11, 2019) (concluding that "Defendants waived any right to compel arbitration," because their "actions demonstrate[d] an intent to litigate").

Here, it could hardly be clearer that Defendants "chose" not to seek to compel arbitration at the outset, presumably in the hope that they would succeed on their motion to dismiss. More specifically, although they certainly were aware of the issue of arbitration during the first eight months of this case,[1] Defendants affirmatively demonstrated a clear intent to litigate, not arbitrate. They first invoked this Court's jurisdiction by filing two motions to dismiss, rather than motions to compel arbitration or in the alternative to dismiss, which is common practice in this District. *See, e.g.*, *Harris* v. *TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 182 (S.D.N.Y. 2018) (addressing such an alternative motion and noting that "[e]ven if the arbitration issue is not considered jurisdictional, it should ordinarily be addressed first as a matter of judicial efficiency"). Then, they came to this Court with a proposed case management schedule that made no mention of arbitration. Finally, Defendants invoked the Court's subpoena power by serving a series of non-party document preservation subpoenas on friends and family members of the pseudonymous Plaintiffs. Significantly, Defendants have provided not a word of explanation for their delay in raising the issue, other than the fact that they lost their motion to dismiss. Plaintiffs, of course, have devoted substantial time, resources, and effort to pressing their claims in this Court. As the Second Circuit has made clear, a plaintiff suffers prejudice from a mid-litigation motion to compel arbitration when the "proffered excuse for the delay" is nowhere to be found. *Leadertex, Inc.*, 67 F.3d at 26.[2]

## B.  Discovery Should Commence

When the Court denies a motion to dismiss, in whole or in part, the next step in a case is discovery. But here, Defendants assert that the next step should instead be a further stay of discovery pending the resolution of their motion to compel arbitration.

---

[1] As early as November 30, 2018, Defendants criticized this case as a "ploy" to "bypass contractually mandated arbitration" (Doc. No. 46 at 1), and repeatedly referred to the arbitration agreements thereafter (*see* Doc. No. 48 at 2, 5; Doc. No. 65 at 6; Doc. No. 66 ¶¶ 28–30; Doc. No. 84 at 6; Doc. No. 85 ¶¶ 10–11). In fact, in one letter to the Court, Defendants argued that Plaintiffs had waived *Plaintiffs'* right to arbitrate against ACN by filing this lawsuit against Defendants. (*See* Doc. No. 48 at 5.)

[2] Unsurprisingly, precedent—including cases cited by Defendants—shows that courts excuse delay *only* when the delay is justified by something other than a crude desire to obtain a tactical litigation advantage. For example, in *Rush* v. *Oppenheimer & Co.*, 779 F.2d 885 (2d Cir. 1985), and *Sweater Bee by Banff, Ltd.* v. *Manhattan Indus., Inc.*, 754 F.2d 457 (2d Cir. 1985), the Second Circuit excused delayed arbitration requests only because the plaintiffs asserted both arbitrable and non-arbitrable claims and the court concluded that it was reasonable for the defendants to choose to litigate the non-arbitrable claims while reserving their right to later move to arbitrate the others. *See also Estrella* v. *Freedom Fin. Network, LLC*, No. 09 Civ. 3156, 2012 WL 214856, at *4 (N.D. Cal. Jan. 24, 2012) (granting motion to compel where intervening law and events made claims arbitrable). This reading of *Rush* and *Sweater Bee* is confirmed by *Kramer* v. *Hammond*, which emphasized that a party is prejudiced where its adversary offers no "sound, nonprejudicial reasons to justify the delays and the additional expenses incurred when the parties did not immediately invoke arbitration." 943 F.2d 176, 179–80 (2d Cir. 1991).

Under Federal Rule of Procedure 26(c), however, the moving party has the burden of showing "good cause" for a stay of discovery, and "it is well-settled that the mere filing of a dispositive motion does not, by itself," suffice. *Hearn* v. *United States*, No. 17 Civ. 3703, 2018 WL 1796549, at *2 (E.D.N.Y. Apr. 16, 2018) (internal quotation marks omitted). Instead, the Court must consider several familiar factors, including "the strength of the pending motion forming the basis of the request for stay," as well as "the breadth of discovery sought, the burden of responding to it, [and] the prejudice that would result to the party opposing the stay." *Republic of Turkey* v. *Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) (citation omitted).

For the reasons discussed above, Defendants cannot possibly make the "strong showing" with respect to the strength of their anticipation motion to compel arbitration. *Telesca* v. *Long Island Hous. P'ship, Inc.*, No. 05 Civ. 5509, 2006 WL 1120636, at *1 (E.D.N.Y. Apr. 27, 2006); *see also, e.g.*, *Gerald Chamales Corp.* v. *Oki Data Americas, Inc.*, 247 F.R.D. 453, 455 (D.N.J. 2007) ("[I]f the Court accepts defendants' argument that all depositions should be stayed pending the decision on its dispositive motion [regarding arbitration], then it would in effect be ruling that every time a request to compel arbitration is filed good cause exists to issue a protective order to stop depositions while the request is pending. This is not the law.").

Neither breadth nor burden of discovery presents any basis for a stay either. Prior to the initial stay of discovery, Plaintiffs served certain targeted requests on all Defendants, seeking corporate records and other foundational documents and information. When the stay of discovery was lifted, Defendants served certain additional targeted requests directed solely at The Trump Corporation. To date, Defendants have not identified any request as beyond the scope of the matters at issue. Moreover, "[a]s in all cases, the Plaintiff, the Court, and the public have an interest in the expeditious resolution of [this] case." *U.S. Commodity Futures Trading Comm'n* v. *Lamarco*, No. 2:17 Civ. 4087, 2018 WL 2103208, at *5 (E.D.N.Y. May 7, 2018). Those interests in a just, speedy resolution are heightened because Plaintiffs have already endured a prolonged stay of discovery during the pendency of Defendants' motion to dismiss.

Perhaps even more importantly, Defendants concede that they are not even in a position to move to compel arbitration at this time since they need discovery, including discovery from Plaintiffs, prior to filing such a motion. (This, of course, is due to the fact that Defendants do not actually have copies of any arbitration agreements with Plaintiffs—*because Defendants were not parties to them*.) Plaintiffs, in turn, would also seek discovery about the contractual and other relationships between Defendants and ACN in order to oppose the motion and distinguish this case from the rare scenarios in which courts have permitted non-parties to enforce arbitration agreements. Given that such discovery would necessarily overlap with merits discovery in any event, the more efficient course would obviously be to proceed as one would in any case in which a party believes it may have a potentially dispositive motion depending on what it finds in discovery: allow discovery on all issues, and Defendants can make their motion in due course.

## C. Plaintiffs' Proposed Schedule and Proposed Protective Order

### 1. Proposed Schedule

Plaintiffs remain committed to pursuing discovery expeditiously and submit a revised proposed Case Management Plan and Scheduling Order including a six-month fact-discovery period, with an additional three months for expert discovery. Those periods are adapted from, and generally consistent with, deadlines in the proposed case management plan jointly submitted by the parties on December 6, 2018 (Doc. No. 48).

4

2.  <u>Protective Order</u>

As the Court is aware, the parties have extensively briefed and argued the issue of pseudonymity. (Doc. Nos. 3, 4, 46, 52, 59.) During the December 2018 initial conference, the Court made findings of fact,[3] concluding that the potential harms Plaintiffs face "are real, significant, and present an unwarranted obstacle to those who would seek to vindicate their rights in federal court." (Doc. No. 59 at 27:10-12.) By contrast, the Court found that, in the circumstances of this case, "the public interest in knowing the specific identity of the named plaintiffs or the class members they would represent is minimal." (*Id.* at 28:10-12.) Based on those findings, the Court granted Plaintiffs' motion, concluding that "plaintiffs have met their burden of showing that they face at least risks of harm." (*Id.* at 26:8-9.)

Immediately following this Court's decision on Defendants' motion to dismiss, Plaintiffs proposed to Defendants a protective order governing discovery in this action. Recognizing that the Court granted Defendants' original motion to stay discovery at least partly because of a concern that without careful consideration of how to manage disclosure of Plaintiffs' identities, the "cat [could get] out of the bag," and "events could get ahead of us" (*Id.* at 29:24-30:1), Plaintiffs took heed of the Court's directive that pseudonymity would need to be revisited following a decision on the motion to dismiss. (Doc. No. 54.)

We respectfully submit that Plaintiffs' proposed protective order provides a workable solution to the question of how to continue to protect Plaintiffs while proceeding with discovery. (*See* Doc. No. 59 at 29:23-30:1.)[4] The order would permit disclosure of Plaintiffs' identities to Defendants and their counsel, while preserving Plaintiffs' public anonymity to protect Plaintiffs against the very real risks that the Court identified. Courts in the Southern District routinely permit plaintiffs to proceed pseudonymously through discovery in this manner.[5]

Indeed, the parties are mostly in agreement as to the substantive provisions in the protective order since Defendants have proposed adopting it, but only with respect to the limited discovery that they seek in connection with their proposed motion to compel arbitration. But it would be very inefficient, not to mention time-consuming, for the parties to enter into one protective order with respect to the discovery Defendants want on their motion to compel arbitration and another protective order with respect to the rest of discovery. Instead, there should be one protective order that governs all discovery. Accordingly, Plaintiffs respectfully submit their proposed protective order to the Court. (*See* Exhibit A.)

---

[3] For example, the Court found that Plaintiffs had cited "ample evidence of retaliation and other harms in other cases in similar circumstances, which is sufficient to meet their burden" (Doc. No. 59 at 27:3-5), and that Defendants' "consistent pattern of past conduct . . . gives rise to a reasonable inference that [Plaintiffs] may suffer harm as a result of being identified in this action" (*id.* at 26:10-12).

[4] Because the proposed protective order addresses the only consideration that has changed since the Court granted Plaintiffs' motion to proceed under pseudonyms, Plaintiffs request that the Court allow its order regarding pseudonymity to continue through the end of discovery.

[5] *See, e.g.*, *Feibleman* v. *Trs. of Columbia Univ. in the City of New York*, No. 19 Civ. 4327, Doc. No. 43 (S.D.N.Y. June 28, 2019) (Caproni, J.); *Doe* v. *Lima*, 270 F. Supp. 3d 684 (S.D.N.Y. 2017) (Engelmayer, J.), *aff'd*, 758 F. App'x 181 (2d Cir. 2019); *Doe* v. *Delta Airlines, Inc.*, 310 F.R.D. 222 (S.D.N.Y. 2015) (Engelmayer, J.), *aff'd*, 672 F. App'x 48 (2d Cir. 2016) (Engelmayer, J.); *Doe* v. *Goord*, No. 04 Civ 570, 2005 WL 3116413 (S.D.N.Y. Nov. 22, 2005) (Peck, M.J.); *Roe* v. *City of New York*, 232 F. Supp. 2d 240 (S.D.N.Y. 2002) (Sweet, J.).

**Defendants' Statement**

## I.    **The Motion to Compel Arbitration**

Defendants respectfully request that the Court enter an order pursuant to the Federal Arbitration Act ("FAA") compelling Plaintiffs to arbitrate their claims against Defendants, and to stay litigation of this action pending a decision on Defendants' motion and any subsequent arbitration ordered by the Court.  *See* 9 U.S.C. §§ 3-4.

**A.    *The Relevant Facts Pled or Incorporated in the Complaint.*** Plaintiffs allege that they paid money to a multi-level marketing company, American Communications Network ("ACN"), to become Independent Business Owners ("IBOs") for ACN.  Plaintiffs further allege that they failed to recoup this initial investment in ACN and that they registered for ACN because of a fraud perpetrated by ACN (whom Plaintiffs have not sued) and Defendants.  In particular, Plaintiffs contend that, while acting as ACN's paid spokesperson, Donald J. Trump understated the risks and overstated the benefits of the ACN business opportunity, and that Mr. Trump and ACN failed to disclose that ACN was paying him for his endorsement.  In order to become IBOs, ACN required Plaintiffs to enter into written agreements with ACN (the "IBO Agreements").  In 2013 and 2014, when Plaintiffs Moe, Doe and Loe became IBOs, the IBO Agreements contained the following arbitration clause:  "In the event of a dispute between me and ACN as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is agreed that such disputes shall be exclusively resolved through binding arbitration before the American Arbitration Association" ("AAA").  In 2016, when Plaintiff Roe signed up, the IBO Agreement stated that "ACN and I will resolve all disputes through binding arbitration before the [AAA] . . . . Both ACN and I agree that all disputes will be resolved on an individual basis and that each may only bring claims against the other in an individual capacity (and not as a claimant or class member in any purported class or representative proceeding)." *See* Exhs. 7-9, Affirmation of Cynthia Chen in Support of Defendants Motion to Dismiss the Complaint, dated February 21, 2019.  Defendants are not signatories to these agreements.

**B.    *The Legal Standard.*** The FAA "is an expression of 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010).  The Second Circuit "has said that 'it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied.'" *Id.* This "policy in favor of arbitration" extends, in certain circumstances, to parties that are not signatories to the underlying agreements.  Second Circuit law is unambiguous on this point:  "[u]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed …, and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Id.* at 126-27 (internal quotation marks omitted).  "In addition to the 'intertwined' factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement."  *Id.* at 127 (internal quotation marks and modifications omitted).

Separate and apart from the doctrine of equitable estoppel, an agency relationship between a contracting party and a non-signatory may supply a basis for compelling arbitration with a non-signatory. While it is an open question in the Second Circuit, *Ross v. American Exp. Co.*, 547 F.3d 137, 143 n.3 (2d. Cir. 2008), courts in this district have held that "employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 650 (S.D.N.Y. 2011) (internal quotation marks omitted). *See also Dunmire v. Hoffman*, No. 05 Civ. 4852(DAB), 2006 WL 2466248, at *3 (S.D.N.Y. Aug. 24, 2006) ("Generally, employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."); *accord Bankers Conseco Life Ins. Co. v. Feuer*, 16 Civ. 7646 (ER), 2018 WL 1353279 (S.D.N.Y. Mar. 15, 2018).

