# EXHIBIT B

SPEARS & IMES LLP

51 Madison Avenue
New York, NY 10010
tel  212-213-6996
fax 212-213-0849

Joanna C. Hendon
tel 212-213-6553
jhendon@spearsimes.com

July 31, 2019

**By E-Mail & FedEx**

Roberta A. Kaplan, Esq.
Kaplan Hecker & Fink LLP
350 Fifth Avenue Suite 7110
New York, NY  10118

Re: *Jane Doe, et al. v. The Trump Corporation, et al.*, 18 CV 9936 *(LGS)*

Dear Ms. Kaplan:

For the purpose of establishing the arbitrability of Plaintiffs' claims against my clients, I write to request that you provide this firm, on a "lawyers' eyes only" basis, the names, social security numbers, and dates of birth by which your clients identified themselves to American Communications Network ("ACN") in order to become ACN Independent Business Owners ("IBOs"), by August 14, 2019.  By "lawyers' eyes only," we mean lawyers and personnel at this firm assigned to this case.  For ease of reference, we enclose with this letter blank IBO Agreements for the periods in which your client allege they became IBOs, each of which requests applicants furnish their name, social security number, and date of birth to ACN as part of the application process.

We intend to furnish this information to counsel for ACN for the purpose of allowing ACN to collect and produce to Defendants evidence that Plaintiffs entered into IBO Agreements containing mandatory arbitration clauses.  Counsel for ACN has countersigned this letter, confirming its commitment to keep confidential and to share with no one (other than ACN personnel for the purpose of collecting the above-described evidence) the names, dates of birth and social security numbers of Plaintiffs.

Defendants intend to serve ACN with a Rule 45 subpoena in response to which we anticipate ACN will raise whatever objections it has and produce responsive material in its possession.  We expect ACN will require entry of a Protective Order before making any production.  To that end, we enclose our edits to the Protective Order you proposed to us on July 25, 2019.

Roberta A. Kaplan                                                      Page 2
July 31, 2019

      Defendants maintain that no discovery other than that narrowly tailored to establish
arbitrability should occur pending decision by the Court on Defendants' motion to compel
arbitration, and Defendants reserve all of their rights.

                           Sincerely,

                           Joanna C. Hendon

AGREED TO:

_____
American Communications Network

By:

Stephanie E. Niehaus, Esq.
Squire Patton Boggs
30 Rockefeller Center
New York, NY  10112

Counsel to ACN

Dated:  July 31, 2019

Encl.

cc: Counsel of Record (by e-mail only)

Roberta A. Kaplan                                                         Page 2
July 31, 2019

     Defendants maintain that no discovery other than that narrowly tailored to establish arbitrability should occur pending decision by the Court on Defendants' motion to compel arbitration, and Defendants reserve all of their rights.

                         Sincerely,

                         Joanna C. Hendon

AGREED TO:

American Communications Network

By:

Stephanie E. Niehaus, Esq.
Squire Patton Boggs
30 Rockefeller Center
New York, NY 10112

Counsel to ACN

Dated:  July 31, 2019

Encl.

cc: Counsel of Record (by e-mail only)

# EXHIBIT 7

# ACN

**ACN Opportunity, LLC**
1000 Progress Place
Concord, NC 28025-2449
Phone: 704-260-3226
Fax: 704-260-3652
Email: ACNRepEntryUS@acninc.com
www.acninc.com

## INDEPENDENT BUSINESS OWNER AGREEMENT

| Office Use Only | Data Entry | Date |
|---|---|---|

**PLEASE TYPE OR PRINT CLEARLY**

(Circle One):

| | Individual | Company |
|---|---|---|

## APPLICANT INFORMATION    *LIST NAME OR COMPANY, NOT BOTH.*

| Last Name | First Name | Middle Initial | Home Telephone (with area code) | Social Security # | Birth date of Applicant |
|---|---|---|---|---|---|

| Company Name (Proof of Company Name, Business Tax ID # or Employer ID # required) | Cellular Telephone (with area code) | Federal Tax I.D.# (if applicable) | Birth date of Principal |
|---|---|---|---|

| Mailing Address | City | State | Zip Code |
|---|---|---|---|

Email Address

## SPONSOR INFORMATION

| Last Name | First Name | Middle Initial | Telephone (with area code) | Business ID |
|---|---|---|---|---|

## US TERMS AND CONDITIONS

I acknowledge that I have received and reviewed the ACN Independent Business Owner Agreement, including these US Terms and Conditions and the ACN Policies and Procedures and the ACN Compensation Plan, which are hereby incorporated into and made part of this ACN Independent Business Owner Agreement by reference (collectively, the "Agreement"). By signing below, I agree to comply with, and be bound by, the terms and conditions set forth in the Agreement. I acknowledge and agree that the Agreement will become a binding agreement upon me and ACN Opportunity, LLC, a North Carolina limited liability company, only upon acceptance by ACN, and that ACN will notify me of acceptance of the Agreement via email to the email address I submit with this Agreement. I understand that ACN has the right to accept or reject my application to become an Independent Business Owner ("IBO") in its sole discretion. For purposes of this Agreement, ACN Opportunity, LLC and its parents, subsidiaries and affiliates are referred to as "ACN". I understand that there is no requirement beyond entering into this Agreement and payment of the initial fee (which includes the purchase of a Team Trainer Kit which is sold at ACN's cost) to become an IBO. No other purchase of sales or training materials or other services are required to become an IBO and my purchase of sales aids, training materials or training is strictly voluntary. I understand that my advancement to higher qualification levels in the ACN Compensation Plan is based upon the acquisition of customers and the usage by such customers of products and services offered by ACN ("ACN Products & Services"), and that I am not obligated to purchase ACN Products and Services. I also understand that if I choose to sponsor others to become IBOs and participate in ACN's Compensation Plan, I will not receive any compensation whatsoever for the act of sponsoring or recruiting, and that I will be compensated based upon the activities of other IBOs only to the extent of sales made by them to customers of ACN Products and Services.

I, I, the undersigned applicant, represent that I am of legal age to enter into legally binding agreements, and that the information submitted in connection with my application to become an IBO is complete, true and correct. I agree to promptly notify ACN of any changes to such information. If I am executing this Agreement on behalf of a corporation, limited liability company, partnership, trust or other entity, I represent that I have the authority to enter into such agreements for the entity, but nonetheless I agree that in addition to such entity, I will be personally responsible for the performance of all the duties and obligations described in this Agreement.

**PLEASE SEE PAGE 2 FOR ADDITIONAL TERMS & CONDITIONS**

## CANCELLATION

I may cancel this transaction, without penalty or obligation, for a full refund, within ten (10) business days from the date of this Agreement, exclusive of the date of signing. I understand that if I cancel after the ten (10) day period, I am not entitled to a full refund. This limitation is not applicable in Georgia or where superseded by any state law. If I cancel within the ten (10) business days from the date of this Agreement, any payments made by me under this Agreement and any instrument executed by me will be returned within fifteen (15) business days following receipt by ACN of my Cancellation Notice. If I cancel, I will return any literature or materials I have received from ACN in substantially as good condition as when received. To cancel this Agreement, I must deliver personally or via courier or by registered or certified mail return receipt requested, a written, signed, dated copy of a Notice of Cancellation to: ACN Opportunity, LLC, 1000 Progress Place, Concord, NC 28025 Attn: FSS Research. Where applicable state law on cancellation is inconsistent with ACN policy, such state law shall be in force.

## ACCEPTANCE AND PAYMENT

☐ **$499 TEAM TRAINER**
By signing below, I authorize ACN to charge the credit card listed below.

Select payment method: ☐ Personal Check (make payable to ACN) ☐ Cashier's Check ☐ Money Order ☐ American Express, Discover, Master Card or Visa

| Credit Card Account Number | Expiration Date |
|---|---|

When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use this information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day you make your payment, and you will not receive your check back from your financial institution. In the event that your check is returned unpaid for insufficient or uncollected funds, we may electronically debit your account for the principal amount of the check.

I verify that I have carefully reviewed and fully understand ACN's income opportunity presentation materials, which can be found on The ACN Opportunity Dual Disc, www.acninc.com or www.acnintegrity.com. I acknowledge that ACN has a global commitment to integrity, and as an ACN Independent Business Owner, it is my responsibility to uphold this commitment and always operate my business the right way.

Yes, I want to become an Independent Business Owner. Neither I, nor my spouse/life partner (unless they are my sponsor), have had any other interest and/or benefit in any other ACN IBO position within the 12 months prior to the effective date of this Agreement. I have read and agree to be bound by all of the terms and conditions of this Agreement, including the US Terms and Conditions, the ACN Policies and Procedures, and the ACN Compensation Plan, all of which are incorporated into this Agreement and are available for me to review, store, or print at www.acninc.com

## ACCEPTED AND AGREED:

| I prefer my kit in the following language (choose one) | Applicant's Signature | Date |
|---|---|---|
| English Kit ☐   Spanish Kit ☐ | | |
| Kit Received: ☐ Yes ☐ No | Applicant's Printed Name | |
| Your Business ID number is: _____ | | |

2. I agree to timely pay for any products, services, training, supplies, or other materials that I am delinquent with respect to such payments. I acknowledge that ACN may offset such debt from any commissions, bonuses, or other compensation earned through the ACN Compensation Plan, or any other monies owing to me ("ACN Payments").

