# APPENDIX

*Sims* v. *Trump*,

No. 19-cv-00345 (D.C. Cir. 2019)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLIFTON DAVID SIMS, | |
| Plaintiff, | |
| v. | Case No. 1:19-cv-345 (CKK) |
| DONALD J. TRUMP, in his official capacity as President of the United States; and UNITED STATES OF AMERICA, | |
| Defendants. | |

## <u>DEFENDANTS' MOTION TO DISMISS</u>

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and Rule 12(b)(1) of the Federal Rules of Civil Procedure, defendants, by and through undersigned counsel, hereby move to dismiss the above-captioned action. The grounds for defendants' motion are set forth in the accompanying memorandum of points and authorities. A proposed order is attached.

Dated:  April 25, 2019

Respectfully  submitted,

JOSEPH H. HUNT
Assistant  Attorney  General

JAMES  M. BURNHAM
Deputy  Assistant  Attorney  General

CHRISTOPHER  R. HALL
Assistant  Director
Civil  Division,  Federal  Programs  Branch

/s/ Julie  Straus  Harris
JULIE  STRAUS  HARRIS  (DC Bar # 1021928)
Trial  Attorney
United  States  Department  of Justice
Civil  Division,  Federal  Programs  Branch
1100 L Street NW, Room 11514
Washington,  D.C. 20005
Tel: (202) 353-7633
Fax: (202) 616-8470
E-mail:  julie.strausharris@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLIFTON DAVID SIMS,<br><br>        Plaintiff,<br><br> v.<br><br>DONALD J. TRUMP, in his official capacity<br>as President of the United States; and<br>UNITED STATES OF AMERICA,<br><br>        Defendants. | Case No. 1:19-cv-345 (CKK) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 2

STANDARD OF REVIEW ............................................................................................. 6

ARGUMENT ................................................................................................................... 7

    I.      THE ARBITRATION PROVISION OF PLAINTIFF'S AGREEMENT
           REQUIRES DISMISSING HIS COMPLAINT. ..................................................... 7

    II.     THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF
           SUBJECT-MATTER JURISDICTION. ............................................................... 10

           A.      Sovereign Immunity Bars Plaintiff's Claims Against The United
                   States. ....................................................................................................... 10

           B.      Plaintiff's Claim Against The President Should Be Dismissed
                   Because Declaratory Relief May Not Be Ordered Against The
                   President In His Official Capacity. .......................................................... 12

           C.      Plaintiff Lacks Standing Because He Has Not Alleged A
                   Cognizable Injury. .................................................................................... 13

           D.      Plaintiff's Claim Is Unripe Because An Arbitrator Has Not Yet
                   Determined Whether The Agreement Is Enforceable Or Whether
                   Plaintiff Breached The NDA. .................................................................. 17

    III.    THE RELEVANT FACTORS WEIGH STRONGLY AGAINST THE
           COURT EXERCISING JURISDICTION OVER PLAINTIFF'S
           DECLARATORY JUDGMENT ACT CLAIM. .................................................. 19

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

*ACLU Found. of S. Cal. v. Barr*,
  952 F.2d 457 (D.C. Cir. 1991) ................................................................ 20

*Alexander v. Metro-Goldwyn-Mayer Studios, Inc.*,
  Case No. CV 17-3123-RSWL-KSx, 2017 WL 5633407 .................................... 4

*Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*,
  531 F.3d 863 (D.C. Cir. 2008) ................................................................ 6

*Am. Fed'n of Gov't Emps. v. O'Connor*,
  747 F.2d 748 (D.C. Cir. 1984) ............................................................... 19

*Am. Petroleum Inst. v. EPA*,
  683 F.3d 382 (D.C. Cir. 2012) ........................................................... 17, 18

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ............................................................................. 8

*Atl. States Legal Found., Inc. v. EPA*,
  325 F.3d 281 (D.C. Cir. 2003) ............................................................... 17

*Benvenuti v. Dep't of Def.*,
  587 F. Supp. 348 (D.D.C. 1984) ............................................................. 11

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ....................................................................... 14, 17

*Contec Corp. v. Remote Solution, Co.*,
  398 F.3d 205 (2d Cir. 2005) ................................................................ 8, 9

*Cty. of Santa Clara v. Trump*,
  250 F. Supp. 3d 497 (N.D. Cal. 2017) ...................................................... 13

*Day v. Obama*,
  No. 1:15-cv-00671, 2015 WL 2122289 (D.D.C. May 1, 2015) ........................... 13

*Dep't of the Army v. Fed. Labor Relations Auth.*,
  56 F.3d 273 (D.C. Cir. 1995) ................................................................ 11

*Dorsey v. U.S. Dep't of Labor*,
  41 F.3d 1551 (D.C. Cir. 1994) .............................................................. 11

*Fairbanks v. Roller,*
   314 F. Supp. 3d 85 (D.D.C. 2018) .................................................................................... 4

*Fallo v. High-Tech Inst.,*
   559 F.3d 874 (8th Cir. 2009) ........................................................................................... 8

*Farah v. Esquire Magazine, Inc.,*
   863 F. Supp. 2d 29 (D.D.C. 2012) ................................................................................... 4

*FiberLight, LLC v. Nat'l R.R. Passenger Corp.,*
   81 F. Supp. 3d 93 (D.D.C. 2015) ........................................................................... 7, 20, 21

*First Va. Bank v. Randolph,*
   110 F.3d 75 (D.C. Cir. 1997) .................................................................................... 11, 12

*Forrester v. U.S. Parole Comm'n,*
   310 F. Supp. 2d 162 (D.D.C. 2004) ............................................................................ 7, 16

*Fox v. Computer World Servs. Corp.,*
   920 F. Supp. 2d 90 (D.D.C. 2013) .................................................................................. 10

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992), *vacated and remanded on other grounds,* 138 S. Ct. 353 (2017) .......... 12

*French v. Devine,*
   547 F. Supp. 443 (D.D.C. 1982) .................................................................................... 16

*Green Tree Fin. Corp. – Ala. v. Randolph,*
   531 U.S. 79 (2000) ......................................................................................................... 6

*Haire v. Smith, Currie & Hancock LLP,*
   925 F. Supp. 2d 126 (D.D.C. 2013) ............................................................................. 8, 9

*Hanes Corp. v. Millard,*
   531 F.2d 585 (D.C. Cir. 1976) .................................................................................. 20, 21

*Hines v. Overstock.com, Inc.,*
   380 F. App'x 22 (2d Cir. 2010) ...................................................................................... 6

*In re McConnell,*
   Case No. 2:15–cv–08183–R, 2015 WL 6125649 ............................................................. 4

*Int'l Refugee Assistance Project v. Trump,*
   857 F.3d 554 (4th Cir. 2017) ........................................................................................ 12

*J. Roderick MacArthur Found. v. F.B.I.*,
   102 F.3d 600 (D.C. Cir. 1996) ........................................................... 16, 17

*Lemon v. Geren*,
   514 F.3d 1312 (D.C. Cir. 2008) .............................................................. 13

*Lovitky v. Trump*,
   308 F. Supp. 3d 250 (D.D.C. 2018) ......................................................... 20

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................... 6, 14, 16, 17

*Lynch v. United States*,
   292 U.S. 571 (1934) ................................................................................. 11

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*,
   312 U.S. 270 (1941) ................................................................................. 19

*Mercadante v. XE Servs., LLC*,
   78 F. Supp. 3d 131 (D.D.C. 2015) ......................................................... 8, 9

*Mississippi v. Johnson*,
   71 U.S. (4 Wall) 475 (1866) .................................................................... 12

*Monsanto Co. v. Geerston Seed Farms*,
   561 U.S. 139 (2010) ................................................................................. 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ........................................................................... 6, 7, 8

*Nat'l Park Hospitality Ass'n v. Dep't of,Inter.*,
   538 U.S. 803 (2003) ................................................................................. 17

*Nat'l Student Ass'n v. Hershey*,
   412 F.2d 1103 (D.C. Cir. 1969) .............................................................. 16

*Nat'l Treasury Emps. Union v. United States*,
   101 F.3d 1423 (D.C. Cir. 1996) .............................................................. 17

*Nelson v. Insignia/Esg, Inc.*,
   215 F. Supp. 2d 143 (D.D.C. 2002) ....................................................... 6, 9

*Newdow v. Bush*,
   391 F. Supp. 2d 95 (D.D.C. 2005) .......................................................... 12

*Newdow v. Roberts*,
603 F.3d 1002 (D.C. Cir. 2010) .................................................................. 10, 12, 13

*NRDC v. EPA*,
464 F.3d 1 (D.C. Cir. 2006) ...................................................................................... 14

*POM Wonderful LLC v. F.T.C.*,
894 F. Supp. 2d 40 (D.D.C. 2012) ...................................................................... 21, 22

*Pub. Affairs Assocs. v. Rickover*,
369 U.S. 111 (1962) ....................................................................................................... 7

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) ......................................................................................................... 9

*Rep. of Argentina v. BG Group PLC*,
665 F.3d 1363 (D.C. Cir. 2012) .................................................................................. 8

*Riley v. BMO Harris Bank, N.A.*,
61 F. Supp. 3d 92 (D.D.C. 2014) ............................................................................ 6, 9

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
490 U.S. 477 (1989) ....................................................................................................... 8

*Sakyi v. Estee Lauder Cos.*,
308 F. Supp. 3d 366 (D.D.C. 2018) ................................................................... 6, 8, 10

*Settle v. Obama*,
No. 3:15-cv-365, 2015 WL 7283105 (E.D. Tenn. Nov. 17, 2015) .......................... 13

*Stone v. Holder*,
859 F. Supp. 2d 48 (D.D.C. 2012) ........................................................................... 11

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996) .................................................................................. 12

*Tri-State Hosp. Supply Corp. v. United States*,
341 F.3d 571 (D.C. Cir. 2003) .................................................................................. 11

*United States v. Mitchell*,
463 U.S. 206 (1983) ..................................................................................................... 10

*United States v. N.Y. Rayon Importing Co.*,
329 U.S. 654 (1947) ..................................................................................................... 11

*W&T Travel Servs., LLC v. Priority One Servs., Inc.*,
  69 F. Supp. 3d 158 (D.D.C. 2014) ................................................................. 9

*Walton v. Fed. Bureau of Prisons*,
  533 F. Supp. 2d 107 (D.D.C. 2008) ............................................................... 11

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ........................................................................................ 14

*Willis v. U.S. Dep't of Health & Human Servs.*,
  38 F. Supp. 3d 1274 (W.D. Okla. 2014) ........................................................ 13

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ............................................................................... 7, 19, 20

## STATUTES

9 U.S.C. § 2 ............................................................................................................ 6, 9

28 U.S.C. § 1331 ...................................................................................................... 11

28 U.S.C. § 2201 ................................................................................................. 19, 20

28 U.S.C. §§ 2201-2202 ...................................................................................... 5, 7, 11

## RULES

Federal Rule of Civil Procedure 12(b)(1) .............................................................. 7

Federal Rule of Civil Procedure 56(c) .................................................................. 16

## OTHER AUTHORITIES

Amazon.com, Amazon Charts: The Top 20 Most Sold & Most Read Books of the Week, Week
  of February 3, 2019, https://www.amazon.com/charts/-2019-02-03/mostsold/nonfiction/.... 3, 4

Amazon.com, *Team of Vipers; My 500 Extraordinary Days in the Trump White House
  by Cliff Sims*, https://www.amazon.com/Team-Vipers-Extraordinary-Trump-
  White/dp/125022389X/ref=tmm_hrd_swatch_0?_encoding=UTF8-&qid=&sr=............... 4, 15

Sam Brodey & Asawin Suebsaeng,  *Trump to GOP: Sorry, but You're Gonna Have to Campaign
  on Obamacare Repeal*, The Daily Beast, Apr. 2, 2019, https://www.yahoo.com/news/
  trump-republicans-sorry-gonna-campaign-015340202.html ....................................... 4

*The New York Times* Best Sellers list for Combined Print & E-Book Nonfiction. THE NEW YORK TIMES Best Sellers: *Combined Print & E-Book Nonfiction*, N.Y. TIMES (Feb. 17, 2019), https://www.nytimes.com/books/best-sellers/2019/02/17 ........................................................... 4

Clifton D. Sims, *Team of Vipers: My 500 Extraordinary Days in the Trump White House (2018)* ............................................................................................................... 3

Instagram post of Cliff Sims (Nov. 22, 2018), https://www.instagram.com/p/Bqgbi5uHMrv/ ............................................................................. 3

Tweet of Cliff Sims (Feb. 5, 2019), https://twitter.com/Cliff_Sims/status/1092986210442719233 ............................................. 4, 16

Tweet of Cliff Sims (Feb. 14, 2019), https://twitter.com/Cliff_Sims/status/1096061262935609347 ............................................. 4, 16

Tweet of Cliff Sims (Mar. 19, 2019), https://twitter.com/Cliff_Sims/status/1108100214299201536 ............................................. 4, 16

Press Release, St. Martin's Press, Former White House Staffer to Release First Honest Insider's Account of the Trump Administration (Nov. 19, 2018), https://us.macmillan.com/wp-content/uploads/2018/11/Cliff-Sims-Announcement.pdf ...................................................................... 3

Todd Stacy, *Cliff Sims' 'Team of Vipers' book set for release January 29*, ALA. DAILY NEWS, Nov. 19, 2018, www.aldailynews.com/cliff-sims-team-of-vipers-book-set-for-release-january-29 ............................................................................................................ 3

Wright & Miller, 10 Federal Practice and Procedure § 2759 (1973) .......................................... 20

Wright & Miller, 10B Federal Practice and Procedure § 2757 (4th ed. 2013) ........................... 19

Wright & Miller, 10B Federal Practice and Procedure § 2759 (4th ed. 2013) ........................... 21

## INTRODUCTION

Private employers do not violate the First Amendment when they bring claims in arbitration to enforce a nondisclosure agreement even if the employee they are enforcing that agreement against later served in government. Plaintiff disagrees, but he has no legitimate basis for doing so. The plaintiff does not dispute that there is a contract between him and Donald J. Trump for President, Inc. (the "Campaign"), that he freely signed the contract, that the contract contained restrictions on his disclosure of information related to his employment, that the plaintiff published a book in which he disclosed information covered by those contractual disclosure restrictions, or that the contract contains a provision requiring that he arbitrate any claims arising out of the contract. Nor does plaintiff advance any allegation that the Government is in any way restricting or infringing his speech. To the contrary, he has been on a lengthy media tour that amply demonstrates he has not been censored, silenced, or otherwise chilled from exercising his First amendment rights. Plaintiff's claims should be dismissed, for several reasons.

*First*, the Federal Arbitration Act ("FAA") requires that private arbitrators decide the threshold question of arbitrability where, as here, the relevant agreement assigns that question to the arbitrator. Plaintiff's sole claim is that the Campaign's arbitration agreement is invalid, such that the Campaign's arbitration efforts ought to be enjoined. But under plaintiff's agreement, that question is for the arbitrator. For that reason alone, the Court should dismiss plaintiff's complaint.

*Second*, the Court should dismiss the complaint for lack of subject-matter jurisdiction. This is clear both because the plaintiff has not identified any applicable waiver of sovereign immunity that entitles him to sue the United States, and because plaintiff has not alleged any actual or imminent injury at the hands of the defendants sufficient to supply standing. Plaintiff does not actually allege that the Campaign's filing of an arbitration action has had the effect of censoring,

silencing, or even chilling his speech, and plaintiff's own actions clearly controvert any such allegation. And for similar reasons, plaintiff has failed to demonstrate that his claim is constitutionally or prudentially ripe. Each of these jurisdictional defects independently compels dismissal of plaintiff's complaint.

Finally, because plaintiff's claim is based on the Declaratory Judgment Act, this Court retains discretion over whether to exercise jurisdiction. And the factors that govern whether to withhold jurisdiction over a Declaratory Judgment Act claim weigh against exercising jurisdiction here, where an arbitration proceeding is already pending and is fully capable of resolving the issues plaintiff has raised. Plaintiff's real goal appears to be circumventing that arbitration proceeding, which is not an appropriate use of the Declaratory Judgment Act. For that reason, too, the Court should dismiss the complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2016, plaintiff was employed by Donald J. Trump for President, Inc. Compl. ¶¶ 3, 13. In connection with that employment, plaintiff signed a contract ("Agreement") in which he agreed to certain conditions on the disclosure or publication of certain information. *Id.* ¶ 13; *see generally* Agreement, attached hereto as Ex. A. These conditions included an agreement "not to disclose, disseminate, or publish, or cause to be disclosed, disseminated, or published" any "information (whether or not embodied in any media) of a private . . . or confidential nature . . . including information with respect to the personal life, political affairs, and/or business affairs of Mr. Trump or of any . . . [m]ember" of Mr. Trump's family. *Id.* at 1, 3. The Agreement further provided that "any dispute arising under or relating to" the Agreement would be "submitted to binding arbitration in the State of New York pursuant to the rules for commercial arbitrations of the American Arbitration Association" and that "[j]udgment upon the award rendered by an arbitrator

may be entered in any court having jurisdiction." *Id.* at 4.

On November 19, 2018, St. Martin's Press announced that on January 29, 2019, plaintiff would publish his book, *Team of Vipers: My 500 Extraordinary Days in the Trump White House*. Compl. ¶ 15; Press Release, St. Martin's Press, Former White House Staffer to Release First Honest Insider's Account of the Trump Administration (Nov. 19, 2018), https://us.macmillan.com/wp-content/uploads/2018/11/Cliff-Sims-Announcement.pdf (cited in Compl. ¶ 15). That same day, an article in the *Alabama Daily News* stated that plaintiff "wrote in an email to friends" informing them that the book was "a memoir of [his] time on the Trump campaign and in the White House." Todd Stacy, *Cliff Sims' 'Team of Vipers' book set for release January 29*, ALA. DAILY NEWS, Nov. 19, 2018, www.aldailynews.com/cliff-sims-team-of-vipers-book-set-for-release-january-29/ (cited in Compl. ¶ 15). *See also* Instagram post of Cliff Sims (Nov. 22, 2018), https://www.instagram.com/p/Bqgbi5uHMrv/ ("On January 29, a memoir of my time on the @realdonaldtrump campaign and in the @whitehouse will be published by St. Martin's Press.").

Prior to the January 29, 2019 publication date, excerpts of plaintiff's book were published by several media outlets. *See* Compl. ¶ 16 (citing excerpts published in *Vanity Fair*, *Breitbart*, and *The Washington Post*). "Each of these excerpts dealt with matters learned during Mr. Sims' service as a federal employee" in the White House. *Id.* Further, "at no time prior to the public release of "Team of Vipers" on January 29, 2019, did [President Trump or the United States] take any action against Mr. Sims or seek to prevent the book's publication." *Id.* ¶ 17.

For the week of February 3, 2019, plaintiff's book was the sixth most sold nonfiction book on Amazon.com. *See* Amazon.com, Amazon Charts: The Top 20 Most Sold & Most Read Books of the Week, Week of February 3, 2019, https://www.amazon.com/charts/-2019-02-

03/mostsold/nonfiction/. Plaintiff's book debuted as the third bestselling book on the February 17, 2019 *The New York Times* Best Sellers list for Combined Print & E-Book Nonfiction. THE NEW YORK TIMES *Best Sellers: Combined Print & E-Book Nonfiction*, N.Y. TIMES (Feb. 17, 2019), *available at* https://www.nytimes.com/books/best-sellers/2019/02/17/. As of the filing of this brief, plaintiff's book remains for sale on Amazon.com. *See* Amazon.com, *Team of Vipers; My 500 Extraordinary Days in the Trump White House by Cliff Sims*, https://www.amazon.com/Team-Vipers-Extraordinary-Trump-White/dp/125022389X/ref=tmm_hrd_swatch_0?_encoding=UTF8-&qid=&sr= (last accessed April 25, 2019). And on April 15, 2019, plaintiff promoted the sale of his book on Twitter. *See* Tweet of Cliff Sims (Apr. 15, 2019), https://twitter.com/Cliff_Sims/status/1117933635053735942.

As recently as March 19, 2019, plaintiff posted an excerpt from the book on Twitter. *See* Tweet of Cliff Sims (Mar. 19, 2019), https://twitter.com/Cliff_Sims/status/1108100214299201536; *see also* Tweet of Cliff Sims (Feb. 14, 2019), https://twitter.com/Cliff_Sims/status/1096061262935609347; Tweet of Cliff Sims (Feb. 5, 2019), https://twitter.com/Cliff_Sims/status/1092986210442719233.[1] And plaintiff has spoken recently to the media about information he learned during his federal employment. *See, e.g.*, Sam Brodey & Asawin Suebsaeng, *Trump to GOP: Sorry, but You're Gonna Have to Campaign on Obamacare*

---

[1] Pursuant to Federal Rule of Evidence 201(b), a court may take judicial notice of any fact that is not subject to "reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Applying this standard, courts in this district and others have taken judicial notice of Internet postings in resolving motions to dismiss. *See, e.g.*, *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 88 n.1 (D.D.C. 2018); *Farah v. Esquire Magazine, Inc.*, 863 F. Supp. 2d 29, 35 (D.D.C. 2012); *Alexander v. Metro-Goldwyn-Mayer Studios, Inc.*, Case No. CV 17-3123-RSWL-KSx, 2017 WL 5633407, Slip op. *3 (C.D. Cal. 2017); *In re McConnell*, Case No. 2:15–cv–08183–R, 2015 WL 6125649, Slip op. *5 n.7 (C.D. Cal. Bankr. Oct. 8, 2105).

*Repeal*, THE DAILY BEAST, Apr. 2, 2019*, available at* https://www.yahoo.com/news/trump-republicans-sorry-gonna-campaign-015340202.html (describing recent remarks plaintiff made to *The Daily Beast* regarding efforts to repeal the Affordable Care Act undertaken while President Trump was in office).

On January 31, 2019, the Campaign filed an arbitration claim against plaintiff for "purported breaches" of the Agreement. Compl. ¶ 21. Then, on February 11, 2019, plaintiff filed this suit against President Donald J. Trump, in his official capacity, and the United States (collectively, "defendants"), asserting a single cause of action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the First Amendment to the U.S. Constitution. *Id.* ¶¶ 29-34. The complaint alleges that the "Campaign's Demand for Arbitration is nothing but a subterfuge for the actions of the [defendants] and [was] undertaken under express authorization and instruction, and certainly with the blessing of, President Trump" and thus "sufficiently and constructively qualif[ies] as 'state action' for purposes of First Amendment jurisdictional authority." *Id.* ¶ 32. The complaint further alleges that because the Campaign filed an arbitration claim against plaintiff for purported breaches of his Agreement, defendants here have "infringed upon [plaintiff's] First Amendment rights as a former federal employee and acted contrary to the interests of public policy." *Id.* The complaint asks the Court to "[e]nter a declaratory judgment in favor of the Plaintiff declaring that the Defendants may not enforce, either directly or through non-U.S. government cutouts, any nondisclosure agreements that seek to unconstitutionally infringe upon his First Amendment rights," and to "[p]ermanently enjoin the Defendants from initiating or pursuing further proceedings against the Plaintiff for publication of unclassified information regarding [(*sic*)] which he learned during his tenure as a federal employee." *Id.*, Prayer for Relief.

## STANDARD OF REVIEW

Defendants move the court to dismiss the complaint. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, governs "any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[T]he validity of an unambiguous arbitration agreement is a question of law for the court that may be resolved by summary disposition under the summary judgment standard of Federal Rule of Civil Procedure 56(c)." *Sakyi v. Estee Lauder Cos.*, 308 F. Supp. 3d 366, 375 (D.D.C. 2018) (citing *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008)). The party advocating arbitration need only "'demonstrat[e] that an agreement to arbitrate was made,'" and "'the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.'" *Id.* (quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010), and *Green Tree Fin. Corp. – Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). *See also id.* (noting that the moving party need not "'show initially that the agreement would be *enforceable*, merely that one existed'" (quoting *Hines*, 380 F. App'x at 24)). Whether a defendant has chosen to file a motion to compel arbitration, a motion for summary judgment, or a motion to dismiss in favor of arbitration, the "distinction . . . is immaterial for the purposes of [the court's] standard of review analysis." *Nelson v. Insignia/Esg, Inc.*, 215 F. Supp. 2d 143, 147 n.3 (D.D.C. 2002). And when "'all of the plaintiff's claims must be submitted to arbitration' dismissal is appropriate." *Riley v. BMO Harris Bank, N.A.*, 61 F. Supp. 3d 92, 103 (D.D.C. 2014) (quoting *Nelson*, 215 F. Supp. 2d at 158).

Defendants also move to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Plaintiff bears the burden of demonstrating jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Because the Court has "'an affirmative obligation . . . to ensure that it is acting within the scope of its jurisdictional authority,'"

the Court may "consider matters outside the pleadings" in addressing defendants' motion to dismiss under Rule 12(b)(1) without converting it to a motion for summary judgment. *Forrester v. U.S. Parole Comm'n*, 310 F. Supp. 2d 162, 167 (D.D.C. 2004) (citation omitted).

Finally, defendants urge the court to decline jurisdiction over the sole claim in plaintiff's complaint, which is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. The Supreme Court has explained that "[t]he Declaratory Judgment Act was an authorization, not a command," *Pub. Affairs Assocs. v. Rickover*, 369 U.S. 111, 112 (1962), and "whether or not to accede to a plaintiff's request for declaratory relief under the Declaratory Judgment Act lies within the court's discretion." *FiberLight, LLC v. Nat'l R.R. Passenger Corp.*, 81 F. Supp. 3d 93, 113 (D.D.C. 2015) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)).

## ARGUMENT

## I. THE ARBITRATION PROVISION OF PLAINTIFF'S AGREEMENT REQUIRES DISMISSING HIS COMPLAINT.

Plaintiff previously agreed to resolve any disputes with the Campaign in binding arbitration. Ex. A at 4. That agreement requires plaintiff to take his objections to his employment contract's nondisclosure provision to the arbitrator currently presiding over the Campaign's arbitration proceeding against him. *Id.* Plaintiff has instead come to this Court arguing that the Campaign's arbitration demand infringes his First Amendment rights, but that is simply an attack on the validity of arbitration—something the FAA requires be litigated before the arbitrator where, as here, the parties' contract contains an arbitration clause that delegates the question of arbitrability to the arbitrator. For that reason alone, dismissal is appropriate.

Plaintiff's claim falls within his arbitration agreement with the Campaign. Indeed, his claim is entirely about the Campaign and its ability to initiate an arbitration proceeding against him. That issue is "govern[ed]" by "[f]ederal law in the terms of the Arbitration Act." *Moses H.*

*Cone Mem. Hosp.*, 460 U.S. at 24.  The FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citation omitted), and "strongly favors the enforcement of agreements to arbitrate as a means of securing prompt, economical and adequate solution of controversies," *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 479-80 (1989) (internal quotation marks and citation omitted).

Plaintiff's Agreement with the Campaign clearly delegates questions of arbitrability to the arbitrator.  The Agreement's arbitration provision provides that "any dispute arising under or relating to this agreement may . . . be submitted to binding arbitration in the State of New York pursuant to the rules for commercial arbitrations of the American Arbitration Association [("AAA rules")], and [plaintiff] hereby agree[s] to and will not contest such submissions." Ex. A at 4.  As courts in this district and "numerous" circuit courts of appeals have held, "'incorporation of the AAA rules constitutes clear and unmistakable evidence that the parties intended the question of arbitrability be answered by an arbitrator." *Mercadante v. XE Servs., LLC*, 78 F. Supp. 3d 131, 138 (D.D.C. 2015); *see also Sakyi*, 308 F. Supp. 3d at 378 (noting that this court, and every circuit court to address the question, "repeatedly has held that adopting the AAA rules makes the issue of arbitrability one for the arbitrator, not the court, to decide" and citing cases); *Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 132-33 (D.D.C. 2013) (citing *Rep. of Argentina v. BG Group PLC*, 665 F.3d 1363, 1371 (D.C. Cir. 2012)) (finding that "[a] recent D.C. Circuit opinion strongly suggests that the D.C. Circuit would view incorporation of the AAA Rules as satisfying" the clear and unmistakable standard, and noting that "courts in this jurisdiction . . . have . . . found that incorporation of the AAA Rules satisfies the . . . standard"); *accord Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 211 (2d

Cir. 2005). Plaintiff's effort to avoid arbitration must accordingly be raised in the ongoing arbitration, rather than here.

Plaintiff might argue that his agreement to resolve arbitrability in arbitration is somehow legally invalid, revocable, or unenforceable, *see* 9 U.S.C. § 2, which would be something the Court ought to "consider . . . before ordering compliance.'" *Mercadante*, 78 F. Supp. 3d at 140. But that sort of challenge "must be directed specifically at the delegation agreement and not at 'another provision of the contract, or to the contract as a whole,'" *id.* (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010)), and plaintiff asserts no challenge to the provision in the Agreement delegating questions of arbitrability to an arbitrator. In fact, plaintiff's complaint says nothing about the delegation provision at all. Rather, plaintiff challenges the "application of [the Agreement]" as a whole and the filing of "an arbitration claim against [plaintiff] for purported breaches of [the Agreement]." Compl. ¶¶ 10, 21. That sort of generalized challenge is not a challenge specifically to the delegation and is thus something the delegation provision requires plaintiff to raise in arbitration. *See, e.g.*, *Mercadante*, 78 F. Supp. 3d at 140 (explaining that because plaintiff's claim "does not specifically address the delegation agreement itself as required by *Rent-A-Center*," plaintiff has "failed to successfully challenge the enforceability of the delegation agreement"); *Haire*, 925 F. Supp. 2d at 133.

Plaintiff's only claim seeks invalidation of his ongoing arbitration proceeding and where, as here, "'all of the plaintiff's claims must be submitted to arbitration' dismissal is appropriate." *Riley*, 61 F. Supp. 3d at 103 (quoting *Nelson*, 215 F. Supp. 2d at 158); *see also, e.g.*, *W&T Travel Servs., LLC v. Priority One Servs., Inc.*, 69 F. Supp. 3d 158, 174 (D.D.C. 2014) ("follow[ing] the majority rule regarding the propriety of dismissing a case where all of the claims are subject to resolution by the arbitrator"); *Haire*, 925 F. Supp. 2d at 134 (dismissing case where "the parties

intended the issue of arbitrability to be resolved by the arbitrator[, and] all other claims brought by plaintiffs are essentially challenges to aspects of the [agreement], which likewise belong with the arbitrator"); *Fox v. Computer World Servs. Corp.*, 920 F. Supp. 2d 90, 105 n.9 (D.D.C. 2013) (noting that the court was "dismiss[ing] this case rather than stay[ing] it pending arbitration, in accordance with the approach adopted by other courts when all claims must be submitted to arbitration"); *accord Sakyi*, 308 F. Supp. 3d at 387 n.9 (citing cases). For that reason alone, the Court should dismiss the complaint.

