**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X

JANE DOE, LUKE LOE, RICHARD ROE, and MARY   :
MOE, individually and on behalf of all others similarly   :
situated,   :
  :
                 *Plaintiffs,*   :
  :     No. 1:18-cv-09936 (LGS)
      v.   :
  :
THE TRUMP CORPORATION, DONALD J. TRUMP, in   :
his personal capacity, DONALD TRUMP, JR., ERIC   :
TRUMP, and IVANKA TRUMP,   :
  :
               *Defendants.*   :
  :
-------------------------------------------------------------------------X

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION

Joanna C. Hendon
Cynthia Chen
Andrew L. Kincaid
SPEARS & IMES LLP
51 Madison Avenue
New York, New York  10010
Tel: (212) 213-6996

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL BACKGROUND ........................................................................................ 2

RELEVANT FACTS ............................................................................................................ 4

      A.    The ACN Business Opportunity ........................................................................ 4

      B.    Plaintiffs Fail to Recoup Their Enrollment Fees ............................................. 6

ARGUMENT ........................................................................................................................ 7

   I.    The FAA and Precedent Require the Court to Enforce the Arbitration Agreement ........... 7

  II.   The Court Should Compel Arbitration and Stay the Case .................................. 8

      A.    Plaintiffs Agreed to Arbitrate these Claims .................................................... 8

      B.    Principles of Agency and Equitable Estoppel Require Arbitration ............................ 10

  III.   The Motion to Compel Arbitration is Timely ................................................. 15

CONCLUSION .................................................................................................................. 20

## **TABLE OF AUTHORITIES**

### **Cases**

*Alghanim v. Alghanim*,
    828 F. Supp. 2d 636 (S.D.N.Y. 2011) ..................................................................... 11

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ........................................................................................... 7

*Bankers Conseco Life Ins. Co. v. Feuer*,
    2018 WL 1353279 (S.D.N.Y. Mar. 15, 2018) ......................................................... 13

*Com-Tech Assoc. v. Computer Assoc.*,
    938 F.2d 1574, 1577-78 (2d Cir. 1991) ................................................................. 20

*Contec Corp. v. Remote Sol., Co.*,
    398 F.3d 205 (2d Cir. 2005) .................................................................................. 9

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
    2017 WL 3524682 (S.D.N.Y. Aug. 15, 2017) ........................................................ 14

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ........................................................................................... 8

*Denney v. BDO Seidman, LLP*,
    412 F. 3d 58 (2d Cir. 2005) ........................................................................... 10, 14

*Dunmire v. Hoffman*,
    2006 WL 2466248 (S.D.N.Y. Aug. 24, 2006) ......................................................... 11

*Fensterstock v. Educ. Fin. Partners*,
    2012 WL 3930647 (S.D.N.Y. 2012) ................................................................ 10, 14

*Gonder v. Dollar Tree Stores, Inc.*,
    144 F. Supp. 3d 522 (S.D.N.Y. 2015) ................................................................... 17

*Gutierrez v. Wells Fargo Bank, NA*,
    889 F.3d 1230 (11th Cir. 2018) ...................................................................... 18, 19

*Guyden v. Aetna, Inc.*,
    544 F.3d 376 (2d Cir. 2008) .................................................................................. 8

*Horton v. Dow Jones & Co., Inc.*,
    2019 WL 952314 (S.D.N.Y. Feb. 27, 2019) .......................................................... 15

*Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*,
   434 F. Supp. 2d 211 (S.D.N.Y. 2006)......................................................................18

*KPMG LLP v. Cocchi*,
   565 U.S. 18 (2011)..........................................................................................................7

*Kramer v. Hammond*,
   943 F.2d 176 (2d Cir. 1991)........................................................................................20

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*,
   67 F.3d 20 (2d Cir. 1995)...............................................................................16, 19, 20

*Lewis Trees Serv., Inc. v. Lucent Techs. Inc.*,
   239 F. Supp. 2d 332 (S.D.N.Y. 2002).........................................................................8

*La. Stadium & Exposition Dist. v. Merrill Lynch*,
   626 F.3d 156 (2d Cir. 2010).................................................................................16, 19

*Medidata Solutions, Inc. v. Veeva Systems Inc.*,
   748 F. A'ppx. 363 (2d Cir. 2018) ..............................................................................15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985).......................................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ...............................................................................................8, 16, 18

*Oldroyd v. Elmira Sav. Bank, FSB*,
   134 F.3d 72 (2d Cir. 1998)............................................................................................8

*PPG Indus. v. Webster Auto Parts, Inc.*,
   128 F.3d 103 (2d Cir.1997).........................................................................................16

*Ragone v. Atl. Video at Manhattan Ctr.*,
   595 F.3d 115 (2d Cir. 2010)...........................................................................10, 13, 14

*Ross v. American Exp. Co.*,
   547 F.3d 137 (2d. Cir. 2008).........................................................................11, 13, 15

*Rush v. Oppenheimer & Co.*,
   779 F.2d 885 (2d Cir. 1985)........................................................................................17

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011).....................................................................................................18

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
    542 F.3d 354 (2d Cir. 2008)............................................................................11, 15

*Standard Fire Ins. Co. v. Knowles,*
    568 U.S. 588 (2013)......................................................................................15, 18

*Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*,
    754 F.2d 457 (2d Cir. 1985)................................................................................17

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
    310 F.3d 102 (2d Cir. 2002)................................................................................16

*U.S.W.A. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960).............................................................................................8

## **Statutes**

9 U.S.C. § 2..................................................................................................................7, 9

9 U.S.C. § 4.....................................................................................................................8

28 U.S.C. § 1332............................................................................................................15

## **Rules**

AAA Commercial Rules, R-7 ..........................................................................................9

## PRELIMINARY STATEMENT

Defendants respectfully move to stay this action in favor of an order compelling Plaintiffs to arbitrate the state law claims that survived Defendants' motion to dismiss.  Plaintiffs are four men and women who paid $499 to American Communications Network ("ACN"), a multi-level marketing company, for the right to market ACN products and services, and who failed to recoup those fees.  Before enrolling in ACN, Plaintiffs were required to agree in writing to resolve any dispute with ACN "arising out of or relating to" their agreement through binding arbitration.

Between 2006 and 2015, Mr. Trump provided celebrity endorsement services to ACN by appearing in ACN-branded videos and magazine articles and at ACN-branded events for which he was paid.  According to Plaintiffs, Mr. Trump fraudulently touted the ACN business opportunity, promising recruits they stood to make money when they did not.  In truth, Plaintiffs allege, ACN was a fraud designed to enrich its owners at the expense of those the company targeted.  The Complaint declares ACN "central to" the claims asserted against Defendants, and Mr. Trump's endorsement "critical" to the company's success.  "It was ACN's ability to associate itself with the Trump brand – a right that ACN secretly bought from the Trump Enterprise – that drove the fraudulent message home and pushed investors to overcome lingering doubts and invest in the ACN business opportunity," they allege.

In an obvious bid to avoid arbitration, Plaintiffs chose not to sue the primary violator. But under settled principles of agency and equitable estoppel, Defendants may compel Plaintiffs to arbitrate the claim against them.  That is because the Complaint alleges Defendants and ACN acted in concert to defraud Plaintiffs, and the claims against Defendants all arise from ACN's alleged failure to perform under the contracts it signed with Plaintiffs.  In circumstances like these – Second Circuit precedent holds – it is unfair to allow Plaintiffs to avoid arbitrating their

claims with Defendants simply because Defendants did not sign the contracts.

This motion is timely because Plaintiffs cannot establish prejudice from the delay between the filing of the action and Defendants raising with the Court their intention to seek to compel Plaintiffs to arbitrate.  Defendants have not yet answered the Complaint, and discovery was stayed.  Other than Plaintiffs' motion to proceed pseudonymously and Defendants' motion to stay discovery, the only litigation in this Court was Defendants' Rule 12(b)(6) motion – and Defendants notified the Court of their intention to compel Plaintiffs to arbitrate before that motion was decided.  Litigation costs, such as those incurred by Plaintiffs to oppose the motion to dismiss and amend the complaint, as a matter of law do not support waiver.  Further, over Defendants' strenuous objection, the Court in this case permitted Plaintiffs to shield their identities not only from the public docket, but also from *Defendants*, pending decision on the motion to dismiss.  As a result, Defendants did not know Plaintiffs' names and could not discover from ACN the arbitration agreements at issue beforehand.

## **PROCEDURAL BACKGROUND**

On October 29, 2018, Plaintiffs filed this action under pseudonyms.  On December 20, 2018, over Defendants' objection, the Court ruled that Plaintiffs could remain anonymous, not only on the docket but from Defendants as well.  (ECF No. 59 at pages 25-29.)  To ameliorate the prejudice to Defendants associated with that ruling, the Court cautioned that it would permit Plaintiffs to remain anonymous until decision on Defendants' anticipated motion to dismiss. (ECF No. 59 at page 29 ("If the case survives [the motion to dismiss], Plaintiffs may renew the motion at that time").)  On January 14, 2019, Defendants moved to dismiss the Complaint for failure to state a claim.  (ECF Nos. 65 & 66.)  Rather than oppose that motion, Plaintiffs filed the Amended Complaint.  (ECF No. 77.)  On February 21, 2019, Defendants moved to dismiss the

Amended Complaint for failure to state a claim.  (ECF Nos. 84 & 85.)  On March 14, 2019, that

motion was fully submitted.  (ECF Nos. 86 & 90.)  Four months later, on July 11, 2019, with

decision on the motion to dismiss still pending, Defendants advised Plaintiffs that, were the

Court to deny the motion (or to grant it with permission to replead), Defendants would seek to

stay whatever remained of the action in favor of arbitration.  (ECF No. 94, Ex. A).  Plaintiffs

responded (*id.*, Ex. B), and on July 19, 2019, Defendants submitted the parties' correspondence

to the Court, stating:

> The Court's Individual Rules and Procedures ordinarily do not provide for such
> correspondence to be filed with the Court.  Because the contemplated motion to
> compel arbitration would be dispositive, if granted, and because there is already
> pending a dispositive motion, we write respectfully to request the Court's
> guidance as to how to proceed.  (ECF No. 94.)

On July 24, 2019, the Court issued an order dismissing Plaintiffs' RICO claims for failure

to state a claim and retaining jurisdiction over the state law claims (ECF No. 97), thereby

dissolving Plaintiffs' right to remain anonymous.  On July 31, 2019, Defendants requested that

Plaintiffs disclose their identities.  (ECF No. 104, Ex. B.)  Plaintiffs refused.  (ECF No. 104 at 9-

10.)  On September 5, 2019, the Court held a pretrial conference at which it suggested that

Defendants had waived their right to compel arbitration by filing a Rule 12(b)(6) motion.[1]

Defendants argued they should be permitted to conduct limited discovery in order to obtain

Plaintiffs' arbitration agreements and noted Plaintiffs still had not disclosed their identities to

Defendants.  (*See* ECF No. 104 at 9-10.)  The Court rejected those arguments, directing

Defendants to brief the issue of waiver, only.  The next day, the Court issued an order directing

Defendants to file "a motion to compel arbitration" and to "assume only for purposes of the

motion that Plaintiffs and the putative class members agreed with ACN to arbitrate."  (ECF No.

---

[1] There is no transcript or tape recording of the September 5 conference.  Defendants sought to order the transcript
on that date; the court reporters informed Defendants that the Court had conducted the conference off the record.

106.)  The Court further instructed Defendants to file with this motion copies of the unsigned agreements at issue.  (*Id.*)  Plaintiffs do not deny that they signed agreements in the form of those attached to this memorandum or that they agreed to arbitrate disputes with ACN arising from those agreements.  Nor have Plaintiffs contested the enforceability of any term of the arbitration provisions, and Defendants would be willing to discuss waiver were they to do so.

