**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X
JANE DOE, LUKE LOE, RICHARD ROE, and MARY   :
MOE, individually and on behalf of all others similarly   :
situated,   :
   :
          *Plaintiffs,*   :
   :   No. 1:18-cv-09936 (LGS)
      v.   :
   :
THE TRUMP CORPORATION, DONALD J. TRUMP, in  :
his personal capacity, DONALD TRUMP, JR., ERIC   :
TRUMP, and IVANKA TRUMP,   :
   :
          *Defendants.*   :
   :
-----------------------------------------------------------------------X

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

Joanna C. Hendon
Cynthia Chen
Andrew L. Kincaid
SPEARS & IMES LLP
51 Madison Avenue
New York, New York  10010
Tel: (212) 213-6996

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

   I.   The Court Should Compel Arbitration and Stay the Case.................................. 1

   II.  The Motion to Compel Arbitration is Timely.................................................. 7

CONCLUSION............................................................................................................ 10

# TABLE OF AUTHORITIES

## Cases

*Alghanim v. Alghanim*,
    828 F. Supp. 2d 636 (S.D.N.Y. 2011)......................................................................7

*Bankers Conseco Life Ins. Co. v. Feuer*,
    2018 WL 1353279 (S.D.N.Y. Mar. 15, 2018) ...................................................1, 5

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
    2017 WL 3524682 (S.D.N.Y. Aug. 15, 2017)........................................................5

*Denney v. BDO Seidman, LLP*,
    412 F. 3d 58 (2d Cir. 2005)...............................................................................1, 4

*Fensterstock v. Educ. Fin. Partners*,
    2012 WL 3930647 (S.D.N.Y. 2012)..............................................................4, 5, 6

*Louisiana Stadium & Exposition Dist. v. Merrill Lynch*,
    626 F.3d 156 (2d Cir. 2010)................................................................................7

*McCoy v. Dave & Buster's, Inc.*,
    2018 WL 550637 (E.D.N.Y. Jan. 24, 2018) .........................................................8

*Medidata Solutions, Inc. v. Veeva Systems Inc.*,
    2018 WL 1083968 (S.D.N.Y. Feb 27, 2018).........................................................6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ...............................................................................................1

*PPG Indus., Inc. v. Webster Auto Parts, Inc.*,
    128 F.3d 103 (2d Cir.1997)..................................................................................8

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010).........................................................................1, 3, 4

*Ross v. American Exp. Co.*,
    547 F.3d 137 (2d. Cir. 2008)............................................................................4, 6

*Rush v. Oppenheimer & Co.*,
    779 F.2d 885 (2d Cir. 1985)................................................................................9

*Senisi v. John Wiley & Sons, Inc.*,
    2015 WL 256094 (S.D.N.Y. Jan. 21, 2015) .........................................................8

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
    542 F.3d 354 (2d Cir. 2008)......................................................................................................4

Defendants submit this reply in further support of their motion to stay this action in favor of an order compelling Plaintiffs to arbitrate their claims against Defendants. With their opposition brief, Plaintiffs seek to avoid arbitration by ignoring or misstating applicable law, proffering, instead, red herrings, strawmen and their own *ipse dixit*. Binding Supreme Court precedent – which Plaintiffs disregard – requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Together with the authorities cited in Defendants' moving brief, this lodestar requires the Court to stay this case in favor of arbitration.

## I.      <u>The Court Should Compel Arbitration and Stay the Case</u>

To find Plaintiffs equitably estopped from avoiding arbitration, the Court first must determine whether "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126-27 (2d Cir. 2010) (internal quotation marks omitted). Where a party alleges concerted action by a non-signatory and a signatory, the party cannot later "escape the consequences of those allegations by arguing that [the non-signatory] and [the signatory] lack the requisite close relationship, or that plaintiffs' claims … are not connected to [the non-signatory's] relationship with [the signatory]." *Denney v. BDO Seidman*, *LLP*, 412 F.3d 58, 70 (2d Cir. 2005); *accord Bankers Conseco Life Ins. Co. v. Feuer*, 2018 WL 1353279, at *7 (S.D.N.Y. Mar. 15, 2018). This holding controls here. The Complaint unambiguously pleads concerted action by Defendants and ACN to use Defendants' endorsement of ACN to induce Plaintiffs to join ACN. Plaintiffs allege:

