It is ORDERED that non-parties Metro-Goldwyn-Mayer Studios, Inc. and
JMBP, LLC shall email a letter response to Plaintiff's letter motion to
Schofield_NYSDChambers@nysd.uscourts.gov by January 6, 2020.

Plaintiffs shall serve this Order on non-parties Metro-Goldwyn-Mayer
Studios, Inc. and JMBP, LLC and file proof of service on ECF by
December 19, 2019.

Dated: December 16, 2019
       New York, New York

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/16/2019

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

**BY ECF**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re: *Jane Doe, et al.* v. *The Trump Corporation, et al.,* l8-cv-09936 (LGS)

Dear Judge Schofield:

  We write on behalf of Plaintiffs in the above-referenced action to respectfully request a pre-motion conference pursuant to Rule III.A of Your Honor's Individual Rules concerning a discovery dispute with nonparty Metro-Goldwyn-Mayer Studios Inc. ("MGM") and its subsidiary JMBP, LLC ("JMBP" and, collectively with MGM, the "MGM Entities").

  On September 6, 2019, Plaintiffs issued document subpoenas to the MGM Entities (the "Subpoenas"). Last month, the MGM Entities made a partial production of documents in response to those Subpoenas, and those documents confirm the allegations in the Amended Complaint and the importance of the MGM Entities to Plaintiffs' claims.[1] But as set forth below, the MGM Entities are refusing to produce additional, highly relevant documents without a valid basis.

  As the Amended Complaint makes clear, the MGM Entities were central to Defendants' fraudulent scheme. Between 2008 and 2017, JMBP was the co-producer of *The Celebrity Apprentice*, a primetime television show that played a key role in Defendants' fraudulent promotion and endorsement of American Communications Network ("ACN"). At Defendants' invitation, ACN appeared on the show twice—appearances for which ACN paid millions of dollars and which exposed ACN to a large national audience. (Am. Compl. ¶¶ 99-102, 155-156, 306.) Defendants themselves appeared alongside ACN representatives onscreen, and used the platform provided by the show to disseminate a false Message regarding ACN to tens of millions of viewers.

---

[1] In light of the Protective Order (Doc. No. 112) and the page limit for letter motions of three pages inclusive of exhibits, Plaintiffs have not attached the relevant documents to this letter motion. Instead, Plaintiffs intend to submit copies of those documents as exhibits in support of our anticipated motion to compel, with appropriate confidentiality measures consistent with the Protective Order and the Court's Individual Rules.

(*Id.* ¶¶ 99-100.) Defendants' statements about ACN on both episodes were carefully negotiated and scripted to deliver a false message and avoid negative impressions, providing an enormous recruiting benefit to ACN. (*Id.* ¶¶ 99-103.) For years after these episodes aired, clips and still images depicting Defendants' promotion and endorsement of ACN on the *Celebrity Apprentice* were repackaged in various forms and disseminated further through multiple channels of distribution to recruit prospective investors to the business opportunity. (*See id.* ¶ 88.)

For almost three months now, Plaintiffs have met and conferred in good faith with the MGM Entities. Over the course of at least five meet-and-confers, Plaintiffs have taken significant steps to narrow the scope of material requested from the MGM Entities to a reasonable and targeted set of documents within those entities' unique possession, custody, and control.

The partial production made to date confirms that the MGM Entities are in possession of documents directly relevant to Plaintiffs' claims, including the falsity of Defendants' Message concerning ACN, Defendants' knowledge of falsity, how the Message was devised, and its impact on investors. However, the MGM Entities are refusing to produce (or otherwise make available) unaired footage created in connection with these episodes, including footage depicting face-to-face interactions between Defendants themselves (and their agents and representatives) and ACN principals (and their agents and representatives).[2] Such material is highly relevant to Plaintiffs' claims—among other things, this video evidence is likely to bear directly on the nature of Defendants' relationship with ACN, the degree of control Defendants exercised over the presentation of ACN on the show, the extent of Defendants' diligence into ACN, and the intent underlying Defendants' statements. Accordingly, Plaintiffs seek to compel production of the footage pursuant to Federal Rule of Civil Procedure 45(d).

