UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, LUKE LOE, RICHARD ROE, and MARY MOE, individually and on behalf of all others similarly situated,<br><br>     *Plaintiffs*,<br><br>  v.<br><br>THE TRUMP CORPORATION, DONALD J. TRUMP, in his personal capacity, DONALD TRUMP JR., ERIC TRUMP, and IVANKA TRUMP,<br><br>     *Defendants*. | Case No.: 1:18-cv-09936 (LGS) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL NON-PARTY ACN OPPORTUNITY, LLC**

**EMERY CELLI BRINCKERHOFF & ABADY LLP**
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................................. ii-iii

BACKGROUND ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 4

    I.    THE SUBPOENA ONLY SEEKS RELEVANT DOCUMENTS .......................... 4

    II.   THE SUBPOENA IS TAILORED, NOT BURDENSOME ................................... 5

    III.  ACN CANNOT DELAY PRODUCTION UNTIL
           CLASS CERTIFICATION ........................................................................................ 6

    IV.  ACN'S ARBITRATION AGREEMENTS ARE IRRELEVANT .......................... 7

CONCLUSION ......................................................................................................................... 10

## TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Benavides v. Serenity Spa NY Inc.*,
    166 F. Supp. 3d 474 (S.D.N.Y. 2016)............................................................................... 6

*Chen-Oster v. Goldman, Sachs & Co.*,
    285 F.R.D. 294 (S.D.N.Y. 2012) ....................................................................................... 7

*Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*,
    269 F. Supp. 3d 124 (S.D.N.Y. 2017)............................................................................... 4

*Closed Joint Stock Co. v. Actava TV, Inc.*,
    No. 15 Civ. 8681, 2016 WL 1364942 (S.D.N.Y. Mar. 28, 2016) ............................... 9, 10

*Cohen v. City of N.Y.*,
    255 F.R.D. 110 (S.D.N.Y. 2008) ....................................................................................... 9

*Del Campo v. Kennedy*,
    236 F.R.D. 454 (N.D. Cal. 2006)....................................................................................... 7

*Duffy v. Kent County Levy Court*,
    800 F. Supp. 2d 624 (D. Del. 2011)................................................................................. 10

*Gilani v. Hewlett Packard Co.*,
    No. 15 Civ. 5609, 2017 WL 4236564  (S.D.N.Y. Sept. 22, 2017) ..................................... 4

*In re Dual-Deck Video Cassette Recorder Antitrust Litigation*,
    10 F.3d 693 (9th Cir. 1993) ............................................................................................... 9

*In re Ex Parte Application of Kleimar N.V.*,
    220 F. Supp. 3d 517 (S.D.N.Y. 2016)............................................................................... 6

*In re Garlock*,
    463 F. Supp. 2d 478 (S.D.N.Y. 2006)............................................................................... 8

*In re Morgan Stanley Mortgage Pass-Through Certificates Litigation*,
    No. 09 Civ. 2137, 2013 WL 5288835 (S.D.N.Y. Sept. 19, 2013) ..................................... 6

*In re Namenda Direct Purchaser Antitrust Litigation*,
    15 Civ. 7488, 2017 WL 4700367 (S.D.N.Y. Oct. 19, 2017) ............................................ 5

*Jackson v. Edwards*,
    No. 99 Civ. 982, 2000 WL 782947 (S.D.N.Y. Jun. 16, 2000).......................................... 6

*Sirota v. Solitron Devices, Inc.*,
    673 F.2d 566 (2d Cir. 1982)............................................................................................... 6

**Statutes and Rules**

Fed. R. Civ. P. 23 ................................................................................................................. 1, 6, 7

Fed. R. Civ. P. 26 ................................................................................................................. 4, 7, 9

Plaintiffs Jane Doe, Luke Loe, Richard Roe, and Mary Moe move to compel the production of documents from non-party ACN Opportunity, LLC ("ACN"). Plaintiffs served a subpoena *duces tecum* on ACN over four months ago seeking documents directly related to the Trump Defendants' scheme to defraud Plaintiffs into investing in ACN. In light of Defendants' false and misleading statements about ACN, the truth about ACN's business opportunity, services, and products is central to Plaintiffs' case. Yet, in response to Plaintiffs' subpoena, ACN has refused to produce a single document. Even after the Court ordered ACN and Plaintiffs to meet and confer concerning the "scope of production," Dkt. 142, ACN has refused to offer any concrete proposal regarding the scope of documents to be produced, and instead rests on its threshold objections to the Protective Order this Court has entered, Dkt. 112. Even after Plaintiffs offered several proposals for narrowing the scope of ACN's prospective production consistent with this Court's Order, ACN both refused to engage with those proposals and refused to offer any concrete counterproposals of its own.

