UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE, LUKE LOE, RICHARD ROE, and
MARY MOE, individually and on behalf of all
others similarly situated,

        *Plaintiffs*,

   *v.*

THE TRUMP CORPORATION, DONALD J.
TRUMP, in his personal capacity,
DONALD TRUMP JR., ERIC TRUMP, and
IVANKA TRUMP,

        *Defendants*.

No. 18 Civ. 9936

**REDACTED MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL THE MGM ENTITIES TO
MAKE AVAILABLE TO PLAINTIFFS A LIMITED SUBSET OF VIDEO FOOTAGE**

Roberta A. Kaplan, Esq.
John C. Quinn, Esq.
Alexander J. Rodney, Esq.

KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Telephone: (212) 763-0883

Andrew G. Celli, Jr., Esq.
Matthew D. Brinckerhoff, Esq.
O. Andrew F. Wilson, Esq.
Katherine Rosenfeld, Esq.
David Berman, Esq.

EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue at Rockefeller Center
New York, NY 10020
Telephone: (212) 763-5000

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

RELEVANT BACKGROUND ................................................................................................. 3

ARGUMENT ............................................................................................................................. 6

   A.   The Limited Subset of Unaired Video Footage Sought Is Relevant to Plaintiffs' Claims
and Proportional to the Needs of the Case.................................................................................. 6

   B.   Providing Access to the Limited Subset of Unaired Footage Will Not Unduly Burden the
MGM Entities ........................................................................................................................... 8

CONCLUSION.......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aristocrat Leisure Ltd.* v. *Deutsche Bank Tr. Co. Americas*,
  262 F.R.D. 293 (S.D.N.Y. 2009) ............................................................................................ 9

*Cedar Rapids Lodge & Suites, LLC* v. *Seibert*,
  No. 14-cv-4839, 2018 WL 3019899 (D. Minn. June 18, 2018) ................................................ 9

*Citizens Union of City of N.Y.* v. *Att'y Gen. of N.Y.*,
  269 F. Supp. 3d 124 (S.D.N.Y. 2017)................................................................................... 6, 9

*Crigger* v. *Fahnestock & Co.*,
  443 F.3d 230 (2d Cir. 2006).................................................................................................. 7, 8

*Discover Fin. Servs., Inc.* v. *Visa U.S.A., Inc.*,
  No. 04 Civ. 7844, 2006 WL 1699566 (S.D.N.Y. June 20, 2006)............................................. 3

*Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of New York*,
  284 F.R.D. 132 (S.D.N.Y. 2012) ............................................................................................ 8

*Gilani* v. *Hewlett Packard Co.*,
  No. 15-cv-5609, 2017 WL 4236564 (S.D.N.Y. Sept. 22, 2017) ......................................... 6, 7

*In re Subpoena to Loeb & Loeb LLP*,
  No. 19 Misc. Civ. 241 (PAE), 2019 WL 2428704 (S.D.N.Y. June 11, 2019)........................ 10

*McFarlane* v. *First Unum Life Ins. Co.*,
  No. 16 Civ. 7806, 2017 WL 4564928 (S.D.N.Y. Oct. 12, 2017) ......................................... 6, 7

*Mirra* v. *Jordan*,
  No. 13-cv-5519, 2015 WL 8526550 (S.D.N.Y. Dec. 7, 2015) .............................................. 10

*Treppel* v. *Biovail Corp.*,
  249 F.R.D. 111 (S.D.N.Y. 2008) ............................................................................................ 8

*United States* v. *Int'l Bus. Machines Corp.*,
  83 F.R.D. 97 (S.D.N.Y. 1979) ...........................................................................................9-10

*Wright* v. *New Moda, L.L.C.*,
  No. 17-CV-9737 (JGK)(SN), 2019 WL 2071158 (S.D.N.Y. May 10, 2019)........................... 8

## Rules

Federal Rule of Civil Procedure Rule 26(b)(1).......................................................................... 6

Rule 26 ................................................................................................................. 7

Rule 45 of the Federal Rules of Civil Procedure ............................................. 3, 6, 8, 10

Rule 45(d) of the Federal Rules of Civil Procedure ...................................................... 1

## Other Authorities

Restatement (Second) of Torts § 525 (1977) ................................................................. 7

Restatement (Third) of Torts: Liab. for Econ. Harm § 9 (Tentative Draft No. 2, 2014) ............... 7

