**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, LUKE LOE, RICHARD ROE, and MARY MOE, individually and on behalf of all others similarly situated, <br><br>         *Plaintiffs*, <br><br>     *v.* <br><br> THE TRUMP CORPORATION, DONALD J. TRUMP, in his personal capacity, DONALD TRUMP JR., ERIC TRUMP, and IVANKA TRUMP, <br><br>         *Defendants*. | No. 18 Civ. 9936 |

**DECLARATION OF ALEXANDER J. RODNEY IN SUPPORT OF**
**PLAINTIFFS' MOTION TO COMPEL THE MGM ENTITIES TO**
**MAKE AVAILABLE TO PLAINTIFFS A LIMITED SUBSET OF VIDEO FOOTAGE**

I, Alexander J. Rodney, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am a member of the Bar of the State of New York, and I am admitted to appear before this Court. I am associated with the law firm Kaplan Hecker & Fink LLP, counsel for Plaintiffs Jane Doe, Luke Loe, Richard Roe, and Mary Moe ("Plaintiffs") in the above-captioned action. I respectfully submit this Declaration in support of Plaintiffs' Motion to Compel Nonparties Metro-Goldwyn Mayer Studios, Inc. ("MGM") and JMBP, LLC ("JMBP," and collectively, "the MGM Entities") to make available to Plaintiffs a limited subset of video footage. Unless stated otherwise, the facts stated herein are of my own personal knowledge, and if called as a witness I could competently testify thereto.

2.  Attached hereto as **Exhibit A** is a true and correct copy of the subpoenas issued by Plaintiffs pursuant to Rule 45 of the Federal Rules of Civil Procedure to the MGM Entities, dated September 6, 2019.

3.      Attached hereto as **Exhibit B** is a true and correct copy of an email from John C. Quinn to Jessica Stebbins Bina sent on October 23, 2019.

4.      Attached hereto as **Exhibit C**• is a true and correct copy of a document produced by JMBP, bearing the production number JMBP00000004.

5.      Attached hereto as **Exhibit D**\* is a true and correct copy of a document produced by JMBP, bearing the production number JMBP00001335.

6.      Attached hereto as **Exhibit E**\* is a true and correct copy of a document produced by JMBP, bearing the production number JMBP00003741.

7.      Attached hereto as **Exhibit F**\* is a true and correct copy of a document produced by JMBP, bearing the production number JMBP00003781.

8.      Attached hereto as **Exhibit G**\* is a true and correct copy of a document produced by JMBP, bearing the production number JMBP00001344.

9.      Attached hereto as **Exhibit H**\* is a true and correct copy of a document produced by JMBP, bearing the production number JMBP00000405.

10.      Attached hereto as **Exhibit I**\* is a true and correct copy of a document produced by JMBP, bearing the production number JMBP00003782.

11.      Attached hereto as **Exhibit J**\* is a true and correct copy of a document produced by JMBP, bearing the production number JMBP00003793.

12.      Attached hereto as **Exhibit K**\* is a true and correct copy of a document produced by JMBP, bearing the production number JMBP00002156.

---

\* Document has been designated "Confidential" by the MGM Entities pursuant to the Protective Order entered by the Court (Doc. No. 112) and will be filed in conformity with Rule I.D of this Court's Individual Rules and Practices and other applicable rules.

13.     Attached hereto as **Exhibit L** is a true and correct copy of an article by Kavitha George, published in *Bustle*, dated February 23, 2019, entitled "Ivanka Trump's Role on 'The Apprentice' Was Bigger Than You Might Remember," available at https://www.bustle.com/p/ivanka-trumps-role-on-the-apprentice-was-bigger-than-you-might-remember-13077839.

14.     Attached hereto as **Exhibit M** is a true and correct copy of an article by Kate Feldman, published in *Daily News*, dated March 19, 2018, entitled "Donald Trump Jr. reportedly had an affair with Danity Kane alum Aubrey O'Day after Celebrity Apprentice," available at https://www.nydailynews.com/entertainment/gossip/donald-trump-jr-reportedly-affair-aubrey-o-day-article-1.3884708.

15.     Attached hereto as **Exhibit N** is a true and correct copy of the Responses and Objections served by the MGM Entities in response to Plaintiffs' subpoenas, dated October 25, 2019.

16.     Attached hereto as **Exhibit O** is a true and correct copy of a letter from Jessica Stebbins Bina to The Honorable Lorna G. Schofield, dated January 6, 2020.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 7, 2020          /s/ Alexander J. Rodney
      New York, New York          Alexander J. Rodney

# EXHIBIT A

# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE  |  SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883  |  FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL   212.763.0884
DIRECT EMAIL  rkaplan@kaplanhecker.com

September 6, 2019

**BY PROCESS SERVER**

Lesley Freeman
Chief Legal Officer
Metro-Goldwyn-Mayer Studios Inc.
245 N Beverly Dr.
Beverly Hills, CA 90210

Re:     *Jane Doe, et al. v. Trump Corp, et al., 1:18-cv-9936*

Dear Ms. Freeman:

We understand you are Chief Legal Officer to Metro-Goldwyn-Mayer Studios Inc. and/or certain of its affiliates.  We write on behalf of Plaintiffs in the above-referenced action with respect to the enclosed subpoena (the "Subpoena"), which requires you to produce documents within 14 days.  We also enclose a courtesy copy of the Amended Complaint in this action and the Court's decision on the motion to dismiss for your reference.

The above-referenced action was filed in federal court in the Southern District of New York on October 29, 2018.  While you are not a party to the action, certain allegations in the Complaint relate to you.

We have every intention of being reasonable in our approach to discovery and we look forward to working with you in connection with this Subpoena.  Please do not hesitate to contact us with any questions you may have.

Very truly yours,

Roberta A. Kaplan

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### Southern District of New York

| | | |
|---|---|---|
| Jane Doe, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:18-cv-09936 |
| The Trump Corporation, et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:              Metro-Goldwyn-Mayer Studios Inc.
c/o National Registered Agents, Inc. (C1941323), 111 Eighth Avenue, 13th Fl., New York, New York 10011

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Attachment A.

| Place: Roberta Kaplan, Kaplan Hecker & Fink LLP<br>350 Fifth Ave., Suite 7110, New York, New York 10118<br>rkaplan@kaplanhecker.com | Date and Time:<br><br>09/20/2019 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      09/06/2019

| CLERK OF COURT | | |
|---|---|---|
| | OR | *Robett* |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____

_____ , who issues or requests this subpoena, are:

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## DEFINITIONS

1.  <u>MGM</u>:  The terms "MGM" or "you" means Metro-Goldwyn-Mayer Studios Inc. and any related entities of Metro-Goldwyn-Mayer Studios Inc., including all predecessors; successors; divisions; subsidiaries; parents; assigns; partners; members; and affiliates, foreign or domestic; each other person directly or indirectly, wholly or in part, owned by, controlled by, or associated with them; and any others acting or purporting to act on their behalf for any reason; and the present and former officers, directors, partners, consultants, representatives, servants, employees, assigns, attorneys, and agents of any of them.

2.  <u>Burnett</u>:  The term "Burnett" means Mark Burnett Productions and any related entities of Mark Burnett Productions, including all predecessors; successors; divisions; subsidiaries; parents; assigns; partners; members; and affiliates, foreign or domestic; each other person directly or indirectly, wholly or in part, owned by, controlled by, or associated with them; and any others acting or purporting to act on their behalf for any reason; and the present and former officers, directors, partners, consultants, representatives, servants, employees, assigns, attorneys, and agents of any of them.

3.  <u>Trump Productions</u>:  The term "Trump Productions" means Trump Productions, LLC and any related entities of Trump Productions, LLC, including all predecessors; successors; divisions; subsidiaries; parents; assigns; partners; members; and affiliates, foreign or domestic; each other person directly or indirectly, wholly or in part, owned by, controlled by, or associated with them; and any others acting or purporting to act on their behalf for any reason; and the present and former officers, directors, partners, consultants, representatives, servants, employees, assigns, attorneys, and agents of any of them.

4.      <u>ACN</u>:  The term "ACN" means ACN Opportunity, LLC and any related entities of ACN Opportunity, LLC, including all predecessors; successors; divisions; subsidiaries; parents; assigns; partners; members; and affiliates, foreign or domestic; each other person directly or indirectly, wholly or in part, owned by, controlled by, or associated with them; and any others acting or purporting to act on their behalf for any reason; and the present and former officers, directors, partners, consultants, representatives, servants, employees, assigns, attorneys, and agents of any of them.

5.      <u>Agreement</u>:   The term "Agreement" means a contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons.

6.      <u>Communication</u>:   The term "Communication" means any correspondence, discussion, or transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

7.      <u>Complaint</u>:  The term "Complaint" means the operative complaint in *Jane Doe, et al. v. The Trump Corporation, et al.*, Case No. 18-cv-09936-LGS (S.D.N.Y. 2018).

8.      <u>Concerning</u>:  The term "Concerning" means, in addition to its customary and usual meaning, relating to, pertaining to, regarding, referring to, alluding to, discussing, describing, evidencing, identifying, in connection with, involving, setting forth, stating, showing, touching upon, dealing with, bearing upon, in respect of, about, and having anything to do with.

9.      <u>Document</u>:  The term "Document" means, without limitation, the following items which are in the possession, custody, or control of Trump Productions Trump Productions' agents, Trump Productions' representatives and/or Trump Productions' attorneys, whether printed or recorded or reproduced by any other mechanical or electronic process, or written or produced by hand: agreements; communications; reports, whether authored by Trump Productions or third persons; correspondence; telegrams; electronic mail; electronic/cellular messages/texts;

2

memoranda, summaries or records of telephone conversations; summaries or records of in-person conversations or interviews; drawings; sketches; maps; summaries or records of meetings or conferences; summaries of or records of interviews conducted by investigators; electronic or physical calendar entries concerning meetings, conferences, or interviews; summaries or reports of investigations or negotiations; opinions or reports of consultants; photographs; motion picture films; digital or physical audio tape recordings; all material contained in any internal affairs file; brochures; pamphlets; advertisements; circulars; press releases; drafts; letters; recordings; any marginal comments appearing on any Document; and all other writings.

10.   <u>Trump</u>:  The term "Trump" or "Defendant" refers to any of Donald J. Trump, Donald Trump, Jr., Ivanka Trump, Eric Trump, The Trump Corporation, or any officer, director, employee, agent, or representative of the Trump Corporation either individually or in any combination.

