# EXHIBIT O

10250 Constellation Blvd., Suite 1100
Los Angeles, California  90067
Tel: +1.424.653.5500  Fax: +1.424.653.5501
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

# LATHAM & WATKINS LLP

January 6, 2020

**VIA EMAIL**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *Jane Doe v. The Trump Corporation*, 18-cv-9936 (LGS), Plaintiffs'
              Motion to Compel (Dkt. 129)

Dear Judge Schofield:

      In our capacity as counsel to nonparties Metro-Goldwyn-Mayer Studios, Inc. ("MGM") and JMBP, LLC ("JMBP"), we write in response to plaintiffs' request for a pre-motion conference in connection with their intended motion to compel yet more discovery from MGM and JMBP.  We submit this letter in opposition.  MGM and JMBP have asserted several procedural and substantive objections to plaintiffs' prospective motion, summarized below.

      **The motion is directed against an improper party**.  On October 25, 2019, in response to subpoenas served on both MGM and JMBP (then erroneously designated as Mark Burnett Productions), MGM and JMBP submitted responses and objections to plaintiffs' subpoenas.  Those responses clearly explained that JMBP, an indirect subsidiary of MGM, is the actual custodian all the sought documents, and that MGM itself did not possess any responsive documents.  As there is nothing to compel from MGM, a motion to compel directed at MGM is both improper and in bad faith.

      **The Court lacks jurisdiction to decide the motion**.  Under Rule 45 of the Federal Rules of Civil Procedure, a motion to compel a nonparty to produce documents requested by subpoena must be brought in the court "where compliance is required."  FRCP 45. Compliance may *only* be required  "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  *Id.*  In the corporate context, courts have interpreted this requirement to mean that "the proper district to hear a motion to compel is where [the nonparty] is headquartered."  *Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018); *see also Music Grp. Macao Comm. Offshore Ltd. v. Does,* 82 F. Supp. 3d 979, 982 (N.D. Cal. 2015).  JMBP is neither headquartered in New York, nor does it regularly conduct business there.  Instead JMBP is headquartered and conducts business in California.  Plaintiffs acknowledge as much, as they served this subpoena *in Los Angeles*.

      Rule 45 requires that a motion to compel be brought in the proper place for compliance – not simply the place designated on the subpoena.  *See Europlay*, 323 F.R.D. at 629 (subpoena's

demand for compliance violated the 100 mile rule; district court lacked jurisdiction to hear motion to compel); *see also Ortiz v. Mt. Sinai Hospital*, 169 F. Supp. 3d 538, 542 (S.D.N.Y. 2016) ("express[ing] doubt" S.D.N.Y. had jurisdiction to issue order requiring compliance in New York, because the place of compliance violated 100-mile rule).  Here, while plaintiffs attempted to designate plaintiffs' counsel's office in New York as the place of compliance, they in fact served the subpoena in California, and JMBP actually responded to the subpoena by producing documents in California to its California counsel, who then transmitted them by email to plaintiffs' counsel.  Moreover, JMBP and its business (including all discoverable materials in its possession) are in California.  As such, plaintiffs' attempt to designate New York as the place of compliance violates Rule 45,[1] and instead the proper place for any motion to compel is the Central District of California.  *See Simmon v. Fervent Electrical Corp.,* 2014 WL 4285762, at *1 (E.D.N.Y. Aug. 29, 2014) (court lacks jurisdiction to address motion to compel brought outside of the proper place of compliance); *Ortiz,* 169 F. Supp. 3d at 542; *Europlay*, 323 F.R.D. at 629 (court did not have jurisdiction to hear motion to compel on a subpoena that improperly designated the place of compliance within its bounds); *Johnson v. Simmons*, 2015 WL 2155714, at *1 (S.D. Miss. May 7, 2015) (finding a motion to compel to be moot where the court of compliance was in the state of Washington); *Tomelleri v. Zazzle, Inc.*, 2015 WL 400904, at *2 (D. Kan. Jan. 28, 2015) (finding that the court lacked authority to determine motions to quash concerning nonparty subpoenas to produce documents in Los Angeles and New York City).

