UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

JANE DOE, LUKE LOE, RICHARD ROE,  :
and MARY MOE, individually and on behalf  :
of all others similarly situated,  :
                                  :
         *Plaintiffs,*         :
                                    :
v.                                     :
                                    :
THE TRUMP CORPORATION, DONALD J.  :
TRUMP, in his personal capacity, DONALD  :
TRUMP, JR., ERIC TRUMP, and IVANKA  :
TRUMP,  :
                                    :
         *Defendants.*      :
                                    ;
                                    :

18-cv-09936 (LGS)

------------------------------------------------------ X

### ACN OPPORTUNITY, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA AND IN SUPPORT OF CROSS-MOTION TO COMPEL ARBITRATION

SQUIRE PATTON BOGGS (US) LLP

Stephanie E. Niehaus
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
+1 212 872 9800
+1 212 872 9815 (fax)
stephanie.niehaus@squirepb.com

*Counsel for Non-Party ACN Opportunity, LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................ii

INTRODUCTION ...........................................................................................................1

ARGUMENT ..................................................................................................................2

I.   Plaintiffs Are Not Entitled To The Documents Requested ...................................2

      A.   The subpoena violates ACN's contractual rights.........................................2

      B.   Plaintiffs' subpoena is a premature and improper fishing expedition.......................4

      C.   The subpoena is unduly burdensome, and demonstrably so .....................................6

II.   Plaintiffs Should Be Compelled To Arbitrate .......................................................9

CONCLUSION................................................................................................................11

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Benavides v. Serenity Spa NY Inc.*,
   166 F. Supp. 3d 474 (S.D.N.Y. 2016)........................................................................................5

*Citizens Union of N.Y. v. AG of N.Y.*,
   269 F. Supp. 3d 124 (S.D.N.Y. 2017)........................................................................................7

*E.S. Originals, Inc. v. Totes Isotoner Corp.*,
   2011 U.S. Dist. LEXIS 113451 (S.D.N.Y. Sep. 30, 2011)......................................................10

*In re Garlock*,
   463 F. Supp. 2d 478 (S.D.N.Y. 2006)........................................................................................4

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019)................................................................................................................3

*Hughes, Hooker & Co. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.*,
   2005 U.S. Dist. LEXIS 11381 (S.D.N.Y. June 9, 2005).........................................................3

*Mackey v. IDT Energy, Inc.*,
   2019 U.S. Dist. LEXIS 77101 (S.D.N.Y. May 7, 2019).......................................................5, 6

*McIntire v. China MediaExpress Holdings, Inc.*,
   252 F. Supp. 3d 328 (S.D.N.Y. 2017)........................................................................................2

*In re Morgan Stanley Mortgage Pass-Through Certificates Litigation*,
   2013 WL 5288835 (S.D.N.Y. Sept. 19, 2013)...........................................................................6

*N'Diaye v. Metro. Life Ins. Co.*,
   2018 U.S. Dist. LEXIS 78417 (S.D.N.Y. May 8, 2018).......................................................7, 8

*In re Namenda*,
   2017 U.S. Dist. LEXIS 173403 (S.D.N.Y. Oct. 19, 2017) ...............................................6, 7, 9

*In re Nat. Gas Commodity Litig.*,
   235 F.R.D. 199 (S.D.N.Y. 2005) ..............................................................................................2

*Olsen v. Charter Communs.*,
   2019 U.S. Dist. LEXIS 135439 (S.D.N.Y. Aug. 9, 2019).........................................................3

*Park W. Radiology v. CareCore Nat'l, LLC*,
   547 F. Supp. 2d 320 (S.D.N.Y. 2008)........................................................................................8

*Putnam Leasing Co. v. Brentzel*,
    2019 U.S. Dist. LEXIS 168760 (E.D.N.Y. Sep. 30, 2019)......................................................3

*Sky Med. Supply Inc. v. SCS Support Claim Servs.*,
    2017 U.S. Dist. LEXIS 43668 (E.D.N.Y. Mar. 24, 2017).......................................................9

**Statutes**

9 U.S.C. §§ 2; 4.......................................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 45(d)(1)..............................................................................................................2

Fed. R. Civ. P. 23.......................................................................................................................6

Fed. R. Civ. P. 34.......................................................................................................................8

010-8979-1425/6/AMERICAS

## INTRODUCTION

Plaintiffs seek to compel ACN Opportunity, LLC ("ACN") to produce myriad confidential business and personal identifying information for a period spanning more than fifteen years. While Plaintiffs pay lip service in their Motion to Compel [ECF No. 151] to "meet and confer" efforts, Plaintiffs have been unwilling to accept reasonable revisions to the protective order acknowledging ACN's rights pursuant to Plaintiffs' Independent Business Owner ("IBO") Agreements (the "IBO Agreements"), or to discuss meaningful limitations to Plaintiffs' sweeping requests. In short, Plaintiffs have prevented their own discovery. Even worse, after not naming ACN in this case to avoid the IBO Agreements' arbitration obligations, Plaintiffs continue to flout those obligations by seeking discovery that would not be available in arbitration, and by raising disputes in this improper forum. ACN respectfully requests that this Court deny Plaintiffs' Motion, and compel Plaintiffs to comply with their obligations to raise disputes in the proper forum—*i.e.*, private, single-claimant arbitration, which ACN has had to initiate to remedy Plaintiffs' breaches here.[1]

ACN is contractually entitled to have all disputes arising out of or related to its IBO Agreements heard in arbitration, including this discovery dispute. Plaintiffs do not deny signing IBO Agreements, or that their requested discovery relates to those agreements. And, while Plaintiffs try to deny that this lawsuit asserts any dispute with ACN, Plaintiffs' protestations ring hollow against their Amended Complaint, which mentions ACN over 900 times, besmirches ACN's business, and implicates ACN in Defendants' alleged fraud. Plaintiffs' disputes are plainly

---

[1] On February 11, Plaintiffs sent a letter to the Court characterizing ACN's arbitration filings as "improper attempt[s] to interfere with this Court's Orders and jurisdiction." But there is nothing improper about ACN enforcing its contractual rights, nor its insistence that Plaintiffs comply with their contractual obligations. ACN does not intend to interfere with this Court's Orders or its proper jurisdiction, but does reserve and stand on its objections (as explained herein) to the Court's exercise of jurisdiction over a dispute that belongs in arbitration. *See generally* Declaration of Mark Henriques, Esq. (the "Henriques Dec."), filed contemporaneously.  ACN's appearance in these proceedings remains limited and ACN does not consent to jurisdiction.

rooted in their IBO Agreements, and Plaintiffs should not be permitted to avoid the choice-of-forum language in those agreements or subject ACN to a process that is contractually disallowed.

Even putting aside the insurmountable issue of Plaintiffs' arbitration obligations, Plaintiffs entirely ignore their separate obligations under applicable rules and law. Plaintiffs chose not to name ACN, but disregard the protections afforded to non-parties in discovery, including the Civil Rules' admonishment to "take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena." Fed. R. Civ. P. 45(d)(1). Plaintiffs cannot subject ACN to a fishing expedition, or to premature and unduly burdensome discovery. Nor can Plaintiffs ignore the restrictions on discovery in this Court's Individual Rules, which presumptively limit discovery of ESI "[t]hat was created more than five years before the filing of the lawsuit."

For these reasons, and for the reasons set forth in ACN's properly raised objections, Plaintiffs' Motion should be denied, and this Court should compel Plaintiffs to present all disputes in the AAA arbitrations that ACN has commenced.

## **ARGUMENT**

**I.    Plaintiffs Are Not Entitled To The Documents Requested.**

It is well-established that "[t]he serving party bears the burden of showing the appropriateness of a subpoena served on a nonparty." *In re Nat. Gas Commodity Litig.*, 235 F.R.D. 199, 208 (S.D.N.Y. 2005). Plaintiffs do not, and cannot, satisfy their burden here.

**A.    The subpoena violates ACN's contractual rights.**

Plaintiffs cannot circumvent their contractual obligations through strategic pleading and use of this Court's subpoena power. Courts have repeatedly held that "[d]iscovery on the subject matter of a dispute to be arbitrated should be denied in the absence of extraordinary circumstances." *McIntire v. China MediaExpress Holdings, Inc.*, 252 F. Supp. 3d 328, 330-31 (S.D.N.Y. 2017) (collecting cases). The party seeking such discovery bears the burden of

2

"demonstrat[ing] the sort of extraordinary circumstances that would warrant [it.]" *Hughes, Hooker & Co. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.*, 2005 U.S. Dist. LEXIS 11381, at *22 (S.D.N.Y. June 9, 2005). "The term 'exceptional circumstances' addresses situations where a party's ability to properly present its case to the arbitrators will be irreparably harmed absent court ordered discovery." *Putnam Leasing Co. v. Brentzel*, 2019 U.S. Dist. LEXIS 168760, at *11 (E.D.N.Y. Sep. 30, 2019) (citing *Oriental Commercial & Shipping Co. v. Rosseel, N.V.*, 125 F.R.D. 398, 400 (S.D.N.Y. 1989)).

