**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, LUKE DOE, RICHARD ROE, and MARY MOE, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs.*<br><br>*v.*<br><br>THE TRUMP CORPORATION, DONALD J. TRUMP, in his personal capacity, DONALD TRUMP JR., ERIC TRUMP, and IVANKA TRUMP,<br><br>*Defendants.* | No. 18 Civ. 9936 (LGS) |

**DECLARATION OF JESSICA STEBBINS BINA IN SUPPORT OF NONPARTIES JMBP, LLC AND METRO-GOLDWYN-MAYER STUDIOS INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

I, Jessica Stebbins Bina, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am an attorney at Latham & Watkins LLP, attorneys for nonparties JMBP, LLC ("JMBP") and Metro-Goldwyn-Mayer Studios Inc. ("MGM"), over eighteen years of age, and am competent to testify herein.  I make this declaration in support of JMBP and MGM's opposition to plaintiffs' motion to compel.  The facts set forth below are based on my personal knowledge, including knowledge gained through my review of and familiarity with files and documents in this matter.  If called as a witness, I could and would competently and truthfully testify to these matters.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of an email dated July 7, 2008, produced by JMBP to plaintiffs bearing the production number JMBP00000001.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of an email (with attachments omitted), dated September 11, 2008, produced by JMBP to plaintiffs bearing the production number JMBP00000274.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of an email chain, containing two emails both dated October 10, 2008, produced by JMBP to plaintiffs bearing the production number JMBP00000434.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of a press release relating to El Pollo Loco's appearance on *The Apprentice: Los Angeles*, and a press release relating to SolesUnited's appearance on *The Celebrity Apprentice*, produced by JMBP to plaintiffs bearing the production number JMBP00000560-62.

6.      Attached hereto as **Exhibit 5** is a true and correct copy of an email chain, containing three emails dated February 16, 2009 and February 18, 2009, produced by JMBP to plaintiffs bearing the production number JMBP00000730.

7.      Attached hereto as **Exhibit 6** is a true and correct copy of an email chain containing four emails, dated July 10, 2010, July 12, 2010, and July 16, 2010, produced by JMBP to plaintiffs bearing the production number JMBP00001360.

8.      Attached hereto as **Exhibit 7** is a true and correct copy of an email chain containing two emails, dated October 13, 2010, produced by JMBP to plaintiffs bearing the production number JMBP00002081.

9.      Attached hereto as **Exhibit 8** is a true and correct copy of an email chain containing two emails dated October 25, 2010, produced by JMBP to plaintiffs bearing the production number JMBP00002131.

10.    Additionally, counsel for JMBP provided several written explanations to answers plaintiffs' other requests.  Attached hereto as **Exhibit 9** is a true and correct copy of the November 22, 2019 letter counsel for JMBP and MGM sent to counsel for plaintiffs containing these explanations.

I declare under penalty of perjury that the foregoing is true and correct.

Date: February 21, 2020                    /s/ Jessica Stebbins Bina
Los Angeles, California                    Jessica Stebbins Bina

EXHIBIT 1

| | |
|---|---|
| **From:** | DolphinEnt@aol.com |
| **To:** | Page Feldman |
| **CC:** | rgraff@trumporg.com |
| **Sent:** | 7/7/2008 11:59:46 AM |
| **Subject:** | Anne Archer regarding The Apprentice and ACN |
| **Attachments:** | ACNCorpProfile_07018.pdf |

Dear Page,

Thanks for the great talk last week. I appreciate the overview you gave me and agree that this looks like an excellent opportunity for ACN.

Attached, please find a corporate profile of ACN.  I am happy to answer any other questions you may have about the company or send additional information.

I spoke with Rhona this morning about our conversation and the corporate fee for the segment. ACN is offering to pay  Hopefully we can negotiate something in that range.

The dates you mentioned for a creative meeting around July 22 should work just fine.

Thanks again and I look forward to working with you on this project.

Best wishes,

*Anne*

Anne Archer
704-658-0342

CC
Rhona Graff
Vice President
Assistant to the President
The Trump Organization

---

Gas prices getting you down? Search AOL Autos for fuel-efficient <u>used cars</u>.

