# EXHIBIT 9

10250 Constellation Blvd., Suite 1100
Los Angeles, California 90067
Tel: +1.424.653.5500  Fax: +1.424.653.5501
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

# LATHAM & WATKINS LLP

November 22, 2019

**BY EMAIL**

John C. Quinn
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118

Re:   *Jane Doe, et al. v. The Trump Corporation*, 18 cv 9936 (LGS) Subpoena Duces Tecum to MGM and JMBP

Dear John:

We write on behalf of nonparties Metro-Goldwyn-Mayer Studios, Inc. ("MGM") and JMBP, LLC ("JMBP"), in response to your letter dated November 5, 2019, and as discussed on our call last week.

As you know, JMBP—the custodian of the documents you seek—has already produced nearly 4,000 pages in response to your requests. We have been incredibly forthcoming with production in this matter and we remain open to discussing our remaining points of disagreement in the future. However, JMBP maintains that some of your requests are overbroad and lack relevance to your client's claims, and create an undue burden on JMBP, a nonparty to this action. As these requests are not proportional to the needs of the case, the materials have been properly withheld under Fed. R. Civ. P. 26(b).

We respond to the points in your letter as follows:

<u>Relevance and Overbreadth</u>.  While it is true that you are entitled to discovery on nonprivileged matters "relevant to any party's claim or defense and proportional to the needs of the case," Fed R. Civ. P. 26(b)(1), we disagree with your contention that your requests were limited to such information. The complaint brings causes of action against Mr. Trump (as well as members of his family and his companies) for allegedly fraudulently endorsing several companies. One of those companies, ACN, appeared on just *two* episodes of *The Celebrity Apprentice*, a television show, that with its companion show *The Apprentice*, ran for 16 seasons (14 seasons with Mr. Trump). Yet, your subpoena inexplicably requests information that extends far beyond those two episodes, for example requesting "all communications between MGM and Trump or the Trump Entities," and documents related to Trump's editorial control over all episodes of *The Apprentice* and *The Celebrity Apprentice*. Your letter suggests that these

LATHAM&WATKINS LLP

sweeping requests are relevant simply because the complaint contains various statements about *The Celebrity Apprentice,* including plaintiffs' view that it was "a transparent form of product placement" and that episodes were "heavily edited and scripted to create false impressions." (Letter at 2.) However, your clients' claims are specifically related to Mr. Trump's endorsement of *ACN*, not any other company featured on the show, and information related to episodes beyond the two featuring ACN have no conceivable relevance to your clients' claims. The inclusion of statements in your complaint that are irrelevant to the actual causes of action alleged certainly do not justify sweeping requests for more than a decade's worth of information— particularly when these requests are directed at a nonparty. Moreover, your request did not distinguish between communications sent between MGM, the current indirect corporate parent of JMBP, and JMBP, the rightsholder and custodian.

As you have since narrowed most of your overbroad requests, we respond to any remaining relevancy concerns in our specific responses below.

Expense of Production. Respectfully, plaintiffs' offer to pay the expenses associated with your request to review *Celebrity Apprentice* raw footage does not moot JMBP's burden objection. (Letter at 3.) In addition to financial expense, and as detailed further below, the search for, and production of, various documents or footage requested would create an undue burden on JMBP and its employees, as it would require the diversion of staff resources to extend considerable time, energy, and resources searching for and reviewing such materials. The show aired many years ago. Neither emails nor footage is stored in a way that is easy to access, search, or display. Your financial payments will not reimburse JMBP for the substantial inconvenience and loss of productivity such a search would cause, and thus the burden objection remains wholly valid. *See Nova Biomedical Corp. v. i-STAT Corp.,* 182 F.R.D. 419, 423 (1998) ("status as a non-party entitled him to 'consideration regarding expense *and inconvenience.*") (emphasis added).

Custody and Control. As discussed, all the documents you request are solely in the custody and/or control of JMBP. However, we note that we have not withheld any otherwise relevant documents on this basis.

