## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, LUKE LOE, RICHARD ROE, and MARY MOE, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | |
| *v.* | No. 18 Civ. 9936 |
| THE TRUMP CORPORATION, DONALD J. TRUMP, in his personal capacity, DONALD TRUMP JR., ERIC TRUMP, and IVANKA TRUMP, | |
| *Defendants*. | |

## REDACTED REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE MGM ENTITIES TO MAKE AVAILABLE TO PLAINTIFFS A LIMITED SUBSET OF VIDEO FOOTAGE

Roberta A. Kaplan, Esq.
John C. Quinn, Esq.
Alexander J. Rodney, Esq.

KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Telephone: (212) 763-0883

Andrew G. Celli, Jr., Esq.
Matthew D. Brinckerhoff, Esq.
O. Andrew F. Wilson, Esq.
Katherine Rosenfeld, Esq.
David Berman, Esq.

EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue at Rockefeller Center
New York, NY 10020
Telephone: (212) 763-5000

*Attorneys for Plaintiffs*

Plaintiffs respectfully submit this Reply Memorandum of Law in further support of their Motion to Compel the non-party MGM Entities to make available a limited subset of unaired footage from two episodes of *The Celebrity Apprentice* featuring ACN (Doc. No. 155).[1]   The MGM Entities' opposition brief and supporting declaration effectively concede the relevance of the footage in question, including the following key facts:

- The episodes in question were extensively edited ███████████████████████████████████████████████████

- President Trump himself offered direct editorial input on these episodes; and

- Unaired footage of interactions between Defendants (and their representatives) and ACN personnel at the very time they were shaping their presentation of ACN does in fact exist.

These key facts alone leave no doubt as to the relevance of the unaired footage.  Comparing what was aired with what was concealed from ACN's recruits would bear directly on multiple elements of the fraud claims at issue, including the falsity of Defendants' Message and Defendants' knowledge and intent.  The MGM Entities' arguments to the contrary attack strawmen, make assertions of fact undermined by their own sworn statements and documents, and take positions directly foreclosed by controlling law.

Nor have the MGM Entities come close to establishing undue burden here.  Indeed, despite the MGM Entities' considerable resources, Plaintiffs have offered to defray costs and to travel to a location of their choosing—far more than the Rules require.  Any mild inconvenience that remains is not cognizable as undue burden and provides no basis for withholding this relevant and proportional discovery.

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Compel the MGM Entities (Doc. No. 156, 157 ("Pls.' Mot.")).

I.   **THE LIMITED SET OF UNAIRED FOOTAGE AT ISSUE IS RELEVANT AND PROPORTIONAL TO THE NEEDS OF THE CASE.**

As set forth in Plaintiffs' opening brief, the requested unaired footage would reveal what was kept from prospective investors concerning ACN, how the show was cut to foster misleading impressions, and how Defendants (and their representatives) interacted with ACN (and its representatives) at the very time they were constructing and promulgating the fraudulent Message. (*See, e.g.*, Pls. Mot. at 6 (citing *McFarlane* v. *First Unum Life Ins. Co.*, No. 16 Civ. 7806, 2017 WL 4564928, at *2 (S.D.N.Y. Oct. 12, 2017)).

The MGM Entities' principal argument to the contrary is a red herring: they assert that the unaired footage is irrelevant because Plaintiffs "indisputably never saw and thus admittedly could not have relied upon" it.  (Opp. at 2 (Doc. No. 173).)  That fails to address the relevance of the unaired footage to other elements of Plaintiffs' claims, including Defendants' knowledge about ACN's business opportunity and the intent underlying Defendants' materially false statements about it.  (Pls. Mot. at 7.)  To the extent they actually address Plaintiffs' argument with respect to those elements, the MGM Entities concede the vast majority of the pertinent facts.

*First*, the MGM Entities do not dispute that the episodes were selectively edited and heavily scripted █████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ (*E.g.*, Doc. No. 159-5 at -3742.)  They also concede in a sworn statement that President Trump himself offered editorial input concerning the boardroom section of the show.  (Doc. No. 175 ("Edwards Decl.") ¶ 8.)  And their document production confirms that ███████████████████████ ██████████████████████████ (Doc. No. 159-3; Doc. No. 159-4, at -1336.)

