# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL   212.763.0884
DIRECT EMAIL   rkaplan@kaplanhecker.com

March 27, 2020

**BY ECF**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

>  Re:   *Jane Doe, et al.* v. *The Trump Corporation, et al.*, 18-cv-09936 (LGS)
>         (REDACTED)

Dear Judge Schofield:

      We write on behalf of Plaintiffs in the above-referenced action to respectfully request a pre-motion conference concerning a discovery dispute with nonparty Anne Archer Butcher and her company Dolphin Entertainment (collectively, the "Marketing Consultants"). As discovery from other sources has confirmed, the Marketing Consultants provided marketing and public-relations services to Defendants and ACN in connection with Defendants' endorsement and promotion of ACN. Indeed, the Marketing Consultants were engaged as the ▬▬ that facilitated Defendants' fraudulent endorsement and promotion of ACN from at least 2008 to 2015. And the Marketing Consultants have confirmed that they possess more than 1,600 relevant documents. Nevertheless, after four months of meeting and conferring, and even after Plaintiffs paid their discovery costs, the Marketing Consultants are now refusing to produce documents responsive to subpoenas issued pursuant to Rule 45, including certain indisputably relevant documents that they previously agreed to produce, but now are withholding without any valid basis. Because the Marketing Consultants have failed to produce a single document for over four months, and with the current deadline for close of fact discovery approaching, Plaintiffs now seek this Court's intervention pursuant to Federal Rule of Civil Procedure 45(d).

      **The Subpoenas.** Plaintiffs issued document subpoenas to the Marketing Consultants on November 7, 2019 (the "Document Subpoenas"), and followed up with a deposition subpoena to Ms. Archer on November 15, 2019. The Document Subpoenas sought, among other things, documents concerning the public relations and marketing services that the Marketing Consultants provided to Defendants and ACN, their services as a ▬▬ between Defendants and ACN in

KAPLAN HECKER & FINK LLP

2

connection with Defendants' endorsement and promotion of ACN, and their work to disseminate Defendants' fraudulent Message.

**The Meet-and-Confer Process and Agreement.** For approximately four months, Plaintiffs have met and conferred with the Marketing Consultants in good faith. During that time, Plaintiffs have worked to narrow the Document Subpoenas, offered multiple extensions, made provision for rolling productions, and have offered to pay (and for months have, in fact, been paying) the Marketing Consultants' discovery vendor costs. During that meet-and-confer process, Plaintiffs proposed a single, narrowly tailored search for presumptively relevant ESI: all documents responsive to the search term "Trump" from within the relevant time period. The Marketing Consultants agreed to that proposal, although they noted that they would construe the relevant time period as limited by the default limitations on ESI set forth in the Court's Individual Rules, which at that time the Court had not yet waived. Subject to that limitation, the Marketing Consultants represented that they had collected and begun reviewing responsive documents. And on January 17, 2020, the Marketing Consultants confirmed that they were in possession of more than 1,600 responsive documents, even excluding communications that included the Defendants.

**The Marketing Consultants Renege on Their Agreement.** In the months since their professed agreement, the Marketing Consultants have reneged or walked back every commitment and engaged in dilatory tactics without justification. The Marketing Consultants first represented that their initial production would occur by the end of January 2020. January came and went without the Marketing Consultants producing a single document. The Marketing Consultants then ignored several follow-up requests. Eventually, they committed to completing their production by March 26. Now, without any justification whatsoever, the Marketing Consultants take the position that they will withhold all relevant and responsive documents that they have already collected until a week before Ms. Butcher's deposition—regardless of when it is scheduled.

The Marketing Consultants are also playing games with respect to the applicable date range in a transparent effort to deprive Plaintiffs of indisputably relevant discovery that has already been collected and reviewed. As noted above, in January 2020, the Marketing Consultants agreed to search for documents and emails for the time period October 30, 2013 to September 30, 2015. As Plaintiffs made clear, all available evidence confirmed that the Marketing Consultants had relevant documents in their possession from at least 2008, but the Marketing Consultants nevertheless refused to produce relevant documents from before October 30, 2013, in reliance on the default limitations in this Court's Individual Rule II.A.1(b). As the Court is aware, the Court has since waived that Rule's default five-year limitation on searches for ESI (Doc. No. 198). When Plaintiffs informed the Marketing Consultants that the default rules on which they were relying no longer applied, the Marketing Consultants then invented a new time limitation—they would search for documents dating back to December 26, 2008, but would only produce documents up to the date of August 31, 2011—reneging on their previous agreement to provide, at the very least, documents from October 30, 2013 to September 30, 2015. To date, the Marketing Consultants have not produced a single document.

