**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | SUITE 7110
NEW YORK, NEW YORK 10118
TEL (212) 763-0883 | FAX (212) 564-0883
WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0884
DIRECT EMAIL  rkaplan@kaplanhecker.com

April 1, 2020

**BY ECF**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *Jane Doe, et al.* v. *The Trump Corporation, et al.,* 18-cv-09936 (LGS)

Dear Judge Schofield:

      We write on behalf of Plaintiffs in the above-referenced action in response to Defendants' letter dated March 25, 2020 requesting that the Court: (1) "revisit, in toto" its prior decisions permitting Plaintiffs to proceed under pseudonyms; or (2) compel Plaintiffs to disclose their identities to nonparty ACN Opportunity, LLC ("ACN") without requiring that ACN observe the safeguards relating to confidential identity information set forth in the Protective Order. (Doc. No. 208 (the "Letter" or "March 25 Letter"); *see also* Doc. Nos. 112, 202, 205.) Because Defendants have cited no new facts or law sufficient to satisfy the well-settled standard for reconsideration, and have offered no reason to excuse ACN from compliance with the Protective Order, both requests should be denied. (*See* Doc. No. 111 (Order denying Defendants' motion for reconsideration (citing *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013))).)

\*   \*   \*

      This Court has already twice determined that the risk of threats, harassment, and harm to Plaintiffs and their families was sufficiently high to permit Plaintiffs to proceed under pseudonyms. *First*, at the outset of this action, the Court found "ample evidence of retaliation and other harms in other cases in similar circumstances," and held that the potential harms that Plaintiffs face "are real, significant, and present an unwarranted obstacle to those who would seek to vindicate their rights in federal court." (Doc. No. 59 at 27.) The Court thus permitted pseudonymity pending a decision on Defendants' motion to dismiss. (Doc. Nos. 54, 59 at 29.)

      *Second*, after the motion to dismiss was decided and it was clear that this case would proceed into discovery, Plaintiffs "request[ed] that the Court allow its order regarding pseudonymity to continue through the end of discovery." (Doc. No. 104 at 5 n.4.) To address the "only consideration that [had] changed" since the Court first permitted the use of pseudonyms (*i.e.*,

KAPLAN HECKER & FINK LLP

the commencement of discovery), Plaintiffs proposed a protective order that would permit disclosure of Plaintiffs' identities to Defendants and other nonparties in order to facilitate discovery, but, as is standard in civil cases in this Circuit, would also prohibit further disclosure by such persons and use of that information for purposes outside this litigation. (*Id.* at 5; *see, e.g.*, *Doe* v. *Quest Diagnostics, Inc.*, No. 15 Civ. 8992 (S.D.N.Y. Mar. 14, 2016), Doc. No. 49 (Schofield, *J.*); *Plaintiffs #1-21* v. *County of Suffolk*, No. 15 Civ. 2431 (E.D.N.Y. Dec. 1, 2015), Doc. No. 43 (so-ordered Dec. 2, 2015).) Defendants proposed their own protective order, which contained identical protections for Plaintiffs' identities, and informed the Court that their only disagreement with Plaintiffs' proposed order concerned its "term or duration." (Doc. No. 104 at 9; *see also* Doc. No. 104-1; Doc. No. 104-2 at 16.)

The Court considered both versions of the Protective Order, with their identical protections for Plaintiffs' identities, at a conference on September 5, 2019. The following day, Defendants filed a letter with the Court specifically "request[ing] that the Court enter the protective order" containing the pseudonymity provisions on which the parties had agreed. (Doc. No. 108 at 1.) The Court then entered the Protective Order on September 10, 2019 containing those provisions. (Doc. No. 112.) Defendants immediately availed themselves of the Protective Order by seeking disclosure of Plaintiffs' identities, and Plaintiffs relied on the Protective Order in promptly disclosing their identities to Defendants and then making multiple document productions containing confidential identity information in the months that followed.

\*   \*   \*

That was seven months ago. Defendants' March 25 Letter offers no reason for this Court to reconsider its prior decisions regarding pseudonymity. "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc.* v. *YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quotation marks omitted). Defendants' March 25 Letter does not even acknowledge this standard or make any effort to explain how they could possibly satisfy it. In fact, Defendants cite no law at all and instead refer the Court to their "previous briefing" on pseudonymity. (Doc. No. 208 at 2 n.1.) But Defendants should know better—a motion for reconsideration is "not a vehicle for relitigating old issues" or "taking a second bite at the apple." *Analytical Surveys, Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quotation marks omitted). Because Defendants "urge[] reconsideration on the basis of essentially the same arguments" they raised before, their request should be denied on that basis alone. *Anwar* v. *Fairfield Greenwich Ltd.*, 800 F. Supp. 2d 571, 573 (S.D.N.Y. 2011).

