UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
JANE DOE, et al.,                                             :
                                      Plaintiffs,             :
                                                              :    18 Civ. 9936 (LGS)
              -against-                                       :
                                                              :    OPINION & ORDER
THE TRUMP CORPORATION, et al.,                                :
                                      Defendants.             :
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/8/2020

LORNA G. SCHOFIELD, District Judge:

Plaintiffs represent a putative class alleging that Defendants Donald J. Trump, The Trump Corporation, Donald Trump, Jr., Eric Trump and Ivanka Trump committed various business torts. Defendants move to compel arbitration of these claims. For the following reasons, Defendants' motion is denied.

I.   BACKGROUND

   A.   Summary of the Complaint

The narrative below summarizes the allegations in the Amended Complaint and exhibits filed in relation to this motion.

Non-party ACN Opportunity, LLC ("ACN") is a multi-level marketing company that offers products and services through independent salespeople known as "Independent Business Owners," or "IBOs." Plaintiffs became IBOs in 2013, 2014 and 2016. In order to sell ACN products and services, IBOs must pay ACN an initial sign-up fee and an annual renewal fee. Each IBO must also sign an Independent Business Owner Agreement (the "Agreement"). Each Agreement contains an arbitration provision. In 2013 and 2014, the arbitration provision stated in relevant part:

> 16. I agree to indemnify and hold ACN, the ACN Providers and their respective shareholders, directors, officers and employees harmless from any and all claims, damages, and expenses, including any attorney's fees, arising out of my actions or omissions in connection with this Agreement. In the event of a dispute between me and ACN as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is agreed that such disputes shall be exclusively resolved through binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration.

In 2016, the arbitration provision and the preceding provision stated in relevant part:

> 16. I agree to indemnify and hold ACN, the other ACN Companies, the ACN Providers and their respective shareholders, directors, officers and employees harmless from any and all claims, damages, and expenses, including any attorney's fees, arising out of my actions or omissions in connection with this Agreement.
>
> 17. . . . In the event of a dispute between ACN and me as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is mutually agreed that such disputes shall be exclusively resolved through . . . binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration. Both ACN and I agree that all disputes will be resolved on an individual basis and that each may only bring claims against the other in an individual capacity (and not as a claimant or class member in any purported class or representative proceeding).

The parties agree that Defendants are not signatories to the Agreements. By their terms, the Agreements are governed by North Carolina law.

Between 2005 and at least 2015, Defendants promoted and endorsed ACN through videos, print and online media, at ACN events, and during episodes of *The Celebrity Apprentice*, a television program hosted by Trump and featuring Ivanka Trump and Donald Trump, Jr. Defendants' endorsement of ACN was crucial to Plaintiffs' decisions to become IBOs for at least two related reasons. First, Plaintiffs considered Trump and his family highly successful in business. Second, Plaintiffs believed that the endorsement was independent of ACN. For example, the Amended Complaint alleges:

> Doe had no idea Trump was being paid lavishly for his endorsement – the video made no mention of that. Doe thought Trump's only motivation in endorsing ACN was to help people like her make good business decisions. . . . Doe concluded that

> Trump would not have associated himself with ACN, brought the company onto his show, and given it such huge publicity if it were not a genuine opportunity that offered a strong likelihood of a good return.

Am. Compl., Dkt. 77, at ¶ 193. Among the false statements that Plaintiffs allege as part of the surviving causes of action is that "Trump was endorsing and promoting ACN because he believed that they offered a reasonable probability of commercial success (rather than because the Trump Enterprise was being paid)." Defendants and ACN did not disclose that ACN was paying Defendants to promote and endorse the company.

### B. Procedural History

Plaintiffs commenced this action on October 29, 2018. Defendants filed a motion to dismiss on January 14, 2019. The motion was denied as moot after Plaintiffs filed the Amended Complaint on January 31, 2019. The Amended Complaint alleged racketeering and conspiracy to racketeer in violation of federal law and six state law claims relating to unfair or untrue business practices.[1] Defendants filed a motion to dismiss the Amended Complaint on February 21, 2019. On July 24, 2019, the Court dismissed the federal claims but retained jurisdiction over the remaining claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d). On July 11, 2019, after eight months of litigation described more fully below, Defendants informed Plaintiffs that they would seek to compel arbitration of any claims that survived dismissal. Defendants informed the Court of this correspondence on July 19, 2019.