   **C.   *Discussion.*** Plaintiffs' claims are arbitrable under both theories. Under the doctrine of equitable estoppel, the claims against Defendants are plainly "intertwined with" the agreement that Plaintiffs signed with ACN. *See Ragone*, 595 F.3d at 127. All of Plaintiffs' claims rest upon the allegation that Mr. Trump made statements and or omitted facts about ACN while employed as the company's spokesperson, by which Plaintiffs were harmed. The alleged statements and omissions appeared on ACN DVDs, in magazine articles published by ACN, and at ACN rallies, in response to questions put to Mr. Trump by an ACN host. (Amended Compl. ¶¶ 80-103, 137-155; *see also id.* ¶ 138 ("ACN promotional videos . . . failed to disclose that Trump was being paid for his endorsement"); *id.* ¶ 139 ("Neither Trump nor ACN disclosed to the audience that Trump was paid for this appearance")). Indeed, the Amended Complaint declares ACN "central to" the claims asserted against Defendants (*id.* ¶ 16), and Mr. Trump's endorsement "critical" to the success of ACN (*id.* ¶ 85). According to Plaintiffs, "[i]t was ACN's ability to associate itself with the Trump brand – a right that ACN secretly bought from the Trump Enterprise – that drove the fraudulent message home and pushed investors to overcome lingering doubts and invest in the ACN business opportunity." (*Id.* ¶ 177; *see also id.* ¶ 170 ("ACN itself . . . boasted of its relationship with Trump and the legitimacy the Trump brand afforded the Company"); *id.* ¶ 173 ("ACN made . . . clear that Trump's brand was an impactful recruiting tool for [IBOs] in two principal ways: first, it attracted the interest of prospective [IBOs] and second, it would help close the deal with prospective recruits"); *id.* ¶ 174 ("One of the most important tools available to ACN representatives today is obviously the Donald J. Trump endorsement" (emphasis removed)).)[6]

   The requisite relationship between Plaintiffs and Mr. Trump is also present. Over nearly 200 pages, Plaintiffs sound a single complaint: Mr. Trump is the reason they signed up as IBOs, paid money to ACN and sustained damages. Plaintiffs chose to become IBOs not because friends and family vouched for ACN, although they did, and not due to anything Plaintiffs learned from the IBO testimonials they viewed on DVDs, read in ACN magazines or heard live at recruitment meetings – but because Mr. Trump endorsed the company. By their own pleading, it was Mr. Trump's endorsement of ACN that caused Plaintiffs to enter into the very contracts by which they agreed to arbitrate with ACN. At the time Plaintiffs signed those agreements, it therefore was predictable – indeed, it was obvious – that any dispute that might arise between Plaintiffs and ACN concerning the ACN experience would likely implicate Mr. Trump. This case thus fits the "pattern" of decisions in this Circuit that have applied the doctrine of equitable

---

[6] These facts likewise establish an agency relationship between ACN and Mr. Trump sufficient to compel Plaintiffs to arbitrate with Defendants on that basis.

estoppel to require signatories to arbitrate with non-signatories on a theory of consent. *See Ross*, 547 F.3d at 145 (2d Cir. 2008) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354 (2d Cir. 2008)). Here, as in those cases, the promise to arbitrate by one signatory is "reasonably seen . . . as extending not only to the other signatory, but also to a non-signatory related to the latter . . . that was, or would predictably become, with the knowledge and consent of the party opposing arbitration, affiliated or associated with the other signatory in such a manner as to make it unfair to allow the party opposing arbitration to avoid its commitment to arbitrate on the ground that the non-signatory was not the very entity with which the party opposing arbitration had a contract." *Ross*, 547 F.3d at 145-46 (internal quotation marks and modifications omitted).

Courts in this Circuit have applied principles of equitable estoppel on facts less compelling than those present here. *See, e.g., Ragone*, 595 F.3d at 128 (affirming ruling compelling arbitration of harassment claims brought against non-signatory where plaintiff understood when she contracted with signatory that she would be working closely with non-signatory); *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005) (vacating denial of motion to compel plaintiffs to arbitrate with non-signatory Deutsche Bank and signatory BDO Seidman, where plaintiffs asserted Deutsche Bank and BDO Seidman jointly marketed fraudulent tax shelters to plaintiffs); *Bankers Conseco Life Ins. Co.*, 2018 WL 1353279, at *6-7 (compelling arbitration where plaintiff alleged non-signatory defendants fraudulently induced it to enter contract with signatory); *Cooper v. Ruane Cunniff & Goldfarb Inc.*, No. 16-CV-1900 (WHP), 2017 WL 3524682, at *7-8 (S.D.N.Y. Aug. 15, 2017), *appeal withdrawn*, 2017 WL 8219086 (2d Cir. Dec. 19, 2017) (granting motion to compel arbitration where plaintiff asserted signatory employer and non-signatory investment advisor acted together to breach fiduciary duties owed plaintiff); *cf, Ross*, 547 F.3d at 148 (reversing order compelling arbitration where non-signatory defendant Amex was a "complete stranger" to the arbitration agreements between plaintiffs and the rival banks who issued plaintiffs' credit cards); *Sokol*, 542 F.3d at 362 (same, where the proffered "close relationship" between the non-signatory and plaintiff arose entirely from the non-signatory's tortious interference with the contract between plaintiff and signatory containing the arbitration clause).

**D.     *The Motion to Compel Arbitration is Timely.*** On December 20, 2018, the Court stayed discovery pending resolution of Defendants' motion to dismiss for failure to state a claim. (ECF No. 54.) On July 24, 2019, the Court granted in part and denied in part that motion. (ECF No. 97.) On August 1, 2019, the Court stayed all discovery pending the parties' appearance at a conference on September 5. (ECF No. 102.) Other than serving third parties with document preservation notices, no action has been taken to advance the lawsuit. Under such circumstances there is no waiver of the right to arbitrate. *See, e.g., Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 527 (S.D.N.Y. 2015) ("Merely answering on the merits, appearing at hearings, and participating in discovery, without more, will not necessarily constitute a waiver.") (citing *Gen. Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 891 F. Supp. 946, 953 (S.D.N.Y. 1995)); *Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 434 F. Supp. 2d 211, 219 (S.D.N.Y. 2006) (granting defendant's motion to stay case and compel arbitration under 9 U.S.C. §§ 3-4, filed even after defendant lost its Rule 12(b)(6) motion). *See also Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887-91 (2d Cir. 1985) (finding motion to compel arbitration timely after defendant filed its motion to dismiss, answered, and participated in discovery); *accord Sweater*

*Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463-66 (2d Cir. 1985) (motion to compel arbitration timely after 12(b)(6) motion was briefed and decided).

## II.    The Motion to Stay Merits Discovery Pending Decision on the Motion to Compel

On August 1, 2019, Defendants moved the Court to stay discovery in this case pending briefing and a decision on the contemplated motion to compel arbitration. (ECF Nos. 101 & 102.)  We renew that motion and respectfully refer the Court to our August 1 filing for the legal authorities that support it. *Id.* at 3-4.  Defendants nonetheless request that the Court authorize limited fact discovery or take evidence sufficient to establish that Plaintiffs in fact agreed to arbitrate with ACN. *See Dreyfuss v. eTelecare Glob. Sols.-US, Inc.*, No. 08 CIV. 1115 (RJS), 2008 WL 4974864, at *2 (S.D.N.Y. Nov. 19, 2008), *aff'd*, 349 F. App'x 551 (2d Cir. 2009) (deciding motion to compel arbitration only after allowing limited discovery into existence of arbitration agreement); *Brennan v. Bally Total Fitness*, 153 F. Supp. 2d 408, 416-17 (S.D.N.Y. 2001) (finding limited discovery necessary to decide motion to compel arbitration).

Limited discovery or fact-finding by the Court is required in this case to establish Plaintiffs agreed to arbitrate with ACN.  As a first step, Plaintiffs must disclose their identities, so that ACN can search its files for Plaintiffs' IBO Agreements.  To that end, on July 31, 2019, Defendants and ACN provided Plaintiffs written undertakings to maintain Plaintiffs' identities on a "lawyer's eyes only" basis.  (Defendants made that offer notwithstanding that Plaintiffs are no longer entitled to anonymity in this Court, the motion to dismiss having been decided and Plaintiffs having failed to renew their motion to proceed under pseudonyms, as directed by the Court. (ECF No. 54.))  Plaintiffs rejected that offer, insisting the parties instead negotiate a formal protective order.  The parties exchanged drafts and conferred extensively, but they have not been able to agree upon a proposed order.  Defendants are willing to adopt virtually wholesale the substantive confidentiality provisions set forth in Plaintiffs' draft protective order (dated July 25, 2019), and have conveyed this to Plaintiffs.  The parties' disagreement centers on the term or duration of the protective order:  Defendants do not object to an order that protects Plaintiffs' identities from disclosure until the Court decides the motion to compel arbitration.  Plaintiffs, on the other hand, seek a protective order that preserves their anonymity through merits discovery and trial.  Defendants object to this on two grounds:  <u>First</u>, no such order is necessary.  If the Court grants the motion to compel arbitration, there will be no merits discovery, no trial nor any other proceedings in this Court, pending completion of the arbitration.  If the Court denies the motion, the parties can negotiate an all-purpose protective order at that time.  <u>Second</u>, whether and to what extent Plaintiffs will be permitted to proceed pseudonymously during merits discovery or at trial is not before the Court, and Defendants oppose Plaintiffs' bid to settle that issue now, in their favor, via debates about the scope of a protective order that need only apply while arbitrability is determined.

Defendants continue to believe the undertakings contained in their July 31 letter are adequate to protect Plaintiffs at this time.  We therefore have asked Plaintiffs to include with this joint submission a copy of that letter, together with a copy of Defendants' proposed protective order (also dated July 31, 2019), for the Court's consideration.  (Defendants' proposed protective order is an attachment to the July 31 letter, so Plaintiffs need only attach for the Court's review Defendants' July 31 letter with attachments.)  Defendants respectfully ask the Court to "so

order" the written promises contained in the July 31 letter or, in the alternative, to enter Defendants' proposed protective order or one like it.

One final point.  During the parties' meet and confer, Plaintiffs argued there should be no stay nor a bifurcation of discovery in this case – that discovery on all subjects should proceed now.  The parties should make whatever motions they wish to make once they have developed the factual bases for those motions, as they would "in any civil case," Plaintiffs' averred.  That argument overlooks the fact that, in the typical case, Plaintiffs' names would appear in the caption and Defendants could have asked ACN to search its records for Plaintiffs' IBO Agreements months ago, conceivably without formal fact-finding of any kind.  It also ignores the authorities already cited to the Court (ECF No. 101) that make clear a Court presented with a motion to compel arbitration may stay merits discovery while permitting limited discovery on the question of arbitrability.  Defendants respectfully request the Court enter such an order.

Defendants propose filing their motion to compel arbitration within <u>ten days</u> of concluding discovery on whether Plaintiffs' agreed to arbitrate with ACN.  Defendants request <u>seven days</u> within which to file a brief in reply to Plaintiffs' opposition to that motion.

Respectfully submitted,


 /s/ Roberta A. Kaplan                          /s/ Joanna C. Hendon
Roberta A. Kaplan                              Joanna C. Hendon
John C. Quinn                                  Cynthia Chen
Joshua Matz                                    Andrew L. Kincaid
Alexander J. Rodney
Matthew J. Craig
Emily C. Cole                                  SPEARS & IMES LLP
                                               51 Madison Avenue
KAPLAN HECKER & FINK LLP                       New York, New York 10010
350 Fifth Avenue, Suite 7110                   Telephone: (212) 213-6996
New York, New York 10118                       Facsimile: (212) 213-0849
Telephone: (212) 763-0883                      jhendon@spearsimes.com
Facsimile: (212) 564-0883                      cchen@spearsimes.com
rkaplan@kaplanhecker.com                       akincaid@spearsimes.com
jquinn@kaplanhecker.com
jmatz@kaplanhecker.com
arodney@kaplanhecker.com
mcraig@kaplanhecker.com                        *Attorneys for Defendants*
ecole@kaplanhecker.com



Andrew G. Celli, Jr.
Matthew D. Brinckerhoff
O. Andrew F. Wilson
Katherine Rosenfeld
David Berman

EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue at Rockefeller Center
New York, NY 10020
Telephone: (212) 763-5000
acelli@ecbalaw.com
mbrinckerhoff@ecbalaw.com
awilson@ecbalaw.com
krosenfeld@ecbalaw.com
dberman@ecbalaw.com


*Attorneys for Plaintiffs*

11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JANE DOE, LUKE LOE, RICHARD ROE, and
MARY MOE, individually and on behalf of all
others similarly situated,

*Plaintiffs*,

*v.*

THE TRUMP CORPORATION, DONALD J.
TRUMP, in his personal capacity,
DONALD TRUMP JR., ERIC TRUMP, and
IVANKA TRUMP,

*Defendants*.

---

1:18 Civ. 9936 (LGS)

<u>CIVIL CASE
MANAGEMENT PLAN
AND SCHEDULING
ORDER</u>

LORNA G. SCHOFIELD, United States District Judge:

  This Civil Case Management Plan is submitted by the parties in accordance with
Fed. R. Civ. P. 26(f)(3).

1. All parties [consent_____/ do not consent ___X___] to conducting all further proceedings
before a United States Magistrate Judge, including motions and trial. *See* 28 U.S.C. §
636(c). The parties are free to withhold consent without adverse substantive
consequences.

2. The parties [have ___X___/ have not_____] conferred pursuant to Fed. R. Civ. P. 26(f).

3. This case is governed by one of the following sets of rules, and the parties' proposed
dates in this order have been adjusted accordingly.

  a. An employment case governed by the Initial Discovery Protocols for
Employment cases?
[Yes_____/ No ___X___]

  b. A case governed by Local Civil Rule 83.10, Plan for Certain § 1983
Cases Against the City of New York?
[Yes_____/ No ___X___]

  c. A patent case subject to the Local Patent Rules and the Court's
Individual Rules?
[Yes_____/ No ___X___]

  d. A wage and hour case governed by Initial Discovery Protocols for Fair
Labor Standards Act?
[Yes_____/ No ___X___]

4.      Alternative Dispute Resolution/Settlement

      a.      Settlement discussions [have_____/ have not ___X___] taken place.

      b.      Counsel for the parties have discussed an informal exchange of information in aid of early settlement and have agreed to exchange the following:

          N/A._____

          _____
          _____

      c.      Counsel for the parties have discussed the use of the following alternate dispute resolution mechanisms for use in this case: (i) a settlement conference before a Magistrate Judge; (ii) participation in the District's Mediation Program; and (iii) retention of a private mediator. Counsel for the parties propose the following alternate dispute resolution mechanism for this case:

          The Parties have discussed the possibility of early settlement.  The Parties agree that the possibility of early settlement is unlikely, and that discussion of the form or timing of alternative dispute resolution is premature at this stage of the litigation.

      d.      Counsel for the parties recommend that the alternate dispute resolution mechanism designated in paragraph 4(c) be employed at the following point in the case (*e.g.*, within the next 60 days; after the deposition of plaintiff is completed (specify date); after the close of fact discovery):

          N/A._____

          _____
          _____

      **e.      The use of any alternative dispute resolution mechanism does not stay or modify any date in this Order.**

5.      No additional parties may be joined after 21 days following service by Defendants of a pleading responsive to the Complaint or a motion under Rule 12(b), (e), or (f) without leave of Court.

6.      Amended pleadings may be filed without leave of Court until 21 days following service by Defendants of a pleading responsive to the Complaint or a motion under Rule 12(b), (e), or (f).

7.      Initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) shall be completed no later than:

      The parties exchanged initial disclosures on December 10, 2018.

8.      Fact Discovery

[Plaintiffs' Proposal

    a.      Defendants shall file their Answer no later than <u>September 26, 2019</u>.

    b.      All fact discovery shall be completed no later than <u>March 3, 2020.</u>

    c.      Initial requests for production of documents pursuant to Fed. R. Civ. P. 34 shall be served by <u>September 26, 2019.</u>

    d.      Responses and Objections should be served by <u>November 4, 2019</u>.

    e.      Initial interrogatories pursuant to Fed. R. Civ. P. 33 shall be served by <u>November 4, 2019</u>.

    f.      Depositions pursuant to Fed. R. Civ. P. 30, 31 shall be completed by <u>March 3, 2020</u>.

    g.      Initial requests to admit pursuant to Fed. R. Civ. P. 36 shall be served by <u>January 3, 2020.</u>

    h.      Any of the deadlines in paragraphs 1(c) through 1(g) may be extended by the written consent of all parties without application to the Court, provided that all fact discovery is completed by the date set forth in paragraph 1(b).]