3. I agree that as an IBO, I am an independent contractor responsible for my own business and not an agent, legal representative or employee of ACN or any carrier, supplier, service provider or other party with whom ACN transacts or contracts business ("ACN Providers"). I acknowledge that my IBO relationship is with ACN Opportunity, LLC and not with any ACN Provider. I understand that as an IBO, I am free to select my own means, methods and manner of operation and that I am free to choose the hours and location of my activities under this Agreement, subject only to the terms of this Agreement. I shall have no power or authority to bind ACN, either directly or indirectly, and I will not take any action inconsistent with this limit of authority, including representing in any manner that I am an agent, representative, legal representative or employee of ACN or any ACN Provider. I acknowledge that as an independent contractor I am not entitled to holidays, vacations, disability, insurance, pensions or retirement plans, or any other benefits offered or provided by ACN to its employees. I understand that I am solely responsible for remitting any taxes and obtaining any business licenses or insurance required by regulations or authorities to conduct my business. I acknowledge and agree that I will not be treated as or represent myself as an employee for purposes of any federal, state or local statute, regulation, ordinance or other law.

4. I may terminate this Agreement for any reason, at any time, by giving ACN prior written notice at its address of record. ACN may terminate this Agreement pursuant to the ACN Policies and Procedures or in the event that I breach any part of this Agreement. Upon my request following termination of this Agreement within one (1) year from the date of purchase, ACN shall repurchase the Team Trainer Kit, (at a cost of $50.00), provided that the Team Trainer Kit is returned to ACN in re-useable condition.

5. I acknowledge that as an IBO, I am not guaranteed any income nor am I assured any profits or success, and I certify that no claims of guaranteed profits or representations of expected earnings that might result from my efforts as an IBO have been made by ACN or my sponsor. Similarly, I shall not represent directly or indirectly that any person may, can, or will earn any stated amount or that any IBOs are guaranteed success.

6. I understand that the ACN Products and Services are offered in different markets on terms and at rates determined by ACN or ACN Providers, and that the markets where the services are offered and the terms and conditions or prices thereof may change from time to time without notice.

7. This Agreement shall become effective upon acceptance by ACN and continue for an initial term of one (1) year unless sooner terminated as permitted herein. My relationship with ACN may be extended for additional one year periods by my agreement to the then current ACN IBO US Terms and Conditions, and payment of ACN's annual renewal fee no later than 30 days after each Agreement anniversary date. The annual fee is for services provided by ACN which include but are not limited to tracking of personal customers, tracking of downline IBOs and support services, including but not limited to hosting of an IBO's andirect website, materials and training information on the IBO Back Office, and access to the IBO support call center. I understand that failure to renew within the specified time frame shall result in termination of this Agreement and my relationship with ACN and deactivation of my IBO position, and shall result in the forfeiture of bonuses, commissions or other payments from ACN. However, those rights and obligations which by their nature are intended to survive termination of this Agreement shall survive, including without limitation the provisions governing dispute resolution, indemnification, non-solicitation, confidentiality, and account maintenance fees.

8. I understand that there is a fee to process all ACN Payments. I agree that any payments made to me by ACN that remain unclaimed by me after six (6) months shall be held in an account that is subject to an account maintenance fee of $10 per month (the "Account Maintenance Fee") which shall be deducted by ACN monthly. If there are insufficient funds owed me from which to deduct the monthly Account Maintenance Fee when due, and I do not otherwise pay the Account Maintenance Fee, then the Account Maintenance Fee shall be prorated to reflect the amount of funds remaining and the account shall remain open for an equally prorated amount of time. When no unclaimed amounts are owed to me by ACN the account shall be closed. I further acknowledge that unclaimed amounts owed to me may be subject to applicable escheat laws which may require ACN to deliver unclaimed funds to the state.

9. In the process of selling or otherwise promoting the ACN Products and Services, I agree that I will operate in a lawful, ethical and moral manner and I agree to make no false or misleading statements regarding the ACN Products and Services or about the various relationships between ACN, the ACN Provider(s) and me.

10. I understand that during any investigation by ACN with respect to my breach of this Agreement or my conduct as an IBO, my IBO position status may be suspended by ACN and any ACN Payments which may be otherwise owing to me shall be held until final resolution has been achieved. I acknowledge that in the event ACN determines that I have violated this Agreement, including the ACN Policies and Procedures or the ACN Compensation Plan, ACN may terminate this Agreement and deactivate my IBO position, in which event I will not be entitled to any ACN Payments or further commissions or compensation of any kind.

11. I agree to keep accurate records and shall not engage in or perform any misleading, deceptive or unethical practices. I further agree to abide by all federal, state and local laws and regulations governing the sale or solicitation of the products and services marketed by ACN and/or the ACN Provider(s), including but not limited to, obtaining and maintaining any and all permits and licenses required to perform under this Agreement and I understand that I will be personally liable for any fines and other expenses incurred by ACN as a result of any failure to do so. I specifically represent and warrant that I shall not engage in the slamming of a customer.

12. IN NO EVENT WILL ACN OR ANY ACN PROVIDERS BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES, (INCLUDING DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, AND THE LIKE), ARISING OUT OF ANY CAUSE,  INCLUDING BUT NOT LIMITED TO, BREACH OF WARRANTY OR THE DELAY, ACT, ERROR OR OMISSION OF ACN OR ANY ACN PROVIDER, OR THE DELIVERY, NONDELIVERY, DISCONTINUATION, OR MODIFICATION OF ANY PRODUCT OR SERVICE BY ACN OR ANY ACN PROVIDER, EVEN IF ACN HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

13. EXCEPT AS OTHERWISE DESCRIBED HEREIN, ACN AND ACN PROVIDERS MAKE NO EXPRESS WARRANTIES, AND THERE ARE NO IMPLIED WARRANTIES. EXPRESSLY EXCLUDED ARE ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.  NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY ACN, ANY ACN PROVIDER, OR THEIR AGENTS OR EMPLOYEES WILL CREATE A WARRANTY OR IN ANY WAY INCREASE THE SCOPE OF THE FOREGOING WARRANTIES.

14. ACN shall periodically make various sales literature, promotion materials, training and other products or services available for my use in conducting my business as an IBO. I, however, am under no obligation to purchase any quantities of those materials or services at any time. Rather, I will have the option to order and purchase any materials or services which I may choose. If I choose to purchase such materials then I may return any unused, unopened and currently marketable items for up to one year and receive a refund of 90% of the purchase price. I will be responsible for the cost of shipping said materials to ACN.

15. I acknowledge that I have the right to sign up as many personal customers as I wish. For each personal customer signed, I will be eligible to receive a commission from my personal customers' usage payments for ACN Products and Services and from usage payments from personal customers in my network of IBOs in accord with the currently valid ACN Compensation Plan. I understand that eligibility to receive ACN Payments is conditioned upon being an active IBO with a valid Agreement in effect on the date such compensation is scheduled to be paid. ACN reserves the right to vary or change eligibility as set out in the ACN Compensation Plan. Any other payments I receive will be based upon fulfilling certain terms of qualification as set forth by the ACN Compensation Plan. I agree that as an ACN IBO, I shall place primary emphasis upon the sale of ACN Products and Services to customers. Under certain circumstances, commission rates may be adjusted for promotional products or negotiated pricing.

16. I agree to indemnify and hold ACN, the ACN Providers and their respective shareholders, directors, officers and employees harmless from any and all claims, damages, and expenses, including any attorney's fees, arising out of my actions or omissions in connection with this Agreement. In the event of a dispute between me and ACN as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is agreed that such disputes shall be exclusively resolved through binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration. The arbitration shall be held in Charlotte, North Carolina before a panel of three arbitrators, each side choosing one and then the two choosing the third. All claims hereunder must be brought within two (2) years of the date on which the facts or circumstances giving rise to the claim are alleged to have happened. The laws of the state of North Carolina will apply to the resolution of the dispute unless otherwise agreed in writing. The award of the arbitrator shall be final and may be entered in any court of competent jurisdiction. This provision shall not restrict ACN from seeking preliminary or permanent injunctive relief in any court of competent jurisdiction.

17. I acknowledge that ACN fully reserves its right to amend this Agreement at any time by notifying me of the changes, including by posting the revisions on the ACN website (www.acninc.com). Any changes to this Agreement made by ACN may apply: (1) upon the date of execution or posting of the amended Agreement on the ACN website, or (2) prospectively to some specified date in the amendment. Any such changes are incorporated as part of this Agreement.  No amendment shall apply retroactively. This Agreement, including the US Terms and Conditions, the ACN Policies and Procedures and the ACN Compensation Plan which have been incorporated herein by reference, constitutes the entire agreement between the parties hereto and shall not be modified or amended except as described herein. In the event of a conflict between the US Terms and Conditions and the ACN Policies and Procedures or the ACN Compensation Plan, the US Terms and Conditions shall control. For purposes of this Agreement, my address as submitted by me with this Agreement shall be deemed to be my correct address unless and until notification of a change of address is provided by me to ACN.