## II. THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.

Even if plaintiff could avoid arbitration, this Court would not have jurisdiction to hear his claim for a variety of reasons. *First*, and most fundamentally, plaintiff has sued the United States but sovereign immunity bars that claim. *Second*, plaintiff has sued the President in his official capacity but this Court cannot redress any alleged injury at the President's hands. That is because, "[w]ith regard to the President, courts do not have jurisdiction to enjoin him, and have never submitted the President to declaratory relief." *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010). *Third*, plaintiff has not alleged any constitutionally cognizable injury: he asserts that the defendants have somehow threatened his right to speak when in fact he has been exercising his freedom of speech liberally and without restraint. *Finally*, because plaintiff has not alleged any limitation on his speech or any actual harm from the arbitration to which he objects, plaintiff's claims are neither constitutionally nor prudentially ripe and should be dismissed on that basis too.

### A. Sovereign Immunity Bars Plaintiff's Claims Against the United States.

Sovereign immunity bars plaintiff's claim against the United States. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction," *United States v. Mitchell*, 463 U.S. 206, 212 (1983), and a court lacks

jurisdiction over claims against the United States unless the United States' sovereign immunity has been explicitly waived, *see Dep't of the Army v. Fed. Labor Relations Auth.*, 56 F.3d 273, 275 (D.C. Cir. 1995) (citing *United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 660 (1947)); *First Va. Bank v. Randolph*, 110 F.3d 75, 77 (D.C. Cir. 1997) ("if the government has not consented to the suit, sovereign immunity requires the court to dismiss the action for lack of jurisdiction"). Only Congress may waive the sovereign immunity of the United States, and it must do so equivocally. *See, e.g.*, *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003) ("[W]aiver of sovereign immunity must be unequivocally expressed in the statutory text and strictly construed, in terms of its scope, in favor of the sovereign.") (internal quotation marks and citation omitted); *Dorsey v. U.S. Dep't of Labor*, 41 F.3d 1551, 1555 (D.C. Cir. 1994) ("The federal government's waiver of sovereign immunity must be unequivocally expressed.").

Plaintiff has pointed to no applicable waiver of sovereign immunity. Plaintiff cites as the basis of this Court's jurisdiction 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. Compl. ¶ 1. Neither statute waives sovereign immunity. Section 1331, while establishing district courts' jurisdiction over federal questions, does not waive the sovereign immunity of the United States. *See Stone v. Holder*, 859 F. Supp. 2d 48, 51 (D.D.C. 2012). The Declaratory Judgment Act authorizes declaratory relief as a remedy but likewise does not waive the federal government's sovereign immunity. *See Walton v. Fed. Bureau of Prisons*, 533 F. Supp. 2d 107, 114 (D.D.C. 2008). And though plaintiff alleges his claims arise under the First Amendment, the Constitution does not waive sovereign immunity. *See Lynch v. United States*, 292 U.S. 571, 582 (1934) (sovereign immunity "applies alike to causes of action arising under acts of Congress . . . and to those arising from some violation of rights conferred upon the citizen by

the Constitution"); *Benvenuti v. Dep't of Def.*, 587 F. Supp. 348, 352 (D.D.C. 1984) (the "Constitution itself" does not "operate as such [a] waiver[]").  The Court should thus "dismiss the action for lack of jurisdiction" pursuant to Rule 12(b)(1).  *First Va. Bank*, 110 F.3d at 77.

### B. Plaintiff's Claim Against the President Should Be Dismissed Because Declaratory Relief May Not Be Ordered Against the President In His Official Capacity.

Plaintiff's claim against the President in his official capacity fails for a similarly fundamental reason: whatever injury plaintiff alleges is not "redressable by a favorable ruling" from this Court.  *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 149 (2010).  The Supreme Court and D.C. Circuit have made clear that courts lack authority to issue injunctive or declaratory relief against the President in his official capacity.  *See Mississippi v. Johnson*, 71 U.S. (4 Wall) 475, 501 (1866) (courts lack jurisdiction "to enjoin the President in the performance of his official duties"); *Newdow*, 603 F.3d at 1013 (plaintiff failed to show redressability where the "only apparent avenue of redress for plaintiffs' claimed injuries would be injunctive or declaratory relief against . . . the President himself" finding such relief "unavailable" because "[w]ith regard to the President, courts do not have jurisdiction to enjoin him, and have never submitted the President to declaratory relief") (citing *Johnson*, 71 U.S. (4 Wall.) at 499, and *Franklin v. Massachusetts*, 505 U.S. 788, 827-28 (1992) (Scalia, J., concurring)); *Swan v. Clinton*, 100 F.3d 973, 976 n.1 (D.C. Cir. 1996) (recognizing that the same concerns that preclude injunctive relief against the President also preclude declaratory relief).[2]  Plaintiff's claims against the President in his official capacity

---

[2] Numerous other courts have held that the President is not subject to declaratory and injunctive relief when sued in his official capacity.  *See, e.g.*, *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 605 (4th Cir. 2017) (holding that "the district court erred in issuing an injunction against the President himself," because "'in general, this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties'" (quoting *Franklin*, 505 U.S. at 802-03 (opinion of O'Connor, J.))), *vacated and remanded on other grounds,* 138 S. Ct. 353 (2017); *Newdow v. Bush*, 391 F. Supp. 2d 95, 106-07 (D.D.C. 2005) (holding that plaintiff failed to show redressability

seek only declaratory and injunctive relief. He thus cannot show his claims are "capable of being redressed by a court order," let alone that they are likely to be redressed. *Lemon v. Geren*, 514 F.3d 1312, 1314 (D.C. Cir. 2008).

Plaintiff has sued the President in his official capacity and seeks an order (1) enjoining the President from "initiating or pursuing further proceedings against the Plaintiff for publication of unclassified information regarding which [(*sic*)] he learned during his tenure as a federal employee", and (2) declaring that the President "may not enforce . . . any nondisclosure agreements that seek to unconstitutionally infringe upon [the plaintiff's] First Amendment rights." *See* Compl., Prayer for Relief. That is relief this Court cannot provide, since a federal "court—whether via injunctive or declaratory relief—does not sit in judgment of a President's executive decisions." *Newdow*, 603 F.3d at 1012. Plaintiff thus lacks standing to bring his claim against the President and that claim should be dismissed. *Id.* at 1013 (dismissal appropriate where the "only apparent avenue of redress for plaintiffs' claimed injuries would be injunctive or declaratory relief against . . . the President himself").

### C. Plaintiff Lacks Standing Because He Has Not Alleged A Cognizable Injury.

Plaintiff lacks standing to assert his claim against both defendants for an additional reason: he has not alleged any injury that is sufficiently imminent to support a cause of action. Standing inquiries should be "especially rigorous when reaching the merits of the dispute would force [the

---

"where only an injunction or declaratory judgment against the President can redress plaintiff's injury," finding that "the Court is without the authority to grant such relief[ and t]o conclude otherwise[] would be to render meaningless the words of the Supreme Court and the D.C. Circuit that injunctions and declaratory judgments may not be issued against the President"); *Cty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 539–40 (N.D. Cal. 2017); *Settle v. Obama*, No. 3:15-cv-365, 2015 WL 7283105, at *6 (E.D. Tenn. Nov. 17, 2015); *Day v. Obama*, No. 1:15-cv-00671, 2015 WL 2122289, at *1 (D.D.C. May 1, 2015); *Willis v. U.S. Dep't of Health & Human Servs.*, 38 F. Supp. 3d 1274, 1277 (W.D. Okla. 2014)

court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal quotations and citation omitted). And here, plaintiff has failed to plead the sort of imminently impending injury necessary to confer standing.

Although "imminence" is a "somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes— that the injury is *certainly* impending." *Lujan*, 504 U.S. at 565 n.2. The Supreme Court has thus "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990) (emphasis added by court)). "'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 565 (emphasis in original); *see also NRDC v. EPA*, 464 F.3d 1, 6 (D.C. Cir. 2006) ("We . . . generally require that petitioners demonstrate a 'substantial probability' that they will be injured.").

Plaintiff has not pled this sort of imminent injury. The heart of plaintiff's complaint is his asserted right "under the First Amendment to the United States Constitution to be free from unlawful infringement upon or restraint of his ability to disclose unclassified information regarding [(*sic*)] which he learned during his tenure as a federal employee." Compl. ¶ 30. But while plaintiff alleges that defendants "ha[ve] infringed upon Mr. Sims' First Amendment rights as a former federal employee," *id.* ¶ 32, his complaint does not contain any allegations that give content to this conclusory assertion. Rather, the allegations addressing plaintiff's purported current or threatened future injury are limited to the following:

(1) "the Trump Campaign . . . filed an arbitration claim against Mr. Sims for purported breaches of an NDA," and such claim "seeks monetary damages, . . . and to enjoin Mr. Sims from making" certain disclosures, *id.* ¶ 21;

(2) the defendants "through the use of private surrogates, [are] seeking to unconstitutionally censor and punish" the plaintiff for disclosing certain information, *id.* ¶ 28;

(3) defendants "seek to penalize Mr. Sims for exercising his First Amendment right to disclose unclassified information" he learned during his federal employment, *id.* ¶ 31;

(4) defendants "seek to prohibit any further remarks or statements by Mr. Sims regarding" information he learned during his federal employment, *id.*;

(5) defendants' actions "demand the return of information or materials Mr. Sims has in his possession from his tenure as a federal employee," *id.*;

(6) due to defendants' actions, plaintiff "could suffer monetary penalties for the publication of 'Team of Vipers', as well as for any future remarks . . . he makes in the future regarding his" federal employment, *id.* ¶ 33; and

(7) plaintiff "has suffered or may suffer actual adverse and harmful effects, including, but not limited to, possible civil penalties, a delay in being able to timely comment on information of public interest, and/or lost or jeopardized present or future financial opportunities," *id.* ¶ 34.

None of these allegations establish injury for standing purposes.

**Allegation (1).** For the first allegation, plaintiff asserts that the Campaign's arbitration action against him violates his First Amendment rights. But nowhere does plaintiff make allegations showing how the Campaign's initiation of an arbitration action has had the effect of censoring, silencing, or even chilling his speech.

**Allegations (2)-(5).** In allegations two through five, plaintiff never claims that the defendants *have* censored or punished him for his speech; he alleges only that defendants "*seek*" to censor or punish him for his speech in various vague ways. *See id.* ¶¶ 28, 31. And in reality, it is clear plaintiff has not been censored at all. As of the filing of this brief, plaintiff's book is for sale on Amazon.com. *See supra* at 4 (citing Amazon.com page). As recently as April 15, 2019,

plaintiff has promoted the sale of his book on social media.  *See supra* at 4 (citing Tweets of Cliff Sims).  And plaintiff has spoken recently to the media about information he learned during his federal employment.  *See supra* at 4-5 (citing Brodey & Suebsaeng, "Trump to GOP: Sorry, but You're Gonna Have to Campaign on Obamacare Repeal").  The court may consider these public facts in assessing its jurisdiction, *see Forrester*, 310 F. Supp. 2d at 167, and they make clear that the Campaign's January 31, 2019 arbitration claim has not infringed plaintiff's speech.  As for plaintiff's conclusory allegation regarding the return of material he possesses from his time as a federal employee, plaintiff never alleges that this supposed seeking of material has any connection to his speech.  Nor does he allege that the material is actually his property, as opposed to governmental property and information he is legally obligated to return upon leaving the government's employ.

In short, while it is true that "[s]uits alleging injury in the form of a chilling effect upon plaintiff's First Amendment rights are more readily justiciable than comparable suits not so affected with a First Amendment interest," *French v. Devine*, 547 F. Supp. 443, 446 (D.D.C. 1982) (citing *Nat'l Student Ass'n v. Hershey*, 412 F.2d 1103, 1113 (D.C. Cir. 1969)), plaintiff has not alleged that defendants have chilled him from speech in which he otherwise desires to engage, let alone alleged a chilling effect that is "sufficiently strong to render a case justiciable."  *Id.*

**Allegations (6)-(7).**  Finally, the remainder of plaintiff's allegations do not describe "threatened harms" that are certainly impending.  Where a plaintiff "does not allege that it has yet suffered any injury" that its complaint seeks to redress, then "its only hope for standing rests upon showing that a threatened harm is '*certainly* impending.'"  *J. Roderick MacArthur Found. v. F.B.I.*, 102 F.3d 600, 606 (D.C. Cir. 1996) (emphasis in original) (quoting *Lujan*, 504 U.S. at 564 n.2).  To make such a showing, "[i]t is not enough for the [plaintiff] to assert that it might suffer an injury

16

in the future, or even that it is likely to suffer an injury at some unknown future time.  Such

'someday' injuries are insufficient." *Id.* (quoting *Lujan*, 504 U.S. at 564).

Allegations (6) and (7) do not describe "threatened harms" that are "*certainly* impending."

Rather, they describe the remedies for breach laid out in the Agreement plaintiff entered into with

the Campaign, *see* Ex. A at 3-4, which the Campaign could therefore request as relief in arbitration.

But no arbitration award has been entered—for or against the plaintiff—and plaintiff does not

allege when any such decision might issue.  Plaintiff's future injuries are thus entirely hypothetical

rather than "*certainly* impending."  *See J. Roderick MacArthur Foundation*, 102 F.3d at 606.

Moreover, because the outcome of the arbitration is unknown, plaintiff's threatened harms

constitute mere "'allegations of *possible* future injury' [which] are not sufficient" to establish

standing.  *Clapper*, 568 U.S. at 409 (citation omitted).

### D. Plaintiff's Claim is Unripe Because An Arbitrator Has Not Yet Determined Whether the Agreement Is Enforceable Or Whether Plaintiff Breached the NDA.

Finally, even if the Court were to conclude that plaintiff's allegations could establish an

injury sufficient to support standing, his claim still must be dismissed because it is not yet ripe.

"The ripeness doctrine generally deals with when a federal court can or should decide a case," *Am.*

*Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012), and has both constitutional and

prudential dimensions.  *See Atl. States Legal Found., Inc. v. EPA*, 325 F.3d 281, 284 (D.C. Cir.

2003).  As with standing, constitutional ripeness requires "that an injury in fact be certainly

impending." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996).

And a court considering prudential ripeness "evaluate[s] (1) the fitness of the issues for judicial

decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Park*

*Hospitality Ass'n v. Dep't of Inter.*, 538 U.S. 803, 808 (2003); *see Am. Petroleum*, 683 F.3d at 386.

17

Here, plaintiff's claims are constitutionally unripe for similar reasons to those that deprive him of standing.  Plaintiff has not alleged that he has been prevented from speaking or that his speech is currently being infringed, which it plainly is not given that plaintiff continues to sell his book, publish excerpts of his book on social media, and disclose to the media information he learned as a federal employee.  *See supra* at 4-5.  Even if plaintiff had alleged that defendants' actions chilled him from speech in which he otherwise desires to engage, the same evidence of plaintiff's recent actions would refute any such allegation of subjective chill.  *See supra* at 4-5. And finally, the fact that the arbitration decision plaintiff fears has not been entered (and may never be entered) further demonstrates why his claims are unripe.

Moreover, even if the constitutional threshold for ripeness were met, prudential considerations would still weigh against considering plaintiff's claim at this time.  Because the arbitration award plaintiff fears has not yet been entered, there is no way to know whether that hypothetical award will infringe on his First Amendment rights or otherwise cause him hardship. To show hardship, a plaintiff must show that withholding review would result in "immediate and significant" hardship.  *Am. Petroleum*, 683 F.3d at 389 (internal quotation marks and citations omitted).  Here, the facts show that no such hardship exists.  Plaintiff has continued to exercise his First Amendment rights regardless of the fact that a third party—the Campaign—is undertaking precisely the actions plaintiff asks the Court to forbid the defendants from taking.  *See* Compl., Prayer for Relief ¶¶ 1 (requesting that the Court declare that the defendants "may not enforce . . . any nondisclosure agreements that seek to constitutionally infringe upon [plaintiff's] First Amendment rights") & 2 (requesting that the Court enjoin the defendants from "initiating or pursuing further proceedings against the Plaintiff for publication of unclassified information . . . which he learned during his tenure as a federal employee").  For all these reasons, the Court should

dismiss plaintiff's complaint as unripe.

## III. THE RELEVANT FACTORS WEIGH STRONGLY AGAINST THE COURT EXERCISING JURISDICTION OVER PLAINTIFF'S DECLARATORY JUDGMENT ACT CLAIM.

Finally, the Court should also dismiss plaintiff's claim using its discretion to decline jurisdiction under the Declaratory Judgment Act, the principal basis for plaintiff's suit. The Act provides, in relevant part, that "[i]n a case of actual controversy within its jurisdiction," a "court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As the D.C. Circuit has explained, the Declaratory Judgment Act "settle[s] legal rights and remove[s] uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Am. Fed'n of Gov't Emps. v. O'Connor*, 747 F.2d 748, 759 (D.C. Cir. 1984) (internal quotation marks and citations omitted).

Claims brought under the Declaratory Judgment Act must stem from an "actual controversy," and in determining whether a claim meets this requirement, a court asks "whether the facts alleged, under the circumstances, show that there is a substantial [conflict], between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941). If one or both of the parties have acted so as to make litigation "imminent" and "inevitable" absent a declaration, then a declaratory judgment is appropriate. Wright & Miller, 10B Federal Practice and Procedure § 2757 (4th ed. 2013). But even if there is an actual controversy, and the plaintiff has standing to file suit for a declaratory judgment, district courts retain discretion to decline to exercise jurisdiction or provide declaratory relief under the Declaratory Judgment Act. *See Wilton,*

515 U.S. at 288 (noting that the Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants"); *see also ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 466 (D.C. Cir. 1991) ("The Declaratory Judgment Act, 28 U.S.C. § 2201, provides only that a district court 'may' declare the 'rights and other legal relations' of the parties, not that it must.  The decision whether to grant this relief is discretionary."); *Lovitky v. Trump*, 308 F. Supp. 3d 250, 259 (D.D.C. 2018) ("As the use of the word 'may' suggests, [the Declaratory Judgment Act] . . . is permissive, not mandatory: even when a suit otherwise satisfies subject matter jurisdictional prerequisites, the Act gives courts discretion to determine whether and when to entertain an action." (internal quotation marks and citations omitted)).

The D.C. Circuit has identified a "series of factors that are among the 'relevant' considerations in deciding whether to withhold jurisdiction over a claim brought under the DJA." *FiberLight*, 81 F. Supp. 3d at 114.  These factors are: (1) "whether [a declaration] would finally settle the controversy between the parties;" (2) "whether other remedies are available or other proceedings pending;" (3) "the convenience of the parties;" (4) "the equity of the conduct of the declaratory judgment plaintiff;" (5) "prevention of 'procedural fencing';" (6) "the state of the record;" (7) "the degree of adverseness between the parties;" and (8) "the public importance of the question to be decided."  *Hanes Corp. v. Millard,* 531 F.2d 585, 591 n.4 (D.C. Cir. 1976) (citing 10 Wright & Miller, Federal Practice and Procedure § 2759 (1973)).

Even if this court had subject-matter jurisdiction over plaintiff's claims against the United States and the President in his official capacity, the majority of the D.C. Circuit's factors weigh heavily against exercising jurisdiction under the DJA.  First, as to the availability of other remedies (factor (2)), an arbitration proceeding is pending, and arbitration may provide plaintiff with the remedies he seeks here, in the forum in which he contractually agreed to resolve these issues.  *See*

Compl. ¶ 21; Ex. A at 4; *see POM Wonderful LLC v. F.T.C.*, 894 F. Supp. 2d 40, 44 (D.D.C. 2012) (declining jurisdiction under the Declaratory Judgment Act where "overlapping proceedings are pending" and, although not identical to the declaratory judgment action, such proceedings are "perfectly capable" of resolving the questions raised under the Declaratory Judgment Act). Next, as to the equity of plaintiff's conduct (factor (4)), and the avoidance of procedural fencing (factor (5)), plaintiff is using this lawsuit to "preempt" the arbitration proceeding to which he contractually agreed claims should be submitted. *See* Ex. A at 4; *see also FiberLight*, 81 F. Supp. 3d at 115-16. As to the public importance of the question to be decided (factor (8)), Wright & Miller have noted that "courts particularly are reluctant to resolve important questions of public law in a declaratory action." 10B Wright & Miller, Federal Practice and Procedure § 2759 (4th ed. 2013). Plaintiff's allegations that the defendants, "for the first time ever through the use of private surrogates, [are] seeking to unconstitutionally censor and punish a former federal employee for disclosing unclassified information outlining what he saw and observed during his [federal employment]," Compl. ¶ 28, certainly seems to raise a question of first impression. *Accord FiberLight*, 81 F. Supp. 3d at 116 (finding fact that allegations "raise . . . significant questions of law" with far-reaching implications weighs against the exercise of jurisdiction under the Declaratory Judgment Act). And "[t]he final factor that indicates that this Court should decline jurisdiction is the fact that [plaintiff] appears to be seeking to establish an 'anticipatory defense'" against the Campaign's arbitration claim. *Id.* Just as in *FiberLight*, this combination of factors "strongly suggest[s] that [plaintiff] has moved deftly to invoke the Declaratory Judgment Act in the context of the instant case in order to engage in 'a disorderly race to the courthouse,' and for this reason, too, this Court should decline the invitation to declare a winner." *Id.* (quoting *Hanes Corp.*, 531 F.2d at 593); *see also POM Wonderful*, 894 F. Supp. 2d at 45 (noting that "[t]o the extent that [the plaintiff] is

seeking, in the current action, to resolve a defense, this court may decline to exercise jurisdiction to hear the action").  The Court should decline to hear plaintiff's claim and dismiss the complaint.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss the complaint with prejudice.


Dated:  April 25, 2019                                Respectfully submitted,

                                                      JOSEPH H. HUNT
                                                      Assistant Attorney General

                                                      JAMES M. BURNHAM
                                                      Deputy Assistant Attorney General

                                                      CHRISTOPHER R. HALL
                                                      Assistant Director
                                                      Civil Division, Federal Programs Branch

                                                      /s/ Julie Straus Harris
                                                      JULIE STRAUS HARRIS (DC Bar # 1021928)
                                                      Trial Attorney
                                                      United States Department of Justice
                                                      Civil Division, Federal Programs Branch
                                                      1100 L Street NW, Room 11514
                                                      Washington, D.C. 20005
                                                      Tel: (202) 353-7633
                                                      Fax: (202) 616-8470
                                                      E-mail: julie.strausharris@usdoj.gov

                                                      *Counsel for Defendants*

# Exhibit A

*L. Sims*

## AGREEMENT

You have requested that the entity signing below (the "**Company**") engage you (as an employee or an independent contractor, Volunteer, or otherwise) to perform services, or an independent contractor that employs you has requested to be engaged by Company to perform services and you desire in your capacity as an employee of such independent contractor to perform all or a part of such services. You have made the promises and agreements set forth below in order to induce the Company to accept your or your employer's, as applicable, offer of engagement and to permit you, in the applicable capacity, to perform all or a portion of the subject services. Those promises and agreements are part of what the Company is receiving in exchange for agreeing to engage you or your employer, and to permit you to perform all or a portion of the subject services, and the Company is relying on your fulfillment of these promises and agreements.

Any initially capitalized terms that are not defined when used in this agreement are defined in paragraph 6 below.

     1.    No Disclosure of Confidential Information. During the term of your service and at all times thereafter you hereby promise and agree:

     a.  not to disclose, disseminate or publish, or cause to be disclosed, disseminated or published, any Confidential Information;

     b. not to assist others in obtaining, disclosing, disseminating, or publishing Confidential Information;

     c. not to use any Confidential Information in any way detrimental to the Company, Mr. Trump, any Family Member, any Trump Company or any Family Member Company;

     d. not to save, store or memorialize any Confidential Information (including, without limitation, incorporating it into any storage device, server, Internet site or retrieval system, whether electronic, cloud based, mechanical or otherwise) except as may be expressly required in connection with the performance of services to the Company;

     e. to (i) provide the Company with written notice of any legal obligation to disclose any Confidential Information as soon as you become aware of such obligation, (ii) not make any disclosure notwithstanding such obligation until the Company (or the appropriate Trump Person) has had a reasonable opportunity to seek an appropriate protective order or similar relief, (iii) fully cooperate and join with the Company (and the appropriate Trump Person) in any request for a protective order or similar relief, (iv) exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded such Confidential Information in the event no such protective order or similar relief is obtained, whether because it has been denied or because the Company (or the appropriate Trump Person) has elected not to seek it, and (iv) under all circumstances, not furnish any greater portion of the Confidential Information than you are advised by counsel is absolutely legally required to be disclosed by you or furnish any

f. promptly upon the request, whenever made, of the Company, (i) return to the Company all Confidential Information furnished to you, together with all copies, abstracts, notes, reports, or other materials furnished to, or otherwise obtained by, you or prepared by you or on your behalf, without retaining copies, extracts or other reproductions, whether physical, electronic, cloud based or otherwise, in whole or in part, (ii) destroy all documents, memoranda, notes or other writings prepared by you or anyone on your behalf that are based upon the Confidential Information, and (iii) acknowledge such destruction in writing to Company.

The foregoing provisions each apply to Confidential Information and disclosure, dissemination, publication, use and effort to help others obtain, saving, storing and memorializing of Confidential Information, as applicable, (i) by any means of expression, including but not limited to verbal, written, or visual, (ii) whether or not preserved in any medium now known or hereafter discovered or invented, including but not limited to audio recording of any type, written text, drawing, photograph, film, video, or electronic device, (iii) in any manner or form, including but not limited to any book, article, memoir, diary, letter, essay, speech, interview, panel or roundtable discussion, image, drawing, cartoon, radio broadcast, television broadcast, video, movie, theatrical production, Internet website, e-mail, Twitter tweet, Facebook page, or otherwise, even if fictionalized, (iv) in any language, or (v) in any country or other jurisdiction (collectively, the "**Restricted Means and Contexts**").

2. <u>No Disparagement</u>. During the term of your service and at all times thereafter you hereby promise and agree not to demean or disparage publicly the Company, Mr. Trump, any Trump Company, any Family Member, or any Family Member Company or any asset any of the foregoing own, or product or service any of the foregoing offer, in each case by or in any of the Restricted Means and Contexts and to prevent your employees from doing so.

3. <u>No Competitive Services</u>. Until the Non-Compete Cutoff Date you promise and agree not to assist or counsel, directly or indirectly, for compensation or as a volunteer, any person that is a candidate or exploring candidacy for federal or state office other than Mr. Trump and to prevent your employees from doing so.

4. <u>No Competitive Solicitation</u>. Until the Non-Solicitation Cutoff Date you promise and agree not to hire or solicit for hiring, or assist any other person, entity or organization to hire or solicit for hiring, any person that is an independent contractor of, employee of an independent contractor of, or employee of Company or any other Trump Person and who at any time provides services for the project or objective for which you or your employer, as applicable, are being engaged.

5. <u>No Competitive Intellectual Property Claims</u>. During the term of your service and at all times thereafter you promise and agree never to assert any rights to any intellectual property that (a) includes the name "Trump," (b) is owned by or associated with the Company, Mr. Trump, any Trump Company, any Family Member or any Family Member Company, for example, without limitation, any name, likeness, voice, or image of Mr. Trump or any Family Member, or any logo, motto or phrase created, developed or commonly associated with any of them, or (c) is developed in connection with the project or objective for which your services are

being engaged (all of which will be deemed a "work made for hire" or will be assigned by you to us).

6. <u>Definitions.</u> As used in this agreement, the following definitions apply:

a. **"Confidential Information"** means all information (whether or not embodied in any media) of a private, proprietary or confidential nature or that Mr. Trump insists remain private or confidential, including, but not limited to, any information with respect to the personal life, political affairs, and/or business affairs of Mr. Trump or of any Family Member, including but not limited to, the assets, investments, revenue, expenses, taxes, financial statements, actual or prospective business ventures, contracts, alliances, affiliations, relationships, affiliated entities, bids, letters of intent, term sheets, decisions, strategies, techniques, methods, projections, forecasts, customers, clients, contacts, customer lists, contact lists, schedules, appointments, meetings, conversations, notes, and other communications of Mr. Trump, any Family Member, any Trump Company or any Family Member Company.

b. **"Family Member"** means any member of Mr. Trump's family, including, but not limited to, Mr. Trump's spouse, each of Mr. Trump's children and grandchildren and their respective spouses, including but not limited to Donald J. Trump Jr., Eric F. Trump and Ivanka M. Trump, Tiffany Trump, and Barron Trump, and their respective spouses, children and grandchildren, if any, and Mr. Trump's siblings and their respective spouses and children, if any.

c. **"Family Member Company"** means any entity, partnership, trust or organization that, in whole or in part, was created by or for the benefit of any Family Member or is controlled or owned by any Family Member.

d. **"Non-Compete Cut Off Date"** means the date the current U.S presidential election cycle is over or, if earlier, the date Mr. Trump announces that he will not run or will no longer run for the Presidency of the United States of America in the current U.S. presidential election cycle.

e. **"Non-Solicitation Cutoff Date"** means the Non-Compete Cut Off Date.

f. **"Trump Company"** means any entity, partnership, trust or organization that, in whole or in part, was created by or for the benefit of Mr. Trump or is controlled or owned by Mr. Trump.

g. **"Trump Person"** means each of Mr. Trump, each Family Member, each Trump Company (including but not limited to the Company) and each Family Member Company.

7. <u>Remedies for Breach of this Agreement.</u>

a. <u>Consent to Injunction.</u> A breach of any of your promises or agreements under this agreement will cause the Company, Mr. Trump and each other Trump Person irreparable harm. Accordingly, to the extent permitted by law, and without waiving any other rights or remedies against you at law or in equity, you hereby consent to the entry of any order, without prior notice

to you, temporarily or permanently enjoining you from violating any of the terms, covenants, agreements or provisions of this agreement on your part to be performed or observed. Such consent is intended to apply to an injunction of any breach or threatened breach.

      b. <u>Agreement to Indemnify</u>. You hereby agree to indemnify, defend (with counsel acceptable to the Trump Person you are defending) and hold harmless each Trump Person from and against any claim, demand, suit, proceeding, damages, cost, loss or expense of any kind or nature, including but not limited to reasonable attorneys' fees and disbursements, incurred by any Trump Person as a consequence of your breach of any of your promises or agreements in this agreement.

      c. <u>Damages and Other Remedies</u>. Notwithstanding anything to the contrary, each Trump Person will be entitled to all remedies available at law and equity, including but not limited to monetary damages, in the event of your breach of this agreement. Nothing contained in this agreement will constitute a waiver of any Trump Person's remedies at law or in equity, all of which are expressly reserved.

      d. <u>Third Party Beneficiaries</u>. Mr. Trump and each Family Member, Trump Company and Family Member Company is an intended third party beneficiary of this agreement. Without limiting the preceding sentence, Mr. Trump, each Family Member, Trump Company and Family Member Company, in addition to the Company, will be entitled to the benefit of this agreement and to enforce this agreement.