## RELEVANT FACTS

### A.    The ACN Business Opportunity

ACN is a multi-level marketing company that operates from its headquarters in Concord, North Carolina through a network of thousands of representatives who pay ACN for the right to market ACN products and services directly to customers and who recruit others to do the same. (Compl. ¶¶ 80-81; ECF No. 85, Exh. 1 at 1.)  Founded in 1993, ACN describes itself as the world's largest "direct seller" of telecommunications and essential services for home and business.  (ECF No. 85, Exh. 1 at 1-2.)  ACN encourages individuals to become "Independent Business Owners" ("IBOs").  (Compl. ¶ 80.)  Plaintiffs became IBOs in 2013 (Mary Moe), in 2014 (Luke Loe and Jane Doe), and in 2016 (Richard Roe), which entitled them to market ACN products and services directly to their own customers and to recruit others to do the same.  (*Id.* ¶ 181 (Doe); *id.* ¶¶ 220 (Loe); *id.* ¶ 235 (Roe); *id.* ¶ 259 (Moe).)  IBOs pay an initial sign-up fee and an annual renewal fee in order to be able to sell ACN's products and services.  (*Id.* ¶ 80.) Between 2013 and 2016, the sign-up fee was $499 and the renewal fee was $149.  (*Id.*)  An IBO could earn small commissions on sales and billings to customers who purchase ACN products and services through the IBO, with additional bonuses for meeting sales targets.  (*Id.* ¶ 81.) IBOs could also earn money by recruiting others to sign up as IBOs.[2]  (*Id.*)

---

[2] Citations to the Complaint refer to the Amended Complaint, filed at ECF No. 77.

The "lifeblood" of ACN's recruiting operation is small group events hosted by IBOs in their homes or at local hotels and event spaces.  (*Id*. ¶ 82.)  To help IBOs in their sales and recruitment efforts, ACN sells a series of "Business Tools," including DVDs (branded "Opportunity Discs") and magazines.  (*Id.*)  At these small-group recruiting events, hosts typically play the DVDs and distribute the materials they have bought from ACN.  (*Id*. ¶ 83.) Three of the four Plaintiffs began their association with ACN in this fashion, at small-group meetings.  (*Id*. ¶¶ 183-96 (Doe); *id.* ¶¶ 220, 222-25 (Loe); *id.* ¶¶ 260-69 (Moe).)

Before enrolling, IBOs must enter into an ACN Independent Business Owner Agreement in which they agree to submit any disputes with ACN arising from that agreement to mandatory arbitration.[3]  In 2013 and 2014, when Plaintiffs Moe, Doe and Loe became IBOs, the IBO Agreements provided:  "In the event of a dispute between me and ACN as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is agreed that such disputes shall be exclusively resolved through binding arbitration before the ['AAA'] pursuant to the Commercial Rules of Arbitration."  In 2016, when Plaintiff Roe signed up, the IBO Agreement stated that, "In the event of a dispute between ACN and me as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is mutually agreed that such disputes shall be exclusively resolved through . . . binding arbitration before the [AAA] pursuant to the Commercial Rules of Arbitration.  Both ACN and I agree that all disputes will be resolved on an individual basis and that each may only bring claims against the other in an individual capacity (and not as a claimant or class member in any purported class or representative proceeding)."  Defendants are not signatories to these agreements.

---

[3] Attached hereto as Exhibits A-C, as directed by the Court (ECF No. 106), are true and correct copies of unexecuted ACN IBO Agreements issued by ACN in 2013, 2014 and 2016, previously filed at ECF No. 85, Ex. 7-9. The provisions excerpted herein are referred to collectively as "The Arbitration Agreement."

Between 2006 and 2015, Mr. Trump provided celebrity endorsement services to ACN, by appearing in ACN promotional videos and magazine articles and at ACN events for which he was paid.  (Compl. ¶¶ 88-96.)  ACN-branded videos viewed by Plaintiffs contained the following types of statements by Mr. Trump:

    a.  "ACN has a reputation for success.  Success that's really synonymous with the Trump name … and you can be a part of it."  (Compl. ¶¶ 116, 212, 226, 254, 264.)

    b.  "You have a great opportunity before you at ACN without any of the risks most entrepreneurs have to take.  You have the ability to market breakthrough technology before it hits the critical mass.  I've experienced the opportunity that exists when you're able to jump ahead of the curve, and ACN gives you that opportunity." (*Id.* ¶¶ 107, 212, 226, 254, 265.)

    c.  "Direct selling is actually one of the oldest, most respected business models in the world.  And has stood the test of time most importantly.  ACN approaches it with a fresh perspective that you won't find anywhere else.  I know what it takes to be a success and ACN has a winning business model, and I mean winning."  (*Id.* ¶¶ 114, 226, 254).

    d.  "ACN provides you with everything you need to be successful.  All the training, support and tools, combine that hard work and commitment and you'll be well on your way to living the lifestyle that you deserve." (*Id.* ¶¶ 119, 254.)

(*See also* ECF No. 84 at 8.)  In 2009 and 2011, the company's founders appeared on *The Celebrity Apprentice*.  (Compl. ¶¶ 99-103.)  During the 2011 episode, Mr. Trump stated, "[O]n my right are two friends of mine, Greg Provenzano and Mike Cupisz.  They run a company called ACN, which I know very well.  It's a home-based marketing company for individuals and it's in over twenty countries.  Greg, tell us about your company."  (ECF No. 85, Exh. 10-T at 1.)

## B.    Plaintiffs Fail to Recoup Their Enrollment Fees

Once enrolled, Plaintiffs found only limited success as IBOs.  Doe renewed her ACN subscription for a second year and persuaded her sister to enroll as an IBO before concluding that the ACN business opportunity was no longer a worthwhile investment.  (Compl. ¶¶ 202-03, 211; *see also id.* ¶ 216.)  Loe recruited his friend Doe, but never received any income from ACN and "came to realize that . . . ACN was not a good money making opportunity and decided not to

renew his membership."  (*Id.* ¶¶ 22, 227-28.)  Mary Moe "immersed herself in information about [ACN]."  (*Id.* ¶ 270).  She watched ACN videos, read ACN pamphlets, and attended "dozens of meetings" hosted by more senior IBOs.  (*Id.* ¶¶ 270-75.)  Moe enrolled her son in ACN and renewed her subscription for a second year.  (*Id.* ¶ 278.)  "She believed that she could become the next [star IBO] if she tried hard enough," but she was "unable to find success."  (*Id.* ¶¶ 277-78.)  Richard Roe worked with an IBO "mentor" who taught him to use the ACN business tools, but Roe found it difficult to recruit new IBOs or to sell ACN products or services, and once his "mentor stopped reached out to him," he had no motivation to continue.  (*Id.* ¶¶ 249-56.)

## ARGUMENT

Under theories of equitable estoppel and agency, the Court should stay all further proceedings in this case in favor of individual arbitration.

## I.    The FAA and Precedent Require the Court to Enforce the Arbitration Agreement

The Arbitration Agreement is governed by the Federal Arbitration Act ("FAA").  (Ex. A & B, ¶ 16; Ex. C, ¶ 17.)  "The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  Under FAA Section 2, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The [FAA] reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'"  *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).  The FAA, and the strong federal policy favoring arbitration that it embodies, requires courts to "rigorously enforce agreements to arbitrate."  *See Mitsubishi Motors Corp.*, 473 U.S.at 626.  FAA Section 4 provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a

written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Where, as here, a valid arbitration agreement covers the dispute at issue, a district court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court").

## II.     The Court Should Compel Arbitration and Stay the Case

### A.     Plaintiffs Agreed to Arbitrate these Claims

In determining whether a dispute is arbitrable, a court must resolve the following questions: (1) whether there exists a valid agreement to arbitrate; and (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement. *See Lewis Trees Serv., Inc. v. Lucent Techs. Inc.*, 239 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2002) (abrogated on other grounds) (citing *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75 (2d Cir. 1998) (abrogated on other grounds)). In resolving these questions, "courts must 'construe arbitration clauses as broadly as possible,' and 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* at 336; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) ("The FAA embodies the 'liberal federal policy favoring arbitration agreements' and 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"). The federal presumption of arbitrability requires that arbitration be compelled unless it may be said with "positive assurance" that the parties' agreement "is not susceptible of an interpretation that covers . . . the dispute." *U.S.W.A. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

Plaintiffs do not dispute that they accepted the terms and conditions set forth in the

Arbitration Agreement (ECF No. 94, Ex. B; ECF No. 104 at 1-3), and for purposes of this motion, the Court has instructed the parties to assume that they did (ECF No. 106). The FAA declares that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Plaintiffs have not challenged the enforceability of the Arbitration Agreement (ECF No. 94, Ex. B; ECF No. 104 at 1-3), and the Arbitration Agreement requires such questions to be resolved "pursuant to the Commercial Rules of Arbitration," (Ex. A & B, ¶ 16; Ex. C, ¶ 17), Rule 7(a) of which delegates to the arbitrator "any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Commercial Rules, R-7(a); *see also Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) ("[W]hen, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." (discussing AAA Commercial Rule 7(a))).

Claims that ACN and Defendants fraudulently induced Plaintiffs to enter into IBO Agreements that proved worthless indisputably "aris[e] out of or relat[e] to" those contracts, such that Plaintiffs claims are covered by the Arbitration Agreement. (Ex. A & B, ¶ 16.) Plaintiffs allege ACN used its affiliation with Mr. Trump and his family to induce them to join ACN. (Compl. ¶¶ 16-20.) For their part, Defendants assured Plaintiffs that ACN had the business model, experience, marketing tools and technology to ensure their success as IBOs. (*Id.*) Once signed up, Plaintiffs allege, they discovered that ACN was a scam – that it was all but impossible to recoup even their modest enrollment fees let alone grow a business large enough to employ others, as the ACN business model promised. (*Id.*) Plaintiffs' fraud claims thus impugn ACN's performance under the contracts it signed with them. Put differently, Plaintiffs will not prevail

upon a theory that they failed as IBOs because of something Defendants said or did (that is why the RICO claims failed), they instead will have to show ACN failed to deliver what it promised under the IBO Agreements, a dispute plainly "arising out of or relating to" those Agreements.

### B.  Principles of Agency and Equitable Estoppel Require Arbitration

"Under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed …, and the issues that had arisen among them discloses that the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126-27 (2d Cir. 2010) (alteration in original, internal quotation marks omitted).  With respect to this requirement, a party to an arbitration agreement may not allege a scheme to defraud by entity A (a signatory) and a non-signatory, where the fraud arises from the relationship between plaintiff and entity A, and then "escape the consequences of those allegations by arguing that [the non-signatory] and [entity A] lack the requisite close relationship or that plaintiffs' claims against the [non-signatory] are not connected to [the non-signatory's] relationship with [entity A]." *Denney v. BDO Seidman*, *LLP*, 412 F.3d 58, 70 (2d Cir. 2005).

"In addition to the 'intertwined' factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Ragone*, 595 F.3d at 127 (internal quotation marks and modifications omitted).  The test is objective.  It looks "'not to evidence that the estopped party actually intended or expected that any dispute with the non-signatory would be subject to arbitration,'" *Fensterstock v. Educ. Fin. Partners,* 2012 WL 3930647, at *4

(S.D.N.Y. 2012), but, rather, it asks whether plaintiff's agreement to arbitrate is "reasonably seen . . . as extending not only to the other signatory, but also to a non-signatory related to the latter . . . that was, or would predictably become, with the knowledge and consent of the party opposing arbitration, affiliated or associated with the other signatory in such a manner as to make it unfair to allow the party opposing arbitration to avoid its commitment to arbitrate on the ground that the non-signatory was not the very entity with which the party opposing arbitration had a contract." *Ross v. Am. Exp. Co.*, 547 F.3d 137, 145-46 (2d Cir. 2008) (internal quotation marks and modifications omitted) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008)).  In other words, given the information available to plaintiff at the time it agreed to arbitrate with entity A, including information plaintiff had about the relationship between entity A and a non-signatory, was it "reasonabl[e]" or "predictabl[e]," *Ross*, 547 F.3d at 145, under all of the circumstances, for plaintiff to anticipate that disputes between it and the non-signatory could be governed by the arbitration agreement it signed with entity A.