- Central to Defendants' fraudulent scheme was a company called ACN, a multi-level marketing company ("MLM") that offers a business opportunity to individual participants. (Compl. ¶ 3)

- ACN – short for American Communications Network – was central to the aspect of Defendants' fraudulent scheme that is challenged by this action.  (*id.* ¶ 16)

- The ACN "Business Opportunity" Needed High-Profile Endorsement To Recruit and Maintain Investors.  (Compl. 31)

- In order to make both the small-group recruiting meetings and the larger motivational rallies successful, it was critical for ACN to obtain high-profile celebrity endorsement. Enter the Trump Enterprise.  (*id.* ¶ 85)

- ACN first announced that the Trump Enterprise had agreed to promote and endorse ACN in the Q4 2005 edition of ACN Newsmagazine, ACN's quarterly magazine sent to IBOs.  The announcement stated that Trump would be "featured in a variety of … media over the coming months, all designed to help you build your ACN business."  (*id.* ¶ 86)

- Debbie Davis, an ACN "Senior Vice President and Circle of Champions Member," wrote on ACN's Company Blog that: "[ACN's appearance on The Celebrity Apprentice] has simply changed the game. Because of the show, many representatives were able to talk to people they've never talked with before, and . . . many of those people may have never heard of the ACN home-based business opportunity. When Mr. Trump acknowledged our Co-Founders as "friends" of his, at that moment, ACN was oozing with credibility."  (*id.* ¶ 101)

- ACN made crystal clear that Trump's brand was an impactful recruiting tool for investors in two principal ways: first, it attracted the interest of prospective investors and second, it would help close the deal with prospective recruits. As ACN Newsmagazine explained, the ACN Opportunity Disc was designed to "pique interest in ACN and get existing prospects off the fence," including by using "the powerful endorsement of Donald J. Trump."  (*id.* ¶ 173)

- ACN executives repeatedly emphasized that the Trump brand would heighten the impact of his endorsement in the minds of prospective investors. ACN co-founder Tony Cupisz was quoted as saying "You've got that incredible disc with Donald Trump on it . . . whoever hands out the most of those discs will get the most results. . . .  Donald Trump is promoting your business for you" (emphasis added).  Co-founder Mike Cupisz noted that Trump's support for ACN was unparalleled: "We have got Donald Trump – a multi-billionaire – giving us the highest level endorsement than any other network marketing company has ever had in history."  (*id.* ¶ 174)

- [I]t was not only the [ACN endorsement] conveyed by Trump that so misled investors. It was ACN's ability to associate itself with the Trump brand – a right that ACN secretly bought from the Trump Enterprise – that drove the fraudulent message home and pushed investors to overcome lingering doubts and invest in the ACN business opportunity.  (*id.* ¶ 177)

Plaintiffs' arguments that finding intertwinedness in this case depends upon "an acontextual reading of two words" in their Complaint, and that the "subject matter" of their dispute is not the contract they signed with ACN, but rather Defendants' statements and omissions (Opp. Br. 9), are belied by the allegations in the Complaint, from which Plaintiffs now backtrack.  In fact, the "subject matter" of virtually all of the statements upon which Plaintiffs rely is the Business Opportunity that ACN sold Plaintiffs under the agreements Plaintiffs contend are irrelevant to their claims.  (*See, e.g.,* Compl. ¶¶ 8, 17, 19, 105-07, 114, 117, 119, 123, 133, 212, 226, 254, 265).  To prove any of these statements false, moreover, Plaintiffs will have to establish that what ACN sold them, under the same agreements, was not as advertised.  Further, Plaintiffs' damages allegedly consist of fees they paid to ACN under the same agreements. Accordingly, Plaintiffs will have to overcome the provision of those agreements in which they "acknowledge that as an IBO, I am not guaranteed any income nor am I assured any profits or success and I certify that no claims of guaranteed profits or representations of expected earnings that might result from my efforts as an IBO have been made by ACN or my sponsor."  (ECF No. 114, Ex. A-C, ¶ 5).