As a threshold matter, Plaintiffs are entitled to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Even in the context of motions to compel nonparties, "[r]elevance has been broadly interpreted to include any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Gilani* v. *Hewlett Packard Co.*, No. 15 Civ. 5609, 2017 WL 4236564, at *1 (S.D.N.Y. Sept. 22, 2017) (internal quotation marks omitted).

The MGM Entities do not seriously contest the relevance of the withheld footage. Instead, they rely almost exclusively on a burden argument, asserting that producing the unaired footage would divert company resources. But the Federal Rules do not shield nonparties from all burden associated with subpoena compliance—they protect nonparties only against "*undue* burden." Fed. R. Civ. P. 45(d) (emphasis added). In determining whether a party resisting disclosure has demonstrated undue burden, courts must "weigh" the assertion of burden "against the value of the information to the serving party." *Citizens Union of City of N.Y.* v. *Attorney Gen. of the State of N.Y.*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017). And, in evaluating burden, courts routinely consider the size and resources available to the responding entity. *See, e.g.*, *United States* v. *Int'l Bus. Machs. Corp.*, 83 F.R.D. 97, 108 (S.D.N.Y. 1979) (noting that "the burden of production must

---

[2] On November 22, 2019, following repeated attempts to resolve this dispute without the Court's intervention, counsel for the MGM Entities made clear that they would not produce any of the materials in question absent an order from this Court.

be compared with the size of and resources available to the responding party" and that "inconvenience is relative to size" (internal quotation marks omitted)). Here, as set forth above, the value of the unaired footage could not be higher.

Moreover, during the meet-and-confer process, Plaintiffs have already narrowed the scope of material requested from the MGM Entities to "video footage or recordings in any form, created in connection with the March 22, 2009 and March 27, 2011 episodes of *The Celebrity Apprentice*"—a targeted set of materials within the MGM Entities' exclusive possession, custody, and control. *See, e.g.*, *In re Dow Jones & Co., Inc.*, No. 98 Misc. 8-85(PKL), 1998 WL 883299, at *1 (S.D.N.Y. Dec. 17, 1998) (granting motion to compel on subpoena whose "scope . . . had since been narrowed in letters exchanged by counsel").

Further, Plaintiffs have agreed to pay the costs associated with production, which defeats any claim of undue burden. *See, e.g.*, *Mirra* v. *Jordan*, No. 13 Civ. 5519, 2015 WL 8526550, at *2 (S.D.N.Y. Dec. 7, 2015) ("As the plaintiff agreed . . . to pay all costs associated with collecting, processing and Bates stamping of the materials requested by his subpoena . . . no undue burden or significant expense will result from [] compliance with the plaintiff's subpoena."). Indeed, by offering reimbursement, Plaintiffs have already offered far more than is required under Rule 45, as nonparties are expected to devote time to compliance even without reimbursement. *See, e.g.*, *In re Subpoena to Loeb & Loeb LLP*, No. 19 Misc. Civ. 241, 2019 WL 2428704, at *6 (S.D.N.Y. June 11, 2019) (noting the "reasonable expectation that a third party will devote some time, *gratis*, to compliance with a valid subpoena before seeking reimbursement for fees").

Unable to argue expense, the MGM Entities now assert that they would be inconvenienced by the diversion of company time to identify the requested footage. But, "[i]nconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant" material. *Aristocrat Leisure Ltd.* v. *Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009). Indeed, for large, sophisticated, and highly resourced corporations, such as the MGM Entities, the time taken to respond Plaintiffs' Subpoena is simply the cost of doing business. *See Int'l Bus. Machs. Corp.*, 83 F.R.D. at 108-09; *Cedar Rapids Lodge & Suites, LLC* v. *Seibert*, No. 14 Civ. 4839, 2018 WL 3019899, at *2 (D. Minn. June 18, 2018) (stating that time spent by non-party examining files was "ordinary incident of responding to a subpoena" and "cost of doing business").

Counsel for Plaintiffs is available to address any questions that the Court may have concerning Plaintiffs' anticipated motion to compel. Thank you for your attention to this matter.

Respectfully submitted,

Roberta A. Kaplan

cc: Counsel of Record (*via* ECF)
   Counsel for the MGM Entities (*via* certified overnight delivery service and email)