ACN is the only custodian of the relevant documents and information Plaintiffs seek. These materials bear directly on Plaintiffs' claims, as well as the Rule 23 factors this Court will weigh upon Plaintiffs' filing of their motion for class certification. They should be produced.

## BACKGROUND

The central premise of the Amended Complaint is that the Trump Defendants defrauded vulnerable investors like Plaintiffs into investing in ACN, a multi-level marketing company. The business relationship between ACN and Defendants was first publicly announced in 2005, Amended Class Action Complaint, Dkt. 77 ("AC") ¶ 86, and continued until at least 2016, *id.* ¶ 292. For each of the Plaintiffs, Defendant Donald J. Trump's ("Trump") endorsement of ACN was the crucial "turning point" that induced them to invest in ACN as so-called Independent Business Owners ("IBOs"). AC ¶¶ 183–96, 220–25, 237–48, 260–68.

Defendants' fraud stems from their endorsement of what ACN branded the "IBO business opportunity," including the ACN IBO program and the products and services ACN marketed through its IBOs. Plaintiffs allege that Defendants made materially misleading statements regarding ACN's risk profile to consumers; the profitability of the ACN IBO business model; and the commercial viability and sales success of ACN's products and services. *Id.* ¶¶ 107, 113, 122–27. Defendants further materially misled consumers by failing to disclose that Trump was, in fact, being paid millions of dollars for his endorsement of ACN and by falsely claiming that he had conducted due diligence into ACN before agreeing to endorse it. *Id.* ¶¶ 137–56, 162–67. Accordingly, the specifics of ACN's IBO program, products, and services are plainly relevant to Plaintiffs' claims.

***Plaintiffs' Rule 45 Subpoena to ACN***

Given that Defendants' fraud involved endorsing and promoting ACN in exchange for secret payments, ACN necessarily possesses, and is likely the sole custodian of, documents and information discoverable by the parties. To obtain these materials, Plaintiffs served a subpoena *duces tecum* on ACN on September 6, 2019 (the "Subpoena). *See* Bourland Decl., Ex. A.[1]

The Subpoena sought six categories of documents concerning: (1) the relationship between ACN and Trump, Ex. A Nos. 1–4, 14–20; (2) ACN's operation and marketing of the IBO program, *id.* Nos. 5–13, 21, 24; (3) the identity and size of the Plaintiff class, *id.* Nos. 22, 23; (4) fees and out-of-pocket costs paid by IBOs to ACN, *id.* Nos. 25–27, 30; (5) compensation of IBOs, *id.* Nos. 28, 29; and (6) ACN product sales figures. *Id.* Nos. 31, 32.

Representative Requests from each of these six categories include: (1) all agreements between ACN and Trump regarding the use of or reference to Trump's name, image, voice, or statements in connection with ACN, *id.* No. 3; (2) all posts authored by Trump on any online

---

[1] References to "Bourland Decl." are to the Declaration of Nick Bourland, dated January 31, 2020.

2

website or blog operated, owned, or controlled by ACN, *id.* No. 10; (3) documents sufficient to identify all persons who made payments to ACN in order to become an IBO, *id.* No. 22; (4) documents sufficient to show the initial IBO sign-up fee and annual IBO renewal fee, *id*. Nos. 25–26; (5) documents sufficient to show how IBOs were compensated, *id.* No. 29; and (6) documents sufficient to show ACN's quarterly revenue or losses incurred from its sale of the ACN videophone, its flagship product, *id.* No. 32.

### *ACN Refuses to Produce a Single Document*

Despite having paid Defendants millions of dollars for their years of fraudulent endorsement and promotion, ACN has refused to produce any documents whatsoever in this action. ACN objected to each of Plaintiffs' requests. Through a tangle of objections, it refused to produce any documents in response to twenty-two of the requests; and it demanded a stipulation acknowledging its asserted arbitration rights before producing anything in response to the remaining ten. *See generally*, Bourland Decl., Ex. B. Despite several efforts to meet and confer over nearly three months, ACN continues to assert the same objections and condition its production of any confidential materials on the parties' agreement to sign a stipulation relating to ACN's putative arbitration rights. Bourland Decl., Ex. C, at 1 ("nothing in this [NDA] or the Protective Order . . . shall prevent or limit ACN in any way from exercising its rights and/or pursuing all remedies available to it under its agreement(s), through arbitration or otherwise").