Pursuant to Rule 45(d) of the Federal Rules of Civil Procedure and this Court's Order dated January 23, 2020 (Doc. No. 146), Plaintiffs Jane Doe, Luke Loe, Richard Roe, and Mary Moe respectfully submit this memorandum of law in support of their Motion to Compel nonparty Metro-Goldwyn-Mayer Studios Inc. ("MGM") and/or its wholly owned subsidiary JMBP, LLC ("JMBP" and, collectively with MGM, the "MGM Entities") to make available to Plaintiffs a limited subset of video footage responsive to Plaintiffs' subpoenas issued on September 6, 2019 (the "Subpoenas").   Plaintiffs also incorporate by reference their prior letters to the Court concerning this dispute dated December 10, 2019 and January 10, 2020.  (Doc. Nos. 129 and 144.)

## PRELIMINARY STATEMENT[1]

Between 2008 and 2017, the MGM Entities' affiliates, together with Defendants, co-produced *The Celebrity Apprentice*—a primetime television show that played a key role in Defendants' fraudulent promotion and endorsement of American Communications Network ("ACN").  At Defendants' invitation, ACN appeared on the show in March 2009 and March 2011 (the "ACN Episodes")—appearances for which ACN paid millions of dollars and which exposed ACN to a large national audience, providing an enormous recruiting benefit to ACN.  Defendants' statements on both episodes were carefully scripted to deliver a false Message about ACN.

In each of these two episodes, Defendants themselves appeared onscreen alongside ACN representatives (including founders and senior executives) in approximately 60 minutes of aired footage (or 120 minutes in total).  But the Defendants and their representatives also interacted with ACN and its representatives offscreen in two days of footage that has never been aired.  Plaintiffs seek a limited subset of that footage.  Among other things, the unaired footage would reveal what was kept from prospective investors concerning ACN—including the true nature of Defendants'

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Amended Complaint (Doc. No. 77 ("Compl.")).

relationship with ACN.  Moreover, comparing the unaired footage to footage included in the episodes that aired would shed light on the degree of control Defendants exercised over ACN's presentation on the show, the extent of Defendants' diligence into ACN, the falsity of Defendants' representations, the intent underlying Defendants' representations, and how editorial control was used to reinforce the Message.

While the MGM Entities contend that the relevance of such footage is speculative, the documents they have produced to date show just the opposite.  As those documents make clear,

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ Before, during,

and after filming, ██████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Because only 120

minutes (at most) of carefully and selectively edited footage was ultimately aired to viewers, the majority of these interactions were kept from investors.

Nor can the MGM Entities avoid production by relying on unfounded arguments of burden or improper forum, which they have long-since waived.  As set forth in Plaintiffs' prior letters to the Court concerning this dispute, since serving subpoenas on the MGM entities in September 2019, Plaintiffs have met and conferred in good faith and taken significant steps to narrow the scope of their requests to a targeted subset of unaired footage within the MGM Entities' unique possession, custody, and control.  Plaintiffs have also offered to travel to wherever the footage may be housed, to arrange for access at their own expense, and even to reimburse the MGM Entities for the expense associated with such access.

In light of the relevance of the material requested, the narrow scope of Plaintiffs' request, and the lack of any undue burden, the MGM Entities should be compelled to make the unaired footage available to Plaintiffs.

## RELEVANT BACKGROUND[2]

**Plaintiffs Served Their Initial Requests Seeking Relevant Documents**.    On September 6, 2019, Plaintiffs served document subpoenas on the MGM Entities pursuant to Rule 45 of the Federal Rules of Civil Procedure.  (Ex. A.)  Among other relevant documents, the Subpoenas sought production of certain video footage created in connection with the ACN Episodes.  (*Id*.)

**Plaintiffs Narrowed Their Requests Significantly**.  During three months of meeting and conferring, Plaintiffs worked to narrow their requests to a targeted subset of documents within the MGM Entities' unique possession, custody, and control.[3]  (Doc. No. 129 at 2.)  With respect to unaired footage, Plaintiffs narrowed the requests to cover only unaired footage created in connection with the ACN Episodes.  (Doc. No. 129 at 3.)

**Plaintiffs Offered Multiple Extensions and to Cover Production Costs**.  Over the course of at least five meet-and-confers, Plaintiffs have made extensive accommodations to the MGM Entities.  Among other things, Plaintiffs granted the MGM Entities multiple extensions to their deadlines for compliance.  (*See, e.g.*, Ex. B.)  Plaintiffs have also agreed to cover the MGM Entities' costs of production (*see, e.g.*, *id.*).  And Plaintiffs have offered to travel to review the requested footage wherever it may be stored.  (Doc. No. 144 at 3.)