11.   <u>Trump Entities</u>:  The term "Trump Entities" means any entity that is or was owned and/or controlled by one or more of the Defendants, including but not limited to the following corporations:

     a.   The Trump Corporation;

     b.   Trump Productions, LLC;

     c.   T International Realty, LLC;

     d.   Trump National Golf Club, LLC;

     e.   TNGC Charlotte, LLC;

     f.   The Donald J Trump Revocable Trust;

     g.   DJT Holdings LLC;

     h.   DJT Holdings Managing Member LLC;

     i.     Trump Organization LLC (d/b/a The Trump Organization);

     j.     The Trump Organization, Inc.;

     k.     Trump Productions Managing Member, Inc.;

     l.     TNGC Charlotte Manager Corp.;

     m.     Trump National Golf Club Member Corp.

## INSTRUCTIONS

1.     The return date for this subpoena shall be the date on the face of the subpoena.  In responding to the requests, you shall furnish all Documents that are available to you, including Documents in your possession, custody, or control, and Documents in the possession, custody, or control of your officers, directors, employees, attorneys, accountants, investigators, experts, representatives or other agents.

2.     If any Document responsive to the requests has been lost, destroyed or is otherwise unavailable, describe and identify each such Document by stating in writing:  (i) the name(s) of the authors(s), the name(s) of the person(s) who received or viewed the original and all copies, and the date and subject matter, (ii) the last known custodian of the Document, (iii) the incident, event, or occurrence during which such Document was lost, destroyed, or otherwise became unavailable, (iv) each person having knowledge of the circumstances of it being lost, discarded or destroyed and (v) your efforts to locate each such Document.

3.     We do not expect any of these requests to seek any Documents that could be withheld on the basis of the attorney-client privilege, work product doctrine, or any other right of non-disclosure.  To the extent you believe any request does seek a Document that could be so withheld, furnish a list identifying each Document for which the protection is claimed and state the basis for your claim that such Document need not be disclosed with such specificity as will

permit the Court to determine the legal sufficiency of your objection or position, and, for each such Document, identify (if applicable):

i.     whether the Document contains a request for legal advice and, if so, identify the person who requested the legal advice;

ii.     whether the Document contains legal advice and, if so, identify the attorney who provided the legal advice;

iii.     whether the Document contains legal advice as to the meaning or application of particular laws or rules;

iv.     the nature of the privilege (including work product) that is being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked;

v.     whether, if a Document is withheld on the ground of attorney work product, the Document was prepared in anticipation of litigation and, if so, identify the anticipated litigation(s) upon which the assertion is based;

vi.     any further information to explain or support the claim of privilege and to permit the adjudication of the propriety of that claim;

vii.     the type of Document, e.g. letter or email or memorandum; the date(/s) of the Document; the subject matter of the Document; the name, position, and address of each person who participated in the Document, to whom the Document was addressed, or to whom the Document or the contents thereof have been communicated by any means; and other information sufficient to identify the Document for a subpoena duces tecum, including, where appropriate, the author, addressee, and any other recipient of or any other person who viewed

the Document, and, where not apparent, the relationship of the author, addressee, and other recipient to each other.

4.      If, in answering these requests, you claim any vagueness, confusion, or ambiguity in either the request or a definition or instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond, rather you shall set forth in a part of your response to such a request the language deemed to be vague or confusing or ambiguous, select a reasonable interpretation that you believe resolves the ambiguity, respond to the request using that interpretation, and explain with particularity the construction or interpretation selected by you in responding to the request.

5.      Questions regarding the interpretation of these requests should be resolved in favor of the broadest possible construction.

6.      These requests seek production of all Documents, in their entirety, along with any attachments, drafts, and non-identical copies.  A Document with handwritten, typewritten, or other recorded notes, editing marks, etc., is not and shall not be deemed identical to one without such modifications, additions, or deletions.

7.      Responsive Documents should be produced in the manner prescribed by the Federal Rules of Civil Procedure, including producing the requested Documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the requests, and identifying the name of the person from whose files the Documents were produced.

8.      Wherever possible, all electronic Documents should be produced in their native format and/or as TIFs or PDFs and include all metadata.  Pursuant to the Federal Rules of Civil Procedure, Defendant may not convert the data to a form that is more burdensome and/or less searchable.  If Defendants convert data to TIFs or PDFs from native format, Defendants must

retain all metadata—including but not limited to the OCR database, Document demarcations, the date of the Documents, file name, the author of the Documents, the recipients of the Documents, the type of Documents, etc.—in a usable load file (Concordance preferred with an opticon for images), together with links to text and native formats.

9.     Reference to any natural person shall be deemed to include that natural person's agents, servants, representatives, current and former employees, and successors.

10.     References to any non-natural person (e.g., corporation, partnership, entity, membership organizations, etc.) shall be deemed to include that non-natural person's predecessors, successors, divisions, subsidiaries, parents, assigns, partners, members, and affiliates, foreign or domestic, each other person directly or indirectly, wholly or in part, owned by, controlled by, or associated with them, and any others acting or purporting to act on their behalf for any reason, and the present and former officers, directors, partners, consultants, representatives, servants, employees, assigns, attorneys, and agents of any of them.

11.     The singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; whenever a term is used herein in the present, past, future, subjunctive, or other tense, voice, or mood, it shall also be construed to include all other tenses, voices, or moods; reference to any gender includes the other gender; the words "any" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possibly the scope of any request for production; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including but not limited to."  Any ambiguity in a discovery request shall be construed to bring within the scope of the discovery request all responses that otherwise could be construed to be outside of its scope.

12.     If any requested Document or other Document potentially relevant to this action is subject to destruction under any Document retention or destruction program, the Document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action or unless otherwise permitted by the Court.

13.     If you object to the production of a Document in relation to a specific request, state with particularity the basis for all objections with respect to such request.  You should respond to all portions of that request that do not fall within the scope of your objection.  If you object to a request on the ground that it is overly broad, provide such Documents that are within the scope of production that you believe is appropriate.  If you object to a request on the ground that to provide responsive Documents would constitute an undue burden, provide such responsive Documents as you believe can be supplied without undertaking an undue burden.

14.     This request is a continuing one.  If, after producing the requested Documents, you obtain or become aware of any further Documents responsive to this request or if additional information you or any persons acting on your behalf obtain would augment, clarify, or otherwise modify your responses, you are required to supplement your responses and produce such additional Documents.  Supplemental responses should be served within thirty (30) days after such information or Documents become known to you.

15.     Except where otherwise indicated, the period of time covered by this subpoena is from January 1, 2005 to the date the requested Documents are returned.

## DOCUMENTS TO BE PRODUCED

1.     All Communications between MGM and ACN.

2.     All Communications between MGM and Trump or the Trump Entities.

3.     All Communications between Burnett and ACN.

8

4.      All Documents concerning the allegations made regarding Burnett in the Complaint.

5.      All Communications between Trump Productions and ACN.

6.      All Documents concerning the allegations made regarding Trump Productions in the Complaint.

7.      All Documents concerning the allegations made regarding *The Apprentice* or *The Celebrity Apprentice* in the Complaint.

8.      All Documents, including, but not limited to, video footage or recordings in any form, created in connection with the March 22, 2009 and March 27, 2011 episodes of *The Celebrity Apprentice*.

9.      Documents sufficient to show all payments made by ACN in connection with ACN's March 22, 2009 and March 27, 2011 appearances on *The Celebrity Apprentice*.

10.     All promotional materials for *The Celebrity Apprentice* that use or refer to a name, image, or statement of ACN in any way.

11.     Documents sufficient to show the fee charged to brands in order to appear on *The Apprentice* or *The Celebrity Apprentice*.

12.     Documents sufficient to show the degree of editorial control exercised by Trump over content aired on *The Apprentice* and *The Celebrity Apprentice*, including, but not limited to ACN's March 22, 2009 and March 27, 2011 appearances on *The Celebrity Apprentice*.

# EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbalaw.com

DIANE L. HOUK
JESSICA CLARKE

ALISON FRICK
DAVID LEBOWITZ
DOUGLAS E. LIEB
ALANNA KAUFMAN
EMMA L. FREEMAN
DAVID BERMAN
ASHOK CHANDRAN

September 6, 2019

**VIA PROCESS SERVER**
Daniel M. Flores
Metro-Goldwyn Mayer Studios Inc.
245 N. Beverly Drive, Beverly Hills, CA 90210
DFLORES@MGM.COM

Re:     *Jane Doe, et al. v. Trump Corp, et al., 1:18-cv-9936*

Dear  Mr. Flores:

We write on behalf of Plaintiffs in the above-referenced action with respect to the enclosed subpoena (the "Subpoena"), which requires you to produce documents within 14 days. The above-referenced action was filed in federal court in the Southern District of New York on October 29, 2018.  While you are not a party to the action, certain allegations in the Complaint relate to you.

On March 6, 2019, we served an initial subpoena in this action for the limited purpose of preservation of responsive documents.  That preservation subpoena did not impose on you an obligation to produce documents at that time.  Now, following the Court's resolution of Defendants' motion to dismiss, discovery has commenced.  Accordingly, we are serving the enclosed Subpoena, which calls for the production of a narrower set of responsive documents in light of the Court's decision on the motion to dismiss.  We have also enclosed a courtesy copy of the Amended Complaint in this action and the Court's decision on the motion to dismiss for your reference.

We have every intention of being reasonable in our approach to discovery and we look forward to working with you in connection with this Subpoena.  Please do not hesitate to contact us with any questions you may have.

Very truly yours,

O. Andrew F. Wilson

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| Jane Doe, et al. | ) |
| *Plaintiff* | ) |
| v. | ) |
| Trump Corp, et al. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.    1:18-cv-9936

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Mark Burnett Productions
           245 N. Beverly Drive, Beverly Hills, CA 90210-5317

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached.

| Place: Andrew Wilson, Emery Celli Brinckerhoff & Abady, LLP; 600 Fifth Ave. 10th Fl., New York, NY 10020 | Date and Time: 10/11/2019 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     07/30/2019

|  |  |  |
|---|---|---|
| *CLERK OF COURT* | | |
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Jane Doe, Luke Loe, Richard Roe, and Mary Moe _____ , who issues or requests this subpoena, are:

Andrew Wilson, Emery Celli Brinckerhoff & Abady, LLP; 600 Fifth Ave. 10th Fl., New York, NY 10020, 212-763-5000; AWilson@ecbalaw.com

## Notice to the person who issues or requests this subpoena

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:18-cv-9936

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

  ❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

  ❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
           *Server's signature*

_____
           *Printed name and title*

_____
           *Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ATTACHMENT A**

**DEFINITIONS**

1.      <u>Burnett</u>:  The terms "Burnett" or "you" means Mark Burnett Productions and any related entities of Mark Burnett Productions, including all predecessors; successors; divisions; subsidiaries; parents; assigns; partners; members; and affiliates, foreign or domestic; each other person directly or indirectly, wholly or in part, owned by, controlled by, or associated with them; and any others acting or purporting to act on their behalf for any reason; and the present and former officers, directors, partners, consultants, representatives, servants, employees, assigns, attorneys, and agents of any of them.