**The motion seeks improper materials**.  Furthermore, even assuming *arguendo* that this Court has jurisdiction to decide this motion to compel (and it does not), the motion still should be denied.   While plaintiffs assert that "[t]he MGM Entities do not seriously contest the relevance of the withheld footage," this assertion is false.  The requested materials are not ***only*** burdensome, but also utterly irrelevant and unlikely to generate or lead to admissible evidence.

Plaintiffs' claims assert generally that defendants fraudulently endorsed and promoted ACN, a multi-level-marketing company (among others), which led putative class members to invest in ACN.  These allegations relate to *public* representations by defendants that were relied upon by the putative class members.  The unaired video footage plaintiffs seek, however, has never been viewed by ***any*** class member, and necessarily had no bearing on any member's decision to invest in ACN.  Plaintiffs cannot rely upon something they have never seen.

Plaintiffs thus speculate that the unseen footage "will likely bear" on several other issues, such as "Defendants' diligence into ACN" or "the degree of control Defendants exercise over the presentation of ACN on the show."  However, plaintiffs' suggestion that this footage *might* show the defendants interacting somehow in a culpable way with ACN representatives is rank speculation, unsupported by any specific evidence that such footage exists.  To the contrary, as JMBP has repeatedly explained to plaintiffs, the structure and typical format of the show makes it a virtual certainty that such footage could not exist.  Mr. Trump was typically filmed with episode task partners such as ACN only at the beginning of an episode when introducing the task, or occasionally outside the boardroom when discussing the casts' performance of the task

---

[1] Upon receiving the subpoena, JMBP timely objected to the subpoena "to the extent that it seeks to impose upon JMBP any obligations inconsistent with or great than those mandated by the Federal Rules of Civil Procedure."

LATHAM&WATKINS LLP

with the task partners. That is all. The task partners were not otherwise present with Mr. Trump on set, and would not have been filmed together. Indeed, the nearly 4,000 pages of documents produced to date—which includes the script for introduction of the task partners discussed above—demonstrate that ACN executives interacted in a normal, professional fashion with *The Celebrity Apprentice* production staff, and that Mr. Trump did not have significant editorial controls over ACN's appearance on the show. At best, even if footage containing Mr. Trump and ACN executives existed, it would—as noted above—likely show no more than cuts of them introducing the task and discussing its performance. There is simply no basis for plaintiffs' speculation that the footage contains information relevant to their case.

Plaintiffs thus seek something that almost certainly does not exist—and the only method of proving such a negative would be to undertake an unreasonably burdensome search that is wholly unwarranted by the facts. The remote possibility that this proposed fishing expedition *might* turn up something unknown, unexpected, and unlikely cannot justify the substantial burden this request would create on nonparty JMBP. Although JMBP appreciates plaintiffs' willingness to pay the monetary costs of production, this certainly does not "defeat[] any claim of undue burden," as plaintiffs allege. Accessing, identifying, and producing the requested footage would require a considerable effort. The raw footage is voluminous and is stored in obsolete formats that would require equipment rental even to review. JMBP would need to either pull personnel from their daily tasks or retain and pay outside legal counsel to review hundreds of hours of footage to identify tapes that might be responsive. Additionally, after responsive tapes were identified, these tapes would need to be viewed by plaintiffs' counsel in a secure viewing room with JMBP personnel and counsel in attendance. The diversion of personnel and resources for such a lengthy time creates an undue hardship on nonparty JMBP, and is yet another independent reason for this request to be quashed. *See, e.g. Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996) (finding subpoena on nonparty unduly burdensome in part because it would "subject numerous [nonparty] employees and managers in several branch offices to countless hours of research, analysis, and compilation").

Considering the burden this request places on a nonparty, the remote unsubstantiated possibility that Trump and ACN *may have* somehow been videotaped doing something improper on the set of *The Celebrity Apprentice*, without reason to believe such footage exists, does not justify this request. *See Lemanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 608 (S.D.N.Y. 1989) ("parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so") (quotations omitted); *Citizens Union of City of New York v. Attorney General of New York*, 269 F. Supp. 3d 124, 141 (S.D.N.Y. 2017) (information that "may or may not have been considered" does not "justify turning discovery into a fishing expedition into non-public information").

Respectfully submitted,

Latham & Watkins, LLP
Marvin S. Putnam
Jessica Stebbins Bina, *pro hac vice pending*

CC: All Counsel of Record (via email)