Absent exceptional circumstances, discovery that is "intertwined with the subject matter of [a] dispute to be arbitrated" is precluded. *See id.* at *9 (*citing Gingras v. Rosette*, 2016 U.S. Dist. LEXIS 113187, at *27 (D. Vt. Aug. 22, 2016) (discovery found to be "intertwined" based on "the breadth of the arbitration clauses")). Whether discovery is so intertwined is a question that *must* be decided in arbitration; indeed, the Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citation omitted). "[I]ncorporat[ing] the AAA Commercial Arbitration [rules] . . . 'serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'" *Olsen v. Charter Communs.*, 2019 U.S. Dist. LEXIS 135439, at *20 (S.D.N.Y. Aug. 9, 2019) (citing *Contec Corp. v. Remote Sol., Co*., 398 F.3d 205, 208 (2d Cir. 2005)).

Under the weight of this precedent, Plaintiffs' Motion *and* the discovery they seek are improper in this forum. The IBO Agreements' arbitration language is broad and unmistakably covers any "dispute between [an IBO] and ACN as to [their] respective rights, duties and obligations arising out of or relating to th[e] [IBO] Agreement."[2] ECF No. 114 at 5; ECF No. 114-

---

[2] This language is reflected in the 2013 and 2014 versions of the IBO Agreement, which apply to Plaintiffs Moe, Doe, and Loe based on their own allegations. As ACN cannot verify Plaintiffs' identities at this time, ACN also

3

1 to 114-3. The arbitration obligation is not limited to "claims," but covers a much broader category of "disputes," and requires that "such disputes shall be exclusively resolved through binding arbitration before the [AAA] pursuant to the Commercial Rules of Arbitration." ECF No. 114-1 & -2 § 16; ECF No. 114-3 § 17. As such, the agreements defer *all* arbitrability determinations to arbitration, meaning that only an arbitrator has jurisdiction to resolve the present dispute—whether related to allegations about ACN in the Amended Complaint or Plaintiffs' subpoena.

Plaintiff's only cited authority on this point does not lead to a contrary conclusion. *See* ECF No. 152 at 8. In *In re Garlock*, 463 F. Supp. 2d 478, 480 (S.D.N.Y. 2006), the Court acknowledged that "[t]he arbitration clause upon which [the subpoenaed nonparty] relie[d] place[d] the availability and scope of discovery in the hands of the arbitrator . . . . if an arbitration existed in which the plaintiffs and [the nonparty] were parties." The Court refused to quash the subpoena, however, because "[the nonparty] already ha[d] litigated and lost [the] issue," "[t]he law of the case doctrine preclude[d] reconsideration," and no "arbitration existed in which plaintiffs and [the nonparty] were parties." *Id.* Here, by contrast, ACN has not obtained a ruling in any other proceeding, and ACN has commenced arbitrations against Plaintiffs for the purpose of resolving their disputes in accordance with the IBO Agreements.[3] The availability and scope of the discovery requested by Plaintiffs thus belong in the hands of the arbitrators.

**B.      Plaintiffs' subpoena is a premature and improper fishing expedition.**

Plaintiffs complain that ACN has raised general and specific objections to the subpoena on

---

cannot verify their enrollment dates. Regardless, any IBO Agreement Plaintiffs would have entered would have included a mandatory arbitration provision. While IBO Agreements can vary from revision-to-revision, arbitration under the AAA Commercial Rules was required during the entire time Plaintiffs allegedly were enrolled as IBOs.

[3] Plaintiffs should not be permitted to hide behind their pseudonyms to further avoid their contractual obligation to arbitrate. *See* Henriques Dec. To the extent it becomes necessary, ACN reserves the right to seek relief from this Court ordering plaintiffs to disclose their identities so that ACN can perfect its demands in AAA. *Id.*

the grounds of prematurity and overbreadth. But this District has recently endorsed these same objections in quashing a subpoena issued by the representative of a putative class "[t]o the extent the Subpoena pursue[d] documents that would be germane only in the event of a motion for class certification or of classwide litigation." *Mackey v. IDT Energy, Inc*., 2019 U.S. Dist. LEXIS 77101, at *19 (S.D.N.Y. May 7, 2019).

When the decision in *Mackey* issued, "there [was] an unresolved issue whether [defendant] ha[d] the right to compel [plaintiff] to arbitrate, or whether that right belong[ed] solely to [the nonparty]." *Id*. at *18. The Court reasoned that "a ruling that either moved [plaintiff]'s claims to an arbitral forum or extinguished these claims altogether through an early grant of summary judgment would leave [plaintiff] without an apparent basis to pursue classwide relief or to seek records related to putative class claims from third parties[.]" *Id*. at *18-19. "As a matter of guarding against a burden, this scenario favor[ed] limiting the scope of the subpoena. . . . The Court accordingly h[e]ld[] that [the nonparty], for the time being, should be obliged to produce only documents relevant to claims brought by [plaintiff] on his own behalf." *Id*. at *19. In so holding, the Court emphasized the importance of being "particularly sensitive to weighing the probative value of the information sought against the burden of production on the nonparty[.]" *Id.* at *19 n.1 (citing *UMB Bank, N.A. v. Sanofi*, 2017 U.S. Dist. LEXIS 202622, at *4 (S.D.N.Y. Nov. 22, 2017) ("It would be wasteful in terms of both time and money for the[] documents [that are obtainable from parties] to be sought from the non-parties.")).

Plaintiffs do not cite any decision in which a court, in this Circuit, compelled classwide discovery from a nonparty in a putative class action where the plaintiff had not yet moved for certification. The local decisions cited by Plaintiffs involve classwide requests directed to party defendants, *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 492 (S.D.N.Y. 2016), or that

5

postdated the certification motion, *In re Morgan Stanley Mortgage Pass-Through Certificates Litigation*, 2013 WL 5288835, at *2 (S.D.N.Y. Sept. 19, 2013). ECF No. 152 at 6. Thus, both decisions are factually distinguishable, and *Mackey* is controlling. 2019 U.S. Dist. LEXIS 77101 at *19.

ACN is justified per *Mackey* in narrowing its production to documents concerning Plaintiff's individual claims, and has agreed to produce documents within that limitation. As a practical matter, ACN cannot make even that production without first signing on to the protective order and learning Plaintiffs' identities. ECF No. 112 at ¶ 11. By signing on to the protective order, however, ACN would submit itself to the jurisdiction of this Court "for the purpose of any issue or dispute arising" under the order (*id*. at 7), which potentially compromises ACN's rights under the IBO Agreements. While ACN has actually *agreed* to sign the protective order with the incorporation of no-arbitration-waiver language (ECF No. 151-3), Plaintiffs have refused to accept such language, instead standing on their premature and overbroad classwide discovery requests.[4]

### C.   The subpoena is unduly burdensome, and demonstrably so.

Although Plaintiffs try to dismiss it, ACN's burden objection is well-grounded in its nonparty status, the confidential and proprietary nature of the documents requested, the 15-year period covered by the subpoena, the public or party availability of many of the documents Plaintiffs seek, and the lack of connection between many of the subpeona's categories and Plaintiffs' claims.

Plaintiffs cite *In re Namenda Direct Purchaser Antitrust Litigation* for its recitation of the factors considered by courts "[t]o determine whether a subpoena imposes an undue burden[.]" 2017 U.S. Dist. LEXIS 173403, at *7 (S.D.N.Y. Oct. 19, 2017) (cited in ECF No. 152 at 5). These

---

[4] Even if the Court is inclined to allow Plaintiffs some discovery regarding Rule 23 prerequisites, far less burdensome and intrusive means are available to accomplish that discovery, e.g., an affidavit summarizing IBO enrollment information for the relevant period.

010-8979-1425/6/AMERICAS

factors include "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described[,] and the burden imposed." *Id.* (citation omitted). Plaintiffs, however, ignore that "[l]itigants and courts are instructed to be especially unsolicitous of non-party targets of subpoenas" when applying these factors, as noted in *In re Namenda*. *See id.* Plaintiffs appear to "negate the distinction between party and non-party discovery" when it comes to the assessment of burden, even though this distinction is acknowledged in the very cases they cite. *See, e.g., Citizens Union of N.Y. v. AG of N.Y.*, 269 F. Supp. 3d 124, 148 (S.D.N.Y. 2017) (cited in ECF No. 152 at 4).