Confidential Information Governed by Protective Order

# EXHIBIT 2

| From: | Libby Greenberg <lgreenberg@jinslaw.com> on behalf of Andrew M. Schauer |
|---|---|
| To: | Keith U. Kuder; abuhler@acninc.com; Anne Archer; Eric Cowan |
| CC: | Page Feldman; Sadoux Kim |
| BCC: | sadoux kim |
| Sent: | 9/11/2008 10:22:39 AM |
| Subject: | ACN Task Agreement |
| Attachments: | APPRENTICE 8 TASK AGREEMENT 091108 .pdf; REDLINED_APPRENTICE 8 TASK AGREEMENT 091008 (PM)-APPRENTICE 8 TASK AGREEMENT 091108.pdf |

Message from Andy Schauer.

Please see the final edits to the Task Agreement based on Andy's conversation with Alan.   Please sign and fax the signature page to us at 720-889-2222.  Also, please send five (5) original executed signature pages to us by Federal Express, overnight mail.  As discussed, you will receive an invoice for the Task Assistant Fee.  Please contact Andy with any questions.

Andrew M. Schauer



direct 720-889-2214 • aschauer@jinslaw.com
main 720-889-2211 • fax 720-889-2222
600 Seventeenth Street • Suite 2700 South Tower
Denver, Colorado 80202

This electronic message transmission contains information from the law firm of Jin & Schauer L.L.C. which may be confidential or privileged.  The information is intended to be for the use of the individual or entity named above.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited.

If you have received this electronic transmission in error, please notify us by e-mail by replying to this e-mail or at info@jinslaw.com, by phone at 720-889-2211, or via facsimile at 720-889-2222.

EXHIBIT 3

**From:** George Sealey <gsealey@markburnettprod.com>
**To:** Tom Ruff; DolphinEnt@aol.com; Allan van Buhler
**CC:** Lisa Krass; Sadoux Kim; Syd Leier
**BCC:** sadoux kim
**Sent:** 10/10/2008 4:18:59 PM
**Subject:** Re: Debrief Time Change

Hi Anne,

We're very sorry for the late notice, but we had no choice in the matter.   Mr. Trump has an engagement that cannot be changed. Thank you for your help in making this happen.

Best,

George

--
George Sealey
Supervising Producer
Apprentice 8
Mark Burnett Productions
725 5th Avenue, 5th Floor
NY, NY 10022
212.872.1333 NY Office
310.903.5676 Office

On 10/10/08 7:09 PM, "Tom Ruff"                            > wrote:

Hi Anne,
FYI, due to a scheduling conflict with Donald on Tuesday evening, we have had to move our boardroom from 7pm to 4pm, which means that his on camera debrief with Tony and Greg at Trump Tower has to now take place at 330pm, with a 3pm call time.  I apologize for the inconvenience; unfortunately this is necessary due to his schedule.
Thanks,
Tom

Tom Ruff
Task Producer
"The Celebrity Apprentice"
o 212.872.1333 x146

# EXHIBIT 4

**FINAL (1/3/07)**

Contacts: Julie Weeks, El Pollo Loco, ██████████████    ████
               Lauren Boukas, Fishman Public Relations, ████████████████████████

## FOR IMMEDIATE RELEASE

### El Pollo Loco is Newest 'Recruit' on NBC's *The Apprentice: Los Angeles*
### *Prime-Time TV Appearance to Fuel Grilled Chicken Leader's National Expansion;*
### *Segment Airs Sunday, January 28, 2007 from 9:00 – 10:00 p.m. PT/ET*

**IRVINE, CA –**  (January X, 2007)  El Pollo Loco, the nation's leading grilled chicken franchise, will get a major boost of exposure as a featured brand on season six of NBC-TV's hit reality show, *The Apprentice: Los Angeles*.   When El Pollo Loco CEO Steve Carley steps into "The Donald's" shoes atop a hill overlooking Los Angeles, it will mark the first time in the show's six-season history that someone other than Mr. Trump delivers the all-important task to contestants.