Confidential Information. We understand that there is a protective order in place, and produced documents accordingly. We have not withheld any otherwise relevant documents on this basis. However, we reiterate our statement above that JMBP disagrees that *Apprentice* materials that do not relate to ACN are relevant or discoverable in this matter.

Requests 1 and 3 to MGM; Request 1 to JMBP. We confirm that we produced all documents relating to this inquiry, that JMBP was able to locate after a reasonable search, dated between 2008 and 2013.

Requests 2, 4, 5, 6, 7 to MGM; Requests 2, 3 to JMBP. We understand that Plaintiffs have narrowed the topics for these requests. We respond to each of the revised requests as follows:

1. Plaintiffs request Documents concerning the exclusive access to the live finale of *The Celebrity Apprentice* granted to four ACN representatives in February 2015. JMBP

  will produce non-privileged documents concerning access by four ACN representatives to the live finale, to the extent such documents exist and can be located after a reasonable search.

2. <u>Plaintiffs request Documents sufficient to show how brands were selected to appear on *The Celebrity Apprentice*</u>.  It is not apparent when precise types of documents you seek with this request, and, in particular, what would qualify as "sufficient to show." The documents JMBP has already produced are sufficient to show how ACN was selected for *The Celebrity Apprentice*, which would appear to be the limit of relevance for this issue.  The following paragraph summarizes the principal ways in which task partners were selected for the relevant seasons of *The Celebrity Apprentice*.

   Task partners were generally selected for The Celebrity Apprentice in one of three ways.  The first way would be through various large advertising agencies, who worked with show producers and communicated instances when clients of the agencies were interested in appearing on the show.  A second way would be when task partners were recommended or introduced through Mr. Trump or his agents.  In either of the foregoing instances, the task partner would ultimately only be chosen to appear on the show if an appropriate creative task could be devised by the show's creative team to work with the task partners' product or brand, and if a mutually agreeable contract could be entered.  The third way of selecting a task partner would occur when the show's creative team devised a task, but lacked an appropriate partner; in those instances, a person from the show's production would contact companies offering the kind of product appropriate for the task, with the goal of engaging the company for the particular task.  In addition to these three ways, the show's network, NBC, would occasionally suggest task partners, who would then be evaluated through the normal intake process.

3. <u>Plaintiffs request Documents sufficient to show how ACN was selected to appear on *The Celebrity Apprentice*</u>.  JMBP has already provided documents sufficient to show how ACN was selected.

  <u>Request 8 to MGM; Request 4 to JMBP</u>.  As discussed on the call, this request poses a considerable burden to nonparty JMBP.  While we understand that you are willing to cover all monetary costs, this is only one element of the burden the production of these videos would have on our client.  Accessing, identifying, and producing the requested footage will require a considerable effort.  The raw footage is voluminous, and stored in obsolete formats that will require equipment rental even to review.  JMBP would need to either pull personnel from their daily tasks or retain and pay outside legal counsel to review hundreds of hours of footage to identify tapes that are potentially responsive to your request.  Additionally, after responsive tapes are identified, these tapes would need to be viewed by Plaintiffs' counsel in a secure viewing room on the premises of MGM, with JMBP personnel and counsel in attendance.  The diversion of personnel and resources for such a lengthy time creates a undue hardship on nonparty JMBP, and is alone reason for this request to be quashed.  *See, e.g. Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 53 (1996) (finding subpoena on nonparty unduly burdensome in part

Case 1:18-cv-09936-LGS-SLC   Document 174-9   Filed 02/21/20   Page 5 of 6
November 22, 2019
Page 4

**LATHAM&WATKINS**LLP

because it would "subject numerous [nonparty] employees and managers in several branch offices to countless hours of research, analysis, and compilation").

Furthermore, the substantial burden is particularly not proportional to the needs of the case as the requested footage is *at best* tangentially related to your claims. The crux of the Amended Complaint appears to be that the Trump Enterprise fraudulently endorsed and promoted ACN, which led class members to invest in the company. These allegations relate to *public* representations by the Trump Enterprise that were relied on by the class members. As the footage that sought was never viewed by any class member, it necessarily had no bearing on any member's decision to invest in ACN.