The MGM Entities seek to minimize the import of these facts by making the obvious and irrelevant point that the "actual producers" of the show, rather than President Trump or other

Defendants, made the actual cuts to the footage. (Opp. at 7; Edwards Decl. ¶ 8.) But those "professional producers" were agents of Defendants, as well as JBMP, which were co-owners and co-producers of the show. *In re Cohen*, 422 B.R. 350, 366 (E.D.N.Y. 2010) ("[P]arties to a joint venture act as principals and as agents for each other.").[2]

*Second*, the MGM Entities concede, as they must, that there would have been unaired interactions between ACN and Defendants (and their respective representatives), including "at the beginning of an episode when introducing the task, outside the boardroom when discussing the casts' performance of the task, and sometimes during the final presentation of the task." (Opp. at 8.) The MGM Entities wonder whether footage of such interactions would "be somehow helpful to plaintiffs." (Opp. at 3.) But whether the MGM Entities believe the footage to be helpful is not the applicable standard. *See, e.g.*, *Anvik Corp.* v. *Samsung Elecs.*, No. 07 Civ. 818, 2009 WL 10695623, at *3 (S.D.N.Y. Sept. 16, 2009) (Courts should not "credit . . . substantive, merits-based arguments posited . . . in opposition to a discovery demand.").[3] Rather, "[i]t is well-settled within this Circuit that [Rule 26] will be satisfied if there is 'any possibility' that the information sought may be relevant to the subject matter of the action." *Lyondell-Citgo Ref., LP* v. *Petroleos De Venezuela*, No. 02 Civ. 795, 2004 WL 2698218, at *2 (S.D.N.Y. Nov. 19, 2004) (collecting cases). Footage of Defendants and their representatives in the midst of their endorsement efforts manifestly satisfies this standard. Because relevant unaired footage is likely to exist, the MGM Entities are obligated to make it available. *See, e.g.*, *Wright* v. *New Moda, L.L.C.*, No. 17-cv-9737, 2019 WL 2071158, at *4 (S.D.N.Y. May 10, 2019) (ordering party to "search for and

---

[2] They were also acting at President Trump's direction as an executive producer. (Am. Compl. ¶¶ 11, 44, 58.)
[3] The MGM Entities spill considerable ink contending that ACN was treated no differently from other "task partner[s]" on the show. (Opp. at 4-6.) That is dubious ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In all events, whether ACN received special treatment has no bearing on Plaintiffs' claims that Defendants intentionally propagated a materially false Message about ACN.

produce any" responsive documents where "evidence suggests additional documents exist").[4]

## II.   PLAINTIFFS HAVE MITIGATED ANY UNDUE BURDEN HERE

While Federal Rule of Civil Procedure 45 protects nonparties from *undue* burden, it also contemplates that nonparties may be subjected to "some burden" in complying with subpoenas. *See In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488, 2017 WL 3822883, at *7 (S.D.N.Y. Aug. 30, 2017).   The MGM Entities cannot establish any undue burden here.  *See Kirschner* v. *Klemons*, No. 99 Civ. 4828, 2005 WL 1214330, at *3 (S.D.N.Y. May 19, 2005).

The MGM Entities argue first that they should be excused from producing the footage because they already made a production of documents.  (Opp. at 3-4.)  But courts routinely order additional productions from nonparties, including nonparties that have made productions far larger than the 1,374 documents produced by the MGM Entities.  *See, e.g.*, *Amphenol Corp.* v. *Fractus, S.A.*, No. 19 Misc. 160, 2019 WL 2521300, at *10 (S.D.N.Y. June 19, 2019) (ordering production from nonparty notwithstanding prior production of over 37,000 documents).