**Relevance of the Material Requested.** Plaintiffs are entitled to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Even in the context of motions to compel nonparties, "[r]elevance has been broadly interpreted to include any matter that bears on,

KAPLAN HECKER & FINK LLP

3

or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Gilani v. Hewlett Packard Co.*, No. 15 Civ. 5609, 2017 WL 4236564, at *1 (S.D.N.Y. Sept. 22, 2017) (internal quotation marks omitted).

As the limited productions from Defendants have made clear, the Marketing Consultants were engaged ▓▓▓▓ between Defendants and ACN. Thus, the Marketing Consultants played a key role in facilitating Defendants' endorsement and promotion of ACN and disseminating Defendants' fraudulent Message about ACN to Plaintiffs and the putative class members through multiple media channels, from at least 2008 to 2015. As a result, the Marketing Consultants possess a wide range of relevant materials, including communications with ACN, Defendants, and Mark Burnett Productions concerning Defendants' fraudulent endorsement and promotion of ACN; documents concerning ACN's appearances on the episodes of *The Celebrity Apprentice* that aired on March 22, 2009 and March 27, 2011; documents concerning promotional material in which Defendants' endorsed and promoted ACN; and documents about their own work to facilitate Defendants' endorsement and promotion of ACN, including at ACN events.

With respect to the Marketing Consultants' most recent gambit to limit their production obligations to the time period from December 26, 2008 to August 31, 2011, the existing discovery record is similarly clear that the Marketing Consultants' relevant communications with Defendants and ACN continued well beyond 2011—until at least 2015, as the Marketing Consultants themselves previously conceded. For example, ▓▓▓▓ Similarly, as late as 2015, ▓▓▓▓ And again, the Marketing Consultants have confirmed that they are in possession of more than 1,600 unique responsive documents, not including communications with Defendants. There is simply no basis for the Marketing Consultants' refusal to produce relevant documents from September 1, 2011 onward.[1]

**Lack of Undue Burden.** Finally, there is no undue burden or expense justifying the Marketing Consultants' refusal to comply with their subpoena obligations. *See* Fed. R. Civ. P. 45(d); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Once relevance has been shown, it is up to the responding party to justify curtailing discovery."). To the contrary, Plaintiffs have alleviated burden through multiple generous accommodations. *First*, Plaintiffs have worked to tailor their requests and offered to accept rolling productions. *Second*, Plaintiffs have made multiple extensions to the production timeline. *Third*, Plaintiffs have agreed to pay (and have been paying for months now) the Marketing Consultants' discovery vendor costs, which alone defeats any claim of undue burden. *See, e.g., Mirra v. Jordan*, No. 13 Civ. 5519, 2015 WL 8526550, at *2 (S.D.N.Y. Dec. 7, 2015) ("As the plaintiff agreed . . . to pay all costs associated with collecting, processing and Bates stamping of the materials requested by his subpoena . . . no undue burden or significant expense will result from [] compliance with the plaintiff's subpoena."). Such accommodations far exceed Plaintiffs'

---

[1] Plaintiffs seek to compel production of all non-privileged documents responsive to the search term "Trump" from the period January 1, 2005 until October 29, 2013.

KAPLAN HECKER & FINK LLP

4

obligations to mitigate burden under Rule 45, as nonparties are expected to devote time to compliance even without reimbursement. *See, e.g.*, *In re Subpoena to Loeb & Loeb LLP*, No. 19 Misc. Civ. 241, 2019 WL 2428704, at *6 (S.D.N.Y. June 11, 2019).

Respectfully submitted,

Roberta A. Kaplan

cc: Counsel of Record (*via* ECF)
Counsel for Anne Archer Butcher (*via* certified overnight delivery service and email)