Similarly, while Defendants complain that they cannot "obtain from ACN the IBO agreements necessary to perfect Defendants' motion to compel arbitration," Defendants have already tried that argument as well, in a motion for reconsideration that they filed last year. (Doc. No. 208 at 2; *see* Doc. No. 108 at 1 (seeking reconsideration of various deadlines so that Defendants can "take limited discovery in order to obtain copies of the arbitration agreements at issue").) The Court denied Defendants' reconsideration motion at that time, permitting Defendants to assume for purposes of their motion to compel that Plaintiffs had entered into arbitration agreements with ACN, and the Court issued the Protective Order the next day. (Doc. Nos. 111,112.) There is no reason to revisit that point here. Defendants' broader assertion that they are

**KAPLAN HECKER & FINK LLP**
3

"severely restricted in their ability to seek any specific or targeted discovery concerning Plaintiffs' interactions with ACN" does not justify reconsideration either. (Doc. No. 208 at 2 (emphasis omitted).) Indeed, that argument rings particularly hollow given that Defendants have not even served a subpoena on ACN.[1] Hypothesizing about potential challenges that they might face with respect to discovery that they have not pursued comes nowhere close to meeting the "strict" standard for reconsideration. *See Analytical Surveys*, 684 F.3d at 52 (quotation marks omitted).

Moreover, even if Defendants had served a subpoena on ACN, it would be ACN's steadfast refusal to recognize the jurisdiction of this Court, adhere to the restrictions in the Protective Order, and comply with its discovery obligations—not Plaintiffs' pseudonymity—that would prevent Defendants from obtaining the discovery to which they are entitled. The Protective Order specifically permits a party to disclose Plaintiffs' identities to a nonparty subpoena recipient as long as the recipient executes the requisite Non-Disclosure Agreement. (Doc. No. 112 ¶¶ 10, 18.)[2] In other words, if disclosure of Plaintiffs' identities is needed to facilitate discovery in this case, disclosure is permitted, subject to appropriate protections.

Finally, Defendants' alternative request that ACN be granted special relief from the Protective Order should be denied as well. ACN has already moved this Court for an order requiring Plaintiffs to disclose their identities to ACN (or allowing Defendants share them) so that ACN can pursue an arbitration against Plaintiffs in North Carolina. (Doc. Nos. 202, 205.) That motion fails for the reasons that Plaintiffs set forth in their response (Doc. No. 217), and Defendants' March 25 Letter offers nothing new in support of ACN's motion.[3] In the end, Defendants' support for ACN is telling. Although Defendants claim that ACN needs Plaintiffs' names so that Defendants can take discovery from ACN, ACN has said explicitly that the reason it wants special access to those names is to pursue arbitrations that would *interfere* with discovery in this action. If Defendants and ACN share any interest in connection with ACN's motion, it appears to be an interest in delaying or avoiding discovery in this case.

Respectfully submitted,

Roberta A. Kaplan

---

[1] Defendants made no mention of ACN in their latest summary to the Court regarding "Discovery Served on Nonparties" (Doc. No. 197 at 7), and Rule 45(a)(4) would require Defendants to provide notice to Plaintiffs of any subpoena to ACN prior to service in any event.

[2] The Non-Disclosure Agreement provides, in pertinent part, as follows: "I agree that (1) I will hold in confidence all Protected Material to the extent required by the Protective Order and agree to be bound by the terms of that Order; (2) I will use such Protected Material only for purposes of this litigation and for no other purpose whatsoever; and (3) I will take all due precautions to prevent the unauthorized or inadvertent disclosure of such Protected Material." (Doc. No. 112 at 7.)

[3] Defendants' attempt to use hypothetical future discovery as a hook for revisiting the Court's past rulings stands in stark contrast to the position they took only a month ago, when they opposed Plaintiffs' first request for an extension of the fact discovery deadline and insisted that "Plaintiffs have only themselves to blame for not having completed discovery in the six months allotted." (Doc. No. 177 at 4.)