---

[1] Count 3 asserts the dissemination of untrue and misleading public statements under California law. Count 4 asserts unfair competition under California law. Count 5 asserts unfair and deceptive trade practices under Maryland law. Count 6 asserts unfair and deceptive practices under Pennsylvania law. Counts 7 and 8 assert common law fraud and negligent misrepresentation.

3

## II.    STANDARD

In deciding a motion to compel arbitration, courts apply a "standard similar to that applicable for a motion for summary judgment." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 281 n.1 (2d Cir. 2019) (citation omitted).  Courts must consider "all relevant, admissible evidence submitted by the parties" and must "draw all reasonable inferences in favor of the non-moving party."  *Id.* (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)).

The Federal Arbitration Act ("FAA") "embodies a national policy favoring arbitration." *Doctor's Assoc's, Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (internal citation and quotation omitted).  The "purpose underlying arbitration [is] to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation."  *Salus Capital Partners, LLC v. Moser*, 289 F. Supp. 3d 468, 477 (S.D.N.Y. 2018) (quoting *T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 342 (2d Cir. 2010)).  In light of this purpose, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010); *accord WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 399 (S.D.N.Y. 2018).  However, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co.*, 561 U.S. at 297 (2010).  In other words, "[t]he threshold question facing any court considering a motion to compel arbitration is whether the parties have agreed to arbitrate." *Alemayehu*, 934 F.3d at 250 (quotation omitted).

Even if the parties agreed to arbitrate, a party can waive its right to seek arbitration. However, "waiver of the right to arbitrate is not to be lightly inferred." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104-05 (2d Cir. 2002) (citation and quotation marks

4

omitted); *accord Mason Tenders Dist. Council of Greater N.Y. v. Gilbane Building Co.*, No. 16 Civ. 7049, 2018 WL 4691659, at *7 (S.D.N.Y. Sept. 19, 2018).

### III.   DISCUSSION

Defendants seek to compel arbitration of the dispute in this case based on the arbitration agreements between Plaintiffs and ACN, to which Defendants are not a party. At issue on this motion is whether Plaintiffs agreed to arbitrate with Defendants, on a theory of either equitable estoppel or agency. The Court finds that Plaintiffs did not agree to arbitrate with Defendants. A second issue in the alternative is, if there was such an agreement, did Defendants waive their right to compel arbitration of these claims. The Court finds that they did. The motion to compel arbitration is therefore denied on each ground independently.

Regarding the arbitration agreements at issue, Defendants stated on their motion to dismiss the Amended Complaint that the IBOs, which include Plaintiffs, agreed to resolve all disputes between themselves and ACN through binding arbitration. In support of that motion, Defendants filed an Affirmation that included as exhibits true and correct copies of the Agreements as they existed in 2013, 2014 and 2016, the same years that Plaintiffs entered into the Agreements. Based on Defendants' representations, the Court directed the parties to assume solely for purposes of this motion that Plaintiffs and the putative class had agreed with ACN to arbitrate.[2] This directive was necessary because the identities of the Plaintiffs were not public, and therefore the signed versions of the Agreements had not been obtained.

---

[2] To obtain from ACN Plaintiffs' signed Agreements would have required the parties to disclose Plaintiffs' identities to ACN. This information was and is not public. At the initial conference, the Court granted Plaintiffs' motion to proceed under pseudonyms, but only until a decision on the motion to dismiss and while discovery was stayed. Shortly after the motion to dismiss was decided and the discovery stay was lifted, on September 10, 2019, the parties agreed to a protective order, which provided that Plaintiffs' identities would be disclosed only to defense counsel and their agents. Recently, on March 25, 2020, Defendants requested in a letter that the

### A. Agreement to Arbitrate

To determine whether a dispute is arbitrable, courts first ask "whether the parties agreed to arbitrate." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (internal quotation and citation omitted); *accord Buckley v. Nat'l Football League*, No. 18 Civ. 3309, 2018 WL 6198367, at *2 (S.D.N.Y. Nov. 16, 2018). Defendants offer two theories to explain how Plaintiffs agreed to arbitrate with them even though Defendants were not parties to the respective Agreements between Plaintiffs and ACN. The two theories, equitable estoppel and agency, are discussed in turn below.[3]

#### 1. Equitable Estoppel

A signatory to an arbitration clause is estopped from refusing to arbitrate against a non-signatory where (1) "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed" and (2) there is "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute" with the non-signatory. *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010) (internal quotation omitted); *accord Dowe v. Leeds Brown Law, P.C.*, 419 F. Supp. 3d. 748, 757-58 (S.D.N.Y. 2019).[4]

---

Court revisit whether Plaintiffs may continue to prosecute this case pseudonymously. Plaintiffs opposed. The matter has not yet been resolved.