[Defendants' Proposal

    a.      Defendants shall file their Answer no later than 21 days after the Court resolves Defendants' motion to compel arbitration.

    b.      All fact discovery shall be completed no later than 180 days after the Court resolves Defendants' motion to compel arbitration.

    c.      Initial requests for production of documents pursuant to Fed. R. Civ. P. 34 shall be served no later than 21 days after the Court resolves Defendants' motion to compel arbitration.

    d.      Responsive documents shall be produced beginning no later than 30 days after the date listed in paragraph 8(c).

    e.      Initial interrogatories pursuant to Fed. R. Civ. P. 33 shall be served no later than 60 days after the Court resolves Defendants' motion to compel arbitration.

    f.      Depositions pursuant to Fed. R. Civ. P. 30, 31 shall be completed by the

date listed in paragraph 8(b) (*i.e.*, the close of fact discovery).

g.  Initial requests to admit pursuant to Fed. R. Civ. P. 36 shall be served no later than 120 days after the Court resolves Defendants' motion to compel arbitration.

h.  Any of the deadlines in paragraphs (c) through (g) above may be extended by the written consent of all parties without application to the Court, provided that all fact discovery is completed by the date set forth in paragraph (b).]

9.  Expert Discovery

[Plaintiffs' Proposal]

a.  Anticipated types of experts if any:
Accounting experts, experts regarding the ACN business opportunity; structural economists, econometrics, and damages experts; experts regarding class certification issues; and other experts to be determined in due course.

b.  All expert discovery shall be completed no later than June 2, 2020, or such other date to be set following the submission of the parties' joint proposal pursuant to paragraph 2(c).

c.  If you have identified types of experts in question 2(a), by February 3, 2020, the parties shall meet and confer and submit a joint proposal on a schedule for expert disclosures, including reports, production of underlying documents and depositions, provided that (i) expert report(s) of the party with the burden of proof shall be due before those of the opposing party's expert(s); and (ii) all expert discovery shall be completed by the date set forth in paragraph 2(b).]

[Defendants' Proposal]

a.  Experts regarding the direct selling and/or multi-level marketing industries, and any other type of expert that any party shall reasonably notice to the opposing side.

b.  All expert discovery shall be completed no later than 90 days after the date listed in paragraph 8(b) (*i.e.*, the close of fact discovery).]

10.  This case is [is __X__ / is not_____] to be tried to a jury.

11.     Counsel for the parties have conferred and their present best estimate of the length of trial is <u>two to four weeks_____</u>.

12.     Status Letters and Conferences

[Plaintiffs' Proposal]

a.     By <u>October 28, 2019</u>, the parties shall submit a joint status letter, as outlined in Individual Rule IV.A.2.

b.     By <u>March 19, 2020</u>, the parties shall submit a joint status letter, as outlined in Individual Rule IV.A.2 and, in the event that they have not already been referred for settlement discussions, shall also advise the Court whether or not they request a referral for settlement discussions.

c.     On a date agreeable to the Court, no sooner than six weeks from June 2, 2020, a pre-motion conference will be held for any anticipated dispositive motions.

  i.     A party wishing to file a summary judgment or other dispositive motion shall file a pre-motion letter at least two weeks before the conference and in the form provided in the Court's Individual Rule III.A.1. Any party wishing to oppose shall file a responsive letter as provided in the same Individual Rule. The motion will be discussed at the conference.

  ii.     If no pre-motion letter is timely filed, this conference will be canceled and the matter placed on the Court's trial-ready calendar. The parties will be notified of the assigned trial-ready date and the filing deadlines for pretrial submissions. The parties are warned that any settlement discussions will not stay pretrial deadlines or the trial date.]

[Defendants' Proposal]

a.     By _____, the parties shall submit a joint status letter, as outlined in Individual Rule IV.A.2.

        The parties have already appeared before the Court for an initial case management hearing.

b.     By _____, the parties shall submit a joint status letter, as outlined in Individual Rule IV.A.2 and, in the event that they have not already been referred for settlement discussions, shall also advise the Court

whether or not they request a referral for settlement discussions as provided in Paragraph 4(c) above.

<u>The parties have already appeared before the Court for an initial case management hearing.</u>

     c.     On a date agreeable to the Court, no sooner than six weeks from the close of all discovery, a pre-motion conference will be held for any anticipated dispositive motions.

          i.  A party wishing to file a summary judgment or other dispositive motion shall file a pre-motion letter at least two weeks before the conference and in the form provided in the Court's Individual Rule III.A.1. Any party wishing to oppose shall file a responsive letter as provided in the same Individual Rule. The motion will be discussed at the conference.

          ii.  If no pre-motion letter is timely filed, this conference will be canceled, and the matter placed on the Court's trial-ready calendar. The parties will be notified of the assigned trial-ready date and the filing deadlines for pretrial submissions. The parties are warned that any settlement discussions will not stay pretrial deadlines or the trial date.]

[Plaintiffs' Proposal

     This Order may not be modified or the dates herein extended, except as provided in paragraph 8(h)) or by further Order of this Court for good cause shown. Any application to modify or extend the dates herein, except as provided in paragraph 8(h), shall be made in a written application in accordance with the Court's Individual Rules and shall be made no less than 2 business days prior to the expiration of the date sought to be extended.

     The Clerk of Court is directed to enter the dates under paragraphs 8, 9, and 12 into the Court's calendar.]

[Defendants' Proposal

     This Order may not be modified or the dates herein extended, except as provided in paragraph 8(h)) or by further Order of this Court for good cause shown. Any application to modify or extend the dates herein, except as provided in paragraph 8(h), shall be made in a written application in accordance with the Court's Individual Rules and shall be made no less than 2 business days prior to the expiration of the date sought to be extended.

The Clerk of Court is directed to enter the dates under paragraphs 5, 6, 8(a), 9(b) and 12 (c) into the Court's calendar.]

SO ORDERED.

Dated: New York, New York

_____
LORNA G. SCHOFIELD
United States District Judge

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

JANE DOE, LUKE LOE, RICHARD ROE, and
MARY MOE, individually and on behalf of all
others similarly situated,

<em>Plaintiffs</em>,

<em>v.</em>

THE TRUMP CORPORATION, DONALD J.
TRUMP, in his personal capacity,
DONALD TRUMP JR., ERIC TRUMP, and
IVANKA TRUMP,

<em>Defendants</em>.

No. 1:18-cv-09936-LGS

## [PROPOSED] PROTECTIVE ORDER

LORNA G. SCHOFIELD, United States District Judge:

WHEREAS, all the parties to this action (collectively the "Parties" and individually a "Party") have requested that this Court issue a protective order;

WHEREAS, Defendants wish to seek limited discovery in connection with their proposed motion to compel arbitration and otherwise seek to stay discovery pending the resolution of their motion and request that this Court issue a protective order without prejudice to their proposed motion or position with respect to discovery; and

WHEREAS, this Court finds good cause exists for the issuance of an appropriately tailored protective order;

IT IS HEREBY ORDERED that any person subject to this Order—including without limitation the parties to the action; their attorneys, representatives, employees, agents, experts, and consultants, acting as such; all third parties providing discovery in this action; and all other interested persons with actual or constructive notice of this Order—shall adhere to the following terms, upon pain of contempt:

Confidential Identity Information

1.     "Confidential Identity Information" is hereby defined as (i) the identities of Plaintiffs Jane Doe, Luke Loe, Richard Roe, and Mary Moe, and (ii) any documents, information, or materials that may reasonably be expected to lead to the identification of those Plaintiffs as the individuals who filed the action.

2.     Any person subject to this Order shall not disclose Confidential Identity Information to anyone else except as this Order expressly permits, and shall take all due precautions to

prevent the unauthorized or inadvertent disclosure.

<u>Discovery Materials May Be Designated as Confidential and/or Confidential Identity Information</u>

3. A person producing "Discovery Material" (*i.e.*, information of any kind provided in the course of discovery in this action) may designate as Confidential any material or portion thereof that contains trade secrets, proprietary business information, competitively sensitive information, or other information the disclosure of which would, in the good faith judgment of the designating person, be seriously detrimental to the producing person's business or personal interests. A person producing Discovery Material may designate as Confidential Identity Information any material or portion thereof that, in the good faith opinion of the producing person, meets the definition of Confidential Identity Information in paragraph 1 above.

4. Any person subject to this Order who receives from any other person any Discovery Material that is designated as Confidential or Confidential Identity Information (together, "Protected Material") shall not disclose such Protected Material to anyone else except as expressly permitted hereunder. Protected Material shall be used solely in connection with the litigation of this action and for no other purpose whatsoever, provided that nothing in this Order shall limit disclosure or use by a producing person of its own Protected Material.

5. Where the portion of Discovery Material constituting Protected Material is reasonably separable from the non-Protected Material portion, only the portion constituting Protected Material shall be so designated. Any party that intends to use only non-Protected Material portions of a document containing Protected Material as part of a motion, or at a deposition or trial, may request that the producing party provide a redacted version of that document.

6. With respect to the protected portion of any Discovery Material other than deposition transcripts and exhibits, the producing person or that person's counsel may designate Discovery Material or any portion thereof as "Confidential" or "Confidential Identity Information" by stamping or otherwise clearly marking as "Confidential" or "Confidential Identity Information," respectively, the protected document or portion in a manner that will not interfere with legibility or audibility. Deposition testimony may be designated as Confidential and/or Confidential Identity Information either on the record during the deposition or in writing within two business days of receipt of the transcript. If so designated, the final transcript of the designated testimony shall be bound in a separate volume and bear the notation "Confidential Information Governed by Protective Order," "Confidential Identity Information Governed by Protective Order," or "Confidential Information and Confidential Identity Information Governed by Protective Order."

7.      If at any time prior to the trial of this action, a producing person believes in good faith that Discovery Material or a portion thereof that that person previously produced without limitation should be designated as "Confidential" and/or "Confidential Identity Information," the producing person may so designate that material or portion by promptly notifying all parties in writing. Such designated Discovery Material will thereafter be treated as Confidential and/or Confidential Identity Information under the terms of this Order. In addition, the producing person shall provide each other party with replacement versions of such Discovery Material that bears the appropriate designation within two business days of providing such notice.

8.      Any party may designate, as Confidential or Confidential Identity Information, Discovery Material produced by another party without such a designation, provided that such Discovery Material contains the designating party's own Confidential or Confidential Identity Information. Such designation shall be accomplished by providing written notice to all receiving parties identifying the Discovery Material whose designation is be affected. In addition, the designating party shall provide all receiving parties with replacement versions of such Discovery Material that reflect the new designation.

<u>Who May Receive Protected Material</u>

9.      No person subject to this Order, other than the producing person, shall disclose any Confidential Discovery Material to any other person whomsoever, except to:

      a.      the parties to this action;

      b.      counsel retained specifically for this action, including any paralegal, clerical, or other assistant employed by such counsel to work on this action;

      c.      as to any document, its author, its addressee, and any other person shown on the face of the document as having received a copy;

      d.      any witness who counsel for a party in good faith believes may be called to testify at trial or deposition in this action, provided such person, other than those persons set forth in subparagraphs 9(a) and (c), has first executed a Non-Disclosure Agreement in the form annexed hereto;

      e.      any person retained by a party to serve as an expert witness or consultant or otherwise provide specialized advice to counsel in connection with this action, provided such person has first executed a Non-Disclosure Agreement in the form annexed hereto, and further provided that any such support staff are subject to contractual or professional duties of confidentiality with respect to such material;

      f.      stenographers and video technicians engaged to transcribe or record depositions conducted in this action, provided such persons are subject to contractual or professional duties of confidentiality with respect to such material;

g.   independent photocopying, graphic production services, or other litigation support services employed by the parties or their counsel to assist in this action, including computer service personnel performing duties in relation to a computerized litigation system, provided such persons are subject to contractual or professional duties of confidentiality with respect to such material;

h.   the Court and its staff;

i.   any mediators engaged by the parties; and

j.   any other person whom the producing person, or other person designating the Discovery Material as Confidential, agrees in writing may have access to such Confidential Discovery Material.

10.   No person subject to this Order, other than the Plaintiff whose identity is being protected, shall disclose any Confidential Identity Information to any other person whomsoever, except to:

a.   any person referred to in subparagraphs 9(b), (e), (f), (g), (h), and (i) above;

b.   any non-party witness who counsel for a party in good faith believes may be called to testify at trial or deposition in this action, and who counsel for a party in good faith believes needs access to Confidential Identity Information in order to provide relevant testimony, provided such person has first executed a Non-Disclosure Agreement in the form annexed hereto;

c.   any non-party recipient of a subpoena issued pursuant Federal Rule of Civil Procedure 45 who counsel for a party in good faith believes needs access to Confidential Identity Information in order to provide relevant documents or testimony, provided such person has first executed a Non-Disclosure Agreement in the form annexed hereto;

d.   any other person who the Plaintiff whose identity is being protected agrees in writing may have access to such Confidential Identity Information, provided such person has first executed a Non-Disclosure Agreement in the form annexed hereto.

11.   Prior to the disclosure of any Confidential Discovery Material or Confidential Identity Information to any person referred to in subparagraphs (9)(d) and 10(b), (c), and (d) above, such person shall be provided by counsel with a copy of this Protective Order and shall sign a Non-Disclosure Agreement, in the form annexed hereto, stating that that person has read this Order and agrees to be bound by its terms. To the extent that any such person refuses to sign the Non-Disclosure Agreement, a party may seek proper recourse including, but not limited to, an order directing that such person is subject to the terms set forth herein. Counsel shall retain each signed Non-Disclosure Agreement, hold it in escrow, and produce it to opposing counsel, upon request, either prior to such person being permitted to testify (at deposition or trial) or at the conclusion of the case, whichever comes first.

12.     In the event any person having possession, custody, or control of any Protected Material produced in this action receives a subpoena or other process or order to produce such information, such subpoenaed person or entity shall promptly notify the attorneys of record of the producing party and furnish those attorneys with a copy of said subpoena or other process or order. Nothing in this Order shall be construed to require the party to whom the subpoena or other process or order is directed to give written notice where prohibited by law.

Objecting to Designations of Confidential Material

13.     Any person who objects to any designation of Confidential Material may at any time prior to trial serve upon the designating person and all other parties a written notice stating the grounds of the objection. The designating person and objecting person shall meet and confer within 7 days of such notice. In absence of an agreement otherwise, the Confidential Material will lose its designation 14 days after the written notice of objection, unless the designating party seeks affirmative relief from the Court, in which case the Confidential Material will retain its designation until the Court resolves the dispute. The designating party shall bear the burden of demonstrating the propriety of its designation.

Filing Protected Material in These Actions

14.     If a party wishes to file Confidential Material with the Court, the party shall submit the Confidential Material to the Court in accordance with the procedures for redacted and sealed filings set forth in section I.C.3 of the Court's Individual Rules and Practices in Civil Cases. The party with the interest in confidential treatment bears the burden of persuasion.

15.     If a party wishes to file Confidential Identity Information with the Court, the party shall redact all Confidential Identity Information in its public filing, and shall file an unredacted copy in accordance with section I.C.3. of the Court's Individual Rules and Practices in Civil Cases. Given the Court's prior orders permitting Plaintiffs to proceed under pseudonyms, a party need not seek leave from the Court in order to file Confidential Identity Information in redacted form.

16.     Plaintiffs should be referred to by their respective pseudonyms in all court filings, discovery requests, and correspondence between persons permitted to receive Confidential Identity Information under paragraphs 9 and 10 above.