18. This Agreement shall be governed by the laws of the state of North Carolina. I understand that I may not assign this Agreement without the prior written consent of ACN, which may be withheld, conditioned, or delayed in ACN's sole discretion. This Agreement shall be binding upon and inure to the benefit of heirs, successors and permitted assigns of the parties hereto. If any provision of this Agreement is determined by any authority of competent jurisdiction to be invalid or unenforceable in part or in whole for any reason whatsoever, the validity of the remaining provisions or portions thereof shall not be affected thereby and such authority should reform this Agreement to the extent necessary to render the otherwise unenforceable provision or portion thereof valid and enforceable.

19. I acknowledge that I may receive proprietary and confidential data or information of ACN and/or ACN Provider(s) which is not publicly known or available to the competitors of ACN or ACN Providers, including but not limited to information about ACN Products and Services, customers, and IBOs ("Confidential Information"), and I agree that I shall treat such Confidential Information as strictly confidential and that I may not, directly or indirectly use, sell, lend, lease, distribute, license, give, transfer, disclose, disseminate, reproduce or otherwise communicate any such Confidential Information to any person or entity for any purpose other than as authorized by ACN in writing. I represent and warrant that I will comply with all ACN  policies and procedures relating to confidential and proprietary information, and I agree that all prohibitions against disclosure of Confidential Information shall survive the termination of this Agreement.

20. During the term of this Agreement, I agree that I shall not, directly or indirectly, sell or solicit customers for products or services offered by ACN through any person or entity other than that specifically designated or approved in writing by ACN. I agree that I shall not, during the term of this Agreement and for a period of one (1) year thereafter, directly or indirectly, divert, entice, knowingly call upon, sell or solicit, take away or move any customer of ACN or any ACN Provider, whether or not I originally procured or brought such customer to ACN (such activities are collectively referred to and included herein as 'solicitation'). All customers solicited by an IBO on behalf of ACN and ACN Providers are deemed to be customers of ACN or the ACN Provider and not of the IBO. I understand that such non solicitation prohibition shall be strictly enforced and that each ACN Provider shall be a third party beneficiary of this prohibition. Further, during the term of the Agreement and for a period of one (1) year thereafter, I may not enter into a direct marketing relationship with any ACN Provider. During the term of this Agreement and for a period of one (1) year thereafter, I may not solicit an ACN IBO, whether active, inactive, individual or entity, to participate in a network marketing program offered by any other company. Without limiting in any way ACN's right to pursue all rights and remedies available to it, violation of this covenant and condition will result in, but is not limited to, forfeiture of all rights in any IBO position and ACN Payments, including all current and future commissions, bonuses and payments of any kind.

# EXHIBIT 8

Case 1:18-cv-09936-LGS Document 85-8 Filed 02/21/19 Page 2 of 3

## ACN

ACN Opportunity, LLC
1000 Progress Place
Concord, NC 28025-2449
Phone: 704-260-3226
Fax: 704-260-3652
www.acninc.com

## INDEPENDENT BUSINESS OWNER AGREEMENT

| Office Use Only | Data Entry | Date |
|---|---|---|
| | | |

**PLEASE TYPE OR PRINT CLEARLY**

(Circle One):

| Individual | Company |
|---|---|

### APPLICANT INFORMATION — *LIST NAME OR COMPANY, NOT BOTH.*

| Last Name | First Name | Middle Initial | Home Telephone (with area code) | Social Security # | Birth date of Applicant |
|---|---|---|---|---|---|
| | | | | | |

| Company Name (Proof of Company Name, Business Tax ID # or Employer ID # required) | | | Cellular Telephone (with area code) | Federal Tax I.D.# (if applicable) | Birth date of Principal |
|---|---|---|---|---|---|
| | | | | | |

| Mailing Address | City | State | Zip Code |
|---|---|---|---|
| | | | |

Email Address

### SPONSOR INFORMATION

| Last Name | First Name | Middle Initial | Telephone (with area code) | Business ID |
|---|---|---|---|---|
| | | | | |

### US TERMS AND CONDITIONS

I acknowledge that I have received and reviewed the ACN Independent Business Owner Agreement, including these US Terms and Conditions and the ACN Policies and Procedures and the ACN Compensation Plan, which are hereby incorporated into and made part of this ACN Independent Business Owner Agreement by reference (collectively, the "Agreement"). By signing below, I agree to comply with, and be bound by, the terms and conditions set forth in the Agreement. I acknowledge and agree that the Agreement will become a binding agreement upon me and ACN Opportunity, LLC, a North Carolina limited liability company, only upon acceptance by ACN, and that ACN will notify me of acceptance of the Agreement via email to the email address I submit with this Agreement. I understand that ACN has the right to accept or reject my application to become an Independent Business Owner ("IBO") in its sole discretion. For purposes of this Agreement, ACN Opportunity, LLC is referred to as "ACN". ACN and its parents, subsidiaries and affiliates may be referred to herein collectively as the "ACN Companies" or each individually as an "ACN Company". I understand that there is no requirement beyond entering into this Agreement and payment of the initial fee to become an IBO. No other purchase of sales or training materials or other services are required to become an IBO and any purchase of sales aids, training materials or training is strictly voluntary. I understand that my advancement to higher qualification levels in the ACN Compensation Plan is based upon the acquisition of customers and the usage by such customers of products (goods and services) offered by or through ACN ("ACN Products"), and that I am not obligated to purchase ACN Products. I also understand that if I choose to sponsor others to become IBOs and participate in ACN's Compensation Plan, I will not receive any compensation whatsoever for the act of sponsoring or recruiting, and that I will be compensated based upon the activities of other IBOs only to the extent of sales made by them to customers of ACN Products.

1. I, the undersigned applicant, represent that I am of legal age to enter into legally binding agreements, and that the information submitted in connection with my application to become an IBO is complete, true and correct. I agree to promptly notify ACN of any changes to such information. If I am executing this Agreement on behalf of a corporation, limited liability company, partnership, trust or other entity, I represent that I have the authority to enter into such agreements for the entity, but nonetheless I agree that in addition to such entity, I will be personally responsible for the performance of all the duties and obligations described in this Agreement.

**PLEASE SEE PAGE 2 FOR ADDITIONAL TERMS & CONDITIONS**

### CANCELLATION

I may cancel this transaction, without penalty or obligation, for a full refund, if postmarked within ten (10) business days from the date of this Agreement, exclusive of the date of signing. I understand that if I cancel after the ten (10) day period, I am not entitled to a full refund. This limitation is subject to and shall be deemed modified to reflect the limitations required by any state law, including the state of Georgia. If I cancel within the ten (10) business days from the date of this Agreement, any payments made by me under this Agreement and any instrument executed by me will be returned within fifteen (15) business days following receipt by ACN of my Cancellation Notice. To cancel this Agreement, I must deliver personally or via courier or by registered or certified mail return receipt requested, a written, signed, dated copy of a Notice of Cancellation to: ACN Opportunity, LLC, 1000 Progress Place, Concord, NC 28025 Attn: FSS Research. Where applicable state law on cancellation is inconsistent with ACN policy, such state law shall be in force.

### ACCEPTANCE AND PAYMENT

☐ **$499 TEAM TRAINER**
By signing below, I authorize ACN to charge the credit card listed below.

Select payment method: ☐ Personal Check (make payable to ACN) ☐ Cashier's Check ☐ Money Order ☐ American Express, Discover, Master Card or Visa

| Credit Card Account Number | Expiration Date |
|---|---|
| | |

When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use this information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day you make your payment, and you will not receive your check back from your financial institution. In the event that your check is returned unpaid for insufficient or uncollected funds, we may electronically debit your account for the principal amount of the check.

I verify that I have carefully reviewed and fully understand ACN's income opportunity presentation materials, which can be found on The ACN Opportunity Dual Disc or www.acninc.com. I acknowledge that ACN has a global commitment to integrity, and as an ACN Independent Business Owner, it is my responsibility to uphold this commitment and always operate my business the right way.

Yes, I want to become an Independent Business Owner. Neither I, nor my spouse/life partner (unless they are my sponsor), have had any other interest and/or benefit in any other ACN IBO position within the 12 months prior to the effective date of this Agreement. I have read and agree to be bound by all of the terms and conditions of this Agreement, including the US Terms and Conditions, the ACN Policies and Procedures, and the ACN Compensation Plan, all of which are incorporated into this Agreement and are available for me to review, store, or print at www.acninc.com

**ACCEPTED AND AGREED:**

| Applicant's Signature | Date |
|---|---|
| | |

| Applicant's Printed Name | |
|---|---|
| | Your Business ID number is: _____ |

©ACN Opportunity, LLC 2014 US_IBO_PP_W_082514

Case 1:18-cv-09936-LGS   Document 85-8   Filed 02/21/18   Page 3 of 3

2. I agree to timely pay for any products I order from ACN, and any amount I may owe ACN. In the event that I am delinquent with respect to such payments, I acknowledge that ACN may offset such debt from any commissions, bonuses, or other compensation earned through the ACN Compensation Plan, or any other monies owing to me ("ACN Payments").