    **8.**    <u>Resolution of Disputes</u>.

      a. <u>Governing Law; Jurisdiction and Venue</u>. This Agreement is deemed to have been made in the State of New York, and any and all performance hereunder, breach hereof, or claims with respect to the enforceability of this agreement must be interpreted and construed pursuant to the laws of the State of New York without regard to conflict of laws or rules applied in the State of New York. You hereby consent to exclusive personal jurisdiction and venue in the State of New York with respect to any action or proceeding brought with respect to this agreement.

      b. <u>Arbitration</u>. Without limiting the Company's or any other Trump Person's right to commence a lawsuit in a court of competent jurisdiction in the State of New York, any dispute arising under or relating to this agreement may, at the sole discretion of each Trump Person, be submitted to binding arbitration in the State of New York pursuant to the rules for commercial arbitrations of the American Arbitration Association, and you hereby agree to and will not contest such submissions. Judgment upon the award rendered by an arbitrator may be entered in any court having jurisdiction.

      c. <u>Prevailing Party Fees</u>. Any court judgment or arbitration award shall include an award of reasonable legal fees and costs to the prevailing party.

      d. <u>Interpretation and Representation by Counsel</u>. This agreement has been drafted on behalf of the undersigned only as a convenience and may not, by reason of such action, be construed against the undersigned. Each of the parties (i) has had the opportunity to be and/or

has elected not to be, represented by counsel, (ii) has reviewed each of the provisions in this agreement carefully and (iii) has negotiated or has had full opportunity to negotiate the terms of this agreement, specifically including, but not limited to Paragraph 7 hereof. You waive any claims that may be available at law or in equity to the effect that you did not have the opportunity to so consult with counsel.

e. No Waiver. Neither the failure or delay to exercise one or more rights under this agreement nor the partial exercise of any such right, will be deemed a renunciation or waiver of such rights or any part thereof or affect, in any way, this agreement or any part hereof or the right to exercise or further exercise any right under this agreement or at law or in equity.

9. Miscellaneous. **Modifications**. No change or waiver of the terms, covenants and provisions of this agreement will be valid unless made in writing and signed by the undersigned. **Relationship**. Nothing herein contained is intended to, nor shall it be construed as, reflecting any employer-employee or independent contractor relationship between you and the undersigned or any other individual or entity. **Counterparts**. This agreement may be executed in any number of counterparts, all of which taken together will constitute one and same instrument. Delivery of an executed signature page of this this agreement by facsimile transmission or .pdf, .jpeg, .TIFF, or other electronic format or electronic mail attachment will be effective as delivery of an original executed counterparty hereof.

10. Survival. This agreement will survive the expiration, cancellation or termination of any employment or independent contractor relationship that you may have with the Company or with any individual, entity, partnership, trust or organization that the Company has engaged.

Donald J. Trump for President

Name: Cassidy Dumbauld
Title:

**CLIFTON DAVID SIMS ACKNOWLEDGES THAT HE HAS READ AND UNDERSTOOD THIS AGREEMENT, AND AGREES TO COMPLY WITH THE FOREGOING WHICH CREATES A VALID AND BINDING LEGAL OBLIGATION ON HIM.**

Clifton David Sims

Signature:

Name: Clifton David Sims
Address: 1201 Boundary St. Birmingham, AL 35242

**5 | Page**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CLIFTON DAVID SIMS,

          Plaintiff,

   v.

DONALD J. TRUMP, in his official capacity
as President of the United States; and
UNITED STATES OF AMERICA,

          Defendants.

Case No. 1:19-cv-345 (CKK)

## [PROPOSED] ORDER

It is hereby ORDERED that Defendants' Motion to Dismiss is GRANTED. It is further

ORDERED that this action is DISMISSED WITH PREJUDICE.


Dated: _____      _____

                           The Honorable Colleen Kollar-Kotelly
                           United States District Judge

*Cintron* v. *Trump Org. LLC,*

No. 18-cv-6921 (S.D.N.Y. 2018)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NOEL CINTRON, | Case No. 1:18-cv-06921-PAE |
| *Plaintiff*, | |
| v. | **DEFENDANTS' NOTICE OF MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS OF PLAINTIFF NOEL CINTRON** |
| TRUMP ORGANIZATION LLC a/k/a TRUMP CORPORATION and TRUMP TOWER COMMERCIAL LLC, | |
| *Defendants*. | |

PLEASE TAKE NOTICE THAT, upon the attached Declaration of Diana Taddoni, together with Exhibits "A" and "B"; the accompanying Memorandum Of Law In Support Of Defendants' Motion to Compel Arbitration and Dismiss Claims of Plaintiff Noel Cintron, Defendants Trump Tower Commercial LLC and Trump Organization LLC ("Defendants"), by their undersigned counsel, respectfully move this Court for an Order: (i) granting the Motion to Compel Arbitration; (ii) dismissing Cintron's Complaint in its entirety; and (iii) for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        August 8, 2018

SEYFARTH SHAW LLP

By: */s/ Howard M. Wexler*
    Howard M. Wexler
    hwexler@seyfarth.com
    620 Eighth Avenue
    New York, New York  10018
    Telephone:  (212) 218-5500
    Facsimile:  (212) 218-5526

Attorneys for Defendants
TRUMP ORGANIZATION LLC and
TRUMP TOWER COMMERCIAL LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of August, 2018, I electronically filed with the Clerk of the Court the DEFENDANTS' NOTICE OF MOTION TO COMPEL ARBITRATION AND DISMISS CLAIMS OF PLAINTIFF NOEL CINTRON; DECLARATION OF DIANA TADDONI, WITH EXHIBITS A-B; AND MEMORANDUM OF LAW IN SUPPORT, which sent a notice of electronic filing to the following counsel of record:

> Larry Hutcher, Esq.
> Josh Krakowsky, Esq.
> Davidoff Hutcher & Citron LLP
> 605 Third Avenue, 34th Floor
> New York, NY 10158
> Email: lkh@dmlegal.com
> Email: jsk@dhclegal.com
>
> *Attorneys for Plaintiff*

/s/ Howard M. Wexler
Howard M. Wexler

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NOEL CINTRON, | Case No. 1:18-cv-06921-PAE |
| *Plaintiff*, | |
| v. | |
| TRUMP ORGANIZATION LLC a/k/a TRUMP CORPORATION and TRUMP TOWER COMMERCIAL LLC, | |
| *Defendants*. | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO COMPEL ARBITRATION**
**AND DISMISS CLAIMS OF PLAINTIFF NOEL CINTRON**

Howard M. Wexler
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Attorneys for Defendants
TRUMP ORGANIZATION LLC and
TRUMP TOWER COMMERCIAL LLC

# TABLE OF CONTENTS

Page

Table of Authorities ........................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................ 1

    A.    Cintron's Employment with TT Commercial. ...................................................... 1

    B.    Cintron Signed an Agreement to Arbitrate Any Disputes Arising from His Employment, Including Wage-Related Disputes. ................................................... 2

    C.    The Arbitration Agreement Requires Cintron to Submit the Claims He Asserts in this Action to Arbitration. ....................................................................... 4

ARGUMENT ..................................................................................................................... 4

I.    This Court Should Compel ARbitration of Cintron's Claims Pursuant to the Parties' Agreement and Dismiss this Case. .................................................................. 4

    A.    Federal Law Favors Arbitration and Mandates Enforcement of Cintron's Arbitration Agreement. ........................................................................................... 4

    B.    The Court Must Compel Arbitration of Cintron's Claims Because He Entered Into a Valid Arbitration Agreement and His Dispute Falls Within the Scope of the Agreement. ........................................................................................ 5

        1.    Cintron Entered into a Valid Arbitration Agreement. ............................... 6

        2.    Cintron's Claims Are Covered by the Arbitration Agreement. .................. 7

II.    Cintron Delegated to the Arbitrator Authority to Resolve Disputes Over Enforceability of the Arbitration Agreement. ............................................................... 8

III.    The Court Should Dismiss This Action or, Alternatively, Stay the Action Pending Arbitration. ................................................................................................................. 10

CONCLUSION ................................................................................................................. 11

46575935v.3

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
  672 F.3d 113 (2d Cir. 2011)...................................................................................5

*Arrigo v. Blue Fish Commodities, Inc.*,
  408 F. App'x 480 (2d Cir. 2011) ............................................................................9

*AT&T Technologies, Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)................................................................................................8

*Bankers Conseco Life Ins. Co. v. Feuer*,
  No. 16 CIV. 7646 (ER), 2018 WL 1353279 (S.D.N.Y. Mar. 15, 2018).................10

*Bassett v. Elec. Arts, Inc.*,
  93 F. Supp. 3d 95 (E.D.N.Y. 2015) .........................................................................1

*Bell v. Cendant Corp.*,
  293 F.3d 563 (2d Cir. 2002)....................................................................................6

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001)................................................................................................5

*Contec Corp. v. Remote Solution, Co., Ltd.*,
  398 F.3d 205 (2d Cir. 2005)....................................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)............................................................................................5, 6

*Emilio v. Sprint Spectrum L.P.*,
  508 F. App'x 3 (2d Cir. 2013), *aff'd*, 582 F. App'x 63 (2d Cir. 2014),
  *cert. denied*, 135 S. Ct. 1569 (2015) .....................................................................9

*Isaacs v. OCE Bus. Servs., Inc.*,
  968 F. Supp. 2d 564 (S.D.N.Y. 2013).....................................................................7

*KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*,
  812 F. Supp. 2d 377, 386 (S.D.N.Y. 2011).............................................................2

*Litvinov v. UnitedHealth Grp. Inc.*,
  No. 13-cv-8541 (KBF), 2014 WL 1054394 (S.D.N.Y. Mar. 10, 2014) ..................6

*Magi XXI, Inc. v. Stato Della Città Del Vaticano*,
  714 F.3d 714 (2d Cir. 2013)....................................................................................2

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).................................................................................................5, 6, 8, 11

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
    991 F.2d 42 (2d Cir. 1993)...............................................................................................6

*Qin Hui Li v. Wok 88 Inc.*,
    No. 1:17-CV-8715-GHW, 2018 WL 3384441 (S.D.N.Y. July 11, 2018)...........................7, 8

*Raymond v. Mid-Bronx Haulage Corp.*,
    No. 15-CV-5803 (RJS), 2017 WL 9882601 (S.D.N.Y. June 10, 2017) ...............................10

*Reid v. Supershuttle Int'l, Inc.*,
    No. 08-cv-4854 (JG) (VVP), 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010).......................7

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010)........................................................................................................8, 9

*Saizhang Guan v. Uber Techs., Inc.*,
    236 F. Supp. 3d 711 (E.D.N.Y. 2017) ............................................................................10

*Smith/Enron Cogeneration L.P. v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999)...............................................................................................7

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984)............................................................................................................5

*Syngenta Crop Prot., LLC v. Ins. Co. of N. Am., Inc.*,
    No. 18CV715(DLC), 2018 WL 1587601 (S.D.N.Y. Mar. 29, 2018) ................................10

*Thompson v. Body Sculpt Int'l, LLC*,
    No. 18-CV-1001-ARR-GRB, 2018 WL 3235545 (E.D.N.Y. July 2, 2018)..........................8

*Tong v. S.A.C. Capital Mgt., LLC*,
    52 A.D.3d 386, 860 N.Y.S.2d 84 (1st Dep't 2008) ..........................................................5

*U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*,
    101 F.3d 813 (2d Cir. 1996).............................................................................................8

*Whitt v. Prosper Funding LLC*,
    No. 1:15-CV-136-GHW, 2015 WL 4254062 (S.D.N.Y. July 14, 2015) ..............................6

*Zambrano v. Strategic Delivery Sols., LLC*,
    No. 15 Civ. 8410 (ER), 2016 WL 5339552 (S.D.N.Y. Sept. 22, 2016) ............................10

**Statutes**

9 U.S.C. § 2................................................................................................................................5

9 U.S.C. § 3 ..........................................................................................................................11

9 U.S.C. § 4 ............................................................................................................................6

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*..........................................4, 7, 8, 10

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ................................................... *passim*

New York Labor Law ...............................................................................................4, 7, 8, 10

New York Labor Law Article 6, §§ 190, *et seq.* ..........................................................4

iv

# PRELIMINARY STATEMENT

The Court should dismiss this case and compel Plaintiff to arbitrate his claims.  Plaintiff

Noel Cintron ("Cintron" or "Plaintiff") signed an arbitration agreement in connection with his

employment with Defendants, which requires the parties to submit "any claim, dispute, or

controversy" between them to binding arbitration.  Agreements to arbitrate disputes, like the one

signed by Cintron, are enforceable and bar civil actions from proceeding in court.  To compel

arbitration in this case, this Court need only find that: (1) Cintron entered into a valid agreement

to arbitrate his claims; and (2) the claims in this action fall within the coverage of the agreement.

As set forth below, Defendants have established both of these elements.

Accordingly, Defendants request that the Court grant this Motion, order Cintron to pursue

his claims in the proper forum of arbitration, and dismiss this case.

# FACTUAL BACKGROUND

## A.  Cintron's Employment with TT Commercial.

TT Commercial owns and manages the commercial areas of the mixed-use building

located at 725 5th Avenue, New York, New York, known as Trump Tower.  Declaration of

Diana Taddoni ("Taddoni Dec.") ¶ 2.[1]  Since approximately 1990, TT Commercial employed

Plaintiff Noel Cintron in various positions, including as its Manager and Head of Security for the

building at times relevant to this action.[2]  Taddoni Dec., ¶ 3.

---

[1]     The Court may consider the Taddoni Declaration.  *See Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 98 n.1 (E.D.N.Y. 2015) (considering extrinsic documents when granting defendant's motion to compel arbitration: "A court may consider documents outside of the pleadings for the purposes of determining the arbitrability of a dispute.")

[2]     Cintron was and is employed by Defendant Trump Tower Commercial LLC.  Defendant Trump Organization LLC does not employ Cintron, but Cintron's Complaint alleges that it was also his employer, together with Trump Tower Commercial LLC.  *See* Complaint, *passim*.

**B.     Cintron Signed an Agreement to Arbitrate Any Disputes Arising from His Employment, Including Wage-Related Disputes.**

In June 2018, TT Commercial updated its employment documents and agreements, including its confidentiality agreements and arbitration agreement, and provided such documents to its employees for execution.  Taddoni Dec. ¶ 4.  In June 2018, as a condition of Cintron's continued employment, and in consideration of the mutual promises to arbitrate any disputes, one of Cintron's managers, Diana Taddoni, met with Cintron and provided him with employment agreements, including a document entitled "Mutual Arbitration Agreement" ("Arbitration Agreement").  Taddoni Dec., ¶ 4.  Cintron stated that, before entering into any agreements, he wished to review them with his attorneys.  *Id*.  Taddoni provided Cintron with copies of the agreements and informed him he was certainly free to speak with his attorneys about the agreements.  *Id*.  Approximately two weeks later, on the morning of July 10, 2018, Cintron returned the signed Arbitration Agreement to his manager.  *Id*.

In the Arbitration Agreement, Cintron expressly agreed to submit to binding arbitration any disputes related to his employment with TT Commercial and its affiliates.

The Arbitration Agreement states the parties'[3] agreement to arbitrate disputes between them, as follows:

> In consideration of the undersigned employee's [] and Trump Tower Commercial LLC's [] mutual promises to arbitrate disputes, the Company and Employee []

---

[3]     While Trump Organization LLC is not a signatory to the Arbitration Agreement, it is nonetheless entitled to enforce it as an affiliate (as set forth in the first paragraph of the Arbitration Agreement) because "the alleged conduct of the nonparties is closely related to the contractual relationship" between Plaintiff and TT Commercial.  *Magi XXI, Inc. v. Stato Della Città Del Vaticano,* 714 F.3d 714, 722 (2d Cir. 2013) (internal quotations and citations omitted); Non-signatories are deemed "closely related" to signatories where their "interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC,* 812 F. Supp. 2d 377, 386 (S.D.N.Y. 2011) (internal citation omitted)*;*  This is especially so given Plaintiff's claim of an alleged joint employer relationship between Defendants. *See* Complaint ¶¶ 8, 11-13.

2

agree that if a dispute is covered by this Agreement (a "Covered Claim"), the Parties will submit the dispute to final and binding arbitration before a single, neutral arbitrator.

Taddoni Dec., Ex. A at 1.

The Arbitration Agreement also describes the disputes that are subject to arbitration:

The parties to this Agreement wish to resolve, fairly and quickly, ***any dispute that may arise in the context of their employment relationship***, including but not limited to, the hiring, performance or termination of employment and/or cessation of employment with the Company and/or against any employee, officer, alleged agent, director, affiliate, owner, subsidiary, or relating to an application or candidacy for employment …

A Covered Claim is ***any claim, dispute, or controversy between the Parties*** … . A Covered Claim includes, but is not limited to, claims for … violation of any state or federal labor or employment statute …, ***unpaid wages***, ***unpaid compensation***, … and/or any other claim for violation of any federal, state or other governmental law, statute, regulation or ordinance … .

Taddoni Dec., Ex. A at 1 (emphasis added).[4]

The Arbitration Agreement provides that the arbitration will be conducted pursuant to the JAMS Employment Arbitration Rules and Procedures, and the agreement is enforceable under the Federal Arbitration Act. Taddoni Dec., Ex. A at 1-2.

Finally, the Arbitration Agreement provides that both parties knowingly and voluntarily waive "the right to trial by jury or judge for any covered claim," that they "entered into this agreement voluntarily and not in reliance on any promises or representations other than those contained in this agreement," and that both parties were "advised to seek legal advice as to their rights and responsibilities under this Agreement and have had the opportunity to do so." Taddoni Dec., Ex. A at 3 (emphasis omitted).

---

[4]     Excluded claims include workers' compensation benefits and unemployment compensation. Taddoni Dec. ¶ 5, Ex. A at 1. None of the excluded claims are applicable here.

### C. The Arbitration Agreement Requires Cintron to Submit the Claims He Asserts in this Action to Arbitration.

On July 9, 2018, Cintron filed a Complaint in the Supreme Court of the State of New York, New York County. Dkt. 1. Defendants then removed the action to the United States District Court for the Southern District of New York. *Id.*

Cintron's Complaint alleges that Defendants misclassified him as exempt from overtime, and that Defendants failed to pay him overtime wages allegedly due to him under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. and New York Labor Law ("NYLL") Article 6, §§ 190, *et seq*. The Complaint alleges claims for: (1) Failure to Pay Overtime Wages in violation of the FLSA; (2) Failure to Pay Overtime Wages in violation of the NYLL; (3) Failure to Provide Benefits or Wage Supplements; (4) Failure to Provide Proper Annual Wage Notices; and (5) Failure to Provide Accurate Wage Statements. Cintron alleges that each of his claims relate to his wages and compensation and arise from his employment with Defendants. *See* Complaint, *passim*. These claims fall within the scope of Cintron's Arbitration Agreement because they are each a "claim, dispute, or controversy between the Parties," and also constitute claims for "violation of any state or federal labor or employment statute," for "unpaid wages," and/or "unpaid compensation" and "for violation of any federal, state or other governmental law, statute, regulation or ordinance." Taddoni Dec., Ex. A at 1.

### ARGUMENT

## I. THIS COURT SHOULD COMPEL ARBITRATION OF CINTRON'S CLAIMS PURSUANT TO THE PARTIES' AGREEMENT AND DISMISS THIS CASE.

### A. Federal Law Favors Arbitration and Mandates Enforcement of Cintron's Arbitration Agreement.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., provides in relevant part that "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable

and enforceable …." 9 U.S.C. § 2. The FAA establishes a national policy liberally favoring arbitration where, as here, the parties contract for that mode of dispute resolution. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); 9 U.S.C. §§ 1 *et seq.*; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (FAA created "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary").

Here, Cintron agreed to resolve his disputes with Defendants by binding arbitration under the FAA. The Arbitration Agreement states that it is "governed by and enforceable under the Federal Arbitration Act … ." Taddoni Dec., Ex. A. On its face, the Arbitration Agreement states Cintron's acknowledgment that the FAA applies, and accordingly, the Court's examination of the Arbitration Agreements is controlled by the FAA. *Tong v. S.A.C. Capital Mgt., LLC*, 52 A.D.3d 386, 387, 860 N.Y.S.2d 84, 84-85 (1st Dep't 2008) (holding that the plaintiff's employment claims were subject to the broad arbitration provision contained in his employment agreement, and that as the construction of said provision was governed by the FAA, any ambiguities in its construction were to be governed by the FAA.) In addition, arbitration clauses in employment contracts are generally governed by FAA. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Therefore, the FAA and its liberal policy favoring arbitration applies to Cintron's Arbitration Agreement and mandates enforcement of that agreement.

**B.      The Court Must Compel Arbitration of Cintron's Claims Because He Entered Into a Valid Arbitration Agreement and His Dispute Falls Within the Scope of the Agreement.**

Under the FAA, a two-part test determines whether a claim is subject to arbitration: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.,* 672 F.3d 113, 128 (2d Cir. 2011) (citing *ACE Capital Re Overseas Ltd. v.*

*Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002).  The party seeking to enforce an arbitration agreement must satisfy both elements by an "ordinary preponderance of the evidence standard."  *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993).  The FAA mandates that a court *must* order arbitration when it is satisfied that the execution of an arbitration agreement is not at issue.  9 U.S.C. § 4.  *See also, e.g., Dean Witter Reynolds, Inc.*, 470 U.S. at 218 (citing 9 U.S.C. §§ 3, 4).  Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone*, 460 U.S. at 24-25.

As set forth below, in the case at hand, both elements are easily satisfied.  Therefore, the Motion to compel arbitration should be granted.

### 1.    Cintron Entered into a Valid Arbitration Agreement.

Whether the parties have entered into a valid agreement to arbitrate is determined by ordinary principles of state contract law.  *Bell v. Cendant Corp.,* 293 F.3d 563, 566 (2d Cir. 2002) ("Because an agreement to arbitrate is a creature of contract, … the ultimate question of whether the parties agreed to arbitrate is determined by state law" concerning the formation of contracts); *Whitt v. Prosper Funding LLC*, No. 1:15-CV-136-GHW, 2015 WL 4254062, at *1 (S.D.N.Y. July 14, 2015) (concluding arbitration agreement was enforceable under New York contract law and granting motion to compel arbitration).

Here, it is undisputed that Cintron signed the Arbitration Agreement, that he received notice of and assented to the agreement, and he was afforded the opportunity, at his request, to have the agreement reviewed by his counsel.  Taddoni Dec., ¶¶ 4, 6.  *See Litvinov v. UnitedHealth Grp. Inc.*, No. 13-cv-8541 (KBF), 2014 WL 1054394, at *2 (S.D.N.Y. Mar. 10, 2014).  Therefore, conclusively, Cintron knew of and assented to the terms of the Arbitration

6

Agreement.  *See Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013)

("Under New York law, a person who 'signs or accepts a written contract is conclusively

presumed to know its contents and to assent to them.'" (quoting *Gold v. Deutsche*

*Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004))).  Those terms include an agreement to

arbitrate disputes arising out of Cintron's employment, including claims brought under the FLSA

and NYLL.  *See Qin Hui Li v. Wok 88 Inc.*, No. 1:17-CV-8715-GHW, 2018 WL 3384441, at *4

(S.D.N.Y. July 11, 2018) (enforcing arbitration agreement where plaintiff signed the agreement,

creating presumption he knew of its contents and assented to them).

     In short, Cintron manifested his acceptance of the terms of the Arbitration Agreement by

executing the agreement with his employer.  Accordingly, there can be no dispute that Cintron

entered into a legally valid arbitration agreement.

     2.    <u>Cintron's Claims Are Covered by the Arbitration Agreement</u>.

     Cintron's alleged claims fall squarely within the scope of the Arbitration Agreement.

The Arbitration Agreement explicitly includes "any dispute that may arise in the context of [the

parties'] employment relationship," "any claim, dispute, or controversy between the Parties," all

claims for "unpaid wages" and "unpaid compensation," and all claims for "violation of any

federal, state or other governmental law, statute, regulation or ordinance."  Taddoni Dec., Ex. A

at 1.  Thus, there can be *no doubt* that Cintron's overtime and related wage and hour claims

under the FLSA and New York law are covered by the Arbitration Agreement.[5]

---

[5]    That Cintron filed the instant action the day before he submitted the signed Arbitration
Agreement is of no import because when an arbitration agreement does not contain an express
temporal limitation, it applies to any covered claims—even those that arose before the parties
executed the agreement.  *Smith/Enron Cogeneration L.P. v. Smith Cogeneration Int'l, Inc.*, 198
F.3d 88, 99 (2d Cir. 1999); *Reid v. Supershuttle Int'l, Inc.*, No. 08-cv-4854 (JG) (VVP), 2010
WL 1049613, at *5 (E.D.N.Y. Mar. 22, 2010) ("The Second Circuit has held that arbitration

Further, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp*, 460 U.S. at 24–25. As a result, arbitration should only be denied when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Moreover, the FAA accords a strong presumption in favor or arbitration of employer and employee disputes. *See U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813, 816 (2d Cir. 1996) (citing cases). Courts routinely grant motions to compel arbitration for overtime claims under the FLSA and New York Labor Law. *See e.g., Qin Hui Li*, 2018 WL 3384441, at *4 (compelling arbitration of FLSA and NYLL overtime claims); *Thompson v. Body Sculpt Int'l, LLC*, No. 18-CV-1001-ARR-GRB, 2018 WL 3235545, at *7 (E.D.N.Y. July 2, 2018) (same). Thus, any purported "doubt" about the parties' agreement must be resolved in favor of compelling arbitration.

## II. CINTRON DELEGATED TO THE ARBITRATOR AUTHORITY TO RESOLVE DISPUTES OVER ENFORCEABILITY OF THE ARBITRATION AGREEMENT.

To the extent Cintron argues the Arbitration Agreement is in any way invalid or unenforceable (it is not), or that the agreement does not apply to his claims (it clearly does), Cintron cannot challenge enforcement of the Arbitration Agreement in this Court. Rather, the parties expressly delegated those issues of arbitrability to an *arbitrator*.

The Supreme Court has held that parties may assign the authority to decide questions of arbitrability to an arbitrator, not the courts. In *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010), the Supreme Court held that a "delegation provision" assigning the authority to decide gateway questions of arbitrability to an arbitrator is itself an agreement to arbitrate, and

---

clauses without an express limitation to 'future[] disputes' should be applied to any preexisting claims." (*quoting Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1212 (2d Cir. 1972))).

must be treated as valid and enforced by courts unless it is specifically challenged apart from the remainder of the agreement to arbitrate. *See also Arrigo v. Blue Fish Commodities, Inc*., 408 F. App'x 480, 482-83 (2d Cir. 2011) (affirming order compelling arbitration and upholding delegation of arbitrability to arbitrator, citing *Rent-A-Center*.).

Cintron's Arbitration Agreement expressly incorporates the JAMS Employment Arbitration Rules and Procedures ("JAMS Rules"). Taddoni Dec., Ex. A, ¶ D. The JAMS Rules empower the *arbitrator* to decide the issues of arbitrability. Specifically, JAMS Rule 11(b) provides: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." Taddoni Dec., Ex. B, Rule 11(b)

The Supreme Court and Second Circuit have found similar delegation clauses to be valid and enforceable. *See Rent-A-Ctr., W., Inc.*, 561 U.S. at 68-69 (finding that delegation clause delegated gateway question of arbitrability to the arbitrator); *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013), *aff'd*, 582 F. App'x 63 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1569 (2015) (finding where parties' arbitration agreement incorporated the JAMS rules, including the arbitrator's power to decide issues of arbitrability, "the parties clearly and unmistakably delegated questions of arbitrability to the arbitrator"); *Contec Corp. v. Remote Solution, Co., Ltd*., 398 F.3d 205, 208 (2d Cir. 2005) ("when ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator").

Likewise, district courts have routinely enforced delegation clauses contained in arbitration rules such as the JAMS rules or American Arbitration Association (AAA) rules. *See,*

*e.g.*, *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 728 (E.D.N.Y. 2017) (finding

where parties' arbitration agreement incorporated the JAMS rules, questions of arbitrability are

for the arbitrator); *Raymond v. Mid-Bronx Haulage Corp.*, No. 15-CV-5803 (RJS), 2017 WL

9882601, at *5 n.1 (S.D.N.Y. June 10, 2017) (delegating threshold questions of arbitrability of

FLSA and NYLL overtime claims to the arbitrator based on arbitration agreement's

incorporation of AAA rules); *see also Bankers Conseco Life Ins. Co. v. Feuer*, No. 16 CIV. 7646

(ER), 2018 WL 1353279, at *3 (S.D.N.Y. Mar. 15, 2018) (finding threshold issues delegated to

arbitrator based on incorporation of arbitration rules); *Syngenta Crop Prot., LLC v. Ins. Co. of N.

Am., Inc.*, No. 18CV715(DLC), 2018 WL 1587601, at *5 (S.D.N.Y. Mar. 29, 2018) (same).

Here, by signing the Arbitration Agreement, Cintron explicitly agreed that an arbitrator

shall rule on "formation, existence, validity, interpretation or scope" of the Arbitration

Agreement.  Taddoni Dec., Ex. B, Rule 11(b).  As a result, and to the extent Cintron argues the

Arbitration Agreement is invalid, unenforceable, or does not apply to his claims against

Defendants, these threshold issues must be presented to an *arbitrator* rather than this Court.

Accordingly, Cintron's agreement to leave to the arbitrator any threshold disputes over

arbitrability is permissible under the FAA and must be enforced.

## III.    THE COURT SHOULD DISMISS THIS ACTION OR, ALTERNATIVELY, STAY THE ACTION PENDING ARBITRATION.

Defendants move to dismiss or, alternatively, stay this action pending the completion of

arbitration.  The Court has authority to dismiss rather than stay Cintron's claims because

Defendants have requested dismissal.  *See Zambrano v. Strategic Delivery Sols., LLC*, No. 15

Civ. 8410 (ER), 2016 WL 5339552, at *10 (S.D.N.Y. Sept. 22, 2016) (granting defendants'

motion to compel arbitration and noting "because Defendants seek dismissal rather than a stay,

this Court has discretion whether to stay or dismiss Plaintiffs' action under the FAA") (citing

*Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 596 (2015)); *see also Moses H. Cone*, 460 U.S. at 26-28 (finding no substantive distinction between a stay and a dismissal without prejudice).  Alternatively, the FAA provides that once the Court is satisfied that the matter can be arbitrated, the action must be stayed.  *See* 9 U.S.C. § 3; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26 (holding that courts "are obliged to grant stays of litigation under § 3 of the Arbitration Act.").  Because this case is subject to arbitration, as discussed above, the Court must dismiss or stay this action pending completion of the arbitration.