Separate and apart from the doctrine of equitable estoppel, an agency relationship between a contracting party and a non-signatory may supply a basis for compelling arbitration with a non-signatory.  While it is an open question in the Second Circuit, *Ross*, 547 F.3d at 143 n.3, courts in this district have held that "employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."  *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 650 (S.D.N.Y. 2011) (internal quotation marks omitted); *see also Fensterstock*, 2012 WL 3930647 at *4 ("an agent of a signatory to a contract is one of the parties entitled to invoke the arbitration provisions" (citing *Ross*, 547 F.3d at 144)); *Dunmire v. Hoffman*, 2006 WL 2466248, at *3 (S.D.N.Y. Aug. 24, 2006) ("Generally, employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement.").

Plaintiffs' claims are arbitrable under either theory.  Under the doctrine of equitable estoppel, the claims against Defendants are plainly "intertwined with" the agreement that Plaintiffs signed with ACN.  The Complaint alleges that, on ACN video disks shown at ACN IBO meetings, in ACN print media and at ACN rallies, Mr. Trump misrepresented the business opportunity offered by ACN and whether he was being paid to do so.  (Compl. ¶¶ 88-96.) Plaintiffs contend ACN was "central to" the claims against Defendants (*id.* ¶ 16), and that Mr. Trump's endorsement was "critical" to the success of ACN (*id.* ¶ 85).  "It was ACN's ability to associate itself with the Trump brand – a right that ACN secretly bought from the Trump Enterprise – that drove the fraudulent message home and pushed investors to overcome lingering doubts and invest in the ACN business opportunity," they allege.  (*Id.* ¶ 177; *see also id.* ¶ 170 ("ACN itself . . . boasted of its relationship with Trump and the legitimacy the Trump brand afforded the Company"); *id.* ¶ 173 ("ACN made . . . clear that Trump's brand was an impactful recruiting tool for [IBOs] in two principal ways: first, it attracted the interest of prospective [IBOs] and second, it would help close the deal with prospective recruits"); *id.* ¶ 174 ("One of the most important tools available to ACN representatives today is obviously the Donald J. Trump endorsement" (emphasis removed)).)[4]

The requisite relationship between Plaintiffs and Defendants is also present.  Over nearly 200 pages, Plaintiffs sound a single complaint:  They signed up as IBOs, paid money to ACN and sustained damages for one reason, they believed the endorsement of Mr. Trump that they saw on ACN videos, read about in ACN magazines and heard discussed at ACN meetings. Accordingly, at the time Plaintiffs became IBOs, it was predictable – indeed it was obvious –

---

[4] These facts likewise establish an agency relationship between ACN and Defendants sufficient to compel Plaintiffs to arbitrate with Defendants on that basis.  (*See also* ECF No. 86 at 4 (Defendants perpetrated a fraud "on behalf of ACN"); *id* at 14 (ACN paid Mr. Trump "to speak on the Company's behalf").)

that any dispute that might arise between them and ACN concerning the ACN business

opportunity would likely implicate Mr. Trump.  This case thus fits the "pattern" of decisions in

this Circuit that have applied the doctrine of equitable estoppel to require signatories to arbitrate

with non-signatories where the promise to arbitrate by Plaintiffs is "reasonably seen . . . as

extending not only to the other signatory, but also to a non-signatory related to the latter . . . that

was, or would predictably become, with the knowledge and consent of the party opposing

arbitration, affiliated or associated with the other signatory in such a manner as to make it unfair

to allow the party opposing arbitration to avoid its commitment to arbitrate on the ground that the

non-signatory was not the very entity with which the party opposing arbitration had a contract."

*Ross*, 547 F.3d at 145-46 (internal quotation marks and modifications omitted).

     In *Ragone*, for example, the Court of Appeals found equitable estoppel where plaintiff, a

make-up artist, sued her employer (the production company with whom she agreed to arbitrate)

and ESPN, a client of her employer with whom she interacted while performing services for her

employer.  There, "Ragone admit[ted] she knew from the date of her employment by AVI that

she would work with and be supervised by ESPN personnel in the ordinary course of her daily

duties.  This knowledge that she would extensively treat with ESPN personnel is sufficient to

demonstrate the existence of a relationship between Ragone and ESPN that allows the latter to

avail itself of the arbitration agreement between Ragone and AVI."  595 F.3d at 128.  In *Denney*,

the Court of Appeals found the requisite relationship between plaintiffs and Deutsche Bank (a

non-signatory), where the lawsuit accused Deutsche Bank and BDO of acting in concert to

market fraudulent tax shelters to plaintiffs, and Deutsche Bank's contacts with plaintiffs arose in

connection with plaintiffs' dealings with BDO (with whom plaintiffs agreed to arbitrate).  *See*

412 F.3d at 70; *see also Bankers Conseco Life Ins. Co. v. Feuer*, 2018 WL 1353279, at *6-7

(S.D.N.Y. Mar. 15, 2018) (same where the complaint alleged that an affiliate and individual officers of that affiliate, with whom plaintiffs did not agree to arbitrate, fraudulently induced plaintiffs to contract with reinsurer, with whom plaintiffs did agree to arbitrate); *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 2017 WL 3524682, at *6-8 (S.D.N.Y. Aug. 15, 2017), *appeal withdrawn*, 2017 WL 8219086 (2d Cir. Dec. 19, 2017) (same where plaintiff "received a stream of information about [non-signatory] Ruane's role as the sole investment manager – through Plan documents, account statements and investment fee notices"); *Fensterstock,* 2012 WL 3930647 at *4 (same where plaintiff "worked with [non-signatory] ACS almost from the very beginning of his loan repayment, and ACS served as [signatory] EFP's agent for the servicing of [plaintiff's] loan").

In an effort to avoid this precedent, Plaintiffs claim that they believed Mr. Trump was "distinct" from ACN and an "objective observer[]" of the company rather than an "agent[] or employee[]." (ECF No. 104 at 2.) This badly mischaracterizes the Complaint, which accuses ACN of overtly and aggressively marketing its close relationship with the Trumps to prospective IBOs, including Plaintiffs, (*see e.g.,* Compl. ¶¶ 170-75), for the mutual benefit of ACN and Defendants, *see id*. n. 75 at 07:17 ("So let's talk about the extended relationship that you have with ACN"); *id*. n. 79 at 01:15, 01:24 ("You . . . have lots of choices, the opportunity to be involved with lots of companies, to endorse and have a relationship with endless opportunities," and "with all these choices, you've decided that you will now choose to be exclusive with ACN"); *id*. n. 66 at 02:29 ("ACN and everyone involved has really enjoyed their partnership with you, have you enjoyed the partnership with them? I have and we've just extended it so I'm very happy about that"); *id.* n. 99 at 01:31 ("I am asked to do this, what you're doing with me, many, many times, and I turn down many, many different proposals").

- 14 -

In fact, the Court of Appeals has declined to apply the doctrine of equitable estoppel only

rarely, and on facts readily distinguishable from these. *See Medidata Sols., Inc. v. Veeva Sys.*

*Inc.*, 748 F. A'ppx. 363, 367 (2d Cir. 2018) (refusing to find equitable estoppel, where

competitor "allegedly poach[ed]" plaintiffs' employees and, when sued, sought to avail itself of

the arbitration clause contained in plaintiffs' agreements with those employees, because "there is

'no unfairness' in denying equitable estoppel to a defendant who became 'aligned or associated'

with a signatory to the arbitration agreement 'by wrongfully inducing [the signatory] to breach

its obligation [to the plaintiff] under that contract'" (second and third alterations in original));

*Ross*, 547 F.3d at 148 (same where non-signatory defendant Amex was a "complete stranger" to

plaintiffs and to the banks, each a competitor of Amex, who issued plaintiffs' credit cards and

with whom plaintiffs agreed to arbitrate); *Sokol*, 542 F.3d at 362 (same, where the proffered

"close relationship" between the non-signatory and plaintiff arose entirely from the non-

signatory's tortious interference with the contract containing the arbitration clause).  Mr. Trump

was not a competitor or rival of ACN, nor is he accused of interfering with the IBO Agreements

he now seeks to enforce or of being a "stranger" to Plaintiffs, so removed from their dealings

with ACN that it would be unfair to require them to arbitrate their claims against him.[5]

## III.    The Motion to Compel Arbitration is Timely

"In determining whether a party has waived its right to arbitration by expressing its

---

[5] The Class Action Fairness Act "provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332).  Here, Plaintiffs purport to represent and seek certification of various classes, "consisting of . . . persons and entities who . . . invested in, subscribed or made payments to ACN." (Compl. ¶¶ 397-400, 405-408.)  But if Defendants may invoke the arbitration clause contained in the IBO Agreements, and if the Court is prepared to assume at this time that all putative class members signed such agreements (ECF No. 106), then Plaintiffs cannot possibly satisfy CAFA's minimum thresholds, and federal jurisdiction is lacking over the state law claims that remain.  *See Horton v. Dow Jones & Co., Inc.*, 2019 WL 952314, at *1 (S.D.N.Y. Feb. 27, 2019) (dismissing putative class claims based on class waiver and arbitration agreement and declining to exercise discretionary supplemental jurisdiction over state law claim despite CAFA jurisdiction).

intent to litigate the dispute in question, we consider the following three factors, '(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice.'" *La. Stadium & Exposition Dist. v. Merrill Lynch*, 626 F.3d 156, 159 (2d Cir. 2010). "There is no rigid formula or bright line rule" for identifying when a party has waived. *Id.* "[T]he above factors must be applied to the specific context of each particular case. That said, 'the key to a waiver analysis is prejudice. Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated.'" *Id.* (internal modifications omitted) (citing *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002)). The Court of Appeals recognizes "two types of prejudice: substantive prejudice and prejudice due to excessive cost and time and delay." *Id.* (citing *Thyssen, Inc.*, 310 F.3d at 105; *PPG Indus. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir.1997)). "Incurring legal expenses inherent in litigation without more, is insufficient evidence of prejudice to justify a finding of waiver." *PPG Indus.*, 128 F.3d at 107 (citing *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995)). Finally, the Supreme Court of the United State has made clear that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Cone Mem'l Hosp.*, 460 U.S. at 24-25.

Plaintiffs cannot establish prejudice from the delay between the filing of the action in October 2018 and Defendants' raising with the Court their intention to seek to compel Plaintiffs to arbitrate in July. Defendants have not yet answered, and discovery was stayed. The only litigation in this Court, other than Plaintiffs' motion to proceed pseudonymously and

Defendants' motion to stay discovery, was Defendants' Rule 12(b)(6) motion, and Defendants

raised with the Court their intention to compel Plaintiffs to arbitrate whatever claims remained

following decision on that motion before it was decided.  (ECF No. 94.)  Litigation costs such as

those incurred by Plaintiffs in opposing the motion to dismiss and amending the complaint, as a

matter of law do not support waiver.  Further, over Defendants' objection, the Court permitted

Plaintiffs to shield their identities not only from the public docket, but also from *Defendants*,

pending decision on the motion to dismiss.  As a result, Defendants did not know Plaintiffs'

names and could not discover from ACN the arbitration agreements at issue until July 24, 2019,

when the Court decided that motion and Plaintiffs' right to remain pseudonymous expired.  Any

purported "delay" therefore should be measured not from the filing of Plaintiffs' pseudonymous

pleading, but from July 24 and, as noted, Defendants brought to the Court's attention their

intention to seek to compel Plaintiffs to arbitrate whatever claims survived the motion to dismiss

on July 19.  (ECF No. 94.)

Under such circumstances there is no waiver.  *See Rush v. Oppenheimer & Co.*, 779 F.2d

885, 887-91 (2d Cir. 1985) (finding motion to compel arbitration timely after defendant filed its

motion to dismiss, answered, and participated in discovery); *accord Sweater Bee by Banff, Ltd. v.