The second prong of the analysis asks whether there exists "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement."  *Ragone*, 595 F.3d at 127 (internal quotation marks omitted).  In response, Plaintiffs devote pages of briefing to establishing that they did not subjectively consent to arbitrate disputes with Defendants (Opp. Br. 8-13), a fact not contested on this motion and asserted by *every* party opposing application of equitable estoppel.

The relationship "of a nature that justifies" test is objective.  It looks "not to evidence that

- 3 -

the estopped party actually intended or expected that any dispute with the nonsignatory would be subject to arbitration," *Fensterstock v. Educ. Fin. Partners,* 2012 WL 3930647, at *4 (S.D.N.Y. 2012) (internal quotation marks omitted), but to whether plaintiff's agreement to arbitrate is "'reasonably seen. . . as extending not only to the other signatory, but also to a non-signatory related to the latter . . . that was, or would predictably become, with the knowledge and consent of the party opposing arbitration, affiliated or associated with the other signatory in such a manner as to make it unfair to allow the party opposing arbitration to avoid its commitment to arbitrate on the ground that the non-signatory was not the very entity with which the party opposing arbitration had a contract.'"  *Ross v. Am. Exp. Co.*, 547 F.3d 137, 145-46 (2d Cir. 2008) (internal modifications omitted) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc*., 542 F.3d 354, 361 (2d Cir. 2008)).

Courts in this circuit have found the requisite relationship not in a "limited category" of cases, as Plaintiffs opine (Opp. Br. 11), but across many and varied fact patterns, and on behalf of every defendant to have articulated a plausible basis for their doing so.  For example, over Ms. Ragone's objection, the Court of Appeals held that ESPN, with whom she never contracted and whose personnel she alleged sexually harassed her, could avail itself of an arbitration agreement Ms. Ragone signed with her employer, the production company that assigned her to provide hair and make-up services to ESPN.  *Ragone*, 595 F.3d at 127-28.  Over the objection of taxpayers seeking to sue Deutsche Bank for its role in recommending fraudulent tax shelter transactions to them, the Court of Appeals found the requisite relationship present between plaintiffs and Deutsche Bank, because the Complaint alleged that Deutsche Bank and the accountants with whom the taxpayers did agree to arbitrate "acted in concert," because the firms jointly marketed the tax shelters alongside Deutsche Bank.  *Denney*, 412 F.3d at 70-71.  The Court neither

searched for nor paused at the absence of any of the three "limited categor[ies] of relationship" proffered by Plaintiffs.

Last year, in *Bankers Conseco Life Ins. v. Feuer*, the District Court, over plaintiffs' objection, held that two individuals and the investment management firm they owned (Beechwood Capital) – with whom plaintiffs had not contracted – could avail themselves of the arbitration agreement between plaintiffs and a separate entity, Beechwood Re, because "Plaintiffs allegedly were fraudulently induced into executing the Reinsurance Agreements with Beechwood Re via representations made by the individual defendants on behalf of Beechwood Capital." *Bankers Conseco*, 2018 WL 1353279, at *7.  In that case, as here, the plaintiffs argued that their claims "do not arise from the subject matter of the Reinsurance Agreements," and that the language in the arbitration clause limiting coverage to disputes "between the parties" should be strictly enforced.  The Court rejected both arguments, finding that "the bulk of Plaintiffs' claims . . . arise from the formation, execution, and existence of" the agreements and "the first six pages of Plaintiffs' Amended Complaint detail the conspiracy allegations against Defendants via the creation and utilization of Beechwood Re as a means to defraud." *Id*. at *5.