On December 10, 2019, Plaintiffs requested a pre-motion conference to compel ACN's production, *see* Dkt. 131, to which ACN responded on January 6, 2020, *see* Dkt. 135. The Court then ordered Plaintiffs and ACN to "meet and confer to attempt to negotiate an agreement as to a *scope* of [ACN's] production." Order, Dkt. 142 (emphasis added). Plaintiffs and ACN held a meet and confer call on January 13, 2020 and exchanged a letter and several emails thereafter.

While Plaintiffs offered several proposals for narrowing the scope of ACN's production during the meet-and-confer and in subsequent correspondence consistent with the Court's Order, Dkt. 142, ACN refused to engage with those proposals at all or offer any concrete proposals of its own and instead rested on its threshold objections to the Protective Order.

As ACN has not made any production, Plaintiffs now move to compel. *See id.*

## ARGUMENT

ACN should be compelled to produce documents pursuant to the Subpoena because those documents are highly relevant and uniquely in ACN's possession, and none of ACN's objections—relevance, burden, class certification, and its arbitration clause—has merit.

### I. THE SUBPOENA ONLY SEEKS RELEVANT DOCUMENTS

The Subpoena seeks relevant documents from ACN, the best source for these materials. ACN's repeated invocation of "relevance" as a basis to withhold discovery is misplaced.

Plaintiffs, of course, are entitled to all documents on any matter that is relevant to their claims—from parties and non-parties, alike. Fed. R. Civ. P. 26(b)(1); *see also Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) (the relevance standards of Fed. R. Civ. P. 26(b)(1) apply to discovery sought from non-parties); *accord Gilani v. Hewlett Packard Co.*, No 15 Civ. 5609, 2017 WL 4236564 at *1 (S.D.N.Y. Sept. 22, 2017) ("Relevance has been broadly interpreted to include any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case") (internal quotations marks omitted). The Subpoena meets this standard.

For example, the Subpoena seeks documents sufficient to identify persons who, like Plaintiffs, invested in ACN as IBOs; documents regarding the average compensation of ACN IBOs; ACN marketing materials sent to IBOs; and documentation of average IBO compensation and quarterly revenue earned or losses incurred by ACN from videophone and non-videophone

4

sales. *See* Ex. A Nos. 5, 9–13, 21, 29, 31, 32. ACN is likely the only source of these documents, all of which bear directly on allegations in Plaintiffs' Amended Complaint. *See, e.g.*, AC ¶ 120 (Trump made false statements about the profitability of the ACN IBO business opportunity), ¶ 122 ("Trump misrepresented the commercial viability of ACN's products," including the ACN videophone), ¶ 127 (Trump falsely stated that "ACN is the largest distributor of videophones anywhere in the world. They do half-a-billion dollars' worth of sales a year.").

ACN's assertions that the documents sought are "irrelevant" are entitled to no weight.

## II.   THE SUBPOENA IS TAILORED, NOT BURDENSOME

ACN also tries in vain to justify withholding documents based on vague invocation of burden. But burden is not an abstract principle; nor is an assertion of burden alone a basis to avoid compliance with a Rule 45 Subpoena—burden must be specific and *undue*. To determine whether a subpoena imposes undue burden, courts consider concrete factors like relevance, necessity, breadth, time period, particularity, and the actual burden of production. *In re Namenda Direct Purchaser Antitrust Litigation*, 15 Civ. 7488, 2017 WL 4700367, at *2 (S.D.N.Y. Oct. 19, 2017) (citations omitted). Invoking "burden" is not enough. It is "the responsibility of the *target* of the subpoena to establish, with evidence and argument, that the discovery sought is unduly burdensome." *Id.* (emphasis added) (citations omitted).

Here, ACN has failed to explain *why* the discovery sought by Plaintiffs is unduly burdensome. ACN's boilerplate general objection that Plaintiffs' subpoena "imposes an undue burden and expense on ACN," Bourland Decl., Ex. B. ¶ 6, and repeated objections to the same effect, *see, e.g.*, *id.* at 9 ("It would be impossible for ACN to search for and identify all materials specifically responsive to this request without incurring undue burden and expense . . . ."), are meaningless, absent a showing, backed by evidence, of "the manner and extent of the burden and

5

the probable negative consequences of insisting on compliance." *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016).