---

[2] In support of this memorandum, Plaintiffs submit the Declaration of Alexander J. Rodney, which collects other supporting exhibits referred to herein as "Ex.\_".

[3] The MGM Entities maintain that JMBP is the custodian of the footage, but JMBP is a wholly owned subsidiary of MGM, and thus MGM has control over the documents.  (*See* Doc. No. 144 at 2 (citing *Discover Fin. Servs., Inc.* v. *Visa U.S.A., Inc.*, No. 04 Civ. 7844, 2006 WL 1699566, at *1 (S.D.N.Y. June 20, 2006)).)

**MGM's Partial Productions to Date Have Confirmed the Centrality of *The Celebrity Apprentice* to Defendants' Fraudulent Scheme.**  On November 5, 2019 and January 17, 2020, MGM made partial productions that confirm the central role *The Celebrity Apprentice* played in Defendants' fraudulent scheme to endorse and promote ACN.  For example, the documents produced confirm that ██████████████████████████████████ in March 2009 and March 2011.  (Exs. C (JMBP00000004); D (JMBP00001335) at -1336.)  The documents show that

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████  (Exs. E (JMBP00003741.)  And the documents confirm that ACN ██████

██████████████████████████████████████████  the episode that aired on March 22, 2009 and ██████████████  the episode that aired on March 27, 2011.  (Ex. F (JMBP00003781).)

In exchange, Defendants and their affiliates promoted ACN to a large national audience and arranged for ACN's ████████████████████████████████████ (Ex. G (JMBP00001344) at -1345), ████████████████████████████████████ ████████████  (*id.* at -1350).  Indeed, the documents confirm that Donald J. Trump's statements about ACN ██████████████  (Ex. H (JMBP00000405).)  And, in connection with ████████████████████████████████████ ████████████████████  to describe ACN.  (*E.g.*, Ex. E (JMBP00003741) at -3742.)

**MGM's Partial Productions to Date Have Also Confirmed the Specific Relevance of the Requested Footage.**  More specifically, the documents produced to date confirm the relevance of the unaired footage.  In connection with producing the two ACN Episodes, the ██████████

4



. (Exs. I (JMBP00003782); J (JMBP00003793).)

prior to the

dates on which the relevant episode was aired.  (*Id.*)  In addition to being ▮▮▮▮▮▮▮▮, that

footage was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Indeed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

(*See, e.g.*, Ex. E (JMBP00003741) at -3742.)

Documents produced to date also reveal that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Exs. I (JMBP00003782);

J (JMBP00003793.))  In addition, Defendants Ivanka Trump and Donald Trump, Jr. ▮▮▮▮▮

▮▮▮▮▮▮▮▮ during the ACN Episodes (Ex. K (JMBP0002156)), and were reportedly

highly visible presences during filming and production, including through all stages of the two-

day task competition (Exs. L & M).

**MGM Has Refused to Produce (or Make Available) the Limited Subset of Unaired**

**Video Footage.**  The MGM Entities served Responses and Objections on October 25, 2019 (Ex. N)

and made an initial production on November 4, 2019, which was subsequently supplemented.

After the MGM Entities made clear that they would refuse to produce the requested unaired

footage, Plaintiffs requested a pre-motion conference concerning the dispute on

December 10, 2019.  (Doc. No. 129.)  On January 10, 2020, Plaintiffs filed a letter setting forth

why this dispute is properly before this Court.  (Doc. No. 144.)  And, on January 23, 2020, this

Court granted leave for Plaintiffs to file the present motion.  (Doc. No. 146.)

# ARGUMENT

Plaintiffs seek a limited subset of unaired video footage from the filming of two episodes of *The Celebrity Apprentice* on which Defendants endorsed ACN.  Because the requested footage is relevant and because the MGM Entities have not identified any undue burden associated with making it available to Plaintiffs, this Court should order the MGM Entities do so.

### A.    The Limited Subset of Unaired Video Footage Sought Is Relevant to Plaintiffs' Claims and Proportional to the Needs of the Case

Federal Rule of Civil Procedure Rule 26(b)(1) entitles parties to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Subpoenas issued under Rule 45 are subject to the same standards.  *Citizens Union of City of N.Y.* v. *Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017).  "Relevance has been broadly interpreted to include any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Gilani* v. *Hewlett Packard Co.*, No. 15-cv-5609, 2017 WL 4236564 at *1 (S.D.N.Y. Sept. 22, 2017) (internal quotations marks omitted); *McFarlane* v. *First Unum Life Ins. Co.*, No. 16 Civ. 7806,     2017     WL     4564928,     at     *2     (S.D.N.Y.     Oct.     12,     2017) ("Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate.").  Here, the relevance and proportionality of the withheld footage is beyond doubt.