2.      <u>ACN</u>:  The term "ACN" means ACN Opportunity, LLC and any related entities of ACN Opportunity, LLC, including all predecessors; successors; divisions; subsidiaries; parents; assigns; partners; members; and affiliates, foreign or domestic; each other person directly or indirectly, wholly or in part, owned by, controlled by, or associated with them; and any others acting or purporting to act on their behalf for any reason; and the present and former officers, directors, partners, consultants, representatives, servants, employees, assigns, attorneys, and agents of any of them.

3.      <u>Agreement</u>:  The term "Agreement" means a contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons.

4.      <u>Communication</u>:  The term "Communication" means any correspondence, discussion, or transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

5.      <u>Complaint</u>:  The term "Complaint" means the operative complaint in *Jane Doe, et al. v. The Trump Corporation, et al.*, Case No. 18-cv-09936-LGS (S.D.N.Y. 2018).

6.      <u>Concerning</u>:  The term "Concerning" means, in addition to its customary and usual meaning, relating to, pertaining to, regarding, referring to, alluding to, discussing, describing,

evidencing, identifying, in connection with, involving, setting forth, stating, showing, touching upon, dealing with, bearing upon, in respect of, about, and having anything to do with.

7.      Document:  The term "Document" means, without limitation, the following items which are in the possession, custody, or control of Burnett, Burnett's agents, Burnett's representatives and/or Burnett's attorneys, whether printed or recorded or reproduced by any other mechanical or electronic process, or written or produced by hand: agreements; communications; reports, whether authored by Burnett or third persons; correspondence; telegrams; electronic mail; electronic/cellular messages/texts; memoranda, summaries or records of telephone conversations; summaries or records of in-person conversations or interviews; drawings; sketches; maps; summaries or records of meetings or conferences; summaries of or records of interviews conducted by investigators; electronic or physical calendar entries concerning meetings, conferences, or interviews; summaries or reports of investigations or negotiations; opinions or reports of consultants; photographs; motion picture films; digital or physical audio tape recordings; all material contained in any internal affairs file; brochures; pamphlets; advertisements; circulars; press releases; drafts; letters; recordings; any marginal comments appearing on any Document; and all other writings.

8.      Trump:  The term "Trump" or "Defendant" refers to any of Donald J. Trump, Donald Trump, Jr., Ivanka Trump, Eric Trump, The Trump Corporation, or any officer, director, employee, agent, or representative of the Trump Corporation either individually or in any combination.

9.      Trump Entities:  The term "Trump Entities" means any entity that is or was owned and/or controlled by one or more of the Defendants, including but not limited to the following corporations:

a.    The Trump Corporation;

b.    Trump Productions, LLC;

c.    T International Realty, LLC;

d.    Trump National Golf Club, LLC;

e.    TNGC Charlotte, LLC;

f.    The Donald J Trump Revocable Trust;

g.    DJT Holdings LLC;

h.    DJT Holdings Managing Member LLC;

i.    Trump Organization LLC (d/b/a The Trump Organization);

j.    The Trump Organization, Inc.;

k.    Trump Productions Managing Member, Inc.;

l.    TNGC Charlotte Manager Corp.;

m.    Trump National Golf Club Member Corp.

## INSTRUCTIONS

1.    The return date for this subpoena shall be the date on the face of the subpoena.  In responding to the requests, you shall furnish all Documents that are available to you, including Documents in your possession, custody, or control, and Documents in the possession, custody, or control of your officers, directors, employees, attorneys, accountants, investigators, experts, representatives or other agents.

2.    If any Document responsive to the requests has been lost, destroyed or is otherwise unavailable, describe and identify each such Document by stating in writing:  (i) the name(s) of the authors(s), the name(s) of the person(s) who received or viewed the original and all copies, and the date and subject matter, (ii) the last known custodian of the Document, (iii) the incident, event,

3

or occurrence during which such Document was lost, destroyed, or otherwise became unavailable, (iv) each person having knowledge of the circumstances of it being lost, discarded or destroyed and (v) your efforts to locate each such Document.

3.     We do not expect any of these requests to seek any Documents that could be withheld on the basis of the attorney-client privilege, work product doctrine, or any other right of non-disclosure.  To the extent you believe any request does seek a Document that could be so withheld, furnish a list identifying each Document for which the protection is claimed and state the basis for your claim that such Document need not be disclosed with such specificity as will permit the Court to determine the legal sufficiency of your objection or position, and, for each such Document, identify (if applicable):

      i.    whether the Document contains a request for legal advice and, if so, identify the person who requested the legal advice;

      ii.    whether the Document contains legal advice and, if so, identify the attorney who provided the legal advice;

      iii.    whether the Document contains legal advice as to the meaning or application of particular laws or rules;

      iv.    the nature of the privilege (including work product) that is being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked;

      v.    whether, if a Document is withheld on the ground of attorney work product, the Document was prepared in anticipation of litigation and, if so, identify the anticipated litigation(s) upon which the assertion is based;

vi.    any further information to explain or support the claim of privilege and to permit the adjudication of the propriety of that claim;

vii.    the type of Document, e.g. letter or email or memorandum; the date(/s) of the Document; the subject matter of the Document; the name, position, and address of each person who participated in the Document, to whom the Document was addressed, or to whom the Document or the contents thereof have been communicated by any means; and other information sufficient to identify the Document for a subpoena duces tecum, including, where appropriate, the author, addressee, and any other recipient of or any other person who viewed the Document, and, where not apparent, the relationship of the author, addressee, and other recipient to each other.

4.    If, in answering these requests, you claim any vagueness, confusion, or ambiguity in either the request or a definition or instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond, rather you shall set forth in a part of your response to such a request the language deemed to be vague or confusing or ambiguous, select a reasonable interpretation that you believe resolves the ambiguity, respond to the request using that interpretation, and explain with particularity the construction or interpretation selected by you in responding to the request.

5.    Questions regarding the interpretation of these requests should be resolved in favor of the broadest possible construction.

6.    These requests seek production of all Documents, in their entirety, along with any attachments, drafts, and non-identical copies.  A Document with handwritten, typewritten, or other

recorded notes, editing marks, etc., is not and shall not be deemed identical to one without such modifications, additions, or deletions.

7.      Responsive Documents should be produced in the manner prescribed by the Federal Rules of Civil Procedure, including producing the requested Documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the requests, and identifying the name of the person from whose files the Documents were produced.

8.      Wherever possible, all electronic Documents should be produced in their native format and/or as TIFs or PDFs and include all metadata.  Pursuant to the Federal Rules of Civil Procedure, Defendant may not convert the data to a form that is more burdensome and/or less searchable.  If Defendants convert data to TIFs or PDFs from native format, Defendants must retain all metadata—including but not limited to the OCR database, Document demarcations, the date of the Documents, file name, the author of the Documents, the recipients of the Documents, the type of Documents, etc.—in a usable load file (Concordance preferred with an opticon for images), together with links to text and native formats.

9.      Reference to any natural person shall be deemed to include that natural person's agents, servants, representatives, current and former employees, and successors.

10.     References to any non-natural person (e.g., corporation, partnership, entity, membership organizations, etc.) shall be deemed to include that non-natural person's predecessors, successors, divisions, subsidiaries, parents, assigns, partners, members, and affiliates, foreign or domestic, each other person directly or indirectly, wholly or in part, owned by, controlled by, or associated with them, and any others acting or purporting to act on their behalf for any reason, and the present and former officers, directors, partners, consultants, representatives, servants, employees, assigns, attorneys, and agents of any of them.

6

11.     The singular includes the plural and vice versa, except as the context may otherwise require; any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa; whenever a term is used herein in the present, past, future, subjunctive, or other tense, voice, or mood, it shall also be construed to include all other tenses, voices, or moods; reference to any gender includes the other gender; the words "any" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possibly the scope of any request for production; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including but not limited to."  Any ambiguity in a discovery request shall be construed to bring within the scope of the discovery request all responses that otherwise could be construed to be outside of its scope.

12.     If any requested Document or other Document potentially relevant to this action is subject to destruction under any Document retention or destruction program, the Document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action or unless otherwise permitted by the Court.

13.     If you object to the production of a Document in relation to a specific request, state with particularity the basis for all objections with respect to such request.  You should respond to all portions of that request that do not fall within the scope of your objection.  If you object to a request on the ground that it is overly broad, provide such Documents that are within the scope of production that you believe is appropriate.  If you object to a request on the ground that to provide responsive Documents would constitute an undue burden, provide such responsive Documents as you believe can be supplied without undertaking an undue burden.

14.     This request is a continuing one.  If, after producing the requested Documents, you obtain or become aware of any further Documents responsive to this request or if additional

7

information you or any persons acting on your behalf obtain would augment, clarify, or otherwise modify your responses, you are required to supplement your responses and produce such additional Documents. Supplemental responses should be served within thirty (30) days after such information or Documents become known to you.

15.     Except where otherwise indicated, the period of time covered by this subpoena is from January 1, 2005 to the date the requested Documents are returned.

## DOCUMENTS TO BE PRODUCED

1.     All Communications between Burnett and ACN.

2.     All Documents concerning the allegations made regarding Burnett in the Complaint.

3.     All Documents concerning the allegations made regarding *The Apprentice* or *The Celebrity Apprentice* in the Complaint.

4.     All Documents, including, but not limited to, video footage or recordings in any form, created in connection with the March 22, 2009 and March 27, 2011 episodes of *The Celebrity Apprentice*.

5.     Documents sufficient to show all payments made by ACN in connection with ACN's March 22, 2009 and March 27, 2011 appearances on *The Celebrity Apprentice*.

6.     All promotional materials for *The Celebrity Apprentice* that use or refer to a name, image, or statement of ACN in any way.

7.     Documents sufficient to show the fees charged to brands in order to appear on *The Apprentice* or *The Celebrity Apprentice*.

8.      Documents sufficient to show the degree of editorial control exercised by Trump over content aired on *The Apprentice* and *The Celebrity Apprentice*, including, but not limited to ACN's March 22, 2009 and March 27, 2011 appearances on *The Celebrity Apprentice*.

# EXHIBIT B

| From: | John Quinn |
|---|---|
| To: | Jessica.StebbinsBina@lw.com |
| Cc: | Roberta Kaplan; Alexander Rodney; Andrew G. Celli, Jr.; Andrew Wilson |
| Subject: | Doe v. Trump: MGM Subpoena Response |
| Date: | Wednesday, October 23, 2019 3:57:30 PM |

Dear Jessica:

Thanks for the call today. As discussed, we were disappointed that MGM did not have, following multiple extensions and prior discussions, a specific counter-proposal with respect to categories of responsive documents that it would agree to produce on a priority basis, as well as additional responsive documents that it would be prepared to produce on a non-priority basis. As we've emphasized, discovery is underway, MGM is in receipt of a valid subpoena, and the Court has denied Defendants' repeated requests for a stay. MGM is not permitted to unilaterally grant itself such a stay. At this point, given the lack of progress, we think the only sensible way forward is for MGM to provide its written responses on Friday and we'll assess appropriate next steps from there. To clarify one point we raised on the call: we are prepared to cover your costs in connection with production, so there shouldn't be any basis for an objection on the grounds of cost or burden.