Here, ACN's nonparty status accentuates a burden that would be undue even if the requests were directed to a party. Each of the *In Re Namenda* factors favors quashing the subpoena, or at the very least narrowing it as in ACN's responses and objections, ECF No. 151-2.

First, many of the documents requested bear little to no relevance to Plaintiffs' claims. Strikingly, only one of the "six categories of documents" requested, according to Plaintiffs' own summary, involves the Defendants. *See* ECF No. 152 at 2. One of Plaintiffs' "Representative Requests" illustrates perfectly the lack of connection to their claims: Plaintiffs seek "documents sufficient to show ACN's quarterly revenue or losses incurred from its sale of the ACN videophone." *See id.* at 2-3. But Plaintiffs do not explain why discovery into ACN's sensitive profit and loss information "would shed light on whether [their claims are well-founded]" against the Defendants. *See N'Diaye v. Metro. Life Ins. Co.*, 2018 U.S. Dist. LEXIS 78417, at *22 (S.D.N.Y. May 8, 2018). In fact, ACN's sales figures have no tendency to show that "the Trump Defendants defrauded vulnerable investors like Plaintiffs into investing in ACN," which is the "central premise of the Amended Complaint," according to Plaintiffs. *See* ECF No. 152 at 1.

Second, Plaintiffs do not need much of the requested documents from ACN—not just

7

because they lack discernable relevance, but also because of their availability from alternate sources. "To the extent these documents are otherwise discoverable, they could and should have been obtained pursuant to Rule 34 . . . without imposing wholly unnecessary burdens on [nonparties]" such as ACN. *N'Diaye*, 2018 U.S. Dist. LEXIS 78417, at *21. ACN should not be compelled to produce documents that Plaintiffs could obtain from their own records, from Defendants, or from public sources.

Third, the subpoena incorporates such broad, unparticularized language that, even if the requests were otherwise proper, ACN still would be subject to undue burden. For example, Request No. 2 seeks "[a]ll Documents concerning the allegations made regarding ACN in the Complaint." ECF No. 151-1 at 8. Such "blanket" discovery has been found "excessively broad, and not reasonably calculated or sufficiently tailored to obtain evidence sufficiently relevant to the claims and issues in the action before the Court." *Park W. Radiology v. CareCore Nat'l, LLC*, 547 F. Supp. 2d 320, 322 (S.D.N.Y. 2008).[5] The subpoena is "like a fishing expedition by which [Plaintiffs] hope to find documentation to support the numerous allegations of fraud and other unlawful or unethical practices in which they assert [Trump] was engaged in concert with [ACN]." *See id*. Such fishing expeditions epitomize improper and burdensome discovery.

Fourth, the time period covered by the requests spans an unreasonable 15 years. ECF No. 151-1 at 8. Plaintiffs argue that "[t]he scope of production must correlate to the alleg[ed]" time period of "[t]he business relationship between ACN and Defendants." ECF No. 152 at 6. The argument misses the mark. Plaintiffs purport to bring claims against Defendants, not against ACN. Accordingly, the subpoena "need[s] to be narrowly tailored to include only those [ACN] records

---

[5] It bears noting, again, that Plaintiffs continue to claim that this litigation does not implicate a dispute arising from or relating to their IBO Agreements but at the same time acknowledge they make "allegations" regarding ACN in their Complaint. Plaintiffs' attempts to have it both ways exceeds the boundaries of credulity.

falling within th[e] . . . time period encompassing the [Plaintiffs'] claims [against Trump] in this action," and not based on the ACN-Trump relationship. *See Sky Med. Supply Inc. v. SCS Support Claim Servs.*, 2017 U.S. Dist. LEXIS 43668, at *36 (E.D.N.Y. Mar. 24, 2017). "To further enlarge this temporal period would result in an undue burden which outweighs the potential benefit here." *See id.* Thus, it was appropriate for ACN to restrict the scope of its production to the "four-year period between 2013 and 2016" when "Plaintiffs claim to have considered enrolling with ACN and/or to have actually enrolled with ACN." ECF No. 151-2 at 3-4.

The fifth factor focuses on the burden on ACN in terms of time and expense. ACN has estimated that complying with the subpoena as served and without any limitation would require significant employee and outside counsel time and would cause ACN to incur substantial actual and imputed costs, likely in excess of $50,000. *See* Dec. of David Merriman ¶¶ 3-4. ACN does not have the resources available to allocate to this effort with its current staffing and business priorities. *Id.* ¶ 5. These human and capital resource expenditures are disproportionately high "in comparison with the potential damages in this case." *See In re Namenda*, 2017 U.S. Dist. LEXIS 173403, at *9. Plaintiffs should not be permitted to compel the time-consuming, expensive, and distracting classwide discovery requested from nonparty ACN, *particularly where their IBO Agreements foreclose class-based claims*.[6] Holding otherwise "would contravene the requirement that discovery be proportional to the needs of each case." *See Sky Med. Supply Inc.*, 2017 U.S. Dist. LEXIS 43668, at *36.

## II. Plaintiffs Should Be Compelled To Arbitrate.

ACN respectfully requests that this Court compel Plaintiffs to submit this discovery dispute

---

[6] ACN in no way concedes that Plaintiffs would be entitled to class-wide discovery under any circumstances and expressly preserves all arguments and objections to such discovery based on the class action waiver language in the IBO Agreements.

to arbitration along with all other disputes arising out of or in connection with their IBO Agreements, whether those disputes are with ACN or the Trump Defendants. ACN incorporates by reference the applicable facts and authorities set forth in Defendants' Memorandum of Law in Support of their Motion to Compel Arbitration. *See* ECF No. 114. In particular, Sections I and II.A of Defendants' argument apply with full force here. *See id.* at 7-9.

It remains undisputed (albeit unverified) that each Plaintiff executed an IBO Agreement with the following language:

> In the event of a dispute between ACN and me as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is mutually agreed that such disputes shall be exclusively resolved through . . . binding arbitration before the [AAA] pursuant to the Commercial Rules of Arbitration.

*Id.* at 5. Because the agreements involve interstate commerce, this provision is "valid, irrevocable, and enforceable" within the meaning of the Federal Arbitration Act ("FAA"), and shall be enforced by means of "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *See* 9 U.S.C. §§ 2; 4. "The FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issue[s] as to which an arbitration agreement has been signed." *E.S. Originals, Inc. v. Totes Isotoner Corp.*, 2011 U.S. Dist. LEXIS 113451, at *6-7 (S.D.N.Y. Sep. 30, 2011). Such issues include "disagree[ments] as to the scope of the arbitrable claims and the scope of discovery." *See id.* at 4. "[R]elated discovery requests are properly decided by the appointed arbitrator," *id.* at 8, even if "the scope of the arbitration clause is narrow," *id.* at 7.

Here, ACN has invoked the broad arbitration language of the IBO Agreements to commence AAA commercial arbitrations against Plaintiffs in Charlotte, North Carolina, seeking immediate relief. Henriques Dec. ¶ 3. ACN has served the arbitration demands on counsel. *Id.* ¶ 4. Plaintiffs should be required to seek relief in the proper forum; there is no reason for this Court to

delay in ordering Plaintiffs to abide by their contractual obligations and arbitrate *all* disputes arising from or relating to the IBO Agreements that form the very basis of their claims here.

## **CONCLUSION**

For the reasons set forth in this memorandum, ACN respectfully requests that Plaintiffs' motion to compel ACN's compliance with their subpoena be denied, and that ACN's cross-motion to compel arbitration of all disputes under the IBO Agreements be granted.

Dated: New York, New York     SQUIRE PATTON BOGGS (US) LLP
   February 14, 2020

             /s/ Stephanie E. Niehaus
            Stephanie E. Niehaus
            30 Rockefeller Plaza, 23rd Floor
            New York, New York 10112
            +1 212 872 9800
            +1 212 872 9815 (fax)
            stephanie.niehaus@squirepb.com

            *Counsel for Non-Party ACN Opportunity, LLC*

11

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

JANE DOE, LUKE LOE, RICHARD ROE,   :
and MARY MOE, individually and on behalf   :      18-cv-09936 (LGS)
of all others similarly situated,   :
                                        :
             *Plaintiffs,*               :
                                        :
v.                                       :
                                        :
THE TRUMP CORPORATION, DONALD J.   :
TRUMP, in his personal capacity, DONALD   :
TRUMP, JR., ERIC TRUMP, and IVANKA   :
TRUMP,                                   :
                                        :
             *Defendants.*               ;
                                        :
------------------------------------------------------ X

**DECLARATION OF DAVID MERRIMAN IN SUPPORT OF
ACN OPPORTUNITY, LLC'S (ACN) OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL COMPLIANCE WITH SUBPOENA AND
<u>IN SUPPORT OF ACN'S CROSS-MOTION TO COMPEL ARBITRATION</u>**

David Merriman, pursuant to 29 U.S.C. § 1746, declares the following under penalty of

perjury:

1.      I am the Executive Vice President for ACN Communication Services, LLC, an

affiliate of ACN Opportunity, LLC ("ACN").  I have been employed with ACN for 24 years.