"It's a great time for El Pollo Loco.  We are experiencing continued strong growth in our existing markets and great momentum with our national franchise expansion, so when the show's producers approached us to participate in this popular national reality series, the timing could not have been more perfect," said Carley.  "Our visibility on *The Apprentice: Los Angeles* will heighten awareness of our brand in both new and existing El Pollo Loco markets, as well as ignite excitement in regions we are exploring as part of our national expansion."  Carley noted that El Pollo Loco recently inked a series of multi-unit development agreements for 61 new restaurants in new markets outside its core West Coast base.

El Pollo Loco will be featured on episode four of the highly-anticipated sixth season, *The Apprentice: Los Angeles.*  Set to air on Sunday, January 28, 2007 from 9:00 – 10:00 p.m. PT/ET, the segment will feature two teams of ambitious contestants as they roll up their sleeves at two Los Angeles-area El Pollo Loco restaurants.  Trying not to ruffle the feathers of fellow team members, contestants test their culinary aptitude as they create, market and sell their own version of El Pollo Loco's signature Pollo Bowl®.  El Pollo Loco's Original Pollo Bowl®, a longtime customer favorite, combines plenty of the chain's famous citrus-marinated, flame-grilled chicken breast with pinto beans, rice, cilantro, onion and Pico de Gallo.

To provide El Pollo Loco fans their own apprentice opportunity, beginning January 28 and continuing through February 11, the chain will host a mock online version of *The Apprentice:*

--more--

JMBP00000560

*Los Angeles* task with an enter-to-win "Create Your Own Pollo Bowl®" contest on the El Pollo Loco website at www.elpolloloco.com.  All who enter will receive a coupon toward their next purchase of the Original Pollo Bowl® at any of El Pollo Loco's 359 locations nationwide.  The winner will receive tickets to *The Apprentice: Los Angeles* live season finale.

Joining Carley on the show and as an advisor to Mr. Trump is El Pollo Loco's Chief Marketing Officer Karen Eadon.

No stranger to national reality television, El Pollo Loco was also featured earlier this year on NBC's *The Biggest Loser* in a segment where trainers coached contestants on how they can dine out healthfully and still enjoy food that's fresh and delicious.

Founded in Guasave, Mexico in 1975, El Pollo Loco, pronounced "L Po-yo Lo-co," is famous for the unique preparation of its award-winning "pollo"-- fresh chicken marinated in a special recipe of herbs, spices and citrus juices passed down from the founding family.  The marinated chicken is then flame-grilled, hand cut and served hot off the grill with warm tortillas, freshly prepared salsas, and a wide assortment of side dishes.  Rounding out the menu are fresh flavorful entrées inspired by the kitchens of Mexico, including signature grilled burritos, The Original Pollo Bowl®, Pollo Salads, Tacos al Carbon, quesadillas, and more.

**About El Pollo Loco**

El Pollo Loco currently operates 359 restaurants (208 franchised locations and 151 company-owned restaurants) located in California, Arizona, Nevada, Texas, Colorado, Illinois and Connecticut. Headquartered in Irvine, California, El Pollo Loco, Inc. is a privately held company owned by Trimaran Capital Partners and company management.  For more information about El Pollo Loco, visit the company's website at www.elpolloloco.com.

This news release contains forward-looking statements about, among other items, the sales, revenues, products, consumer acceptance, growth rates and growth and franchising potential of El Pollo Loco, Inc. The statements reflect management's current expectations regarding future events.  Risk factors that could cause actual results to differ materially from those expressed in the forward-looking statements include, but are not limited to, food-borne-illness incidents; increases in the cost of chicken; our dependence upon frequent deliveries of food and other supplies; our vulnerability to changes in consumer preferences and economic conditions; our ability to compete successfully with other quick service and fast casual restaurants; our ability to expand into new markets; our reliance in part on our franchises; our ability to support our expanding franchise system; and the possibility of unforeseen events affecting the industry in general.  Statements about El Pollo Loco, Inc.'s past performance are not necessarily indicative of its future results.  El Pollo Loco, Inc. undertakes no obligation to publicly update or revise any forward-looking statement, whether as the result of new information, future events or otherwise.