Instead, you claim that the footage is relevant because it is bears on "the falsity of Defendants' statements about ACN and the nature of their relationship with the company, as well as Defendants' knowledge that those statements were false." (Letter at 2.) But this claim does not make sense. Footage of ACN executives on set preparing for filming does not bear on the truth or falsity of Defendants' statements or Defendants' knowledge. While you have speculated on our meet and confer calls that perhaps there is footage that might show Mr. Trump interacting somehow in a culpable way with ACN representatives, this is rank speculation unsupported by any specific evidence that such footage exists. To the contrary, the structure and typical format of the show makes it a virtual certainty that such footage does not exist. Mr. Trump was typically filmed with task partners in only two instances: (1) at the beginning of an episode when introducing the task; and occasionally (2) outside the boardroom when discussing the casts' performance of the task with the task partners. The task partners were not otherwise present with Mr. Trump on set, and would not have been filmed together. Furthermore, the documents produced to date demonstrate that ACN executives interacted in a normal, professional fashion with *The Celebrity Apprentice* production staff, and there is simply no basis for your speculation that the footage contains information helpful to plaintiffs' case.

Finally, the burden on JMBP in reviewing the footage is unjustified because information about whether Mr. Trump knowingly made false statements about ACN, on *The Celebrity Apprentice* or otherwise, can be acquired through far less invasive means, including from Defendants. Considering the burden this request places on a nonparty, the remote unsubstantiated possibility that Trump and ACN *may have* discussed some allegedly fraudulent scheme on tape, without any reason to believe such footage exists, does not justify this request. *See Lemanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 608 (S.D.N.Y. 1989) ("it has long been the rule in this Circuit that 'the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.")"; *Citizens Union of City of New York v. Attorney General of New York,* 269 F. Supp. 3d 124, 141 (S.D.N.Y. 2017) (Information that "may or may not have been considered" does not "justify turning discovery into a fishing expedition into non-public information."); *Tucker v. Amer. Intern. Grp.,* 281 F.R.D. 85, 95 (D. Conn. 2012) (courts are "loathe to permit such sweeping fishing expeditions" that seek to "dredge the ocean of [] electronically stored information and records in an effort to capture a few elusive, perhaps non-existent fish").

LATHAM&WATKINS LLP

  Request 10 to MGM; Request 6 to JMBP.  JMBP has already produced multiple examples of the promotional materials used in relation to ACN's appearance on the show.  We understand that plaintiffs would like to review an additional sample of materials other than those provided.  However, such promotional materials would typically have been prepared by the show's network, not the producers.  Any further materials that JMBP has would be contained on show footage, which review is subject to all the same burden concerns discussed above.  Moreover, to the extent that ACN was provided and used such materials, as plaintiffs allege in their complaint, such materials are more readily accessible from ACN.  Accordingly, JMBP does not believe it is necessary or appropriate to produce additional materials at this time.

  Request 11 to MGM; Request 7 to JMBP.  As discussed on the call, JMBP will produce a document containing all fees paid by the task partners (with names of the task partners redacted) for appearances on Season 8 and Season 11 of *The Celebrity Apprentice*.  This will be sufficient to demonstrate that the fees paid by ACN were consistent with the range of fees paid by other task partners in those seasons.

  Request 12 to MGM; Request 8 to JMBP.  As discussed on our call, Mr. Trump was not involved in editing *The Celebrity Apprentice*.  He did not review footage, suggest cuts, or edit the footage after it was shot prior to airing.  He or his agents would typically be provided with a short script for the task delivery at the beginning of the show (examples of this delivery script for ACN are included in JMBP's production).  During filming, Mr. Trump would sometimes provide suggestions regarding portions of the "boardroom" section of the show that he believed should be included in the final episode.  Mr. Trump was generally uninvolved with, and did not provide suggestions relating to footage for, the task portions of the show.

  We will work on gathering the additional documents discussed in this letter.  Please let us know if you would like to discuss any of the matters further.

        Best regards,


        Jessica Stebbins Bina
        of Latham & Watkins, LLP