The MGM Entities' laundry list of purported burdens—the volume of raw footage, their own apparently disorganized labeling system, the need for certain video equipment, and the diversion of personnel—is equally unpersuasive.  (*See* Opp. at 9-10.)  These inconveniences, at best, entitle them to payment of reasonable costs.  *See In re Rezulin Prod. Liab. Litig.*, No. 00 Civ. 2843, 2003 WL 21285537, at *2 (S.D.N.Y. June 4, 2003) (If nonparty's "personnel were being diverted" or it otherwise "was incurring any incremental costs, apart from copying and delivery

---

[4] The cases cited by the MGM Entities are inapposite.  In each of those cases, the court denied discovery for reasons inapplicable here, including: the absence of a relevant "issue of fact" or a "factual basis" supporting the existence of discoverable information, *Lemanik, S.A.* v. *McKinley Allsopp, Inc.*, 125 F.R.D. 602, 608, 610 (S.D.N.Y. 1989), the presence of a special privilege, *Citizens Union of City of New York* v. *Attorney General of New York*, 269 F. Supp. 3d 124, 167-68 (S.D.N.Y. 2017) (governmental privilege); *UMB Bank, N.A.* v. *Sanofi*, No. 15 Civ. 8725, 2017 WL 6398628 (S.D.N.Y. Nov. 22, 2017) (attorney-client privilege), or an obvious lack of need for the documents requested, *UMB Bank*, 2017 WL 6398628, at *2 (documents not germane to any claim or defense); *Citizens Union*, 269 F. Supp at 167-68 (all relevant documents already produced).  None of those circumstances is present here.

charges, attributable to subpoena compliance," such burdens would be remedied by moving for reimbursement).[5]  Plaintiffs here have already offered to pay those costs and even offered to travel to inspect the documents.  Under these circumstances, courts require compliance from nonparties.  In *Ambac Assurance Corp.* v *EMC Mortgage Corp.*, No. 10-MC-010, 2010 WL 2736893, at *3 (E.D.N.Y. July 9, 2010), for example, the court granted a motion to compel a nonparty to make documents available because the plaintiff "offered to have its attorneys inspect [the] documents, at [plaintiff's] expense" and to "pay a low-level employee from [nonparty] to monitor its inspection," even though the documents were "voluminous" and "disorganized," and the nonparty claimed a "lack [of] sufficient staff."

Finally, the MGM Entities assert that outside counsel must be present during Plaintiffs' review of the unaired footage (Opp. at 3, 9), but they fail to explain why.  They vaguely invoke "confidentiality" (Opp. at 9), but they identify no specific concerns about privilege, consumer privacy, or sensitive business information.  *See Cohen* v. *City of New York*, 255 F.R.D. 110, 118 (S.D.N.Y. 2008).  In any event, the protective order (which the MGM Entities have already invoked) amply protects confidential information (Doc. No. 112).  *See, e.g.*, *United States ex rel. Ortiz* v. *Mount Sinai Hosp.*, 169 F. Supp. 3d 538, 543 (S.D.N.Y. 2016) ("Any concerns regarding the confidentiality of protected health information were met . . .  when this Court issued a Discovery Confidentiality Order."); *Ambac*, 2010 WL 2736893, at *3 (same).

## CONCLUSION

For each of the foregoing reasons, and the reasons set forth in Plaintiffs' opening brief, Plaintiffs respectfully request the Court grant Plaintiffs' motion to compel the MGM Entities.

---

[5] The MGM Entities' citation to *Int'l Soc'y for Krishna Consciousness, Inc.* v. *Lee*, No. 75 Civ. 5388, 1985 WL 315, (S.D.N.Y. Feb. 28, 1985) is inapposite, as the court in that case required a compelling need for discovery at issue because its disclosure raised First Amendment concerns not at issue here.

Dated: February 28, 2020                    Respectfully submitted,

_____

Roberta A. Kaplan, Esq.
John C. Quinn, Esq.
Alexander J. Rodney, Esq.

KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
Telephone: (212) 763-0883
Facsimile: (212) 564-0883
rkaplan@kaplanhecker.com
jquinn@kaplanhecker.com
arodney@kaplanhecker.com

Andrew G. Celli, Jr., Esq.
Matthew D. Brinckerhoff, Esq.
O. Andrew F. Wilson, Esq.
Katherine Rosenfeld, Esq.
David Berman, Esq.

EMERY CELLI BRINCKERHOFF & ABADY LLP
600 Fifth Avenue at Rockefeller Center
New York, NY 10020
Telephone: (212) 763-5000
acelli@ecbalaw.com
mbrinckerhoff@ecbalaw.com
awilson@ecbalaw.com
krosenfeld@ecbalaw.com
dberman@ecbalaw.com

*Attorneys for Plaintiffs*