[3] If a court determines that the parties agreed to arbitrate, the next question is whether "the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015) (internal quotation and citation omitted). The parties did not address this question and, as the Court finds that there was no agreement to arbitrate, the Court does not either.

[4] The Supreme Court has instructed that state law governs whether a non-signatory may enforce an arbitration clause. *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). However,

### a) Intertwined-ness

The Second Circuit has not "specified the minimum quantum of 'intertwined-ness' required to support a finding of estoppel." *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 178 (2d Cir. 2004); *accord Bankers Conseco Life Ins. Co. v. Feuer*, No. 16 Civ. 7646, 2018 WL 1353279, at *5 (S.D.N.Y. Mar. 15, 2018). "Intertwined-ness" depends on how related the factual issues of the claims are to the subject matter of the arbitration agreements. *See Ragone*, 595 F.3d at 128; *see also Bankers Conseco Life Ins. Co.*, 2018 WL 1353279, at *5 ("The first prong of the "intertwined-ness" analysis considers whether [the plaintiffs'] claims arise from the subject matter of the [agreements] with [the signatory defendant].").

The gravamen of the Amended Complaint is that Defendants made untrue, misleading and unfair statements to induce Plaintiffs to enter the Agreements. The arbitration agreements encompass "dispute[s] . . . arising out of or relating to this Agreement." The intertwined-ness prong is met because the Plaintiffs' claims arise from the subject matter of the Agreements. *See Ragone*, 595 F.3d at 128.

### b) Relationship

The second requirement to find equitable estoppel -- whether there is a close relationship among the signatories to the arbitration agreement and the non-signatory -- is satisfied where the non-signatory "would predictably become, with [plaintiffs'] knowledge and consent, affiliated or associated with [the non-party signatory] in such a manner as to make it unfair to allow [plaintiffs'] to avoid [their] commitment to arbitrate." *Sokol Holdings, Inc. v. BMB Munai, Inc.*,

---

neither party contends that North Carolina law governs this dispute, and all parties vigorously argue that Second Circuit law supports their position. Accordingly, this Opinion relies on Second Circuit law, which incorporates general principles of contract law. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010) (applying "common law principles of contract law" (citation omitted)).

542 F.3d 354, 361 (2d Cir. 2008).  For example, in *Dowe*, plaintiffs alleged that their former law firm in an employment action conspired with the opposing-party-employer to reach an unfavorable settlement.  *Dowe*, 419 F. Supp. 3d at 753-54.  The law firm sought to compel plaintiffs to arbitrate the claims under an arbitration agreement between the employer and employees.  The Court stated that the requisite relationship for estoppel purposes did not exist because "[a] client has no reason to foresee that her attorney may be aligned with her adversary." *Id*.

The Second Circuit has found a sufficient relationship where the non-signatory has a "corporate relationship to a signatory party."  *Ross v. Am. Express Co.*, 547 F.3d 137, 144 (2d Cir. 2008).  In these cases, "the *plaintiffs themselves* treated the signatory and non-signatory corporate affiliates as at least somewhat interchangeable with respect to the plaintiffs' rights and responsibilities under the relevant contract."  *Medidata Sols., Inc. v. Veeva Sys., Inc.*, 748 F. App'x 363, 363-64 (2d Cir. 20180 (summary order) (italics in original); *see JLM Indus., Inc.*, 387 F.3d at 178 (estoppel applied where the complaint admitted that the plaintiff purchased directly from the nonsignatory corporate parents even though the corporate parents did not sign the contracts); *Astra Oil Co. Inc. v. Rover Navigation, Ltd.*, 344 F.3d 276, 281 (2d Cir. 2003) (estoppel applied in part due to "the undisputed evidence of a close corporate and operational relationship between" the plaintiff and signatory); *Smith/Enron Cogeneration Ltd. P'Ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97-98 (2d Cir. 1999) (estoppel applied where the defendant treated both signatories and nonsignatories to the arbitration agreement as a single entity in filing claims against them in a related lawsuit).