Inadvertent Disclosure of Privileged Materials

17.     Pursuant to Rule 502 of the Federal Rules of Evidence, if, in connection with this litigation, and despite having taken reasonable steps to prevent the disclosure of information that it claims is subject to a claim of attorney-client privilege or attorney work product, a producing person inadvertently discloses information subject to a claim of attorney-client privilege or attorney work product ("Inadvertently Disclosed Information"), such disclosure, in itself, shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection with respect to the Inadvertently Disclosed Information and its subject matter.

18.     If a disclosing person makes a claim of inadvertent disclosure, all receiving persons shall, within five business days, return or destroy all copies of the Inadvertently Disclosed Information, and provide a certification of counsel that all such information has been returned or destroyed. Consistent with Federal Rule of Civil Procedure 26, a receiving person may also sequester a copy of the Inadvertently Disclosed Information pending resolution of any dispute regarding the status of that Inadvertently Disclosed Information. A receiving party must not use or disclose the Inadvertently Disclosed Information until the claim is resolved.

19.     Within five business days of the notification that such Inadvertently Disclosed Information has been returned or destroyed, the disclosing person shall produce a privilege log with respect to the Inadvertently Disclosed Information.

20.     If a receiving person thereafter moves the Court for an order compelling production of the Inadvertently Disclosed Information, that motion shall be filed under seal, and shall not assert as a ground for entering such an order the mere fact of the inadvertent production. The disclosing person retains the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information. Nothing in this Order shall limit the right of any party to request in camera review of the Inadvertently Disclosed Information.

Right to Assert Other Objections

21.     This Order shall not prejudice the rights of any party or non-party to this action to: (a) oppose production of any information on the ground of the attorney-client privilege, the attorney work product doctrine, non-responsiveness, or any privilege or immunity recognized by this Court or the courts of the State of New York, nor shall it be deemed a waiver of any objection to such production; (b) object to the production of documents or information it considers to be outside the scope of discovery; or (c) object to the authenticity or admissibility into evidence of any document, testimony, or other evidence subject to this Order.

Severability and Retention of Jurisdiction

22.     The invalidity or unenforceability of any provision of this Order shall not affect the validity or enforceability of any other provision of this Order, which shall remain in full force and effect.

23.     This Court shall retain jurisdiction over all persons subject to this Order for so long as such persons are in possession, custody, or control of Protected Material and to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

24.     Upon entry of an order resolving the arbitrability of Plaintiffs' claims, the terms of this Protective Order will remain in force until either party seeks relief from or modification of those terms, and the Court has granted such request.


SO ORDERED.


Dated:

_____

LORNA G. SCHOFIELD
United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, LUKE LOE, RICHARD ROE, and MARY MOE, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>THE TRUMP CORPORATION, DONALD J. TRUMP, in his personal capacity, DONALD TRUMP JR., ERIC TRUMP, and IVANKA TRUMP,<br><br>*Defendants*. | No. 1:18-cv-09936-LGS |

## NON-DISCLOSURE AGREEMENT

I, _____, acknowledge that I have read and understand the Protective Order in this action governing the non-disclosure of Confidential Discovery Material and Confidential Identity Information (together, "Protected Material"). I agree that (1) I will hold in confidence all Protected Material to the extent required by the Protective Order and agree to be bound by the terms of that Order; (2) I will use such Protected Material only for purposes of this litigation and for no other purpose whatsoever; and (3) I will take all due precautions to prevent the unauthorized or inadvertent disclosure of such Protected Material.

By acknowledging these obligations under the Protective Order, I understand that I am submitting myself to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of any issue or dispute arising hereunder, and that my willful violation of any term of the Protective Order could subject me to punishment for contempt of court.

Dated:

_____
[Signature]

# EXHIBIT B

SPEARS & IMES LLP

51 Madison Avenue
New York, NY 10010
tel  212-213-6996
fax 212-213-0849

Joanna C. Hendon
tel 212-213-6553
jhendon@spearsimes.com

July 31, 2019

**By E-Mail & FedEx**

Roberta A. Kaplan, Esq.
Kaplan Hecker & Fink LLP
350 Fifth Avenue Suite 7110
New York, NY  10118

Re: *Jane Doe, et al. v. The Trump Corporation, et al.*, 18 CV 9936 *(LGS)*

Dear Ms. Kaplan:

For the purpose of establishing the arbitrability of Plaintiffs' claims against my clients, I write to request that you provide this firm, on a "lawyers' eyes only" basis, the names, social security numbers, and dates of birth by which your clients identified themselves to American Communications Network ("ACN") in order to become ACN Independent Business Owners ("IBOs"), by August 14, 2019.  By "lawyers' eyes only," we mean lawyers and personnel at this firm assigned to this case.  For ease of reference, we enclose with this letter blank IBO Agreements for the periods in which your client allege they became IBOs, each of which requests applicants furnish their name, social security number, and date of birth to ACN as part of the application process.

We intend to furnish this information to counsel for ACN for the purpose of allowing ACN to collect and produce to Defendants evidence that Plaintiffs entered into IBO Agreements containing mandatory arbitration clauses.  Counsel for ACN has countersigned this letter, confirming its commitment to keep confidential and to share with no one (other than ACN personnel for the purpose of collecting the above-described evidence) the names, dates of birth and social security numbers of Plaintiffs.

Defendants intend to serve ACN with a Rule 45 subpoena in response to which we anticipate ACN will raise whatever objections it has and produce responsive material in its possession.  We expect ACN will require entry of a Protective Order before making any production.  To that end, we enclose our edits to the Protective Order you proposed to us on July 25, 2019.

Roberta A. Kaplan                                                      Page 2
July 31, 2019

        Defendants maintain that no discovery other than that narrowly tailored to establish
arbitrability should occur pending decision by the Court on Defendants' motion to compel
arbitration, and Defendants reserve all of their rights.


                                        Sincerely,

                                        Joanna C. Hendon



AGREED TO:


_____

American Communications Network

By:

Stephanie E. Niehaus, Esq.
Squire Patton Boggs
30 Rockefeller Center
New York, NY  10112

Counsel to ACN

Dated:  July 31, 2019



Encl.

cc: Counsel of Record (by e-mail only)

Roberta A. Kaplan                                                                    Page 2
July 31, 2019

     Defendants maintain that no discovery other than that narrowly tailored to establish arbitrability should occur pending decision by the Court on Defendants' motion to compel arbitration, and Defendants reserve all of their rights.

Sincerely,

Joanna C. Hendon

AGREED TO:

_____
American Communications Network

By:

Stephanie E. Niehaus, Esq.
Squire Patton Boggs
30 Rockefeller Center
New York, NY 10112

Counsel to ACN

Dated:  July 31, 2019

Encl.

cc: Counsel of Record (by e-mail only)

# EXHIBIT 7

**ACN**

ACN Opportunity, LLC
1000 Progress Place
Concord, NC 28025-2449
Phone: 704-260-3226
Fax: 704-260-3652
Email: ACNRepEntryUS@acninc.com
www.acninc.com

# INDEPENDENT BUSINESS OWNER AGREEMENT

| Office Use Only | Data Entry | Date |
|---|---|---|

PLEASE TYPE OR PRINT CLEARLY

| (Circle One): | Individual | Company |
|---|---|---|

## APPLICANT INFORMATION    LIST NAME OR COMPANY, NOT BOTH.

| Last Name | First Name | Middle Initial | Home Telephone (with area code) | Social Security # | Birth date of Applicant |
|---|---|---|---|---|---|

| Company Name (Proof of Company Name, Business Tax ID # or Employer ID # required) | Cellular Telephone (with area code) | Federal Tax I.D.# (if applicable) | Birth date of Principal |
|---|---|---|---|

| Mailing Address | City | State | Zip Code |
|---|---|---|---|

| Email Address |
|---|

## SPONSOR INFORMATION

| Last Name | First Name | Middle Initial | Telephone (with area code) | Business ID |
|---|---|---|---|---|

## US TERMS AND CONDITIONS

I acknowledge that I have received and reviewed the ACN Independent Business Owner Agreement, including these US Terms and Conditions and the ACN Policies and Procedures and the ACN Compensation Plan, which are hereby incorporated into and made part of this ACN Independent Business Owner Agreement by reference (collectively, the "Agreement"). By signing below, I agree to comply with, and be bound by, the terms and conditions set forth in the Agreement.I acknowledge and agree that the Agreement will become a binding agreement upon me and ACN Opportunity, LLC, a North Carolina limited liability company, only upon acceptance by ACN, and that ACN will notify me of acceptance of the Agreement via email to the email address I submit with this Agreement. I understand that ACN has the right to accept or reject my application to become an Independent Business Owner ("IBO") in its sole discretion. For purposes of this Agreement, ACN Opportunity, LLC and its parents, subsidiaries and affiliates are referred to as "ACN". I understand that there is no requirement beyond entering into this Agreement and payment of the initial fee (which includes the purchase of a Team Trainer Kit which is sold at ACN's cost) to become an IBO. No other purchase of sales or training materials or other services are required to become an IBO and my purchase of sales aids, training materials or training is strictly voluntary. I understand that my advancement to higher qualification levels in the ACN Compensation Plan is based upon the acquisition of customers and the usage by such customers of products and services offered by ACN ("ACN Products & Services"), and that I am not obligated to purchase ACN Products and Services. I also understand that if I choose to sponsor others to become IBOs and participate in ACN's Compensation Plan, I will not receive any compensation whatsoever for the act of sponsoring or recruiting, and that I will be compensated based upon the activities of other IBOs only to the extent of sales made by them to customers of ACN Products and Services.

I, I, the undersigned applicant, represent that I am of legal age to enter into legally binding agreements, and that the information submitted in connection with my application to become an IBO is complete, true and correct. I agree to promptly notify ACN of any changes to such information. If I am executing this Agreement on behalf of a corporation, limited liability company, partnership, trust or other entity, I represent that I have the authority to enter into such agreements for the entity, but nonetheless I agree that in addition to such entity, I will be personally responsible for the performance of all the duties and obligations described in this Agreement.

**PLEASE SEE PAGE 2 FOR ADDITIONAL TERMS & CONDITIONS**

## CANCELLATION

I may cancel this transaction, without penalty or obligation, for a full refund, within ten (10) business days from the date of this Agreement, exclusive of the date of signing. I understand that if I cancel after the ten (10) day period, I am not entitled to a full refund. This limitation is not applicable in Georgia or where superseded by any state law. If I cancel within the ten (10) business days from the date of this Agreement, any payments made by me under this Agreement and any instrument executed by me will be returned within fifteen (15) business days following receipt by ACN of my Cancellation Notice. If I cancel, I will return any literature or materials I have received from ACN in substantially as good condition as when received. To cancel this Agreement, I must deliver personally or via courier or by registered or certified mail return receipt requested, a written, signed, dated copy of a Notice of Cancellation to: ACN Opportunity, LLC, 1000 Progress Place, Concord, NC 28025 Attn: FSS Research. Where applicable state law on cancellation is inconsistent with ACN policy, such state law shall be in force.

## ACCEPTANCE AND PAYMENT

☐ **$499 TEAM TRAINER**
By signing below, I authorize ACN to charge the credit card listed below.

Select payment method: ☐ Personal Check (make payable to ACN)   ☐ Cashier's Check   ☐ Money Order   ☐ American Express, Discover, Master Card or Visa

| Credit Card Account Number | Expiration Date |
|---|---|

When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use this information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day you make your payment, and you will not receive your check back from your financial institution. In the event that your check is returned unpaid for insufficient or uncollected funds, we may electronically debit your account for the principal amount of the check.

I verify that I have carefully reviewed and fully understand ACN's income opportunity presentation materials, which can be found on The ACN Opportunity Dual Disc, www.acninc.com or www.acnintegrity.com. I acknowledge that ACN has a global commitment to integrity, and as an ACN Independent Business Owner, it is my responsibility to uphold this commitment and always operate my business the right way.

Yes, I want to become an Independent Business Owner. Neither I, nor my spouse/life partner (unless they are my sponsor), have had any other interest and/or benefit in any other ACN IBO position within the 12 months prior to the effective date of this Agreement. I have read and agree to be bound by all of the terms and conditions of this Agreement, including the US Terms and Conditions, the ACN Policies and Procedures, and the ACN Compensation Plan, all of which are incorporated into this Agreement and are available for me to review, store, or print at www. acninc.com

**ACCEPTED AND AGREED:**

| I prefer my kit in the following language (choose one) | Applicant's Signature | Date |
|---|---|---|
| English Kit ☐    Spanish Kit ☐ | | |
| Kit Received:   ☐ Yes   ☐ No | Applicant's Printed Name | |
| Your Business ID number is: _____ | | |

2. I agree to timely pay for any products, services, and other purchases from ACN for which I am delinquent with respect to such payments. I acknowledge that ACN may offset such debt from any commissions, bonuses, or other compensation earned through the ACN Compensation Plan, or any other monies owing to me ("ACN Payments").

3. I agree that as an IBO, I am an independent contractor responsible for my own business and not an agent, legal representative or employee of ACN or any carrier, supplier, service provider or other party with whom ACN transacts or contracts business ("ACN Providers"). I acknowledge that my IBO relationship is with ACN Opportunity, LLC and not with any ACN Provider. I understand that as an IBO, I am free to select my own means, methods and manner of operation and that I am free to choose the hours and location of my activities under this Agreement, subject only to the terms of this Agreement. I shall have no power or authority to bind ACN, either directly or indirectly, and I will not take any action inconsistent with this limit of authority, including representing in any manner that I am an agent, representative, legal representative or employee of ACN or any ACN Provider. I acknowledge that as an independent contractor I am not entitled to holidays, vacations, disability, insurance, pensions or retirement plans, or any other benefits offered or provided by ACN to its employees. I understand that I am solely responsible for remitting any taxes and obtaining any business licenses or insurance required by regulations or authorities to conduct my business. I acknowledge and agree that I will not be treated as or represent myself as an employee for purposes of any federal, state or local statute, regulation, ordinance or other law.

4. I may terminate this Agreement for any reason, at any time, by giving ACN prior written notice at its address of record. ACN may terminate this Agreement pursuant to the ACN Policies and Procedures or in the event that I breach any part of this Agreement. Upon my request following termination of this Agreement within one (1) year from the date of purchase, ACN shall repurchase the Team Trainer Kit, (at a cost of $50.00), provided that the Team Trainer Kit is returned to ACN in re-useable condition.

5. I acknowledge that as an IBO, I am not guaranteed any income nor am I assured any profits or success, and I certify that no claims of guaranteed profits or representations of expected earnings that might result from my efforts as an IBO have been made by ACN or my sponsor. Similarly, I shall not represent directly or indirectly that any person may, can, or will earn any stated amount or that any IBOs are guaranteed success.

6. I understand that the ACN Products and Services are offered in different markets on terms and at rates determined by ACN or ACN Providers, and that the markets where the services are offered and the terms and conditions or prices thereof may change from time to time without notice.

7. This Agreement shall become effective upon acceptance by ACN and continue for an initial term of one (1) year unless sooner terminated as permitted herein. My relationship with ACN may be extended for additional one year periods by my agreement to the then current ACN IBO US Terms and Conditions, and payment of ACN's annual renewal fee no later than 30 days after each Agreement anniversary date. The annual fee is for services provided by ACN which include but are not limited to tracking of personal customers, tracking of downline IBOs and support services, including but not limited to hosting of an IBO's andirect website, materials and training information on the IBO Back Office, and access to the IBO support call center. I understand that failure to renew within the specified time frame shall result in termination of this Agreement and my relationship with ACN and deactivation of my IBO position, and shall result in the forfeiture of bonuses, commissions or other payments from ACN. However, those rights and obligations which by their nature are intended to survive termination of this Agreement shall survive, including without limitation the provisions governing dispute resolution, indemnification, non-solicitation, confidentiality, and account maintenance fees.