3. I agree that as an IBO, I am an independent contractor responsible for my own business and not an agent, legal representative or employee of ACN or any carrier, supplier, service provider or other party with whom ACN transacts or contracts business ("ACN Providers"). I acknowledge that my IBO relationship is with ACN Opportunity, LLC and not with any other ACN Company or ACN Provider. I understand that as an IBO, I am free to select my own means, methods and manner of operation and that I am free to choose the hours and location of my activities under this Agreement, subject only to the terms of this Agreement. I shall have no power or authority to bind ACN, either directly or indirectly, and I will not take any action inconsistent with this grant of authority, including representing in any manner that I am an agent, representative, legal representative or employee of ACN, any other ACN Company or any ACN Provider. I acknowledge that as an independent contractor I am not entitled to holidays, vacations, disability, insurance, pensions or retirement plans, or any other benefits offered or provided by ACN or any other ACN Company to its employees. I understand that I am solely responsible for remitting any taxes and obtaining any business licenses or insurance required by regulations or authorities to conduct my business. I acknowledge and agree that I will not be treated as or represent myself as an employee for purposes of any federal, state or local statute, regulation, ordinance or other law.

4. I may terminate this Agreement for any reason, at any time, by giving ACN prior written notice at its address of record. ACN may terminate this Agreement pursuant to the ACN Policies and Procedures or in the event that I breach any part of this Agreement.

5. I acknowledge that as an IBO, I am not guaranteed any income nor am I assured any profits or success, and I certify that no claims of guaranteed profits or representations of expected earnings that might result from my efforts as an IBO have been made by ACN or my sponsor. Similarly, I shall not represent directly or indirectly that any person may, can, or will earn any stated amount or that any IBOs are guaranteed success.

6. I understand that the ACN Products are offered in different markets on terms and at rates determined by ACN or ACN Providers, and that the markets where the products are offered and the terms and conditions or prices thereof may change from time to time without notice.

7. This Agreement shall become effective upon acceptance by ACN and continue for an initial term of one (1) year unless sooner terminated as permitted herein. My relationship with ACN may be extended for additional one year periods by my agreement to the then current ACN IBO US Terms and Conditions, and payment of ACN's annual renewal fee no later than 30 days after each Agreement anniversary date. The annual fee is for services provided by ACN which include but are not limited to tracking of personal customers, tracking of downline IBOs and support services, including but not limited to hosting of an IBO's authorized website, materials and training information on the IBO Back Office, and access to the IBO support call center. I understand that failure to renew within the specified time frame shall result in termination of this Agreement and my relationship with ACN and deactivation of my IBO position, and shall result in the forfeiture of bonuses, commissions or other payments from ACN. However, those rights and obligations which by their nature are intended to survive termination of this Agreement shall survive, including without limitation the provisions governing dispute resolution, indemnification, non-solicitation, confidentiality, and account maintenance fees.

8. I understand that there is a fee to process all ACN Payments. I agree that any payments made to me by ACN that remain unclaimed by me after six (6) months shall be held in an account that is subject to an account maintenance fee of $10 per month (the "Account Maintenance Fee") which shall be deducted by ACN monthly. If there are insufficient funds owed me from which to deduct the monthly Account Maintenance Fee when due, and I do not otherwise pay the Account Maintenance Fee, then the Account Maintenance Fee shall be prorated to reflect the amount of funds remaining and the account shall remain open for an equally prorated amount of time. When no unclaimed amounts are owed to me by ACN the account shall be closed. I further acknowledge that unclaimed amounts owed to me may be subject to applicable escheat laws which may require ACN to deliver unclaimed funds to the state.

9. In the process of selling or otherwise promoting the ACN Products, I agree that I will operate in a lawful, ethical and moral manner and I agree to make no false or misleading statements regarding the ACN Products or about the various relationships between ACN, the ACN Provider(s) and me.

10. I understand that during any investigation by ACN with respect to my breach of this Agreement or my conduct as an IBO, my IBO position status may be suspended by ACN and any ACN Payments which may be otherwise owing to me shall be held until final resolution has been achieved. I acknowledge that in the event ACN determines that I have violated this Agreement, including the ACN Policies and Procedures or the ACN Compensation Plan, ACN may terminate this Agreement and deactivate my IBO position, in which event I will not be entitled to any ACN Payments or further commissions or compensation of any kind.

11. I agree to keep accurate records and shall not engage in or perform any misleading, deceptive or unethical practices. I further agree to abide by all federal, state and local laws and regulations governing the sale or solicitation of the products marketed by ACN and/or the ACN Provider(s), including but not limited to, all applicable anti-spam legislation and obtaining and maintaining any and all permits and licenses required to perform under this Agreement and I understand that I will be personally liable for any fines and other expenses incurred by ACN, any ACN Company or any ACN Provider as a result of any failure to do so. I specifically represent and warrant that I shall not engage in the slamming of a customer.

12. IN NO EVENT WILL ACN, ANY OTHER ACN COMPANY OR ANY OTHER ACN PROVIDER BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES, (INCLUDING DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, AND THE LIKE), ARISING OUT OF ANY CAUSE, INCLUDING BUT NOT LIMITED TO, BREACH OF WARRANTY OR THE DELAY, ACT, ERROR OR OMISSION OF ACN, ANY ACN COMPANY OR ANY ACN PROVIDER, OR THE DELIVERY, NONDELIVERY, DISCONTINUATION, OR MODIFICATION OF ANY PRODUCT OR SERVICE BY ACN, ANY ACN COMPANY, OR ANY ACN PROVIDER, EVEN IF ACN HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

13. OTHER THAN THE RETURN RIGHTS DESCRIBED HEREIN, ACN, THE OTHER ACN COMPANIES AND ACN PROVIDERS MAKE NO EXPRESS WARRANTIES, AND THERE ARE NO IMPLIED WARRANTIES. EXPRESSLY EXCLUDED ARE ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY ACN, ANY ACN COMPANY, ANY ACN PROVIDER, OR THEIR AGENTS OR EMPLOYEES WILL CREATE A WARRANTY OR IN ANY WAY INCREASE THE SCOPE OF THE FOREGOING WARRANTY.

14. I understand that I have access to a variety of ACN promotional materials, training and other products available for my use in conducting my business as an IBO. I, however, am under no obligation to purchase any quantities of those materials or services at any time. Rather, I will have the option to order and purchase any materials or services which I may choose. If I choose to purchase such materials then I may return any unused, unopened and currently marketable items for up to one year and receive a refund of 90% of the purchase price. I will be responsible for the cost of shipping said materials to ACN.

15. I acknowledge that I have the right to sign up as many personal customers as I wish. For each personal customer signed, I will be eligible to receive a commission from my personal customers' usage payments for ACN Products and from usage payments from personal customers in my network of IBOs in accord with the currently valid ACN Compensation Plan. I understand that eligibility to receive ACN Payments is conditioned upon being an active IBO with a valid Agreement in effect on the date such compensation is scheduled to be paid. ACN reserves the right to vary or change eligibility as set out in the ACN Compensation Plan. Any other payments I receive will be based upon fulfilling certain terms of qualification as set forth by the ACN Compensation Plan. I agree that as an ACN IBO, I shall place primary emphasis upon the sale of ACN Products to customers. Under certain circumstances, commission rates may be adjusted for promotional products or negotiated pricing.

16. I agree to indemnify and hold ACN, the other ACN Companies, the ACN Providers and their respective shareholders, directors, officers and employees harmless from any and all claims, damages, and expenses, including any attorney's fees, arising out of my actions or omissions in connection with this Agreement. In the event of a dispute between me and ACN as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is agreed that such disputes shall be exclusively resolved through binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration. The arbitration shall be held in Charlotte, North Carolina before a panel of three arbitrators, each side choosing one and then the two choosing the third. All claims hereunder must be brought within two (2) years of the date on which the facts or circumstances giving rise to the claim are alleged to have happened. The laws of the state of North Carolina will apply to the resolution of the dispute unless otherwise agreed in writing. The award of the arbitrator shall be final and may be entered in any court of competent jurisdiction. This provision shall not restrict ACN from seeking preliminary or permanent injunctive relief in any court of competent jurisdiction.

17. I acknowledge that ACN fully reserves its right to amend this Agreement at any time by notifying me of the changes, including by posting the revisions on the ACN website (www.acninc.com). Any changes to this Agreement made by ACN may apply: (1) upon the date of execution or posting of the amended Agreement on the ACN website, or (2) prospectively to some specified date in the amendment. Any such changes are incorporated as part of this Agreement. No amendment shall apply retroactively. This Agreement, including the US Terms and Conditions, the ACN Policies and Procedures and the ACN Compensation Plan which have been incorporated herein by reference, constitutes the entire agreement between the parties hereto and shall not be modified or amended except as described herein. In the event of a conflict between the US Terms and Conditions and the ACN Policies and Procedures or the ACN Compensation Plan, the US Terms and Conditions shall control. For purposes of this Agreement, my address as submitted by me with this Agreement shall be deemed to be my correct address unless and until notification of a change of address is provided by me to ACN.

18. This Agreement shall be governed by the laws of the state of North Carolina. I understand that I may not assign this Agreement without the prior written consent of ACN, which may be withheld, conditioned, or delayed in ACN's sole discretion. This Agreement shall be binding upon and inure to the benefit of heirs, successors and permitted assigns of the parties hereto. If any provision of this Agreement is determined by any authority of competent jurisdiction to be invalid or unenforceable in part or in whole for any reason whatsoever, the validity of the remaining provisions or portions thereof shall not be affected thereby and such authority should reform this Agreement to the extent necessary to render the otherwise unenforceable provision or portion thereof valid and enforceable.