## CONCLUSION

Cintron agreed to resolve his disputes with Defendants through arbitration.  Accordingly, Defendants respectfully request that the Court enforce Cintron's arbitration agreement and dismiss his claims.

Dated: New York, New York
      August 8, 2018

SEYFARTH SHAW LLP

By:  */s/ Howard M. Wexler*
     Howard M. Wexler
     hwexler@seyfarth.com
     620 Eighth Avenue
     New York, New York  10018
     Telephone:  (212) 218-5500
     Facsimile:  (212) 218-5526

     Attorneys for Defendants
     TRUMP ORGANIZATION LLC
     TRUMP TOWER COMMERCIAL LLC

*Clifford* v. *Trump*,

No. 18-cv-02217 (C.D. Cal. 2018)

HARDER LLP
CHARLES J. HARDER (CA Bar No. 184593)
RYAN J. STONEROCK (CA Bar No. 247132)
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone:   (424) 203-1600
Facsimile:    (424) 203-1601
Email:          CHarder@HarderLLP.com
Email:          RStonerock@HarderLLP.com

Attorneys for Defendant
DONALD J. TRUMP

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS a.k.a. PEGGY PETERSON, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>DONALD J. TRUMP a.k.a. DAVID DENNISON, an individual, ESSENTIAL CONSULTANTS, LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No. 2:18-CV-02217<br><br>[Removal from Superior Court of California, County of Los Angeles, Case No. BC696568]<br><br>**JOINDER OF DEFENDANT DONALD J. TRUMP IN NOTICE OF REMOVAL OF ACTION BY DEFENDANT ESSENTIAL CONSULTANTS, LLC**<br><br>Action Filed:  March 6, 2018 |

Defendant Donald J. Trump hereby joins in defendant Essential Consultants, LLC's ("EC") Notice of Removal to this Court of the state court action described in said Notice of Removal.  Mr. Trump is, and at the time of the Complaint being filed and all intervening times was, a resident of the District of Columbia, and is a permanent resident, citizen and domiciliary of the State of New York.  Mr. Trump is not now, and was not at the time of the Complaint being filed or during any intervening times, a citizen of the State of California or a citizen of the State of Texas.

This action arises out of allegations made by Plaintiff Clifford, an adult-film actress and exotic dancer, against EC and Mr. Trump, and a written settlement agreement related thereto that contains a broad arbitration provision (the "Arbitration Agreement").  Mr. Trump intends to join in EC's anticipated Petition to Compel Arbitration under the Arbitration Agreement.

Mr. Trump intends to pursue his rights to the fullest extent permitted by law.

Mr. Trump has not been served with the summons or complaint in this action.


Dated: March 16, 2018                    HARDER LLP

                                         By:  /s/ Charles J. Harder
                                            CHARLES J. HARDER
                                            Attorneys for Defendant
                                            DONALD J. TRUMP

HARDER LLP
CHARLES J. HARDER (CA Bar No. 184593)
RYAN J. STONEROCK (CA Bar No. 247132)
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Telephone: (424) 203-1600
Facsimile: (424) 203-1601
Email:      CHarder@HarderLLP.com
Email:      RStonerock@HarderLLP.com

Attorneys for Defendant
DONALD J. TRUMP

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE CLIFFORD a.k.a. STORMY DANIELS a.k.a. PEGGY PETERSON, an individual, <br><br> Plaintiff, <br><br> v. <br><br> DONALD J. TRUMP a.k.a. DAVID DENNISON, an individual, ESSENTIAL CONSULTANTS, LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:18-CV-02217 <br><br> **JOINDER OF DEFENDANT DONALD J. TRUMP IN MOTION TO COMPEL ARBITRATION BY DEFENDANT ESSENTIAL CONSULTANTS, LLC** <br><br> Assigned for All Purposes to the Hon. S. James Otero <br><br> **Date:      April 30, 2018** <br> **Time:      10:00 a.m.** <br> **Location:  350 West 1st Street** <br>    **Courtroom 10C, 10th Floor** <br>    **Los Angeles, CA 90012** <br><br> Action Filed: March 6. 2018 |

Defendant Donald J. Trump hereby joins in defendant Essential Consultants, LLC's ("EC") Motion to Compel Arbitration and consents to arbitration of the claims against him and EC in this matter.

Dated: April 2, 2018                    HARDER LLP

                                       By: /s/ Charles J. Harder
                                             CHARLES J. HARDER
                                             Attorneys for Defendant
                                             DONALD J. TRUMP

*Denson* v. *Trump*,

No. 18-cv-2690 (S.D.N.Y. 2018)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JESSICA DENSON,

                          Plaintiff,

     -against-

DONALD J. TRUMP FOR PRESIDENT, INC.,

                        Defendant.
-------------------------------------------------------------------X

Civil Action No.
18-cv-2690 (JMF)

**NOTICE OF MOTION**

     **PLEASE TAKE NOTICE** that, upon the Declaration of Lawrence S. Rosen, dated June 4, 2018, with exhibits, the Affidavit of Michael S. Glassner, sworn to on June 4, 2018, with an exhibit, the points and authorities set forth in the accompanying memorandum of law, dated June 4, 2018, and all prior proceedings, Defendant Donald J. Trump for President, Inc. will move this Court, at the United States Courthouse for the Southern District of New York, 500 Pearl Street, New York, New York 10007, before the Honorable Jesse M. Furman, for an Order, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and 9 U.S.C. § 1 *et seq.*, compelling arbitration and dismissing this action, and granting Defendant all such other relief as the Court deems just and proper.

Dated: New York, New York
       June 4, 2018

                        LAROCCA HORNIK ROSEN
                        GREENBERG & BLAHA LLP

                    By: _____
                    Lawrence S. Rosen
                    40 Wall Street, 32nd Floor
                    New York, New York 10005
                    T: (212) 530-4822
                    E: LROSEN@LHRGB.COM

                    *Attorneys for Defendant*
                    *Donald J. Trump for President, Inc.*

To:     Jessica Denson
        3925 Big Oak Drive, #4
        Studio City, CA  91604

        *Pro se Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JESSICA DENSON,

                                              Civil Action No.
                   Plaintiff,           18-cv-2690 (JMF)

      -against-

DONALD J. TRUMP FOR PRESIDENT, INC.,

                          Defendant.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO COMPEL ARBITRATION

*On the brief:*

*Lawrence S. Rosen, Esq.*
*Patrick McPartland, Esq.*
*Jared E. Blumetti, Esq.*

**LAROCCA HORNIK ROSEN
GREENBERG & BLAHA LLP**
40 Wall Street, 32nd Floor
New York, New York 10005
T: (212) 530-4822
E: LROSEN@LHRGB.COM
*Attorneys for Defendant*

Defendant Donald J. Trump for President, Inc. (the "Campaign"), by its attorneys LaRocca Hornik Rosen Greenberg & Blaha LLP, respectfully submits this memorandum of law in support of its motion, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and 9 U.S.C. § 1 *et seq.*, to compel arbitration and dismiss this action.

## PRELIMINARY STATEMENT

As a condition for her employment with the Campaign, plaintiff voluntarily signed a written agreement (the "Agreement") that contained, among other things, confidentiality obligations and an arbitration provision. By signing the Agreement, plaintiff expressly agreed to arbitrate "*any dispute arising under or relating to*" the Agreement, and to "*not contest*" the arbitrability of any claim submitted to arbitration by the Campaign.

Suffice it to say, confidentiality is an important requirement for a presidential campaign, and an agreement to resolve disputes through private arbitration is an integral component of that confidentiality requirement. Nevertheless, plaintiff—who voluntarily and willingly accepted employment with the Campaign on these terms—has repeatedly and deliberately breached her confidentiality obligations and also refused to honor her agreement to arbitrate these claims.

The instant action is now the second lawsuit that plaintiff filed against the Campaign. She previously filed an action in New York County Supreme Court (still pending) in which she made numerous unauthorized disclosures of confidential information (the "State Court Action"). In response to those unauthorized disclosures, the Campaign commenced an arbitration proceeding against her before the American Arbitration Association ("AAA") for breaching her confidentiality obligations under the Agreement (the "Arbitration"). Additionally, the Campaign filed a similar motion in the State Court Action to compel arbitration of her arbitrable claims.

1

Thereafter (one week after the Campaign moved to compel arbitration), plaintiff commenced this federal court lawsuit, thereby forcing the Campaign to litigate the same exact arbitrability issues in two forums. In doing so, plaintiff not only multiplied the proceedings and ignored her agreement to arbitrate, but she also again breached her confidentiality obligations under the Agreement by publicly divulging confidential filings from the Arbitration.

Plaintiff's asserted claim here (i.e. that the confidentiality provisions in the Agreement are unenforceable) clearly falls under the parties' broad agreement to arbitrate "***any dispute arising under or relating to***" the Agreement. Indeed, her claim in this action is—in actuality—a "defense" to the claims being asserted against her by the Campaign in the Arbitration. This issue is thus subject to the jurisdiction of the AAA, as per the parties' broad agreement to arbitrate disputes between them.

## STATEMENT OF FACTS

### A.     The Arbitration Agreement

When she commenced her employment with the Campaign, plaintiff voluntarily executed the Agreement, which contained, *inter alia*, confidentiality and binding arbitration provisions. *A copy of the Agreement is annexed as **Exhibit A** to the moving Affidavit of Michael S. Glassner, sworn to on June 4, 2018 (the "Glassner Aff.").* Paragraph 8(b) of the Agreement contains the arbitration clause, which states in relevant part as follows:

> "…any dispute ***arising under or relating to*** this agreement, may at the sole discretion of [the Campaign], be submitted to binding arbitration in the State of New York pursuant to the rules for commercial arbitrations of the American Arbitration Association, ***and you hereby agree to and will not contest such submissions***."

*Glassner Aff., Exh. A, ¶ 8(b) (emphasis supplied).*

2

**B.**     <u>**The Pending State Court Action and Arbitration**</u>

In the State Court Action, plaintiff alleges numerous claims against the Campaign that arise directly from her employment and involve conspiracy allegations against both male and female Campaign staff members. Her claims include defamation, intentional and negligent infliction of emotional distress, and employment discrimination under the New York City Human Rights Law (the "NYCHRL"). *A copy of the Complaint in the State Court Action is annexed as **Exhibit A** to the moving Declaration of Lawrence S. Rosen, dated June 4, 2018 (the "Rosen Decl.").* The Campaign served a motion in the State Court Action on March 19, 2018 to compel arbitration of the common law claims and dismiss the NYCHRL claims,[1] which motion is currently pending before the court.[2] *See Rosen Decl.*

The Arbitration asserts, *inter alia*, a claim by the Campaign that plaintiff violated the confidentiality provisions of her Agreement and thereby breached it. *See Rosen Decl.*

**C.**     <u>**Plaintiff's Federal Court Action**</u>

Plaintiff filed this federal court action on March 26, 2018. *A copy of the Complaint in this action is annexed as **Exhibit C** to the Rosen Decl.* In the within action, plaintiff seeks a declaration from this Court that *__the confidentiality provisions__* of the Agreement are void and unenforceable "to the extent [they are] utilized…to thwart or prohibit the assertion of legal rights in a lawsuit." *Id.* Plaintiff further asserts that *__the confidentiality provisions__* are void because the "definition of confidential information is so vague and overly broad that it fails to place employees who are

---

[1] The Campaign did not move to compel arbitration of the NYCHRL claims because, as the Campaign concedes, those claims are not arbitrable under the Agreement.

[2] Following plaintiff's commencement of her State Court Action, the Campaign notified her that it was exercising its right to compel arbitration of her claims under paragraph 8(b) of the Agreement. *See correspondence annexed as **Exhibit B** to the Rosen Decl.* Plaintiff refused to do so, which resulted in the Campaign's motion to compel arbitration in the State Court Action.

required to sign the NDA on notice of what information is confidential." *Id.* Significantly, plaintiff does not deny that she agreed to arbitrate all claims arising under or relating to the Agreement and that she agreed to not contest arbitrability, nor does she claim in her Complaint that the arbitration clause itself is somehow void or unenforceable. *Id.*

## ARGUMENT

### I.

### PLAINTIFF'S CLAIM FOR DECLARATORY RELIEF MUST BE ARBITRATED

It is well established that there is a presumption of arbitrability when parties freely contract and agree to a broad scope of arbitrable issues, *i.e.* "any dispute arising under or relating to" the Agreement. *See e.g. Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) (clause requiring arbitration of "[a]ny dispute arising from the making, performance or termination of this [agreement]" gives rise to a presumption of arbitrability); *Symphony Fabrics Corp. v. Knapel*, 2008 WL 2332333, * 5 (S.D.N.Y. June 2, 2008) (provision providing for arbitration of "any dispute or controversy arising out of or relating to this Agreement" is "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability") (*internal alterations omitted*); *Continental Casualty Company v. Hopeman Brothers, Inc.*, 2018 WL 1581987, * 7 (S.D.N.Y. March 27, 2018) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (*internal quotations omitted*).

Further, where the parties have expressly agreed to have their disputes governed by the AAA Arbitration Rules, it "serves as clear and unmistakable evidence of the parties' intent to delegate [those] issues [covered by the rules] to an arbitrator." *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *see also Pincaro v. Glassdoor, Inc.*, 2017 WL 4046317 (S.D.N.Y. September 12, 2017) (the arbitrability of plaintiffs' privacy claims were reserved for

the arbitrator because the parties' broad arbitration provision incorporated by reference the AAA Arbitration Rules which commit questions of arbitrability to the arbitrator).

Finally, where an arbitration provision grants the arbitrator authority to determine the enforceability of an agreement, any challenges to the enforceability of the agreement—with the sole exception of challenges to the arbitration clause itself—must be decided by the arbitrator. *See e.g. Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449, 126 S.Ct. 1204, 1210 (2006) ("a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator"); *Arrigo v. Blue Fish Commodities, Inc.*, 408 Fed.Appx. 480, 482 (2d Cir. 2011) (compelling arbitration where plaintiff challenged the validity of the indemnification provision contained within his employment agreement, not the arbitration provision); *HDI Global SE v. Lexington Insurance Company*, 232 F.Supp.3d 595, 603 (S.D.N.Y. 2017) (compelling arbitration where there were "no allegations or facts pleaded in the amended complaint challenging the validity and enforceability of the arbitration clause itself").

Here, plaintiff's claim for declaratory relief is based solely on the allegation that the *confidentiality* provisions of her Agreement are unenforceable. This claim thus falls squarely within the parties' broad agreement to arbitrate "any dispute arising under or relating to th[e] [A]greement." *See Symphony Fabrics Corp., supra.* It further falls squarely within the jurisdiction of the AAA, as the parties have specifically incorporated the AAA Commercial Arbitration Rules, which provide that "[t]he arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part." *Glassner Aff., Exh. A, ¶ 8(b); Rule 7 of the AAA Commercial Rules of Arbitration is annexed as* **Exhibit D** *to the Rosen Decl.* Given that plaintiff challenges only the enforceability of the *confidentiality* provisions of her Agreement—

and does not challenge the arbitration clause itself—her claim must be decided by the arbitrator.[3]
*See e.g. Arrigo v. Blue Fish Commodities, Inc.*, 408 Fed.Appx. at 482 (challenge to indemnification
provision contained within employment agreement was arbitrable under the parties' "broad and
emphatic arbitration provision").

Finally, because plaintiff's sole claim for declaratory relief must be arbitrated, her lawsuit
should be dismissed. *See e.g. Spencer-Franklin v. Citigroup/Citibank N.A.*, 2007 WL 521295, *
4 (S.D.N.Y. February 21, 2007) ("[a]ll courts of which we are aware have followed the rule that
where all of the issues raised in the Complaint must be submitted to arbitration, the Court may
dismiss an action rather than stay proceedings") (*internal quotations omitted*).

## CONCLUSION

Based on the foregoing, Defendant Donald J. Trump for President, Inc. respectfully
requests that the Court (i) compel arbitration and dismiss this action, pursuant to Rule 12(b)(1) of
the Federal Rules of Civil Procedure and 9 U.S.C. § 1 *et seq.*, and (ii) grant Defendant all such
other relief as this Court may deem just and proper.

Dated: New York, New York
     June 4, 2018

               LAROCCA HORNIK ROSEN
               GREENBERG & BLAHA LLP

     By: _____

               Lawrence S. Rosen
               40 Wall Street, 32nd Floor
               New York, New York 10005
               T: (212) 530-4822
               E: LROSEN@LHRGB.COM
               *Attorneys for Defendant*
               *Donald J. Trump for President, Inc.*

---

[3] Even if plaintiff challenged the arbitration clause specifically, which she has not done, this claim would still be
without merit because the arbitration clause is neither procedurally nor substantively unconscionable. *See Forbes v.
A.G. Edwards & Sons, Inc.*, 2009 WL 424146 (S.D.N.Y. February 18, 2009); *Builders Group LLC v. Qwest
Communications Corp.*, 2009 WL 3170101 (S.D.N.Y. September 30, 2009).

*Denson* v. *Trump*,

No. 101617/2017 (Sup. Ct. N.Y. Cnty. 2017)

| **Denson v Donald J. Trump for President, Inc.** |
|---|
| 2018 NY Slip Op 32168(U) |
| September 7, 2018 |
| Supreme Court, New York County |
| Docket Number: 101616/2017 |
| Judge: Arlene P. Bluth |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

[* 1]



EA
8/8/18
FE

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: _____ HON. ARLENE P. BLUTH _____          PART 32
                                    Justice

Index Number : 101616/2017          INDEX NO. _____
DENSON, JESSICA                     MOTION DATE _____
vs                                  MOTION SEQ. NO. _____
TRUMP, DONALD J. FOR
Sequence Number : 001
COMPEL

The following papers, numbered 1 to _3_ , were read on this motion to/for _Compel arbitration_

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). 1

Answering Affidavits — Exhibits _____ | No(s). 2

Replying Affidavits _____ | No(s). 3

Upon the foregoing papers, it is ordered that this motion is _and cross-motion_
_are decided in accordance with the accompanying memorandum_
_decision and order._

RECEIVED
AUG 0 8 2018
...E COURT - CIVIL
...AL CLERK'S OFFICE

FILED
AUG 0 9 2018
COUNTY CLERK'S OFFICE
NEW YORK

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: _8/7/18_                    _____ HON. ARLENE P. BLUTH, .S.C.

1. CHECK ONE: .................................................. ☐ CASE DISPOSED        ☒ NON-FINAL DISPOSITION

2. CHECK AS APPROPRIATE: ........................MOTION IS: ☐ GRANTED   ☐ DENIED   ☐ GRANTED IN PART   ☒ OTHER

3. CHECK IF APPROPRIATE: ................................. ☐ SETTLE ORDER                    ☐ SUBMIT ORDER
                                                          ☐ DO NOT POST   ☐ FIDUCIARY APPOINTMENT   ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 32
------------------------------------------------------------------ X
JESSICA DENSON                                           Index No. 101616/2017
                                                         Motion Seq: 001
                            Plaintiff,

                                                         DECISION & ORDER

            -against-
                                                         HON. ARLENE P. BLUTH
DONALD J. TRUMP FOR PRESIDENT, INC.,


                            Defendant.
------------------------------------------------------------------ X


        The motion by defendant to compel arbitration is denied. The cross-motion by plaintiff,

who is self-represented, to amend her complaint is granted. **FILED**

                                                         AUG 0 9 2018

                                                         COUNTY CLERK'S OFFICE
                                                         NEW YORK

**Background**

        This action arises out of plaintiff's employment with defendant during the 2016

presidential election. Plaintiff was hired by defendant in August 2016 as a national phone bank

administrator. She claims she was routinely overworked by her initial supervisor Camilo Jaime

Sandoval– this included working seven days per week and ten hours per day. As the election

approached, plaintiff was eventually assigned to work on the campaign's Hispanic outreach

efforts. Plaintiff contends that Sandoval did not like this promotion and subjected plaintiff to a

hostile tirade.

        Plaintiff alleges that she worked in a horrible work environment from late September

2016 through the election. Plaintiff makes numerous allegations about this time period and

                            Page 1 of 6

accuses Sandoval and other supervisors of tracking plaintiff's whereabouts, trying to "find dirt on her," cyberbullying and harassment.

Defendant moves to compel arbitration and argues that plaintiff signed an employment agreement in which she expressly agreed to arbitrate any disputes arising out of or relating to her employment. Defendant argues that because all of plaintiff's allegations relate to her employment, they should be subject to arbitration. In opposition, plaintiff claims that defendant relies on an arbitration provision in a non-disclosure agreement, not an employment agreement. In reply, defendant acknowledges that plaintiff's New York City Human Rights Law ("NYCHRL") claims are not subject to arbitration and that defendant intends to respond to those claims when a responsive pleading is due.

**Discussion**

"It is a well settled principle of law in this state that a party cannot be compelled to submit to arbitration unless the agreement to arbitrate 'expressly and unequivocally encompasses the subject matter of the particular dispute. Where . . . there is no agreement to arbitrate 'all disputes' arising out of the parties' relationship but, rather, a limited arbitration clause relating to a specific type of dispute, the clause must be read conservatively if it is subject to more than one interpretation" (*Trump v Refco Properties, Inc.*, 194 AD2d 70, 74, 605 NYS2d 248 [1st Dept 1993]).

Here, the arbitration clause states that:

"Without limiting the Company's or any other Trump Person's right to commence a lawsuit in a court of competent jurisdiction in the State of New York, any dispute arising under or relating to this agreement may, at the sole discretion of each Trump

Supreme Court Records OnLine Library - page 3 of 7

Person, be submitted to binding arbitration in the State of New York pursuant to the rules for commercial arbitrations of the American Arbitration Association, and you hereby agree to and will not contest such submissions. Judgment upon the award rendered by an arbitrator may be entered in any court having jurisdiction" (plaintiff's cross-motion, exh A, ¶ 8b).

As an initial matter, the Court observes that the arbitration clause confines arbitration to "any dispute arising under or relating to this agreement." *It does not* require arbitration for any "dispute between the parties" or even "any dispute arising out of plaintiff's employment." And the agreement itself only includes a specific list of five prohibited acts on plaintiff's part: no disclosure of confidential information, no disparagement, no competitive services, no competitive solicitation and no competitive intellectual property claims (*id.* ¶¶ 1-5). Moreover, the agreement is simply titled "Agreement" – not "Employment Agreement"– and it contains nothing about plaintiff's job responsibilities, terms of her employment, salary, benefits, or her ability to pursue her own claims.

The Court reads the arbitration clause to allow this defendant or a Trump Person[1] to decide whether to commence a lawsuit or an arbitration if plaintiff violated a term of the agreement. There is simply no way to construe this arbitration clause in this agreement to prevent plaintiff from pursuing harassment claims in court. The arbitration clause could have been written to require any disputes arising out of plaintiff's employment to go to arbitration or that any claims brought by plaintiff against defendant must be sent to arbitration. But it did not. Instead, the clause is much narrower: it allows defendant to choose whether to arbitrate any dispute that arises out of the agreement: that is, the list of plaintiff's five prohibited actions. The

---

[1]"'Trump Person' means each of Mr. Trump, each Family Member, each Trump Company (including but not limited to the Company) and each Family Member Company" (*id.* ¶ 6g).

Page 3 of 6

clause cannot be interpreted to apply to plaintiff's *affirmative* claims arising out of her

employment.

Put simply, the subject agreement was limited to plaintiff's conduct with respect to five

specific categories and defendant had the option of court or arbitration if it claimed plaintiff

violated its terms. In this case, no one claims that plaintiff violated the terms that governed

plaintiff's conduct in those five categories; this case is about defendant's conduct in the

employment context. Therefore, neither the agreement nor its arbitration provision has any

application here.

While the Court recognizes that the rules of the American Arbitration Association

("AAA") provide that the arbitrator shall decide questions of arbitrability (*see* Rule 7), the

circumstances of this case do not require this Court to send this matter to an arbitrator. It isn't

even a close question. This narrow arbitration clause, which only applies to the narrow

agreement, simply does not cover the claims asserted in this case. Defendant's behavior, which

is the subject of this litigation, is not subject to arbitration; only plaintiff's behavior as it relates

to those five categories can be arbitrated.

"[A]bsent clear and unmistakable evidence that the parties entered into an agreement that

the arbitrators would decide the arbitrability of their claims, it is a question for the courts" (*Smith*

*Barney, Inc. v Hause,* 238 AD2d 104, 105-106, 655 NYS2d 489 [1st Dept 1997] [internal

quotations and citations omitted]). Although the invocation of the AAA rules would ordinarily

require the arbitrator to decide arbitrability (*see e.g., 21ˢᵗ Century N. America Ins. Co. v Douglas*,

105 AD3d 463, 963 NYS2d 170 [1st Dept 2013] [holding that incorporating AAA rules requires

an arbitrator to decide questions of arbitrability]), the fact is that the Court cannot find clear and

<div align="center">Page 4 of 6</div>

unmistakable evidence that the parties agreed to have an arbitrator decide arbitrability for all

disputes between them. Indeed, they only agreed that defendant could choose to arbitrate if it

claimed plaintiff's conduct violated the agreement in those five categories.

Otherwise, the existence of an arbitration clause between two parties which invokes the

AAA rules, regardless of an agreement's limited scope or applicability, would require an

arbitrator to decide arbitrability. It would create clearly unintended situations. For instance, if a

residential lease contains an arbitration provision with respect to the applicable rent on a renewal

term and the lease invokes the AAA rules, then would an arbitrator have to decide questions of

arbitrability if the tenant fell on the sidewalk because it was improperly maintained? Of course

not. In certain situations, it is clear that the limited agreement is not applicable to the current

dispute. And this is one of those times. Here, the issue is defendant's conduct. With the instant

agreement, which governs five specific aspects of *plaintiff's* conduct, the Court would be

abdicating its responsibility if it deferred the question of arbitrability of *defendant's* conduct to an

arbitrator.


**Summary**

This Court's decision takes no position on the enforceability of any provisions of the

agreement. Instead, this Court finds that the agreement was for a specific purpose– to prohibit

plaintiff from doing certain things– and the arbitration clause states it only applies to that

agreement. It does not apply to plaintiff's employment generally or to her ability to pursue the

claims alleged in this lawsuit. To embrace that broad reading would be in contravention of the

text of the agreement. Quite simply, the agreement only regulates plaintiff's behavior; it does not

Supreme Court Records OnLine Library - page 6 of 7

address defendant's behavior.  Therefore, it is not applicable to plaintiff's current claims.

Plaintiff's cross-motion to amend is granted.


Accordingly, it is hereby

ORDERED that defendant's motion is denied; and it is further

ORDERED that plaintiff's cross-motion for leave to amend the complaint is granted, and

the amended complaint in the proposed form annexed to the cross-motion shall be deemed served

upon service of a copy of this order with notice of entry thereof; and it is further

ORDERED that defendant shall serve an answer to the amended complaint or otherwise

respond within 20 days from the date of said service; and it is further

ORDERED that the parties are directed to appear for a preliminary conference in Room

432 at 60 Centre Street on October 4, 2018 at 2:15 p.m.


Dated: August 7, 2018
        New York, New York

_____
        **ARLENE P. BLUTH, JSC**

        HON. A.

# FILED

### AUG 0 9 2018

COUNTY CLERK'S OFFICE
NEW YORK

Page 6 of 6

# *Hill* v. *Trump Old Post Office LLC*,
# No. 2017 CA 007615 B (D.C. Super Ct. 2017)

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |  |
|---|---|---|
| DOMINIQUE HILL, et al., | ) | |
| | ) | |
|     Plaintiffs, | ) | Civil Action No. 2017 CA 006517 B |
| | ) | |
| v. | ) | Next Event: |
| | ) | Initial Scheduling Conference |
| | ) | December 22, 2017 10:30 AM |
| TRUMP OLD POST OFFICE LLC, | ) | Judge Rankin |
|     and | ) | |
| MICKAEL DAMELINCOURT | ) | |
| 1100 Pennsylvania Ave NW | ) | |
| Washington, DC 20004, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

**DEFENDANTS' MOTION TO DISMISS,**
**OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

Defendants move to dismiss Plaintiffs' claims because each Plaintiff agreed to arbitration as the exclusive forum for all of the claims encompassed within their Complaint, but have refused Defendants' request to honor their respective agreements and transfer these actions to binding arbitration as the proper forum for these disputes.  Instead, Plaintiffs are attempting to circumvent their respective agreements by suing in this Court their alleged "joint employers" (who are not direct signatories to the agreements) without suing their actual employer (which is a direct signatory).  Based the terms of Plaintiffs' signed arbitration agreements and the circumstances alleged in the Complaint, Plaintiffs are required to arbitrate their claims against these Defendants.  Accordingly, as set forth more fully in the supporting Memorandum and the agreements to arbitrate which are appended as exhibits to the Memorandum, Defendants respectfully request that this Court dismiss Plaintiffs' claims, or in the alternative, compel individual arbitration proceedings and stay this case pending arbitration.

A supporting memorandum or points and authorities and a proposed order accompany this motion.

## Superior Court Civil Rule 12-I Certification

1.     As required by Rule 12-I(a) of the Superior Court Rules of Civil Procedure, before Defendants filed this motion undersigned counsel made good faith efforts to obtain Plaintiffs' consent to submit their claims to arbitration instead of pursuing them in court.

2.     By email dated September 5, 2017, in connection with Plaintiff Dominique Hill's ("Hill") administrative charge referenced in the Complaint, Defendants' counsel advised Plaintiffs' counsel that Hill had agreed to arbitrate his claims, and attached a copy of Hill's signed arbitration agreement.  By response email that day, Plaintiffs' counsel refused to arbitrate Hill's claims against the corporate Defendant in this case.

3.     By letter dated October 18, 2017 to Plaintiffs' counsel, Defendants' counsel advised Plaintiffs' counsel that each Plaintiff is required to arbitrate his or her claims in this case, and attached a copy of each Plaintiff's signed arbitration agreement.  By email that day, Plaintiffs' counsel refused to arbitrate Plaintiffs' claims against Defendants.

Respectfully submitted,

November 3, 2017

 /s/ Joseph E. Schuler
Joseph E. Schuler (D.C. Bar No. 296269)
Amanda Vaccaro (D.C. Bar No. 998798)
**JACKSON LEWIS P.C.**
10701 Parkridge Boulevard
Suite 300
Reston, VA, 20191
P: (703) 483-8300
F: (703) 483-8301
schulerj@jacksonlewis.com
Amanda.vaccaro@jacksonlewis.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that, on November 3, 2017, a true and accurate copy of the foregoing *Defendants' Motion To Dismiss, Or In The Alternative, To Stay And Compel Arbitration* was electronically filed with the Clerk's Office using this Court's CaseFileXpress electronic filing system, which will then send a notice of electronic filing (NEF) to the Judge and Plaintiffs' counsel.