Manhattan Indus., Inc.*, 754 F.2d 457, 463-66 (2d Cir. 1985) (motion to compel arbitration

timely after 12(b)(6) motion was briefed and decided);  *Gonder v. Dollar Tree Stores, Inc.*, 144

F. Supp. 3d 522, 527 (S.D.N.Y. 2015) ("Merely answering on the merits, appearing at hearings,

and participating in discovery, without more, will not necessarily constitute a waiver") (citation

omitted); *Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 434 F. Supp. 2d 211, 218

(S.D.N.Y. 2006) (granting defendant's motion to stay case and compel arbitration even after

decision on Rule 12(b)(6) motion).  Whatever doubt the Court may have in this regard,

moreover, it must be resolved in favor of arbitration.  *Cone Mem'l Hosp.*, 460 U.S. at 24-25.

Nor may the Court find waiver with respect to unnamed putative class members, because "[n]either a proposed class action nor a rejected class action may bind nonparties."  *Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011).  *See also Knowles*, 568 U.S. at 593 ("[A] plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified.").  The Court of Appeals for the Eleventh Circuit recently addressed this issue in *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230 (11th Cir. 2018).  There, Wells Fargo faced a putative class action by bank customers alleging that they had been charged unlawful overdraft fees.  *Id.* at 1233.  The bank elected not to compel the named plaintiffs to arbitrate, but, in opposition to class certification, it filed conditional motions to compel the unnamed class members to arbitrate and argued that because all of its customers had signed agreements with arbitration provisions, "there simply would not be enough class members to make a class action viable."  *Id.* at 1235.  The District Court certified the class and denied the bank's motion to compel arbitration, finding Wells Fargo had waived its right to arbitrate with the unnamed class members.  *Id.*  The Eleventh Circuit vacated that order, explaining that "it cannot be said that Wells Fargo's failure to seek arbitration with the unnamed class members prior to class certification manifested inconsistency with its arbitration rights," because "it would have been impossible in practice to compel arbitration against speculative plaintiffs and jurisdictionally impossible for the District Court to rule on those motions before the class was certified."  *Id.* at 1238.  Put simply, "the unnamed class members were putative at that point" meaning that "any plaintiffs beyond those named in the complaint are speculative and beyond the reach of the Court's power," such that "Wells Fargo would not even have been able to identify the specific plaintiffs against which it planned to seek arbitration, much less ascertain its arbitration-related

rights as to them." *Id.* (emphasis removed).  The same logic applies here.

The cases cited by Plaintiffs (ECF No. 104 at 2-3) are inapposite.  In *Merrill Lynch*, the Court of Appeals for the Second Circuit found waiver where the plaintiff sought to withdraw its own lawsuit in favor of arbitration eleven months after filing the action.  626 F.3d at 159-60. Merrill won "several key procedural victories" before plaintiffs sought to reverse course and compel the bank to arbitration, successfully removing plaintiffs' parallel Louisiana state court action to federal court, filing a motion to transfer that case to this District, moving to stay that action pending decision by an MDL panel concerning consolidation of the actions with similar actions, answering plaintiffs' third amended complaint, submitting a 19-page single-spaced letter to plaintiffs outlining deficiencies in the complaint, and beginning work on a motion to dismiss before plaintiffs had second thoughts about their lawsuit and sought to arbitrate instead.  *Id.*

In *Leadertex*, the Court of Appeals affirmed the District Court's waiver determination, but not on the basis of delay or litigation expense, as Plaintiffs are constrained to do here.  67 F.3d at 27.  In *Leadertex*, the defendant waited until the eve of trial to file its petition for arbitration.  *Id.* at 24.  In the seven months prior, it answered the complaint and "vigorously pursued discovery, submitting multiple prolix interrogatories," even as plaintiff "evaded discovery with almost equally energetic foot-dragging, producing only a handful of the documents requested, giving late and unresponsive answers to interrogatories or none at all and failing to produce witnesses for scheduled depositions."  *Id.*  Plaintiff, meanwhile, moved for and won partial summary judgment.  *Id.*  The District Court found plaintiff "had suffered severe economic prejudice by [defendant's] delay in seeking relief and by [defendant's] having availed itself of the liberal discovery rules in the federal court system," and that defendant was "seeking to 'have it both ways,' by taking advantage of pre-litigation procedures for a number of months

- 19 -

and then asserting its right to arbitration." *Id*. The Court of Appeals affirmed the finding of waiver, but rejected the bases relied upon by the trial court, delay and litigation expense. *Id*. at 26-27. "[H]owever unjustifiable [defendant's] conduct, there can be no waiver unless that conduct has resulted in prejudice to the other party," the Court held. *Id*. at 26. "Since it divulged no significant information in discovery, the only prejudice [plaintiff] can claim is the expense and delay inherent in the procedure. But pretrial expense and delay – unfortunately inherent in litigation – without more, do not constitute prejudice sufficient to support a finding of waiver." *Id*. Instead, the Court found prejudicial the "economic harm" to "[plaintiff's] business" as a consequence of its goods being held by defendant and unavailable for sale during the pendency of the case, a factor not present here. *Id*. at 27.

In *Kramer v. Hammond*, 943 F.2d 176 (2d Cir. 1991), the Court of Appeals found waiver where the defendant waited four years to file its petition. During that time defendant "engaged in extensive pretrial litigation, apparently designed to wear down his opponent," including by noticing plaintiff's deposition, prosecuting appeals in the highest courts of two states, filing a petition for certiorari in the Supreme Court of the United States, and moving for summary judgment. *Id.* at 179. The Court similarly found waiver due to expense and delay in *Com-Tech Assoc. v. Computer Assoc.*, 938 F.2d 1574, 1577-78 (2d Cir. 1991), where "plaintiffs were put to the expense not only of engaging in depositions, but also of defending motions for judgment on the pleadings and partial summary judgment." *Id.* at 1577.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should stay this action and order Plaintiffs to submit their dispute with Defendants to individual arbitration.

Respectfully submitted,

/s/ Joanna C. Hendon

Joanna C. Hendon
Cynthia Chen
Andrew L. Kincaid

SPEARS & IMES LLP
51 Madison Avenue
New York, New York 10010
Tel:  (212) 213-6996
Fax:  (212) 213-0849
jhendon@spearsimes.com
cchen@spearsimes.com
akincaid@spearsimes.com

*Attorneys for Defendants*

# EXHIBIT A



**ACN Opportunity, LLC**
1000 Progress Place
Concord, NC 28025-2449
Phone: 704-260-3226
Fax: 704-260-3652
Email: ACNRepEntryUS@acninc.com
www.acninc.com

# INDEPENDENT BUSINESS OWNER AGREEMENT

| Office Use Only | Data Entry | Date |
|---|---|---|
| | | |

## PLEASE TYPE OR PRINT CLEARLY

(Circle One):

| Individual | Company |
|---|---|

## APPLICANT INFORMATION — *LIST NAME OR COMPANY, NOT BOTH.*

| Last Name | First Name | Middle Initial | Home Telephone (with area code) | Social Security # | Birth date of Applicant |
|---|---|---|---|---|---|

| Company Name (Proof of Company Name, Business Tax ID # or Employer ID # required) | Cellular Telephone (with area code) | Federal Tax I.D.# (if applicable) | Birth date of Principal |
|---|---|---|---|

| Mailing Address | City | State | Zip Code |
|---|---|---|---|

Email Address

## SPONSOR INFORMATION

| Last Name | First Name | Middle Initial | Telephone (with area code) | Business ID |
|---|---|---|---|---|

## US TERMS AND CONDITIONS

I acknowledge that I have received and reviewed the ACN Independent Business Owner Agreement, including these US Terms and Conditions and the ACN Policies and Procedures and the ACN Compensation Plan, which are hereby incorporated into and made part of this ACN Independent Business Owner Agreement by reference (collectively, the "Agreement"). By signing below, I agree to comply with, and be bound by, the terms and conditions set forth in the Agreement.I acknowledge and agree that the Agreement will become a binding agreement upon me and ACN Opportunity, LLC, a North Carolina limited liability company, only upon acceptance by ACN, and that ACN will notify me of acceptance of the Agreement via email to the email address I submit with this Agreement. I understand that ACN has the right to accept or reject my application to become an Independent Business Owner ("IBO") in its sole discretion. For purposes of this Agreement, ACN Opportunity, LLC and its parents, subsidiaries and affiliates are referred to as "ACN". I understand that there is no requirement beyond entering into this Agreement and payment of the initial fee (which includes the purchase of a Team Trainer Kit which is sold at ACN's cost) to become an IBO. No other purchase of sales or training materials or other services are required to become an IBO and any purchase of sales aids, training materials or training is strictly voluntary. I understand that my advancement to higher qualification levels in the ACN Compensation Plan is based upon the acquisition of customers and the usage by such customers of products and services offered by ACN ("ACN Products & Services"), and that I am not obligated to purchase ACN Products and Services. I also understand that if I choose to sponsor others to become IBOs and participate in ACN's Compensation Plan, I will not receive any compensation whatsoever for the act of sponsoring or recruiting, and that I will be compensated based upon the activities of other IBOs only to the extent of sales made by them to customers of ACN Products and Services.

1. I, the undersigned applicant, represent that I am of legal age to enter into legally binding agreements, and that the information submitted in connection with my application to become an IBO is complete, true and correct. I agree to promptly notify ACN of any changes to such information. If I am executing this Agreement on behalf of a corporation, limited liability company, partnership, trust or other entity, I represent that I have the authority to enter into such agreements for the entity, but nonetheless I agree that in addition to such entity, I will be personally responsible for the performance of all the duties and obligations described in this Agreement.

**PLEASE SEE PAGE 2 FOR ADDITIONAL TERMS & CONDITIONS**

## CANCELLATION

I may cancel this transaction, without penalty or obligation, for a full refund, within ten (10) business days from the date of this Agreement, exclusive of the date of signing. I understand that if I cancel after the ten (10) day period, I am not entitled to a full refund. This limitation is not applicable in Georgia or where superseded by any state law. If I cancel within the ten (10) business days from the date of this Agreement, any payments made by me under this Agreement and any instrument executed by me will be returned within fifteen (15) business days following receipt by ACN of my Cancellation Notice. If I cancel, I will return any literature or materials I have received from ACN in substantially as good condition as when received. To cancel this Agreement, I must deliver personally or via courier or by registered or certified mail return receipt requested, a written, signed, dated copy of a Notice of Cancellation to: ACN Opportunity, LLC, 1000 Progress Place, Concord, NC 28025 Attn: FSS Research. Where applicable state law on cancellation is inconsistent with ACN policy, such state law shall be in force.

## ACCEPTANCE AND PAYMENT

☐ **$499  TEAM TRAINER**
By signing below, I authorize ACN to charge the credit card listed below.

Select payment method: ☐ Personal Check (make payable to ACN)   ☐ Cashier's Check   ☐ Money Order   ☐ American Express, Discover, Master Card or Visa

| Credit Card Account Number | Expiration Date |
|---|---|

When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use this information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day you make your payment, and you will not receive your check back from your financial institution. In the event that your check is returned unpaid for insufficient or uncollected funds, we may electronically debit your account for the principal amount of the check.

I verify that I have carefully reviewed and fully understand ACN's income opportunity presentation materials, which can be found on The ACN Opportunity Dual Disc, www.acninc.com or www.acnintegrity.com. I acknowledge that ACN has a global commitment to integrity, and as an ACN Independent Business Owner, it is my responsibility to uphold this commitment and always operate my business the right way.

Yes, I want to become an Independent Business Owner. Neither I, nor my spouse/life partner (unless they are my sponsor), have had any other interest and/or benefit in any other ACN IBO position within the 12 months prior to the effective date of this Agreement. I have read and agree to be bound by all of the terms and conditions of this Agreement, including the US Terms and Conditions, the ACN Policies and Procedures, and the ACN Compensation Plan, all of which are incorporated into this Agreement and are available for me to review, store, or print at www.acninc.com

## ACCEPTED AND AGREED:

| I prefer my kit in the following language (choose one) | Applicant's Signature | Date |
|---|---|---|
| English Kit ☐   Spanish Kit ☐ | | |
| Kit Received: ☐ Yes   ☐ No | Applicant's Printed Name | |
| Your Business ID number is: _____ | | |

ACN Opportunity, LLC 2013 US_IBO_RP_W_011513

2. I agree to timely pay for any products, goods, services or materials I order from ACN at the times that I am delinquent with respect to such payments, I acknowledge that ACN may offset such debt from any commissions, bonuses, or other compensation earned through the ACN Compensation Plan, or any other monies owing to me ("ACN Payments").