In *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 2017 WL 3524682 (S.D.N.Y. Aug. 15, 2017), *appeal withdrawn*, 2017 WL 8219086 (2d Cir. Dec. 19, 2017), over plaintiff's objection, the District Court found the requisite relationship between the plaintiff and a non-signatory investment advisor, because the record showed the plaintiff knew his employer had engaged the investment advisor to manage the firm's 401k and profit sharing plans, and the relationship between the employer and the investment manager was longstanding.  In *Fensterstock*, over plaintiff's objection, the District Court found the requisite relationship between the plaintiff and the servicer of his loan, even though the note containing the arbitration clause did not reference

the servicer and the servicer was not known to plaintiff when he signed the note.  That the borrower knew the servicer's identity "almost from the very beginning of his loan repayment," without more, was sufficient.  *Fensterstock*, 2012 WL 3930647, at *5-6.

This case slots neatly into this precedent.  Defendants seek to estop Plaintiffs from avoiding arbitration of disputes arising from the circumstances by which they were induced to enter into agreements with ACN, where Defendants are alleged to have teamed up with ACN to make misleading statements about the ACN Business Opportunity for the purpose of inducing Plaintiffs to enter into those very agreements.  It is difficult to conceive of a tighter nexus among the parties, the claims, the signatories, and the contracts than this.  *Contra Medidata Sols, Inc. v. Veeva Sys. Inc*., 2018 WL 1083968 (S.D.N.Y. Feb 27, 2018), *aff'd*, 748 F. App'x 363 (2d Cir. 2018) (declining to apply the doctrine where "the only relationship alleged between Plaintiffs and Defendant is that of competitors"); *Ross*, 547 F.3d at 148 (same where movant was "a complete stranger" to the agreements).

Plaintiffs deride the notion that they "must have known that when they signed agreements with ACN that they were coming to a meeting of the minds with the Trumps as well" (Opp. Br. 7; *see also id*. at 13 (the "fanciful idea that Plaintiffs considered themselves to be entering into an agreement with the Trumps when they signed agreements with ACN").)  But that is not Defendants' argument.  Indeed, it is little more than a reformulation of the "actual consent" test to which Plaintiffs cling, but which is not the law.  Under Second Circuit precedent, the Court must compel Plaintiffs to arbitration because it is equitable to do so, given the relationships among the parties, ACN, the IBO Agreements, and the claims against Defendants.

Nor should the Court be persuaded by the theme, newly-minted for this motion, that Plaintiffs understood Mr. Trump to be "independen[t]" of ACN or Defendants to be "objective

commentators" (Opp. Br. 2, 7), because the Complaint alleges just the opposite.  *See, e.g.*,
Compl. ¶ 17 ("Trump . . .repeatedly, explicitly, and bombastically endorsed ACN"); ¶ 86 ("ACN
first announced that the Trump Enterprise had agreed to promote and endorse ACN"); ¶ 87
("ACN . . . explained to investors the unprecedented significance of Trump's endorsement"); ¶
96 ("Trump disseminated the Message during at least fourteen appearances at major ACN
events"); ¶ 144 (In a 2012 edition of the ACN Opportunity Disc, Trump stated, "I've been
working with ACN for a few years now"); ¶ 146 ("I . . . have [a] special relationship with the
founders"); ¶ 147 (Trump disclosing to an ACN audience that "he had 'agreed to extend the
relationship for a substantial period of time'"); *see also* ECF No. 114 at 14.[1]

## II.   <u>The Motion to Compel Arbitration is Timely</u>

Defendants' motion is timely.  "In determining whether a party has waived its right to
arbitration by expressing its intent to litigate the dispute in question, [the Court must] consider
the following three factors: '(1) the time elapsed from when litigation was commenced until the
request for arbitration; (2) the amount of litigation to date, including motion practice and
discovery; and (3) proof of prejudice.'"  *La. Stadium & Exposition Dist. v. Merrill Lynch*, 626
F.3d 156, 159 (2d Cir. 2010).  "[T]he above factors must be applied to the specific context of
each particular case.  That said, the key to a waiver analysis is prejudice.  Waiver of the right to
compel arbitration due to participation in litigation may be found only when prejudice to the
other party is demonstrated."  *Id*. (internal quotation marks and alterations omitted).  But
"[i]ncurring legal expenses inherent in litigation, without more, is insufficient evidence of