Similarly, ACN's unilateral attempt to limit the time period of the requests to three years from 2013-2016 is arbitrarily limited and does not reflect the allegations in the Amended Complaint. Bourland Decl., Ex. B ¶ 11. The business relationship between ACN and Defendants was first publicly announced in 2005 and continued until at least 2016. *See* AC ¶¶ 86, 292. At least one named Plaintiff participated in ACN as an IBO until 2017. *Id.* ¶ 34. The scope of production must correlate to these allegations, not ACN's predilections.

As ACN fails to articulate with specificity how it has been burdened, its "conclusory assertion[s] of burdensomeness [are] entitled to no weight whatsoever." *Jackson v. Edwards*, No. 99 Civ. 982, 2000 WL 782947, at *3 (S.D.N.Y. Jun. 16, 2000). The Subpoena seeks relevant and necessary documents from the period of the events in the Amended Complaint. This is not unduly burdensome; documents withheld on this basis should be produced.

### III. ACN CANNOT DELAY PRODUCTION UNTIL CLASS CERTIFICATION

Contrary to ACN's argument that its response to the Subpoena should await class certification, Plaintiffs are entitled to documents relating to their putative class now. *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982) ("[T]here can be no doubt that it is proper for a district court, prior to certification of a class, to allow discovery . . . to determine whether the prerequisites of Rule 23 are satisfied."). In seeking to establish the Rule 23 factors, Plaintiffs can discover documents and information in the possession, custody, and control of both parties and non-parties. *See Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 492 (S.D.N.Y. 2016) ("[D]efendants may not refuse to produce discovery relevant to class certification on that basis alone."); *In re Morgan Stanley Mortgage Pass-Through Certificates Litigation*, No. 09 Civ. 2137, 2013 WL 5288835, at *2 (S.D.N.Y. Sept. 19, 2013) (ordering non-

6

party to comply with a subpoena that was "plainly relevant to plaintiffs' class certification motion and therefore permissible under the broad discovery allowed under [Rule 26]."); *Del Campo v. Kennedy*, 236 F.R.D. 454, 459–60 (N.D. Cal. 2006) (denying defendants' motion to quash a subpoena served on a non-party in an action where the plaintiff intended to file a motion to certify a class with claims relevant to the subpoenaed information).

Here, the Court has not bifurcated discovery, and such bifurcation is not preferred. *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012). Moreover, Plaintiffs seek the discovery necessary to support their class allegations. This includes, among other things, documents bearing on numerosity, typicality, and adequacy, and whether the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). ACN is the custodian of documents sufficient to "identify all persons and entities who invested in, subscribed to, or made payments to ACN in order to become an [IBO] and did not recoup those payments in their time as an [IBO]." Bourland Decl., Ex. A, No. 23.

Plaintiffs have a compelling need for these materials immediately. ACN's effort to withhold documents until a class is certified is improper.

## IV.   ACN'S ARBITRATION AGREEMENTS ARE IRRELEVANT

Finally, ACN's insistence on conditioning its production of any documents on Plaintiffs' recognition of ACN's purported arbitration rights is an artificial barrier to production. Any arbitration agreements ACN ostensibly entered into with members of the putative class of IBOs have no bearing on the scope of discovery.

ACN cannot escape its Rule 45 discovery obligations by asserting that the Subpoena "implicate[s] disputes against ACN," which are "subject to mandatory arbitration." Bourland Decl., Ex. B ¶ 2. ACN does not identify what these purported disputes are or how any such disputes bear on discovery in *this* case. To the extent that ACN wants to preserve these

objections, the appropriate mechanism is to assert them in its response to the Subpoena—as it has. *See id.* (objecting to the extent the Subpoena "implicate[s] any disputes against ACN arising out of or in connection with ACN's agreements" with any IBOs, "on the basis that any such dispute is subject to mandatory arbitration"). This objection, however, does not provide grounds for refusing to produce documents.