As set forth above, Defendants' Message about ACN on *The Celebrity Apprentice* was carefully scripted to create false impressions and ██████████████████████████████ ██████████████████. (*See, e.g.*, Ex. H (JMBP00000405).)  In addition to being ████ ████████████████████████████████████████. (*See, e.g.*, Ex. E (JMBP00003741) ¶3 (████████████████████████████), ¶8 (███████████████

6

██████████).)  Differences between what was aired and what was unaired in each of the ACN Episodes would reveal how the footage was cut to create misleading impressions about ACN and to reinforce the Message.  While the MGM Entities argue that the unaired footage "has never been viewed by *any* class member" (Ex. O (MGM Entities' Jan. 6 Letter (emphasis in original))), by focusing exclusively on what class members saw, they ignore the relevance of the unaired footage to other elements of Plaintiffs' claims, including:  the degree of control Defendants exercised over how ACN was characterized and presented on the show; Defendants' knowledge that ACN's business opportunity was unlikely to succeed; and the intent underlying Defendants' materially false statements, on the show or otherwise, about ACN.  *See, e.g.*, *Crigger* v. *Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006) (elements of common-law fraud claim include, among other things,  "a material misrepresentation or omission of fact [,] made by defendant with knowledge of its falsity [,] and intent to defraud.").[4]  Those issues, of course, satisfy Rule 26's broad relevance and proportionality standard.  *See Gilani*, 2017 WL 4236564 at *1; *McFarlane*, 2017 WL 4564928, at *2.

Moreover, while Plaintiffs have only partial insight into such unaired footage from documents produced to date, all available evidence suggests that it captures relevant interactions and conduct by and between Defendants (and their representatives) and ACN (and its representatives).  Among other things, ████████████████████████████ ████████████████████████████████████ (*See, e.g.*, Exs. I (JMBP00003782), at -3783; J (JMBP00003793), at -3794; K (JMBP00002156).)  In addition, Defendants Ivanka Trump and Donald Trump, Jr. were highly visible presences during filming

---

[4] *Accord* Restatement (Second) of Torts § 525 (1977); Restatement (Third) of Torts: Liab. for Econ. Harm § 9 (Tentative Draft No. 2, 2014).  In addition to common-law fraud, Plaintiffs have asserted state law claims for unfair business practices under California, Maryland, Pennsylvania law.  While these claims have different elements from Plaintiffs' common law claims, the issues that bear on them are overlapping.

and production, including through all stages of the two-day task competition (*see* Exs. L & M), and would have interacted with both representatives of ACN and contestants. *See, e.g.*, *Wright* v. *New Moda, L.L.C.*, No. 17-CV-9737 (JGK)(SN), 2019 WL 2071158, at \*4 (S.D.N.Y. May 10, 2019) (ordering party to "search for and produce any documents" responsive to plaintiff's request, where "the evidence suggests additional documents exist").

The MGM Entities also seek to avoid production based on the speculative notion that footage of interactions between Mr. Trump and ACN executives may not exist. (Ex. O.) But that argument provides no basis to withhold relevant discovery for at least three reasons. *First*, it focuses exclusively on Mr. Trump and does not address relevant conduct by other Defendants, as set forth above. *Second*, the *likelihood* that such relevant footage exists, as demonstrated by MGM's own partial production, is alone sufficient to require the MGM Entities to search for and produce it, even if its existence cannot be confirmed with certainty *ex ante*, *see Wright*, 2019 WL 2071158, at \*4; *Treppel* v. *Biovail Corp.*, 249 F.R.D. 111, 117–18 (S.D.N.Y. 2008) (explaining server that "may well contain relevant documents . . . should have been searched"). *Third*, as set forth above, the differences between aired and unaired footage, which reflects what was disseminated to investors *vis-à-vis* what was hidden from them, themselves raise issues that bear on Plaintiffs' claims, including falsity, knowledge of falsity, and intent to defraud, *see, e.g.*, *Crigger* v. *Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006); *see also supra* n.4.