Best regards,
John

John Quinn | Kaplan Hecker & Fink LLP
350 Fifth Avenue | Suite 7110
New York, New York 10118
(W) 212.763.0886
(M) 610.952.4726
jquinn@kaplanhecker.com

# EXHIBIT C

# FILED UNDER SEAL

# EXHIBIT D

# FILED UNDER SEAL

# EXHIBIT E

# FILED UNDER SEAL

EXHIBIT F

# FILED UNDER SEAL

# EXHIBIT G

# FILED UNDER SEAL

# EXHIBIT H

# FILED UNDER SEAL

# EXHIBIT I

# FILED UNDER SEAL

# EXHIBIT J

# FILED UNDER SEAL

EXHIBIT K

# FILED UNDER SEAL

# EXHIBIT L

   

# Ivanka Trump's Role On 'The Apprentice' Was Bigger Than You Might Remember

By **KAVITHA GEORGE**  |  Feb 23, 2019  |  



The Celebrity Apprentice

The president's reality show background — and the larger than life qualities it has given his time in office — has been a topic of conversation since the beginning of the 2016 election cycle. But less talked about is the publicity launching pad it gave his daughter. Ivanka Trump's role on *The Apprentice* was bigger than you might remember.

If you've never watched the show, *The Apprentice* is a reality program that started in the early 2000s, and was essentially based on Donald Trump's life as a real-estate tycoon. Contestants would vie for corporate domination with various business-related tasks, and at the end of each episode, Donald would ax the most incompetent person with what would become his infamous catchphrase: "You're fired!" At the end of the season, the winner would be offered a $250,000 contract to manage a business project.

Ivanka started appearing on season five of the show back in 2006 when she was in her mid-twenties, as a regular advisor to her father. She actually ended up collaborating with the season five winner on his business project prize, the Trump So-Ho Hotel Condominium.

From there she graduated to full-on judge in season six of *The Apprentice*, and later in another iteration of the show, *The Celebrity Apprentice*. In a promo for season five of *The Celebrity Apprentice*, famous contestants including Clay Aiken and George Takei can be seen struggling with their task, designing a "living window display" for the Ivanka Trump women's fashion line. "It's a mad scramble to make the boss' daughter happy," the voiceover says.

In a season seven clip following a challenge to create an adoption commercial for Pedigree Dog Food, Ivanka berates contestant Gene Simmons for his "abrasive" attitude. "It was just unnecessary," she says. "I mean you could have almost said nothing."

"Did you insult my daughter?" Donald asks Simmons, leaning across a dramatically lit boardroom table. "Nobody insults my daughter."

According to Ivanka, working on the show was an experience in family bonding. "It's a less intense version of real life, because I'm on the same side of the table as opposed to the other side of the desk," she said in an interview with Massachusetts news channel WWLP promoting season 14 of *The Celebrity Apprentice*. "It's been a great experience and we just love doing this as a family as we do also love working together every day."

It's undeniable that the Trump name has helped the president's oldest daughter launch her career in fashion, real estate, and most recently, in the White House. A line from her appearance in an early 2000s reality show called *Born Rich* still seems to be relevant today — describing being daughter to a pop culture fixture, Ivanka said "It's not a bad shadow to be under."

Years later, Ivanka is still working with her father — but in a much different setting. Most recently, she helped launch the Trump administration's Women's Global Development and Prosperity Initiative, which she is spearheading.

EXHIBIT M

Case 1:18-cv-09936-LGS Document 158-13 Filed 02/07/20 Page 2 of 8

GOSSIP ENTERTAINMENT

# Donald Trump Jr. reportedly had affair with Danity Kane alum Aubrey O'Day after 'Celebrity Apprentice'



By **KATE FELDMAN**
MAR 19, 2018  |  6:54 PM



Donald Trump Jr.'s marriage was reportedly rocky long before his wife Vanessa filed for divorce.

Case 1:18-cv-03936-LGS   Document 158-13   Filed 02/07/20   Page 3 of 8

The President's first born son had an affair with former Danity Kane singer Aubrey O'Day after meeting on the set of "Celebrity Apprentice" in 2011, according to Us Weekly and Perez Hilton.

"When it started, they were very serious all of a sudden," a source close to O'Day told Us Weekly.

"He told her it was over with his wife, that they were separated and he didn't love her — all of that stuff ... Aubrey fell for him hard. She thought they were going to be together for real."



Donald Trump Jr. reportedly had an affair with Danity Kane alum Aubrey O'Day after she appeared on "Celebrity Apprentice" in 2011. (Reuters / Getty)

Trump Jr. and Vanessa Trump married in 2005 and have five children together. Their son Spencer was born about a year after the alleged affair began.

Trump and O'Day continued the alleged affair until March 2012, when Vanessa found emails between the two, according to Us Weekly.

The future First Son told the now-34-year-old singer that he was splitting from his wife, [Perez Hilton](#) reported.

"Don Jr. was very aggressive, pursuing her, telling her he loved her and that he wanted to be with her," a source told the gossip site.

**RELATED GALLERY**



(Richard Corkery/New York Daily News)                                                              1 / 15

### Donald Trump Jr. and Vanessa Trump's relationship through the years

O'Day, who has not commented on the reports and did not return the Daily News' request for comment, released a song in 2013 titled "DJT."

MOST READ

**Fugitive Brooklyn dad 'Bobby**

"You can say it was all a f--king fairytale or you can say it was real, but I need to know and you know," read

2/5/2020 Donald Trump Jr. reportedly had affair with Danity Kane alum Aubrey O'Day after 'Celebrity Apprentice' - New York Daily News

Case 1:18-cv-09936-LGS Document 158-13 Filed 02/07/20 Page 5 of 8

Love' goes free after a year in prison

**EXCLUSIVE: Cops nab bank robber who escaped N.C. prison 37 years ago, built new life in New York**

**Trump tweets attacks on Nancy Pelosi for ripping up State of the Union speech as 'tantrum'**

the lyrics for the song off her "Between Two Evils" EP.

"Whatever the truth is defines the reality of you and I forever, and I need to be able to define that before I can walk away."

The reports of the alleged affair come just days after Vanessa Trump filed for divorce. The couple has been married for more than a decade.



O'Day, seen here shooting "Celebrity Apprentice" in New York, reportedly "fell for him hard." (Bobby Bank/WireImage)

2/5/2020     Donald Trump Jr. reportedly had affair with Daniy Kane, also Aubrey O'Day, after 'Celebrity Apprentice' - New York Daily News

Case 1:18-cv-09936-LGS    Document 158-13    Filed 02/07/20    Page 6 of 8

"After 12 years of marriage, we have decided to go our separate ways. We will always have tremendous respect for each other and our families," the couple said in a joint statement. "We have five beautiful children together and they remain our top priority. We ask for your privacy during this time."

A rep for Trump Jr. did not immediately return a request for comment.

Topics: donald trump jr, aubrey o'day, celebrity apprentice



## KATE FELDMAN
New York Daily News

 

Kate Feldman covers national and breaking news, as well as TV.

Taboola Feed

### Disney heiress calls Kobe Bryant a rapist in tweet
Disney heiress Abigail Disney called Kobe Bryant a rapist in a Wednesday tweet.
**NY Daily News**

### Bronx daycare provider's husband repeatedly raped young girl in his wife's care…
The husband of a Bronx daycare provider repeatedly raped and abused a young girl under his wife's care, police said, and cops are trying to find out if he's victimized more children.
**NY Daily News**



### The Daily News Flash Newsletter - New York Daily News
Weekdays

2/5/2020　Donald Trump Jr. reportedly had affair with Danity Kane alum Aubrey O'Day after 'Celebrity Apprentice' - New York Daily News

Case 1:18-cv-09936-LGS　Document 158-13　Filed 02/07/20　Page 7 of 8

Catch up on the day's top five stories every weekday afternoon delivered to your inbox from the Daily News.

[                                    ]  [ SUBSCRIBE ]

**Longtime Connecticut news anchor Denise D'Ascenzo dies**

Emmy-winning Connecticut news anchor Denise D'Ascenzo died suddenly Saturday.

**NY Daily News**

---

RECOMMENDED

---

**Autopsy finds that Maryland couple visiting Dominican Republic died of respiratory failure and pulmonary edema**

---

**N.J. trooper shared sexually explicit photo of 5-year-old with girl's own mother, authorities say**

---

**Florida teen installs security cameras in bedroom to get proof of abuse after her allegations go ignored for years**

---

**Bronx mom charged with murder five months after her baby dies from heroin, cocaine**

---

**'My heart is destroyed': Man left in anguish after wearing wire to bust NYPD cop girlfriend plotting hit on his teen daughter**

---

by Taboola

Case 1:18-cv-09936-LGS   Document 158-13   Filed 02/07/20   Page 8 of 8

**SEE IT: Man snatches woman off Bronx subway train, later beaten by good Sams**

Sonny Alloway, 48, allegedly hauled a young woman off a No. 6 train at the Morrison Ave.-Soundview/Westcheste
Ave. station about 2:30 a.m. Monday.

**NY Daily News**

# Sign up for our newsletters

# Subscribe for unlimited access

   

About Us

Careers

Site Map

Media Kit

Special Sections

Manage Subscription

Privacy Policy

Do Not Sell My Info

TAG disclosure

Contact Us

Frequently Asked

Questions

Place an Ad

Contests

BestReviews

The Daily Meal

The Active Times

Terms of Service

Copyright © 2020, New York Daily News

# EXHIBIT N

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

JANE DOE, LUKE LOE, RICHARD ROE, and
MARY MOE, individually and on behalf of all
others similarly situated,

*Plaintiffs,*

THE TRUMP CORPORATION, DONALD J.
TRUMP, in his personal capacity, DONALD
TRUMP JR., ERIC TRUMP, and IVANKA
TRUMP,

*Defendants.*

Civil Action No. 1:18-cv-09936-LGS

---

## NON-PARTY JMBP, LLC'S
## OBJECTIONS AND RESPONSES TO PLAINTIFFS' SUBPOENA

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party JMBP, LLC

("JMBP") (erroneously served as Mark Burnett Productions) hereby objects to Plaintiffs'

Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in

a Civil Action ("Subpoena"), including the documents requested therein, served September 25,

2019,[1] as follows:

## PRELIMINARY STATEMENT

Much of the Subpoena is overbroad, unduly burdensome, and not proportional to the

needs of the case. Some requests even demand that JMBP locate and review over a decade's

worth of correspondence and other documents, despite the fact that the Plaintiffs are only

interested in information related to *two episodes* of the Apprentice – one of which aired in 2009,

---

[1] The time to respond was extended by agreement to October 25, 2019.

the other in 2011.  There is no tangible basis, beyond bare speculation, for Plaintiffs to believe

that most of the documents sought have any relevance to any party's claim or defense in this

action.  Compliance with portions of the Subpoena would create a substantial expense and

burden to JMBP.  Given that much of the Subpoena seeks to impose a considerable burden on a

non-party who has no involvement whatsoever in this litigation, much of Plaintiffs' Subpoena

fails to meet the requirements of Rule 26 of the Federal Rules of Civil Procedure.  To the

contrary, the burden and expense to JMBP of compliance outweighs any possible benefit to

Plaintiffs in this action.  JMBP is, of course, willing to continue to meet and confer with the

Plaintiffs regarding the Subpoena, to hopefully come to a resolution that will limit the burden on

JMBP, while providing Plaintiffs with discovery that is actually relevant and proportional to the

needs of the case.