2.      I submit this declaration in support of ACN's opposition to Plaintiffs' motion to

compel ACN's compliance with their subpoena to ACN in this matter (the "Subpoena") and

ACN's cross-motion to compel arbitration of *all* disputes arising from or relating to the

Independent Business Owner ("IBO") Agreements that form the basis of Plaintiffs' claims in this

matter.

3.      ACN has estimated that complying with the Subpoena as served and without any limitation would require significant employee and outside counsel time and would cause ACN to incur substantial actual and imputed costs.

4.      ACN estimates, for example, that complying with the Subpoena as served and without any limitation would require approximately 200 hours of employee time to locate, isolate, and transfer thousands of electronic files and more than one hundred physical files that may include responsive documents; at an estimated imputed hourly rate of between US $75-$100, this amounts to a cost to ACN of $15,000 to $20,000, not to mention the unquantifiable distraction and burden on ACN employees.  ACN also will be forced to incur additional costs in retaining outside counsel to review potentially responsive materials for responsiveness and privilege, and to process materials for production.  Based on ACN's past experience, ACN estimates that the cost of retaining outside counsel for these purposes would be at least $15,000-$25,000.  Also based on past experience, if ACN is required to utilize an outside vendor for processing and production, that cost could easily amount to $20,000.  And each of these estimated costs could be higher, depending on the volume of documents ACN identifies as potentially responsive to Plaintiffs' thirty-two separate document demands.

5.      ACN does not have the resources available to allocate to this effort with its current staffing and business priorities.  If ACN is required to divert resources to compliance with the Subpoena as served, the cost to ACN is certain but inestimable.  For example, if ACN is required to divert resources from a planned market or product launch, causing a delay in that launch, ACN would be subject to exponential losses from missed IBO and customer opportunities.

6.      Since at least 2011, ACN's IBO Agreements have incorporated arbitration agreements requiring that all disputes arising out of or relating to the IBO Agreement be brought in arbitration.

7.      Based on these arbitration agreements, ACN has objected to the Subpoena and commenced individual proceedings against Plaintiffs with the American Arbitration Association pursuant to the Commercial Rules.  ACN served four arbitration demands on counsel of record for the four Plaintiffs in this matter on February 10, 2020, seeking declaratory and other relief.  The seat of the arbitration is Charlotte, North Carolina.  Beyond the facts disclosed herein, the content of the arbitration demand is strictly confidential.


Executed:      February 14, 2020          By: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
JANE DOE, LUKE LOE, RICHARD ROE,   :
and MARY MOE, individually and on behalf   :      18-cv-09936 (LGS)
of all others similarly situated,   :
                              :
            *Plaintiffs,*   :
                              :
v.   :
                              :
THE TRUMP CORPORATION, DONALD J.   :
TRUMP, in his personal capacity, DONALD   :
TRUMP, JR., ERIC TRUMP, and IVANKA   :
TRUMP,   :
                              :
            *Defendants.*   :
                              ;
                              :
------------------------------------------------------- X

**DECLARATION OF MARK HENRIQUES, ESQ. IN SUPPORT
OF ACN OPPORTUNITY, LLC'S OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL COMPLIANCE WITH SUBPOENA AND
<u>IN SUPPORT OF ACN'S CROSS-MOTION TO COMPEL ARBITRATION</u>**

      Mark Henriques, Esq., pursuant to 29 U.S.C. § 1746, declares the following under penalty

of perjury:

      1.      I am a partner with the law firm of Womble Bond Dickinson (US) LLP ("Womble

Bond") based in Charlotte, North Carolina, and have provided outside legal counsel to ACN

Opportunity, LLC ("ACN") for several years.

      2.      I submit this declaration in support of ACN's opposition to Plaintiffs' motion to

compel ACN's compliance with their subpoena to ACN in this matter (the "Subpoena") and

ACN's cross-motion to compel arbitration of all disputes arising from or relating to the

Independent Business Owner Agreements (the "IBO Agreements") that form the basis of

Plaintiffs' claims in this matter.

3.      On February 10, 2020, Womble Bond submitted four Demands for Arbitration to the American Arbitration Association ("AAA") on behalf of ACN, naming as respondents Jane Doe, Richard Roe, Mary Moe, and Luke Loe.  The Demands seek declaratory and other relief based on the arbitration agreements incorporated into each Respondent's IBO Agreement with ACN.

4.      Also on February 10, 2020, we served each of Plaintiffs/Respondents' counsel of record in this case with the Demands by Federal Express.

5.      On February 11, 2020, counsel of record acknowledged receipt of the Demands in a letter sent to this Court by email.  That letter subsequently was docketed in this case at ECF Nos. 163 (redacted) and 164 (unredacted).

6.      On February 13, 2020, I received a letter from James Daubert, AAA Case Filing Supervisor indicating that AAA had administratively determined that the Demands did not comply with Rule 4 of the Commercial Arbitration Rules because "the name of the respondents and an agreement between the parties was not provided" with the Demands.  The letter further stated that "absent receipt of these minimum filing requirements or court order to arbitrate these matters," the Demands would be returned.  This determination stemmed from the fact that ACN does not know the Plaintiffs/Respondents' real names and has been unable to identify their specific enrollment information.   As a result, ACN named the Plaintiffs/Respondents by their own adopted pseudonyms and provided with each Demand for Arbitration all possible IBO Agreements under which Plaintiffs/Respondents would have enrolled based on the dates provided in the Amended Complaint filed in is matter.  Each of these IBO Agreements requires arbitration under the AAA commercial rules.

7.     I immediately contacted AAA to dispute that administrative determination.  I spoke with Ryan Boyle, a Vice President of the AAA in New York, who agreed that I could submit a letter outlining ACN's compliance with Rule 4, that AAA would afford Plaintiffs/Respondents' counsel an opportunity to respond, and that AAA would make a decision about filing the Demands following such submissions.  I have submitted the requested letters to AAA outlining ACN's compliance with Rule 4.  Copies of these letters are attached as Exhibits 1-4.

8.     Pending a decision from AAA, ACN reserves its right to seek relief from this Court, any other court of competent jurisdiction, and/or AAA to require Plaintiffs/Respondents to disclose their true identities to ACN.  Plaintiff/Respondents should not be permitted to hide behind pseudonyms to avoid their contractual obligations to ACN.

Executed:     February 14, 2020

Mark P. Henriques
(NC State Bar: 18701)
WOMBLE BOND DICKINSON (US) LLP
3500 One Wells Fargo Center
301 South College Street
Charlotte, NC  28202
Phone: (704) 331-4912
Facsimile: (704) 338-7830
E-mail: Mark.Henriques@wbd-us.com

# EXHIBIT 1

wemblebenddickinson.com



**February 14, 2020**

By E-mail to : DaubertJ@adr.org

James Daubert
Case Filing Supervisor
American Arbitration Association
1101 Larel Oak Road
Voorhees, NY 08043

Womble Bond Dickinson (US) LLP

One Wells Fargo Center
Suite 3500, 301 South College Street
Charlotte, NC 28202-6037

t:  704.331.4900
f:  704.331.4955

Re:    **ACN Opportunity, LLC v. Robert Roe / AAA Case: 01-20-00004716**

Mark P. Henriques
Partner
Direct Dial: 704-331-4912
Direct Fax: 704-338-7830
E-mail: Mark.Henriques@wbd-us.com

Dear Mr. Daubert:

Thank you for your letter of February 13, 2020, to which this letter responds.   After receiving your letter, I spoke with Ryan Boyle, who asked that I write this letter to share the details of this matter so that the AAA can re-assess whether to accept this filing.

This case involves highly unusual, perhaps unique, circumstances.  For the reasons set forth below, ACN Opportunity, LLC ("ACN") has complied with the AAA Rules, and we therefore respectfully request that the AAA proceed with filing these demands.  Any questions about the proper name to list for respondents, or the specific arbitration agreements that were executed, must be decided by an arbitrator under Rules 4(c) and 7.