This information is not offered or disclosed in connection with an offer to sell or the solicitation of any offer to buy any franchise.  Any such offer or solicitation is made only through our offering circular and only in jurisdictions where such offers are lawful.

###

Confidential Information Governed by Protective Order



# wear a pair. shair a pair

there are more than one billion people worldwide that are living in extreme poverty and that don't have access to the most basic of necessities, including clothing and shoes.  we invite you to join crocs, inc. in launching SolesUnited℠, the first-of-its-kind recycled footwear donation program, dedicated to providing new recycled shoes to people in need around the world.



as crocs™ shoes customers, we encourage you to be some of the first people to participate in SolesUnited℠ and to make the commitment to return your crocs™ shoes when they've reached their end of life so that the croslite™ material can be recycled into new footwear for donation. to make this pledge today, to locate the closest authorized crocs™ shoes collection center, and to obtain more information about this humanitarian initiative, go to www.SolesUnited.com.

crocs, inc. has teamed up with "the celebrity apprentice" to raise awareness of the SolesUnited℠ program – tune in to nbc tonight to see this special episode!

**when:** today, thursday, january 31st, 2008
**where:** NBC
**time:** 9/8c



THURSDAYS 9/8c 📺 NBC



The Celebrity Apprentice and related logos TM and © JMBP, Inc. All Rights Reserved.

# EXHIBIT 5

| | |
|---|---|
| **From:** | Tyre, Jenna (NBC Universal) <jenna.tyre@nbcuni.com> |
| **To:** | Sheila Marcello; Sadoux Kim |
| **BCC:** | sadoux kim |
| **Sent:** | 2/18/2009 7:13:50 PM |
| **Subject:** | RE: Rep magazine for approval |

Sheila,

The cover is approved. With regards to the inside spread, we will have an updated photo/ad for you to use - I'm hoping to get this to you tomorrow. In addition, our Legal team would like to request that the ACN logo not be so prominent in the photo of the cast - should be smaller and placed differently so as not to imply endorsement, etc.

Let me know if that is okay and I will send you new assets when I receive them.

Thanks,
Jenna

---

**From:** Sheila Marcello [mailto:smarcell@acninc.com]
**Sent:** Monday, February 16, 2009 12:19 PM
**To:** Tyre, Jenna (NBC Universal); Sadoux@markburnettprod.com
**Subject:** FW: Rep magazine for approval

Last email today – I promise!

Here is our Newsmagazine cover and the inside spread.  The inside spread is your celebrity apprentice shot you sent us. This magazine is sold at our events to our representatives.

Thank you very much for your help.

Sheila Marcello

---

**From:** Monica Hancock
**Sent:** Monday, February 16, 2009 3:08 PM
**To:** Sheila Marcello
**Subject:** <no subject>

Monica L. Hancock
Multimedia Producer

ACN, Inc.
1000 Progress Place
Concord, NC 28025
P.  704.260.3327
E.  mhancock@acninc.com

P think green.
please recycle and consider the environment before printing this e-mail

Confidential Information Governed by Protective Order

EXHIBIT 6

| | |
|---|---|
| **From:** | Sadoux Kim <SKim@markburnettprod.com> |
| **To:** | Anne Archer |
| **Sent:** | 7/16/2010 10:21:42 AM |
| **Subject:** | Re: Anne about ACN |

Anne, finale has pretty much been spoken for (contract went out yesterday). If A.C.N. were to do this, we can only have two (2) executives on the show; just like last time.

Kauai is great! I hope that we can work on this together again :-)

Aloha,

Sadoux

On 7/16/10 6:19 AM, "Anne Archer Butcher" <dolphinent@aol.com> wrote:

Talked to Robert. They want to know if the finale is still open...trying to make decision today...
Could Robert and the twins all three be on the show...or only two?
How's the beach???