The Second Circuit has also stated that there is "no unfairness" in denying estoppel when the non-signatory becomes "aligned or associated" with a signatory "by wrongfully inducing [the

8

signatory] to breach its obligation under [the] contract." *Sokol*, 542 F.3d at 362. In *Ross*, plaintiffs sued a third-party credit card issuer that allegedly conspired with their credit card issuers to commit antitrust violations. 547 F.3d 137. The defendant sought to apply an estoppel theory to compel arbitration under the contracts plaintiffs had signed with their own issuers. *Id*. at 146-148. The Second Circuit held that the requisite relationship between the parties was "utterly lacking" where the non-signatory's connection to plaintiff and the signatory was "as a third party allegedly attempting to subvert the integrity of the . . . agreements." *Id*. at 146.

The relatedness prong is not met in this case. Plaintiffs claim that Defendants wrongfully held themselves out as offering an independent endorsement of ACN. Plaintiffs were not aware that ACN was paying Defendants to promote and endorse the company, and, consistent with that understanding, Plaintiffs did not treat ACN and Defendants "as at least somewhat interchangeable with respect the plaintiffs' rights and responsibilities under the relevant contract." *Medidata Sols., Inc.*, 748 F. App'x at 363-64 (italics in original). Plaintiffs had no reason to know that Defendants were affiliated with ACN in a such a way that it would be unfair to allow Plaintiffs to avoid arbitration with Defendants, given their commitment to ACN to arbitrate. *See Sokol*, 542 F.3d at 361. Moreover, Plaintiffs allege that Defendants made untrue, misleading and unfair statements to induce Plaintiffs to enter the Agreements. This allegation is consistent with precedent where the Second Circuit found "no unfairness" in denying estoppel to a defendant aligned with the signatories to allegedly accomplish wrongful business practices. *See Sokol*, 542 F.3d at 362; *Ross*, 547 F.3d at 146 (no estoppel where the non-signatory was "a third party allegedly attempting to subvert the integrity of the . . . agreements.").

Defendants argue that, from an objective perspective, Plaintiffs could foresee that Defendants were affiliated with ACN. Defendants note that Plaintiffs joined ACN because "they

believed the endorsement of Mr. Trump that they saw on ACN videos, read about in ACN magazines and heard discussed at ACN meetings." Defendants contend that it was thus "predictable" that a dispute with ACN concerning the ACN business opportunity would likely implicate Mr. Trump.

This argument turns the Amended Complaint on its head. Defendants suggest that Plaintiffs knew that ACN and Defendants were aligned such that a contractual obligation to one should be construed as a contractual obligation with the other. But the Amended Complaint alleges the opposite -- that from the objective perspective of the Plaintiffs at the time they signed the Agreements, Defendants and ACN did not reveal themselves as financially and professionally tied, much less associated in a way that would cause Plaintiffs reasonably to predict that their contractual obligations to ACN would create the same obligations with Defendants. *See, e.g.,* Am. Compl, at ¶ 194.

Defendants are also mistaken that precedent supports their position. In *Ragone, Cooper*, and *Fensterstock*, the plaintiffs could reasonably foresee that the non-signatories were affiliated with the signatories to such a degree that it would be unfair to avoid the arbitration commitment. *See Ragone*, 595 F.3d at 128 (where plaintiff "admits that she knew from the date of her employment by [the signatory] that she would work with and be supervised by [non-signatory] personnel in the ordinary course of her daily duties"); *Cooper v. Ruane Cunniff & Goldfarb, Inc.*, No. 16 Civ. 1900, 2017 WL 3524682, at *6 (S.D.N.Y. Aug. 15, 2017) (where the defendant and non-party signatory "enjoyed a longstanding relationship that predates [plaintiff's] employment" and "[t]heir relationship [was] not only memorialized in the [contract], but apparent from their regular meetings."); *Fensterstock v. Educ. Fin. Partners*, No. 8 Civ. 3622, 2012 WL 3930647, at *5 (S.D.N.Y. Aug. 30, 2012) (where plaintiff "worked with [the non-signatory] almost from the