8. I understand that there is a fee to process all ACN Payments. I agree that any payments made to me by ACN that remain unclaimed by me after six (6) months shall be held in an account that is subject to an account maintenance fee of $10 per month (the "Account Maintenance Fee") which shall be deducted by ACN monthly. If there are insufficient funds owed me from which to deduct the monthly Account Maintenance Fee when due, and I do not otherwise pay the Account Maintenance Fee, then the Account Maintenance Fee shall be prorated to reflect the amount of funds remaining and the account shall remain open for an equally prorated amount of time. When no unclaimed amounts are owed to me by ACN the account shall be closed. I further acknowledge that unclaimed amounts owed to me may be subject to applicable escheat laws which may require ACN to deliver unclaimed funds to the state.

9. In the process of selling or otherwise promoting the ACN Products and Services, I agree that I will operate in a lawful, ethical and moral manner and I agree to make no false or misleading statements regarding the ACN Products and Services or about the various relationships between ACN, the ACN Provider(s) and me.

10. I understand that during any investigation by ACN with respect to any breach of this Agreement or my conduct as an IBO, my IBO position status may be suspended by ACN and any ACN Payments which may be otherwise owing to me shall be held until final resolution has been achieved. I acknowledge that in the event ACN determines that I have violated this Agreement, including the ACN Policies and Procedures or the ACN Compensation Plan, ACN may terminate this Agreement and deactivate my IBO position, in which event I will not be entitled to any ACN Payments or further commissions or compensation of any kind.

11. I agree to keep accurate records and shall not engage in or perform any misleading, deceptive or unethical practices. I further agree to abide by all federal, state and local laws and regulations governing the sale or solicitation of the products and services marketed by ACN and/or the ACN Provider(s), including but not limited to, obtaining and maintaining any and all permits and licenses required to perform under this Agreement and I understand that I will be personally liable for any fines and other expenses incurred by ACN as a result of any failure to do so. I specifically represent and warrant that I shall not engage in the slamming of a customer.

12. IN NO EVENT WILL ACN OR ANY ACN PROVIDERS BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES, (INCLUDING DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, AND THE LIKE), ARISING OUT OF ANY CAUSE, INCLUDING BUT NOT LIMITED TO, BREACH OF WARRANTY OR THE DELAY, ACT, ERROR OR OMISSION OF ACN OR ANY ACN PROVIDER, OR THE DELIVERY, NONDELIVERY, DISCONTINUATION, OR MODIFICATION OF ANY PRODUCT OR SERVICE BY ACN OR ANY ACN PROVIDER, EVEN IF ACN HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

13. EXCEPT AS OTHERWISE DESCRIBED HEREIN, ACN AND ACN PROVIDERS MAKE NO EXPRESS WARRANTIES, AND THERE ARE NO IMPLIED WARRANTIES. EXPRESSLY EXCLUDED ARE ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY ACN, ANY ACN PROVIDER, OR THEIR AGENTS OR EMPLOYEES WILL CREATE A WARRANTY OR IN ANY WAY INCREASE THE SCOPE OF THE FOREGOING WARRANTY.

14. ACN shall periodically make various sales literature, promotion materials, training and other products or services available for my use in conducting my business as an IBO. I, however, am under no obligation to purchase any quantities of those materials or services at any time. Rather, I will have the option to order and purchase any materials or services which I may choose. If I choose to purchase such materials then I may return any unused, unopened and currently marketable items for up to one year and receive a refund of 90% of the purchase price. I will be responsible for the cost of shipping said materials to ACN.

15. I acknowledge that I have the right to sign up as many personal customers as I wish. For each personal customer signed, I will be eligible to receive a commission from my personal customers' usage payments for ACN Products and Services and from usage payments from personal customers in my network of IBOs in accord with the currently valid ACN Compensation Plan. I understand that eligibility to receive ACN Payments is conditioned upon being an active IBO with a valid Agreement in effect on the date such compensation is scheduled to be paid. ACN reserves the right to vary or change eligibility as set out in the ACN Compensation Plan. Any other payments I receive will be based upon fulfilling certain terms of qualification as set forth by the ACN Compensation Plan. I agree that as an ACN IBO, I shall place primary emphasis upon the sale of ACN Products and Services to customers. Under certain circumstances, commission rates may be adjusted for promotional products or negotiated pricing.

16. I agree to indemnify and hold ACN, the ACN Providers and their respective shareholders, directors, officers and employees harmless from any and all claims, damages, and expenses, including any attorney's fees, arising out of my actions or omissions in connection with this Agreement. In the event of a dispute between me and ACN as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is agreed that such disputes shall be exclusively resolved through binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration. The arbitration shall be held in Charlotte, North Carolina before a panel of three arbitrators, each side choosing one and then the two choosing the third. All claims hereunder must be brought within two (2) years of the date on which the facts or circumstances giving rise to the claim are alleged to have happened. The laws of the state of North Carolina will apply to the resolution of the dispute unless otherwise agreed in writing. The award of the arbitrator shall be final and may be entered in any court of competent jurisdiction. This provision shall not restrict ACN from seeking preliminary or permanent injunctive relief in any court of competent jurisdiction.

17. I acknowledge that ACN fully reserves its right to amend this Agreement at any time by notifying me of the changes, including by posting the revisions on the ACN website (www.acninc.com). Any changes to this Agreement made by ACN may apply: (1) upon the date of execution or posting of the amended Agreement on the ACN website, or (2) prospectively to some specified date in the amendment. Any such changes are incorporated as part of this Agreement. No amendment shall apply retroactively. This Agreement, including the US Terms and Conditions, the ACN Policies and Procedures and the ACN Compensation Plan which have been incorporated herein by reference, constitutes the entire agreement between the parties hereto and shall not be modified or amended except as described herein. In the event of a conflict between the US Terms and Conditions and the ACN Policies and Procedures or the ACN Compensation Plan, the US Terms and Conditions shall control. For purposes of this Agreement, my address as submitted by me with this Agreement shall be deemed to be my correct address unless and until notification of a change of address is provided by me to ACN.

18. This Agreement shall be governed by the laws of the state of North Carolina. I understand that I may not assign this Agreement without the prior written consent of ACN, which may be withheld, conditioned, or delayed in ACN's sole discretion. This Agreement shall be binding upon and inure to the benefit of heirs, successors and permitted assigns of the parties hereto. If any provision of this Agreement is determined by any authority of competent jurisdiction to be invalid or unenforceable in part or in whole for any reason whatsoever, the validity of the remaining provisions or portions thereof shall not be affected thereby and such authority should reform this Agreement to the extent necessary to render the otherwise unenforceable provision or portion thereof valid and enforceable.

19. I acknowledge that I may receive proprietary and confidential data or information of ACN and/or ACN Provider(s) which is not publicly known or available to the competitors of ACN or ACN Providers, including but not limited to information about ACN Products and Services, customers, and IBOs ("Confidential Information"), and I agree that I shall treat such Confidential Information as strictly confidential and that I may not, directly or indirectly use, sell, lend, lease, distribute, license, give, transfer, disclose, disseminate, reproduce or otherwise communicate any such Confidential Information to any person or entity for any purpose other than as authorized by ACN in writing. I represent and warrant that I will comply with all ACN policies and procedures relating to confidential and proprietary information, and I agree that all prohibitions against disclosure of Confidential Information shall survive the termination of this Agreement.

20. During the term of this Agreement, I agree that I shall not, directly or indirectly, sell or solicit customers for products or services offered by ACN through any person or entity other than that specifically designated or approved in writing by ACN. I agree that I shall not, during the term of this Agreement and for a period of one (1) year thereafter, directly or indirectly, divert, entice, knowingly call upon, sell or solicit, take away or move any customer of ACN or any ACN Provider, whether or not I originally procured or brought such customer to ACN (such activities are collectively referred to and included herein as 'solicitation'). All customers solicited by an IBO on behalf of ACN and ACN Providers are deemed to be customers of ACN or the ACN Provider and not of the IBO. I understand that such non solicitation prohibition shall be strictly enforced and that each ACN Provider shall be a third party beneficiary of this prohibition. Further, during the term of the Agreement and for a period of one (1) year thereafter, I may not enter into a direct marketing relationship with any ACN Provider. During the term of this Agreement and for a period of one (1) year thereafter, I may not solicit an ACN IBO, whether active, inactive, individual or entity, to participate in a network marketing program offered by any other company. Without limiting in any way ACN's right to pursue all rights and remedies available to it, violation of this covenant and condition will result in, but is not limited to, forfeiture of all rights in any IBO position and ACN Payments, including all current and future commissions, bonuses and payments of any kind.

# EXHIBIT 8

# ACN

ACN Opportunity, LLC
1000 Progress Place
Concord, NC 28025-2449
Phone: 704-260-3226
Fax: 704-260-3652
www.acninc.com

## INDEPENDENT BUSINESS OWNER AGREEMENT

| Office Use Only | Data Entry | Date |
|---|---|---|
| | | |

**PLEASE TYPE OR PRINT CLEARLY**

(Circle One):

| Individual | Company |
|---|---|

## APPLICANT INFORMATION      LIST NAME OR COMPANY, NOT BOTH.

| Last Name | First Name | Middle Initial | Home Telephone (with area code) | Social Security # | Birth date of Applicant |
|---|---|---|---|---|---|
| | | | | | |

| Company Name (Proof of Company Name, Business Tax ID # or Employer ID # required) | Cellular Telephone (with area code) | Federal Tax I.D.# (if applicable) | Birth date of Principal |
|---|---|---|---|
| | | | |

| Mailing Address | City | State | Zip Code |
|---|---|---|---|
| | | | |

Email Address

## SPONSOR INFORMATION

| Last Name | First Name | Middle Initial | Telephone (with area code) | Business ID |
|---|---|---|---|---|
| | | | | |

## US TERMS AND CONDITIONS

I acknowledge that I have received and reviewed the ACN Independent Business Owner Agreement, including these US Terms and Conditions and the ACN Policies and Procedures and the ACN Compensation Plan, which are hereby incorporated into and made part of this ACN Independent Business Owner Agreement by reference (collectively, the "Agreement"). By signing below, I agree to comply with, and be bound by, the terms and conditions set forth in the Agreement. I acknowledge and agree that the Agreement will become a binding agreement upon me and ACN Opportunity, LLC, a North Carolina limited liability company, only upon acceptance by ACN, and that ACN will notify me of acceptance of the Agreement via email to the email address I submit with this Agreement. I understand that ACN has the right to accept or reject my application to become an Independent Business Owner ("IBO") in its sole discretion. For purposes of this Agreement, ACN Opportunity, LLC is referred to as "ACN". ACN and its parents, subsidiaries and affiliates may be referred to herein collectively as the "ACN Companies" or each individually as an "ACN Company". I understand that there is no requirement beyond entering into this Agreement and payment of the initial fee to become an IBO. No other purchase of sales or training materials or other services are required to become an IBO and any purchase of sales aids, training materials or training is strictly voluntary. I understand that my advancement to higher qualification levels in the ACN Compensation Plan is based upon the acquisition of customers and the usage by such customers of products (goods and services) offered by or through ACN ("ACN Products"), and that I am not obligated to purchase ACN Products. I also understand that if I choose to sponsor others to become IBOs and participate in ACN's Compensation Plan, I will not receive any compensation whatsoever for the act of sponsoring or recruiting, and that I will be compensated based upon the activities of other IBOs only to the extent of sales made by them to customers of ACN Products.

1. I, the undersigned applicant, represent that I am of legal age to enter into legally binding agreements, and that the information submitted in connection with my application to become an IBO is complete, true and correct. I agree to promptly notify ACN of any changes to such information. If I am executing this Agreement on behalf of a corporation, limited liability company, partnership, trust or other entity, I represent that I have the authority to enter into such agreements for the entity, but nonetheless I agree that in addition to such entity, I will be personally responsible for the performance of all the duties and obligations described in this Agreement.

**PLEASE SEE PAGE 2 FOR ADDITIONAL TERMS & CONDITIONS**

## CANCELLATION

I may cancel this transaction, without penalty or obligation, for a full refund, if postmarked within ten (10) business days from the date of this Agreement, exclusive of the date of signing. I understand that if I cancel after the ten (10) day period, I am not entitled to a full refund. This limitation is subject to and shall be deemed modified to reflect the limitations required by any state law, including the state of Georgia. If I cancel within the ten (10) business days from the date of this Agreement, any payments made by me under this Agreement and any instrument executed by me will be returned within fifteen (15) business days following receipt by ACN of my Cancellation Notice. To cancel this Agreement, I must deliver personally or via courier or by registered or certified mail return receipt requested, a written, signed, dated copy of a Notice of Cancellation to: ACN Opportunity, LLC, 1000 Progress Place, Concord, NC 28025 Attn: FSS Research. Where applicable state law on cancellation is inconsistent with ACN policy, such state law shall be in force.

## ACCEPTANCE AND PAYMENT

☐ **$499 TEAM TRAINER**

By signing below, I authorize ACN to charge the credit card listed below.

Select payment method: ☐ Personal Check (make payable to ACN)   ☐ Cashier's Check   ☐ Money Order   ☐ American Express, Discover, Master Card or Visa

| Credit Card Account Number | Expiration Date |
|---|---|
| | |

When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use this information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day you make your payment, and you will not receive your check back from your financial institution. In the event that your check is returned unpaid for insufficient or uncollected funds, we may electronically debit your account for the principal amount of the check.

I verify that I have carefully reviewed and fully understand ACN's income opportunity presentation materials, which can be found on The ACN Opportunity Dual Disc or www.acninc.com. I acknowledge that ACN has a global commitment to integrity, and as an ACN Independent Business Owner, it is my responsibility to uphold this commitment and always operate my business the right way.

Yes, I want to become an Independent Business Owner. Neither I, nor my spouse/life partner (unless they are my sponsor), have had any other interest and/or benefit in any other ACN IBO position within the 12 months prior to the effective date of this Agreement. I have read and agree to be bound by all of the terms and conditions of this Agreement, including the US Terms and Conditions, the ACN Policies and Procedures, and the ACN Compensation Plan, all of which are incorporated into this Agreement and are available for me to review, store, or print at www.acninc.com

### ACCEPTED AND AGREED:

| Applicant's Signature | Date |
|---|---|
| | |

| Applicant's Printed Name | Your Business ID number is: _____ |
|---|---|
| | |

©ACN Opportunity, LLC 2014 US_IBO_PP_W_082514

Case 1:18-cv-09936-LGS   Document 85-4   Filed 02/21/18   Page 3 of 3

2. I agree to timely pay for any product I order from ACN and for any commissions, bonuses, or other compensation earned through the ACN Compensation Plan, or any other monies owing to me ("ACN Payments"). In the event that I am delinquent with respect to such payments, I acknowledge that ACN may offset such debt from any commissions, bonuses, or other compensation earned through the ACN Compensation Plan, or any other monies owing to me ("ACN Payments").