19. I acknowledge that I may receive proprietary and confidential data or information of ACN and/or ACN Provider(s) which is not publicly known or available to the competitors of ACN or ACN Providers, including but not limited to information about ACN Products, customers, and IBOs ("Confidential Information"), and I agree that I shall treat such Confidential Information as strictly confidential and that I may not, directly or indirectly use, sell, lend, lease, distribute, license, give, transfer, disclose, disseminate, reproduce or otherwise communicate any such Confidential Information to any person or entity for any purpose other than as authorized by ACN in writing. I represent and warrant that I will comply with all ACN policies and procedures relating to confidential and proprietary information, and I agree that all prohibitions against disclosure of Confidential Information shall survive the termination of this Agreement.

20. During the term of this Agreement, I agree that I shall not, directly or indirectly, sell or solicit customers for products offered by or through ACN through any person or entity other than that specifically designated or approved in writing by ACN. I agree that I shall not, during the term of this Agreement and for a period of one (1) year thereafter, directly or indirectly, divert, entice, knowingly call upon, sell or solicit, take away or move any customer of ACN, any other ACN Company or any ACN Provider, whether or not I originally procured or brought such customer to ACN, any other ACN Company or ACN Provider (such activities are collectively referred to and included herein as 'solicitation'). All customers solicited by an IBO on behalf of ACN, any other ACN Company or ACN Providers are deemed to be customers of ACN, the other ACN Company or the ACN Provider (as applicable) and not of the IBO. I understand that such non solicitation prohibition shall be strictly enforced and that each other ACN Company and ACN Provider shall be a third party beneficiary of this prohibition. Further, during the term of the Agreement and for a period of one (1) year thereafter, I may not enter into a direct marketing relationship with any ACN Provider. During the term of this Agreement and for a period of one (1) year thereafter, I shall not solicit an ACN Company IBO, whether active, inactive, individual or entity, to participate in a network marketing program offered by any other company. Each ACN Company shall be a third party beneficiary of this prohibition. Without limiting in any way ACN's or any other ACN Company's right to pursue all rights and remedies available to it, violation of this covenant and condition will result in, but is not limited to, forfeiture of all rights in any IBO position and ACN Payments, including all current and future commissions, bonuses and payments of any kind.

©ACN Opportunity, LLC 2014 US_IBO_HP_W_062514

# EXHIBIT 9

# ACN

ACN Opportunity, LLC
1000 Progress Place
Concord, NC 28025-2449
Phone: 704-260-3226
Fax: 704-260-3652
www.acninc.com

## INDEPENDENT BUSINESS OWNER AGREEMENT

| Office Use Only | Data Entry | Date |
|---|---|---|

**PLEASE TYPE OR PRINT CLEARLY**

(Circle One):

| Individual | Company |
|---|---|

## APPLICANT INFORMATION   *LIST NAME OR COMPANY, NOT BOTH.*

| Last Name | First Name | Middle Initial | Home Telephone (with area code) | Social Security # | Birth date of Applicant |
|---|---|---|---|---|---|

| Company Name (Proof of Company Name, Business Tax ID # or Employer ID # required) | Cellular Telephone (with area code) | Federal Tax I.D.# (if applicable) | Birth date of Principal |
|---|---|---|---|

| Mailing Address | City | State | Zip Code |
|---|---|---|---|

Email Address

## SPONSOR INFORMATION

| Last Name | First Name | Middle Initial | Telephone (with area code) | Business ID |
|---|---|---|---|---|

## US TERMS AND CONDITIONS

I acknowledge that I have received and reviewed the ACN Independent Business Owner Agreement, including these US Terms and Conditions and the ACN Policies and Procedures and the ACN Compensation Plan, which are hereby incorporated into and made part of this ACN Independent Business Owner Agreement by reference (collectively, the "Agreement"). By signing below, I agree to comply with, and be bound by, the terms and conditions set forth in the Agreement. I acknowledge and agree that the Agreement will become a binding agreement upon me and ACN Opportunity, LLC, a North Carolina limited liability company, only upon acceptance by ACN, and that ACN will notify me of acceptance of the Agreement via email to the email address I submit with this Agreement. I understand that ACN has the right to accept or reject my application to become an Independent Business Owner ("IBO") in its sole discretion. For purposes of this Agreement, ACN Opportunity, LLC is referred to as "ACN". ACN and its parents, subsidiaries and affiliates may be referred to herein collectively as the "ACN Companies" or each individually as an "ACN Company". I understand that there is no requirement beyond entering into this Agreement and payment of the initial fee to become an IBO. No other purchase of sales or training materials or other services are required to become an IBO and any purchase of sales aids, training materials or training is strictly voluntary. I understand that my advancement to higher qualification levels in the ACN Compensation Plan is based upon the acquisition of customers and the usage by such customers of products (goods and services) offered by or through ACN ("ACN Products"), and that I am not obligated to purchase ACN Products. I also understand that if I choose to sponsor others to become IBOs and participate in ACN's Compensation Plan, I will not receive any compensation for the act of sponsoring or recruiting, and that I will be compensated based upon the activities of other IBOs only to the extent of sales made by them to customers of ACN Products.

1. I, the undersigned applicant, represent that I am of legal age to enter into legally binding agreements, and that the information submitted in connection with my application to become an IBO is complete, true and correct. I agree to promptly notify ACN of any changes to such information. If I am executing this Agreement on behalf of a corporation, limited liability company, partnership, trust or other entity, I represent that I have the authority to enter into such agreements for the entity, but nonetheless I agree that in addition to such entity, I will be personally responsible for the performance of all the duties and obligations described in this Agreement. **PLEASE SEE PAGE 2 FOR ADDITIONAL TERMS & CONDITIONS**

## CANCELLATION

I may cancel this transaction, without penalty or obligation, for a full refund, if postmarked within ten (10) business days from the date of this Agreement, exclusive of the date of signing. I understand that if I cancel after the ten (10) day period, I am not entitled to a full refund. This limitation is subject to and shall be deemed modified to reflect the limitations required by any state law, including the state of Georgia. If I cancel within the ten (10) business days from the date of this Agreement, any payments made by me under this Agreement and any instrument executed by me will be returned within fifteen (15) business days following receipt by ACN of my Cancellation Notice. To cancel this Agreement, I must deliver personally or via courier or by registered or certified mail return receipt requested, a written, signed, dated copy of a Notice of Cancellation to: ACN Opportunity, LLC, 1000 Progress Place, Concord, NC 28025 Attn: FSS Research. Where applicable state law on cancellation is inconsistent with ACN policy, such state law shall be in force.

## ACCEPTANCE AND PAYMENT

☐ **$499 TEAM TRAINER**

By signing below, I authorize ACN to charge the credit card listed below.

Select payment method: ☐ Personal Check (make payable to ACN)  ☐ Cashier's Check  ☐ Money Order  ☐ American Express, Discover, Master Card or Visa

| Credit Card Account Number | Expiration Date | CVV Code (The 3 or 4 digit value located on the front or back of your card) |
|---|---|---|

When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use this information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day you make your payment, and you will not receive your check back from your financial institution. In the event that your check is returned unpaid for insufficient or uncollected funds, we may electronically debit your account for the principal amount of the check.

I verify that I have carefully reviewed and fully understand ACN's income opportunity presentation materials, which can be found on The ACN Opportunity Dual Disc or www.acninc.com. I acknowledge that ACN has a global commitment to integrity, and as an ACN Independent Business Owner, it is my responsibility to uphold this commitment and always operate my business the right way.

Yes, I want to become an Independent Business Owner. Neither I, nor my spouse/life partner (unless they are my sponsor), have had any other interest and/or benefit in any other ACN IBO position within the 12 months prior to the effective date of this Agreement. I have read and agree to be bound by all of the terms and conditions of this Agreement, including the US Terms and Conditions, the ACN Policies and Procedures, and the ACN Compensation Plan, all of which are incorporated into this Agreement and are available for me to review, store, or print at www.acninc.com

### ACCEPTED AND AGREED:

| Applicant's Signature | Date |
|---|---|

| Applicant's Printed Name | Your Business ID number is: _____ |
|---|---|

©ACN Opportunity, LLC 2016 US_IBO_RP_W_040116

2. I agree to timely pay for any products I purchase. In the event that any ACN monies are owed by me to ACN for the event that I am delinquent with respect to such payments, I acknowledge that ACN may offset such debt from any commissions, bonuses, or other compensation earned through the ACN Compensation Plan, or any other monies owing to me ("ACN Payments").

3. I agree that as an IBO, I am an independent contractor responsible for my own business and not an agent, legal representative or employee of ACN or any carrier, supplier, service provider or other party with whom ACN transacts or contracts business ("ACN Providers"). I acknowledge that my IBO relationship is with ACN Opportunity, LLC and not with any other ACN Company or ACN Provider. I understand that as an IBO, I am free to select my own means, methods and manner of operation and that I am free to choose the hours and location of my activities under this Agreement, subject only to the terms of this Agreement. I shall have no power or authority to bind ACN, either directly or indirectly, and I will not take any action inconsistent with this limit of authority, including representing in any manner that I am an agent, representative, legal representative or employee of ACN, any other ACN Company or any ACN Provider. I acknowledge that as an independent contractor I am not entitled to holidays, vacations, disability, insurance, pensions or retirement plans, or any other benefits offered or provided by ACN or any other ACN Company to its employees. I understand that I am solely responsible for remitting any taxes and obtaining any business licenses or insurance required by regulations or authorities to conduct my business. I acknowledge and agree that I will not be treated as or represent myself as an employee for purposes of any federal, state or local statute, regulation, ordinance or other law.