/s/ Joseph E. Schuler
Joseph E. Schuler

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | | |
|---|---|---|
| **DOMINIQUE HILL, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 2017 CA 006517 B** |
| | ) | |
| **v.** | ) | **Next Event:** |
| | ) | **Initial Scheduling Conference** |
| | ) | **December 22, 2017 10:30 AM** |
| **TRUMP OLD POST OFFICE LLC, et al.,** | ) | **Judge Rankin** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS THE COMPLAINT,
OR IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

Defendants move to dismiss Plaintiffs' claims because each Plaintiff agreed to arbitration as the exclusive forum for all of the claims alleged in the Complaint. Despite entering into binding agreements to arbitrate these exact types of disputes, Plaintiffs have refused to honor their respective agreements by filing the instant lawsuit instead of submitting their claims to binding arbitration. Moreover, they exercise gamesmanship by purposefully failing to name as a defendant in this lawsuit their *actual* employer, which is a direct signatory to the arbitration agreements, and instead suing only the named Defendants (who are not direct signatories) as alleged "joint employers" of Plaintiffs.

The law, however, does not permit Plaintiffs to so evade their contractual obligation to arbitrate, or to pursue this case in multiple forums. Plaintiffs' arbitration agreements require Plaintiffs to arbitrate their claims against Defendants and preclude them from pursuing their claims in court. Plaintiffs are also equitably estopped from avoiding their arbitration agreements and Defendants are entitled to enforce those agreements. Accordingly, Defendants respectfully request

that this Court dismiss Plaintiffs' Complaint, or in the alternative, compel individual arbitration proceedings and stay this case pending arbitration.

## I.  SUMMARY

Plaintiffs Dominique Hill ("Hill"), Irving Smith, Jr. ("Smith"), and Janette Sturdivant ("Sturdivant") (collectively, "Plaintiffs") are former restaurant employees of BLT Prime DC LLC ("BLT" or "the Restaurant"), which operates a restaurant at the Trump International Hotel, Washington, D.C.  As a condition of employment, each Plaintiff signed an agreement to resolve through arbitration "all disputes, claims or controversies" against the Restaurant, its affiliates, and their employees and agents (collectively, the "Arbitration Agreements").

Plaintiff Hill initially filed an administrative charge with the District of Columbia Office of Human Rights alleging employment discrimination claims against his employer BLT—*not* Defendants—based on the same facts underlying the claims in this Complaint.  After being reminded of his Arbitration Agreement, instead of continuing to pursue claims against BLT, Hill withdrew his administrative charge and, along with plaintiffs Smith and Sturdivant, filed this lawsuit against defendant Trump Old Post Office, LLC ("OPO" or "the Hotel"), which operates Trump International Hotel, Washington, D.C., and its Managing Director, defendant Mickael Damelincourt (collectively, the "Defendants").

In a transparent effort to circumvent their Arbitration Agreements, Plaintiffs have conspicuously *not* named their actual employer, BLT, as a defendant in this lawsuit, and have instead sued OPO under a "joint employer" theory of liability.  Specifically, Plaintiffs allege that OPO exercised significant control over the terms and conditions of Plaintiffs' employment at BLT, both as a joint employer with BLT and pursuant to a contract with BLT.  When describing the alleged unlawful conduct, Plaintiffs do not allege that OPO acted independently.  Rather, Plaintiffs

ascribe alleged discriminatory conduct to BLT's managers and to OPO, and further allege that BLT and OPO engaged in an interdependent, concerted course of conduct based on the Restaurant's allegedly integrated operation and affiliation with the Hotel.

Based on these allegations, OPO is entitled to enforce the Arbitration Agreement directly (as an "affiliate" under the express terms of the Arbitration Agreements), as a third-party beneficiary of the Agreements, and under the doctrine of equitable estoppel. The Arbitration Agreements and governing law do not permit Plaintiffs to "have it both ways" by, on the one hand alleging an interrelationship and affiliation between OPO and BLT as joint employers, while on the other hand refusing to honor the Arbitration Agreements they signed in connection with their employment at BLT.

Further, any dispute regarding application of the Arbitration Agreements to claims against Defendants must be resolved in arbitration. Plaintiffs delegated to an arbitrator the "exclusive authority to resolve all disputes about the interpretation, applicability, enforceability or formation" of the Agreements. Thus, if Plaintiffs dispute whether the Arbitration Agreements apply to claims against Defendants, by Plaintiffs' express agreement it is the province of an *arbitrator*—rather than this Court—to resolve that dispute.

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs Signed Arbitration Agreements Concerning Their Employment at the Restaurant

1.   BLT operates BLT Prime, a Washington D.C. steakhouse located in the lobby of Trump International Hotel, Washington, D.C. (Complaint ("Compl.") p. 2).[1] BLT Prime is referred to herein as the "BLT" or the "Restaurant."

---

[1] For purposes of this Motion and Memorandum, Defendants take the factual allegations in the Complaint as true, without conceding whether any such allegations are true.

2.     The Restaurant employed Hill as a bartender, and employed Smith and Sturdivant as servers.  (Compl. ¶¶ 49, 60, 84).

3.     As a condition of their employment, each Plaintiff signed his or her Arbitration Agreement (attached respectively as Exhibits 1, 2 and 3 to Exhibit A, the Declaration of Debra Mulholland ("Decl."); *see also* Decl. ¶¶ 1, 3).[2]

4.     Under the express terms of the Arbitration Agreements, each Plaintiff and the Restaurant mutually agreed that "all disputes, claims or controversies . . . against the Restaurant that could be brought in a court will be resolved through arbitration."  (*Id.* ¶ 1).

5.     Each Arbitration Agreement defines the "Restaurant" to include "any affiliates and their current and former employees and agents."  (*Id.* ¶ 5).

6.     By signing his or her Arbitration Agreement, each Plaintiff agreed "to pursue all claims on an individual basis only," and "waive[d] [his or her] right to commence or be part of any class or collective claims, or to bring a claim with another person."  (*Id.* ¶ 1).

7.     By signing his or her Arbitration Agreement, each Plaintiff agreed that "[t]he arbitrator will have exclusive authority to resolve all disputes about the interpretation, applicability, enforceability or formation" of the Arbitration Agreement.  (*Id.* ¶ 2).

8.     Each Arbitration Agreement provides the arbitrator "shall have the power to award any type of legal or equitable relief available in a court of competent jurisdiction."  (*Id.*)

9.     The Restaurant agreed to pay for the "arbitration costs and fees," except for an amount equivalent to the cost "of filing a Complaint in federal court."  (*Id.* ¶ 5).

---

[2]  An employer moving to dismiss a case based on the existence of a valid arbitration agreement may attach the arbitration agreement to its motion.  *See, e.g.*, *Brown v. Dorsey &Whitney, LLP*, 267 F. Supp. 2d 61, 67, 83 (D.D.C. 2003) (granting motion to dismiss based on arbitration agreement, where defendant attached arbitration agreement to motion to dismiss).

10.     Each Arbitration Agreement provides that the Employment Rules and Procedures of National Arbitration and Mediation ("NAM Rules") govern the dispute.  (*Id.* ¶ 4).

11.     Each Arbitration Agreement provides a link to access the NAM Rules and notes that the Restaurant has a copy of the NAM Rules.  (*Id.*)

12.     Rule 3 of the NAM Rules states: "If an Employee files a lawsuit in court to resolve claims subject to Arbitration, the Employee agrees that the court shall dismiss the lawsuit and require the Employee to arbitrate the dispute."   NAM Rules, *available at* http://namadr.com/wp-content/uploads/2016/07/Emp-Rules_and_Proced.pdf   (last   visited November 1, 2017).

13.     Despite demand, Plaintiffs refuse to withdraw their Complaint and arbitrate their claims against Defendants.

**B.      Plaintiff Hill Filed an Administrative Charge against BLT—
         But Not OPO—Which Mirrored the Claims in this Complaint**

14.     On May 17, 2017, Hill filed an administrative charge with the D.C. Office of Human Rights[3] (the "Charge"), naming "BLT Prime" as "the Employer . . . that I Believe Discriminated Against Me or Others."  (Exhibit 4 to the Decl.).

15.     The Charge does not name or even mention the Hotel or OPO.  (*See id.*).

16.     In the Charge, Hill alleged that "Respondent" (meaning BLT) hired him as a Bartender.  (*See id.*).

17.     In the Charge, Hill alleged that "[BLT's] Management subjected [him] to

---

[3] Plaintiffs incorporate the Charge by reference in Paragraph 9 of the Complaint, and thus, it is proper for the Court to consider the Charge when evaluating this Motion. *See Pisciotta v. Shearson Lehman Bros.*, 629 A.2d 520, 525 n. 10 (D.C. 1993) (finding appellant properly relied on exhibits in motion to dismiss, because "each exhibit attached to the motion had been referred to in the complaint, so Shearson did not rely on matters outside the complaint to support its motion").

disparate treatment regarding [his] shifts and wages compared to White employees," by offering "better shifts (night shifts) and pay to White similarly situated-employees." (*See id.*).

18.     In the Charge, Hill alleged that "[BLT] terminated [his] employment" for "dropp[ing] a "Bloody Mary" cocktail drink over an infant," but did not terminate a White employee who "dropped a whole bottle of champagne over a bride."  (*See id.*).

19.     In the Charge, Hill "charge[d] [BLT] with unlawful discriminatory acts in violation of . . . the D.C. Human Rights Act of 1977, as amended," based on his race.

20.     On July 24, 2017, Hill withdrew the Charge "to file suit in this Court." (Compl. ¶ 9).

C.     **Plaintiffs Filed this Lawsuit, Alleging the Same
       Claims and Underlying Facts Hill Asserted in His Charge**

21.     On September 20, 2017, Plaintiffs filed the instant lawsuit, alleging Defendants discriminated against them based on their race, by "refus[ing] to allow its African-American staff to work during the more lucrative evening and dinner shifts, thereby depriving African-American staff of higher wages and tips," and by "us[ing] discriminatory hiring, firing and discipline policies amongst its African-American staff."  (Compl. pp. 2-3).

22.     In the lawsuit, Plaintiffs allege Hill "was repeatedly denied the evening shift by Defendants, and was predominately assigned to the morning and/or afternoon shifts."  (Compl. ¶ 53).

23.     Plaintiffs also allege that Hill "was then terminated by the Defendants when . . . [he] dropped a *Bloody Mary* cocktail on the side of a baby carriage" (Compl. ¶ 55), yet Defendants did not terminate a "Caucasian female" when she "spilled an entire bottle of wine on a bride's dress."  (Compl. ¶ 78).

24.     The Complaint alleges employment law claims against Defendants for

allegedly violating the D.C. Human Rights Act through: (1) race discrimination; (2) disability discrimination; (3) hostile work environment; and (4) retaliation.  (Compl. ¶¶ 156-194).  Each of these employment claims falls squarely within the scope of the Arbitration Agreements.

**D.    Plaintiffs Allege OPO Controlled the Terms**
**and Conditions of Their Employment**

The Complaint contains the following allegations that OPO exercised control over Plaintiffs as a joint employer with BLT:

25.    OPO "has a management agreement or management contract with BLT Prime (BLT), and to that end, oversees and manages BLT's operations, and has control over BLT's employees and staff, the power to hire and fire BLT employees and/or recommend them for termination and discipline."  (Compl. ¶ 5).

26.    "Damelincourt, . . . the Director of Operations at [the Hotel] . . . exercised significant and substantial authority to determine the Plaintiffs' work hours, number of guests and diners served and had the power to recommend, terminate and discipline BLT employees. Damelincourt . . . is an agent of [OPO] . . ."  (Compl. ¶ 8; *see also* ¶¶ 26-43).

27.    OPO "manage[s] all aspects of the [BLT] restaurant," and "tell[s] BLT what to do."  (Compl. ¶ 26).

28.    BLT "has a financial relationship or contractual relationship with [OPO]." (Compl. ¶ 24).

29.    OPO obtains "profit and earnings from patronage at BLT."  (Compl. ¶ 95).

30.    Plaintiffs' "employment and duties directly or indirectly benefit both BLT and [the Hotel]."  (Compl. ¶ 25).

31.    "[B]ecause of its extensive control, [the Hotel] is a ***joint employer*** of the Plaintiffs."  (Compl. ¶ 44) (emphasis added).

32.     The tools of the trade and uniforms used by Plaintiffs are provided by the Hotel and emblazoned with its names or logos.  (*See* Compl. ¶¶ 29-30).

E.     **Plaintiffs Allege OPO and BLT Acted**
        **Jointly to Violate Plaintiffs' Rights**

The Complaint contains the following allegations that BLT and OPO acted jointly to violate Plaintiffs' rights:

33.     Plaintiffs allege Defendants discriminated against them through "preferential treatment of work assignments, selective use of the discipline policy and/or racist comments and language."  (Compl. ¶ 162).

34.     The Hotel's "management" told BLT to assign day shifts to its African-American and minority employees and evening shifts to its Caucasian employees.  (Compl. ¶ 104).

35.     "BLT and [the Hotel] continued to hire Caucasian staff for the evening shift."  (Compl. ¶ 100).

36.      "BLT did not follow steps 1-4 of its progressive discipline policy when they immediately terminated Hill and Sturdivant."  (Compl. ¶ 73).

37.     "Damelincourt and/or other employees of [the Hotel] played a part in disciplining Hill and not disciplining [his alleged comparator]."  (Compl. ¶ 81).

38.     "BLT was told to terminate Hill by Damelincourt or other members of [the Hotel]."  (Compl. ¶ 77).

39.     Defendants allegedly directed where BLT's staff could eat, congregate, enter and leave the building.  (Compl. ¶¶ 122, 124, 126).

40.     In support of their retaliation claim, Plaintiffs allege they "complained to BLT management of the discriminatory work assignments" (Compl. ¶ 99; *see also* ¶¶ 110, 189), after which BLT "consulted with the management team at [the Hotel]."  (Compl. ¶ 113).  BLT

subsequently increased their wages, as "authorized" by "the management team at [the Hotel]." (Compl. ¶ 113).

41.     Plaintiffs do not allege that they complained to Defendants about any allegedly unlawful conduct.  Yet Plaintiffs claim they "engaged in protected activities . . . under the DCHRA . . . by complaining about their discriminatory work practices to their superiors *within the organization*."  (Compl. ¶ 189) (emphasis added).

## III.   LEGAL ARGUMENT

### A.   Federal and District of Columbia Law Mandate that Plaintiffs' Claims Be Arbitrated

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., provides in relevant part that "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable and enforceable …."  9 U.S.C. § 2.  In the Arbitration Agreements, Plaintiffs agreed to resolve their disputes by binding arbitration under the FAA and that these Agreements are "governed by the Federal Arbitration Act."  (*See* Exh. 1, 2 and 3 to Exh. A, Declaration of Debra Mullholland).  On their face, the Arbitration Agreements state Plaintiff's agreement that the FAA applies; accordingly, the Court's examination of the Arbitration Agreements is controlled by the FAA. [4]

The FAA establishes a national policy favoring arbitration where, as here, a party contracts for that mode of dispute resolution.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); 9 U.S.C. §§ 1 *et seq*.  *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (FAA created "liberal federal policy

---

[4] The FAA also applies here because the FAA applies to every contract "involving commerce," including Plaintiffs' Arbitration Agreements.  *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 55-58 (2003); 9 U.S.C. § 2.

favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary"). The FAA mandates that a court must order arbitration when it is satisfied that the execution of an arbitration agreement is not at issue. 9 U.S.C. § 4. *See also, e.g., Dean Witter Reynolds, Inc.*, 470 U.S. at 218 (citing 9 U.S.C. §§ 3, 4). Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25.

Further, even if the FAA did not apply here (and it does), District of Columbia law mirrors the FAA's policy favoring arbitration, and D.C. courts routinely enforce arbitration agreements in the employment context, recognizing a "well-established preference for arbitration when the parties have expressed a willingness to arbitrate." *See, e.g., Parker v. K&L Gates, LLP*, 76 A.3d 859, 871 (D.C. 2013) (affirming trial court's ruling enforcing arbitration agreement with respect to claims arising from employment); *Friend v. Friend,* 609 A.2d 1137, 1139 (D.C. 1992) ("[C]ourts will presume that an arbitration clause agreed upon by the parties was intended to foreclose judicial involvement in their disputes.").

By signing the Arbitration Agreements, Plaintiffs expressed a willingness to arbitrate their claims in this case and to foreclose judicial involvement in their disputes with the Restaurant and its affiliates, including but not limited to all "employment related disputes" that are not resolved by informal efforts. (*See* Arbitration Agreements.) Without question, Plaintiffs' claims fall within the broad scope of the Arbitration Agreements. Because Plaintiffs agreed to arbitration, and because each of their claims fall within the scope of their Arbitration Agreements, the Court should dismiss this case, or alternatively, order Plaintiffs to individually arbitrate their claims.

**B.**    **The Arbitration Agreements Apply to**
         **Plaintiffs' Claims against OPO and Damelincourt**

    **1.**    **OPO Is an "Affiliate" of BLT**

To the extent Plaintiffs argue that they are not required to arbitrate their claims against Defendants because Defendants were not direct signatories to the Arbitration Agreements, this argument fails because the Arbitration Agreements expressly apply to Plaintiffs' claims against Defendants. Plaintiffs agreed to arbitrate all claims that could be brought in court against the Restaurant, including claims against "any affiliates and their current and former employees and agents." (Arbitration Agreement, ¶¶ 1, 5).

Defendants OPO and Damelincourt are covered by the Arbitration Agreements as an "affiliate" of BLT and as a current employee and agent of such affiliate, respectively. Used as a noun, the term "affiliate" commonly refers to one who has "associated with" another, or as an "affiliated person or organization." *See* Definition of "Affiliate" in Merriam-Webster, available at  https://www.merriam-webster.com/dictionary/affiliate  (last visited Oct. 31, 2017). To "affiliate" means (among other meanings), "to connect or associate oneself—usually used with *with*." Common synonyms are "related" and "allied."[5] *Id.*

Plaintiffs refer to OPO and BLT, the Hotel and the Restaurant within and affiliated with the Hotel, as a united entity—"the organization." (Compl. ¶ 189). Indeed, Plaintiffs claim OPO extensively controls the terms and conditions of Plaintiffs' employment per the terms of a management agreement between OPO and BLT, to such a degree that OPO is Plaintiffs' joint

---

[5] While not immediately relevant here, in the legal context, Merriam-Webster also defines "affiliate" as "a business entity effectively controlling or controlled by another or associated with others under common ownership or control." *Id.* Similarly, Black's Law Dictionary defines "affiliate" as referring to a corporation that is "related to another corporation by shareholdings or other means of control." Black's Law Dictionary 10th ed. 2014. This sort of "control" is precisely what Plaintiffs allege in this case.

employer.  Plaintiffs also claim OPO effectively controlled BLT by directing BLT to engage in much of the alleged conduct underlying Plaintiffs' claims against Defendants, including (a) assigning African-American employees only to evening shifts, (b) diverging from BLT's progressive discipline policy when terminating Hill and Sturdivant, and (c) mandating where BLT's African-American employees could eat, congregate, enter and leave the worksite.

Based on Plaintiffs' allegations and the plain meaning of the term, OPO necessarily constitutes as an "affiliate" of BLT for purposes of the disputes raised by the Complaint. Moreover, there is no dispute that Damelincourt is OPO's employee or agent.  Accordingly, pursuant to the express terms of their Arbitration Agreements, Plaintiffs are required to arbitrate their claims against OPO and Damelincourt.  Plaintiffs have expressly agreed to arbitration as the exclusive forum for dispute resolution to the exclusion of court.  This Court must enforce the Arbitration Agreements and hold Plaintiffs to their binding promises pursuant to the "well-established preference for arbitration when the parties have expressed a willingness to arbitrate." *See, e.g., Parker* 76 A.3d at 871; *Friend,* 609 A.2d at 1139.

### 2.      Defendants Are Third-Party Beneficiaries of the Arbitration Agreements

Defendants are also entitled to enforce the Arbitration Agreements as third-party beneficiaries.  Under District of Columbia law, a third party may sue to enforce contract provisions if the contracting parties intended for the third party to benefit directly from the contract. *Kelleher v. Dream Catcher, L.L.C.*, 2017 U.S. Dist. LEXIS 164381, at *4 (D.D.C. Oct. 4, 2017) (citing *Hossain v. JMU Props., LLC*, 147 A.3d 816, 820 (D.C. 2016)).  A third party need not be named in the contract itself to qualify as an intended beneficiary, but his or her identity must be ascertainable from either the terms of the contract or the circumstances surrounding its creation. *Id.* (citing *Hossain)*; *see also Western Union Tel. Co. v. Massman Constr. Co.*, 402 A.2d 1275,

1277 (D.C. 1979) (finding that non-signatory was third-party beneficiary of contract, explaining: "the absence of the third party's name from the contract is not fatal to his claim, especially when the surrounding circumstances tend to identify the third-party beneficiary").

In *Kelleher*, the plaintiff agreed to arbitrate claims against the corporate defendant; the individual defendants were not signatories to this agreement.  Nevertheless, the court found that individual defendants qualified as third-party beneficiaries to the arbitration agreement, because the plaintiff was "clearly aware that Individual Defendants 'stood to benefit' from the Contract's creation," as the plaintiff had alleged the "Individual Defendants . . . controlled Dream Catcher, made all material decisions affecting Dream Catcher, and dominated the conduct of Dream Catcher." *Id.* at *6-7.

Here, Plaintiffs allege **Defendants** employed them; thus, the "circumstances surrounding the creation" of the Arbitration Agreements mean that OPO stood to benefit from Plaintiffs' agreement to arbitrate all claims arising from their employment at the Restaurant located within the Hotel.   In fact, Plaintiffs specifically allege their "employment and duties directly or indirectly benefit both BLT and the Trump Hotel."  (Complaint ¶ 25).  Plaintiffs also allege OPO controlled the Restaurant with respect to their employment, made decisions affecting the Restaurant, dominated the conduct of the Restaurant, and profited from the Restaurant.

Moreover, the Arbitration Agreements specifically refer to "affiliates and their current and former employees and agents" as encompassed within the term "the Restaurant."  Thus, to the extent the Court finds that Defendants are not parties to the agreements because they are not signatories as such, it must nonetheless find that they may enforce the Arbitration Agreements in their own right as intended beneficiaries identified in the agreements.

For these reasons, Defendants are in the alternative entitled to enforce the Arbitration

Agreements as third-party beneficiaries.

3.    **Plaintiffs Are Equitably Estopped**
        **from Refusing to Arbitrate Their Claims**

a.    **A Non-Signatory May Compel Arbitration**
        **of Claims Involving Alleged Concerted Misconduct**
        **Between the Non-Signatory and a Signatory**

Under the principles of equitable estoppel, a non-signatory to an arbitration agreement may compel a signatory to arbitrate where "the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999); *accord Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 373 (4th Cir. 2012) (same); *Grigson v. Creative Artists Agency*, L.L.C., 210 F.3d 524, 527 (5th Cir. 2000) (same); *Khan v. Parsons Global Servs.*, 480 F. Supp. 2d 327, 341 (D.D.C. 2007) (same), rev'd on other grounds, 521 F.3d 421 (D.C. Cir. 2008). *See also CD Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005) ("The courts clearly recognize a nonsignatory's ability to force a signatory into arbitration under the 'alternative' estoppel theory when the relationship of the persons, wrongs and issues involved is a close one."); *Astra Oil Co. v. Rover Navigation, Ltd.*, 344 F.3d 276, 279-80 (2nd Cir. 2003) (holding a nonsignatory may compel arbitration against a signatory to an arbitration agreement because of the nonsignatory's close affiliation with the other signatory party to the agreement).[6]

---

[6] As set out above, the Arbitration Agreements specify that they are governed by the FAA. *See* Exhibits 1, 2 and 3 to the Decl. Thus, federal law should apply to place the agreements on equal footing with any other contract, subject to generally applicable contract principles. *See, e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Subject to this principle, to the extent that District of Columbia law applies, the Court of Appeals has routinely held that Federal court decisions applying the FAA may be regarded as persuasive authority in construing and applying the corresponding provisions of the District of Columbia Arbitration Act. *See, e.g., Giron v. Dodds*, 35 A.3d 433 (D.C. 2012); *Bolton v. Bernabai & Katz*, PLLC, 954 A.2d 953 (D.C. 2008).

In *Ragone v. Atlantic Video*, 595 F.3d 115 (2nd Cir. 2010), the plaintiff brought sexual harassment claims against her employer, AVI, and its client, ESPN. *Id*. at 119. She had signed an arbitration agreement with AVI, which did not reference ESPN "expressly or by implication." *Id.* The U.S. Court of Appeals for the Second Circuit nonetheless enforced the arbitration agreement as to plaintiff's claims against non-signatory ESPN, because she knew ESPN would effectively be her "co-employer," and her claims against AVI and ESPN were factually intertwined, such that it was appropriate to send the entire dispute to arbitration. *Id.* at 127-28. In particular, the court emphasized that the plaintiff's "knowledge that she would extensively treat with ESPN personnel is sufficient to demonstrate the existence of a relationship between [plaintiff] and ESPN that allows the latter to avail itself of the arbitration agreement between [plaintiff] and AVI." *Id.* at 128. Accordingly, the court affirmed the district court's conclusion that the plaintiff was equitably estopped from avoiding arbitration with ESPN. *Id.*

Likewise, in *Aggarao,* the U.S. Court of Appeals for the Fourth Circuit affirmed a decision requiring plaintiff, who worked on a ship, to arbitrate claims against unrelated non-signatories that owned or chartered the ship, based on equitable estoppel, because: (a) the plaintiff alleged all three companies were his "employer"; (b) the signatory and non-signatories allegedly engaged in "coordinated behavior," "instigating and contributing to one another;" and (c) the claims against all three companies were "based on the same facts," were "inherently inseparable," and fell within the scope of the arbitration clause. *Aggarao,* 675 F.3d at 373-74; *see also Khan*, 480 F. Supp. 2d at 341 (applying estoppel to enforce the arbitration agreement as to non-signatory defendants who allegedly employed plaintiff according to the allegations in his complaint).

So too here. Plaintiffs allege Defendants were their "employer." Plaintiffs allege BLT and OPO hired employees to work at the Restaurant located in the Hotel. Thus, by their own account,

from the outset of their employment with the Restaurant, Plaintiffs knew they would be working

closely with, and under the direction of, OPO employees.  Plaintiffs further allege Defendants

engaged in coordinated behavior with BLT that violated Plaintiffs' rights under the DCHRA.  The

allegations in Hill's Charge against BLT mirror Plaintiffs' allegations against Defendants in this

lawsuit, demonstrating that Plaintiffs' claims against OPO and BLT are based on the same facts

and inherently inseparable.  By suing Defendants (but not BLT) after being reminded of the

Arbitration Agreements, Plaintiffs tacitly acknowledge that their claims fall within the scope of

the Arbitration Agreements.[7]

In sum, under principles of equitable estoppel, Plaintiffs are barred from attempting to

circumvent their Arbitration Agreements by suing Defendants for actions they allegedly took

interdependently and concertedly with BLT arising from their employment.

> **b.      Courts Have Also Required Signatories to Arbitrate
> Claims against Non-Signatories Based on the
> Alleged Business Dealings between the Two Entities**

A non-signatory may invoke equitable estoppel to enforce an arbitration agreement against

a signatory that shares no common ownership, based on the alleged business dealings between the

two entities.  In *Riley v. BMO Harris Bank, N.A.*, 61 F. Supp. 3d 92, 94 (D.D.C. 2014), the plaintiffs

sued banks for withdrawing payments from the plaintiffs' accounts pursuant to loan agreements

---

[7] In fact, upon filing this lawsuit, Plaintiffs' counsel was quoted in a news publication as stating that Plaintiffs were ***already*** pursuing their claims against BLT in arbitration, as required by their Arbitration Agreements: "The workers are also presenting claims against BLT before an arbitrator because they signed an arbitration agreement with the restaurant, their lawyer, A.J. Dhali with Dhali PLLC in Washington, told Bloomberg BNA Sept. 21. They filed a lawsuit in court against the hotel because they didn't sign an arbitration agreement with the hotel, he said."  "Trump Hotel in D.C. Discriminates, Black Servers Say," Bloomberg BNA (Sept. 21, 2017), available at https://www.bna.com/trump-hotel-dc-n73014464302/ (last visited Nov. 1, 2017).  This statement further demonstrates the bad-faith gamesmanship of Plaintiffs' counsel in filing the instant lawsuit against Defendants, recognizing the existence of binding Arbitration Agreements.

between the plaintiffs and payday lenders.  The loan agreements contained arbitration provisions requiring plaintiffs to arbitrate their claims against the lenders and their "affiliates" and "agents." *Id*. at 102.  Despite not having signed the loan agreements, the banks moved to compel arbitration, citing equitable estoppel.  *Id.* at 98.  The court granted the banks' motion and dismissed the plaintiffs' claims, explaining that, based on the alleged business relationship between the banks and the lenders, and the references to unidentified "affiliated entities" in the arbitration provisions, the plaintiffs effectively agreed to arbitrate their claims against the banks.  *Id.* at 101-02.  The court emphasized that the plaintiffs' express willingness to arbitrate claims against an "unidentified, but expansive class of entities conducting business with the lenders" barred the plaintiff from "deny[ing] the foreseeability of having to arbitrate her claims against [the banks]."  *Id.*

So too here.  Plaintiffs are equitably estopped from seeking to avoid their Arbitration Agreements, and must pursue their claims in arbitration.

### c. Allowing Plaintiffs to Litigate Their Claims against Defendants in Court Would Deprive BLT of the Benefit of the Arbitration Agreements

Declining to enforce the Arbitration Agreements would also violate equitable principles of fairness toward BLT.  In *Grigson*, the plaintiff initially sued companies that had signed an arbitration agreement.  When one of those parties moved to compel arbitration, the plaintiff filed a second lawsuit exclusively against non-signatories to the arbitration agreement, who had no shared ownership with the signatories.  *See* 210 F.3d at 526.  The U.S. Court of Appeals for the Fifth Circuit affirmed the district court's decision requiring the signatories to arbitrate their claims against non-signatories, explaining that the alleged concerted misconduct involving the signatories and non-signatories would require the signatories to effectively defend themselves in litigation:

> [I]t would be especially inequitable where, as here, a signatory non-defendant is charged with interdependent and concerted misconduct

> with a non-signatory defendant. In such instances, that signatory, in essence, becomes a party, with resulting loss, inter alia, of time and money because of its required participation in the proceeding. Concomitantly, detrimental reliance by that signatory cannot be denied: it and the signatory-plaintiff had agreed to arbitration in lieu of litigation (generally far more costly in terms of time and expense); but, the plaintiff is seeking to avoid that agreement by bringing the action against a non-signatory charged with acting in concert with that non-defendant signatory.

*Id.* at 528.  Here, too, declining to enforce the Arbitration Agreements would deprive BLT of the benefit of its bargain with Plaintiffs by requiring BLT to effectively defend itself in this litigation.