3. I agree that as an IBO, I am an independent contractor responsible for my own business and not an agent, legal representative or employee of ACN or any carrier, supplier, service provider or other party with whom ACN transacts or contracts business ("ACN Providers"). I acknowledge that my IBO relationship is with ACN Opportunity, LLC and not with any ACN Provider. I understand that as an IBO, I am free to select my own means, methods and manner of operation and that I am free to choose the hours and location of my activities under this Agreement, subject only to the terms of this Agreement. I shall have no power or authority to bind ACN, either directly or indirectly, and I will not take any action inconsistent with this limit of authority, including representing in any manner that I am an agent, representative, legal representative or employee of ACN or any ACN Provider. I acknowledge that as an independent contractor I am not entitled to holidays, vacations, disability, insurance, pensions or retirement plans, or any other benefits offered or provided by ACN to its employees. I understand that I am solely responsible for remitting any taxes and obtaining any business licenses or insurance required by regulations or authorities to conduct my business. I acknowledge and agree that I will not be treated as or represent myself as an employee for purposes of any federal, state or local statute, regulation, ordinance or other law.

4. I may terminate this Agreement for any reason, at any time, by giving ACN prior written notice at its address of record. ACN may terminate this Agreement pursuant to the ACN Policies and Procedures or in the event that I breach any part of this Agreement. Upon my request following termination of this Agreement within one (1) year from the date of purchase, ACN shall repurchase the Team Trainer Kit, (at cost of $50.00), provided that the Team Trainer Kit is returned to ACN in re-useable condition.

5. I acknowledge that as an IBO, I am not guaranteed any income nor am I assured any profits or success, and I certify that no claims of guaranteed profits or representations of expected earnings that might result from my efforts as an IBO have been made by ACN or my sponsor. Similarly, I shall not represent directly or indirectly that any person may, can, or will earn any stated amount or that any IBOs are guaranteed success.

6. I understand that the ACN Products and Services are offered in different markets on terms and at rates determined by ACN or ACN Providers, and that the markets where the services are offered and the terms and conditions or prices thereof may change from time to time without notice.

7. This Agreement shall become effective upon acceptance by ACN and continue for an initial term of one (1) year unless sooner terminated as permitted herein. My relationship with ACN may be extended for additional one year periods by my agreement to the then current ACN IBO US Terms and Conditions, and payment of ACN's annual renewal fee no later than 30 days after each Agreement anniversary date. The annual fee is for services provided by ACN which include but are not limited to tracking of personal customers, tracking of downline IBOs and support services, including but not limited to hosting of an IBO's acndirect website, materials and training information on the IBO Back Office, and access to the IBO support call center. I understand that failure to renew within the specified time frame shall result in termination of this Agreement and my relationship with ACN and deactivation of my IBO position, and shall result in the forfeiture of bonuses, commissions or other payments from ACN. However, those rights and obligations which by their nature are intended to survive termination of this Agreement shall survive, including without limitation the provisions governing dispute resolution, indemnification, non-solicitation, confidentiality, and account maintenance fees.

8. I understand that there is a fee to process all ACN Payments. I agree that any payments made to me by ACN that remain unclaimed by me after six (6) months shall be held in an account that is subject to an account maintenance fee of $10 per month (the "Account Maintenance Fee") which shall be deducted by ACN monthly. If there are insufficient funds owed me from which to deduct the monthly Account Maintenance Fee when due, and I do not otherwise pay the Account Maintenance Fee, then the Account Maintenance Fee shall be prorated to reflect the amount of funds remaining and the account shall remain open for an equally prorated amount of time. When no unclaimed amounts are owed to me by ACN the account shall be closed. I further acknowledge that unclaimed amounts owed to me may be subject to applicable escheat laws which may require ACN to deliver unclaimed funds to the state.

9. In the process of selling or otherwise promoting the ACN Products and Services, I agree that I will operate in a lawful, ethical and moral manner and I agree to make no false or misleading statements regarding the ACN Products and Services or about the various relationships between ACN, the ACN Provider(s) and me.

10. I understand that during any investigation by ACN with respect to my breach of this Agreement or my conduct as an IBO, my IBO position status may be suspended by ACN and any ACN Payments which may be otherwise owing to me shall be held until final resolution has been achieved. I acknowledge that in the event ACN determines that I have violated this Agreement, including the ACN Policies and Procedures or the ACN Compensation Plan, ACN may terminate this Agreement and deactivate my IBO position, in which event I will not be entitled to any ACN Payments or further commissions or compensation of any kind.

11. I agree to keep accurate records and shall not engage in or perform any misleading, deceptive or unethical practices. I further agree to abide by all federal, state and local laws and regulations governing the sale or solicitation of the products and services marketed by ACN and/or the ACN Provider(s), including but not limited to, obtaining and maintaining any and all permits and licenses required to perform under this Agreement and I understand that I will be personally liable for any fines and other expenses incurred by ACN as a result of any failure to do so. I specifically represent and warrant that I shall not engage in the slamming of a customer.

12. IN NO EVENT WILL ACN OR ANY ACN PROVIDERS BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES, (INCLUDING DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, AND THE LIKE), ARISING OUT OF ANY CAUSE,   INCLUDING BUT NOT LIMITED TO, BREACH OF WARRANTY OR THE DELAY, ACT, ERROR OR OMISSION OF ACN OR ANY ACN PROVIDER, OR THE DELIVERY, NONDELIVERY, DISCONTINUATION, OR MODIFICATION OFANY PRODUCT OR SERVICE BY ACN OR ANY ACN PROVIDER, EVEN IF ACN HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

13. I ACKNOWLEDGE THAT EXCEPT AS DESCRIBED ABOVE, ACN AND ACN PROVIDERS MAKE NO EXPRESS WARRANTIES, AND THERE ARE NO IMPLIED WARRANTIES.  EXPRESSLY EXCLUDED ARE ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.  NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY ACN, ANY ACN PROVIDER, OR THEIR AGENTS OR EMPLOYEES WILL CREATE A WARRANTY OR IN ANY WAY INCREASE THE SCOPE OF THE FOREGOING WARRANTY.

14. ACN shall periodically make various sales literature, promotion materials, training and other products or services available for my use in conducting my business as an IBO. I, however, am under no obligation to purchase any quantities of those materials or services at any time. Rather, I will have the option to order and purchase any materials or services which I may choose. If I choose to purchase such materials then I may return any unused, unopened and currently marketable items for up to one year and receive a refund of 90% of the purchase price. I will be responsible for the cost of shipping said materials to ACN.

15. I acknowledge that I have the right to sign up as many personal customers as I wish. For each personal customer signed, I will be eligible to receive a commission from my personal customers' usage payments for ACN Products and Services and from usage payments from personal customers in my network of IBOs in accord with the currently valid ACN Compensation Plan. I understand that eligibility to receive ACN Payments is conditioned upon being an active IBO with a valid Agreement in effect on the date such compensation is scheduled to be paid. ACN reserves the right to vary or change eligibility as set out in the ACN Compensation Plan. Any other payments I receive will be based upon fulfilling certain terms of qualification as set forth by the ACN Compensation Plan. I agree that as an ACN IBO, I shall place primary emphasis upon the sale of ACN Products and Services to customers. Under certain circumstances, commission rates may be adjusted for promotional products or negotiated pricing.

16. I agree to indemnify and hold ACN, the ACN Providers and their respective shareholders, directors, officers and employees harmless from any and all claims, damages, and expenses, including any attorney's fees, arising out of my actions or omissions in connection with this Agreement. In the event of a dispute between me and ACN as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is agreed that such disputes shall be exclusively resolved through binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration. The arbitration shall be held in Charlotte, North Carolina before a panel of three arbitrators, each side choosing one and then the two choosing the third. All claims hereunder must be brought within two (2) years of the date on which the facts or circumstances giving rise to the claim are alleged to have happened. The laws of the state of North Carolina shall apply to the resolution of the dispute unless otherwise agreed in writing. The award of the arbitrator shall be final and may be entered in any court of competent jurisdiction. This provision shall not restrict ACN from seeking preliminary or permanent injunctive relief in any court of competent jurisdiction.

17. I acknowledge that ACN fully reserves its right to amend this Agreement at any time by notifying me of the changes, including by posting the revisions on the ACN website (www.acninc.com). Any changes to this Agreement made by ACN may apply: (1) upon the date of execution or posting of the amended Agreement on the ACN website, or (2) prospectively to some specified date in the amendment. Any such changes are incorporated as part of this Agreement.  No amendment shall apply retroactively. This Agreement, including the US Terms and Conditions, the ACN Policies and Procedures and the ACN Compensation Plan which have been incorporated herein by reference, constitutes the entire agreement between the parties hereto and shall not be modified or amended except as described herein. In the event of a conflict between the US Terms and Conditions and the ACN Policies and Procedures or the ACN Compensation Plan, the US Terms and Conditions shall control. For purposes of this Agreement, my address as submitted by me with this Agreement shall be deemed to be my correct address unless and until notification of a change of address is provided by me to ACN.

18. This Agreement shall be governed by the laws of the state of North Carolina. I understand that I may not assign this Agreement without the prior written consent of ACN, which may be withheld, conditioned, or delayed in ACN's sole discretion. This Agreement shall be binding upon and inure to the benefit of heirs, successors and permitted assigns of the parties hereto. If any provision of this Agreement is determined by any authority of competent jurisdiction to be invalid or unenforceable in part or in whole for any reason whatsoever, the validity of the remaining provisions or portions thereof shall not be affected thereby and such authority should inform this Agreement to the extent necessary to render the otherwise unenforceable provision or portion thereof valid and enforceable.

19. I acknowledge that I may receive proprietary and confidential data or information of ACN and/or ACN Provider(s) which is not publicly known or available to the competitors of ACN or ACN Providers, including but not limited to information about ACN Products and Services, customers, and IBOs ("Confidential Information"), and I agree that I shall treat such Confidential Information as strictly confidential and that I may not, directly or indirectly use, sell, lend, lease, distribute, license, give, transfer, disclose, disseminate, reproduce or otherwise communicate any such Confidential Information to any person or entity for any purpose other than as authorized by ACN in writing. I represent and warrant that I will comply with all ACN  policies and procedures relating to confidential and proprietary information, and I agree that all prohibitions against disclosure of Confidential Information shall survive the termination of this Agreement.

20. During the term of this Agreement, I agree that I shall not, directly or indirectly, sell or solicit customers for products or services offered by ACN through any person or entity other than that specifically designated or approved in writing by ACN. I agree that I shall not, during the term of this Agreement and for a period of one (1) year thereafter, directly or indirectly, divert, entice, knowingly call upon, sell or solicit, take away or move any customer of ACN or any ACN Provider, whether or not I originally procured or brought such customer to ACN (such activities are collectively referred to and included herein as 'solicitation'). All customers solicited by an IBO on behalf of ACN and ACN Providers are deemed to be customers of ACN or the ACN Provider and not of the IBO. I understand that such non solicitation prohibition shall be strictly enforced and that each ACN Provider shall be a third party beneficiary of this prohibition. Further, during the term of the Agreement and for a period of one (1) year thereafter, I may not enter into a direct marketing relationship with any ACN Provider. During the term of this Agreement and for a period of one (1) year thereafter, I may not solicit an ACN IBO, whether active, inactive, individual or entity, to participate in a network marketing program offered by any other company. Without limiting in any way ACN's right to pursue all rights and remedies available to it, violation of this covenant and condition will result in, but is not limited to, forfeiture of all rights in any IBO position and ACN Payments, including all current and future commissions, bonuses and payments of any kind.