---

[1] Plaintiffs mischaracterize Defendants' agency argument, which incorporates fourteen paragraphs of the Complaint
(ECF No. 114 at 11-12), and not simply "a pair of statements" by counsel in a brief, as Plaintiffs claim (Opp. Br.
16).  Plaintiffs are also wrong that it is "far from clear" that a non-signatory may rely upon principles of agency to
compel a signatory to arbitrate, as Plaintiffs assert (*id.* 15).  "[C]ourts in this and other circuits consistently have held
that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that
agreement."  *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 650 (S.D.N.Y. 2011) (internal quotation marks omitted).

prejudice to justify a finding of waiver," *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir.1997), and Plaintiffs can muster no more than that here.

Instead, Plaintiffs seek to burden shift, proclaiming that Defendants must proffer a "compelling justification" (Opp. Br. 17) for raising the subject of arbitrability after they filed their motion to dismiss, and not before.  There is no requirement that a defendant make such an election, nor that it justify *not* having done so in order to avoid waiver, and no case Plaintiffs cite states otherwise.  Nor can Plaintiffs avoid the consequences of the decision they made to shield their identities not only from the public, but from Defendants, too – a strategy bound to delay any determination of arbitrability and one Plaintiffs may have embraced for just that purpose.  In any event, the law is clear that a party cannot claim waiver where its own litigation strategy contributes to the alleged delay.  *See Senisi v. John Wiley & Sons, Inc.*, 2015 WL 256094, at *4 (S.D.N.Y. Jan. 21, 2015) (finding no waiver where "Senisi's own litigation strategy was a factor in the timing of the instant motion practice."  Senisi initially sought "only a declaratory judgment," and "Wiley filed this motion less than three months" after Senisi "filed the SAC asserting the specific claims at issue here."  In this context, Wiley's "delay was not unreasonable by any measure"); *McCoy v. Dave & Buster's, Inc.*, 2018 WL 550637, at *4 n.5 (E.D.N.Y. Jan. 24, 2018) (finding no waiver in part because "defendant moved to compel arbitration shortly after discovering the existence of the arbitration agreement").

Plaintiffs' citation to unrelated cases in which Defendants sought to compel arbitration only undercuts their argument.  In those cases, Defendants knew plaintiffs' names, had custody of the arbitration agreements at issue (because they signed them), and thus could assess arbitrability immediately.  None of that is true here, where Defendants still do not have copies of Plaintiffs' IBO Agreements.  *See* Affirmation of Cynthia Chen in Support of Defendants' Motion

to Compel Arbitration, dated September 27, 2019 ¶¶ 6-10.

Plaintiffs continue their sleight of hand, contending Defendants "litigate[d] this case aggressively for the better part of a year" (Opp. Br. 1), "adopted an aggressive litigation defense posture" (*id.* 4), "repeatedly manifested their intent to litigate" (*id.* 17), made "enthusiastic use of this Court's power and authority" (*id.* 18), including "by serving a battery of nonparty subpoenas" (*id.*). All this, by way of describing a five-month period in which Defendants (a) filed a motion to dismiss, (b) sought a stay of discovery pending decision on that motion, and (c) re-filed the motion when Plaintiffs chose to amend their pleading, rather than oppose the motion.