This Court rejected the same arguments ACN advances here in a previous decision from 2006, *In re Garlock*, 463 F. Supp. 2d 478, 480 (S.D.N.Y. 2006). In *Garlock*, a non-party claimed, as ACN has, that an arbitration agreement "foreclose[d] discovery against them as non-party witnesses"—an argument the court rejected as "entirely baseless." *Id.* The court properly reasoned that the clause upon which the non-party sought to assert its arbitration rights against a party to the suit "presuppose[d] the existence of an arbitrator," a condition that would only occur "if an arbitration existed in which plaintiffs and [the non-party] were parties." *Id.* Otherwise, "the arbitration clause plainly ha[d] no bearing upon the availability of discovery against [the non-party] as a non-party witness in an action against another entity." *Id.* As in *Garlock*, ACN in this case is a non-party who asserts an objection to discovery based on an arbitration that does not exist—and could not exist—because it has no dispute with the plaintiff class. Any responsive documents that ACN is withholding on the basis of the purported arbitrability of so-called "implicated disputes" against ACN should be produced.

ACN's refusal to produce confidential documents based on the same theory should be rejected for the same reason. ACN maintains that it will only produce confidential documents in response to the Subpoena if the parties stipulate and agree that nothing in the existing Protective Order or NDA prevents ACN from enforcing its purported arbitration agreements with its own IBOs, including Plaintiffs. *See* Bourland Decl., Ex. C, at 1 (ACN's redlined NDA). That is not

the province of a protective order. *See* Fed. R. Civ. P. 26(c)(1) (the purpose of a protective order is "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"); *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695–96 (9th Cir. 1993) (finding that "[p]rivacy of proprietary information, not immunity from suit, [is a] legitimate purpose of [a] protective order."). ACN's insistence on its own bespoke rider to the protective order that extracts concessions about the application of its arbitration agreements serves no valid purpose, especially because Plaintiffs are not asserting any claims against ACN.

The existing Protective Order, Dkt. 112, which has been entered by the Court and cannot simply be modified by agreement, sufficiently protects ACN's confidential materials, if any. For example, ACN "may designate as confidential any material or portion thereof that contains trade secrets, proprietary business information, competitively sensitive information, or other information the disclosure of which would, in the good faith judgment of [ACN], be seriously detrimental to [its] business or personal interests." Protective Order, Dkt. 112 ¶ 3. With respect to material designated confidential, the Order limits the class of persons who may receive such material to those directly involved in the litigation and subject to obligations of confidentiality. *Id.* ¶ 4.

Courts routinely acknowledge that provisions like these properly guard against competitive misuse of confidential or proprietary business information. *See, e.g.*, *Closed Joint Stock Co. v. Actava TV, Inc.*, No. 15 Civ. 8681, 2016 WL 1364942, at *5 (S.D.N.Y. Mar. 28, 2016) (information was sufficiently protected from competitive misuse where protective order "prohibit[ed] recipients from using confidential information for any purpose other than the prosecution or defense of [the] action"); *Cohen v. City of N.Y.*, 255 F.R.D. 110, 118 (S.D.N.Y. 2008) ("[T]he commercial value of the information at issue can generally be protected by a

protective order limiting the purposes for which the information can be used and the extent to which it can be disseminated.").

The Court's existing Protective Order, upon which Plaintiffs and other non-parties have already relied, "appropriately balances [P]laintiffs' desire for prompt production of relevant . . . information for litigation purposes with [ACN's] desire to protect such information, to the extent possible, from competitive misuse." *Closed Joint Stock Co.*, 2016 WL 1364942, at *5. ACN should not be permitted to use an objection to a protective order to bolster unrelated claims of arbitration enforceability.[2]

ACN can avail itself of the confidentiality protections offered by the Court's existing Protective Order, just as Plaintiffs and other non-parties have. Any documents withheld on the grounds of arbitrability or confidentiality should be produced.

## CONCLUSION

Plaintiffs' motion to compel non-party ACN should be granted.

Dated: January 31, 2020

                                      EMERY CELLI BRINCKERHOFF & ABADY LLP

                                      By:       /s/
                                                Andrew G. Celli
                                                O. Andrew F. Wilson
                                                Nick Bourland
                                      600 Fifth Avenue, 10th Floor
                                      New York, New York 10020
                                      (212) 763-5000

                                      *Attorneys for Plaintiffs*

---

[2] ACN's argument seems more like an attempt to assist *Defendants'* efforts to shift this case into arbitration, rather than grounds to object to a subpoena. *Cf. Duffy v. Kent County Levy Court*, 800 F. Supp. 2d 624, 631 (D. Del. 2011) (denying a non-party's motion for a protective order "to the extent that [the non-party] seeks a protective order on behalf of someone other than himself").