B.   **Providing Access to the Limited Subset of Unaired Footage Will Not Unduly Burden the MGM Entities**

"Once relevance has been shown, it is up to the responding party to justify curtailing discovery." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012). Rule 45 does not permit non-parties to resist subpoenas that impose *any* inconvenience or burden; instead, only *undue* burdens justify curtailing discovery. To determine

whether a subpoena recipient is unduly burdened, courts balance any burden "against the value of

the information to the serving party by considering factors such as relevance, the need of the party

for the documents, the breadth of the document request, the time period covered by it, the

particularity with which the documents are described and the burden imposed." *Citizens Union of*

*City of New York* v. *Att'y Gen. of New York*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017).

Here, the "breadth of the document request" and "the time period covered" are narrow:  In

fact, Plaintiffs have narrowed the scope of the request to cover "video footage or recordings in any

form, created in connection with the March 22, 2009 and March 27, 2011 episodes of *The Celebrity*

*Apprentice*." (Doc. No. 129.)  It is hard to imagine a narrower, more particularized request,

covering a shorter time period, than one seeking video footage from just the days of filming

applicable to each of the ACN Episodes.

In addition, the MGM Entities have failed to identify any cognizable burden – let alone an

undue burden:  they claim formulaically that "considerable effort" will be involved in "[a]ccessing,

identifying, and producing" the footage, which is "stored in obsolete formats" and would require

special equipment to review, in addition to diverting personnel.  (Ex. O.)  But the mere fact that

the MGM Entities may be put to some inconvenience, however, does not "alone justify" its refusal

to produce "potentially relevant" material.  *See Aristocrat Leisure Ltd.* v. *Deutsche Bank Tr. Co.*

*Americas*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009); *accord Cedar Rapids Lodge & Suites, LLC* v.

*Seibert*, No. 14-cv-4839, 2018 WL 3019899, at *2 (D. Minn. June 18, 2018) (explaining time spent

by non-party reviewing files was an "ordinary incident of responding to a subpoena . . . that is a

cost of doing business").  Indeed, the diversion of personnel is part and parcel of responding to

any discovery request.  Here, moreover, any purported inconvenience to the MGM Entities'

operations must be weighed against their "size and resources."  *United States* v. *Int'l Bus.*

*Machines Corp.*, 83 F.R.D. 97, 108–09 (S.D.N.Y. 1979). It is not unreasonable to expect a large media company to furnish the equipment and personnel to review footage it created and exclusively possesses. *See id.* at 109.

Nor can the MGM Entities rely on the expense of compliance to justify their refusal to produce the requested footage. Indeed, Plaintiffs have preemptively abated such expense by offering to pay costs associated with production (and to travel to view the footage). (Doc. No. 129.) This offer more than suffices to eliminate any concern about undue expense. *See Mirra* v. *Jordan*, No. 13-cv-5519, 2015 WL 8526550, at *2 (S.D.N.Y. Dec. 7, 2015) ("As the plaintiff agreed . . . to pay all costs associated with collecting, processing and Bates stamping of the materials requested by his subpoena . . . no undue burden or significant expense will result from [] compliance with the plaintiff's subpoena."); *see also In re Subpoena to Loeb & Loeb LLP*, No. 19 Misc. Civ. 241 (PAE), 2019 WL 2428704, at *6 (S.D.N.Y. June 11, 2019) (recognizing a "reasonable expectation that a third party will devote some time, *gratis*, to compliance with a valid subpoena before seeking reimbursement for fees"). Given the absence of any expense or undue burden, the MGM Entities should be compelled to comply with Plaintiffs' Rule 45 subpoena.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order compelling the MGM entities to make the requested footage available to Plaintiffs.

Dated: February 7, 2020                                        Respectfully submitted,

Roberta A. Kaplan, Esq.
John C. Quinn, Esq.
Alexander J. Rodney, Esq.

KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Telephone: (212) 763-0883
Facsimile: (212) 564-0883
rkaplan@kaplanhecker.com
jquinn@kaplanhecker.com
arodney@kaplanhecker.com

Andrew G. Celli, Jr., Esq.
Matthew D. Brinckerhoff, Esq.
O. Andrew F. Wilson, Esq.
Katherine Rosenfeld, Esq.
David Berman, Esq.

EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue at Rockefeller Center
New York, NY 10020
Telephone: (212) 763-5000
acelli@ecbalaw.com
mbrinckerhoff@ecbalaw.com
awilson@ecbalaw.com
krosenfeld@ecbalaw.com
dberman@ecbalaw.com


*Attorneys for Plaintiffs*

11