## GENERAL OBJECTIONS

1.      JMBP objects to the Subpoena to the extent it seeks information concerning

claims, issues, and/or non-parties that are irrelevant to any party's claim or defense in this action.

The Subpoena is overbroad and unduly burdensome, and is not proportional to the needs of the

case.  The discovery is highly unlikely to assist in resolving the issues in this lawsuit in any way,

and its burden and expense substantially outweighs its likely benefit.

2.      JMBP objects to the Subpoena to the extent it violates the provisions of Rule

45(d)(1) of the Federal Rules of Civil Procedure in that it fails to take reasonable steps to avoid

imposing undue burden or expense on JMBP.  Should the Court require JMBP to respond to the

parts of this Subpoena it believes to be excessive, and not proportional to the needs of the case,

JMBP reserves its right under Rule 45(d), and any other applicable rule or statute, to seek cost-

shifting from Plaintiffs to remunerate the significant expense that compliance with this Subpoena would impose on JMBP.

3.       JMBP objects to the Subpoena to the extent that it seeks documents and/or information duplicative of documents or information already produced or requested in the underlying action, or that is otherwise readily obtainable from other sources that are more convenient, less burdensome and less expensive, including, without limitation, documents and/or information already in Plaintiffs' possession, custody or control, or available to Plaintiffs through sources other than JMBP and through less burdensome means, including, *inter alia*, parties to the above-captioned litigation, public sources or records, and/or other sources to which Plaintiffs have equal access.  JMBP notes in particular that a large portion of the requested discovery appears to be equally available to defendants in the above-captioned litigation, and thus should not be sought from a non-party in the first instance.

4.       JMBP objects to the Subpoena to the extent it seeks documents and/or information containing confidential business or other proprietary information, trade secrets, confidential information obtained by JMBP under contractual promise of non-disclosure, or nonpublic personal information.

5.       JMBP objects to the Subpoena to the extent that it and terms contained therein are overly broad, unduly burdensome, oppressive, vague, ambiguous, and/or incapable of reasonable ascertainment.

6.       JMBP objects to the Subpoena to the extent that it purports to require JMBP to produce information from parties or entities other than JMBP or otherwise seeks the production of information not in JMBP's possession, custody or control.

7.      JMBP objects to the Subpoena to the extent that it seeks information that is, in whole or in part, confidential and/or protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, immunity, law or similar protection from disclosure.

8.      JMBP objects to the Subpoena to the extent that it seeks to impose upon JMBP any obligations inconsistent with or greater than those mandated by the Federal Rules of Civil Procedure or the relevant Local Rules.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      JMBP objects to the definition of "Burnett" and "You" on the grounds that the definition is overly broad, vague, ambiguous, unduly burdensome, and seeks to impose obligations on JMBP that are inconsistent with and exceed those established by the Federal Rules of Civil Procedure.  JMBP further objects to the definition of "Burnett" and "You," to the extent that the definition includes "any related entities" of JMBP, as well as predecessor entities, persons no longer affiliated with JMBP, and persons and entities otherwise not under JMBP's control.  JMBP answers on behalf of JMBP, and no other person or entity.

2.      JMBP objects to the definition of "Communication" on the grounds that the definition is vague and ambiguous.

## SPECIFIC OBJECTIONS TO REQUESTS FOR DOCUMENTS AND THINGS

JMBP incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the specific objections set forth below.  The failure to repeat any General Objection or Objection to any Definition and Instruction does not waive any such objection to the specific Request.  Subject to and without waiving the foregoing objections and

conditions, JMBP objects to the Requests for Documents and Things specified in Attachment A

to the Subpoena as follows:

**Request No. 1:**

All Communications between Burnett and ACN.

**Objections to Request No. 1:**

JMBP incorporates by reference the Preliminary Statement, General Objections, and

Objections to Definitions and Instructions as if fully set forth herein.  JMBP objects to this

Request as it is overbroad as to time and without reasonable limitation in scope.  JMBP objects

to this Request to the extent it calls for information subject to the attorney-client privilege,

attorney work product doctrine, or any other applicable privilege, protection, immunity or

doctrine.  JMBP objects to this Request to the extent it seeks information irrelevant to any

party's claim or defense in this action.

Subject to and without waiving the foregoing objections, and subject to the Protective

Order entered in this case, JMBP will produce responsive, non-privileged documents, from

within a reasonable time frame surrounding the production of the two *Apprentice* episodes

featuring ACN, to the extent such documents exist in JMBP's possession and can be located after

a reasonable search.

**Request No. 2:**

All Documents concerning the allegations made regarding Burnett in the Complaint.

**Objections to Request No. 2:**

JMBP incorporates by reference the Preliminary Statement, General Objections, and

Objections to Definitions and Instructions as if fully set forth herein.  JMBP objects to this

Request to the extent it seeks information that is not within JMBP's possession, custody or

control.  JMBP objects to this Request to the extent it seeks information that is irrelevant to any

party's claim or defense in this action, and is not proportional to the needs of the case.  JMBP

objects to this Request as vague, ambiguous and overbroad as to what "concerning the

allegations regarding Burnett in the Complaint" means, and as inappropriate in that the Request

attempts to impose upon JMBP the burden of interpreting Plaintiffs' complaint rather than

specifying the documents sought with reasonable particularity.  JMBP objects to this Request as

it seeks documents that are available to Plaintiffs through sources other than JMBP and through

less burdensome means, including from the parties to the above-captioned litigation.  JMBP

further objects to this request as it fails to reasonably describe the requested documents sought.

JMBP further objects to this request to the extent it seeks documents or information containing

confidential and/or proprietary business information, trade secrets, confidential information

obtained by JMBP under contractual promise of non-disclosure, or nonpublic personal

information.

Based on the foregoing objections, JMBP will not produce documents responsive to this

Request at this time.

**Request No. 3:**

All Documents concerning the allegations made regarding *The Apprentice* or *The*

*Celebrity Apprentice* in the Complaint.

**Objections to Request No. 3:**

JMBP incorporates by reference the Preliminary Statement, General Objections, and

Objections to Definitions and Instructions as if fully set forth herein.  JMBP objects to this

Request to the extent it seeks information that is irrelevant to any party's claim or defense in this

action, and is not proportional to the needs of the case.  JMBP objects that this Request seeks

information that is available to Plaintiffs through sources other than JMBP and through less burdensome means, including from the parties to the above-captioned litigation. JMBP objects to this Request as vague, ambiguous and overbroad as to what "concerning the allegations made regarding *The Apprentice* or *The Celebrity Apprentice* in the Complaint" means, and as inappropriate in that the Request attempts to impose upon JMBP the burden of interpreting Plaintiffs' complaint rather than specifying the documents sought with reasonable particularity. JMBP objects to this Request as it seeks documents that are available to Plaintiffs through sources other than JMBP and through less burdensome means, including from the parties to the above-captioned litigation. JMBP further objects to this request as it fails to reasonably describe the requested documents sought. JMBP further objects to this request to the extent it seeks documents or information containing confidential and/or proprietary business information, trade secrets, confidential information obtained by JMBP under contractual promise of non-disclosure, or nonpublic personal information.

Based on the foregoing objections, JMBP will not produce documents responsive to this Request at this time.

**Request No. 4:**

All Documents, including, but not limited to, video footage or recordings in any form, created in connection with the March 22, 2009 and March 27, 2011 episodes of *The Celebrity Apprentice*.

**Objections to Request No. 4:**

JMBP incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein. JMBP objects to this Request as it is overbroad in its request, and as such is unduly burdensome and oppressive as

applied to a non-party, such that the burden and expense of compliance outweighs any possible benefit to Plaintiffs. JMBP further objects to this request as not calculated to lead to the discovery of admissible evidence to the extent that such footage or recordings does not feature ACN. JMBP objects to the extent that this Request seeks information that is available to Plaintiffs through sources other than JMBP and through less burdensome means, including from the parties to the above-captioned litigation, public sources or records, and/or other sources to which Plaintiffs have equal access. JMBP further objects to this request to the extent it seeks documents or information containing confidential and/or proprietary business information, trade secrets, confidential information obtained by JMBP under contractual promise of non-disclosure, or nonpublic personal information. JMBP objects to the Request as vague and ambiguous in that it fails to specify the Documents it requests with adequate specificity.

Based on the foregoing objections, JMBP will not produce documents responsive to this Request at this time.

**Request No. 5:**

Documents sufficient to show all payments made by ACN in connection with ACN's March 22, 2009 and March 27, 2011 appearances on *The Celebrity Apprentice*.

**Objections to Request No. 5:**

JMBP incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein. Subject to and without waiving the foregoing objections, and subject to the Protective Order entered in this case, JMBP will produce its agreements with ACN, which reflect the agreed payments by ACN.

8

**Request No. 6:**

All promotional materials for *The Celebrity Apprentice* that use or refer to a name, image, or statement of ACN in any way.

**Objections to Request No. 6:**

JMBP incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein.  JMBP objects to this Request as it is overbroad, and as such is unduly burdensome and oppressive as applied to a non-party, such that the burden and expense of compliance outweighs any possible benefit to Plaintiffs.  JMBP further objects to this request as not calculated to lead to the discovery of admissible evidence.  JMBP objects that this Request seeks information that is available to Plaintiffs through sources other than JMBP and through less burdensome means, including from public sources or records or from parties to the above-captioned litigation.

Based on the foregoing objections, JMBP will not produce documents responsive to this Request at this time.

**Request No. 7:**

Documents sufficient to show the fees charged to brands in order to appear on *The Apprentice* or *The Celebrity Apprentice*.