ACN Complied with Rule 4(a)

Commencing an arbitration based on an existing arbitration agreement requires only three things: 1) filing a Demand for Arbitration, 2) paying the administrative filing fee, and 3) attaching a copy of the applicable arbitration agreement from the parties' contract.[1]  Because ACN complies with each of these requirements, the filing should proceed. **AAA Commercial Arbitration Rules, Rule 4(a).**

There is no dispute that ACN submitted a Demand for Arbitration and the appropriate filing fee.   Your letter suggests that "an agreement between the parties" was not provided.   The requirement under Rule 4 is that ACN attach a copy of the applicable arbitration agreement from the parties' contract. ACN did exactly this by attaching the IBO Agreement form in effect when Roe enrolled with and was an IBO with ACN based on Roe's own representations in a federal court pleading, which amounts to a judicial admission.  (Exhibit C to the Demand for Arbitration) See also Demand for Arbitration (Exhibit 2) ¶¶ 18-20.  This Agreement contains within in it an agreement requiring arbitration under the AAA Commercial Arbitration Rules.   ACN's IBO

---

[1] Notably requirement 3) does not require filing a copy of the parties' contract, only a copy of the arbitration agreement. This is consistent with the rule that a "written provision to settle by arbitration a controversy is valid, irrevocable, and enforceable without mention of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 70, 130 S. Ct. 2772, 2778, 177 L. Ed. 2d 403 (2010).  ACN could have simply provided the relevant arbitration clause and satisfied this filing requirement.

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/legal notices for further details.



February 14, 2020
Page 2

enrollment process is electronic (i.e. online), and Roe could not have enrolled as an IBO with ACN without having agreed to these terms. To the extent there remains a question as to whether this condition has been met, Rule 4(c) provides that "any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination." . . .

Indeed, in connection with a class action pending in the Southern District of New York, Richard Roe and the other respondents do not dispute they executed an IBO Agreement with an arbitration clause. (See Demand for Arbitration, Exhibit B, pages 8-9). Even if Roe were to now claim that he did not execute an IBO Agreement containing an arbitration agreement (which he has not done in the course of the federal proceeding), this issue must be resolved by the arbitrator, not administratively by the AAA. **AAA Rules of Commercial Arbitration, Rule 7.** ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement").

## ACN Complied with Rule 4(e)

The Demand for Arbitration filed with AAA against Richard Roe identifies him by the name he has chosen to proceed under in the federal action, as well as his place of residency, Maryland. Nothing in Rule 4(e) precludes the use of an alias name. Moreover, the clear purposes of Rule 4(e) are to provide sufficient identifying information for the claim to proceed and for proper notice to be given, which purposes are satisfied here, as discussed further below. ACN's Demand for Arbitration (Exhibit 2) is particularly detailed, incorporating all identifying information from the federal action, and provides a complete explanation of the highly unusual circumstances of this matter and the reason for identifying Mr. Roe by his own adopted alias name. The Demand for Arbitration attached a copy of the Amended Complaint (Exhibit A) so that the arbitrator can reference the relevant allegations when deciding any question about jurisdiction. ACN seeks relief regarding the subpoena in the SDNY Action, and the arbitrator can potentially enter an award against Richard Roe without knowing his "true" identity. Because Richard Roe is the relevant name of respondent, ACN's Demand for Arbitration does name the respondent that ACN is seeking relief against, in full compliance with Rule 4(e).

There also can be no question as to proper notice. Immediately upon filing the Demand, ACN served the Demand on Mr. Roe's numerous counsel of record in the federal action. As reflected in a letter Mr. Roe's counsel submitted to the Court on February 11, 2020, which was filed on the public docket on February 12, 2020, Mr. Roe's attorneys have acknowledged that service.

## ACN's Demand is Consistent with the Purpose of Rule 4(e)

The AAA requires parties to be identified because it is not in a position to issue abstract rulings involving unknown parties. Since agreements to arbitrate are based on contract, there must be an identifiable individual. Typically, "Jane Doe" respondents cannot be identified (for example an unknown driver of an unknown vehicle) and this filing may be properly denied. However, in contrast to these cases, here Richard Roe is a *known* individual. Not only do we know his name as he has asserted it, we know that he works as a food delivery driver. (Exhibit A, ¶236). We know he filled out a registration form and paid a $499 fee to became an IBO. (Exhibit A, ¶248). There is no dispute Roe executed a contract with an arbitration agreement (Demand for Arbitration, Exhibit B, pages 8-9). Richard Roe is not an unknown actor, but a known,



February 14, 2020
Page 3

identifiable individual who the SDNY court is allowing to proceed under a pseudonym for reasons unrelated to ACN.  Roe is represented by counsel who can and already has begun to represent his interests in this arbitration.  Because this matter involves a specific known individual represented by counsel, the AAA's traditional concerns about allowing a filing against unknown parties are inapplicable.  The bottom line is that Richard Roe is the Respondent's name and he is **known**.

## Questions of Arbitrability Must Be Decided by the Arbitrator under Rules 4(c) and 7

Your letter implies that including a party's "real" name is a condition precedent to filing an arbitration. This is not what the rule requires. It simply requires the name of each party. As described above, ACN has provided the name used by Richard Roe himself.  However, even if this were still in dispute, AAA Commercial Rule 4(c) makes it clear that "Any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination."  If Roe's counsel decides to challenge ACN's ability to proceed against Roe without including his legal name, or if counsel argues that Roe did not execute the agreements attached to the Demand, those challenges must be brought before the arbitrator.

An "arbitrability" question is a dispute over whether an arbitration agreement "applies to the particular dispute." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, —— U.S. ——, 139 S. Ct. 524, 527, 202 L.Ed.2d 480 (2019). Under the Federal Arbitration Act (FAA) and Supreme Court cases, "the question of who decides arbitrability is itself a question of contract." *Id.* "The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id.* "[P]arties may delegate threshold arbitrability questions to *382 the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* at 530 (*quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

Here, the IBO Agreement explicitly incorporated the AAA Commercial Arbitration Rules, including Rule 7. Incorporation in this manner "serves as clear and unmistakable evidence of the parties' intent to delegate such issues [issues of arbitrability] to an arbitrator." *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005).  Rule 7 makes it clear that the arbitrator must decide all questions of jurisdiction.  Accordingly, this matter should be accepted for filing and should proceed.  Any objections raised by Roe should be decided by the arbitrator.

Finally, refusing to file this proceeding runs counter to the principles underlying arbitration and undermines the AAA's ability to arbitrate future disputes which are subject to arbitration agreements.  If filing is refused, any individual seeking to avoid arbitration could, as here, proceed under pseudonym in another forum.  So long as that individual's "real" name remains undisclosed, he or she would be able to avoid arbitration, or even a decision about the arbitrability of the claims. The AAA surely does not want to encourage this type of gamesmanship.  While the party seeking to arbitrate could go to court in an attempt to force disclosure of the "real" name, forcing a party entitled to arbitration to go to court runs afoul of the arbitration agreement and defeats the promise of a speedy and cost-effective resolution of disputes.



February 14, 2020
Page 4

Respectfully,

**Womble Bond Dickinson (US) LLP**

Mark P. Henriques

cc:      Roberta Kaplan, Esq. (via e-mail to rkaplan@kaplanhecker.com)
         Benjamin White, Esq.
         Joshua A. Matz, Esq.
         Emily C. Cole, Esq.
         Matthew J. Craig, Esq.
         David B. Berman, Esq.
         Katherine Rosenfeld, Esq.
         John Quinn, Esq.
         Matthew Brinckerhoff, Esq.
         Ogilvie Andrew F. Wilson, Esq.
         Andrew G. Celli, Esq.
         Nicholas Bourland, Esq.

# EXHIBIT 2

womblebonddickinson.com



WOMBLE
BOND
DICKINSON

**February 14, 2020**

By E-mail to : DaubertJ@adr.org

James Daubert
Case Filing Supervisor
American Arbitration Association
1101 Larel Oak Road
Voorhees, NY 08043

Re:    **ACN Opportunity, LLC v. Mary Moe / AAA Case: 01-20-00004733**

Dear Mr. Daubert:

Womble Bond Dickinson (US) LLP

One Wells Fargo Center
Suite 3500, 301 South College Street
Charlotte, NC 28202-6037

t:    704.331.4900
f:    704.331.4955

Mark P. Henriques
Partner
Direct Dial: 704-331-4912
Direct Fax: 704-338-7830
E-mail: Mark.Henriques@wbd-us.com

Thank you for your letter of February 13, 2020, to which this letter responds.    After receiving your letter, I spoke with Ryan Boyle, who asked that I write to share the details of this matter so that the AAA can re-assess whether to accept this filing.

This case involves highly unusual, perhaps unique, circumstances.    For the reasons set forth below, ACN Opportunity, LLC ("ACN") has complied with the AAA Rules, and we therefore respectfully request that the AAA proceed with filing these demands.    Any questions about the proper name to list for respondents, or the specific arbitration agreements that were executed, must be decided by an arbitrator under Rules 4(c) and 7.