-----Original Message-----
From: Sadoux Kim <sadoux@markburnettprod.com>
To: Anne Archer <dolphinent@aol.com>
Sent: Mon, Jul 12, 2010 5:23 am
Subject: Re: Anne about ACN

Hey Anne,

I'm heading to Hawaii tomorrow morning, but I'll have access to e-mail :-)

I've attached the PDF deck for next season.

With respect to what is on the table, we can offer A.C.N. a task, which is priced @ ███████ for The Celebrity Apprentice, which tapes in mid-October thru mid-December; these episodes will air late February thru late May 2010, Sunday nights. The other brands that are vying for The Finale episode need a final decision by tomorrow/Tuesday and that price point is ████████ and I can't hold them much longer as they have a lot to prepare as well.

Let me know...would love to feature the "new" technology on the show!

Sadoux

P.S. Please confirm receipt of this e-mail, due to its size.


On 7/10/10 3:47 AM, "Anne Archer Butcher" <dolphinent@aol.com> wrote:

Hey, there! The guys return from various parts of the world on Monday and *we meet on Tuesday*...I know you are on vacation around that time...so just send me the offers again and I will let you know their decision asap. OK?

Thanks and have fun!

Anne

Anne Archer Butcher
111 Spartina Court
Mooresville, NC 28117
704-658-0342
████████████
704-658-0354 fax

JMBP00001360

# EXHIBIT 7

| | |
|---|---|
| **From:** | Sadoux Kim <SKim@markburnettprod.com> |
| **To:** | Katie Mapel |
| **Sent:** | 10/13/2010 8:40:44 AM |
| **Subject:** | Re: Follow up questions |

30 second traditional commercial spots

We (production) have a policy of not releasing the list of celebrities.

On 10/13/10 11:39 AM, "Katie Mapel" <kmapel@acninc.com> wrote:

Sadoux, thanks for your time on the call today.  We are working on revised scripting now and will send over shortly.  In the meantime, do you have a feel for how long the commercials the celebrities are creating should be?  What is a good length for TV, but also long enough to ensure we get a good message?  Secondly, are you able to release the list of celebrities to us yet?  Thanks!

Katie Mapel
ACN, Inc
Senior Marketing Manager
704-260-3491 (direct)
███████████
www.acninc.com <http://www.acninc.com>

1000 Progress Place
Concord, NC 28025

Confidential Information Governed by Protective Order

EXHIBIT 8

| | |
|---|---|
| **From:** | Eric Barron ▮▮▮▮▮▮▮▮ |
| **To:** | Lisa Krass; Sadoux Kim |
| **CC:** | Nakia Williams |
| **BCC:** | Sadoux Kim |
| **Sent:** | 10/25/2010 3:37:25 PM |
| **Subject:** | Re: Updates |

Hi Lisa,

It looks like the executive brief will happen on Thursday at 4p at Trump Tower.

Eric

Eric Barron | Task Producer | NBC "Celebrity Apprentice"
o: 212-754-6000 x107 | ▮: ▮▮▮▮▮▮1 | f: 212-754-6011
MBP | 725 Fifth Ave. 5th Floor | NY, NY 10022

---

**From:** Lisa Krass <lkrass@acninc.com>
**To:** Eric Barron ▮▮▮▮▮▮▮▮
**Sent:** Mon, October 25, 2010 11:01:27 AM
**Subject:** Updates

Good morning,

Hope you had a great weekend!

Just wondering if you got the details regarding the location of the "task delivery"? Hopefully not on the roof terrace since it's supposed to rain on Wed. J

Also, is Tuesday's meeting at 4pm or 5pm?

When and where is dinner on Wednesday?

Will there be an "on-camera executive debrief" on Thursday? If so, when and where?

I think that is it. We're almost there! Looking forward to it! Make sure to order up some great weather for us!

See you soon!

Lisa

*Lisa Krass, CMP*
Global Director, Event Planning
ACN, Inc.