very beginning of his loan repayment" and the non-signatory served as the signatory's "agent for the servicing of [plaintiff's] loan."). Plaintiffs here not only were unaware of the affiliation between Defendants and ACN, but the business relationship was expressly hidden. *See cf. Medidata Solutions Inc.*, 748 F. App'x at 363 (estoppel is warranted where the "*plaintiffs themselves*" treat the signatory and non-signatory as "somewhat interchangeable"). Defendants similarly misplace their reliance on *Denney* and *Bankers Conseco Life Ins. Co.* Both state that a plaintiff cannot make conspiracy allegations that link a signatory and non-signatory and, on that basis, avoid arbitration with the non-signatory. *See Denney v. BDO Seidman, L.L.P*, 412 F.3d 58, 70 (2d Cir. 2005); *Bankers Conseco Life Ins. Co.*, 2018 WL 1353279, at *7. But this proposition was explicitly rejected by the Second Circuit in a more recent decision. *See Ross*, 547 F.3d 147 (the "application of estoppel in the context of conspiracy allegations is problematic . . . because arbitration is of course a matter of contract[, and] under general principles of contract law parties should not be compelled to arbitrate unless the totality of the evidence supports an objective intention to agree to arbitrate." (internal quotation marks omitted)).

   2. Agency

Defendants also rely on an agency theory to assert that Plaintiffs are contractually bound to arbitrate this dispute. "Generally, employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." *Dunmire v. Hoffman*, 5 Civ. 4852, 2006 WL 2466248, at *3 (S.D.N.Y. Aug. 24, 2006); *accord Ross*, 547 F.3d at 144 ("[T]his Court has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities."). This principle is inapplicable here.

Defendants contend that because the claims Plaintiffs assert against Defendants are intertwined with claims that they would have to arbitrate against ACN, Defendants in effect are

11

agents of ACN and are within the scope of the arbitration agreement between Plaintiffs and ACN.  This is not a correct application of governing agency law, which under the Agreements is North Carolina law.  "'There are two essential ingredients in the principal-agent relationship: (1) Authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent.'"  *Berens v. Berens*, 785 S.E.2d 733, 740 (N.C. 2016) (quoting *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 617 S.E.2d 664, 669 (N.C. 2005)).  Defendants do not establish either requirement here.  Accordingly, Defendants cannot enforce the arbitration agreement against Plaintiffs under an agency theory.

Moreover, an arbitration agreement will apply only to non-signatory agents who are "disclosed."  *Dunmire*, 2006 WL 2466248, at *3.  This is consistent with North Carolina agency law, as both express and implied authority require that the contracting party is aware that the agent can act on the principal's behalf.  *See Phelps-Dickson Builders, L.L.C.*, 617 S.E.2d at 669 (noting that authority only exists where "a third person, in the exercise of reasonable care, justifiably believed the principal had conferred such authority on the agent.").  As discussed above, a central allegation in the Amended Complaint is that Plaintiffs were unaware that Defendants were aligned with ACN.

### B. Waiver

Even assuming that Plaintiffs are estopped from refusing to arbitrate with Defendants -- and as discussed above, they are not -- they are relieved of an obligation to arbitrate the claims because Defendants waived any contractual right to arbitrate.  Courts in this circuit consider three factors when determining whether a party has waived its right to arbitrate: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice."  *La.*

*Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (citation and quotation marks omitted); *accord Policy Admin. Sols., Inc. v. QBE Holdings, Inc.*, No. 15 Civ. 2473, 2019 WL 4126464, at *7 (S.D.N.Y Aug. 30, 2019). All three of these factors weigh in favor of finding waiver in the particular circumstances of this case. *La. Stadium & Exposition Dist.*, 626 F.3d at 159 (application of these factors is "specific [to the] context of each particular case" and lacks a "rigid formula or bright-line rule.").

The first factor, time elapsed from when litigation was commenced until the request for arbitration, favors waiver. Plaintiffs filed the Complaint on October 29, 2018. Defendants did not request to arbitrate the claims until July 11, 2019, over eight months after the litigation began. *See PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108 (2d Cir. 1997) (finding waiver in part because "approximately five months passed between the time defendants asserted arbitrable claims and [the plaintiff] filed its petition to compel"); *Leadertex Inc. v. Morganton Dyeing and Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (finding waiver in part because the defendant "could have invoked the arbitration clause at the outset of the litigation" but instead "allowed seven months . . . to elapse . . . before seeking to enforce the contractual arbitration clause."); *Commercial Lubricants, LLC v. Safety-Kleen Systems, Inc.*, 14 Civ. 7483, 2018 WL 5045760 at *7 (E.D.N.Y. Oct. 17, 2018) (finding waiver in part because "Defendant waited seven months . . . to raise the arbitration issue").