3. I agree that as an IBO, I am an independent contractor responsible for my own business and not an agent, legal representative or employee of ACN or any carrier, supplier, service provider or other party with whom ACN transacts or contracts business ("ACN Providers"). I acknowledge that my IBO relationship is with ACN Opportunity, LLC and not with any other ACN Company or ACN Provider. I understand that as an IBO, I am free to select my own means, methods and manner of operation and that I am free to choose the hours and location of my activities under this Agreement, subject only to the terms of this Agreement. I shall have no power or authority to bind ACN, either directly or indirectly, and I will not take any action inconsistent with this limit of authority, including representing in any manner that I am an agent, representative, legal representative or employee of ACN, any other ACN Company or any ACN Provider. I acknowledge that as an independent contractor I am not entitled to holidays, vacations, disability, insurance, pensions or retirement plans, or any other benefits offered or provided by ACN or any other ACN Company to its employees. I understand that I am solely responsible for remitting any taxes and obtaining any business licenses or insurance required by regulations or authorities to conduct my business. I acknowledge and agree that I will not be treated as or represent myself as an employee for purposes of any federal, state or local statute, regulation, ordinance or other law.

4. I may terminate this Agreement for any reason, at any time, by giving ACN prior written notice at its address of record. ACN may terminate this Agreement pursuant to the ACN Policies and Procedures or in the event that I breach any part of this Agreement.

5. I acknowledge that as an IBO, I am not guaranteed any income nor am I assured any profits or success, and I certify that no claims of guaranteed profits or representations of expected earnings that might result from my efforts as an IBO have been made by ACN or my sponsor. Similarly, I shall not represent directly or indirectly that any person may, can, or will earn any stated amount or that any IBOs are guaranteed success.

6. I understand that the ACN Products are offered in different markets on terms and at rates determined by ACN or ACN Providers, and that the markets where the products are offered and the terms and conditions or prices thereof may change from time to time without notice.

7. This Agreement shall become effective upon acceptance by ACN and continue for an initial term of one (1) year unless sooner terminated as permitted herein. My relationship with ACN may be extended for additional one year periods by my agreement to the then current ACN IBO US Terms and Conditions, and payment of ACN's annual renewal fee no later than 30 days after each Agreement anniversary date. The annual fee is for services provided by ACN which include but are not limited to tracking of personal customers, tracking of downline IBOs and support services, including but not limited to hosting of an IBO's personal website, materials and training information on the IBO Back Office, and access to the IBO support call center. I understand that failure to renew within the specified time frame shall result in termination of this Agreement and my relationship with ACN and deactivation of my IBO position, and shall result in the forfeiture of bonuses, commissions or other payments from ACN. However, those rights and obligations which by their nature are intended to survive termination of this Agreement shall survive, including without limitation the provisions governing dispute resolution, indemnification, non-solicitation, confidentiality, and account maintenance fees.

8. I understand that there is a fee to process all ACN Payments. I agree that any payments made to me by ACN that remain unclaimed by me after six (6) months shall be held in an account that is subject to an account maintenance fee of $10 per month (the "Account Maintenance Fee") which shall be deducted by ACN monthly. If there are insufficient funds owed me from which to deduct the monthly Account Maintenance Fee when due, and I do not otherwise pay the Account Maintenance Fee, then the Account Maintenance Fee shall be prorated to reflect the amount of funds remaining and the account shall remain open for an equally prorated amount of time. When no unclaimed amounts are owed to me by ACN the account shall be closed. I further acknowledge that unclaimed amounts owed to me may be subject to applicable escheat laws which may require ACN to deliver unclaimed funds to the state.

9. In the process of selling or otherwise promoting the ACN Products, I agree that I will operate in a lawful, ethical and moral manner and I agree to make no false or misleading statements regarding the ACN Products or about the various relationships between ACN, the ACN Provider(s) and me.

10. I understand that during any investigation by ACN with respect to my breach of this Agreement or my conduct as an IBO, my IBO position status may be suspended by ACN and any ACN Payments which may be otherwise owing to me shall be held until final resolution has been achieved. I acknowledge that in the event ACN determines that I have violated this Agreement, including the ACN Policies and Procedures or the ACN Compensation Plan, ACN may terminate this Agreement and deactivate my IBO position, in which event I will not be entitled to any ACN Payments or further commissions or compensation of any kind.

11. I agree to keep accurate records and shall not engage in or perform any misleading, deceptive or unethical practices. I further agree to abide by all federal, state and local laws and regulations governing the sale or solicitation of the products marketed by ACN and/or the ACN Provider(s), including but not limited to, all applicable anti-spam legislation and obtaining and maintaining any and all permits and licenses required to perform under this Agreement and I understand that I will be personally liable for any fines and other expenses incurred by ACN, any ACN Company or any ACN Provider as a result of any failure to do so. I specifically represent and warrant that I shall not engage in the slamming of a customer.

12. IN NO EVENT WILL ACN, ANY OTHER ACN COMPANY OR ANY OTHER ACN PROVIDER BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES, (INCLUDING DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, AND THE LIKE), ARISING OUT OF ANY CAUSE, INCLUDING BUT NOT LIMITED TO, BREACH OF WARRANTY OR THE DELAY, ACT, ERROR OR OMISSION OF ACN, ANY ACN COMPANY OR ANY ACN PROVIDER, OR THE DELIVERY, NONDELIVERY, DISCONTINUATION, OR MODIFICATION OF ANY PRODUCT OR SERVICE BY ACN, ANY ACN COMPANY, OR ANY ACN PROVIDER, EVEN IF ACN HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

13. OTHER THAN THE RETURN RIGHTS DESCRIBED HEREIN, ACN, THE OTHER ACN COMPANIES AND ACN PROVIDERS MAKE NO EXPRESS WARRANTIES, AND THERE ARE NO IMPLIED WARRANTIES. EXPRESSLY EXCLUDED ARE ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY ACN, ANY ACN COMPANY, ANY ACN PROVIDER, OR THEIR AGENTS OR EMPLOYEES WILL CREATE A WARRANTY OR IN ANY WAY INCREASE THE SCOPE OF THE FOREGOING WARRANTY.

14. I acknowledge that ACN offers several literature, training and other products available for my use in conducting my business as an IBO. I, however, am under no obligation to purchase any quantities of those materials or services at any time. Rather, I will have the option to order and purchase any materials or services which I may choose. If I choose to purchase such materials then I may return any unused, unopened and currently marketable items for up to one year and receive a refund of 90% of the purchase price. I will be responsible for the cost of shipping said materials to ACN.

15. I acknowledge that I have the right to sign up as many personal customers as I wish. For each personal customer signed, I will be eligible to receive a commission from my personal customers' usage payments for ACN Products and from usage payments from personal customers in my network of IBOs in accord with the currently valid ACN Compensation Plan. I understand that eligibility to receive ACN Payments is conditioned upon being an active IBO with a valid Agreement in effect on the date such compensation is scheduled to be paid. ACN reserves the right to vary or change eligibility as set out in the ACN Compensation Plan. Any other payments I receive will be based upon fulfilling certain terms of qualification as set forth by the ACN Compensation Plan. I agree that as an ACN IBO, I shall place primary emphasis upon the sale of ACN Products to customers. Under certain circumstances, commission rates may be adjusted for promotional products or negotiated pricing.

16. I agree to indemnify and hold ACN, the other ACN Companies, the ACN Providers and their respective shareholders, directors, officers and employees harmless from any and all claims, damages, and expenses, including any attorney's fees, arising out of my actions or omissions in connection with this Agreement. In the event of a dispute between me and ACN as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is agreed that such disputes shall be exclusively resolved through binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration. The arbitration shall be held in Charlotte, North Carolina before a panel of three arbitrators, each side choosing one and then the two choosing the third. All claims hereunder must be brought within two (2) years of the date on which the facts or circumstances giving rise to the claim are alleged to have happened. The laws of the state of North Carolina will apply to the resolution of the dispute unless otherwise agreed in writing. The award of the arbitrator shall be final and may be entered in any court of competent jurisdiction. This provision shall not restrict ACN from seeking preliminary or permanent injunctive relief in any court of competent jurisdiction.

17. I acknowledge that ACN fully reserves its right to amend this Agreement at any time by notifying me of the changes, including by posting the revisions on the ACN website (www.acninc.com). Any changes to this Agreement made by ACN may apply: (1) upon the date of execution or posting of the amended Agreement on the ACN website, or (2) prospectively to some specified date in the amendment. Any such changes are incorporated as part of this Agreement. No amendment shall apply retroactively. This Agreement, including the US Terms and Conditions, the ACN Policies and Procedures and the ACN Compensation Plan which have been incorporated herein by reference, constitutes the entire agreement between the parties hereto and shall not be modified or amended except as described herein. In the event of a conflict between the US Terms and Conditions and the ACN Policies and Procedures or the ACN Compensation Plan, the US Terms and Conditions shall control. For purposes of this Agreement, my address as submitted by me with this Agreement shall be deemed to be my correct address unless and until notification of a change of address is provided by me to ACN.

18. This Agreement shall be governed by the laws of the state of North Carolina. I understand that I may not assign this Agreement without the prior written consent of ACN, which may be withheld, conditioned, or delayed in ACN's sole discretion. This Agreement shall be binding upon and inure to the benefit of heirs, successors and permitted assigns of the parties hereto. If any provision of this Agreement is determined by any authority of competent jurisdiction to be invalid or unenforceable in part or in whole for any reason whatsoever, the validity of the remaining provisions or portions thereof shall not be affected thereby and such authority should reform this Agreement to the extent necessary to render the otherwise unenforceable provision or portion thereof valid and enforceable.

19. I acknowledge that I may receive proprietary and confidential data or information of ACN and/or ACN Provider(s) which is not publicly known or available to the competitors of ACN or ACN Providers, including but not limited to information about ACN Products, customers, and IBOs ("Confidential Information"), and I agree that I shall treat such Confidential Information as strictly confidential and that I may not, directly or indirectly use, sell, lend, lease, distribute, license, give, transfer, disclose, disseminate, reproduce or otherwise communicate any such Confidential Information to any person or entity for any purpose other than as authorized by ACN in writing. I represent and warrant that I will comply with all ACN policies and procedures relating to confidential and proprietary information, and I agree that all prohibitions against disclosure of Confidential Information shall survive the termination of this Agreement.

20. During the term of this Agreement, I agree that I shall not, directly or indirectly, sell or solicit customers for products offered by or through ACN through any person or entity other than that specifically designated or approved in writing by ACN. I agree that I shall not, during the term of this Agreement and for a period of one (1) year thereafter, directly or indirectly, divert, entice, knowingly call upon, sell or solicit, take away or move any customer of ACN, any other ACN Company or any ACN Provider, whether or not I originally procured or brought such customer to ACN, any other ACN Company or ACN Provider (such activities are collectively referred to and included herein as 'solicitation'). All customers solicited by an IBO on behalf of ACN, any other ACN Company or ACN Providers are deemed to be customers of ACN, the other ACN Company or the ACN Provider (as applicable) and not of the IBO. I understand that such non solicitation prohibition shall be strictly enforced and that each other ACN Company and each ACN Provider shall be a third party beneficiary of this prohibition. Further, during the term of the Agreement and for a period of one (1) year thereafter, I may not enter into a direct marketing relationship with any ACN Provider. During the term of this Agreement and for a period of one (1) year thereafter, I shall not solicit an ACN Company IBO, whether active, inactive, individual or entity, to participate in a network marketing program offered by any other company. Each ACN Company shall be a third party beneficiary of this prohibition. Without limiting in any way ACN's or any other ACN Company's right to pursue all rights and remedies available to it, violation of this covenant and condition will result in, but is not limited to, forfeiture of all rights in any IBO position and ACN Payments, including all current and future commissions, bonuses and payments of any kind.

©ACN Opportunity, LLC 2014 US_IBO_HP_W_062514

# EXHIBIT 9

**ACN**

ACN Opportunity, LLC
1000 Progress Place
Concord, NC 28025-2449
Phone: 704-260-3226
Fax: 704-260-3652
www.acninc.com

## INDEPENDENT BUSINESS OWNER AGREEMENT

| | Office Use Only | Data Entry | Date |
|---|---|---|---|

### PLEASE TYPE OR PRINT CLEARLY

| | (Circle One): | Individual | Company |
|---|---|---|---|

### APPLICANT INFORMATION    LIST NAME OR COMPANY, NOT BOTH.

| Last Name | First Name | Middle Initial | Home Telephone (with area code) | Social Security # | Birth date of Applicant |
|---|---|---|---|---|---|

| Company Name (Proof of Company Name, Business Tax ID # or Employer ID # required) | Cellular Telephone (with area code) | Federal Tax I.D.# (if applicable) | Birth date of Principal |
|---|---|---|---|

| Mailing Address | City | State | Zip Code |
|---|---|---|---|

| Email Address |
|---|

### SPONSOR INFORMATION

| Last Name | First Name | Middle Initial | Telephone (with area code) | Business ID |
|---|---|---|---|---|

### US TERMS AND CONDITIONS

I acknowledge that I have received and reviewed the ACN Independent Business Owner Agreement, including these US Terms and Conditions and the ACN Policies and Procedures and the ACN Compensation Plan, which are hereby incorporated into and made part of this ACN Independent Business Owner Agreement by reference (collectively, the "Agreement"). By signing below, I agree to comply with, and be bound by, the terms and conditions set forth in the Agreement.I acknowledge and agree that the Agreement will become a binding agreement upon me and ACN Opportunity, LLC, a North Carolina limited liability company, only upon acceptance by ACN, and that ACN will notify me of acceptance of the Agreement via email to the email address I submit with this Agreement. I understand that ACN has the right to accept or reject my application to become an Independent Business Owner ("IBO") in its sole discretion. For purposes of this Agreement, ACN Opportunity, LLC is referred to as "ACN". ACN and its parents, subsidiaries and affiliates may be referred to herein collectively as the "ACN Companies" or each individually as an "ACN Company". I understand that there is no requirement beyond entering into this Agreement and payment of the initial fee to become an IBO. No other purchase of sales or training materials or other services are required to become an IBO and any purchase of sales aids, training materials or training is strictly voluntary. I understand that my advancement to higher qualification levels in the ACN Compensation Plan is based upon the acquisition of customers and the usage by such customers of products (goods and services) offered by or through ACN ("ACN Products"), and that I am not obligated to purchase ACN Products. I also understand that if I choose to sponsor others to become IBOs and participate in ACN's Compensation Plan, I will not receive any compensation whatsoever for the act of sponsoring or recruiting, and that I will be compensated based upon the activities of other IBOs only to the extent of sales made by them to customers of ACN Products.

1. I, the undersigned applicant, represent that I am of legal age to enter into legally binding agreements, and that the information submitted in connection with my application to become an IBO is complete, true and correct. I agree to promptly notify ACN of any changes to such information. If I am executing this Agreement on behalf of a corporation, limited liability company, partnership, trust or other entity, I represent that I have the authority to enter into such agreements for the entity, but nonetheless I agree that in addition to such entity, I will be personally responsible for the performance of all the duties and obligations described in this Agreement.