4. I may terminate this Agreement for any reason, at any time, by giving ACN prior written notice at its address of record. ACN may terminate this Agreement pursuant to the ACN Policies and Procedures or in the event that I breach any part of this Agreement.

5. I acknowledge that as an IBO, I am not guaranteed any income nor am I assured any profits or success, and I certify that no claims of guaranteed profits or representations of expected earnings that might result from my efforts as an IBO have been made by ACN or my sponsor. Similarly, I shall not represent directly or indirectly that any person may, can, or will earn any stated amount or that any IBOs are guaranteed success.

6. I understand that the ACN Products are offered in different markets on terms and at rates determined by ACN or ACN Providers, and that the markets where the products are offered and the terms and conditions or prices thereof may change from time to time without notice.

7. This Agreement shall become effective upon acceptance by ACN and continue for an initial term of one (1) year unless sooner terminated as permitted herein. My relationship with ACN may be extended for additional one year periods by my agreement to the then current ACN IBO US Terms and Conditions, and payment of ACN's annual renewal fee no later than 30 days after each Agreement anniversary date. The annual fee is for services provided by ACN which include but are not limited to tracking of personal customers, tracking of downline IBOs and support services, including but not limited to hosting of an IBO's acindirect website, materials and training information on the IBO Back Office, and access to the IBO support call center. I understand that failure to renew within the specified time frame shall result in termination of this Agreement and my relationship with ACN and deactivation of my IBO position, and shall result in the forfeiture of bonuses, commissions or other payments from ACN. However, those rights and obligations which by their nature are intended to survive termination of this Agreement shall survive, including without limitation the provisions governing dispute resolution, indemnification, non-solicitation, confidentiality, and account maintenance fees.

8. I understand that there is a fee to process all ACN Payments. I agree that any payments made to me by ACN that remain unclaimed by me after six (6) months shall be held in an account that is subject to an account maintenance fee of $10 per month (the "Account Maintenance Fee") which shall be deducted by ACN monthly. If there are insufficient funds owed me from which to deduct the monthly Account Maintenance Fee when due, and I do not otherwise pay the Account Maintenance Fee, then the Account Maintenance Fee shall be prorated to reflect the amount of funds remaining and the account shall remain open for an equally prorated amount of time. When no unclaimed amounts are owed to me by ACN the account shall be closed. I further acknowledge that unclaimed amounts owed to me may be subject to applicable escheat laws which may require ACN to deliver unclaimed funds to the state.

9. In the process of selling or otherwise promoting the ACN Products, I agree that I will operate in a lawful, ethical and moral manner and I agree to make no false or misleading statements regarding the ACN Products or about the various relationships between ACN, the ACN Provider(s) and me.

10. I understand that during any investigation by ACN with respect to my breach of this Agreement or my conduct as an IBO, my IBO position status may be suspended by ACN and any ACN Payments which may be otherwise owing to me shall be held until final resolution has been achieved. I acknowledge that in the event ACN determines that I have violated this Agreement, including the ACN Policies and Procedures or the ACN Compensation Plan, ACN may terminate this Agreement and deactivate my IBO position, in which event I will not be entitled to any ACN Payments or further commissions or compensation of any kind.

11. I agree to keep accurate records and shall not engage in or perform any misleading, deceptive or unethical practices. I further agree to abide by all federal, state and local laws and regulations governing the sale or solicitation of the products marketed by ACN and/or the ACN Provider(s), including but not limited to, all applicable anti-spam legislation and obtaining and maintaining any and all permits and licenses required to perform under this Agreement and I understand that I will be personally liable for any fines and other expenses incurred by ACN, any ACN Company or any ACN Provider as a result of any failure to do so. I specifically represent and warrant that I shall not engage in the slamming of a customer.

12. IN NO EVENT WILL ACN, ANY OTHER ACN COMPANY OR ANY OTHER ACN PROVIDER BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES, (INCLUDING DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, AND THE LIKE), ARISING OUT OF ANY CAUSE, INCLUDING BUT NOT LIMITED TO, BREACH OF WARRANTY OR THE DELAY, ACT, ERROR OR OMISSION OF ACN, ANY ACN COMPANY OR ANY ACN PROVIDER, OR THE DELIVERY, NONDELIVERY, DISCONTINUATION, OR MODIFICATION OF ANY PRODUCT OR SERVICE BY ACN, ANY ACN COMPANY, OR ANY ACN PROVIDER, EVEN IF ACN HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

13. OTHER THAN THE RETURN RIGHTS DESCRIBED HEREIN, ACN, THE OTHER ACN COMPANIES AND ACN PROVIDERS MAKE NO EXPRESS WARRANTIES, AND THERE ARE NO IMPLIED WARRANTIES, EXPRESSLY EXCLUDED ARE ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY ACN, ANY ACN COMPANY, ANY ACN PROVIDER, OR THEIR AGENTS OR EMPLOYEES WILL CREATE A WARRANTY OR IN ANY WAY INCREASE THE SCOPE OF THE FOREGOING WARRANTY.

14. ACN shall periodically make various sales literature, promotion materials, training and other products available for my use in conducting my business as an IBO. I, however, am under no obligation to purchase any quantities of those materials or services at any time. Rather, I will have the option to order and purchase any materials or services which I may choose. If I choose to purchase such materials then I may return any unused, unopened and currently marketable items for up to one year and receive a refund of 90% of the purchase price. I will be responsible for the cost of shipping said materials to ACN.

15. I acknowledge that I have the right to sign up as many personal customers as I wish. For each personal customer signed, I will be eligible to receive a commission from my personal customers' usage payments for ACN Products and from usage payments from personal customers in my network of IBOs in accord with the currently valid ACN Compensation

in effect on the date such compensation is scheduled to be paid. ACN reserves the right to vary or change eligibility as set out in the ACN Compensation Plan. Any other payments I receive will be based upon fulfilling certain terms of qualification as set forth by the ACN Compensation Plan. I agree that as an ACN IBO, I shall place primary emphasis upon the sale of ACN Products to customers. Under certain circumstances, commission rates may be adjusted for promotional products or negotiated pricing.

16. I agree to indemnify and hold ACN, the other ACN Companies, the ACN Providers and their respective shareholders, directors, officers and employees harmless from any and all claims, damages, and expenses, including any attorney's fees, arising out of my actions or omissions in connection with this Agreement.

17. This Agreement shall be governed by the laws of the state of North Carolina and the Federal Arbitration Act, as specified in Section II.B. of the ACN Policies and Procedures. In the event of a dispute between ACN and me as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is mutually agreed that such disputes shall be exclusively resolved through the process and according to the provisions specified in Section II.B. of the ACN Policies and Procedures ("Dispute Resolution Provisions"). ACN and I agree that, notwithstanding Section 18 below, to the extent of any inconsistency, the Dispute Resolution Provisions in the ACN Policies and Procedures shall control. The Dispute Resolution Provisions require, without limitation, and except as otherwise expressly stated, that ACN and I will resolve all disputes through binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration. Both ACN and I agree that all disputes will be resolved on an individual basis and that each may only bring claims against the other in an individual capacity (and not as a claimant or class member in any purported class or representative proceeding).

18. I acknowledge that ACN fully reserves its right to amend this Agreement at any time by notifying me of the changes, including by posting the revisions on the ACN website (www.acninc.com). Any changes to this Agreement made by ACN may apply: (1) upon the date of execution or posting of the amended Agreement on the ACN website, or (2) prospectively to some specified date in the amendment. Any such changes are incorporated as part of this Agreement. No amendment shall apply retroactively. This Agreement, including the US Terms and Conditions, the ACN Policies and Procedures and the ACN Compensation Plan which have been incorporated herein by reference, constitutes the entire agreement between the parties hereto and shall not be modified or amended except as described herein. In the event of a conflict between the US Terms and Conditions and the ACN Policies and Procedures or the ACN Compensation Plan, the US Terms and Conditions shall control. For purposes of this Agreement, my address as submitted by me with this Agreement shall be deemed to be my correct address unless and until notification of a change of address is provided by me to ACN.

19. I understand that I may not assign this Agreement without the prior written consent of ACN, which may be withheld, conditioned, or delayed in ACN's sole discretion. This Agreement shall be binding upon and inure to the benefit of heirs, successors and permitted assigns of the parties hereto. If any provision of this Agreement is determined by any authority of competent jurisdiction to be invalid or unenforceable in part or in whole for any reason whatsoever, the validity of the remaining provisions or portions thereof shall not be affected thereby and such authority should reform this Agreement to the extent necessary to render the otherwise unenforceable provision or portion thereof valid and enforceable.