For all these reasons, Plaintiffs are equitably estopped from skirting their contractual duty to arbitrate their claims against Defendants.

**B.    Plaintiffs Delegated Exclusive Authority
to Resolve Disputes about the Applicability
of the Arbitration Agreement to an Arbitrator**

Plaintiffs cannot challenge the application of the Arbitration Agreements in this Court. Plaintiffs expressly delegated the issue of arbitrability to the arbitrator.

The U.S. Supreme Court has held that parties may assign the authority to decide questions of arbitrability to an arbitrator, not the courts.  In *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010), the Supreme Court held that a "delegation provision" assigning the authority to decide gateway questions of arbitrability to an arbitrator is itself an agreement to arbitrate, and must be treated as valid and enforced by courts unless it is specifically challenged apart from the remainder of the agreement to arbitrate.  *See also W&T Travel Servs., LLC v. Priority One Servs.*, 69 F. Supp. 3d 158, 166 (D.D.C. 2014) (granting motion to dismiss claims subject to arbitration, citing *Rent-A-Center, W., Inc.*).

Here, by signing the Arbitration Agreements, each Plaintiff explicitly agreed that an arbitrator "will have exclusive authority to resolve all disputes about the interpretation,

applicability, enforceability or formation of this agreement." (Arbitration Agreement ¶ 5). As a result, if Plaintiffs dispute whether the Arbitration Agreements apply to their claims against Defendants, this issue must be presented to an arbitrator rather than this Court.[8]

Accordingly, the Plaintiffs' agreement to leave to the arbitrator "all disputes about the interpretation, applicability, enforceability or formation of this agreement" is permissible under the Act and must be enforced.

## IV.     **CONCLUSION**

For these reasons and based on Plaintiffs' Arbitration Agreements, Defendants OPO and Damelincourt ask this Court to dismiss Plaintiffs' claims, or in the alternative, to stay Plaintiffs' claims and compel individual arbitration of Plaintiffs' claims.

Respectfully submitted,

November 3, 2017

 /s/ Joseph E. Schuler
Joseph E. Schuler (D.C. Bar No. 296269)
Amanda Vaccaro (D.C. Bar No. 998798)
**JACKSON LEWIS P.C.**
10701 Parkridge Boulevard
Suite 300
Reston, VA, 20191
P: (703) 483-8300
F: (703) 483-8301
schulerj@jacksonlewis.com
Amanda.vaccaro@jacksonlewis.com

*Attorneys for Defendants*

---

[8] The decisions cited above enforcing a delegation provision apply the FAA. Delegation provisions are also enforceable under the District of Columbia's Revised Uniform Arbitration Act (the "Act"). While the Act provides that "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate," (D.C. Code § 16-4406(b)), it also provides that, "a party to an agreement to arbitrate or to an arbitration proceeding may waive or, the parties may vary the effect of, the requirements of this chapter to the extent permitted by law." D.C. Code § 16-4404(b).

## CERTIFICATE OF SERVICE

I CERTIFY that, on November 3, 2017, a true and accurate copy of the foregoing *Memorandum In Support Of Defendant Defendants' Motion To Dismiss, Or In The Alternative, To Stay And Compel Arbitration* was electronically filed with the Clerk's Office using this Court's CaseFileXpress electronic filing system, which will then send a notice of electronic filing (NEF) to the Judge and Plaintiffs' counsel.

   /s/ Joseph E. Schuler
Joseph E. Schuler

4842-6277-0003, v. 8

# Exhibit A

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

|  |  |  |
|---|---|---|
| DOMINIQUE HILL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 2017 CA 006517 B |
| | ) | |
| v. | ) | **Next Event:** |
| | ) | **Initial Scheduling Conference** |
| | ) | **December 22, 2017 10:30 AM** |
| TRUMP OLD POST OFFICE LLC, et al., | ) | **Judge Rankin** |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF DEBRA MULHOLLAND

I, Debra Mulholland, am over 18 years of age and I am competent to testify to the matters contained in this Declaration. I declare as follows:

1.  I am the Talent Strategy Manager for ESquared Hospitality LLC, which provides administrative support for BLT Prime by David Burke (the "Restaurant") and the employees who work at the Restaurant. In my role, I am responsible for human resources functions, among other things, including employment policies and records.

2.  In this capacity I am familiar with the Restaurant's Agreement To Resolve Disputes By Arbitration ("Arbitration Agreement").

3.  Restaurant employees must sign the Arbitration Agreement as a condition of their employment with the Restaurant. Upon execution, such signed Arbitration Agreements are delivered to the human resources function.

4.  I am responsible for maintaining Restaurant employees' signed Arbitration Agreements and related records.

5.      The document attached as Exhibit 1 is a true and accurate copy of Plaintiff Dominique Hill's signed Arbitration Agreement.

6.      The document attached as Exhibit 2 is a true and accurate copy of Plaintiff Irving Smith, Jr.'s signed Arbitration Agreement.

7.      The document attached as Exhibit 3 is a true and accurate copy of Plaintiff Janette Sturdivant's signed Arbitration Agreement.

8.      In my role at ESquared Hospitality LLC, I am also responsible for receiving and coordinating the Restaurant's response to any administrative charge filed against the Restaurant with the District of Columbia Office of Human Right ("DCOHR") and served on the Restaurant by the DCOHR.

9.      The document attached as Exhibit 4 is a true and accurate copy of the administrative charge that Plaintiff Dominique Hill filed against Restaurant with the DCOHR.

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct and based on my personal knowledge.

Executed this 3 day of November, 2017.

DEBRA MULHOLLAND

# Exhibit 1



# AGREEMENT TO RESOLVE DISPUTES

## BY ARBITRATION

The Restaurant tries to work with employees to resolve differences promptly when they arise. Employees should first try to resolve their disputes informally by speaking with their supervisor. If you do not feel comfortable approaching your supervisor, the Restaurant encourages you to seek assistance from Human Resources staff or other members of the Restaurant's management team. If these informal efforts aren't successful, you agree to refer employment related disputes to the arbitration process described below.

1. *Overview.* You and the Restaurant agree that (except for "Excluded Claims" which are described below), all disputes, claims or controversies ("claims") against the Restaurant that could be brought in a court will be resolved through arbitration. This Agreement applies to all federal, state and local laws, regulations, common law claims and claims for costs, attorneys' fees and expenses, and is governed by the Federal Arbitration Act to the maximum extent permitted by law.

"Excluded Claims" include claims for workers' or unemployment compensation benefits, claims under any of the Restaurant's equity plans or other pension or welfare benefit plans containing its own procedure for resolving plan disputes, and all other claims that legally are not subject to mandatory binding pre-dispute arbitration under the Federal Arbitration Act. This agreement does not prohibit you from filing complaints with agencies such as the National Labor Relations Board or the Equal Opportunity Commission.

You agree to pursue all claims on an individual basis only. You waive your right to commence or be a part of any class or collective claims, or to bring a claim with another person. The arbitrator has no power to consolidate claims or adjudicate a class or collective action. Nothing in this Agreement limits your right to challenge its enforceability, including the enforceability of the waiver above. While the Restaurant will assert that individual arbitration is required, to the extent that filing of such an action is protected concerted activity under the National Labor Relations Act, the filing will not result in threats, discipline or discharge.

2. *Arbitrator's Authority.* The arbitrator will have exclusive authority to resolve all disputes about the interpretation, applicability, enforceability or formation of this agreement (except for any determination about the enforceability of the class/collective action waiver, which will be made solely by a court). If the prohibition against class/collective action is deemed unlawful, then that action may proceed in a court in that form. If an arbitrator finds any other provision of this Agreement unenforceable, then the arbitrator or a court shall interpret or modify the agreement as required for it to be enforceable, and the Agreement shall immediately, automatically and retroactively be amended accordingly.

The decision of the arbitrator will be final and binding. The arbitrator shall have the power to award any type of legal or equitable relief available in a court of competent jurisdiction. Any relief or

recovery for any claim covered by this agreement will be limited to that awarded by the arbitrator. All orders of the arbitrator (except for evidentiary rulings at the arbitration) must be in writing, and may be reviewed under the Federal Arbitration Act.

3. *Time Periods.* If the claim is one that could be filed with an administrative agency, then the arbitration must be brought within the time in which the administrative charge or complaint would have been filed. If the arbitration raises an issue that could not have been filed with an administrative agency, then the demand for arbitration must be filed within the time set by the applicable statute of limitations.

4. *Specific Arbitration Provisions.* A single arbitrator in accordance with the Employment Rules and Procedures of National Arbitration and Mediation ("NAM") will hear the dispute. All arbitrators or members of the appeal panel must be members of the bar in good standing. The Restaurant has a copy of these rules, or you may contact NAM to request a copy of the rules by calling (800) 358-2550 or viewing the rules on the NAM website (www.namadr.com). If for whatever reason NAM declines to act, the parties will use Judicial Arbitration and Mediation Services (JAMS) (www.jamsadr.com) and will use its employment arbitration rules.

The arbitrator shall apply the Federal Rules of Civil Procedure (except for Rule 23) and the Federal Rules of Evidence as interpreted in the jurisdiction where the arbitration is held. There shall be one arbitrator for the matter up and through determination of a motion for summary judgment. If such a motion is made, the arbitrator must render a written and detailed opinion within sixty calendar days of submission of all supporting and opposition papers. If the summary judgment is in any part denied, the case shall proceed to hearing before another arbitrator who did not hear the summary judgment motion. That arbitrator shall be selected from a new panel to be provided by NAM (or if JAMS if applicable). To the extent there is any conflict between this Agreement and the arbitration rules of NAM or JAMS, this Agreement shall control.

The arbitration will take place in the county in which the employee was employed. The Restaurant will pay for the arbitration costs and fees imposed, except that You will be responsible for costs equal to the cost of filing a Complaint in federal court.

5. *Other matters.* "The Restaurant" includes any affiliates and their current and former employees and agents. "You" or "your" includes you, as well as your heirs, administrators or executors. Nothing in this Agreement is intended to create a contract of employment for a specific duration. This Agreement will be governed by and interpreted in accordance with the laws of the state in which you are employed by the Restaurant. Nothing precludes you from challenging the enforceability of this Agreement; however, the Restaurant will assert that you have agreed to pursue all claims individually in arbitration. The consideration for entering into this Agreement includes its mutuality, and your continued employment and/or your accepting employment with the Restaurant. You agree that this consideration is sufficient to support the Agreement.

I KNOWINGLY AND FREELY AGREE TO THIS MUTUAL AGREEMENT TO ARBITRATE CLAIMS WHICH OTHERWISE COULD HAVE BEEN BROUGHT IN COURT.  I AFFIRM THAT I HAVE HAD SUFFICIENT TIME TO READ AND UNDERSTAND THIS AGREEMENT AND THAT I HAVE BEEN ADVISED OF MY RIGHT TO SEEK LEGAL COUNSEL REGARDING THE MEANING AND EFFECT OF THIS AGREEMENT PRIOR TO SIGNING. THE RESTAURANT AGREES TO BE BOUND TO ITS TERMS WITHOUT ANY REQUIREMENT TO SIGN THIS AGREEMENT.

_____          __8-16-16__
Employee                            Date

4830-2958-1857. v  1

# Exhibit 2



# Agreement to Resolve Disputes

## By Arbitration

The Restaurant tries to work with employees to resolve differences promptly when they arise. Employees should first try to resolve their disputes informally by speaking with their supervisor. If you do not feel comfortable approaching your supervisor, the Restaurant encourages you to seek assistance from Human Resources staff or other members of the Restaurant's management team. If these informal efforts aren't successful, you agree to refer employment related disputes to the arbitration process described below.

1. **Overview.** You and the Restaurant agree that (except for "Excluded Claims" which are described below), all disputes, claims or controversies ("claims") against the Restaurant that could be brought in a court will be resolved through arbitration. This Agreement applies to all federal, state and local laws, regulations, common law claims and claims for costs, attorneys' fees and expenses, and is governed by the Federal Arbitration Act to the maximum extent permitted by law.

"Excluded Claims" include claims for workers' or unemployment compensation benefits, claims under any of the Restaurant's equity plans or other pension or welfare benefit plans containing its own procedure for resolving plan disputes, and all other claims that legally are not subject to mandatory binding pre-dispute arbitration under the Federal Arbitration Act. This agreement does not prohibit you from filing complaints with agencies such as the National Labor Relations Board or the Equal Opportunity Commission.

You agree to pursue all claims on an individual basis only. You waive your right to commence or be a part of any class or collective claims, or to bring a claim with another person. The arbitrator has no power to consolidate claims or adjudicate a class or collective action. Nothing in this Agreement limits your right to challenge its enforceability, including the enforceability of the waiver above. While the Restaurant will assert that individual arbitration is required, to the extent that filing of such an action is protected concerted activity under the National Labor Relations Act, the filing will not result in threats, discipline or discharge.

2. **Arbitrator's Authority.** The arbitrator will have exclusive authority to resolve all disputes about the interpretation, applicability, enforceability or formation of this agreement (except for any determination about the enforceability of the class/collective action waiver, which will be made solely by a court). If the prohibition against class/collective action is deemed unlawful, then that action may proceed in a court in that form. If an arbitrator finds any other provision of this Agreement unenforceable, then the arbitrator or a court shall interpret or modify the agreement as required for it to be enforceable, and the Agreement shall immediately, automatically and retroactively be amended accordingly.

The decision of the arbitrator will be final and binding. The arbitrator shall have the power to award any type of legal or equitable relief available in a court of competent jurisdiction. Any relief or

recovery for any claim covered by this agreement will be limited to that awarded by the arbitrator. All orders of the arbitrator (except for evidentiary rulings at the arbitration) must be in writing, and may be reviewed under the Federal Arbitration Act.

3. *Time Periods.* If the claim is one that could be filed with an administrative agency, then the arbitration must be brought within the time in which the administrative charge or complaint would have been filed. If the arbitration raises an issue that could not have been filed with an administrative agency, then the demand for arbitration must be filed within the time set by the applicable statute of limitations.

4. *Specific Arbitration Provisions.* A single arbitrator in accordance with the Employment Rules and Procedures of National Arbitration and Mediation ("NAM") will hear the dispute. All arbitrators or members of the appeal panel must be members of the bar in good standing. The Restaurant has a copy of these rules, or you may contact NAM to request a copy of the rules by calling (800) 358-2550 or viewing the rules on the NAM website (www.namadr.com). If for whatever reason NAM declines to act, the parties will use Judicial Arbitration and Mediation Services (JAMS) (www.jamsadr.com) and will use its employment arbitration rules.

The arbitrator shall apply the Federal Rules of Civil Procedure (except for Rule 23) and the Federal Rules of Evidence as interpreted in the jurisdiction where the arbitration is held. There shall be one arbitrator for the matter up and through determination of a motion for summary judgment. If such a motion is made, the arbitrator must render a written and detailed opinion within sixty calendar days of submission of all supporting and opposition papers. If the summary judgment is in any part denied, the case shall proceed to hearing before another arbitrator who did not hear the summary judgment motion. That arbitrator shall be selected from a new panel to be provided by NAM (or if JAMS if applicable). To the extent there is any conflict between this Agreement and the arbitration rules of NAM or JAMS, this Agreement shall control.

The arbitration will take place in the county in which the employee was employed. The Restaurant will pay for the arbitration costs and fees imposed, except that You will be responsible for costs equal to the cost of filing a Complaint in federal court.

5. *Other matters.* "The Restaurant" includes any affiliates and their current and former employees and agents. "You" or "your" includes you, as well as your heirs, administrators or executors. Nothing in this Agreement is intended to create a contract of employment for a specific duration. This Agreement will be governed by and interpreted in accordance with the laws of the state in which you are employed by the Restaurant. Nothing precludes you from challenging the enforceability of this Agreement; however, the Restaurant will assert that you have agreed to pursue all claims individually in arbitration. The consideration for entering into this Agreement includes its mutuality, and your continued employment and/or your accepting employment with the Restaurant. You agree that this consideration is sufficient to support the Agreement.

I KNOWINGLY AND FREELY AGREE TO THIS MUTUAL AGREEMENT TO ARBITRATE CLAIMS WHICH OTHERWISE COULD HAVE BEEN BROUGHT IN COURT.  I AFFIRM THAT I HAVE HAD SUFFICIENT TIME TO READ AND UNDERSTAND THIS AGREEMENT AND THAT I HAVE BEEN ADVISED OF MY RIGHT TO SEEK LEGAL COUNSEL REGARDING THE MEANING AND EFFECT OF THIS AGREEMENT PRIOR TO SIGNING. THE RESTAURANT AGREES TO BE BOUND TO ITS TERMS WITHOUT ANY REQUIREMENT TO SIGN THIS AGREEMENT.

_____          _____
*Employee*                                *Date*

4830-2958-1857, v. 1

Name: Irving Smith

Email: hsum1@yahoo.com

IP Address: 162.221.168.71

E-SIGNED by Irving Smith
on 20 Jun 2017 14:35:36 GMT

I KNOWINGLY AND FREELY AGREE TO THIS MUTUAL AGREEMENT TO ARBITRATE CLAIMS WHICH OTHERWISE COULD HAVE BEEN BROUGHT IN COURT.  I AFFIRM THAT I HAVE HAD SUFFICIENT TIME TO READ AND UNDERSTAND THIS AGREEMENT AND THAT I HAVE BEEN ADVISED OF MY RIGHT TO SEEK LEGAL COUNSEL REGARDING THE MEANING AND EFFECT OF THIS AGREEMENT PRIOR TO SIGNING. THE RESTAURANT AGREES TO BE BOUND TO ITS TERMS WITHOUT ANY REQUIREMENT TO SIGN THIS AGREEMENT.

_Employee_

_Date_ August 18, 2016

4830-2958-1857, v. 1

ACTIVE 25240366v1 06/02/2015                    70

# Exhibit 3



# AGREEMENT TO RESOLVE DISPUTES
## BY ARBITRATION

The Restaurant tries to work with employees to resolve differences promptly when they arise. Employees should first try to resolve their disputes informally by speaking with their supervisor. If you do not feel comfortable approaching your supervisor, the Restaurant encourages you to seek assistance from Human Resources staff or other members of the Restaurant's management team. If these informal efforts aren't successful, you agree to refer employment related disputes to the arbitration process described below.

1. *Overview.* You and the Restaurant agree that (except for "Excluded Claims" which are described below), all disputes, claims or controversies ("claims") against the Restaurant that could be brought in a court will be resolved through arbitration. This Agreement applies to all federal, state and local laws, regulations, common law claims and claims for costs, attorneys' fees and expenses, and is governed by the Federal Arbitration Act to the maximum extent permitted by law.

"Excluded Claims" include claims for workers' or unemployment compensation benefits, claims under any of the Restaurant's equity plans or other pension or welfare benefit plans containing its own procedure for resolving plan disputes, and all other claims that legally are not subject to mandatory binding pre-dispute arbitration under the Federal Arbitration Act. This agreement does not prohibit you from filing complaints with agencies such as the National Labor Relations Board or the Equal Opportunity Commission.

You agree to pursue all claims on an individual basis only. You waive your right to commence or be a part of any class or collective claims, or to bring a claim with another person. The arbitrator has no power to consolidate claims or adjudicate a class or collective action. Nothing in this Agreement limits your right to challenge its enforceability, including the enforceability of the waiver above. While the Restaurant will assert that individual arbitration is required, to the extent that filing of such an action is protected concerted activity under the National Labor Relations Act, the filing will not result in threats, discipline or discharge.

2. *Arbitrator's Authority.* The arbitrator will have exclusive authority to resolve all disputes about the interpretation, applicability, enforceability or formation of this agreement (except for any determination about the enforceability of the class/collective action waiver, which will be made solely by a court). If the prohibition against class/collective action is deemed unlawful, then that action may proceed in a court in that form. If an arbitrator finds any other provision of this Agreement unenforceable, then the arbitrator or a court shall interpret or modify the agreement as required for it to be enforceable, and the Agreement shall immediately, automatically and retroactively be amended accordingly.

The decision of the arbitrator will be final and binding. The arbitrator shall have the power to award any type of legal or equitable relief available in a court of competent jurisdiction. Any relief or

recovery for any claim covered by this agreement will be limited to that awarded by the arbitrator. All orders of the arbitrator (except for evidentiary rulings at the arbitration) must be in writing, and may be reviewed under the Federal Arbitration Act.

3. *Time Periods.* If the claim is one that could be filed with an administrative agency, then the arbitration must be brought within the time in which the administrative charge or complaint would have been filed. If the arbitration raises an issue that could not have been filed with an administrative agency, then the demand for arbitration must be filed within the time set by the applicable statute of limitations.

4. *Specific Arbitration Provisions.* A single arbitrator in accordance with the Employment Rules and Procedures of National Arbitration and Mediation ("NAM") will hear the dispute. All arbitrators or members of the appeal panel must be members of the bar in good standing. The Restaurant has a copy of these rules, or you may contact NAM to request a copy of the rules by calling (800) 358-2550 or viewing the rules on the NAM website (www.namadr.com). If for whatever reason NAM declines to act, the parties will use Judicial Arbitration and Mediation Services (JAMS) (www.jamsadr.com) and will use its employment arbitration rules.

The arbitrator shall apply the Federal Rules of Civil Procedure (except for Rule 23) and the Federal Rules of Evidence as interpreted in the jurisdiction where the arbitration is held. There shall be one arbitrator for the matter up and through determination of a motion for summary judgment. If such a motion is made, the arbitrator must render a written and detailed opinion within sixty calendar days of submission of all supporting and opposition papers. If the summary judgment is in any part denied, the case shall proceed to hearing before another arbitrator who did not hear the summary judgment motion. That arbitrator shall be selected from a new panel to be provided by NAM (or if JAMS if applicable). To the extent there is any conflict between this Agreement and the arbitration rules of NAM or JAMS, this Agreement shall control.

The arbitration will take place in the county in which the employee was employed. The Restaurant will pay for the arbitration costs and fees imposed, except that You will be responsible for costs equal to the cost of filing a Complaint in federal court.

5. *Other matters.* "The Restaurant" includes any affiliates and their current and former employees and agents. "You" or "your" includes you, as well as your heirs, administrators or executors. Nothing in this Agreement is intended to create a contract of employment for a specific duration. This Agreement will be governed by and interpreted in accordance with the laws of the state in which you are employed by the Restaurant. Nothing precludes you from challenging the enforceability of this Agreement; however, the Restaurant will assert that you have agreed to pursue all claims individually in arbitration. The consideration for entering into this Agreement includes its mutuality, and your continued employment and/or your accepting employment with the Restaurant. You agree that this consideration is sufficient to support the Agreement.

I KNOWINGLY AND FREELY AGREE TO THIS MUTUAL AGREEMENT TO ARBITRATE CLAIMS WHICH OTHERWISE COULD HAVE BEEN BROUGHT IN COURT.   I AFFIRM THAT I HAVE HAD SUFFICIENT TIME TO READ AND UNDERSTAND THIS AGREEMENT AND THAT I HAVE BEEN ADVISED OF MY RIGHT TO SEEK LEGAL COUNSEL REGARDING THE MEANING AND EFFECT OF THIS AGREEMENT PRIOR TO SIGNING. THE RESTAURANT AGREES TO BE BOUND TO ITS TERMS WITHOUT ANY REQUIREMENT TO SIGN THIS AGREEMENT.

_____          _____
*Employee*                                                          *Date*

4830-2958-1857, v. 1

Name: JaNette Sturdivant

Email: janettesturdivant@yahoo.com

IP Address: 66.250.191.192

E-SIGNED by JaNette Sturdivant
on 30 May 2017 19:58:18 GMT

# Exhibit 4

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☒ FEPA | 17-597-P (CN) |
| | ☒ EEOC | 10C-2017-00581 |

District of Columbia Office of Human Rights and EEOC

*State Agency*

| Name (Indicate Mr., Ms., Mrs.) | email | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|---|
| **Dominique Hill** | **domhill@ymail.com** | **(202) 749-4539** | **N/A** |

| Street Address | City, State and ZIP Code |
|---|---|
| **4311 Telfair Boulevard, #C404** | **Suitland, MD 20746** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than one, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **BLT Prime** | **15+** | **(202) 868-5100** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1100 Pennsylvania Avenue, N.W.,** | **Washington, DC 20004** |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (specify below)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **12/13/2016** | **12/30/2016** |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Initial written Complaint received by OHR on March 10, 2017. I was hired by Respondent in August 2016, as a Bartender. I believe that I have been discriminated against in the terms, conditions, and privileges of employment based on my Race (African-American) for the following reasons:

**Terms and Conditions (Disparate Treatment) – Race**

Respondent's Management subjected me to disparate treatment regarding my shifts and wages compared to White employees. On various unknown dates, Respondent offered better shifts (night shifts) and pay to White similarly-situated employees, including newly-hired White employees whereas I was given the day shifts with less pay. I was the only African-American bartender working for Respondent.

**Discharge (Disparate Treatment) – Race**

On December 11, 2016, I accidently dropped a "Bloody Mary" cocktail drink over an infant. Due to this incident, on December 13, 2016, Respondent terminated my employment. Two (2) weeks after my dismissal, a similarly-situated employee (White, female) dropped a whole bottle of champagne over a bride. However, Respondent did not reprimand or dismiss her as it dismissed me.

Therefore, I charge Respondent with unlawful discriminatory acts in violation of Title VII of the Civil Rights Act of 1964, as amended, and the D.C. Human Rights Act of 1977, as amended. I have not commenced any other action civil, criminal or administrative, based on the above allegations, other than the instant Charge of Discrimination that has been cross-filed with the EEOC.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 5-7-17            Dom Hill | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date            Charging Party Signature | 5/ 8 /201 8 |

JAIME H. DIAZ VILLARROEL
Notary Public
District of Columbia
My commission expires February 14, 2020

**IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |  |
|---|---|---|
| **DOMINIQUE HILL, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 2017 CA 006517 B** |
| | ) | |
| **TRUMP OLD POST OFFICE LLC, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS</u>

UPON CONSIDERATION of Defendants' Motion Dismiss, Or In The Alternative, To Stay And Compel Arbitration, supporting memorandum, exhibits and any opposition, and finding good cause shown, it is:

ORDERED that Defendants' Motion is **GRANTED**; and

ORDERED that this case be, and the same hereby is **DISMISSED**.


This _____ day of _____, 2017.


_____
Honorable Michael L. Rankin
Associate Judge


4849-7454-8819, v. 4

*Murray* v. *Trump Entertainment Resorts,*

No. 15-cv-6039 (E.D. Pa. 2015)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of the Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE SIDE OF THE FORM.)

## I.(a) PLAINTIFFS
Yvette Murray and Christopher Ming, Plaintiff(s)

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Philadelphia, PA
(EXCEPT IN U.S. PLAINTIFF CASES)

**(C)** ATTORNEY'S (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Law Offices of Bernard M. Gross, P.C.
100 Penn Square East
Suite 450, The Wannamaker Building
Philadelphia, PA  19107
215-561-3600

## DEFENDANTS
**Trump Entertainment Resorts and Trump Taj Mahal Associates,**
**Defendant(s)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Atlantic County, NJ
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)
Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.
1800 JFK Boulevard, Suite 1900
Philadelphia, PA  19103
215-564-6688

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

☐ 1  **U.S. Government**
Plaintiff

☐ 2  **U.S. Government**
Defendant

☐ 3  **Federal Question**
(U.S. Government Not a Party)

X 4  **Diversity**
(Indicate Citizenship of
Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES  (PLACE AN X IN ONE BOX
FOR DIVERSITY CASES ONLY FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | ☐ 1 | Incorporated or Principle | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Place of Business in this State | | |
| Citizen or Subject of a | ☐ 3 | ☐ 3 | Incorporated and Principle | ☐ 5 | X 5 |
| Foreign Country | | | Place of Business in Another State | | |
| | | | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
2120   Premises Liability - Slip and Fall (Cause of Action)

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med - Malpractice | ☐ 625 Drug Related Seizure of | 157 | ☐ 430 Banks & Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | Property 21 USC 881 | | ☐ 450 Commerce/ICC Rates/ |
| ☐ 150 Recovery of | ☐ 320 Assault, Liable & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | etc.. |
| Overpayment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R. R. & Truck | | ☐ 470 Racketeer Influenced |
| & Enforcement of | ☐ 330 Federal Employer's | Injury Product | ☐ 650 Airline Regs | ☐ 820 Copyrights | and Corrupt |
| Judgement | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | Organizations |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 |
| Student Loans | Liability | ☐ 371 Truth in Lending | | | Securities/Commodities/ |
| (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | | | Exchange |
| ☐ 153 Recovery of | ☐ 355 Motor Vehicle | Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| Overpayment of Veteran's | Product Liability | ☐ 385 Property Damage | | | 12 USC 3410 |
| Benefits | X 360 Other Personal | Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 160 Stockholders' Suits | Injury | | ☐ 720 Labor/Mgmt. | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization |
| ☐ 190 Other Contract | | | Relations | ☐ 863 DIWC/DIWW | Act |
| ☐ 195 Contact Product Liability | | | ☐ 730 Labor/Mgmt. | (405(g)) | ☐ 893 Environmental Matters |
| | | | Reporting & | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| | | | Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of |
| | | | ☐ 740 Railway Labor Act | | Information |
| | | | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| | | | ☐ 791 Empl. Ret. Inc. | | ☐ 900 Appeal of Free |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Security Act | ☐ 870 Taxes (U.S. Plaintiff | Determination Under |
| | | | | or Defendant) | Equal Access to |
| ☐ 210 Land | ☐ 441 Voting | ☐ 510 Motions to Vacate | | ☐ 871 IRS - Third Party | Justice |
| Condemnation | ☐ 442 Employment | Sentence | | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 220 Foreclosure | ☐ 443 Housing/ | Habeaus Corpus: | | | State Statutes |
| ☐ 230 Rent Lease & Ejectment | Accommodations | ☐ 530 General | | | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Other | | | |

## VI. ORIGIN    (PLACE AN X IN ONE BOX ONLY)

☐ 1 Original
Proceeding

X 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from Magistrate
Judgement

## VII. REQUESTED IN CHECK IF THIS IS A CLASS ACTION     DEMAND $ 95,000.00
COMPLAINT:     ☐ UNDER F.R.C.P. 23

Check YES only if demanded in complaint:
JURY DEMAND: X YES  ☐ NO

## VIII. RELATED CASE(S)
IF ANY     (SEE INSTRUCTIONS)
JUDGE Judge of Related Case          DOCKET NUMBER Docket Number of Related Case

DATE: November 6, 2015          SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

APPENDIX I

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| YVETTE MURRAY AND CHRISTOPHER MING | : | CIVIL ACTION |
| 2104 Melvin Street | : | |
| Philadelphia, PA 19131 | : | |
| v. | : | NO. |
| TRUMP ENTERTAINMENT RESORTS AND | : | |
| TRUMP TAJ MAHAL ASSOCIATES | : | |
| 1000 Boardwalk @ Virginia Avenue | : | |
| Atlantic City, NJ 08401 | : | |
| | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( X )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court. (See reverse side of this form for a detailed explanation of special
   management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( )


| | | |
|---|---|---|
| November 6, 2015 | _[signature]_ | Trump Entertainment Resorts, Trump Taj Mahal Assoc |
| **Date** | **Attorney-at-law** | **Attorney for** |

| | | |
|---|---|---|
| (215)564-6688 | (215)564-2526 | echalik@moodklaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT                                        **APPENDIX F**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:_____2104 Melvin Street, Philadelphia, PA  19131_____

Address of Defendant:____1000 Boardwalk @ Virginia Avenue, Atlantic City, NJ  08401_____

Place of Accident, Incident or Transaction: 1000 Boardwalk @ Virginia Avenue, Atlantic City, NJ  08401_____
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes ☐   No **X**

Does this case involve multidistrict litigation possibilities?                                         Yes ☐   No **X**

**RELATED CASE, IF ANY:**

Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                                     Yes ☐   No **X**

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
                                                                                     Yes ☐   No **X**

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?                      Yes ☐   No **X**

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No **X**

**CIVIL:** (Place ✓ in ONE CATEGORY ONLY)

A. Federal Question Cases:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify)

B. Diversity Jurisdiction Cases:

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. **X** Other Personal Injury (Please specify) Slip & Fall
7. ☐ Products Liability
8. ☐ Products Liability --- Asbestos
9. ☐ All other Diversity Cases
(Please specify)

**ARBITRATION CERTIFICATION**
(Check appropriate Category)

I, Elizabeth A. Chalik_____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: __11/6/15__        _____        __88157__
                          Attorney-at-Law              Attorney I.D.#

**NOTE:**  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __11/6/15__        _____        __88157__
                          Attorney-at-Law              Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

061-100285

| | |
|---|---|
| YVETTE MURRAY AND CHRISTOPHER MING | CIVIL ACTION |
| vs. | NO. |
| TRUMP ENTERTAINMENT RESORTS AND TRUMP TAJ MAHAL ASSOCIATES | |

### NOTICE OF FILING NOTICE OF REMOVAL
### TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN
### DISTRICT OF PENNSYLVANIA

TO:    Bernard M. Gross, Esquire
Law Offices of Bernard M. Gross, P.C.
100 Penn Square East
Suite 450, The Wanamaker Building
Philadelphia, PA 19107

**PLEASE TAKE NOTICE** that Trump Entertainment Resorts and Trump Taj Mahal

Associates, in the matter of Yvette Murray and Christopher Ming vs. Trump Entertainment

Resorts and Trump Taj Mahal Associates, originally pending in the Court of Common Pleas in

the County of Philadelphia, Pennsylvania, under October Term 2015, No. 0123, file in the

United States District Court for the Eastern District of Pennsylvania, their Notice of Removal of

said cause to the Eastern District of Pennsylvania. A copy of the Notice of Removal is attached

hereto and served herewith.