ACN Opportunity, LLC 2013 US_IBO_RP_W_011513

# EXHIBIT B



ACN Opportunity, LLC
1000 Progress Place
Concord, NC 28025-2449
Phone: 704-260-3226
Fax: 704-260-3652
www.acninc.com

# INDEPENDENT BUSINESS OWNER AGREEMENT

| Office Use Only | Data Entry | Date |
|---|---|---|

## PLEASE TYPE OR PRINT CLEARLY

(Circle One):

| Individual | Company |
|---|---|

## APPLICANT INFORMATION    *LIST NAME OR COMPANY, NOT BOTH.*

| Last Name | First Name | Middle Initial | Home Telephone (with area code) | Social Security # | Birth date of Applicant |
|---|---|---|---|---|---|

| Company Name (Proof of Company Name, Business Tax ID # or Employer ID # required) | Cellular Telephone (with area code) | Federal Tax I.D.# (if applicable) | Birth date of Principal |
|---|---|---|---|

| Mailing Address | City | State | Zip Code |
|---|---|---|---|

Email Address

## SPONSOR INFORMATION

| Last Name | First Name | Middle Initial | Telephone (with area code) | Business ID |
|---|---|---|---|---|

## US TERMS AND CONDITIONS

I acknowledge that I have received and reviewed the ACN Independent Business Owner Agreement, including these US Terms and Conditions and the ACN Policies and Procedures and the ACN Compensation Plan, which are hereby incorporated into and made part of this ACN Independent Business Owner Agreement by reference (collectively, the "Agreement"). By signing below, I agree to comply with, and be bound by, the terms and conditions set forth in the Agreement.I acknowledge and agree that the Agreement will become a binding agreement upon me and ACN Opportunity, LLC, a North Carolina limited liability company, only upon acceptance by ACN, and that ACN will notify me of acceptance of the Agreement via email to the email address I submit with this Agreement. I understand that ACN has the right to accept or reject my application to become an Independent Business Owner ("IBO") in its sole discretion. For purposes of this Agreement, ACN Opportunity, LLC is referred to as "ACN". ACN and its parents, subsidiaries and affiliates may be referred to herein collectively as the "ACN Companies" or each individually as an "ACN Company". I understand that there is no requirement beyond entering into this Agreement and payment of the initial fee to become an IBO. No other purchase of sales or training materials or other services are required to become an IBO and any purchase of sales aids, training materials or training is strictly voluntary. I understand that my advancement to higher qualification levels in the ACN Compensation Plan is based upon the acquisition of customers and the usage by such customers of products (goods and services) offered by or through ACN ("ACN Products"), and that I am not obligated to purchase ACN Products. I also understand that if I choose to sponsor others to become IBOs and participate in ACN's Compensation Plan, I will not receive any compensation whatsoever for the act of sponsoring or recruiting, and that I will be compensated based upon the activities of other IBOs only to the extent of sales made by them to customers of ACN Products.

1. I, the undersigned applicant, represent that I am of legal age to enter into legally binding agreements, and that the information submitted in connection with my application to become an IBO is complete, true and correct. I agree to promptly notify ACN of any changes to such information. If I am executing this Agreement on behalf of a corporation, limited liability company, partnership, trust or other entity, I represent that I have the authority to enter into such agreements for the entity, but nonetheless I agree that in addition to such entity, I will be personally responsible for the performance of all the duties and obligations described in this Agreement.

**PLEASE SEE PAGE 2 FOR ADDITIONAL TERMS & CONDITIONS**

## CANCELLATION

I may cancel this transaction, without penalty or obligation, for a full refund, if postmarked within ten (10) business days from the date of this Agreement, exclusive of the date of signing. I understand that if I cancel after the ten (10) day period, I am not entitled to a full refund. This limitation is subject to and shall be deemed modified to reflect the limitations required by any state law, including the state of Georgia. If I cancel within the ten (10) business days from the date of this Agreement, any payments made by me under this Agreement and any instrument executed by me will be returned within fifteen (15) business days following receipt by ACN of my Cancellation Notice. To cancel this Agreement, I must deliver personally or via courier or by registered or certified mail return receipt requested, a written, signed, dated copy of a Notice of Cancellation to: ACN Opportunity, LLC, 1000 Progress Place, Concord, NC 28025 Attn: FSS Research. Where applicable state law on cancellation is inconsistent with ACN policy, such state law shall be in force.

## ACCEPTANCE AND PAYMENT

☐ **$499  TEAM TRAINER**

By signing below, I authorize ACN to charge the credit card listed below.

Select payment method: ☐ Personal Check (make payable to ACN)   ☐ Cashier's Check   ☐ Money Order   ☐ American Express, Discover, Master Card or Visa

| Credit Card Account Number | Expiration Date |
|---|---|

When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use this information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day you make your payment, and you will not receive your check back from your financial institution.  In the event that your check is returned unpaid for insufficient or uncollected funds, we may electronically debit your account for the principal amount of the check.

I verify that I have carefully reviewed and fully understand ACN's income opportunity presentation materials, which can be found on The ACN Opportunity Dual Disc or www.acninc.com. I acknowledge that ACN has a global commitment to integrity, and as an ACN Independent Business Owner, it is my responsibility to uphold this commitment and always operate my business the right way.

Yes, I want to become an Independent Business Owner. Neither I, nor my spouse/life partner (unless they are my sponsor), have had any other interest and/or benefit in any other ACN IBO position within the 12 months prior to the effective date of this Agreement. I have read and agree to be bound by all of the terms and conditions of this Agreement, including the US Terms and Conditions, the ACN Policies and Procedures, and the ACN Compensation Plan, all of which are incorporated into this Agreement and are available for me to review, store, or print at www. acninc.com

### ACCEPTED AND AGREED:

| Applicant's Signature | Date |
|---|---|

| Applicant's Printed Name | Your Business ID number is: _____ |
|---|---|

©ACN Opportunity, LLC 2014 US_IBO_RP_W_062514

2. I agree to timely pay for any products, services, or other ACN materials. In the event that I am delinquent with respect to such payments, I acknowledge that ACN may offset such debt from any commissions, bonuses, or other compensation earned through the ACN Compensation Plan, or any other monies owing to me ("ACN Payments").

3. I agree that as an IBO, I am an independent contractor responsible for my own business and not an agent, legal representative or employee of ACN or any carrier, supplier, service provider or other party with whom ACN transacts or contracts business ("ACN Providers"). I acknowledge that my IBO relationship is with ACN Opportunity, LLC and not with any other ACN Company or ACN Provider. I understand that as an IBO, I am free to select my own means, methods and manner of operation and that I am free to choose the hours and location of my activities under this Agreement, subject only to the terms of this Agreement. I shall have no power or authority to bind ACN, either directly or indirectly, and I will not take any action inconsistent with this limit of authority, including representing in any manner that I am an agent, representative, legal representative or employee of ACN, any other ACN Company or any ACN Provider. I acknowledge that as an independent contractor I am not entitled to holidays, vacations, disability, insurance, pensions or retirement plans, or any other benefits offered or provided by ACN or any other ACN Company to its employees. I understand that I am solely responsible for remitting any taxes and obtaining any business licenses or insurance required by regulations or authorities to conduct my business. I acknowledge and agree that I will not be treated as or represent myself as an employee for purposes of any federal, state or local statute, regulation, ordinance or other law.

4. I may terminate this Agreement for any reason, at any time, by giving ACN prior written notice at its address of record. ACN may terminate this Agreement pursuant to the ACN Policies and Procedures or in the event that I breach any part of this Agreement.

5. I acknowledge that as an IBO, I am not guaranteed any income nor am I assured any profits or success, and I certify that no claims of guaranteed profits or representations of expected earnings that might result from my efforts as an IBO have been made by ACN or my sponsor. Similarly, I shall not represent directly or indirectly that any person may, can, or will earn any stated amount or that any IBOs are guaranteed success.

6. I understand that the ACN Products are offered in different markets on terms and at rates determined by ACN or ACN Providers, and that the markets where the products are offered and the terms and conditions or prices thereof may change from time to time without notice.

7. This Agreement shall become effective upon acceptance by ACN and continue for an initial term of one (1) year unless sooner terminated as permitted herein. My relationship with ACN may be extended for additional one year periods by my agreement to the then current ACN IBO US Terms and Conditions, and payment of ACN's annual renewal fee no later than 30 days after each Agreement anniversary date. The annual fee is for services provided by ACN which include but are not limited to tracking of personal customers, tracking of downline IBOs and support services, including but not limited to hosting of an IBO's acndirect website, materials and training information on the IBO Back Office, and access to the IBO support call center. I understand that failure to renew within the specified time frame shall result in termination of this Agreement and my relationship with ACN and deactivation of my IBO position, and shall result in the forfeiture of bonuses, commissions or other payments from ACN. However, those rights and obligations which by their nature are intended to survive termination of this Agreement shall survive, including without limitation the provisions governing dispute resolution, indemnification, non-solicitation, confidentiality, and account maintenance fees.

8. I understand that there is a fee to process all ACN Payments. I agree that any payments made to me by ACN that remain unclaimed by me after six (6) months shall be held in an account that is subject to an account maintenance fee of $10 per month (the "Account Maintenance Fee") which shall be deducted by ACN monthly. If there are insufficient funds owed me from which to deduct the monthly Account Maintenance Fee when due, and I do not otherwise pay the Account Maintenance Fee, then the Account Maintenance Fee shall be prorated to reflect the amount of funds remaining and the account shall remain open for an equally prorated amount of time. When no unclaimed amounts are owed to me by ACN the account shall be closed. I further acknowledge that unclaimed amounts owed to me may be subject to applicable escheat laws which may require ACN to deliver unclaimed funds to the state.

9. In the process of selling or otherwise promoting the ACN Products, I agree that I will operate in a lawful, ethical and moral manner and I agree to make no false or misleading statements regarding the ACN Products or about the various relationships between ACN, the ACN Provider(s) and me.

10. I understand that during any investigation by ACN with respect to my breach of this Agreement or my conduct as an IBO, my IBO position status may be suspended by ACN and any ACN Payments which may be otherwise owing to me shall be held until final resolution has been achieved. I acknowledge that in the event ACN determines that I have violated this Agreement, including the ACN Policies and Procedures or the ACN Compensation Plan, ACN may terminate this Agreement and deactivate my IBO position, in which event I will not be entitled to any ACN Payments or further commissions or compensation of any kind.

11. I agree to keep accurate records and shall not engage in or perform any misleading, deceptive or unethical practices. I further agree to abide by all federal, state and local laws and regulations governing the sale or solicitation of the products marketed by ACN and/or the ACN Provider(s), including but not limited to, all applicable anti-spam legislation and obtaining and maintaining any and all permits and licenses required to perform under this Agreement and I understand that I will be personally liable for any fines and other expenses incurred by ACN, any ACN Company or any ACN Provider as a result of any failure to do so. I specifically represent and warrant that I shall not engage in the slamming of a customer.

12. IN NO EVENT WILL ACN, ANY OTHER ACN COMPANY OR ANY OTHER ACN PROVIDER BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES, (INCLUDING DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, AND THE LIKE), ARISING OUT OF ANY CAUSE, INCLUDING BUT NOT LIMITED TO, BREACH OF WARRANTY OR THE DELAY, ACT, ERROR OR OMISSION OF ACN, ANY ACN COMPANY OR ANY ACN PROVIDER, OR THE DELIVERY, NONDELIVERY, DISCONTINUATION, OR MODIFICATION OFANY PRODUCT OR SERVICE BY ACN, ANY ACN COMPANY, OR ANY ACN PROVIDER, EVEN IF ACN HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

13. OTHER THAN THE RETURN RIGHTS DESCRIBED HEREIN, ACN, THE OTHER ACN COMPANIES AND ACN PROVIDERS MAKE NO EXPRESS WARRANTIES, AND THERE ARE NO IMPLIED WARRANTIES. EXPRESSLY EXCLUDED ARE ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY ACN, ANY ACN COMPANY, ANY ACN PROVIDER, OR THEIR AGENTS OR EMPLOYEES WILL CREATE A WARRANTY OR IN ANY WAY INCREASE THE SCOPE OF THE FOREGOING WARRANTY.