Lost in Plaintiffs' brief is mention of the fact that the subpoenas noticed by Defendants were for document preservation only (and not for discovery which was stayed), that it was Plaintiffs, and not Defendants, who obtained relief from the stay in order to serve such notices (ECF No. 59 at 30), or that the "battery" of preservation notices served by Defendants ran to ten, compared to the 42 that Plaintiffs noticed. *See* (Chen Aff. ¶¶ 4-5). Absent, is the fact that, in the eight months that transpired between the filing of the action and Defendants' raising the issue of arbitrability, three are a nullity under the waiver analysis, because, the Court was considering, and had not yet decided, Defendants' motion to dismiss, and discovery was stayed. Missing, too, is that the Second Circuit has already held it "*beyond question* that defendants' delay in seeking arbitration during approximately eight months of pretrial proceedings is insufficient by itself to constitute a waiver of the right to arbitrate." This, in a case where the Defendant not only filed a motion to dismiss, but, unlike here, engaged in "extensive discovery" and answered the complaint, interposing 13 affirmative defenses without raising the issue of arbitrability. *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985) (emphasis added) (reversing waiver

ruling).[2]

Two other points merit mention.  Plaintiffs accuse Defendants of keeping the instant motion "in their back pocket in the event they lost their motion to dismiss" and adopting a "heads I win, tails we arbitrate strategy." (Opp. Br. 18, 23).  That is false.  Notwithstanding that the Court's rules discourage such correspondence, Defendants wrote to the Court before decision on the motion to dismiss (and with no inkling as to when one might issue), to raise the fact that they intended to move to compel arbitration following decision on that motion.  "[T]he contemplated motion to compel arbitration would be dispositive, if granted," Defendants wrote, and "there is already pending a dispositive motion."  (ECF No. 94).  Defendants therefore wrote "respectfully to request the Court's guidance as to how to proceed" (*id.*), conduct plainly inconsistent with gamesmanship.

Finally, Plaintiffs in a footnote abandon their argument that waiver of a right to compel named plaintiffs to arbitrate waives that right with respect to putative class members.  (Opp. Br. 16 n.8).  Defendants of course cannot waive any right they possess as to non-parties.  (ECF 114 at 18-19).  Because Defendants may compel every putative class member to arbitrate, Plaintiffs cannot satisfy CAFA's thresholds, and the Court lacks jurisdiction over Plaintiffs' state law claims.

## CONCLUSION

For the reasons set forth above and in Defendants' moving brief, the Court should stay

---

[2] The notion that Plaintiffs' motion to proceed pseudonymously "would have been fundamentally different" had Defendants' raised the issue of arbitrability earlier in the case (Opp. Br. 19) strains credulity, both because Plaintiffs intentionally avoided arbitration (where their identities would have been confidential) by filing a lawsuit accusing ACN of defrauding them of ACN enrollment fees, without naming ACN in this action.  But also because, even after Plaintiffs' right to remain pseudonymous in this case expired (on July 24, 2019), they contemptuously refused to disclose their identities to Defendants (ECF No. 104 at 9), a position they maintained until two weeks ago, relenting only when the Court, over Defendants' objection, approved a protective order that effectively pseudonymized Plaintiffs for as long as their lawsuit is in this Court.  (ECF No. 104 at 9; Chen Aff. ¶¶ 6-7).

this action and order Plaintiffs to arbitrate their state law claims with Defendants.


Respectfully submitted,

/s/ Joanna C. Hendon

Joanna C. Hendon
Cynthia Chen
Andrew L. Kincaid

SPEARS & IMES LLP
51 Madison Avenue
New York, New York 10010
Tel:  (212) 213-6996
Fax:  (212) 213-0849
jhendon@spearsimes.com
cchen@spearsimes.com
akincaid@spearsimes.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JANE DOE, LUKE LOE, RICHARD ROE, and MARY          :
MOE, individually and on behalf of all others similarly   :
situated,                                                  :
                                                          :
                            *Plaintiffs,*                  :
                                                          :          No. 1:18-cv-09936 (LGS)
                    v.                                     :
                                                          :
THE TRUMP CORPORATION, DONALD J. TRUMP, in  :
his personal capacity, DONALD TRUMP, JR., ERIC    :
TRUMP, and IVANKA TRUMP,                           :
                                                          :
                            *Defendants.*                 :
                                                          :
------------------------------------------------------------------------X

## AFFIRMATION OF CYNTHIA CHEN IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

I, Cynthia Chen, hereby affirm as follows:

1.      I am an attorney duly admitted to practice in the State of New York and before this Court.

2.      I am associated with the law firm of Spears & Imes LLP, counsel for Defendants in the above-captioned action.

3.      I respectfully make this affirmation in reply to argument made by Plaintiffs in opposition to Defendants' Motion to Compel Arbitration (ECF No. 113).  I have personal knowledge of the facts set forth herein based upon my participation in this case, including my receipt of correspondence between the parties' counsel in this matter.