**Objections to Request No. 7:**

JMBP incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein.  JMBP objects to this Request as not relevant to the claims and defenses of any party and not proportional to the needs of this case.  JMBP further objects to this Request as it is overbroad as to time and without reasonable limitation in scope (including, but not limited to, the fact that it seeks information

about fees charged from all brands featured in all episodes for over ten years), and as such is unduly burdensome and oppressive as applied to a non-party, such that the burden and expense of compliance outweighs any possible benefit to Plaintiffs.  JMBP further objects to this request to the extent it seeks documents or information containing confidential and/or proprietary business information, trade secrets, confidential information obtained by JMBP under contractual promise of non-disclosure, or nonpublic personal information.

Subject to and without waiving the foregoing objections, and subject to the Protective Order entered in this case, JMBP will produce documents sufficient to show fees charged to ACN for its appearance.

**Request No. 8:**

Documents sufficient to show the degree of editorial control exercised by Trump over content aired on *The Apprentice* and *The Celebrity Apprentice,* including, but not limited to ACN's March 22, 2009 and March 27, 2011 appearances on *The Celebrity Apprentice*.

**Objections to Request No. 8:**

JMBP incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein.  JMBP objects to this Request as vague and ambiguous as to "sufficient to show the degree of editorial control." JMBP objects to this Request as not relevant to the claims and defenses of any party and not proportional to the needs of this case.  JMBP objects that this Request seeks information that is available to Plaintiffs through sources other than JMBP and through less burdensome means, including from the parties to the above-captioned litigation.

Based on the foregoing objections, JMBP will not produce documents responsive to this Request at this time.

10

Dated:  October 25, 2019

Respectfully Submitted

By: _____

Marvin S. Putnam (Cal. Bar # 212839)
Jessica Stebbins Bina (Cal. Bar #
248485)
LATHAM & WATKINS LLP
10250 Constellation Blvd. Suite 1100
Los Angeles, California 90067
Tel:  (424) 653-5500
Fax:  (424) 653-5501
mavin.putnam@lw.com
jessica.stebbinsbina@lw.com

Attorneys for Non-Party JMBP, LLC

11

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to this action. My business address is Latham & Watkins LLP, 10250 Constellation Boulevard, Suite 1100, Los Angeles, CA 90067.

On **October 25, 2019**, I served the following document described as:

**NON-PARTY JMBP, LLC'S OBJECTIONS TO PLAINTIFFS' SUBPOENA**

by serving a true copy of the above-described document in the following manner:

**BY U.S. MAIL**

I am familiar with the office practice of Latham & Watkins LLP for collecting and processing documents for mailing with the United States Postal Service. Under that practice, documents are deposited with the Latham & Watkins LLP personnel responsible for depositing documents with the United States Postal Service; such documents are delivered to the United States Postal Service on that same day in the ordinary course of business, with postage thereon fully prepaid. I deposited in Latham & Watkins LLP's interoffice mail a sealed envelope or package containing the above-described document and addressed as set forth below in accordance with the office practice of Latham & Watkins LLP for collecting and processing documents for mailing with the United States Postal Service:

Emery Celli Brinckerhoff & Abady, LLP
ATTN: Andrew Wilson
600 Fifth Avenue 10th Floor
New York, NY 10020

I declare that I am a member of the Bar of California and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **October 25, 2019**, at Los Angeles, California.

Alice Hoesterey

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JANE DOE, LUKE LOE, RICHARD ROE, and MARY MOE, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs,* <br><br> THE TRUMP CORPORATION, DONALD J. TRUMP, in his personal capacity, DONALD TRUMP JR., ERIC TRUMP, and IVANKA TRUMP, <br><br> *Defendants.* | Civil Action No. 1:18-cv-09936-LGS |

## <u>NON-PARTY METRO-GOLDWYN-MAYER STUDIOS INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' SUBPOENA</u>

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, non-party Metro-Goldwyn-Mayer Studios, Inc. ("MGM") hereby objects to Plaintiffs' Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises in a Civil Action ("Subpoena"), including the documents requested therein, served September 06, 2019,[1] as follows:

### <u>PRELIMINARY STATEMENT</u>

MGM responds to this subpoena, but notes that the materials sought are actually within the possession, custody, and control of JMBP, LLC ("JMBP"), an indirect subsidiary of MGM. Accordingly, to the extent each request calls for documents within the possession, custody, and control of MGM, MGM responds on behalf of JMBP.

---

[1] The time to respond was extended by agreement to October 25, 2019.

Much of the Subpoena is overbroad, unduly burdensome, and not proportional to the needs of the case. Some requests even demand that MGM locate and review over a decade's worth of correspondence and other documents, despite the fact that the Plaintiffs are only interested in information related to *two episodes* of the Apprentice – one of which aired in 2009, the other in 2011. There is no tangible basis, beyond bare speculation, for Plaintiffs to believe that most of the documents sought have any relevance to any party's claim or defense in this action. Compliance with portions of the Subpoena would create a substantial expense and burden to MGM. Given that much of the Subpoena seeks to impose a considerable burden on a non-party who has no involvement whatsoever in this litigation, much of Plaintiffs' Subpoena fails to meet the requirements of Rule 26 of the Federal Rules of Civil Procedure. To the contrary, the burden and expense to MGM of compliance outweighs any possible benefit to Plaintiffs in this action. MGM is, of course, willing to continue to meet and confer with the Plaintiffs regarding the Subpoena, to hopefully come to a resolution that will limit the burden on MGM, while providing Plaintiffs with discovery that is actually relevant and proportional to the needs of the case.

## GENERAL OBJECTIONS

1.      MGM objects to the Subpoena to the extent it seeks information concerning claims, issues, and/or non-parties that are irrelevant to any party's claim or defense in this action. The Subpoena is overbroad and unduly burdensome, and is not proportional to the needs of the case. The discovery is highly unlikely to assist in resolving the issues in this lawsuit in any way, and its burden and expense substantially outweighs its likely benefit.

2.      MGM objects to the Subpoena to the extent it violates the provisions of Rule 45(d)(1) of the Federal Rules of Civil Procedure in that it fails to take reasonable steps to avoid

imposing undue burden or expense on MGM.  Should the Court require MGM to respond to the parts of this Subpoena it believes to be excessive, and not proportional to the needs of the case, MGM reserves its right under Rule 45(d), and any other applicable rule or statute, to seek cost-shifting from Plaintiffs to remunerate the significant expense that compliance with this Subpoena would impose on MGM.

3.      MGM objects to the Subpoena as it seeks on its face only documents "which are in the possession, custody, or control of Trump Productions[,] Trump Productions' agents, Trump Productions' representatives and/or Trump Productions' attorneys."  As MGM is not Trump Productions, nor its representative, agent, or attorney, MGM cannot by definition have any documents that the Subpoena seeks.  For purposes of this response, MGM assumes this language is in error; but that leaves MGM without any coherent definition of the documents that Plaintiffs actually seek.

4.      MGM objects to the Subpoena to the extent that it seeks documents and/or information duplicative of documents or information already produced or requested in the underlying action, or that is otherwise readily obtainable from other sources that are more convenient, less burdensome and less expensive, including, without limitation, documents and/or information already in Plaintiffs' possession, custody or control, or available to Plaintiffs through sources other than MGM and through less burdensome means, including, *inter alia*, parties to the above-captioned litigation, public sources or records, and/or other sources to which Plaintiffs have equal access.

5.      MGM objects to the Subpoena to the extent it seeks documents and/or information containing confidential business or other proprietary information, trade secrets,

confidential information obtained by MGM under contractual promise of non-disclosure, or nonpublic personal information.

6.      MGM objects to the Subpoena to the extent that it and terms contained therein are overly broad, unduly burdensome, oppressive, vague, ambiguous, and/or incapable of reasonable ascertainment.

7.      MGM objects to the Subpoena to the extent that it purports to require MGM to produce information from parties or entities other than MGM or otherwise seeks the production of information not in MGM's possession, custody or control.  As noted above, MGM responds on behalf of its subsidiary JMBP, LLC, which is the entity who actually has possession, custody, and control of the materials relating to *The Apprentice*, *The Celebrity Apprentice*, and ACN's appearance thereon.

8.      MGM objects to the Subpoena to the extent that it seeks information that is, in whole or in part, confidential and/or protected by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, immunity, law or similar protection from disclosure.

9.      MGM objects to the Subpoena to the extent that it seeks to impose upon MGM any obligations inconsistent with or greater than those mandated by the Federal Rules of Civil Procedure or the relevant Local Rules.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      MGM objects to the definition of "MGM" and "You" on the grounds that the definition is overly broad, vague, ambiguous, unduly burdensome, and seeks to impose obligations on MGM that are inconsistent with and exceed those established by the Federal Rules of Civil Procedure.  MGM further objects to the definition of "MGM" and "You," to the extent

4

that the definition includes "any related entities" of MGM, as well as predecessor entities, persons no longer affiliated with MGM, and persons and entities otherwise not under MGM's control.  MGM answers only on behalf of itself, and no other person or entity.

2.       MGM objects to the definition of "Burnett" to the extent that the definition includes "any related entities" of Burnett, as well as predecessor entities, persons no longer affiliated with Burnett, and persons and entities otherwise not under Burnett's control.  MGM will construe the term "Burnett" to mean "JMBP, LLC."

3.       MGM objects to the definition of "Trump Productions" to the extent that the definition includes "any related entities" of Trump Productions, as well as predecessor entities, persons no longer affiliated with Trump Productions, and persons and entities otherwise not under Trump Productions' control.  MGM will construe "Trump Productions" to mean "Trump Productions."

4.       MGM objects to the definition of "Communication" on the grounds that the definition is vague and ambiguous.

5.       MGM objects to the definition of "Document" on the grounds that the definition is overly broad, vague, ambiguous, unduly burdensome.  Further, the definition of Document seeks only information outside of the custody and control of MGM in that it seeks information exclusively within the possession of "Trump Productions."

### SPECIFIC OBJECTIONS TO REQUESTS FOR DOCUMENTS AND THINGS

MGM incorporates by reference the General Objections and Objections to Definitions and Instructions set forth above into the specific objections set forth below.  The failure to repeat any General Objection or Objection to any Definition and Instruction does not waive any such objection to the specific Request.  Subject to and without waiving the foregoing objections and

conditions, MGM objects to the Requests for Documents and Things specified in Attachment A to the Subpoena as follows:

**Request No. 1:**

All Communications between MGM and ACN.

**Objections to Request No. 1:**

MGM incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein. MGM objects to this Request as it is overbroad as to time and without reasonable limitation in scope. MGM objects to this Request to the extent it calls for information subject to the attorney-client privilege, attorney work product doctrine, or any other applicable privilege, protection, immunity or doctrine. MGM objects to this Request to the extent it seeks information irrelevant to any party's claim or defense in this action.