ACN Complied with Rule 4(a)

Commencing an arbitration based on an existing arbitration agreement requires only three things: 1) filing a Demand for Arbitration, 2) paying the administrative filing fee, and 3) attaching a copy of the applicable arbitration agreement from the parties' contract.[1]    Because ACN complied with each of these requirements, the filing should proceed. **AAA Commercial Arbitration Rules, Rule 4(a).**

There is no dispute that ACN submitted a Demand for Arbitration and the appropriate filing fee.    Your letter suggests that "an agreement between the parties" was not provided.    The requirement under Rule 4 is that ACN attach a copy of the applicable arbitration agreement from the parties' contract. ACN did exactly this by attaching copies of the IBO Agreement forms in effect when Moe enrolled with and was an IBO with ACN based on Moe's own representations in a federal court pleading, which amounts to a judicial admission.    (Exhibits C, D, and E to the Demand for Arbitration) See also Demand for Arbitration (Exhibit 2) ¶¶14-21.    Each of these

---

[1] Notably requirement 3) does not require filing a copy of the parties' contract, only a copy of the arbitration agreement. This is consistent with the rule that a "written provision to settle by arbitration a controversy is valid, irrevocable, and enforceable without mention of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70, 130 S. Ct. 2772, 2778, 177 L. Ed. 2d 403 (2010).  ACN could have simply provided the relevant arbitration clause and satisfied this filing requirement.

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/legal notices for further details.



February 14, 2020
Page 2

Agreements contains within in it an agreement requiring arbitration under the AAA Commercial Arbitration Rules.  ACN's IBO enrollment process is electronic (i.e. online), and Moe could not have enrolled as an IBO with ACN without having agreed to these terms.  To the extent there remains a question as to whether this condition has been met, Rule 4(c) provides that "any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination." . . .

Indeed, in connection with a class action pending in the Southern District of New York, Mary Moe and the other respondents do not dispute they executed an IBO Agreement with an arbitration clause.  (See Demand for Arbitration, Exhibit B, pages 8-9).  Even if Moe were to now claim that she did not execute an IBO Agreement containing an arbitration agreement (which she has not done in the course of the federal proceeding), this issue must be resolved by the arbitrator, not administratively by the AAA.  **AAA Rules of Commercial Arbitration, Rule 7.** ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement").

ACN Complied with Rule 4(e)

The Demand for Arbitration filed with AAA against Mary Moe identifies her by the name she has chosen to proceed under in the federal action, as well as her place of residency, Pennsylvania.  Nothing in Rule 4(e) precludes the use of an alias name.  Moreover, the clear purposes of Rule 4(e) are to provide sufficient identifying information for the claim to proceed and for proper notice to be given, which purposes are satisfied here, as discussed further below.  ACN's Demand for Arbitration (Exhibit 2) is particularly detailed, incorporating all identifying information from the federal action, and provides a complete explanation of the highly unusual circumstances of this matter and the reason for identifying Ms. Moe by her own adopted alias name.  The Demand for Arbitration attached a copy of the Amended Complaint (Exhibit A) so that the arbitrator can reference the relevant allegations when deciding any question about jurisdiction.  ACN seeks relief regarding the subpoena in the SDNY Action, and the arbitrator can potentially enter an award against Mary Moe without knowing her "true" identity.  Because Mary Moe is the relevant name of respondent, ACN's Demand for Arbitration does name the respondent that ACN is seeking relief against, in full compliance with Rule 4(e).

There also can be no question as to proper notice.  Immediately upon filing the Demand, ACN served the Demand on Ms. Moe's numerous counsel of record in the federal action.  As reflected in a letter Ms. Moe's counsel submitted to the Court on February 11, 2020, which was filed on the public docket on February 12, 2020, Ms. Moe's attorneys have acknowledged that service.

ACN's Demand is Consistent with the Purpose of Rule 4(e)

The AAA requires parties to be identified because it is not in a position to issue abstract rulings involving unknown parties.  Since agreements to arbitrate are based on contract, there must be an identifiable individual.  Typically, "Jane Doe" respondents cannot be identified (for example an unknown driver of an unknown vehicle) and this filing may be properly denied.  However, in contrast to these cases, here Mary Moe is a *known* individual.  Not only do we know her name as she has asserted it, we know that she works in Pennsylvania at a national retail store. (Exhibit A, ¶258).  We know she signed up with ACN in 2013. (Exhibit A, ¶259).  Moe paid



February 14, 2020
Page 3

the $499 registration fee to became an IBO.  (Exhibit A, ¶269).  There is no dispute Moe executed a contract with an arbitration agreement (Demand for Arbitration, Exhibit B, pages 8-9).  Ms. Moe is not an unknown actor, but a known, identifiable individual who the SDNY court is allowing to proceed under a pseudonym for reasons unrelated to ACN.  Moe is represented by counsel who can and already has begun to represent her interests in this arbitration.  Because this matter involves a specific known individual represented by counsel, the AAA's traditional concerns about allowing a filing against unknown parties are inapplicable.  The bottom line is that Mary Moe is the Respondent's name and she is ***known***.

<u>Questions of Arbitrability Must Be Decided by the Arbitrator under Rules 4(c) and 7</u>

Your letter implies that including a party's "real" name is a condition precedent to filing an arbitration.  This is not what the rule requires.  It simply requires the name of each party.  As described above, ACN has provided the name used by Mary Moe herself.  However, even if this were still in dispute, AAA Commercial Rule 4(c) makes it clear that "Any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination."  If Moe's counsel decides to challenge ACN's ability to proceed against Moe without including her legal name, or if counsel argues that Moe did not execute the agreements attached to the Demand, those challenges must be brought before the arbitrator.

An "arbitrability" question is a dispute over whether an arbitration agreement "applies to the particular dispute." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, —— U.S. ——, 139 S. Ct. 524, 527, 202 L.Ed.2d 480 (2019). Under the Federal Arbitration Act (FAA) and Supreme Court cases, "the question of who decides arbitrability is itself a question of contract." *Id.* "The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id.* "[P]arties may delegate threshold arbitrability questions to *382 the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* at 530 (*quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

Here, the IBO Agreement explicitly incorporated the AAA Commercial Arbitration Rules, including Rule 7. Incorporation in this manner "serves as clear and unmistakable evidence of the parties' intent to delegate such issues [issues of arbitrability] to an arbitrator." *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005). Rule 7 makes it clear that the arbitrator must decide all questions of jurisdiction. Accordingly, this matter should be accepted for filing and should proceed. Any objections raised by Moe should be decided by the arbitrator.

Finally, refusing to file this proceeding runs counter to the principles underlying arbitration and undermines the AAA's ability to arbitrate future disputes which are subject to arbitration agreements.  If filing is refused, any individual seeking to avoid arbitration could, as here, proceed under pseudonym in another forum.  So long as that individual's "real" name remains undisclosed, he or she would be able to avoid arbitration, or even a decision about the arbitrability of the claims. The AAA surely does not want to encourage this type of gamesmanship.  While the party seeking to arbitrate could go to court in an attempt to force disclosure of the "real" name, forcing a party entitled to arbitration to go to court runs afoul of the arbitration agreement and defeats the promise of a speedy and cost-effective resolution of disputes.

February 14, 2020
Page 4

Respectfully,

**Womble Bond Dickinson (US) LLP**

Mark P. Henriques

cc:   Roberta Kaplan, Esq. (via e-mail to rkaplan@kaplanhecker.com)
      Benjamin White, Esq.
      Joshua A. Matz, Esq.
      Emily C. Cole, Esq.
      Matthew J. Craig, Esq.
      David B. Berman, Esq.
      Katherine Rosenfeld, Esq.
      John Quinn, Esq.
      Matthew Brinckerhoff, Esq.
      Ogilvie Andrew F. Wilson, Esq.
      Andrew G. Celli, Esq.
      Nicholas Bourland, Esq.

# EXHIBIT 3

womblebonddickinson.com



**WOMBLE BOND DICKINSON**

**February 14, 2020**

By E-mail to : DaubertJ@adr.org

James Daubert
Case Filing Supervisor
American Arbitration Association
1101 Larel Oak Road
Voorhees, NY 08043

Womble Bond Dickinson (US) LLP

One Wells Fargo Center
Suite 3500, 301 South College Street
Charlotte, NC 28202-6037

t:   704.331.4900
f:   704.331.4955

Re:    **ACN Opportunity, LLC v. Luke Loe / AAA Case: 01-20-00004735**

Mark P. Henriques
Partner
Direct Dial: 704-331-4912
Direct Fax: 704-338-7830
E-mail: Mark.Henriques@wbd-us.com

Dear Mr. Daubert:

Thank you for your letter of February 13, 2020, to which this letter responds.   After receiving your letter, I spoke with Ryan Boyle, who suggested I write to share the details of this matter so the AAA could re-assess whether to accept this filing.