1000 Progress Place
Concord, NC 28025

▮▮▮▮▮▮▮▮

EXHIBIT 9

LATHAM&WATKINS LLP

10250 Constellation Blvd., Suite 1100
Los Angeles, California  90067
Tel: +1.424.653.5500  Fax: +1.424.653.5501
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

November 22, 2019

**BY EMAIL**

John C. Quinn
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118

> Re:    *Jane Doe, et al. v. The Trump Corporation*, 18 cv 9936 (LGS) Subpoena
> Duces Tecum to MGM and JMBP

Dear John:

We write on behalf of nonparties Metro-Goldwyn-Mayer Studios, Inc. ("MGM") and JMBP, LLC ("JMBP"), in response to your letter dated November 5, 2019, and as discussed on our call last week.

As you know, JMBP—the custodian of the documents you seek—has already produced nearly 4,000 pages in response to your requests.  We have been incredibly forthcoming with production in this matter and we remain open to discussing our remaining points of disagreement in the future.  However, JMBP maintains that some of your requests are overbroad and lack relevance to your client's claims, and create an undue burden on JMBP, a nonparty to this action. As these requests are not proportional to the needs of the case, the materials have been properly withheld under Fed. R. Civ. P. 26(b).

We respond to the points in your letter as follows:

<u>Relevance and Overbreadth</u>.  While it is true that you are entitled to discovery on nonprivileged matters "relevant to any party's claim or defense and proportional to the needs of the case," Fed R. Civ. P. 26(b)(1), we disagree with your contention that your requests were limited to such information.  The complaint brings causes of action against Mr. Trump (as well as members of his family and his companies) for allegedly fraudulently endorsing several companies.  One of those companies, ACN, appeared on just *two* episodes of *The Celebrity Apprentice*, a television show, that with its companion show *The Apprentice*, ran for 16 seasons (14 seasons with Mr. Trump).  Yet, your subpoena inexplicably requests information that extends far beyond those two episodes, for example requesting "all communications between MGM and Trump or the Trump Entities," and documents related to Trump's editorial control over all episodes of *The Apprentice* and *The Celebrity Apprentice*.  Your letter suggests that these

LATHAM&WATKINS LLP

sweeping requests are relevant simply because the complaint contains various statements about
*The Celebrity Apprentice,* including plaintiffs' view that it was "a transparent form of product
placement" and that episodes were "heavily edited and scripted to create false impressions."
(Letter at 2.) However, your clients' claims are specifically related to Mr. Trump's endorsement
of *ACN,* not any other company featured on the show, and information related to episodes
beyond the two featuring ACN have no conceivable relevance to your clients' claims.  The
inclusion of statements in your complaint that are irrelevant to the actual causes of action alleged
certainly do not justify sweeping requests for more than a decade's worth of information—
particularly when these requests are directed at a nonparty.  Moreover, your request did not
distinguish between communications sent between MGM, the current indirect corporate parent of
JMBP, and JMBP, the rightsholder and custodian.

As you have since narrowed most of your overbroad requests, we respond to any
remaining relevancy concerns in our specific responses below.

Expense of Production.  Respectfully, plaintiffs' offer to pay the expenses associated with
your request to review *Celebrity Apprentice* raw footage does not moot JMBP's burden
objection.  (Letter at 3.)  In addition to financial expense, and as detailed further below, the
search for, and production of, various documents or footage requested would create an undue
burden on JMBP and its employees, as it would require the diversion of staff resources to extend
considerable time, energy, and resources searching for and reviewing such materials.  The show
aired many years ago.  Neither emails nor footage is stored in a way that is easy to access,
search, or display.  Your financial payments will not reimburse JMBP for the substantial
inconvenience and loss of productivity such a search would cause, and thus the burden objection
remains wholly valid.  *See Nova Biomedical Corp. v. i-STAT Corp.,* 182 F.R.D. 419, 423 (1998)
("status as a non-party entitled him to 'consideration regarding expense *and inconvenience.*")
(emphasis added).

Custody and Control.   As discussed, all the documents you request are solely in the
custody and/or control of JMBP.  However, we note that we have not withheld any otherwise
relevant documents on this basis.