The second factor -- the amount of litigation to date, including motion practice and discovery -- strongly favors waiver. "'The Second Circuit has generally found that a party waves its right to arbitrate when it engaged in protracted litigation, such as extensive pre-trial discovery and substantive motions over the course of several months before seeking arbitration.'" *Policy Admin. Sols., Inc.*, 2019 WL 4126464, at *8 (quoting *Katsoris v. WME IMG, LLC*, 237 F. Supp.

13

3d 92, 101 (S.D.N.Y. 2017)). As of the date of this Opinion, over 220 entries have been made on the Court's docket, the majority of which involve complex and substantive issues. The Court has fully adjudicated a motion to dismiss, a motion to proceed pseudonymously, multiple motions to seal, and multiple discovery disputes involving the parties and non-parties. The Court has issued three successive scheduling orders and has held multiple conferences to discuss these matters. Since the discovery stay was lifted in September 2019, the Court understands that Defendants have served at least eight document preservation subpoenas on third parties and that discovery between the parties has otherwise been pursued aggressively. The litigation continues; Defendants recently applied to be removed from their agreement to allow Plaintiffs to proceed under pseudonyms, and several discovery disputes have been submitted to the Court and are pending. This amount of litigation is consistent with prior decisions where the court found waiver. *See S&R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83-85 (2d Cir. 1998) (finding waiver in part because the party seeking to compel arbitration had filed a counterclaim, made extensive discovery requests, participated in two settlement conferences, attempted to move to dismiss the action and attempted to stay proceedings); *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) (finding waiver in part because defendant "engaged in extensive pretrial litigation, apparently designed to wear down his opponent," filed several dispositive pretrial motions and appealed the denial of one before seeking to compel arbitration).

The third factor -- prejudice to Plaintiffs -- similarly favors waiver. "Substantive prejudice may be demonstrated 'when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration.'" *Meridian Autonomous Inc. v. Coast Autonomous LLC*, No. 17 Civ. 5846, 2018 WL 4759754, at *4 (S.D.N.Y. Sept. 30, 2018) (quoting *Kramer*, 943 F.2d at 179). Such prejudice also exists if the defendant seeks to benefit

from information obtained through judicial proceedings that would be unavailable in arbitration. *See LG Elecs., Inc. v. Wi-Lan USA, Inc.*, 623 F. App'x 568, 569-70 (2d Cir. 2015) (summary order) (citing *La Stadium*, 626 F.3d at 160)); *accord United States for use of Preferred Masonry Restoration, Inc. v. Int'l Fid. Ins. Co.*, No 17 Civ. 1358, 2019 WL 4126473, at *6 (S.D.N.Y. Aug. 30, 2019). "A litigant is not entitled to use arbitration as a means of aborting a suit that did not proceed as planned in the District Court." *La. Stadium & Exposition Dist.*, 626 F.3d at 161.

Defendants aggressively litigated in this judicial forum for eight months before informing Plaintiffs of their intent to arbitrate the surviving claims. Defendants obtained the benefits of litigating in federal court -- dismissal of the racketeering claims, a stay of discovery while the motion was pending, and the issuance of numerous non-party subpoenas that would not have been available in arbitration. These wins and benefits on the defense side represent defeats and prejudice on the Plaintiffs' side. Now that Defendants have extracted what they can from the judicial proceedings, they seek to move to a different forum. This conduct is both substantively prejudicial towards Plaintiffs and seeks to use the FAA as a vehicle to manipulate the rules of procedure to Defendants' benefit and Plaintiffs' harm. Such tactics undermine a fundamental purpose of the FAA to support the economical resolution of claims. *See Gingras v. Think Fin., Inc.*, 922 F.3d 112, 127 (2d Cir. 2019) ("[T]he just and efficient system of arbitration intended by Congress when it passed the FAA may not play host to . . . farce") (internal quotation omitted).

Defendants, over many months of litigation, never suggested that they might seek to arbitrate this dispute. If Defendants had revealed such an inclination, the Court -- in the interest of fairness and efficiency -- would have directed Defendants to file the motion to compel arbitration first and decided the appropriate forum before making any decision on the merits.

## IV. CONCLUSION

For the foregoing reasons, Defendants motion to compel arbitration is DENIED. The Clerk of Court is respectfully directed to close Docket No. 113.


SO ORDERED.

Dated: April 8, 2020
      New York, New York