**PLEASE SEE PAGE 2 FOR ADDITIONAL TERMS & CONDITIONS**

### CANCELLATION

I may cancel this transaction, without penalty or obligation, for a full refund, if postmarked within ten (10) business days from the date of this Agreement, exclusive of the date of signing. I understand that if I cancel after the ten (10) day period, I am not entitled to a full refund. This limitation is subject to and shall be deemed modified to reflect the limitations required by any state law, including the state of Georgia. If I cancel within the ten (10) business days from the date of this Agreement, any payments made by me under this Agreement and any instrument executed by me will be returned within fifteen (15) business days following receipt by ACN of my Cancellation Notice. To cancel this Agreement, I must deliver personally or via courier or by registered or certified mail return receipt requested, a written, signed, dated copy of a Notice of Cancellation to: ACN Opportunity, LLC, 1000 Progress Place, Concord, NC 28025 Attn: FSS Research. Where applicable state law on cancellation is inconsistent with ACN policy, such state law shall be in force.

### ACCEPTANCE AND PAYMENT

☐ **$499 TEAM TRAINER**

By signing below, I authorize ACN to charge the credit card listed below.

Select payment method:  ☐ Personal Check (make payable to ACN)  ☐ Cashier's Check  ☐ Money Order  ☐ American Express, Discover, Master Card or Visa

| Credit Card Account Number | Expiration Date | CVV Code (The 3 or 4 digit value located on the front or back of your card) |
|---|---|---|

When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use this information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day you make your payment, and you will not receive your check back from your financial institution. In the event that your check is returned unpaid for insufficient or uncollected funds, we may electronically debit your account for the principal amount of the check.

I verify that I have carefully reviewed and fully understand ACN's income opportunity presentation materials, which can be found on The ACN Opportunity Dual Disc or www.acninc.com. I acknowledge that ACN has a global commitment to integrity, and as an ACN Independent Business Owner, it is my responsibility to uphold this commitment and always operate my business the right way.

Yes, I want to become an Independent Business Owner. Neither I, nor my spouse/life partner (unless they are my sponsor), have had any other interest and/or benefit in any other ACN IBO position within the 12 months prior to the effective date of this Agreement. I have read and agree to be bound by all of the terms and conditions of this Agreement, including the US Terms and Conditions, the ACN Policies and Procedures, and the ACN Compensation Plan, all of which are incorporated into this Agreement and are available for me to review, store, or print at www. acninc.com

### ACCEPTED AND AGREED:

| Applicant's Signature | Date |
|---|---|

| Applicant's Printed Name | Your Business ID number is: _____ |
|---|---|

©ACN Opportunity, LLC 2016 US_IBO_RF_W_040116

2. I agree to timely pay for any products purchased from ACN within any ACN-established payment terms. Upon being an active IBO with a valid Agreement in effect on the date such compensation is scheduled to be paid. ACN reserves the right to vary or change eligibility as set out in the ACN Compensation Plan. Any other payments I receive will be based upon fulfilling certain terms of qualification as set forth by the ACN Compensation Plan. I agree that as an ACN IBO, I shall place primary emphasis upon the sale of ACN Products to customers. Under certain circumstances, commission rates may be adjusted for promotional products or negotiated pricing.

2. I agree to timely pay for any products purchased from ACN, in the event that I am delinquent with respect to such payments, I acknowledge that ACN may offset such debt from any commissions, bonuses, or other compensation earned through the ACN Compensation Plan, or any other monies owing to me ("ACN Payments").

3. I agree that as an IBO, I am an independent contractor responsible for my own business and not an agent, legal representative or employee of ACN or any carrier, supplier, service provider or other party with whom ACN transacts or contracts business ("ACN Providers"). I acknowledge that my IBO relationship is with ACN Opportunity, LLC and not with any other ACN Company or ACN Provider. I understand that as an IBO, I am free to select my own means, methods and manner of operation and that I am free to choose the hours and location of my activities under this Agreement, subject only to the terms of this Agreement. I shall have no power or authority to bind ACN, either directly or indirectly, and I will not take any action inconsistent with this limit of authority, including representing in any manner that I am an agent, representative, legal representative or employee of ACN, any other ACN Company or any ACN Provider. I acknowledge that as an independent contractor I am not entitled to holidays, vacations, disability, insurance, pensions or retirement plans, or any other benefits offered or provided by ACN or any other ACN Company to its employees. I understand that I am solely responsible for remitting any taxes and obtaining any business licenses or insurance required by regulations or authorities to conduct my business. I acknowledge and agree that I will not be treated as or represent myself as an employee for purposes of any federal, state or local statute, regulation, ordinance or other law.

4. I may terminate this Agreement for any reason, at any time, by giving ACN prior written notice at its address of record. ACN may terminate this Agreement pursuant to the ACN Policies and Procedures or in the event that I breach any part of this Agreement.

5. I acknowledge that as an IBO, I am not guaranteed any income nor am I assured any profits or success, and I certify that no claims of guaranteed profits or representations of expected earnings that might result from my efforts as an IBO have been made by ACN or my sponsor. Similarly, I shall not represent directly or indirectly that any person may, can, or will earn any stated amount or that any IBOs are guaranteed success.

6. I understand that the ACN Products are offered in different markets on terms and at rates determined by ACN or ACN Providers, and that the markets where the products are offered and the terms and conditions or prices thereof may change from time to time without notice.

7. This Agreement shall become effective upon acceptance by ACN and continue for an initial term of one (1) year unless sooner terminated as permitted herein. My relationship with ACN may be extended for additional one year periods by my agreement to the then current ACN IBO US Terms and Conditions, and payment of ACN's annual renewal fee no later than 30 days after each Agreement anniversary date. The annual fee is for services provided by ACN which include but are not limited to tracking of personal customers, tracking of downline IBOs and support services, including but not limited to hosting of an IBO's acndirect website, materials and training information on the IBO Back Office, and access to the IBO support call center. I understand that failure to renew within the specified time frame shall result in termination of this Agreement and my relationship with ACN and deactivation of my IBO position, and shall result in the forfeiture of bonuses, commissions or other payments from ACN. However, those rights and obligations which by their nature are intended to survive termination of this Agreement shall survive, including without limitation the provisions governing dispute resolution, indemnification, non-solicitation, confidentiality, and account maintenance fees.

8. I understand that there is a fee to process all ACN Payments. I agree that any payments made to me by ACN that remain unclaimed by me after six (6) months shall be held in an account that is subject to an account maintenance fee of $10 per month (the "Account Maintenance Fee") which shall be deducted by ACN monthly. If there are insufficient funds owed me from which to deduct the monthly Account Maintenance Fee when due, and I do not otherwise pay the Account Maintenance Fee, then the Account Maintenance Fee shall be prorated to reflect the amount of funds remaining and the account shall remain open for an equally prorated amount of time. When no unclaimed amounts are owed to me by ACN the account shall be closed. I further acknowledge that unclaimed amounts owed to me may be subject to applicable escheat laws which may require ACN to deliver unclaimed funds to the state.

9. In the process of selling or otherwise promoting the ACN Products, I agree that I will operate in a lawful, ethical and moral manner and I agree to make no false or misleading statements regarding the ACN Products or about the various relationships between ACN, the ACN Provider(s) and me.

10. I understand that during any investigation by ACN with respect to my breach of this Agreement or my conduct as an IBO, my IBO position status may be suspended by ACN and any ACN Payments which may be otherwise owing to me shall be held until final resolution has been achieved. I acknowledge that in the event ACN determines that I have violated this Agreement, including the ACN Policies and Procedures or the ACN Compensation Plan, ACN may terminate this Agreement and deactivate my IBO position, in which event I will not be entitled to any ACN Payments or further commissions or compensation of any kind.

11. I agree to keep accurate records and shall not engage in or perform any misleading, deceptive or unethical practices. I further agree to abide by all federal, state and local laws and regulations governing the sale or solicitation of the products marketed by ACN and/or the ACN Provider(s), including but not limited to, all applicable anti-spam legislation and obtaining and maintaining any and all permits and licenses required to perform under this Agreement and I understand that I will be personally liable for any fines and other expenses incurred by ACN, any ACN Company or any ACN Provider as a result of any failure to do so. I specifically represent and warrant that I shall not engage in the slamming of a customer.

12. IN NO EVENT WILL ACN, ANY OTHER ACN COMPANY OR ANY OTHER ACN PROVIDER BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES, (INCLUDING DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, AND THE LIKE), ARISING OUT OF ANY CAUSE, INCLUDING BUT NOT LIMITED TO, BREACH OF WARRANTY OR THE DELAY, ACT, ERROR OR OMISSION OF ACN, ANY ACN COMPANY OR ANY ACN PROVIDER, OR THE DELIVERY, NONDELIVERY, DISCONTINUATION, OR MODIFICATION OFANY PRODUCT OR SERVICE BY ACN, ANY ACN COMPANY, OR ANY ACN PROVIDER, EVEN IF ACN HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

13. OTHER THAN THE RETURN RIGHTS DESCRIBED HEREIN, ACN, THE OTHER ACN COMPANIES AND ACN PROVIDERS MAKE NO EXPRESS WARRANTIES, AND THERE ARE NO IMPLIED WARRANTIES, EXPRESSLY EXCLUDED ARE ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY ACN, ANY ACN COMPANY, ANY ACN PROVIDER, OR THEIR AGENTS OR EMPLOYEES WILL CREATE A WARRANTY OR IN ANY WAY INCREASE THE SCOPE OF THE FOREGOING WARRANTY.

14. ACN shall periodically make various sales literature, promotion materials, training and other products available for my use in conducting my business as an IBO. I, however, am under no obligation to purchase any quantities of those materials or services at any time. Rather, I will have the option to order and purchase any materials or services which I may choose. If I choose to purchase such materials then I may return any unused, unopened and currently marketable items for up to one year and receive a refund of 90% of the purchase price. I will be responsible for the cost of shipping said materials to ACN.

15. I acknowledge that I have the right to sign up as many personal customers as I wish. For each personal customer signed, I will be eligible to receive a commission from my personal customers' usage payments for ACN Products and from usage payments from personal customers in my network of IBOs in accord with the currently valid ACN Compensation

16. I agree to indemnify and hold ACN, the other ACN Companies, the ACN Providers and their respective shareholders, directors, officers and employees harmless from any and all claims, damages, and expenses, including any attorney's fees, arising out of my actions or omissions in connection with this Agreement.

17. This Agreement shall be governed by the laws of the state of North Carolina and the Federal Arbitration Act, as specified in Section II.B. of the ACN Policies and Procedures. In the event of a dispute between ACN and me as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is mutually agreed that such disputes shall be exclusively resolved through the process and according to the provisions specified in Section II.B. of the ACN Policies and Procedures ("Dispute Resolution Provisions"). ACN and I agree that, notwithstanding Section 18 below, to the extent of any inconsistency, the Dispute Resolution Provisions in the ACN Policies and Procedures shall control. The Dispute Resolution Provisions require, without limitation, and except as otherwise expressly stated, that ACN and I will resolve all disputes through binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration. Both ACN and I agree that all disputes will be resolved on an individual basis and that each may only bring claims against the other in an individual capacity (and not as a claimant or class member in any purported class or representative proceeding).

18. I acknowledge that ACN fully reserves its right to amend this Agreement at any time by notifying me of the changes, including by posting the revisions on the ACN website (www.acninc.com). Any changes to this Agreement made by ACN may apply: (1) upon the date of execution or posting of the amended Agreement on the ACN website, or (2) prospectively to some specified date in the amendment. Any such changes are incorporated as part of this Agreement. No amendment shall apply retroactively. This Agreement, including the US Terms and Conditions, the ACN Policies and Procedures and the ACN Compensation Plan which have been incorporated herein by reference, constitutes the entire agreement between the parties hereto and shall not be modified or amended except as described herein. In the event of a conflict between the US Terms and Conditions and the ACN Policies and Procedures or the ACN Compensation Plan, the US Terms and Conditions shall control. For purposes of this Agreement, my address as submitted by me with this Agreement shall be deemed to be my correct address unless and until notification of a change of address is provided by me to ACN.

19. I understand that I may not assign this Agreement without the prior written consent of ACN, which may be withheld, conditioned, or delayed in ACN's sole discretion. This Agreement shall be binding upon and inure to the benefit of heirs, successors and permitted assigns of the parties hereto. If any provision of this Agreement is determined by any authority of competent jurisdiction to be invalid or unenforceable in part or in whole for any reason whatsoever, the validity of the remaining provisions or portions thereof shall not be affected thereby and such authority should reform this Agreement to the extent necessary to render the otherwise unenforceable provision or portion thereof valid and enforceable.

20. I acknowledge that I may receive proprietary and confidential data or information of ACN and/or ACN Provider(s) which is not publicly known or available to the competitors of ACN or ACN Providers, including but not limited to information about ACN Products, customers, and IBOs ("Confidential Information"), and I agree that I shall treat such Confidential Information as strictly confidential and that I may not, directly or indirectly use, sell, lend, lease, distribute, license, give, transfer, disclose, disseminate, reproduce or otherwise communicate any such Confidential Information to any person or entity for any purpose other than as authorized by ACN in writing. I represent and warrant that I will comply with all ACN policies and procedures relating to confidential and proprietary information, and I agree that all prohibitions against disclosure of Confidential Information shall survive the termination of this Agreement.

21. During the term of this Agreement, I agree that I shall not, directly or indirectly, sell or solicit customers for products offered by or through ACN through any person or entity other than that specifically designated or approved in writing by ACN. I agree that I shall not, during the term of this Agreement and for a period of one (1) year thereafter, directly or indirectly, divert, entice, knowingly call upon, sell or solicit, take away or move any customer of ACN, any other ACN Company or any ACN Provider, whether or not I originally procured or brought such customer to ACN, any other ACN Company or ACN Provider (such activities are collectively referred to and included herein as 'solicitation'). All customers solicited by an IBO on behalf of ACN, any other ACN Company or ACN Providers are deemed to be customers of ACN, the other ACN Company or the ACN Provider (as applicable) and not of the IBO. I understand that such non solicitation prohibition shall be strictly enforced and that each other ACN Company and each ACN Provider shall be a third party beneficiary of this prohibition. Further, during the term of the Agreement and for a period of one (1) year thereafter, I may not enter into a direct marketing relationship with any ACN Provider. During the term of this Agreement and for a period of one (1) year thereafter, I shall not solicit an ACN Company IBO, whether active, inactive, individual or entity, to participate in a network marketing program offered by any other company. Each ACN Company shall be a third party beneficiary of this prohibition. Without limiting in any way ACN's or any other ACN Company's right to pursue all rights and remedies available to it, violation of this covenant and condition will result in, but is not limited to, forfeiture of all rights in any IBO position and ACN Payments, including all current and future commissions, bonuses and payments of any kind.

©ACN Opportunity, LLC 2016 US_IBO_RP_W_040116

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JANE DOE, LUKE LOE, RICHARD ROE, and
MARY MOE, individually and on behalf of all
others similarly situated,

      *Plaintiffs*,

  *v.*

THE TRUMP CORPORATION, DONALD J.
TRUMP, in his personal capacity,
DONALD TRUMP JR., ERIC TRUMP, and
IVANKA TRUMP,

      *Defendants.*

No. 1:18-cv-09936-LGS

## |PROPOSED| STIPULATED PROTECTIVE ORDER PENDING THE COURT'S DECISION ON THE ARBITRABILITY OF PLAINTIFFS' CLAIMS

LORNA G. SCHOFIELD, United States District Judge:

  The Court having found that good cause exists for the issuance of an appropriately tailored protective order pending its decision on the arbitrability of Plaintiffs' claims, and the parties having stipulated to the following provisions, it is hereby ORDERED that any person subject to this Order—including without limitation the parties to the action; their attorneys, representatives, employees, agents, experts, and consultants, acting as such; all third parties providing discovery in this action; and all other interested persons with actual or constructive notice of this Order—shall adhere to the following terms, upon pain of contempt:

Confidential Identity Information

1. "Confidential Identity Information" is hereby defined as (i) the identities of Plaintiffs Jane Doe, Luke Loe, Richard Roe, and Mary Moe, and (ii) any documents, information, or materials that may reasonably be expected to lead to the identification of those Plaintiffs as the individuals who filed the action.