20. I acknowledge that I may receive proprietary and confidential data or information of ACN and/or ACN Provider(s) which is not publicly known or available to the competitors of ACN or ACN Providers, including but not limited to information about ACN Products, customers, and IBOs ("Confidential Information"), and I agree that I shall treat such Confidential Information as strictly confidential and that I may not, directly or indirectly use, sell, lend, lease, distribute, license, give, transfer, disclose, disseminate, reproduce or otherwise communicate any such Confidential Information to any person or entity for any purpose other than as authorized by ACN in writing. I represent and warrant that I will comply with all ACN policies and procedures relating to confidential and proprietary information, and I agree that all prohibitions against disclosure of Confidential Information shall survive the termination of this Agreement.

21. During the term of this Agreement, I agree that I shall not, directly or indirectly, sell or solicit customers for products offered by or through ACN through any person or entity other than that specifically designated or approved in writing by ACN. I agree that I shall not, during the term of this Agreement and for a period of one (1) year thereafter, directly or indirectly, divert, entice, knowingly call upon, sell or solicit, take away or move any customer of ACN, any other ACN Company or any ACN Provider, whether or not I originally procured or brought such customer to ACN, any other ACN Company or ACN Provider (such activities are collectively referred to and included herein as 'solicitation'). All customers solicited by an IBO on behalf of ACN, any other ACN Company or ACN Providers are deemed to be customers of ACN, the other ACN Company or the ACN Provider (as applicable) and not of the IBO. I understand that such non solicitation prohibition shall be strictly enforced and that each other ACN Company and each ACN Provider shall be a third party beneficiary of this prohibition. Further, during the term of the Agreement and for a period of one (1) year thereafter, I may not enter into a direct marketing relationship with any ACN Provider. During the term of this Agreement and for a period of one (1) year thereafter, I shall not solicit an ACN Company IBO, whether active, inactive, individual or entity, to participate in a network marketing program offered by any other company. Each ACN Company shall be a third party beneficiary of this prohibition. Without limiting in any way ACN's or any other ACN Company's right to pursue all rights and remedies available to it, violation of this covenant and condition will result in, but is not limited to, forfeiture of all rights in any IBO position and ACN Payments, including all current and future commissions, bonuses and payments of any kind.

©ACN Opportunity, LLC 2016 US_IBO_RP_W_040116

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JANE DOE, LUKE LOE, RICHARD ROE, and
MARY MOE, individually and on behalf of all
others similarly situated,

*Plaintiffs,*

v.

THE TRUMP CORPORATION, DONALD J.
TRUMP, in his personal capacity,
DONALD TRUMP JR., ERIC TRUMP, and
IVANKA TRUMP,

*Defendants.*

No. 1:18-cv-09936-LGS

---

## [PROPOSED] STIPULATED PROTECTIVE ORDER PENDING THE COURT'S DECISION ON THE ARBITRABILITY OF PLAINTIFFS' CLAIMS

LORNA G. SCHOFIELD, United States District Judge:

      The Court having found that good cause exists for the issuance of an appropriately tailored protective order pending its decision on the arbitrability of Plaintiffs' claims, and the parties having stipulated to the following provisions, it is hereby ORDERED that any person subject to this Order—including without limitation the parties to the action; their attorneys, representatives, employees, agents, experts, and consultants, acting as such; all third parties providing discovery in this action; and all other interested persons with actual or constructive notice of this Order—shall adhere to the following terms, upon pain of contempt:

Confidential Identity Information

1.    "Confidential Identity Information" is hereby defined as (i) the identities of Plaintiffs Jane Doe, Luke Loe, Richard Roe, and Mary Moe, and (ii) any documents, information, or materials that may reasonably be expected to lead to the identification of those Plaintiffs as the individuals who filed the action.

2.    Any person subject to this Order shall not disclose Confidential Identity Information to anyone else except as this Order expressly permits, and shall take all due precautions to prevent the unauthorized or inadvertent disclosure.

Discovery Materials May Be Designated as Confidential and/or Confidential Identity Information

3.    A person producing "Discovery Material" (*i.e.*, information of any kind provided in the course of discovery in this action, pending a decision by the Court on the arbitrability of

Plaintiffs' claims) may designate as Confidential any material or portion thereof that contains trade secrets, proprietary business information, competitively sensitive information, or other information the disclosure of which would, in the good faith judgment of the designating person, be seriously detrimental to the producing person's business or personal interests. A person producing Discovery Material may designate as Confidential Identity Information any material or portion thereof that, in the good faith opinion of the producing person, meets the definition of Confidential Identity Information in paragraph 1 above.

4.   Any person subject to this Order who receives from any other person any Discovery Material that is designated as Confidential or Confidential Identity Information (together, "Protected Material") shall not disclose such Protected Material to anyone else except as expressly permitted hereunder. Protected Material shall be used solely for purposes of developing evidence regarding whether Plaintiffs agreed to arbitrate with American Communications Network ("ACN") in connection with the litigation of this action and for no other purpose whatsoever, provided that nothing in this Order shall limit disclosure or use by a producing person of its own Protected Material.

5.   Where the portion of Discovery Material constituting Protected Material is reasonably separable from the non-Protected Material portion, only the portion constituting Protected Material shall be so designated. Any party that intends to use only non-Protected Material portions of a document containing Protected Material as part of a motion, or at a deposition or trial, may request that the producing party provide a redacted version of that document.

6.   With respect to the protected portion of any Discovery Material other than deposition transcripts and exhibits, the producing person or that person's counsel may designate Discovery Material or any portion thereof as "Confidential" or "Confidential Identity Information" by stamping or otherwise clearly marking as "Confidential" or "Confidential Identity Information," respectively, the protected document or portion in a manner that will not interfere with legibility or audibility. Deposition testimony may be designated as Confidential and/or Confidential Identity Information either on the record during the deposition or in writing within five two business days of receipt of the transcript. If so designated, the final transcript of the designated testimony shall be bound in a separate volume and bear the notation "Confidential Information Governed by Protective Order," "Confidential Identity Information Governed by Protective Order," or "Confidential Information and Confidential Identity Information Governed by Protective Order."

7.   If at any time prior to the trial of this action Court's decision on the arbitrability of Plaintiffs' claims, a producing person believes in good faith that Discovery Material or a portion thereof that that person previously produced without limitation should be designated as "Confidential" and/or "Confidential Identity Information," the producing person may so designate that material or portion by promptly notifying all parties in writing. Such designated Discovery Material will thereafter be treated as Confidential and/or Confidential Identity Information under the terms of this Order. In addition, the producing person shall provide each other party with replacement versions of such Discovery Material that bears the appropriate designation within two business days of

2

providing such notice.

8. Any party may designate, as Confidential or Confidential Identity Information, Discovery Material produced by another party without such a designation, provided that such Discovery Material contains the designating party's own Confidential or Confidential Identity Information. Such designation shall be accomplished by providing written notice to all receiving parties identifying the Discovery Material whose designation is be affected. In addition, the designating party shall provide all receiving parties with replacement versions of such Discovery Material that reflect the new designation.

<u>Who May Receive Protected Material</u>

9. No person subject to this Order, other than the producing person, shall disclose any Confidential Discovery Material to any other person whomsoever, except to:

   a. the parties to this action;

   b. counsel retained specifically for this action, including any paralegal, clerical, or other assistant employed by such counsel to work on this action, and in-house counsel for the Trump Corporation;

   c. as to any document, its author, its addressee, and any other person shown on the face of the document as having received a copy;

   d. any witness who counsel for a party in good faith believes may be called to testify at a ~~trial or~~ deposition ~~in this action~~sought by a party in aid of the Court's decision on the arbitrability of Plaintiffs' claims, provided such person, other than those persons set forth in subparagraphs 9(a) and (c), has first executed a Non- Disclosure Agreement in the form annexed hereto;

   e. any person retained by a party to serve as an expert witness or consultant or otherwise provide specialized advice to counsel in connection with ~~this actionDefendants' anticipated motion to compel arbitration or Plaintiffs' opposition to that motion~~, provided such person has first executed a Non-Disclosure Agreement in the form annexed hereto, and further provided that any such support staff are subject to contractual or professional duties of confidentiality with respect to such material;

   f. stenographers and video technicians engaged to transcribe or record depositions conducted in this action, provided such persons are subject to contractual or professional duties of confidentiality with respect to such material;

   g. independent photocopying, graphic production services, or other litigation support services employed by the parties or their counsel to assist in this action, including computer service personnel performing duties in relation to a computerized litigation system, provided such persons are subject to contractual or professional duties of confidentiality with respect to such material;

3

      h.     the Court and its staff;

      i.     any mediators engaged by the parties; and

      j.     any other person whom the producing person, or other person designating the Discovery Material as Confidential, agrees in writing may have access to such Confidential Discovery Material.

10.     No person subject to this Order, other than the Plaintiff whose identity is being protected, shall disclose any Confidential Identity Information to any other person whomsoever, except to:

      a.     any person referred to in subparagraphs 9(b), (e), (f), (g), (h), and (i) above;

      b.     any non-party witness who counsel for a party in good faith believes may be called to testify at ~~trial or~~ a deposition in ~~this action~~ sought by a party in aid of the Court's decision on the arbitrability of Plaintiffs' claims, and who counsel for a party in good faith believes needs access to Confidential Identity Information in order to provide relevant testimony, provided such person has first executed a Non- Disclosure Agreement in the form annexed hereto;

      c.     any non-party recipient of a subpoena issued pursuant Federal Rule of Civil Procedure 45 who counsel for a party in good faith believes needs access to Confidential Identity Information in order to provide relevant documents or testimony, provided such person has first executed a Non-Disclosure Agreement in the form annexed hereto;

      d.     any other person who the Plaintiff whose identity is being protected agrees in writing may have access to such Confidential Identity Information, provided such person has first executed a Non-Disclosure Agreement in the form annexed hereto.