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

By:_____EC7202_____
Elizabeth A. Chalik, Esquire
Attorney I.D. Nos: 88157
1800 JFK Boulevard, Suite 1900
Philadelphia, Pa. 19103
215-564-6688
Attorney for Defendants

{PH922015.1}

## IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

061-100285

| | |
|---|---|
| YVETTE MURRAY AND CHRISTOPHER MING | CIVIL ACTION |
| vs. | |
| TRUMP ENTERTAINMENT RESORTS AND TRUMP TAJ MAHAL ASSOCIATES | NO. |

## NOTICE OF REMOVAL

AND NOW, Defendants, Trump Entertainment Resorts and Trump Taj Mahal Associates, by and through their attorneys, MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C., hereby remove the above-captioned case to this Honorable Court and provide notice of same to counsel representing the Plaintiffs. In support of the removal, the Defendants aver as follows:

1. This is an action filed and now pending in the Philadelphia Court of Common Pleas, October Term 2015, No. 0123.

2. A copy of Plaintiffs' Complaint is attached hereto as Exhibit "A".

3. This action was instituted by complaint in the Court of Common Pleas of Philadelphia County on or about October 5, 2015 by Plaintiffs filing a Complaint at the above Court term and number.

4. This Notice of Removal is being filed within thirty (30) days after receipt by the Defendants of the initial pleading setting forth the claim for relief upon which this action is based in accordance with 28 U.S.C. §1446(b).

{PH922015.1}

5.    This is a civil suit and involves controversy between citizens of different states. Plaintiffs, upon information and belief, were at the time of the commencement of the above action citizens of the Commonwealth of Pennsylvania.

6.    Defendants, Trump Entertainment Resorts and Trump Taj Mahal Associates, which conduct business at 1000 Boardwalk at Virginia Avenue, Atlantic City, are Delaware corporations, with a principal place of business in Atlantic City, New Jersey.

7.    As averred in Plaintiffs' Complaint, the damages claimed by Plaintiffs are in excess of $50,000.00.  In fact, Plaintiffs have demanded $95,000.00 to resolve this case.

8.    As a result, Defendants allege and aver, upon information and belief, that the amount in controversy is in excess of $75,000.00, exclusive of interests and costs.

9.    The above-described Civil Action is one in which this Honorable Court has original jurisdiction pursuant to Title 28 United States Code Section 1332, based upon the fact that there exists diversity of citizenship between the parties, and the amount in controversy is in excess of $75,000.00, exclusive of interests and costs, and is, accordingly, one which may be removed to this Honorable Court by Notice pursuant to Title 28, United States Code, Section 1441.

10.    Promptly after filing this Notice of Removal in this Honorable Court, a copy of this Notice of Removal will be filed with the Court of Common Pleas of Philadelphia County, Commonwealth of Pennsylvania, in accordance with 28 United States Code, Section 1446(d).

11.    Copies of all process, pleadings and order served upon defendants as of the time of this removal are attached hereto in accordance with 28 United States Code, Section 1446(a).

12.    Defendants have contemporaneously with the filing of this Notice of Removal given written notice to Plaintiffs' counsel.

{PH922015.1}

**WHEREFORE**, Defendants respectfully request that this action, currently docketed in the Court of Common Pleas of Philadelphia County, be removed to the United States District Court for the Eastern District of Pennsylvania.

<div style="text-align:center">

**MARKS, O'NEILL, O'BRIEN,
O'BRIEN & KELLY, P.C.**

</div>

By:   EC7202
        Elizabeth A. Chalik, Esquire
        Attorney I.D. No.: 88157
        1800 JFK Boulevard, Suite 1900
        Philadelphia, Pa. 19103
        215-564-6688
        Attorney for Defendants

{PH922015.1}

COMMONWEALTH OF PENNSYLVANIA        :
                                    :        SS
                                    :
                                    :
COUNTY OF PHILADELPHIA              :

## AFFIDAVIT

Elizabeth A. Chalik, Esquire being duly sworn according to law deposes and says that the

facts set forth in the foregoing Notice of Removal are true and correct to the best of her

knowledge, information and belief.

_____
Elizabeth A. Chalik, Esquire

Sworn to and Subscribed
before me this 6 day  of
November , 2015.

Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
STEVEN M. ROSE, Notary Public
City of Philadelphia, Phila. County
My Commission Expires December 4, 2016

{PH922015.1}

# IN THE UNITED STATED DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

061-100285

| | |
|---|---|
| YVETTE MURRAY AND CHRISTOPHER MING | CIVIL ACTION |
| vs. | |
| TRUMP ENTERTAINMENT RESORTS AND TRUMP TAJ MAHAL ASSOCIATES | NO. |

## CERTIFICATE OF SERVICE

I hereby certify that this 6th day of November **, 2015**, a true and correct copy of the Defendants' Notice to Remove was served on all parties of record by electronic filing and/or first class mail, postage prepaid.

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

By:   EC7202
            Elizabeth A. Chalik, Esquire
            Attorney for Defendants
            1800 JFK Boulevard, Suite 1900
            Philadelphia, Pa. 19103
            215-564-6688

{PH922015.1}

**EXHIBIT A**

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| **OCTOBER 2015** | **000123** |
| E-Filing Number: 1510008870 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| YVETTE MURRAY | TRUMP ENTERTAINMENT RESORTS |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 2104 MELVIN STREET<br>PHILADELPHIA PA 19131 | 1000 BOARDWALK AT VIRGINIA AVE<br>ATLANTIC CITY NJ 08401 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| CHRISTOPHER MING | TRUMP TAJ MAHAL ASSOCIATES, ALIAS: D/B/A TRUMP<br>TAJ MAHAL A/K/A TRUMP TAJ MAHAL CASINO HOTEL |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 2104 MELVIN STREET<br>PHILADELPHIA PA 19131 | 1000 BOARDWALK AT VIRGINIA AVE<br>ATLANTIC CITY NJ 08401 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION | | |
|---|---|---|---|---|
| 2 | 2 | [X] Complaint | [ ] Petition Action | [ ] Notice of Appeal |
| | | [ ] Writ of Summons | [ ] Transfer From Other Jurisdictions | |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less | [ ] Arbitration | [ ] Mass Tort | [ ] Commerce | [ ] Settlement |
| [X] More than $50,000.00 | [ ] Jury | [ ] Savings Action | [ ] Minor Court Appeal | [ ] Minors |
| | [X] Non-Jury | [ ] Petition | [ ] Statutory Appeals | [X] W/D/Survival |
| | [ ] Other: | | | |

| CASE TYPE AND CODE |
|---|
| 2S - PREMISES LIABILITY, SLIP/FALL |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | FILED<br>PRO PROTHY<br>OCT 05 2015<br>D. SAVAGE | IS CASE SUBJECT TO<br>COORDINATION ORDER?<br>YES    NO |
|---|---|---|

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: YVETTE MURRAY , CHRISTOPHER MING

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| BERNARD M. GROSS | THE WANAMAKER BLDG,<br>100 PENN SQUARE EAST<br>SUITE 450<br>PHILADELPHIA PA 19107 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)561-3600 | (215)561-3000 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 2571 | jim@bernardmgross.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| BERNARD GROSS | Monday, October 05, 2015, 03:29 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

LAW OFFICES
BERNARD M. GROSS, P.C.
100 Penn Square East
Suite 450, The Wanamaker Bldg.
Philadelphia, PA 19107
Phone: 215-561-3600/Fax: 215-561-3000

Assessment of damages
hearing is/XXXXX
required. *Filed and Attested by*
*PROTHONOTARY*
*05 OCT 2015 03:39 pm*
*D. SAVAGE*

NON-JURY

YVETTE MURRAY and          :     COURT OF COMMON PLEAS
CHRISTOPHER MING           :     PHILADELPHIA COUNTY
2104 Melvin Street         :
Philadelphia, PA 19131     :          OCTOBER        TERM, 2015
            v.             :
TRUMP ENTERTAINMENT RESORTS :    NO.   0123
1000 Boardwalk at Virginia Avenue  :
Atlantic City, NJ   08401  :
            and            :
TRUMP TAJ MAHAL ASSOCIATES d/b/a :
TRUMP TAJ MAHAL a/k/a TRUMP TAJ  :
MAHAL CASINO HOTEL         :
1000 Boardwalk at Virginia Avenue  :
Atlantic City, NJ   08401  :

## CIVIL ACTION

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias, de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiera que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. | LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAMA POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL. |
| IF YOU CANNOT AFFORD TO HIRE A LAWYER THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE. | ASSOCIACION DE LICENCIADOS DE FILADELFIA SERVICIO DE REFENCIA E INFORMACION LEGAL One Reading Center Filadelfia, Pennsylvania 19017 Telefono: (215) 238-6333 |
| PHILADELPHIA BAR ASSOCIATION LAWYER REFERRAL and INFORMATION SERVICE One Reading Center Philadelphia, Pennsylvania 19107 (215) 238-6333 | |

Case ID: 151000123

## FIRST COUNT

1.    Plaintiff, Yvette Murray, is an individual residing at 2104 Melvin Street, Philadelphia, PA 19134.

2.    Defendant, Trump Entertainment Resorts, is a business, company, entity, partnership, franchisee, fictitious name, proprietorship, or corporation existing and/or qualifying under the laws of the Commonwealth of Pennsylvania, which regularly conducts business within the City of Philadelphia.

3.    Defendant, Trump Taj Mahal Associates, d/b/a Trump Taj Mahal a/k/a Trump Taj Mahal Casino Hotel, hereinafter referred to as "Trump Taj Mahal" is a business, company, entity, partnership, franchisee, fictitious name, proprietorship, or corporation existing and/or qualifying under the laws of the Commonwealth of Pennsylvania, which regularly conducts business within the City of Philadelphia.

4.    Defendants Trump Entertainment Resorts and Trump Taj Mahal, continuously and systematically conduct business within the Commonwealth of Pennsylvania and within the City of Philadelphia and has subject of itself in the Philadelphia stream of commerce and has sufficient contacts within the City of Philadelphia in that defendants Trump Entertainment Resorts and Trump Taj Mahal have done and continue to do the following, all in furtherance of the defendants business and affairs:

        (a)    Advertising in the City of Philadelphia by running television ads, newspaper ads, and radio ads;

        (b)    Advertising in the City of Philadelphia by placing and establishing billboards to promote its business in and around the Commonwealth of Pennsylvania;

        (c)    Running casino bus trips from Philadelphia to defendants' establishments;

        (d)    Providing casino vouchers to Philadelphia residents who take said bus trips referenced in (c) above;

5.    At all times material hereto the defendants, Trump Entertainment Resorts and Trump Taj Mahal were in the business of operating a hotel and casino on the premises located at 1000 Virginia Avenue, Atlantic City, NJ.

6.    At all times material hereto the defendants owned, operated, possessed, managed, maintained and/or controlled the premises located at 1000 Virginia Avenue, Atlantic City, NJ.

7.    At all times material hereto the defendants acted and/or failed to act by and through their respective agents, servants, workpersons, and/or employees who acted in the course of their employment within the scope of their authority each representative defendant.

8.    At all times material hereto, their existed a dangerous condition in the common area of the premises of Trump Taj Mahal Casino Hotel, 1000 Virginia Avenue, Atlantic City, NJ, more fully hereinafter set forth in that a dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and defendants had notice and/or could have reasonably been charged with notice of the circumstances of said

Case ID: 151000123

dangerous condition at the sufficient time prior to the event, to have taken measures to protect against the dangerous condition.

9.      On or about January 10, 2015, at approximately 5:00 p.m., plaintiff Yvette Murray was operating one of the defendants' slots machines when the machine opened onto the body of the plaintiff while she was seated, striking her body and as a result of which, plaintiff sustained serious bodily injuries, more hereinafter described.

10.     Defendants were careless, negligent and reckless in:

(a)     Maintaining a condition on the premises which it knew or had reason to know presented an unreasonable risk of harm to the plaintiff;

(b)     Failing to inspect said premises adequately to insure the safety of patrons in general and plaintiff in particular;

(c)     Failing to warn plaintiff of a dangerous condition;

(d)     Failing to use due care under the circumstances.

(e)     Failing to properly and adequately hire and/or instruct the agents, servants, workman, employees and/or representative of defendants herein, as to safe and proper procedures for inspecting, maintaining, cleaning, correcting and repairing a dangerous and defective condition on defendants' premises, including the defective and dangerous condition which caused plaintiff's injuries;

(f)     Failing to provide safe conditions for invitees, independent contractors, guests, licensees, and/or members of the general public to the premises;

(g)     Failing to provide and maintain proper supervision of said premises;

(h)     Failing to provide and maintain proper safety precautions of said premises;

(i)     Failing to respond in a timely manner to a dangerous condition or situation upon said premises.

11.     By reason of the above described occurrence, plaintiff sustained serious bodily injuries to the head, body and extremities, some or all of which are or may be permanent including, but not limited to, de Quervain's tendinitis right wrist; post traumatic media nerve neuritis at the right wrist; strain and sprain with contusion right hand and wrist with CMC synovitis; and a severe shock to the nerves and nervous system, as a result of which plaintiff has suffered, still suffers and will continue to suffer for an indefinite time in the future, and which have prevented plaintiff from attending to plaintiff's daily duties and occupation, all to plaintiff's great financial damage and loss.

12.     As a result of the injuries hereinabove described, plaintiff was and will continue to be obliged to expend various sums of money for medicine and medical treatment in and about endeavoring to treat plaintiff of said injuries, all to plaintiff's great financial damage and loss.

2

Case ID: 151000123

WHEREFORE, plaintiff Yvette Murray demands judgment against defendants Trump Entertainment Resorts and Trump Taj Mahal Associates d/b/a Trump Taj Mahal a/k/a Trump taj Mahal Casino Hotel in a sum in excess of Fifty Thousand Dollars ($50,000.00). The amount sued upon is in excess of that requiring submission to arbitration.

## SECOND COUNT

13. The plaintiff, Christopher Ming, hereby incorporates by reference, the allegations contained in the above paragraphs, as fully as though the same were here set forth at length.

14. The plaintiff, Christopher Ming, is the husband of the plaintiff, Yvette Murray.

15. The plaintiff, Christopher Ming, has been and may continue to be deprived of the services, society, companionship and consortium of Yvette Murray, to plaintiff's great detriment and loss.

WHEREFORE, plaintiff Christopher Ming demands judgment against defendants Trump Entertainment Resorts and Trump Taj Mahal Associates d/b/a Trump Taj Mahal a/k/a Trump Taj Mahal Casino Hotel in a sum in excess of Fifty Thousand Dollars ($50,000.00). The amount sued upon is in excess of that requiring submission to arbitration.

LAW OFFICES
BERNARD M. GROSS, P.C.
BY:

BERNARD M. GROSS, I.D. No. 02571
100 Penn Square East
Suite 450, The Wanamaker Building
Philadelphia, PA 19107
Phone: (215) 561-3600
Fax: (215) 561-3000

*Attorney for Plaintiffs*

3

Case ID: 151000123

<u>V E R I F I C A T I O N</u>

YVETTE MURRAY AND CHRISTOPHER MING, being duly sworn according to law, deposes and says that the facts set forth in the foregoing material are true and correct to the best of their knowledge, information and belief.

This statement is made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

(YM ) _____
YVETTE MURRAY

(CM) _____
CHRISTOPHER MING

Case ID: 151000123

# *Spicer* v. *Trump Entertainment Resorts*,
# No. 14-cv-3880 (E.D. Pa. 2015)

**CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of the Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE SIDE OF THE FORM.)

**I.(a) PLAINTIFFS**
Trina Spicer, Plaintiff(s)

**DEFENDANTS**
Trump Entertainment Resorts and Trump Plaza, Defendant(s)

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF York County, PA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Atlantic County , NJ
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(C)** ATTORNEY'S (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Susan B. Ayres, Esquire
Hill & Associates
123 South Broad Street, Suite 1100
Philadelphia, PA 19109

ATTORNEYS (IF KNOWN)
Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.
1800 JFK Boulevard, Suite 1900
Philadelphia, PA 19103

**II. BASIS OF JURISDICTION** (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- xx 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X IN ONE BOX FOR DIVERSITY CASES ONLY FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X1 | ☐ 1 | Incorporated or Principle Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | X 2 | Incorporated and Principle Place of Business in Another State | ☐ 5 | X 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
2120 Premises Liability - Personal Injury

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgement<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contact Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Liable & Slander<br>☐ 330 Federal Employer's Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>X 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury Med - Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R. R. & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/ etc.<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Free Determination Under Equal Access to Justice |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence Habeas Corpus:<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Other | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)
☐ 1 Original Proceeding  X 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrct Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgement

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23  DEMAND $ _____  Check YES only if demanded in complaint JURY DEMAND: X YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (SEE INSTRUCTIONS)  N/A  JUDGE Judge of Related Case  DOCKET NUMBER Docket Number of Related Case

DATE: June 24, 2014   SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<u>**CASE MANAGEMENT TRACK DESIGNATION FORM**</u>

| | | |
|---|---|---|
| TRINA SPICER | : | CIVIL ACTION |
| 1016 W. King Street, 3rd Floor | : | |
| York, PA 17401 | : | |
| v. | : | NO. |
| TRUMP ENTERTAINMENT RESORTS AND | : | |
| TRUMP PLAZA | : | |
| 1000 Boardwalk at Virginia Avenue | : | |
| Atlantic City, NJ 08401 | : | |
| | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits                    (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( X )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                    (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                    (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                    (  )

| | | |
|---|---|---|
|  June 24, 2014 | | **Trump Entertainment Resorts and Trump Plaza** |
| **Date** | **Attorney-at-law** | **Attorney for** |
|  (215)564-6688 | (215)564-2526 | jvaughan@moodklaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _____ 1016 W. King Street, 3rd Floor, York, PA  17401 _____

Address of Defendant: _____ 1000 Boardwalk at Virginia Avenue, Atlantic City, NJ  08401 _____

Place of Accident, Incident or Transaction: Trump Plaza, 1000 Boardwalk at Virginia Avenue, Atlantic City, NJ  08401 _____
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes ☐   No **X**

Does this case involve multidistrict litigation possibilities?          Yes ☐   No **X**
RELATED CASE, IF ANY:

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes ☐   No **X**

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes ☐   No **X**

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?          Yes ☐   No **X**

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

| A. Federal Question Cases: | B. Diversity Jurisdiction Cases: |
|---|---|
| 1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts | 1. ☐ Insurance Contract and Other Contracts |
| 2. ☐ FELA | 2. ☐ Airplane Personal Injury |
| 3. ☐ Jones Act-Personal Injury | 3. ☐ Assault, Defamation |
| 4. ☐ Antitrust | 4. ☐ Marine Personal Injury |
| 5. ☐ Patent | 5. ☐ Motor Vehicle Personal Injury |
| 6. ☐ Labor-Management Relations | 6. **X** Other Personal Injury (Please specify) Slip & Fall |
| 7. ☐ Civil Rights | 7. ☐ Products Liability |
| 8. ☐ Habeas Corpus | 8. ☐ Products Liability — Asbestos |
| 9. ☐ Securities Act(s) Cases | 9. ☐ All other Diversity Cases |
| 10. ☐ Social Security Review Cases | (Please specify) |
| 11. ☐ All other Federal Question Cases | |
| (Please specify) | |

## ARBITRATION CERTIFICATION
(Check appropriate Category)

I, Jamie P. Vaughan _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case      exceed the sum of $150,000.00 exclusive of interest and costs.

☐ Relief other than monetary damages is sought.

DATE: 6|24|14          _____          93531
Attorney-at-Law          Attorney I.D.#

**NOTE:**  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 6|24|14          _____          93531
Attorney-at-Law          Attorney I.D.#

CIV. 609 (4/03)

## IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

063-96050

TRINA SPICER

vs.

TRUMP ENTERTAINMENT RESORTS AND
TRUMP PLAZA

CIVIL ACTION

NO.

### NOTICE OF FILING NOTICE OF REMOVAL
### TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN
### DISTRICT OF PENNSYLVANIA

TO:    Susan B. Ayres, Esquire
Hill & Associates
123 South Broad Street, Suite 1100
Philadelphia, PA 19109

**PLEASE TAKE NOTICE** that Trump Entertainment Resorts and Trump Plaza, in the matter

of Trina Spicer vs. Trump Entertainment Resorts and Trump Plaza, originally pending in the Court of

Common Pleas in the County of Philadelphia, Pennsylvania, under July Term 2013, No. 1211, file in

the United States District Court for the Eastern District of Pennsylvania, their Notice of Removal of

said cause to the Eastern District of Pennsylvania. A copy of the Notice of Removal is attached hereto

and served herewith.

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

By:_____JPV3138_____
        Jamie P. Vaughan, Esquire
        Attorney I.D. No.: 93531
        1800 JFK Boulevard, Suite 1900
        Philadelphia, Pa. 19103
        215-564-6688
        Attorney for Defendants

{PH774130.1}

## IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

063-96050

| | |
|---|---|
| TRINA SPICER | CIVIL ACTION |
| | NO. |
| vs. | |
| TRUMP ENTERTAINMENT RESORTS AND TRUMP PLAZA | |

### NOTICE OF REMOVAL

AND NOW, Defendants, Trump Entertainment Resorts and Trump Plaza, by and through their attorneys, MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C., hereby seek removal of the above-captioned case to this Honorable Court and provide notice of same to counsel representing the Plaintiff. In support of the removal, the Defendants aver as follows:

1.    This is an action filed and now pending in the Philadelphia Court of Common Pleas, July Term 2013, No. 1211.

2.    This action was initially instituted via Complaint which was filed on July 8, 2013. A copy of Plaintiff's Complaint is attached hereto as Exhibit "A".

3.    Plaintiff initially filed this matter in the arbitration program of Philadelphia County, which has a maximum recovery of $50,000.00 at the non-binding arbitration. As a result, Defendants initially did not have a good faith basis to remove this matter within thirty (30) days in accordance with 28 U.S.C. §1446(b).

4.    If the non-binding arbitration is appealed then this matter will proceed to a jury trial with no limit on Plaintiff's potential recovery in this matter.

{PH774130.1}

5. Plaintiff would not agree to limit her potential recovery to $75,000.00. (See a true and correct copy of the June 18, 2014 email correspondences between counsel, attached hereto as Exhibit "B.") As a result, this Notice of Removal is being filed within one (1) year after the commencement of the action pursuant to 28 U.S.C. §1446(c)(1).

6. This is a civil suit and involves controversy between citizens of different states. Plaintiff, upon information and belief, was at the time of the commencement of the above action a citizen of the Commonwealth of Pennsylvania.

7. Defendants, Trump Entertainment Resorts and Trump Plaza, are located at 1000 Boardwalk at Virginia Avenue, Atlantic City, NJ 08401, and are New Jersey corporations.

8. Defendants allege and aver upon information and belief that the amount in controversy is in excess of $75,000.00, exclusive of interests and costs. Further, as stated above, Plaintiff will not agree to limit her damages to $75,000.00. Plaintiff, who was pregnant at the time of her incident, has alleged injuries to her back as well as alleged complications with her pregnancy/delivery.

9. The above-described Civil Action is one in which this Honorable Court has original jurisdiction pursuant to Title 28 United States Code Section 1332 based upon the fact that there exists diversity of citizenship between the parties and the amount in controversy is in excess of $75,000.00, exclusive of interests and costs, and is accordingly one which may be removed to this Honorable Court by Notice pursuant to Title 28, United States Code, Section 1441.

10. Promptly after filing this Notice of Removal in this Honorable Court, a copy of this Notice of Removal will be filed with the Court of Common Pleas of Philadelphia County, Commonwealth of Pennsylvania, in accordance with 28 United States Code, Section 1446(d).

11. Copies of all process, pleadings and order served upon defendants as of the time of this removal are attached hereto in accordance with 28 United States Code, Section 1446(a). (See Plaintiff's Reply to New Matter of Defendant, attached hereto as Exhibit "C".)

{PH774130.1}

12.     Defendants have contemporaneously with the filing of this Notice of Removal given written notice to Plaintiff's counsel.

WHEREFORE, Defendants respectfully request that this action, currently docketed in the Court of Common Pleas  of Philadelphia County be removed to the United States District Court for the Eastern District of Pennsylvania.

<div style="text-align:center;">

**MARKS, O'NEILL, O'BRIEN.**
**DOHERTY & KELLY, P.C.**

</div>

By:___JPV3138_____
              Jamie P. Vaughan, Esquire
              Attorney I.D. No.: 93531
              1800 JFK Boulevard, Suite 1900
              Philadelphia, Pa. 19103
              215-564-6688
              Attorney for Defendant

{PH774130.1}

COMMONWEALTH OF PENNSYLVANIA     :
                                     :       SS
                                       :
                                       :
COUNTY OF PHILADELPHIA          :

## **AFFIDAVIT**

     Jamie P. Vaughan, Esquire being duly sworn according to law deposes and says that the facts

set forth in the foregoing Notice of Removal are true and correct to the best of his knowledge,

information and belief.


                                                   _____
                                                   Jamie P. Vaughan, Esquire


Sworn to and Subscribed
before me this 24 day of
JUNE , 2014.


Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
STEVEN M. ROSE, Notary Public
City of Philadelphia, Phila. County
My Commission Expires December 4, 2016

{PH774130.1}

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

063-96050

TRINA SPICER

vs.

TRUMP ENTERTAINMENT RESORTS AND
TRUMP PLAZA

CIVIL ACTION

NO.

### DISCLOSURE STATEMENT FORM

Please check one box:

☑     The nongovernmental corporate party, __Trump Plaza and Trump Entertainment Resorts__ in the above listed civil action does not have any parent corporation and publicly held corporation that owns 10% or more of its stock.

☐     The nongovernmental corporate party,_____., in the above listed civil action has the following parent corporation(s) and publicly held corporation(s) that owns 10% or more of its stock:


___June 24, 2014___        ___/s/Jamie P. Vaughan___
Date                    Signature

Counsel for: __Trump Entertainment Resorts and Trump Plaza__

**Federal Rule of Civil Procedure 7.1 Disclosure Statement**
(a)   WHO MUST FILE; CONTENTS. A nongovernmental corporate party must file Two copies of a disclosure statement that:
(1)   identifies any parent corporation and any publicly held corporation owning 10% or more of its stock; or

(2)   states that there is no such corporation.

(b)   TIME TO FILE; SUPPLEMENTAL FILING. A party must:
(1)   file the disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court; and
(2)   promptly file a supplemental statement if any required information changes.

{PH774137.1}

# IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

063-96050

| | |
|---|---|
| TRINA SPICER | CIVIL ACTION |
| vs. | NO. |
| TRUMP ENTERTAINMENT RESORTS AND TRUMP PLAZA | |

## CERTIFICATE OF SERVICE

I hereby certify that this 24th    day of    **June 2014,** a true and correct copy of

the Defendants' Notice to Remove was served on all parties of record by electronic filing and/or first

class mail, postage prepaid.

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

By:___JPV3138_____
        Jamie P. Vaughan, Esquire
        Attorney for Defendant
        1800 JFK Boulevard, Suite 1900
        Philadelphia, Pa. 19103
        215-564-6688

{PH774130.1}

**EXHIBIT A**

USTED ESTA ORDENADO COMPARECER EN Arbitration Hearing 1880 JFK Blvd. 5th fl. at 09:15 AM - 03/25/2014
You must still comply with the notice below. USTED TODAVIA DEBE CUJPLIR CON EL AVISO PARA DEFENDERSE.
This matter will be heard by a Board of Arbitrators at the time, date and place specified but, if one or more parties is not present
at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties.
There is no right to a trial denovo on appeal from a decision entered by a Judge.