14. I shall not permit the purchase of any sales literature, product or marketing training and other products available for my use in conducting my business as an IBO. I, however, am under no obligation to purchase any quantities of those materials or services at any time. Rather, I will have the option to order and purchase any materials or services which I may choose. If I choose to purchase such materials then I may return any unused, unopened and currently marketable items for up to one year and receive a refund of 90% of the purchase price. I will be responsible for the cost of shipping said materials to ACN.

15. I acknowledge that I have the right to sign up as many personal customers as I wish. For each personal customer signed, I will be eligible to receive a commission from my personal customers' usage payments for ACN Products and from usage payments from personal customers in my network of IBOs in accord with the currently valid ACN Compensation Plan. I understand that eligibility to receive ACN Payments is conditioned upon being an active IBO with a valid Agreement in effect on the date such compensation is scheduled to be paid. ACN reserves the right to vary or change eligibility as set out in the ACN Compensation Plan. Any other payments I receive will be based upon fulfilling certain terms of qualification as set forth by the ACN Compensation Plan. I agree that as an ACN IBO, I shall place primary emphasis upon the sale of ACN Products to customers. Under certain circumstances, commission rates may be adjusted for promotional products or negotiated pricing.

16. I agree to indemnify and hold ACN, the other ACN Companies, the ACN Providers and their respective shareholders, directors, officers and employees harmless from any and all claims, damages, and expenses, including any attorney's fees, arising out of my actions or omissions in connection with this Agreement. In the event of a dispute between me and ACN as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is agreed that such disputes shall be exclusively resolved through binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration. The arbitration shall be held in Charlotte, North Carolina before a panel of three arbitrators, each side choosing one and then the two choosing the third. All claims hereunder must be brought within two (2) years of the date on which the facts or circumstances giving rise to the claim are alleged to have happened. The laws of the state of North Carolina will apply to the resolution of the dispute unless otherwise agreed in writing. The award of the arbitrator shall be final and may be entered in any court of competent jurisdiction. This provision shall not restrict ACN from seeking preliminary or permanent injunctive relief in any court of competent jurisdiction.

17. I acknowledge that ACN fully reserves its right to amend this Agreement at any time by notifying me of the changes, including by posting the revisions on the ACN website (www.acninc.com). Any changes to this Agreement made by ACN may apply: (1) upon the date of execution or posting of the amended Agreement on the ACN website, or (2) prospectively to some specified date in the amendment. Any such changes are incorporated as part of this Agreement. No amendment shall apply retroactively. This Agreement, including the US Terms and Conditions, the ACN Policies and Procedures and the ACN Compensation Plan which have been incorporated herein by reference, constitutes the entire agreement between the parties hereto and shall not be modified or amended except as described herein. In the event of a conflict between the US Terms and Conditions and the ACN Policies and Procedures or the ACN Compensation Plan, the US Terms and Conditions shall control. For purposes of this Agreement, my address as submitted by me with this Agreement shall be deemed to be my correct address unless and until notification of a change of address is provided by me to ACN.

18. This Agreement shall be governed by the laws of the state of North Carolina. I understand that I may not assign this Agreement without the prior written consent of ACN, which may be withheld, conditioned, or delayed in ACN's sole discretion. This Agreement shall be binding upon and inure to the benefit of heirs, successors and permitted assigns of the parties hereto. If any provision of this Agreement is determined by any authority of competent jurisdiction to be invalid or unenforceable in part or in whole for any reason whatsoever, the validity of the remaining provisions or portions thereof shall not be affected thereby and such authority should reform this Agreement to the extent necessary to render the otherwise unenforceable provision or portion thereof valid and enforceable.

19. I acknowledge that I may receive proprietary and confidential data or information of ACN and/or ACN Provider(s) which is not publicly known or available to the competitors of ACN or ACN Providers, including but not limited to information about ACN Products, customers, and IBOs ("Confidential Information"), and I agree that I shall treat such Confidential Information as strictly confidential and that I may not, directly or indirectly use, sell, lend, lease, distribute, license, give, transfer, disclose, disseminate, reproduce or otherwise communicate any such Confidential Information to any person or entity for any purpose other than as authorized by ACN in writing. I represent and warrant that I will comply with all ACN policies and procedures relating to confidential and proprietary information, and I agree that all prohibitions against disclosure of Confidential Information shall survive the termination of this Agreement.

20. During the term of this Agreement, I agree that I shall not, directly or indirectly, sell or solicit customers for products offered by or through ACN through any person or entity other than that specifically designated or approved in writing by ACN. I agree that I shall not, during the term of this Agreement and for a period of one (1) year thereafter, directly or indirectly, divert, entice, knowingly call upon, sell or solicit, take away or move any customer of ACN, any other ACN Company or any ACN Provider, whether or not I originally procured or brought such customer to ACN, any other ACN Company or ACN Provider (such activities are collectively referred to and included herein as 'solicitation'). All customers solicited by an IBO on behalf of ACN, any other ACN Company or ACN Providers are deemed to be customers of ACN, the other ACN Company or the ACN Provider (as applicable) and not of the IBO. I understand that such non solicitation prohibition shall be strictly enforced and that each other ACN Company and each ACN Provider shall be a third party beneficiary of this prohibition. Further, during the term of the Agreement and for a period of one (1) year thereafter, I may not enter into a direct marketing relationship with any ACN Provider. During the term of this Agreement and for a period of one (1) year thereafter, I shall not solicit an ACN Company IBO, whether active, inactive, individual or entity, to participate in a network marketing program offered by any other company. Each ACN Company shall be a third party beneficiary of this prohibition. Without limiting in any way ACN's or any other ACN Company's right to pursue all rights and remedies available to it, violation of this covenant and condition will result in, but is not limited to, forfeiture of all rights in any IBO position and ACN Payments, including all current and future commissions, bonuses and payments of any kind.

©ACN Opportunity, LLC 2014 US_IBO_RP_W_062514

# EXHIBIT C



ACN Opportunity, LLC
1000 Progress Place
Concord, NC 28025-2449
Phone: 704-260-3226
Fax: 704-260-3652
www.acninc.com

# INDEPENDENT BUSINESS OWNER AGREEMENT

| Office Use Only | Data Entry | Date |
|---|---|---|
| | | |

## PLEASE TYPE OR PRINT CLEARLY

(Circle One):

| Individual | Company |
|---|---|

## APPLICANT INFORMATION     *LIST NAME OR COMPANY, NOT BOTH.*

| Last Name | First Name | Middle Initial | Home Telephone (with area code) | Social Security # | Birth date of Applicant |
|---|---|---|---|---|---|

| Company Name (Proof of Company Name, Business Tax ID # or Employer ID # required) | Cellular Telephone (with area code) | Federal Tax I.D.# (if applicable) | Birth date of Principal |
|---|---|---|---|

| Mailing Address | City | State | Zip Code |
|---|---|---|---|

Email Address

## SPONSOR INFORMATION

| Last Name | First Name | Middle Initial | Telephone (with area code) | Business ID |
|---|---|---|---|---|

## US TERMS AND CONDITIONS

I acknowledge that I have received and reviewed the ACN Independent Business Owner Agreement, including these US Terms and Conditions and the ACN Policies and Procedures and the ACN Compensation Plan, which are hereby incorporated into and made part of this ACN Independent Business Owner Agreement by reference (collectively, the "Agreement"). By signing below, I agree to comply with, and be bound by, the terms and conditions set forth in the Agreement.I acknowledge and agree that the Agreement will become a binding agreement upon me and ACN Opportunity, LLC, a North Carolina limited liability company, only upon acceptance by ACN, and that ACN will notify me of acceptance of the Agreement via email to the email address I submit with this Agreement. I understand that ACN has the right to accept or reject my application to become an Independent Business Owner ("IBO") in its sole discretion. For purposes of this Agreement, ACN Opportunity, LLC is referred to as "ACN". ACN and its parents, subsidiaries and affiliates may be referred to herein collectively as the "ACN Companies" or each individually as an "ACN Company". I understand that there is no requirement beyond entering into this Agreement and payment of the initial fee to become an IBO. No other purchase of sales or training materials or other services are required to become an IBO and any purchase of sales aids, training materials or training is strictly voluntary. I understand that my advancement to higher qualification levels in the ACN Compensation Plan is based upon the acquisition of customers and the usage by such customers of products (goods and services) offered by or through ACN ("ACN Products"), and that I am not obligated to purchase ACN Products. I also understand that if I choose to sponsor others to become IBOs and participate in ACN's Compensation Plan, I will not receive any compensation whatsoever for the act of sponsoring or recruiting, and that I will be compensated based upon the activities of other IBOs only to the extent of sales made by them to customers of ACN Products.

1. I, the undersigned applicant, represent that I am of legal age to enter into legally binding agreements, and that the information submitted in connection with my application to become an IBO is complete, true and correct. I agree to promptly notify ACN of any changes to such information. If I am executing this Agreement on behalf of a corporation, limited liability company, partnership, trust or other entity, I represent that I have the authority to enter into such agreements for the entity, but nonetheless I agree that in addition to such entity, I will be personally responsible for the performance of all the duties and obligations described in this Agreement.

**PLEASE SEE PAGE 2 FOR ADDITIONAL TERMS & CONDITIONS**

## CANCELLATION

I may cancel this transaction, without penalty or obligation, for a full refund, if postmarked within ten (10) business days from the date of this Agreement, exclusive of the date of signing. I understand that if I cancel after the ten (10) day period, I am not entitled to a full refund. This limitation is subject to and shall be deemed modified to reflect the limitations required by any state law, including the state of Georgia. If I cancel within the ten (10) business days from the date of this Agreement, any payments made by me under this Agreement and any instrument executed by me will be returned within fifteen (15) business days following receipt by ACN of my Cancellation Notice. To cancel this Agreement, I must deliver personally or via courier or by registered or certified mail return receipt requested, a written, signed, dated copy of a Notice of Cancellation to: ACN Opportunity, LLC, 1000 Progress Place, Concord, NC 28025 Attn: FSS Research. Where applicable state law on cancellation is inconsistent with ACN policy, such state law shall be in force.

## ACCEPTANCE AND PAYMENT

☐ **$499  TEAM TRAINER**

By signing below, I authorize ACN to charge the credit card listed below.

Select payment method:  ☐ Personal Check (make payable to ACN)  ☐ Cashier's Check  ☐ Money Order  ☐ American Express, Discover, Master Card or Visa

| Credit Card Account Number | Expiration Date | CVV Code (The 3 or 4 digit value located on the front or back of your card) |
|---|---|---|

When you provide a check as payment, you authorize us either to use the information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use this information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day you make your payment, and you will not receive your check back from your financial institution. In the event that your check is returned unpaid for insufficient or uncollected funds, we may electronically debit your account for the principal amount of the check.

I verify that I have carefully reviewed and fully understand ACN's income opportunity presentation materials, which can be found on The ACN Opportunity Dual Disc or www.acninc.com. I acknowledge that ACN has a global commitment to integrity, and as an ACN Independent Business Owner, it is my responsibility to uphold this commitment and always operate my business the right way.

Yes, I want to become an Independent Business Owner. Neither I, nor my spouse/life partner (unless they are my sponsor), have had any other interest and/or benefit in any other ACN IBO position within the 12 months prior to the effective date of this Agreement. I have read and agree to be bound by all of the terms and conditions of this Agreement, including the US Terms and Conditions, the ACN Policies and Procedures, and the ACN Compensation Plan, all of which are incorporated into this Agreement and are available for me to review, store, or print at www.acninc.com

## ACCEPTED AND AGREED:

| Applicant's Signature | Date |
|---|---|

| Applicant's Printed Name | Your Business ID number is: _____ |
|---|---|

©ACN Opportunity, LLC 2016 US_IBO_RP_W_040116

2. I agree to timely pay for any products and services I order from ACN. I acknowledge that ACN may offset such debt from any commissions, bonuses, or other compensation earned through the ACN Compensation Plan, or any other monies owed to me ("ACN Payments").