4.      On January 9, 2019, Plaintiffs provided notice of a subpoena to be issued by them to a third party ACN Opportunity, LLC ("ACN") compelling ACN to preserve evidence in this case.  On January 18, 2019, Plaintiffs provided Defendants with notice of 40 additional such

subpoenas addressed to other third parties.  On June 13, 2019, Plaintiffs provided Defendants with notice of one more such subpoena.

5.       On January 16, 2019, Defendants provided Plaintiffs with copies of ten subpoenas addressed to friends and relations of Plaintiffs identified by Plaintiffs in the Complaint as having either encouraged Plaintiffs to become ACN Independent Business Owners or having been encouraged by Plaintiffs to become ACN Independent Business Owners or to purchase ACN goods and services.  Those subpoenas direct the recipients to preserve, but not produce, certain evidence.

6.       On September 10, 2019, at approximately 1:36 P.M., the Court entered a Protective Order in this case.  That same day, at approximately 3:30 P.M., Defendants requested that Plaintiffs disclose their names to Defendants.

7.       On September 11, 2019 at approximately 8:46 A.M., two of the four Plaintiffs disclosed their names to Defendants.  At approximately 10:32 A.M., the third Plaintiff disclosed their name to Defendants.  At approximately 12:50 P.M., the fourth Plaintiff disclosed their name to Defendants.

8.       On September 11, 2019 at approximately 6:19 P.M., ACN advised the parties that the Protective Order entered by the Court in this case "unduly restricts ACN's ability to exercise and enforce its own rights under the IBO Agreements, including its right to have any dispute between it and an IBO heard in arbitration."

9.       On September 25, 2019, ACN proposed changes to the Non-Disclosure Agreement under the Protective Order.  Attached hereto as Exhibit A is a true and correct copy of ACN's proposed edit to the Non-Disclosure Agreement.  A true and correct copy of Plaintiffs' response to ACN is attached hereto as Exhibit B.

10.     The Protective Order bars Defendants from providing Plaintiffs' identities to

ACN, so that ACN can locate Plaintiffs' IBO Agreements, until ACN has signed the Non-

Disclosure Agreement under the Protective Order.  (ECF No. 112 at 3.)

I affirm under penalty of perjury that the foregoing is true and correct.

Dated:  September 27, 2019
        New York, New York

By:     /s/ *Cynthia Chen*
        Cynthia Chen, Esq.

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

JANE DOE, LUKE LOE, RICHARD ROE,
and MARY MOE, individually and on behalf
of all others similarly situated,

*Plaintiffs*,

*v.*

THE TRUMP CORPORATION, DONALD J.
TRUMP, in his personal capacity,
DONALD TRUMP JR., ERIC TRUMP, and
IVANKA TRUMP,

*Defendants*.

No. 1:18-cv-09936-LGS

## NON-DISCLOSURE AGREEMENT

I, _____, on behalf of non-party ACN Opportunity, LLC ("ACN") acknowledge that I have read and understand the Protective Order in this action governing the non-disclosure of Confidential Discovery Material and Confidential Identity Information (together, "Protected Material"). I agree that (1) I will hold in confidence all Protected Material to the extent required by the Protective Order and agree to be bound by the terms of that Order; (2) I will use such Protected Material only for purposes of this litigation and for no other purpose whatsoever; and (3) I will take all due precautions to prevent the unauthorized or inadvertent disclosure of such Protected Material.