Subject to and without waiving the foregoing objections, and subject to the Protective Order entered in this case, MGM will produce responsive, non-privileged documents, from within a reasonable time frame surrounding the production of the two *Apprentice* episodes featuring ACN, to the extent such documents exist in MGM's possession and can be located after a reasonable search.

**Request No. 2:**

All Communications between MGM and Trump or the Trump Entities.

**Objections to Request No. 2:**

MGM incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein. MGM objects to this Request as not relevant to the claims and defenses of any party and not proportional to the needs

of this case.  MGM further objects to this Request as it is overbroad as to time and without

reasonable limitation in scope (including, but not limited to, the fact that it seeks all

communications about all topics made over the course of more than a decade), and as such is

unduly burdensome and oppressive as applied to a non-party, such that the burden and expense

of compliance outweighs any possible benefit to Plaintiffs.  MGM objects to this Request as it

seeks documents that are available to Plaintiffs through sources other than MGM and through

less burdensome means, including from the parties to the above-captioned litigation.  MGM

further objects to this Request to the extent it seeks documents or information containing

confidential and/or proprietary business information, trade secrets, confidential information

obtained by MGM under contractual promise of non-disclosure, or nonpublic personal

information.  MGM also objects to this Request to the extent it calls for information subject to

the attorney-client privilege, attorney work product doctrine, or any other applicable privilege,

protection, immunity or doctrine.

Based on the foregoing objections, MGM will not produce documents responsive to this

Request at this time.

**Request No. 3:**

All Communications between Burnett and ACN.

**Objections to Request No. 3:**

MGM incorporates by reference the Preliminary Statement, General Objections, and

Objections to Definitions and Instructions as if fully set forth herein.  MGM objects to this

Request as it is overbroad as to time and without reasonable limitation in scope, and as such is

unduly burdensome and oppressive as applied to a non-party, such that the burden and expense

of compliance outweighs any possible benefit to Plaintiffs.  MGM objects to this Request to the

extent it seeks Communications to or from Mark Burnett in his personal capacity (as opposed to

Communications made by or on behalf of JMBP, LLC), as such Communications are outside the

possession, custody or control of MGM.  MGM objects to this Request as duplicative of Request

No. 1.  MGM objects to this Request to the extent it calls for information subject to the attorney-

client privilege, attorney work product doctrine, or any other applicable privilege, protection,

immunity or doctrine.  MGM objects to this Request to the extent it seeks information irrelevant

to any party's claim or defense in this action.

Subject to and without waiving the foregoing objections, and subject to the Protective

Order entered in this case, MGM will produce responsive, non-privileged documents, from

within a reasonable time frame surrounding the production of the two *Apprentice* episodes

featuring ACN, to the extent such documents exist in MGM's possession and can be located after

a reasonable search.

**Request No. 4:**

All Documents concerning the allegations made regarding Burnett in the Complaint.

**Objections to Request No. 4:**

MGM incorporates by reference the Preliminary Statement, General Objections, and

Objections to Definitions and Instructions as if fully set forth herein.  MGM objects to this

Request as it seeks information that is not within MGM's possession, custody or control,

including, but not limited to, the fact that the stated definition of Documents only includes

information belonging to Trump Productions, making all information requested necessarily

outside of the custody and control of MGM.  MGM objects to this Request as vague, ambiguous

and overbroad as to what "concerning the allegations regarding Burnett in the Complaint"

means, and as inappropriate in that the Request attempts to impose upon MGM the burden of

interpreting Plaintiffs' complaint rather than specifying the documents sought with reasonable particularity. MGM objects to this Request as it seeks documents that are available to Plaintiffs through sources other than MGM and through less burdensome means, including from the parties to the above-captioned litigation. MGM further objects to this Request as it fails to reasonably describe the requested documents sought.

Based on the foregoing objections, MGM will not produce documents responsive to this Request at this time.

**Request No. 5:**

All Communications between Trump Productions and ACN.

**Objections to Request No. 5:**

MGM incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein. MGM objects to this Request as it seeks information outside the custody and control of MGM. MGM objects that this Request seeks information that is available to Plaintiffs through sources other than MGM and through less burdensome means, including from the parties to the above-captioned litigation.

Based on the foregoing objections, MGM will not produce documents responsive to this Request at this time.

**Request No. 6:**

All Documents concerning the allegations made regarding Trump Productions in the Complaint.

**Objections to Request No. 6:**

MGM incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein. MGM objects that the

stated definition of Documents only includes information belonging to Trump Productions, making all information requested necessarily outside of the custody and control of MGM.  MGM objects that this Request seeks information that is available to Plaintiffs through sources other than MGM and through less burdensome means, including from the parties to the above-captioned litigation.   MGM objects to this Request to the extent it seeks information that is irrelevant to any party's claim or defense in this action, and is not proportional to the needs of the case.  MGM objects to this Request as vague, ambiguous and overbroad as to what "concerning the allegations made regarding Trump Productions in the Complaint" means, and as inappropriate in that the Request attempts to impose upon MGM the burden of interpreting Plaintiffs' complaint rather than specifying the documents sought with reasonable particularity. MGM further objects to this Request to the extent it seeks documents or information containing confidential and/or proprietary business information, trade secrets, confidential information obtained by MGM under contractual promise of non-disclosure, or nonpublic personal information.  MGM objects to the Request as vague and ambiguous in that it fails to specify the Documents it requests with adequate specificity.

Based on the foregoing objections, MGM will not produce documents responsive to this Request at this time.

**Request No. 7:**

All Documents concerning the allegations made regarding *The Apprentice* or *The Celebrity Apprentice* in the Complaint.

**Objections to Request No. 7:**

MGM incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein.  MGM objects that the

stated definition of Documents only includes information belonging to Trump Productions, making all information requested necessarily outside of the custody and control of MGM. MGM objects to this Request to the extent it seeks information that is irrelevant to any party's claim or defense in this action, and is not proportional to the needs of the case. MGM objects that this Request seeks information that is available to Plaintiffs through sources other than MGM and through less burdensome means, including from the parties to the above-captioned litigation. MGM objects to this Request as vague, ambiguous and overbroad as to what "concerning the allegations made regarding *The Apprentice* or *The Celebrity Apprentice* in the Complaint" means, and as inappropriate in that the Request attempts to impose upon MGM the burden of interpreting Plaintiffs' complaint rather than specifying the documents sought with reasonable particularity. MGM further objects to this Request as it fails to reasonably describe the documents sought. MGM further objects to this Request to the extent it seeks documents or information containing confidential and/or proprietary business information, trade secrets, confidential information obtained by MGM under contractual promise of non-disclosure, or nonpublic personal information.

Based on the foregoing objections, MGM will not produce documents responsive to this Request at this time.

**Request No. 8:**

All Documents, including, but not limited to, video footage or recordings in any form, created in connection with the March 22, 2009 and March 27, 2011 episodes of *The Celebrity Apprentice.*

**Objections to Request No. 8:**

MGM incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein. MGM objects that the stated definition of Documents only includes information belonging to Trump Productions, making all information requested necessarily outside of the custody and control of MGM. MGM objects to this Request as it is overbroad in its request, and as such is unduly burdensome and oppressive as applied to a non-party, such that the burden and expense of compliance outweighs any possible benefit to Plaintiffs. MGM further objects to this Request as not calculated to lead to the discovery of admissible evidence to the extent that such footage or recordings does not feature ACN. MGM objects to the extent that this Request seeks information that is available to Plaintiffs through sources other than MGM and through less burdensome means, including from the parties to the above-captioned litigation, public sources or records, and/or other sources to which Plaintiffs have equal access. MGM further objects to this Request to the extent it seeks documents or information containing confidential and/or proprietary business information, trade secrets, confidential information obtained by MGM under contractual promise of non-disclosure, or nonpublic personal information. MGM objects to the Request as vague and ambiguous in that it fails to specify the Documents it requests with adequate specificity.

Based on the foregoing objections, MGM will not produce documents responsive to this Request at this time.

**Request No. 9:**

Documents sufficient to show all payments made by ACN in connection with ACN's March 22, 2009 and March 27, 2011 appearances on *The Celebrity Apprentice*.

**Objections to Request No. 9:**

MGM incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein.  MGM objects that the stated definition of Documents only includes information belonging to Trump Productions, making all information requested necessarily outside of the custody and control of MGM. Subject to and without waiving the foregoing objections, and subject to the Protective Order in this case, MGM will produce its agreements with ACN, which reflect the agreed payments by ACN.

**Request No. 10:**

All promotional materials for *The Celebrity Apprentice* that use or refer to a name, image, or statement of ACN in any way.

**Objections to Request No. 10:**

MGM incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein.  MGM objects to this Request as it is overbroad, and as such is unduly burdensome and oppressive as applied to a non-party, such that the burden and expense of compliance outweighs any possible benefit to Plaintiffs.  MGM further objects to this Request as not calculated to lead to the discovery of admissible evidence.  MGM objects that this Request seeks information that is available to Plaintiffs through sources other than MGM and through less burdensome means, including from public sources or records or from parties to the above-captioned litigation.

Based on the foregoing objections, MGM will not produce documents responsive to this Request at this time.

**Request No. 11:**

Documents sufficient to show the fees charged to brands in order to appear on *The Apprentice* or *The Celebrity Apprentice*.

**Objections to Request No. 11:**

MGM incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein. MGM objects that the stated definition of Documents only includes information belonging to Trump Productions, making all information requested necessarily outside of the custody and control of MGM. MGM objects to this Request as not relevant to the claims and defenses of any party and not proportional to the needs of this case. MGM further objects to this Request as it is overbroad as to time and without reasonable limitation in scope (including, but not limited to, the fact that it seeks information about fees charged from all brands featured in all episodes for over ten years), and as such is unduly burdensome and oppressive as applied to a non-party, such that the burden and expense of compliance outweighs any possible benefit to Plaintiffs. MGM further objects to this Request to the extent it seeks documents or information containing confidential and/or proprietary business information, trade secrets, confidential information obtained by MGM under contractual promise of non-disclosure, or nonpublic personal information.

Subject to and without waiving the foregoing objections, and subject to the Protective Order entered in this case, MGM will produce documents sufficient to show fees charged to ACN for its appearance.

**Request No. 12:**

Documents sufficient to show the degree of editorial control exercised by Trump over content aired on *The Apprentice* and *The Celebrity Apprentice,* including, but not limited to ACN's March 22, 2009 and March 27, 2011 appearances on *The Celebrity Apprentice*.