This case involves highly unusual, perhaps unique, circumstances.   For the reasons set forth below, ACN Opportunity, LLC ("ACN") has complied with the AAA Rules, and we therefore respectfully request that the AAA proceed with filing these demands.   Any questions about the proper name to list for respondents, or the specific arbitration agreements that were executed, must be decided by an arbitrator under Rules 4(c) and 7.

ACN Complied with Rule 4(a)

Commencing an arbitration based on an existing arbitration agreement requires only three things: 1) filing a Demand for Arbitration, 2) paying the administrative filing fee, and 3) attaching a copy of the applicable arbitration agreement from the parties' contract.[1]  Because ACN complies with each of these requirements, the filing should proceed. **AAA Commercial Arbitration Rules, Rule 4(a).**

There is no dispute that ACN submitted a Demand for Arbitration and the appropriate filing fee.   Your letter suggests that "an agreement between the parties" was not provided.   The requirement under Rule 4 is that ACN attach a copy of the applicable arbitration agreement from the parties' contract. ACN did exactly this by attaching the IBO Agreement form in effect when Loe enrolled with and was an IBO with ACN based on Loe's own representations in a federal court pleading, which amounts to a judicial admission.  (Exhibit C to the Demand for Arbitration) See also Demand for Arbitration (Exhibit 2) ¶¶ 17-22.  This Agreement contains within it an

---

[1] Notably requirement 3) does not require filing a copy of the parties' contract, only a copy of the arbitration agreement. This is consistent with the rule that a "written provision to settle by arbitration a controversy is valid, irrevocable, and enforceable without mention of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70, 130 S. Ct. 2772, 2778, 177 L. Ed. 2d 403 (2010).  ACN could have simply provided the relevant arbitration clause and satisfied this filing requirement.

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/legal notices for further details.



February 14, 2020
Page 2

agreement requiring arbitration under the AAA Commercial Arbitration Rules.   ACN's IBO enrollment process is electronic (i.e. online), and Loe could not have enrolled as an IBO with ACN without having agreed to these terms.   To the extent there remains a question as to whether this condition has been met, Rule 4(c) provides that "any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination." . . .

Indeed, in connection with a class action pending in the Southern District of New York, Luke Loe and the other respondents do not dispute they executed an IBO Agreement with an arbitration clause.  (See Demand for Arbitration, Exhibit B, pages 8-9).  Even if Loe were to now claim that he did not execute an IBO Agreement containing an arbitration agreement (which he has not done in the course of the federal proceeding), this issue must be resolved by the arbitrator, not administratively by the AAA.  **AAA Rules of Commercial Arbitration, Rule 7.** ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement").

## ACN Complied with Rule 4(e)

The Demand for Arbitration filed with AAA against Luke Loe identifies him by the name he has chosen to proceed under in the federal action, as well as his place of residency, California. Nothing in Rule 4(e) precludes the use of an alias name.  Moreover, the clear purposes of Rule 4(e) are to provide sufficient identifying information for the claim to proceed and for proper notice to be given, which purposes are satisfied here, as discussed further below.  ACN's Demand for Arbitration (Exhibit 2) is particularly detailed, incorporating all identifying information from the federal action, and provides a complete explanation of the highly unusual circumstances of this matter and the reason for identifying Mr. Loe by his own adopted alias name.  The Demand for Arbitration attached a copy of the Amended Complaint (Exhibit A) so that the arbitrator can reference the relevant allegations when deciding any question about jurisdiction.  ACN seeks relief regarding the subpoena in the SDNY Action, and the arbitrator can potentially enter an award against Luke Loe without knowing his "true" identity.  Because Luke Loe is the relevant name of respondent, ACN's Demand for Arbitration does name the respondent that ACN is seeking relief against, in full compliance with Rule 4(e).

There also can be no question as to proper notice.  Immediately upon filing the Demand, ACN served the Demand on Mr. Loe's numerous counsel of record in the federal action.  As reflected in a letter Mr. Loe's counsel submitted to the Court on February 11, 2020, which was filed on the public docket on February 12, 2020, Mr. Loe's attorneys have acknowledged that service.

## ACN's Demand is Consistent with the Purpose of Rule 4(e)

The AAA requires parties to be identified because it is not in a position to issue abstract rulings involving unknown parties.  Since agreements to arbitrate are based on contract, there must be an identifiable individual.  Typically, "Jane Doe" respondents cannot be identified (for example an unknown driver of an unknown vehicle) and this filing may be properly denied. However, in contrast to these cases, here Luke Loe is a **_known_** individual.  Not only do we know his name as he has asserted it, we know that he heard about ACN while working for the Salvation Army. (Exhibit A, ¶220).  We know Loe borrowed the $499 fee to become an IBO.  (Exhibit A, ¶225).  There is no dispute Loe executed a contract with an arbitration agreement (Demand for



February 14, 2020
Page 3

Arbitration, Exhibit B, pages 8-9). Luke Loe is not an unknown actor, but a known, identifiable individual who the SDNY court is allowing to proceed under a pseudonym for reasons unrelated to ACN. Loe is represented by counsel who can and already has begun to represent his interests in this arbitration. Because this matter involves a specific known individual represented by counsel, the AAA's traditional concerns about allowing a filing against unknown parties are inapplicable. The bottom line is that Luke Loe is the Respondent's name and he is ***known***.

<u>Questions of Arbitrability Must Be Decided by the Arbitrator under Rules 4(c) and 7</u>

Your letter implies that including a party's "real" name is a condition precedent to filing an arbitration. This is not what the rule requires. It simply requires the name of each party. As described above, ACN has provided the name used by Luke Loe himself. However, even if this were still in dispute, AAA Commercial Rule 4(c) makes it clear that "Any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination." If Loe's counsel decides to challenge ACN's ability to proceed against Loe without including his legal name, or if counsel argues that Loe did not execute the agreements attached to the Demand, those challenges must be brought before the arbitrator.

An "arbitrability" question is a dispute over whether an arbitration agreement "applies to the particular dispute." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, —— U.S. ——, 139 S. Ct. 524, 527, 202 L.Ed.2d 480 (2019). Under the Federal Arbitration Act (FAA) and Supreme Court cases, "the question of who decides arbitrability is itself a question of contract." *Id.* "The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id.* "[P]arties may delegate threshold arbitrability questions to *382 the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* at 530 (*quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

Here, the IBO Agreement explicitly incorporated the AAA Commercial Arbitration Rules, including Rule 7. Incorporation in this manner "serves as clear and unmistakable evidence of the parties' intent to delegate such issues [issues of arbitrability] to an arbitrator." *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005). Rule 7 makes it clear that the arbitrator must decide all questions of jurisdiction. Accordingly, this matter should be accepted for filing and should proceed. Any objections raised by Loe should be decided by the arbitrator.

Finally, refusing to file this proceeding runs counter to the principles underlying arbitration and undermines the AAA's ability to arbitrate future disputes which are subject to arbitration agreements. If filing is refused, any individual seeking to avoid arbitration could, as here, proceed under pseudonym in another forum. So long as that individual's "real" name remains undisclosed, he or she would be able to avoid arbitration, or even a decision about the arbitrability of the claims. The AAA surely does not want to encourage this type of gamesmanship. While the party seeking to arbitrate could go to court in an attempt to force disclosure of the "real" name, forcing a party entitled to arbitration to go to court runs afoul of the arbitration agreement and defeats the promise of a speedy and cost-effective resolution of disputes.

February 14, 2020
Page 4

Respectfully,

**Womble Bond Dickinson (US) LLP**



Mark P. Henriques

cc:   Roberta Kaplan, Esq. (via e-mail to rkaplan@kaplanhecker.com)
      Benjamin White, Esq.
      Joshua A. Matz, Esq.
      Emily C. Cole, Esq.
      Matthew J. Craig, Esq.
      David B. Berman, Esq.
      Katherine Rosenfeld, Esq.
      John Quinn, Esq.
      Matthew Brinckerhoff, Esq.
      Ogilvie Andrew F. Wilson, Esq.
      Andrew G. Celli, Esq.
      Nicholas Bourland, Esq.

# EXHIBIT 4

womblebonddickinson.com



**February 14, 2020**

By E-mail to : DaubertJ@adr.org

James Daubert
Case Filing Supervisor
American Arbitration Association
1101 Larel Oak Road
Voorhees, NY 08043

Womble Bond Dickinson (US) LLP

One Wells Fargo Center
Suite 3500, 301 South College Street
Charlotte, NC 28202-6037

t:  704.331.4900
f:  704.331.4955

Re:     ACN Opportunity, LLC v. Jane Doe / AAA Case: 01-20-00004738

Mark P. Henriques
Partner
Direct Dial: 704-331-4912
Direct Fax: 704-338-7830
E-mail: Mark.Henriques@wbd-us.com

Dear Mr. Daubert:

Thank you for your letter of February 13, 2020, to which this letter responds.   After receiving your letter, I spoke with Ryan Boyle, who asked that I write to share the details of this matter so that the AAA can re-assess whether to accept this filing.