Confidential Information.  We understand that there is a protective order in place, and
produced documents accordingly.  We have not withheld any otherwise relevant documents on
this basis.  However, we reiterate our statement above that JMBP disagrees that *Apprentice*
materials that do not relate to ACN are relevant or discoverable in this matter.

Requests 1 and 3 to MGM; Request 1 to JMBP.  We confirm that we produced all
documents relating to this inquiry, that JMBP was able to locate after a reasonable search, dated
between 2008 and 2013.

Requests 2, 4, 5, 6, 7 to MGM; Requests 2, 3 to JMBP.  We understand that Plaintiffs
have narrowed the topics for these requests.  We respond to each of the revised requests as
follows:

1. Plaintiffs request Documents concerning the exclusive access to the live finale of *The
   Celebrity Apprentice* granted to four ACN representatives in February 2015.  JMBP

LATHAM&WATKINS LLP

will produce non-privileged documents concerning access by four ACN representatives to the live finale, to the extent such documents exist and can be located after a reasonable search.

2. <u>Plaintiffs request Documents sufficient to show how brands were selected to appear on *The Celebrity Apprentice*</u>.  It is not apparent when precise types of documents you seek with this request, and, in particular, what would qualify as "sufficient to show." The documents JMBP has already produced are sufficient to show how ACN was selected for *The Celebrity Apprentice*, which would appear to be the limit of relevance for this issue.  The following paragraph summarizes the principal ways in which task partners were selected for the relevant seasons of *The Celebrity Apprentice*.

Task partners were generally selected for The Celebrity Apprentice in one of three ways.  The first way would be through various large advertising agencies, who worked with show producers and communicated instances when clients of the agencies were interested in appearing on the show.  A second way would be when task partners were recommended or introduced through Mr. Trump or his agents.  In either of the foregoing instances, the task partner would ultimately only be chosen to appear on the show if an appropriate creative task could be devised by the show's creative team to work with the task partners' product or brand, and if a mutually agreeable contract could be entered.  The third way of selecting a task partner would occur when the show's creative team devised a task, but lacked an appropriate partner; in those instances, a person from the show's production would contact companies offering the kind of product appropriate for the task, with the goal of engaging the company for the particular task.  In addition to these three ways, the show's network, NBC, would occasionally suggest task partners, who would then be evaluated through the normal intake process.

3. <u>Plaintiffs request Documents sufficient to show how ACN was selected to appear on *The Celebrity Apprentice*</u>.  JMBP has already provided documents sufficient to show how ACN was selected.

<u>Request 8 to MGM; Request 4 to JMBP</u>.  As discussed on the call, this request poses a considerable burden to nonparty JMBP.  While we understand that you are willing to cover all monetary costs, this is only one element of the burden the production of these videos would have on our client.  Accessing, identifying, and producing the requested footage will require a considerable effort.  The raw footage is voluminous, and stored in obsolete formats that will require equipment rental even to review.  JMBP would need to either pull personnel from their daily tasks or retain and pay outside legal counsel to review hundreds of hours of footage to identify tapes that are potentially responsive to your request.  Additionally, after responsive tapes are identified, these tapes would need to be viewed by Plaintiffs' counsel in a secure viewing room on the premises of MGM, with JMBP personnel and counsel in attendance.  The diversion of personnel and resources for such a lengthy time creates a undue hardship on nonparty JMBP, and is alone reason for this request to be quashed.  *See, e.g. Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 53 (1996) (finding subpoena on nonparty unduly burdensome in part

3

LATHAM&WATKINS LLP

because it would "subject numerous [nonparty] employees and managers in several branch offices to countless hours of research, analysis, and compilation").

Furthermore, the substantial burden is particularly not proportional to the needs of the case as the requested footage is *at best* tangentially related to your claims.  The crux of the Amended Complaint appears to be that the Trump Enterprise fraudulently endorsed and promoted ACN, which led class members to invest in the company.  These allegations relate to *public* representations by the Trump Enterprise that were relied on by the class members.  As the footage that sought was never viewed by any class member, it necessarily had no bearing on any member's decision to invest in ACN.