2. Any person subject to this Order shall not disclose Confidential Identity Information to anyone else except as this Order expressly permits, and shall take all due precautions to prevent the unauthorized or inadvertent disclosure.

Discovery Materials May Be Designated as Confidential and/or Confidential Identity Information

3. A person producing "Discovery Material" (*i.e.*, information of any kind provided in the course of discovery in this action, pending a decision by the Court on the arbitrability of

Plaintiffs' claims) may designate as Confidential any material or portion thereof that contains trade secrets, proprietary business information, competitively sensitive information, or other information the disclosure of which would, in the good faith judgment of the designating person, be seriously detrimental to the producing person's business or personal interests. A person producing Discovery Material may designate as Confidential Identity Information any material or portion thereof that, in the good faith opinion of the producing person, meets the definition of Confidential Identity Information in paragraph 1 above.

4.  Any person subject to this Order who receives from any other person any Discovery Material that is designated as Confidential or Confidential Identity Information (together, "Protected Material") shall not disclose such Protected Material to anyone else except as expressly permitted hereunder. Protected Material shall be used solely for purposes of developing evidence regarding whether Plaintiffs agreed to arbitrate with American Communications Network ("ACN") in connection with the litigation of this action and for no other purpose whatsoever, provided that nothing in this Order shall limit disclosure or use by a producing person of its own Protected Material.

5.  Where the portion of Discovery Material constituting Protected Material is reasonably separable from the non-Protected Material portion, only the portion constituting Protected Material shall be so designated. Any party that intends to use only non-Protected Material portions of a document containing Protected Material as part of a motion, or at a deposition or trial, may request that the producing party provide a redacted version of that document.

6.  With respect to the protected portion of any Discovery Material other than deposition transcripts and exhibits, the producing person or that person's counsel may designate Discovery Material or any portion thereof as "Confidential" or "Confidential Identity Information" by stamping or otherwise clearly marking as "Confidential" or "Confidential Identity Information," respectively, the protected document or portion in a manner that will not interfere with legibility or audibility. Deposition testimony may be designated as Confidential and/or Confidential Identity Information either on the record during the deposition or in writing within five two business days of receipt of the transcript. If so designated, the final transcript of the designated testimony shall be bound in a separate volume and bear the notation "Confidential Information Governed by Protective Order," "Confidential Identity Information Governed by Protective Order," or "Confidential Information and Confidential Identity Information Governed by Protective Order."

7.  If at any time prior to the trial of this action Court's decision on the arbitrability of Plaintiffs' claims, a producing person believes in good faith that Discovery Material or a portion thereof that that person previously produced without limitation should be designated as "Confidential" and/or "Confidential Identity Information," the producing person may so designate that material or portion by promptly notifying all parties in writing. Such designated Discovery Material will thereafter be treated as Confidential and/or Confidential Identity Information under the terms of this Order. In addition, the producing person shall provide each other party with replacement versions of such Discovery Material that bears the appropriate designation within two business days of

providing such notice.

8. Any party may designate, as Confidential or Confidential Identity Information, Discovery Material produced by another party without such a designation, provided that such Discovery Material contains the designating party's own Confidential or Confidential Identity Information. Such designation shall be accomplished by providing written notice to all receiving parties identifying the Discovery Material whose designation is be affected. In addition, the designating party shall provide all receiving parties with replacement versions of such Discovery Material that reflect the new designation.

<u>Who May Receive Protected Material</u>

9. No person subject to this Order, other than the producing person, shall disclose any Confidential Discovery Material to any other person whomsoever, except to:

   a. the parties to this action;

   b. counsel retained specifically for this action, including any paralegal, clerical, or other assistant employed by such counsel to work on this action, and in-house counsel for the Trump Corporation;

   c. as to any document, its author, its addressee, and any other person shown on the face of the document as having received a copy;

   d. any witness who counsel for a party in good faith believes may be called to testify at a ~~trial or~~ deposition ~~in this action~~sought by a party in aid of the Court's decision on the arbitrability of Plaintiffs' claims, provided such person, other than those persons set forth in subparagraphs 9(a) and (c), has first executed a Non- Disclosure Agreement in the form annexed hereto;

   e. any person retained by a party to serve as an expert witness or consultant or otherwise provide specialized advice to counsel in connection with ~~this actionDefendants'~~ anticipated motion to compel arbitration or Plaintiffs' opposition to that motion, provided such person has first executed a Non-Disclosure Agreement in the form annexed hereto, and further provided that any such support staff are subject to contractual or professional duties of confidentiality with respect to such material;

   f. stenographers and video technicians engaged to transcribe or record depositions conducted in this action, provided such persons are subject to contractual or professional duties of confidentiality with respect to such material;

   g. independent photocopying, graphic production services, or other litigation support services employed by the parties or their counsel to assist in this action, including computer service personnel performing duties in relation to a computerized litigation system, provided such persons are subject to contractual or professional duties of confidentiality with respect to such material;

      h.     the Court and its staff;

      i.     any mediators engaged by the parties; and

      j.     any other person whom the producing person, or other person designating the Discovery Material as Confidential, agrees in writing may have access to such Confidential Discovery Material.

10.     No person subject to this Order, other than the Plaintiff whose identity is being protected, shall disclose any Confidential Identity Information to any other person whomsoever, except to:

      a.     any person referred to in subparagraphs 9(b), (e), (f), (g), (h), and (i) above;

      b.     any non-party witness who counsel for a party in good faith believes may be called to testify at ~~trial or~~ a deposition in ~~this action~~sought by a party in aid of the Court's decision on the arbitrability of Plaintiffs' claims, and who counsel for a party in good faith believes needs access to Confidential Identity Information in order to provide relevant testimony, provided such person has first executed a Non- Disclosure Agreement in the form annexed hereto;

      c.     any non-party recipient of a subpoena issued pursuant Federal Rule of Civil Procedure 45 who counsel for a party in good faith believes needs access to Confidential Identity Information in order to provide relevant documents or testimony, provided such person has first executed a Non-Disclosure Agreement in the form annexed hereto;

      d.     any other person who the Plaintiff whose identity is being protected agrees in writing may have access to such Confidential Identity Information, provided such person has first executed a Non-Disclosure Agreement in the form annexed hereto.

11.     Prior to the disclosure of any Confidential Discovery Material or Confidential Identity Information to any person referred to in subparagraphs (9)(d) ~~and (e),~~ and 10(b), (c), and (d) above, such person shall be provided by counsel with a copy of this Protective Order and shall sign a Non-Disclosure Agreement, in the form annexed hereto, stating that that person has read this Order and agrees to be bound by its terms. To the extent that any such person refuses to sign the Non-Disclosure Agreement, a party may seek proper recourse including, but not limited to, an order directing that such person is subject to the terms set forth herein. Counsel shall retain each signed Non-Disclosure Agreement, hold it in escrow, and produce it to opposing counsel, upon request, either prior to such person being permitted to testify ~~(~~at a deposition ~~or trial)~~ or upon entry of the Court's order concerning the arbitrability of Plaintiffs' claims~~at the conclusion of the case~~, whichever comes first.

~~12.~~     ~~Nothing herein shall restrict a qualified recipient from making working copies, abstracts, digests, or analyses of Protected Material for use in connection with this action, and such working copies, abstracts, digests, and analyses of Protected Material shall be deemed to~~

~~have the same level of protection as such Protected Materials has under this Order.~~

~~13.~~12.  In the event any person having possession, custody, or control of any Protected Material produced in this action receives a subpoena or other process or order to produce such information, such subpoenaed person or entity shall promptly notify the attorneys of record of the producing party and furnish those attorneys with a copy of said subpoena or other process or order. Nothing in this Order shall be construed to require the party to whom the subpoena or other process or order is directed to give written notice where prohibited by law.

Objecting to Designations of Confidential Material

~~14.~~13.  Any person who objects to any designation of Confidential Material may at any time prior to trial serve upon the designating person and all other parties a written notice stating the grounds of the objection. The designating person and objecting person shall meet and confer within 7 days of such notice. In absence of an agreement otherwise, the Confidential Material will lose its designation 14 days after the written notice of objection, unless the designating party seeks affirmative relief from the Court, in which case the Confidential Material will retain its designation until the Court resolves the dispute. The designating party shall bear the burden of demonstrating the propriety of its designation.

Filing Protected Material in These Actions

~~15.~~14.  If a party wishes to file Confidential Material with the Court, the party shall submit the Confidential Material to the Court in accordance with the procedures for redacted and sealed filings set forth in section I.C.3 of the Court's Individual Rules and Practices in Civil Cases. The party with the interest in confidential treatment bears the burden of persuasion.

~~16.~~15.  If a party wishes to file Confidential Identity Information with the Court, the party shall redact all Confidential Identity Information in its public filing, and shall file an unredacted copy in accordance with section I.C.3. of the Court's Individual Rules and Practices in Civil Cases. Given the Court's prior orders permitting Plaintiffs to proceed under pseudonyms, a party need not seek leave from the Court in order to file Confidential Identity Information in redacted form.

~~17.~~16.  Plaintiffs should be referred to by their respective pseudonyms in all court filings, discovery requests, and correspondence between persons permitted to receive Confidential Identity Information under paragraphs 9 and 10 above.

Inadvertent Disclosure of Privileged Materials

~~18.~~17.  Pursuant to Rule 502 of the Federal Rules of Evidence, if, in connection with this litigation, and despite having taken reasonable steps to prevent the disclosure of information that it claims is subject to a claim of attorney-client privilege or attorney work product, a producing person inadvertently discloses information subject to a claim

of attorney-client privilege or attorney work product ("Inadvertently Disclosed Information"), such disclosure, in itself, shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection with respect to the Inadvertently Disclosed Information and its subject matter.

19.18.   If a disclosing person makes a claim of inadvertent disclosure, all receiving persons shall, within five business days, return or destroy all copies of the Inadvertently Disclosed Information, and provide a certification of counsel that all such information has been returned or destroyed.  Consistent with Federal Rule of Civil Procedure 26, a receiving person may also sequester a copy of the Inadvertently Disclosed Information pending resolution of any dispute regarding the status of that Inadvertently Disclosed Information.  A receiving party must not use or disclose the Inadvertently Disclosed Information until the claim is resolved.

20.19.   Within five business days of the notification that such Inadvertently Disclosed Information has been returned or destroyed, the disclosing person shall produce a privilege log with respect to the Inadvertently Disclosed Information.

21.20.   If a receiving person thereafter moves the Court for an order compelling production of the Inadvertently Disclosed Information, that motion shall be filed under seal, and shall not assert as a ground for entering such an order the mere fact of the inadvertent production. The disclosing person retains the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information. Nothing in this Order shall limit the right of any party to request in camera review of the Inadvertently Disclosed Information.

Right to Assert Other Objections

22.21.   This Order shall not prejudice the rights of any party or non-party to this action to: (a) oppose production of any information on the ground of the attorney-client privilege, the attorney work product doctrine, non-responsiveness, or any privilege or immunity recognized by this Court or the courts of the State of New York, nor shall it be deemed a waiver of any objection to such production; (b) object to the production of documents or information it considers to be outside the scope of discovery; or (c) object to the authenticity or admissibility into evidence of any document, testimony, or other evidence subject to this Order.

Severability and Retention of Jurisdiction

23.   The invalidity or unenforceability of any provision of this Order shall not affect the validity or enforceability of any other provision of this Order, which shall remain in full force and effect.

24.   In the event that the Court determines that Plaintiffs shall not longer be permitted to proceed under pseudonyms, the provisions of this Order relating to Confidential Identity Information will be deemed to no longer apply. Such a determination will not excuse any prior violation of those provision relating to Confidential Identity Information or in any way limit the Court's authority to impose sanctions for such a prior violation.

25.22. This Court shall retain jurisdiction over all persons subject to this Order for so long as such persons are in possession, custody, or control of Protected Material and to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

26.23. Upon entry of an order resolving the arbitrability of Plaintiffs' claims, the terms of this Protective Order will remain in force until either party seeks relief from or modification of those terms, and the Court has granted such request.

7

SO STIPULATED.

Dated:____ ____, 2019


_____          _____
Roberta A. Kaplan, Esq.                    Joanna C. Hendon, Esq.
John C. Quinn, Esq.                        Cynthia Chen, Esq.
Joshua Matz, Esq.
Alexander J. Rodney, Esq.
Matthew J. Craig, Esq.                     SPEARS & IMES LLP
Emily C. Cole, Esq.                        51 Madison Avenue
                                           New York, NY 10010
KAPLAN HECKER & FINK LLP                   Telephone: (212) 897-4487
350 Fifth Avenue, Suite 7110               Facsimile: (212) 213-0849
New York, New York 10118                   jhendon@spearsimes.com
Telephone: (212) 763-0883                  cchen@spearsimes.com
Facsimile: (212) 564-0883
rkaplan@kaplanhecker.com                   *Attorneys for Defendants*
jquinn@kaplanhecker.com
jmatz@kaplanhecker.com
arodney@kaplanhecker.com
mcraig@kaplanhecker.com
ecole@kaplanhecker.com


Andrew G. Celli, Jr., Esq.
Matthew D. Brinckerhoff, Esq.
O. Andrew F. Wilson, Esq.
Katherine Rosenfeld, Esq.
David Berman, Esq.

EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue at Rockefeller Center
New York, NY 10020
Telephone: (212) 763-5000
acelli@ecbalaw.com
mbrinckerhoff@ecbalaw.com
awilson@ecbalaw.com
krosenfeld@ecbalaw.com
dberman@ecbalaw.com

*Attorneys for Plaintiffs*

8

SO ORDERED.

Dated:

_____

LORNA G. SCHOFIELD
United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JANE DOE, LUKE LOE, RICHARD ROE, and
MARY MOE, individually and on behalf of all
others similarly situated,

<em>Plaintiffs,</em>

v.

THE TRUMP CORPORATION, DONALD J.
TRUMP, in his personal capacity,
DONALD TRUMP JR., ERIC TRUMP, and
IVANKA TRUMP,

<em>Defendants.</em>

No. 1:18-cv-09936-LGS

### <u>NON-DISCLOSURE AGREEMENT</u>

I, _____ , acknowledge that I have read and understand the Protective Order ~~in this action~~ governing the non-disclosure of Confidential Discovery Material and Confidential Identity Information (together, "Protected Material") <u>pending the Court's decision on the arbitrability of Plaintiffs' claims</u>. I agree that (1) I will hold in confidence all Protected Material to the extent required by the Protective Order and agree to be bound by the terms of that Order; (2) I will use such Protected Material only for purposes of ~~this litigation~~ <u>aiding the Court's decision regarding the question of the arbitrability of Plaintiffs' claims</u> and for no other purpose whatsoever; and (3) I will take all due precautions to prevent the unauthorized or inadvertent disclosure of such Protected Material.

By acknowledging these obligations under the Protective Order, I understand that I am submitting myself to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of any issue or dispute arising hereunder, and that my willful violation of any term of the Protective Order could subject me to punishment for contempt of court.

Dated:

_____
[Signature]