11.     Prior to the disclosure of any Confidential Discovery Material or Confidential Identity Information to any person referred to in subparagraphs (9)(d) ~~and (e),~~ and 10(b), (c), and (d) above, such person shall be provided by counsel with a copy of this Protective Order and shall sign a Non-Disclosure Agreement, in the form annexed hereto, stating that that person has read this Order and agrees to be bound by its terms. To the extent that any such person refuses to sign the Non-Disclosure Agreement, a party may seek proper recourse including, but not limited to, an order directing that such person is subject to the terms set forth herein. Counsel shall retain each signed Non-Disclosure Agreement, hold it in escrow, and produce it to opposing counsel, upon request, either prior to such person being permitted to testify ~~(at~~ a deposition ~~or trial)~~ or upon entry of the Court's order concerning the arbitrability of Plaintiffs' claims ~~at the conclusion of the case,~~ whichever comes first.

~~12.~~     ~~Nothing herein shall restrict a qualified recipient from making working copies, abstracts, digests, or analyses of Protected Material for use in connection with this action, and such working copies, abstracts, digests, and analyses of Protected Material shall be deemed to~~

~~have the same level of protection as such Protected Materials has under this Order.~~

~~13.~~12.   In the event any person having possession, custody, or control of any Protected Material produced in this action receives a subpoena or other process or order to produce such information, such subpoenaed person or entity shall promptly notify the attorneys of record of the producing party and furnish those attorneys with a copy of said subpoena or other process or order. Nothing in this Order shall be construed to require the party to whom the subpoena or other process or order is directed to give written notice where prohibited by law.

Objecting to Designations of Confidential Material

~~14.~~13.   Any person who objects to any designation of Confidential Material may at any time prior to trial serve upon the designating person and all other parties a written notice stating the grounds of the objection. The designating person and objecting person shall meet and confer within 7 days of such notice. In absence of an agreement otherwise, the Confidential Material will lose its designation 14 days after the written notice of objection, unless the designating party seeks affirmative relief from the Court, in which case the Confidential Material will retain its designation until the Court resolves the dispute. The designating party shall bear the burden of demonstrating the propriety of its designation.

Filing Protected Material in These Actions

~~15.~~14.   If a party wishes to file Confidential Material with the Court, the party shall submit the Confidential Material to the Court in accordance with the procedures for redacted and sealed filings set forth in section I.C.3 of the Court's Individual Rules and Practices in Civil Cases. The party with the interest in confidential treatment bears the burden of persuasion.

~~16.~~15.   If a party wishes to file Confidential Identity Information with the Court, the party shall redact all Confidential Identity Information in its public filing, and shall file an unredacted copy in accordance with section I.C.3. of the Court's Individual Rules and Practices in Civil Cases. Given the Court's prior orders permitting Plaintiffs to proceed under pseudonyms, a party need not seek leave from the Court in order to file Confidential Identity Information in redacted form.

~~17.~~16.   Plaintiffs should be referred to by their respective pseudonyms in all court filings, discovery requests, and correspondence between persons permitted to receive Confidential Identity Information under paragraphs 9 and 10 above.

Inadvertent Disclosure of Privileged Materials

~~18.~~17.   Pursuant to Rule 502 of the Federal Rules of Evidence, if, in connection with this litigation, and despite having taken reasonable steps to prevent the disclosure of information that it claims is subject to a claim of attorney-client privilege or attorney work product, a producing person inadvertently discloses information subject to a claim

of attorney-client privilege or attorney work product ("Inadvertently Disclosed Information"), such disclosure, in itself, shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection with respect to the Inadvertently Disclosed Information and its subject matter.

~~19.~~18.  If a disclosing person makes a claim of inadvertent disclosure, all receiving persons shall, within five business days, return or destroy all copies of the Inadvertently Disclosed Information, and provide a certification of counsel that all such information has been returned or destroyed.  Consistent with Federal Rule of Civil Procedure 26, a receiving person may also sequester a copy of the Inadvertently Disclosed Information pending resolution of any dispute regarding the status of that Inadvertently Disclosed Information.  A receiving party must not use or disclose the Inadvertently Disclosed Information until the claim is resolved.

~~20.~~19.  Within five business days of the notification that such Inadvertently Disclosed Information has been returned or destroyed, the disclosing person shall produce a privilege log with respect to the Inadvertently Disclosed Information.

~~21.~~20.  If a receiving person thereafter moves the Court for an order compelling production of the Inadvertently Disclosed Information, that motion shall be filed under seal, and shall not assert as a ground for entering such an order the mere fact of the inadvertent production. The disclosing person retains the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information. Nothing in this Order shall limit the right of any party to request in camera review of the Inadvertently Disclosed Information.

Right to Assert Other Objections

~~22.~~21.  This Order shall not prejudice the rights of any party or non-party to this action to: (a) oppose production of any information on the ground of the attorney-client privilege, the attorney work product doctrine, non-responsiveness, or any privilege or immunity recognized by this Court or the courts of the State of New York, nor shall it be deemed a waiver of any objection to such production; (b) object to the production of documents or information it considers to be outside the scope of discovery; or (c) object to the authenticity or admissibility into evidence of any document, testimony, or other evidence subject to this Order.

Severability and Retention of Jurisdiction

~~23.  The invalidity or unenforceability of any provision of this Order shall not affect the validity or enforceability of any other provision of this Order, which shall remain in full force and effect.~~

~~24.  In the event that the Court determines that Plaintiffs shall not longer be permitted to proceed under pseudonyms, the provisions of this Order relating to Confidential Identity Information will be deemed to no longer apply. Such a determination will not excuse any prior violation of those provision relating to Confidential Identity Information or in any way limit the Court's authority to impose sanctions for such a prior violation.~~

25.22.  This Court shall retain jurisdiction over all persons subject to this Order for so long as such persons are in possession, custody, or control of Protected Material and to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

26.23.  Upon entry of an order resolving the arbitrability of Plaintiffs' claims, the terms of this Protective Order will remain in force until either party seeks relief from or modification of those terms, and the Court has granted such request.

SO STIPULATED.

Dated:_____, 2019

_____         _____
Roberta A. Kaplan, Esq.                          Joanna C. Hendon, Esq.
John C. Quinn, Esq.                               Cynthia Chen, Esq.
Joshua Matz, Esq.
Alexander J. Rodney, Esq.
Matthew J. Craig, Esq.                            SPEARS & IMES LLP
Emily C. Cole, Esq.                               51 Madison Avenue
                                                   New York, NY 10010
KAPLAN HECKER & FINK LLP                           Telephone: (212) 897-4487
350 Fifth Avenue, Suite 7110                       Facsimile: (212) 213-0849
New York, New York 10118                           jhendon@spearsimes.com
Telephone: (212) 763-0883                          cchen@spearsimes.com
Facsimile: (212) 564-0883
rkaplan@kaplanhecker.com                           *Attorneys for Defendants*
jquinn@kaplanhecker.com
jmatz@kaplanhecker.com
arodney@kaplanhecker.com
mcraig@kaplanhecker.com
ecole@kaplanhecker.com


Andrew G. Celli, Jr., Esq.
Matthew D. Brinckerhoff, Esq.
O. Andrew F. Wilson, Esq.
Katherine Rosenfeld, Esq.
David Berman, Esq.

EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue at Rockefeller Center
New York, NY 10020
Telephone: (212) 763-5000
acelli@ecbalaw.com
mbrinckerhoff@ecbalaw.com
awilson@ecbalaw.com
krosenfeld@ecbalaw.com
dberman@ecbalaw.com

*Attorneys for Plaintiffs*

SO ORDERED.

Dated:

_____

LORNA G. SCHOFIELD
United States District Judge

9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, LUKE LOE, RICHARD ROE, and MARY MOE, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>THE TRUMP CORPORATION, DONALD J. TRUMP, in his personal capacity, DONALD TRUMP JR., ERIC TRUMP, and IVANKA TRUMP,<br><br>*Defendants.* | No. 1:18-cv-09936-LGS |

## NON-DISCLOSURE AGREEMENT

I,_____, acknowledge that I have read and understand the Protective Order ~~in this action~~ governing the non-disclosure of Confidential Discovery Material and Confidential Identity Information (together, "Protected Material") pending the Court's decision on the arbitrability of Plaintiffs' claims. I agree that (1) I will hold in confidence all Protected Material to the extent required by the Protective Order and agree to be bound by the terms of that Order; (2) I will use such Protected Material only for purposes of ~~this litigation~~ aiding the Court's decision regarding the question of the arbitrability of Plaintiffs' claims and for no other purpose whatsoever; and (3) I will take all due precautions to prevent the unauthorized or inadvertent disclosure of such Protected Material.

By acknowledging these obligations under the Protective Order, I understand that I am submitting myself to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of any issue or dispute arising hereunder, and that my willful violation of any term of the Protective Order could subject me to punishment for contempt of court.

Dated:

_____
[Signature]