**HILL & ASSOCIATES**
BY: **LEONARD K. HILL**
**Identification No. 81849**
**Suite 1100, 123 S. Broad Street**
**Philadelphia, PA 19109**
**(215) 567-7600**

**THIS IS AN ARBITRATION MATTER**
Attorney for Plaintiff

*Filed and Attested by PROTHONOTARY 08 JUL 2013 03:57 pm J. OSTROWSKI*

| | | |
|---|---|---|
| **Trina Spicer** | : | **COURT OF COMMON PLEAS** |
| **1016 W. King Street, Third Floor** | : | **PHILADELPHIA COUNTY** |
| **York, PA 17402** | : | **CIVIL TRIAL DIVISION** |
| **Plaintiff** | : | |
| | : | **Term,** |
| **vs.** | : | **NO.** |
| | : | |
| **Trump Entertainment Resorts** | : | |
| **1000 Boardwalk at Virginia Avenue** | : | |
| **Atlantic City, NJ 08401** | : | |
| | : | |
| **Trump Plaza, a/k/a, Trump Plaza** | : | |
| **Associates, LLC, a/k/a Trump Plaza** | : | |
| **Hotel & Casino, a/k/a Trump Plaza Hotel,** | : | |
| **a/k/a Trump Plaza Associates, a/k/a** | : | |
| **Trump Plaza Holding, Inc.** | : | |
| **The Boardwalk and Mississippi Avenue** | : | |
| **Atlantic City, NJ 08401** | : | |
| **Defendants** | : | |

## CIVIL ACTION-COMPLAINT-SLIP & FALL NEGLIGENCE-PREMISES LIABILITY 2S

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CONNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Philadelphia Bar Association
Lawyer Referral and Information
One Reading Center
Philadelphia, PA 19107
(215) 238-1701

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SINO TIENE EL DINERO SUFICINENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Asociacion De Licenciado De Filadelfia
One reading Center
Filadelfia, PA 19107
Telefono: (215) 238-1701

HILL & ASSOCIATES
BY: LEONARD K. HILL
Identification No. 81849       **Attorney for Plaintiff**
Suite 1100, 123 S. Broad Street
Philadelphia, PA 19102
(215) 567-7600

| Trina Spicer | : | COURT OF COMMON PLEAS |
| Plaintiff | : | PHILADELPHIA COUNTY |
| | : | CIVIL TRIAL DIVISION |
| vs. | : | |
| | : | Term, |
| Trump Entertainment Resorts, et al. | : | NO. |
| Defendants | : | |

## CIVIL ACTION-COMPLAINT-SLIP & FALL
## NEGLIGENCE-PREMISES LIABILITY 2S

### GENERAL AVERMENTS

1.      Plaintiff, Trina Spicer, is an individual citizen and resident of the Commonwealth of Pennsylvania, residing at the address shown in the caption.

2.      Defendant, Trump Entertainment Resorts, upon information and belief, is a corporation or other business entity which does business in the Commonwealth of Pennsylvania and in New Jersey and has a business address of 1000 Boardwalk at Virginia Avenue, Atlantic City, NJ 08401.

3.      Upon information and belief, Defendant, Trump Entertainment Resorts, owned, leased, managed, repaired, maintained, possessed and/or otherwise controlled the subject premises and hotel room where the Plaintiff was injured, as more fully discussed below.

4.      Defendants, Trump Plaza, a/k/a Trump Plaza Associates, LLC, a/k/a Trump Plaza Hotel and Casino, a/k/a Trump Plaza Hotel, a/k/a Trump Plaza Associates, a/k/a Trump Plaza Holding, Inc., (hereby referred to as "Trump Plaza") upon further information and belief is a corporation, other business entity, which does business in the

Commonwealth of Pennsylvania and in New Jersey and has a business address of the
Boardwalk and Virginia Avenue, Atlantic City, NJ 08401 in Atlantic City, New Jersey.

     5.     Upon information and belief, Defendant, Trump Plaza, owned, leased,
managed, repaired, maintained, possessed, or otherwise controlled the subject premises
and hotel room where Plaintiff was injured, as more fully discussed below.

     6.     On or about May 12, 2012, Plaintiff was in a hotel room at Defendants'
premises when she suddenly and unexpectedly slipped and fell due to a dangerous and/or
defective condition in the room, namely, a wet floor due to water coming from a leak in
the room. Plaintiff, who was several months pregnant at the time, sustained serious and
permanent injuries including complications with her pregnancy and delivery, and
ongoing lower back pain.

<u>COUNT I</u>
<u>Trina Spicer VS. Defendants</u>
<u>NEGLIGENCE</u>

     7.     Plaintiff, Trina Spicer, hereby incorporates by reference hereto, the above
paragraphs, inclusively, as if the same were fully set forth herein at length.

     8.     The aforementioned incident was caused solely by the negligence of
Defendants in failing to properly maintain their premises which negligence consisted of
the following:

     (a) failing to properly inspect, discover and remedy the defective condition which
          existed in the hotel room, which the Defendant knew or reasonably should
          have known existed prior to the time of Plaintiff's fall;

     (b) failing to warn members of the general public of the dangerous conditions
          which existed;

     (c) allowing a dangerous and hazardous condition to exist on subject premises.

     9.     At all times mentioned herein, Plaintiff Trina Spicer acted with due care
and was not contributorily negligent.

10.     As a result of the aforementioned incident, Plaintiff was caused to sustain serious and permanent injuries including but not limited to injuries to: early labor and pregnancy complications, and low back pain and discomfort.

11.     As a result of the aforementioned incident and resulting injuries, Plaintiff Trina Spicer has been caused to expend various sums of money for medicine and medical attention for treatment and/or cure of these injuries and to have essential services performed during the duration of the physical impairment, all to her great financial detriment and loss and expects to pay additional sums of money for medicine and medical attention in the future all to Plaintiff's great financial detriment and loss.

12.     As a further result of the aforementioned incident and resulting injuries, Plaintiff Trina Spicer may have been prevented from attending to usual and customary duties, vocation and occupations, thereby sustaining a loss of earnings and/or earning capacity, all to great financial detriment and loss.

**Wherefore**, Plaintiff, Trina Spicer, hereby demands judgment against Defendants, Trump Entertainment Resorts and Trump Plaza, in an amount not in excess of Fifty Thousand ($50,000) Dollars.

**LEONARD K. HILL, ESQUIRE**
**Attorney for Plaintiff**

Date: 7/8/13

Case ID: 130701211

## VERIFICATION

The undersigned states that he/she is the plaintiff herein and verifies that the statements

made in the foregoing Complaint-Civil Action is true and correct to the best of his/her

knowledge, information and belief; and that this statement is made subject to the

penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

DATED: 6/2/13 ,2011          Signature _____

Print Name _TRINA SPICER_____

# EXHIBIT B

**Vaughan, Jamie P.**

| | |
|---|---|
| **From:** | Susan Ayres <sue@hilljustice.com> |
| **Sent:** | Friday, June 20, 2014 11:02 AM |
| **To:** | Vaughan, Jamie P. |
| **Subject:** | Re: Spicer |

No one knows the potential value of the case until a jury comes back with the verdict

Sent from my iPhone

On Jun 20, 2014, at 10:38 AM, "Vaughan, Jamie P." <JVaughan@moodklaw.com> wrote:

> Sue
>
> While I do appreciate the careful wording of your email and that your demand is $50,000 for settlement purposes, my client is looking to make a decision shortly regarding removing this case to Federal Court. Simply stated, you can certainly advise as to whether or not the potential value of this case exceeds $75,000. If you believe the value of this case does not exceed $75,000, then we can remain in state court and you can execute the stipulation. With all due respect, if you trying evade this issue and prevent us from potentially removing this case to Federal Court, this could certainly lead to appealable issues.
>
> Jamie
>
> **From:** Susan Ayres [mailto:sue@hilljustice.com]
> **Sent:** Wednesday, June 18, 2014 9:05 AM
> **To:** Vaughan, Jamie P.
> **Subject:** RE: Spicer
>
> As you noted, this was filed as an arb case. Likewise, I believe I gave you a settlement demand of $50k. Therefore, the case is not removable. I am not, however, going to "stipulate to a maximum recovery". If the case is arbitrated and appealed and later tried and a jury later finds her damages to exceed $75k, so be it.
>
> **Susan Ayres | Attorney**
> P. (215) 567-7600
> F. (215) 525-4311
> E. sue@hilljustice.com
> http://www.hilljustice.com
>
> <image002.gif>Hill & Associates P.C.
> 123 S. Broad Street, Suite 1100
> Philadelphia, PA 19109
>
> Confidentiality Notice
> This e-mail transmission and any documents, files or previous e-mail messages attached to it, are confidential and are protected by the attorney-client privilege and/or work product doctrine. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of any of the information contained in, or attached to this e-mail transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify me by forwarding this e-mail to sue@hilljustice.com or by telephone at 215-567-7600 and then delete the message and its attachments from your computer
>
> **From:** Vaughan, Jamie P. [mailto:JVaughan@moodklaw.com]
> **Sent:** Wednesday, June 18, 2014 8:44 AM

**To:** Susan Ayres
**Subject:** Spicer

Sue

Hope all is well.  Please advise if your client would be willing to stipulate to a maximum recovery of $75k in this case.

Thank you

Jamie

**Jamie P. Vaughan**
**Attorney at Law**
Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.
Suite 1900
1800 John F. Kennedy Boulevard
Philadelphia, PA 19103

215-832-4215 Direct | 215-564-6688 Office | 215-564-2526 Fax | jvaughan@moodklaw.com | www.moodklaw.com

This message and any documents accompanying it contain information from the law firm of Marks, O'Neill, O'Brien, Doherty & Kelly, P.C. which may be confidential and/or legally privileged. The information is intended only for the use of the individual or entity named as the original addressee. If you are not the intended recipient, you are hereby notified that any disclosure, forwarding, downloading, printing, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this communication in error, please notify us immediately by reply e-mail or telephone and destroy the original transmission and attachments.

# EXHIBIT C

**HILL & ASSOCIATES**
**BY: SUSAN B. AYRES, ESQUIRE**
**Identification No. 87562**
**Suite 1100, 123 S. Broad Street**
**Philadelphia, PA 19109**
**(215) 567-7600**

Attorney for Plaintiff



| Trina Spicer | | : | **COURT OF COMMON PLEAS** |
| | **Plaintiff** | : | **PHILADELPHIA COUNTY** |
| | | : | **CIVIL TRIAL DIVISION** |
| | **vs.** | : | |
| | | : | **July Term, 2013** |
| **Trump Entertainment Resorts, et al.** | | : | **NO. 1211** |
| | **Defendants** | : | |

## PLAINTIFF'S REPLY TO NEW MATTER OF DEFENDANT

13-22 Denied. All factual allegations, if any, stated by defendant are hereby denied. Furthermore, defendants are stating conclusions of law to which no response is mandated pursuant to the Pennsylvania Rules of Civil Procedure. Wherefore, this allegation is denied in its entirety and strict proof thereof is demanded at time of trial.

**WHEREFORE,** Plaintiff requests judgment in her favor and against the Defendants for the damages and costs of suit as stated in Plaintiff's Complaint.

**HILL & ASSOCIATES, P.C.**

8-29-13

BY: SUSAN B. AYRES, ESQUIRE

Case ID: 130701211

## Certificate of Service

I, Susan B. Ayres, Esquire, hereby certify that a true and correct copy of Plaintiff's Reply to New Matter served by sending via E-filing to counsel listed below on this 28TH Day of August, 2013.

Jaime Vaughan, Esquire
MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.
1800 JFK Blvd., 19th Floor
Philadelphia, PA 19103

HILL & ASSOCIATES, P.C.

BY: SUSAN B. AYRES, ESQUIRE

***Watson*** v. ***Trump Plaza Hotel & Casino***,

**No. 14-cv-1287 (E.D. Pa. 2014)**

# IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

063-97233

|  |  |
|---|---|
| ELIZABETH WATSON | CIVIL ACTION |
| vs. | NO. |
| TRUMP PLAZA HOTEL AND CASINO | |

## NOTICE OF FILING NOTICE OF REMOVAL
### TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN
### DISTRICT OF PENNSYLVANIA

TO:   Albert J. Brooks, Jr., Esquire
Fodera & Long, P.C.
1500 Walnut Street, Suite 900
Philadelphia, PA 19102

**PLEASE TAKE NOTICE** that Trump Plaza Hotel and Casino, in the matter of Elizabeth

Watson vs. Trump Plaza Hotel and Casino, originally pending in the Court of Common Pleas in the

County of Philadelphia, Pennsylvania, under January Term 2014, No. 1925, files in the United States

District Court for the Eastern District of Pennsylvania, its Notice of Removal of said cause to the

Eastern District of Pennsylvania. A copy of the Notice of Removal is attached hereto and served

herewith.

                               **MARKS, O'NEILL, O'BRIEN,**
                               **DOHERTY & KELLY, P.C.**

        By:_____JPV3138_____
                Jamie P. Vaughan, Esquire
                Attorney I.D. No.: 93531
                1800 JFK Boulevard, Suite 1900
                Philadelphia, Pa. 19103
                215-564-6688
                Attorney for Defendant

{PH738112.1}

## IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

063-97233

| | |
|---|---|
| ELIZABETH WATSON | CIVIL ACTION |
| vs. | NO. |
| TRUMP PLAZA HOTEL AND CASINO | |

## **NOTICE OF REMOVAL**

AND NOW, Defendant, Trump Plaza Hotel and Casino, by and through its their attorneys, MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C., hereby seeks removal of the above-captioned case to this Honorable Court and provides notice of same to counsel representing the Plaintiff. In support of the removal, the Defendant avers as follows:

1. This is an action filed and now pending in the Philadelphia Court of Common Pleas, January Term, 2014. No. 1925.

2. This action was initially instituted via Complaint which was filed on January 17, 2014. A copy of Plaintiff's Complaint is attached hereto as Exhibit "A".

3. This Notice of Removal is being filed within thirty (30) days after receipt by the Defendant of the initial pleading setting forth the claim for relief upon which this action is based in accordance with 28 U.S.C. §1446(b).

4. This is a civil suit and involves controversy between citizens of different states. Plaintiff, upon information and belief, was at the time of the commencement of the above action a citizen of the Commonwealth of Pennsylvania.

{PH738112.1}

5.      Defendant, Trump Plaza Hotel and Casino, is located at 2500 Boardwalk, Atlantic City, NJ 08401, and is a New Jersey corporation.

6.      Defendant alleges and avers upon information and belief that the amount in controversy is in excess of $75,000.00, exclusive of interests and costs.  Further, Plaintiff's counsel has confirmed that the amount in controversy is in excess of $75,000, and Plaintiff will not agree to limit her damages to $75,000.00.  Plaintiff has alleged a rotator cuff tear as a result of the alleged incident, as well as several injections.

7.      The above-described Civil Action is one in which this Honorable Court has original jurisdiction pursuant to Title 28 United States Code Section 1332 based upon the fact that there exists diversity of citizenship between the parties and the amount in controversy is in excess of $75,000.00, exclusive of interests and costs, and is accordingly one which may be removed to this Honorable Court by Notice pursuant to Title 28, United States Code, Section 1441.

8.      Promptly after filing this Notice of Removal in this Honorable Court, a copy of this Notice of Removal will be filed with the Court of Common Pleas of Philadelphia County, Commonwealth of Pennsylvania, in accordance with 28 United States Code, Section 1446(d).

9.      Copies of all process, pleadings and order served upon defendant as of the time of this removal are attached hereto in accordance with 28 United States Code, Section 1446(a).

10.     Defendant has contemporaneously with the filing of this Notice of Removal given written notice to Plaintiff's counsel.

WHEREFORE, Defendant respectfully requests that this action, currently docketed in the

Court of Common Pleas of Philadelphia County be removed to the United States District Court for the

Eastern District of Pennsylvania.

**MARKS, O'NEILL, O'BRIEN.
DOHERTY & KELLY, P.C.**

By: ___JPV3138_____

        Jamie P. Vaughan, Esquire
        Attorney I.D. No.: 93531
        1800 JFK Boulevard, Suite 1900
        Philadelphia, Pa. 19103
        215-564-6688
        Attorney for Defendant

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of the Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE SIDE OF THE FORM.)

## I.(a) PLAINTIFFS
Elizabeth Watson, Plaintiff(s)

**DEFENDANTS**
**Trump Plaza Hotel and Casino, Defendant(s)**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Philadelphia County, PA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Atlantic County , NJ
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(C)** ATTORNEY'S (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Albert J. Brooks, Jr., Esquire
Fodera & Long, P.C.
1500 Walnut Street, Suite 900
Philadelphia, PA 19102

ATTORNEYS (IF KNOWN)
Marks, O'Neill, O'Brien, Doherty & Kelly, P.C.
1800 JFK Boulevard, Suite 1900
Philadelphia, PA 19103

## II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

xx 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT
FOR DIVERSITY CASES ONLY

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X1 | ☐ 1 | Incorporated or Principle Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | X 2 | Incorporated and Principle Place of Business in Another State | ☐ 5 | X 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)
2120 Premises Liability - Personal Injury

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med - Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks & Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Liable & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/ etc.. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgement | ☐ 330 Federal Employer's Liability | **PERSONAL PROPERTY** | ☐ 640 R. R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | X 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contact Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Free Determination Under Equal Access to Justice |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeaus Corpus: | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS - Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Other | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☐ 1 Original Proceeding
X 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgement

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23
DEMAND $ 300,000.00
Check YES only if demanded in complaint:
JURY DEMAND: X YES ☐ NO

## VIII. RELATED CASE(S) IF ANY
(SEE INSTRUCTIONS)
N/A
JUDGE Judge of Related Case
DOCKET NUMBER Docket Number of Related Case

DATE: February 28, 2014
SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

063-97233

| | |
|---|---|
| ELIZABETH WATSON | CIVIL ACTION |
| vs. | NO. |
| TRUMP PLAZA HOTEL AND CASINO | |

## DISCLOSURE STATEMENT FORM

Please check one box:

☑      The nongovernmental corporate party, __Trump Plaza Hotel and Casino__
in the above listed civil action does not have any parent corporation and publicly
held corporation that owns 10% or more of its stock.

☐      The nongovernmental corporate party,_____., in the above listed civil action
has the following parent corporation(s) and publicly held corporation(s) that owns
10% or more of its stock:


__February 28, 2014__         ___/s/Jamie P. Vaughan_____
Date                            Signature

             Counsel for: __Trump Plaza Hotel and Casino_____

**Federal Rule of Civil Procedure 7.1 Disclosure Statement**

(a)    WHO MUST FILE; CONTENTS. A nongovernmental corporate party must file
Two copies of a disclosure statement that:
     (1)    identifies any parent corporation and any publicly held corporation
owning 10% or more of its stock; or

     (2)    states that there is no such corporation.

(b)    TIME TO FILE; SUPPLEMENTAL FILING. A party must:
     (1)    file the disclosure statement with its first appearance, pleading,
petition, motion, response, or other request addressed to the court;
and
     (2)    promptly file a supplemental statement if any required information
changes.

{PH738105.1}

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _____315 S. Broad Street, Philadelphia, PA  19107_____

Address of Defendant: _____2500 Boardwalk, Atlantic City, NJ  08401_____

Place of Accident, Incident or Transaction: Trump Plaza Hotel and Casino, 2500 Boardwalk, , Atlantic City, NJ  08401
_____(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporateparty with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))        Yes☐   No**X**

Does this case involve multidistrict litigation possibilities?        Yes☐   No**X**

RELATED CASE, IF ANY:

Case Number: _____Judge _____Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
                                                                                                Yes☐   No**X**

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated
    action in this court?                                                                       Yes☐   No**X**

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously
    terminated action in this court?                                    Yes☐   No**X**

CIVIL: (Place ✓ in ONE CATEGORY ONLY)

A.  Federal Question Cases:                                           B.  Diversity Jurisdiction Cases:

1.  ☐ Indemnity Contract, Marine Contract, and All Other Contracts    1.  ☐ Insurance Contract and Other Contracts
2.  ☐ FELA                                                            2.  ☐ Airplane Personal Injury
3.  ☐ Jones Act-Personal Injury                                       3.  ☐ Assault, Defamation
4.  ☐ Antitrust                                                       4.  ☐ Marine Personal Injury
5.  ☐ Patent                                                          5.  ☐ Motor Vehicle Personal Injury
6.  ☐ Labor-Management Relations                                      6.  **X** Other Personal Injury (Please specify) Slip & Fall
7.  ☐ Civil Rights                                                    7.  ☐ Products Liability
8.  ☐ Habeas Corpus                                                   8.  ☐ Products Liability — Asbestos
9.  ☐ Securities Act(s) Cases                                         9.  ☐ All other Diversity Cases
10. ☐ Social Security Review Cases                                           (Please specify)
11. ☐ All other Federal Question Cases
       (Please specify)

## ARBITRATION CERTIFICATION
(Check appropriate Category)

I, Jamie P. Vaughan _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case        exceed
the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _2/28/14_____        _____        __93531_____
                                  Attorney-at-Law                  Attorney I.D.#

       **NOTE:**  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court
except as noted above.

DATE: _____        _____        __93531_____
                                  Attorney-at-Law                  Attorney I.D.#

CIV. 609 (4/03)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| ELIZABETH WATSON | : | CIVIL ACTION |
| 315 S. Broad Street | : | |
| Philadelphia, PA 19107 | : | |
| v. | : | NO. |
| TRUMP PLAZA HOTEL AND CASINO | : | |
| 2500 Boardwalk | : | |
| Atlantic City, NJ 08401 | : | |
| | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)  Habeas Corpus -- Cases brought under 28 U.S.C. §2241 through §2255.                    (  )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
       and Human Services denying plaintiff Social Security Benefits                          (  )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( X )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
       exposure to asbestos.                                                                   (  )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
       commonly referred to as complex and that need special or intense management by
       the court. (See reverse side of this form for a detailed explanation of special
       management cases.)                                                                      (  )

(f)  Standard Management – Cases that do not fall into any one of the other tracks.            (  )


| | | |
|---|---|---|
| February 28, 2014 | | Trump Plaza Hotel and Casino |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215)564-6688 | (215)564-2526 | jvaughan@moodklaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

COMMONWEALTH OF PENNSYLVANIA      :
                                          :     SS
                                          :
                                          :
COUNTY OF PHILADELPHIA            :

## **AFFIDAVIT**

Jamie P. Vaughan, Esquire being duly sworn according to law deposes and says that the facts

set forth in the foregoing Notice of Removal are true and correct to the best of his knowledge,

information and belief.

_____
Jamie P. Vaughan, Esquire

Sworn to and Subscribed
before me this 28 day of
FEBRUARY , 2014.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
STEVEN M. ROSE, Notary Public
City of Philadelphia, Phila. County
My Commission Expires December 4, 2016

{PH738112.1}

# IN THE UNITED STATED DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

063-97233

| | |
|---|---|
| ELIZABETH WATSON | CIVIL ACTION |
| vs. | NO. |
| TRUMP PLAZA HOTEL AND CASINO | |

## **CERTIFICATE OF SERVICE**

I hereby certify that this 28th    day of    **February 2014,** a true and correct copy of

the Defendant's Notice to Remove was served on all parties of record by electronic filing and/or first

class mail, postage prepaid.

**MARKS, O'NEILL, O'BRIEN,
DOHERTY & KELLY, P.C.**

By:   JPV3138
        Jamie P. Vaughan, Esquire
        Attorney for Defendant
        1800 JFK Boulevard, Suite 1900
        Philadelphia, Pa. 19103
        215-564-6688

{PH738112.1}

# EXHIBIT A

FODERA & LONG, P.C.
By: Leonard V. Fodera, Esquire (57203)
Albert J. Brooks, Jr., Esquire (72085)
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
215.569.1212
Our File No.: 30193

Filed and Attested by
PROTHONOTARY
17 JAN 2014 04:53 pm
E. EDWARDS

Attorneys for Plaintiff

| | |
|---|---|
| ELIZABETH WATSON<br>315 S. Broad Street<br>Philadelphia, PA 19107<br><br>Plaintiff,<br><br>v.<br><br>TRUMP PLAZA HOTEL AND CASINO<br>2500 Boardwalk<br>Atlantic City, NJ 08401<br><br>Defendant. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>JANUARY TERM, 2014<br><br>NO.:<br><br>*CIVIL ACTION COMPLAINT*<br>*MAJOR JURY TRIAL DEMANDED* |

## CIVIL ACTION COMPLAINT
## PREMISES LIABILITY

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help

**PHILADELPHIA BAR ASSOCIATION**
**LAWYER REFERRAL & INFORMATION SERVICE**
One Reading Center
Philadelphia, PA 19107
**(215) 238-1701 / TTY (215) 451-6197**

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparecencia escrita o en persona o con un

abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte

puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.

Asociacion De Licenciados De Filadelfia
Servicio De Referencia E Informacion Legal
One Reading Center
Filadelfia, PA 19107
**(215) 238-6333 / TTY (215) 451-6197**

1

Case ID: 140101925

FODERA & LONG, P.C.
By: Leonard V. Fodera, Esquire (57203)
Albert J. Brooks, Jr., Esquire (72085)
1500 Walnut Street, Suite 900
Philadelphia, PA   19102                                          Attorneys for Plaintiff
215.569.1212
Our File No.:   30193

| | |
|---|---|
| ELIZABETH WATSON<br>315 S. Broad Street<br>Philadelphia,   PA 19107<br><div align="right">Plaintiff,</div><br>v.<br><br>TRUMP PLAZA HOTEL AND CASINO<br>2500 Boardwalk<br>Atlantic City, NJ 08401<br><div align="right">Defendant.</div> | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>JANUARY TERM, 2014<br><br>NO.:<br><br>*CIVIL ACTION COMPLAINT*<br>*MAJOR JURY TRIAL DEMANDED* |

## CIVIL ACTION COMPLAINT
## PREMISES LIABILITY

1.     Plaintiff, Elizabeth Watson, (hereinafter referred to as ("Plaintiff"), is an adult

individual who resides at the address identified in the caption above.

2.     Defendant, Trump Plaza Hotel & Casino, is an organized and existing business

entity having a place of business at the address identified in the caption above.

3.     At all times material and relevant to this complaint, defendant, Trump Plaza

Hotel & Casino, as an entity, and/or through its agents, owned, managed, controlled and/or

maintained a certain property located at 2500 Boardwalk, Atlantic City, NJ 08401.

4.     At all relevant times, defendant, Trump Plaza Hotel & Casino, acted alone and/or

by and through their employees, agents and/or ostensible agents.

<div align="right">Case ID: 140101925</div>

5.      At all relevant times, defendant, Trump Plaza Hotel & Casino, had a duty keep the above-referenced property free and clear of any unreasonable dangers or hazards, and/or to prevent any new or increased hazards or dangers from occurring through their own conduct and/or the conduct of its employees, agents and/or ostensible agents.

6.      On, or about, August 13, 2013, plaintiff was lawfully at the aforementioned location as a business invitee, when she was caused to slip and fall, thereby sustaining serious bodily injuries, including but not limited to, injuries to her head, back, neck, left shoulder, and other ills and injuries.

7.      Plaintiff was caused to fall due to the dangerous conditions of the premises, specifically, a wet and slippery marble floor directly in front of the entrance/exit onto the Boardwalk at the entrance to said premises.

8.      The dangerous condition of the said premises which caused plaintiff's slip and fall was a danger and/or hazard which was the result of the negligence and/or breach of the aforementioned duties of defendants, their employees, agents and/or ostensible agents.

9.      As a direct and proximate result of defendant's negligence, the negligent conduct of its employees, and this resulting accident, plaintiff, Elizabeth Watson, suffered serious and permanent injuries, including, but not limited to, injuries to her head, neck, back and left shoulder, and other ills and injuries.

10.      As a direct and proximate result of defendant's aforementioned conduct, plaintiff suffered significant pain and suffering, anguish, inconvenience, loss of life's pleasures, and/or scarring/disfigurement.

Case ID: 140101925

# COUNT I
## WATSON v. TRUMP PLAZA HOTEL & CASINO
### NEGLIGENCE

11.     Plaintiff repeats each and every allegation of all preceding paragraphs with the same force and effect as if set forth herein at length.

12.     Plaintiff avers that defendant had actual and/or constructive notice of the aforementioned dangerous condition.

13.     The aforesaid accident resulted solely from the negligence, and carelessness of defendant and/or its agents, employees and/or servants, herein and was due in no manner whatsoever to any act or failure to act on the part of plaintiff.

14.     The negligence and carelessness of defendant and/or its agents, employees and/or servants consisted of the following:

    a.      allowing a dangerous condition to exist on the aforesaid premises;

    b.      failing to properly maintain the aforesaid premises;

    c.      failing to properly create and/or maintain a safe environment within its property;

    d.      failing to properly train and/or instruct its employees, servants, and/or agents regarding how to create and/or maintain a safe environment within its property;

    e.      failing to properly inspect premises and monitor employees;

    f.      failing to adequately warn plaintiff of the dangerous condition;

    g.      failing to adequately warn business invitees, including plaintiff, of said dangerous condition;

    h.      failing to correct said dangerous condition;

Case ID: 140101925

        i.       failing to eliminate and/or otherwise correct the unreasonably dangerous condition which constituted a risk to persons such as plaintiff at its property;

        j.      having inadequate or non-existent enforcement of policies for addressing safe and proper interaction between employees and business invitees so as to avoid potential hazard to persons such as plaintiff; and

        k.      causing a dangerous condition.

15.     As a direct and proximate result of defendant's aforementioned conduct, plaintiff suffered severe, painful and/or permanent bodily injuries.

16.     As a further result of this accident, plaintiff has been obligated to receive medical attention and care for her injuries, and to incur various expenses for said care, and will be obligated to continue to expend such sums and expenditures and may continue to expend such sums for an indefinite time in the future.

17.     As a further result of this accident, plaintiff has been unable to attend to her daily chores, duties, occupations, and may be unable to do so for an indefinite period of time in the future.

18.     As a further result of this accident, plaintiff has or may continue to in the future incur other financial expenses or losses to which she is entitled to recover.

19.     As a further result of this accident, plaintiff has suffered severe physical pain, aches, fear, mental anguish, humiliation, inconveniences, and loss of life's pleasures, and will continue to suffer the same for an indefinite time in the future.

Case ID: 140101925

WHEREFORE, Plaintiff, ELIZABETH WATSON, demands damages from the

Defendant herein in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with

interest, costs of suit, attorney fees and damages for delay.

FODERA & LONG, P.C.

Leonard V. Fodera, Esq.
Albert J. Brooks, Jr., Esq.
Fodera & Long, P.C.
1500 Walnut Street – Suite 900
Philadelphia, PA 19102
*Attorneys for Plaintiff*

Dated: _____

Case ID: 140101925

## VERIFICATION

I, Elizabeth Watson, hereby state that I am the plaintiff in this action and verify that the statements made in the foregoing *Civil Action complaint* are true and correct to the best of my knowledge, information and belief.    I understand that the statements therein are made subject to the penalties of 18 Pa. C.S. §4909 relating to unsworn falsification to authorities.

*Elizabeth Watson*
Elizabeth Watson

Date: 1-14-14

Case ID: 140101925