3. I agree that as an IBO, I am an independent contractor responsible for my own business and not an agent, legal representative or employee of ACN or any carrier, supplier, service provider or other party with whom ACN transacts or contracts business ("ACN Providers"). I acknowledge that my IBO relationship is with ACN Opportunity, LLC and not with any other ACN Company or ACN Provider. I understand that as an IBO, I am free to select my own means, methods and manner of operation and that I am free to choose the hours and location of my activities under this Agreement, subject only to the terms of this Agreement. I shall have no power or authority to bind ACN, either directly or indirectly, and I will not take any action inconsistent with this limit of authority, including representing in any manner that I am an agent, representative, legal representative or employee of ACN, any other ACN Company or any ACN Provider. I acknowledge that as an independent contractor I am not entitled to holidays, vacations, disability, insurance, pensions or retirement plans, or any other benefits offered or provided by ACN or any other ACN Company to its employees. I understand that I am solely responsible for remitting any taxes and obtaining any business licenses or insurance required by regulations or authorities to conduct my business. I acknowledge and agree that I will not be treated as or represent myself as an employee for purposes of any federal, state or local statute, regulation, ordinance or other law.

4. I may terminate this Agreement for any reason, at any time, by giving ACN prior written notice at its address of record. ACN may terminate this Agreement pursuant to the ACN Policies and Procedures or in the event that I breach any part of this Agreement.

5. I acknowledge that as an IBO, I am not guaranteed any income nor am I assured any profits or success, and I certify that no claims of guaranteed profits or representations of expected earnings that might result from my efforts as an IBO have been made by ACN or my sponsor. Similarly, I shall not represent directly or indirectly that any person may, can, or will earn any stated amount or that any IBOs are guaranteed success.

6. I understand that the ACN Products are offered in different markets on terms and at rates determined by ACN or ACN Providers, and that the markets where the products are offered and the terms and conditions or prices thereof may change from time to time without notice.

7. This Agreement shall become effective upon acceptance by ACN and continue for an initial term of one (1) year unless sooner terminated as permitted herein. My relationship with ACN may be extended for additional one year periods by my agreement to the then current ACN IBO US Terms and Conditions, and payment of ACN's annual renewal fee no later than 30 days after each Agreement anniversary date. The annual fee is for services provided by ACN which include but are not limited to tracking of personal customers, tracking of downline IBOs and support services, including but not limited to hosting of an IBO's architect website, materials and training information on the IBO Back Office, and access to the IBO support call center. I understand that failure to renew within the specified time frame shall result in termination of this Agreement and my relationship with ACN and deactivation of my IBO position, and shall result in the forfeiture of bonuses, commissions or other payments from ACN. However, those rights and obligations which by their nature are intended to survive termination of this Agreement shall survive, including without limitation the provisions governing dispute resolution, indemnification, non-solicitation, confidentiality, and account maintenance fees.

8. I understand that there is a fee to process all ACN Payments. I agree that any payments made to me by ACN that remain unclaimed by me after six (6) months shall be held in an account that is subject to an account maintenance fee of $10 per month (the "Account Maintenance Fee") which shall be deducted by ACN monthly. If there are insufficient funds owed me from which to deduct the monthly Account Maintenance Fee when due, and I do not otherwise pay the Account Maintenance Fee, then the Account Maintenance Fee shall be prorated to reflect the amount of funds remaining and the account shall remain open for an equally prorated amount of time. When no unclaimed amounts are owed to me by ACN the account shall be closed. I further acknowledge that unclaimed amounts owed to me may be subject to applicable escheat laws which may require ACN to deliver unclaimed funds to the state.

9. In the process of selling or otherwise promoting the ACN Products, I agree that I will operate in a lawful, ethical and moral manner and I agree to make no false or misleading statements regarding the ACN Products or about the various relationships between ACN, the ACN Provider(s) and me.

10. I understand that during any investigation by ACN with respect to my breach of this Agreement or my conduct as an IBO, my IBO position status may be suspended by ACN and any ACN Payments which may be otherwise owing to me shall be held until final resolution has been achieved. I acknowledge that in the event ACN determines that I have violated this Agreement, including the ACN Policies and Procedures or the ACN Compensation Plan, ACN may terminate this Agreement and deactivate my IBO position, in which event I will not be entitled to any ACN Payments or further commissions or compensation of any kind.

11. I agree to keep accurate records and shall not engage in or perform any misleading, deceptive or unethical practices. I further agree to abide by all federal, state and local laws and regulations governing the sale or solicitation of the products marketed by ACN and/or the ACN Provider(s), including but not limited to, all applicable anti-spam legislation and obtaining and maintaining any and all permits and licenses required to perform under this Agreement and I understand that I will be personally liable for any fines and other expenses incurred by ACN, any ACN Company or any ACN Provider as a result of any failure to do so. I specifically represent and warrant that I shall not engage in the slamming of a customer.

12. IN NO EVENT WILL ACN, ANY OTHER ACN COMPANY OR ANY OTHER ACN PROVIDER BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR INCIDENTAL DAMAGES, (INCLUDING DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, AND THE LIKE), ARISING OUT OF ANY CAUSE, INCLUDING BUT NOT LIMITED TO, BREACH OF WARRANTY OR THE DELAY, ACT, ERROR OR OMISSION OF ACN, ANY ACN COMPANY OR ANY ACN PROVIDER, OR THE DELIVERY, NONDELIVERY, DISCONTINUATION, OR MODIFICATION OF ANY PRODUCT OR SERVICE BY ACN, ANY ACN COMPANY, OR ANY ACN PROVIDER, EVEN IF ACN HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

13. OTHER THAN THE RETURN RIGHTS DESCRIBED HEREIN, ACN, THE OTHER ACN COMPANIES AND ACN PROVIDERS MAKE NO EXPRESS WARRANTIES, AND THERE ARE NO IMPLIED WARRANTIES. EXPRESSLY EXCLUDED ARE ALL WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY ACN, ANY ACN COMPANY, ANY ACN PROVIDER, OR THEIR AGENTS OR EMPLOYEES WILL CREATE A WARRANTY OR IN ANY WAY INCREASE THE SCOPE OF THE FOREGOING WARRANTY.

14. ACN shall periodically make various sales literature, promotion materials, training and other products available for my use in conducting my business as an IBO. I, however, am under no obligation to purchase any quantities of those materials or services at any time. Rather, I will have the option to order and purchase any materials or services which I may choose. If I choose to purchase such materials then I may return any unused, unopened and currently marketable items for up to one year and receive a refund of 90% of the purchase price. I will be responsible for the cost of shipping said materials to ACN.

15. I acknowledge that I have the right to sign up as many personal customers as I wish. For each personal customer signed, I will be eligible to receive a commission from my personal customers' usage payments for ACN Products and from usage payments from personal customers in my network of IBOs in accord with the currently valid ACN Compensation

Plan. I understand that eligibility for receipt of payment of commissions is contingent upon having an active IBO with a valid Agreement in effect on the date such compensation is scheduled to be paid. ACN reserves the right to vary or change eligibility as set out in the ACN Compensation Plan. Any other payments I receive will be based upon fulfilling certain terms of qualification as set forth by the ACN Compensation Plan. I agree that as an ACN IBO, I shall place primary emphasis upon the sale of ACN Products to customers. Under certain circumstances, commission rates may be adjusted for promotional products or negotiated pricing.

16. I agree to indemnify and hold ACN, the other ACN Companies, the ACN Providers and their respective shareholders, directors, officers and employees harmless from any and all claims, damages, and expenses, including any attorney's fees, arising out of my actions or omissions in connection with this Agreement.

17. This Agreement shall be governed by the laws of the state of North Carolina and the Federal Arbitration Act, as specified in Section II.B. of the ACN Policies and Procedures. In the event of a dispute between ACN and me as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is mutually agreed that such disputes shall be exclusively resolved through the process and according to the provisions specified in Section II.B. of the ACN Policies and Procedures ("Dispute Resolution Provisions"). ACN and I agree that, notwithstanding Section 18 below, to the extent of any inconsistency, the Dispute Resolution Provisions in the ACN Policies and Procedures shall control. The Dispute Resolution Provisions require, without limitation, and except as otherwise expressly stated, that ACN and I will resolve all disputes through binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration. Both ACN and I agree that all disputes will be resolved on an individual basis and that each may only bring claims against the other in an individual capacity (and not as a claimant or class member in any purported class or representative proceeding).

18. I acknowledge that ACN fully reserves its right to amend this Agreement at any time by notifying me of the changes, including by posting the revisions on the ACN website (www.acninc.com). Any changes to this Agreement made by ACN may apply: (1) upon the date of execution or posting of the amended Agreement on the ACN website, or (2) prospectively to some specified date in the amendment. Any such changes are incorporated as part of this Agreement. No amendment shall apply retroactively. This Agreement, including the US Terms and Conditions, the ACN Policies and Procedures and the ACN Compensation Plan which have been incorporated herein by reference, constitutes the entire agreement between the parties hereto and shall not be modified or amended except as described herein. In the event of a conflict between the US Terms and Conditions and the ACN Policies and Procedures or the ACN Compensation Plan, the US Terms and Conditions shall control. For purposes of this Agreement, my address as submitted by me with this Agreement shall be deemed to be my correct address unless and until notification of a change of address is provided by me to ACN.

19. I understand that I may not assign this Agreement without the prior written consent of ACN, which may be withheld, conditioned, or delayed in ACN's sole discretion. This Agreement shall be binding upon and inure to the benefit of heirs, successors and permitted assigns of the parties hereto. If any provision of this Agreement is determined by any authority of competent jurisdiction to be invalid or unenforceable in part or in whole for any reason whatsoever, the validity of the remaining provisions or portions thereof shall not be affected thereby and such authority should reform this Agreement to the extent necessary to render the otherwise unenforceable provision or portion thereof valid and enforceable.

20. I acknowledge that I may receive proprietary and confidential data or information of ACN and/or ACN Provider(s) which is not publicly known or available to the competitors of ACN or ACN Providers, including but not limited to information about ACN Products, customers, and IBOs ("Confidential Information"), and I agree that I shall treat such Confidential Information as strictly confidential and that I may not, directly or indirectly use, sell, lend, lease, distribute, license, give, transfer, disclose, disseminate, reproduce or otherwise communicate any such Confidential Information to any person or entity for any purpose other than as authorized by ACN in writing. I represent and warrant that I will comply with all ACN policies and procedures relating to confidential and proprietary information, and I agree that all prohibitions against disclosure of Confidential Information shall survive the termination of this Agreement.

21. During the term of this Agreement, I agree that I shall not, directly or indirectly, sell or solicit customers for products offered by or through ACN through any person or entity other than that specifically designated or approved in writing by ACN. I agree that I shall not, during the term of this Agreement and for a period of one (1) year thereafter, directly or indirectly, divert, entice, knowingly call upon, sell or solicit, take away or move any customer of ACN, any other ACN Company or any ACN Provider, whether or not I originally procured or brought such customer to ACN, any other ACN Company or ACN Provider (such activities are collectively referred to and included herein as 'solicitation'). All customers solicited by an IBO on behalf of ACN, any other ACN Company or ACN Providers are deemed to be customers of ACN, the other ACN Company or the ACN Provider (as applicable) and not of the IBO. I understand that such non solicitation prohibition shall be strictly enforced and that each other ACN Company and each ACN Provider shall be a third party beneficiary of this prohibition. Further, during the term of the Agreement and for a period of one (1) year thereafter, I may not enter into a direct marketing relationship with any ACN Provider. During the term of this Agreement and for a period of one (1) year thereafter, I shall not solicit an ACN Company IBO, whether active, inactive, individual or entity, to participate in a network marketing program offered by any other company. Each ACN Company shall be a third party beneficiary of this prohibition. Without limiting in any way ACN's or any other ACN Company's right to pursue all rights and remedies available to it, violation of this covenant and condition will result in, but is not limited to, forfeiture of all rights in any IBO position and ACN Payments, including all current and future commissions, bonuses and payments of any kind.

2

©ACN Opportunity, LLC 2016 US_IBO_RP_W_040116