Notwithstanding the foregoing, as reflected by their counter-signatures below, the parties hereby stipulate and agree that nothing in this Non-Disclosure Agreement or the Protective Order in this action shall prevent or limit ACN in any way from exercising its rights and/or pursuing all remedies available to it under its agreement(s), through arbitration or otherwise as required by its agreement(s), with any Defendant and/or any Independent Business Owner, including but not limited to any plaintiff or any putative class member in this action.

By acknowledging these obligations under the Protective Order, I understand that I am submitting myself to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of ~~any issue or dispute arising hereunder~~enforcement of the Protective Order only, and that my willful violation of any term of the Protective Order could subject me to punishment for contempt of court.

010-8854-7070/1/AMERICAS

Dated: _____

Countersigned as to paragraph 2 above by:

Counsel for Plaintiffs: _____

Counsel for Defendants: _____

# EXHIBIT B

| From: | Andrew Wilson |
|---|---|
| To: | Niehaus, Stephanie E.; Joanna C. Hendon; Andrew Kincaid; Cynthia Chen; Alexander Rodney; Roberta Kaplan; John Quinn; Andrew G. Celli |
| Cc: | Colarossi, Alice D. |
| Subject: | RE: Doe v Trump; Proposed Revised NDA for ACN |
| Date: | Wednesday, September 25, 2019 18:18:17 |

Dear Stephanie,

The Court has already entered the form NDA that certain non-parties are required to sign before receiving protected information under the Protective Order. But ACN Opportunities, LLC does not need to sign that NDA to respond to the Plaintiffs' subpoena because responding to that subpoena does not require ACN to receive any protected information under the Protective Order. Nor is ACN required to sign the court-ordered NDA to mark any documents confidential that ACN produces in response to that subpoena. We look forward to receiving your written response to that subpoena.

Andrew

O. Andrew F. Wilson
Partner
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020
212.763.5000
www.ecbalaw.com

This electronic message transmission contains information from the law firm of Emery Celli Brinckerhoff & Abady LLP which may be confidential or privileged.  The information is intended to be for the use of the individual or entity named above.  If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the contents of this information is prohibited.  If you have received this electronic transmission in error, please notify us by telephone (212-763-5000) or by electronic mail (awilson@ecbalaw.com) immediately.

**From:** Niehaus, Stephanie E. <stephanie.niehaus@squirepb.com>
**Sent:** Wednesday, September 25, 2019 5:12 PM
**To:** Joanna C. Hendon <jhendon@spearsimes.com>; Andrew Kincaid <akincaid@spearsimes.com>; Cynthia Chen <cchen@spearsimes.com>; Alexander Rodney <arodney@kaplanhecker.com>; Roberta Kaplan <rkaplan@kaplanhecker.com>; John Quinn <jquinn@kaplanhecker.com>; Andrew G. Celli <acelli@ecbalaw.com>; Andrew Wilson <awilson@ecbalaw.com>
**Cc:** Colarossi, Alice D. <alice.colarossi@squirepb.com>
**Subject:** Doe v Trump; Proposed Revised NDA for ACN

Dear all:

Following up on prior discussions regarding the parties' discovery directed to non-party ACN Opportunities, LLC in this matter, we have attempted to revise the NDA to satisfy ACN's concerns with signing on to the Protective Order and producing documents pursuant to it.  Please see our proposed revisions in the attached, which anticipates counter-signatures from both sides acknowledging ACN's reservation of rights and remedies.  Thank you for your consideration.

Stephanie



**Stephanie E. Niehaus**
Partner
Squire Patton Boggs (US) LLP
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112

T  +1 212 872 9851
O  +1 212 872 9800
F  +1 212 872 9815
M  +1 440 897 1287

stephanie.niehaus@squirepb.com | squirepattonboggs.com

--------------------------------------------------------------------
44 Offices in 19 Countries.

This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person.

For information about how Squire Patton Boggs processes EU personal data that is subject to the requirements of the EU General Data Protection Regulation, please see our Privacy Notice regarding the processing of EU personal data about clients and other business contacts pursuant to the GDPR at www.squirepattonboggs.com.

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities. Please visit www.squirepattonboggs.com for more information.

#US
--------------------------------------------------------------------