**Objections to Request No. 12:**

MGM incorporates by reference the Preliminary Statement, General Objections, and Objections to Definitions and Instructions as if fully set forth herein.  MGM objects that the stated definition of Documents only includes information belonging to Trump Productions, making all information requested necessarily outside of the custody and control of MGM.  MGM objects to this Request as vague and ambiguous as to what documents are "sufficient to show the degree of editorial control."   MGM objects to this Request as not relevant to the claims and defenses of any party and not proportional to the needs of this case.  MGM objects that this Request seeks information that is available to Plaintiffs through sources other than MGM and through less burdensome means, including from the parties to the above-captioned litigation.

Based on the foregoing objections, MGM will not produce documents responsive to this Request at this time.

Dated:  October 25, 2019

Respectfully Submitted

By:  _____

Marvin S. Putnam (Cal. Bar # 212839)
Jessica Stebbins Bina (Cal. Bar #
248485)
LATHAM & WATKINS LLP
10250 Constellation Blvd. Suite 1100
Los Angeles, California 90067
Tel:  (424) 653-5500
Fax:  (424) 653-5501
mavin.putnam@lw.com
jessica.stebbinsbina@lw.com

Attorneys for Non-Party Metro-Goldwyn-
Mayer Studios Inc.

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to this action.  My business address is Latham & Watkins LLP, 10250 Constellation Boulevard, Suite 1100, Los Angeles, CA  90067.

On **October 25, 2019**, I served the following document described as:

### NON-PARTY METRO-GOLDWYN-MAYER STUDIOS, INC.'S OBJECTIONS TO PLAINTIFFS' SUBPOENA

by serving a true copy of the above-described document in the following manner:

### BY U.S. MAIL

I am familiar with the office practice of Latham & Watkins LLP for collecting and processing documents for mailing with the United States Postal Service.  Under that practice, documents are deposited with the Latham & Watkins LLP personnel responsible for depositing documents with the United States Postal Service; such documents are delivered to the United States Postal Service on that same day in the ordinary course of business, with postage thereon fully prepaid.  I deposited in Latham & Watkins LLP's interoffice mail a sealed envelope or package containing the above-described document and addressed as set forth below in accordance with the office practice of Latham & Watkins LLP for collecting and processing documents for mailing with the United States Postal Service:

Kaplan Hecker & Fink LLP
ATTN: Roberta Kaplan
350 Fifth Avenue, Suite 7110
New York, NY 10118

I declare that I am a member of the Bar of California and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **October 25, 2019**, at Los Angeles, California.

Alice Hoesterey

17

# EXHIBIT O

10250 Constellation Blvd., Suite 1100
Los Angeles, California  90067
Tel: +1.424.653.5500  Fax: +1.424.653.5501
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

January 6, 2020

**VIA EMAIL**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:     *Jane Doe v. The Trump Corporation*, 18-cv-9936 (LGS), Plaintiffs'
         Motion to Compel (Dkt. 129)

Dear Judge Schofield:

In our capacity as counsel to nonparties Metro-Goldwyn-Mayer Studios, Inc. ("MGM") and JMBP, LLC ("JMBP"), we write in response to plaintiffs' request for a pre-motion conference in connection with their intended motion to compel yet more discovery from MGM and JMBP.  We submit this letter in opposition.  MGM and JMBP have asserted several procedural and substantive objections to plaintiffs' prospective motion, summarized below.

**The motion is directed against an improper party**.  On October 25, 2019, in response to subpoenas served on both MGM and JMBP (then erroneously designated as Mark Burnett Productions), MGM and JMBP submitted responses and objections to plaintiffs' subpoenas. Those responses clearly explained that JMBP, an indirect subsidiary of MGM, is the actual custodian all the sought documents, and that MGM itself did not possess any responsive documents.  As there is nothing to compel from MGM, a motion to compel directed at MGM is both improper and in bad faith.

**The Court lacks jurisdiction to decide the motion**.  Under Rule 45 of the Federal Rules of Civil Procedure, a motion to compel a nonparty to produce documents requested by subpoena must be brought in the court "where compliance is required."  FRCP 45.  Compliance may *only* be required  "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  *Id.*  In the corporate context, courts have interpreted this requirement to mean that "the proper district to hear a motion to compel is where [the nonparty] is headquartered."  *Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018); *see also Music Grp. Macao Comm. Offshore Ltd. v. Does,* 82 F. Supp. 3d 979, 982 (N.D. Cal. 2015).  JMBP is neither headquartered in New York, nor does it regularly conduct business there.    Instead JMBP is headquartered and conducts business in California.   Plaintiffs acknowledge as much, as they served this subpoena *in Los Angeles*.

Rule 45 requires that a motion to compel be brought in the proper place for compliance – not simply the place designated on the subpoena.  *See Europlay*, 323 F.R.D. at 629 (subpoena's

LATHAM&WATKINS LLP

demand for compliance violated the 100 mile rule; district court lacked jurisdiction to hear motion to compel); *see also Ortiz v. Mt. Sinai Hospital*, 169 F. Supp. 3d 538, 542 (S.D.N.Y. 2016) ("express[ing] doubt" S.D.N.Y. had jurisdiction to issue order requiring compliance in New York, because the place of compliance violated 100-mile rule). Here, while plaintiffs attempted to designate plaintiffs' counsel's office in New York as the place of compliance, they in fact served the subpoena in California, and JMBP actually responded to the subpoena by producing documents in California to its California counsel, who then transmitted them by email to plaintiffs' counsel. Moreover, JMBP and its business (including all discoverable materials in its possession) are in California. As such, plaintiffs' attempt to designate New York as the place of compliance violates Rule 45,[1] and instead the proper place for any motion to compel is the Central District of California. *See Simmon v. Fervent Electrical Corp.,* 2014 WL 4285762, at *1 (E.D.N.Y. Aug. 29, 2014) (court lacks jurisdiction to address motion to compel brought outside of the proper place of compliance); *Ortiz,* 169 F. Supp. 3d at 542; *Europlay*, 323 F.R.D. at 629 (court did not have jurisdiction to hear motion to compel on a subpoena that improperly designated the place of compliance within its bounds); *Johnson v. Simmons*, 2015 WL 2155714, at *1 (S.D. Miss. May 7, 2015) (finding a motion to compel to be moot where the court of compliance was in the state of Washington); *Tomelleri v. Zazzle, Inc*., 2015 WL 400904, at *2 (D. Kan. Jan. 28, 2015) (finding that the court lacked authority to determine motions to quash concerning nonparty subpoenas to produce documents in Los Angeles and New York City).

**The motion seeks improper materials**. Furthermore, even assuming *arguendo* that this Court has jurisdiction to decide this motion to compel (and it does not), the motion still should be denied. While plaintiffs assert that "[t]he MGM Entities do not seriously contest the relevance of the withheld footage," this assertion is false. The requested materials are not ***only*** burdensome, but also utterly irrelevant and unlikely to generate or lead to admissible evidence.

Plaintiffs' claims assert generally that defendants fraudulently endorsed and promoted ACN, a multi-level-marketing company (among others), which led putative class members to invest in ACN. These allegations relate to *public* representations by defendants that were relied upon by the putative class members. The unaired video footage plaintiffs seek, however, has never been viewed by ***any*** class member, and necessarily had no bearing on any member's decision to invest in ACN. Plaintiffs cannot rely upon something they have never seen.

Plaintiffs thus speculate that the unseen footage "will likely bear" on several other issues, such as "Defendants' diligence into ACN" or "the degree of control Defendants exercise over the presentation of ACN on the show." However, plaintiffs' suggestion that this footage *might* show the defendants interacting somehow in a culpable way with ACN representatives is rank speculation, unsupported by any specific evidence that such footage exists. To the contrary, as JMBP has repeatedly explained to plaintiffs, the structure and typical format of the show makes it a virtual certainty that such footage could not exist. Mr. Trump was typically filmed with episode task partners such as ACN only at the beginning of an episode when introducing the task, or occasionally outside the boardroom when discussing the casts' performance of the task

---

[1] Upon receiving the subpoena, JMBP timely objected to the subpoena "to the extent that it seeks to impose upon JMBP any obligations inconsistent with or great than those mandated by the Federal Rules of Civil Procedure."

LATHAM&WATKINS LLP

with the task partners. That is all. The task partners were not otherwise present with Mr. Trump on set, and would not have been filmed together. Indeed, the nearly 4,000 pages of documents produced to date—which includes the script for introduction of the task partners discussed above—demonstrate that ACN executives interacted in a normal, professional fashion with *The Celebrity Apprentice* production staff, and that Mr. Trump did not have significant editorial controls over ACN's appearance on the show. At best, even if footage containing Mr. Trump and ACN executives existed, it would—as noted above—likely show no more than cuts of them introducing the task and discussing its performance. There is simply no basis for plaintiffs' speculation that the footage contains information relevant to their case.

Plaintiffs thus seek something that almost certainly does not exist—and the only method of proving such a negative would be to undertake an unreasonably burdensome search that is wholly unwarranted by the facts. The remote possibility that this proposed fishing expedition *might* turn up something unknown, unexpected, and unlikely cannot justify the substantial burden this request would create on nonparty JMBP. Although JMBP appreciates plaintiffs' willingness to pay the monetary costs of production, this certainly does not "defeat[] any claim of undue burden," as plaintiffs allege. Accessing, identifying, and producing the requested footage would require a considerable effort. The raw footage is voluminous and is stored in obsolete formats that would require equipment rental even to review. JMBP would need to either pull personnel from their daily tasks or retain and pay outside legal counsel to review hundreds of hours of footage to identify tapes that might be responsive. Additionally, after responsive tapes were identified, these tapes would need to be viewed by plaintiffs' counsel in a secure viewing room with JMBP personnel and counsel in attendance. The diversion of personnel and resources for such a lengthy time creates an undue hardship on nonparty JMBP, and is yet another independent reason for this request to be quashed. *See, e.g. Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 53 (S.D.N.Y. 1996) (finding subpoena on nonparty unduly burdensome in part because it would "subject numerous [nonparty] employees and managers in several branch offices to countless hours of research, analysis, and compilation").

Considering the burden this request places on a nonparty, the remote unsubstantiated possibility that Trump and ACN *may have* somehow been videotaped doing something improper on the set of *The Celebrity Apprentice*, without reason to believe such footage exists, does not justify this request. *See Lemanik, S.A. v. McKinley Allsopp, Inc.,* 125 F.R.D. 602, 608 (S.D.N.Y. 1989) ("parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so") (quotations omitted); *Citizens Union of City of New York v. Attorney General of New York,* 269 F. Supp. 3d 124, 141 (S.D.N.Y. 2017) (information that "may or may not have been considered" does not "justify turning discovery into a fishing expedition into non-public information").

Respectfully submitted,

Latham & Watkins, LLP
Marvin S. Putnam
Jessica Stebbins Bina, *pro hac vice pending*

CC: All Counsel of Record (via email)