This case involves highly unusual, perhaps unique, circumstances.  For the reasons set forth below, ACN Opportunity, LLC ("ACN") has complied with the AAA Rules, and we therefore respectfully request that the AAA proceed with filing these demands.  Any questions about the proper name to list for respondents, or the specific arbitration agreements that were executed, must be decided by an arbitrator under Rules 4(c) and 7.

ACN Complied with Rule 4(a)

Commencing an arbitration based on an existing arbitration agreement requires only three things: 1) filing a Demand for Arbitration, 2) paying the administrative filing fee, and 3) attaching a copy of the applicable arbitration agreement from the parties' contract.[1]  Because ACN complies with each of these requirements, the filing should proceed. **AAA Commercial Arbitration Rules, Rule 4(a).**

There is no dispute that ACN submitted a Demand for Arbitration and the appropriate filing fee.  Your letter suggests that "an agreement between the parties" was not provided.  The requirement under Rule 4 is that ACN attach a copy of the applicable arbitration agreement from the parties' contract. ACN did exactly this by attaching copies of the IBO Agreement forms in effect when Doe enrolled with and was an IBO with ACN based on Doe's own representations in a federal court pleading, which amounts to a judicial admission.  (Exhibits C, D, and E to the Demand for Arbitration) See also Demand for Arbitration (Exhibit 2) ¶¶16-23.  Each of these

---

[1] Notably requirement 3) does not require filing a copy of the parties' contract, only a copy of the arbitration agreement. This is consistent with the rule that a "written provision to settle by arbitration a controversy is valid, irrevocable, and enforceable without mention of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70, 130 S. Ct. 2772, 2778, 177 L. Ed. 2d 403 (2010).  ACN could have simply provided the relevant arbitration clause and satisfied this filing requirement.

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/legal notices for further details.



February 14, 2020
Page 2

Agreements contains within in it an agreement requiring arbitration under the AAA Commercial Arbitration Rules. ACN's IBO enrollment process is electronic (i.e. online), and Doe could not have enrolled as an IBO with ACN without having agreed to these terms. To the extent there remains a question as to whether this condition has been met, Rule 4(c) provides that "any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination." . . .

Indeed, in connection with a class action pending in the Southern District of New York, Jane Doe and the other respondents do not dispute they executed an IBO Agreement with an arbitration clause. (See Demand for Arbitration, Exhibit B, pages 8-9). Even if Doe were to now claim that she did not execute an IBO Agreement containing an arbitration agreement (which she has not done in the course of the federal proceeding), this issue must be resolved by the arbitrator, not administratively by the AAA. **AAA Rules of Commercial Arbitration, Rule 7.** ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement").

ACN Complied with Rule 4(e)

The Demand for Arbitration filed with AAA against Jane Doe identifies her by the name she has chosen to proceed under in the federal action, as well as her place of residency, California. Nothing in Rule 4(e) precludes the use of an alias name. Moreover, the clear purposes of Rule 4(e) are to provide sufficient identifying information for the claim to proceed and for proper notice to be given, which purposes are satisfied here, as discussed further below. ACN's Demand for Arbitration (Exhibit 2) is particularly detailed, incorporating all identifying information from the federal action, and provides a complete explanation of the highly unusual circumstances of this matter and the reason for identifying Ms. Doe by her own adopted alias name. The Demand for Arbitration attached a copy of the Amended Complaint (Exhibit A) so that the arbitrator can reference the relevant allegations when deciding any question about jurisdiction. ACN seeks relief regarding the subpoena in the SDNY Action, and the arbitrator can potentially enter an award against Jane Doe without knowing her "true" identity. Because Jane Doe is the relevant name of respondent, ACN's Demand for Arbitration does name the respondent that ACN is seeking relief against, in full compliance with Rule 4(e).

There also can be no question as to proper notice. Immediately upon filing the Demand, ACN served the Demand on Ms. Doe's numerous counsel of record in the federal action. As reflected in a letter Ms. Doe's counsel submitted to the Court on February 11, 2020, which was filed on the public docket on February 12, 2020, Ms. Doe's attorneys have acknowledged that service.

ACN's Demand is Consistent with the Purpose of Rule 4(e)

The AAA requires parties to be identified because it is not in a position to issue abstract rulings involving unknown parties. Since agreements to arbitrate are based on contract, there must be an identifiable individual. Typically, "Jane Doe" respondents cannot be identified (for example an unknown driver of an unknown vehicle) and this filing may be properly denied. However, in contrast to these cases, here Jane Doe is a **known** individual. Not only do we know her name as she has asserted it, we know that she works in California as a hospice caregiver. (Exhibit A, ¶181). We know she wrote a check for $499 and became an IBO. (Exhibit A, ¶196).



February 14, 2020
Page 3

There is no dispute Doe executed a contract with an arbitration agreement (Demand for Arbitration, Exhibit B, pages 8-9).  Ms. Doe is not an unknown actor, but a known, identifiable individual who the SDNY court is allowing to proceed under a pseudonym for reasons unrelated to ACN.  Doe is represented by counsel who can and already has begun to represent her interests in this arbitration.  Because this matter involves a specific known individual represented by counsel, the AAA's traditional concerns about allowing a filing against unknown parties are inapplicable.  The bottom line is that Jane Doe is the Respondent's name and she is **_known_**.

Questions of Arbitrability Must Be Decided by the Arbitrator under Rules 4(c) and 7

Your letter implies that including a party's "real" name is a condition precedent to filing an arbitration.  This is not what the rule requires.  It simply requires the name of each party.  As described above, ACN has provided the name used by Jane Doe herself.  However, even if this were still in dispute, AAA Commercial Rule 4(c) makes it clear that "Any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination."  If Doe's counsel decides to challenge ACN's ability to proceed against Doe without including her legal name, or if counsel argues that Doe did not execute the agreements attached to the Demand, those challenges must be brought before the arbitrator.

An "arbitrability" question is a dispute over whether an arbitration agreement "applies to the particular dispute." _Henry Schein, Inc. v. Archer & White Sales, Inc._, —— U.S. ——, 139 S. Ct. 524, 527, 202 L.Ed.2d 480 (2019).  Under the Federal Arbitration Act (FAA) and Supreme Court cases, "the question of who decides arbitrability is itself a question of contract." _Id._ "The Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." _Id._ "[P]arties may delegate threshold arbitrability questions to *382 the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." _Id._ at 530 (_quoting First Options of Chicago, Inc. v. Kaplan_, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

Here, the IBO Agreement explicitly incorporated the AAA Commercial Arbitration Rules, including Rule 7.  Incorporation in this manner "serves as clear and unmistakable evidence of the parties' intent to delegate such issues [issues of arbitrability] to an arbitrator." _Contec Corp. v. Remote Solution Co._, 398 F.3d 205, 208 (2d Cir. 2005).  Rule 7 makes it clear that the arbitrator must decide all questions of jurisdiction.  Accordingly, this matter should be accepted for filing and should proceed.  Any objections raised by Doe should be decided by the arbitrator.

Finally, refusing to file this proceeding runs counter to the principles underlying arbitration and undermines the AAA's ability to arbitrate future disputes which are subject to arbitration agreements.  If filing is refused, any individual seeking to avoid arbitration could, as here, proceed under pseudonym in another forum.  So long as that individual's "real" name remains undisclosed, he or she would be able to avoid arbitration, or even a decision about the arbitrability of the claims. The AAA surely does not want to encourage this type of gamesmanship.  While the party seeking to arbitrate could go to court in an attempt to force disclosure of the "real" name, forcing a party entitled to arbitration to go to court runs afoul of the arbitration agreement and defeats the promise of a speedy and cost-effective resolution of disputes.

February 14, 2020
Page 4

Respectfully,

**Womble Bond Dickinson (US) LLP**

Mark P. Henriques

cc:   Roberta Kaplan, Esq. (via e-mail to rkaplan@kaplanhecker.com)
      Benjamin White, Esq.
      Joshua A. Matz, Esq.
      Emily C. Cole, Esq.
      Matthew J. Craig, Esq.
      David B. Berman, Esq.
      Katherine Rosenfeld, Esq.
      John Quinn, Esq.
      Matthew Brinckerhoff, Esq.
      Ogilvie Andrew F. Wilson, Esq.
      Andrew G. Celli, Esq.
      Nicholas Bourland, Esq.