Instead, you claim that the footage is relevant because it is bears on "the falsity of Defendants' statements about ACN and the nature of their relationship with the company, as well as Defendants' knowledge that those statements were false."  (Letter at 2.)  But this claim does not make sense.  Footage of ACN executives on set preparing for filming does not bear on the truth or falsity of Defendants' statements or Defendants' knowledge.  While you have speculated on our meet and confer calls that perhaps there is footage that might show Mr. Trump interacting somehow in a culpable way with ACN representatives, this is rank speculation unsupported by any specific evidence that such footage exists.  To the contrary, the structure and typical format of the show makes it a virtual certainty that such footage does not exist.  Mr. Trump was typically filmed with task partners in only two instances: (1) at the beginning of an episode when introducing the task; and occasionally (2) outside the boardroom when discussing the casts' performance of the task with the task partners.  The task partners were not otherwise present with Mr. Trump on set, and would not have been filmed together.  Furthermore, the documents produced to date demonstrate that ACN executives interacted in a normal, professional fashion with *The Celebrity Apprentice* production staff, and there is simply no basis for your speculation that the footage contains information helpful to plaintiffs' case.

Finally, the burden on JMBP in reviewing the footage is unjustified because information about whether Mr. Trump knowingly made false statements about ACN, on *The Celebrity Apprentice* or otherwise, can be acquired through far less invasive means, including from Defendants.  Considering the burden this request places on a nonparty, the remote unsubstantiated possibility that Trump and ACN *may have* discussed some allegedly fraudulent scheme on tape, without any reason to believe such footage exists, does not justify this request.  *See Lemanik, S.A. v. McKinley Allsopp, Inc*., 125 F.R.D. 602, 608 (S.D.N.Y. 1989) ("it has long been the rule in this Circuit that 'the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so."); *Citizens Union of City of New York v. Attorney General of New York,* 269 F. Supp. 3d 124, 141 (S.D.N.Y. 2017) (Information that "may or may not have been considered" does not "justify turning discovery into a fishing expedition into non-public information."); *Tucker v. Amer. Intern. Grp.,* 281 F.R.D. 85, 95 (D. Conn. 2012) (courts are "loathe to permit such sweeping fishing expeditions" that seek to "dredge the ocean of [] electronically stored information and records in an effort to capture a few elusive, perhaps non-existent fish").

4

LATHAM&WATKINS LLP

Request 10 to MGM; Request 6 to JMBP.  JMBP has already produced multiple examples of the promotional materials used in relation to ACN's appearance on the show.  We understand that plaintiffs would like to review an additional sample of materials other than those provided.  However, such promotional materials would typically have been prepared by the show's network, not the producers.  Any further materials that JMBP has would be contained on show footage, which review is subject to all the same burden concerns discussed above.  Moreover, to the extent that ACN was provided and used such materials, as plaintiffs allege in their complaint, such materials are more readily accessible from ACN.  Accordingly, JMBP does not believe it is necessary or appropriate to produce additional materials at this time.

Request 11 to MGM; Request 7 to JMBP.  As discussed on the call, JMBP will produce a document containing all fees paid by the task partners (with names of the task partners redacted) for appearances on Season 8 and Season 11 of *The Celebrity Apprentice*.  This will be sufficient to demonstrate that the fees paid by ACN were consistent with the range of fees paid by other task partners in those seasons.

Request 12 to MGM; Request 8 to JMBP.  As discussed on our call, Mr. Trump was not involved in editing *The Celebrity Apprentice*.  He did not review footage, suggest cuts, or edit the footage after it was shot prior to airing.  He or his agents would typically be provided with a short script for the task delivery at the beginning of the show (examples of this delivery script for ACN are included in JMBP's production).  During filming, Mr. Trump would sometimes provide suggestions regarding portions of the "boardroom" section of the show that he believed should be included in the final episode.  Mr. Trump was generally uninvolved with, and did not provide suggestions relating to footage for, the task portions of the show.

We will work on gathering the additional documents discussed in this letter.  Please let us know if you would like to discuss any of the matters further.

Best regards,


Jessica Stebbins Bina
of Latham & Watkins, LLP