The parties are advised that the Court is likely to rule on the letters.  To the extent that there are additional factual or legal arguments the parties would like to present to the Court, the parties shall file any final letters, not to exceed three pages, by April 27, 2020.

Dated: April 22, 2020
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

April 20, 2020

**BY ECF**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:     *Jane Doe, et al.* v. *The Trump Corporation, et al.,* 18-cv-09936 (LGS)

Dear Judge Schofield:

We write on behalf of Plaintiffs in response to Defendants' April 13, 2020 letter ("April 13 Letter") (Doc. No. 237) requesting a stay of all proceedings in this matter pending Defendants' interlocutory appeal to the Second Circuit of the Court's April 8, 2020 Order ("Order") (Doc. No. 229) denying their motion to compel arbitration.

This stay request is just the latest of Defendants' efforts to impede any and all progress in this litigation.  The Court has repeatedly rejected Defendants' stall tactics, and should do so again here, as all the factors that courts consider in evaluating a request for a stay pending appeal weigh strongly against the imposition of a stay.   To summarize:  Defendants make no effort to demonstrate a likelihood of success on the merits; the ordinary costs of litigating a civil case do not rank as "irreparable injury"; and both the balance of the equities and the public interest decisively favor allowing this case to proceed while Defendants pursue their interlocutory appeal.

**1. *Defendants' appeal is plainly meritless.*** Although the first and single most important factor is whether Defendants have shown a "likelihood of success on the merits," *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002), Defendants do not even try to meet that test by its terms. Instead, they resort to an alternative method of satisfying this first factor—under which they must both (1) identify "sufficiently serious questions *going to the merits* to make them a fair ground for litigation" and (2) demonstrate that "the balance of hardships tips *decidedly*" in their favor. *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (first emphasis added).  (*See* April 13 Letter at 2).  To be clear, even under this alternative standard, Defendants still cannot escape the merits:  they must show sufficiently serious merits issues to justify extraordinary relief.   And a matter of law, demonstrating a "mere possibility" of success is not enough.  *See Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638,

KAPLAN HECKER & FINK LLP

641 (S.D.N.Y. 2012); *see also In re Anderson*, 560 B.R. 84 (S.D.N.Y. 2016) (holding that "the presence of a contradictory legal framework and the existence of some possibility of success on appeal alone carry insufficient weight to provide a basis for granting a stay pending appeal").

Defendants fall woefully short of raising serious questions going to the merits. In fact, they fail to address the merits *at all*. Rather, they simply assert—without argument or any substantive response to this Court's opinion—that their "appeal is meritorious, for the reasons briefed to the Court." (April 13 Letter at 2.) The reason Defendants make no argument is presumably because they have no argument: after thorough briefing, the Court faithfully applied governing precedent and denied Defendants' motion on two independent grounds. First, consistent with the plain text of the relevant contract, the Court found that there is no arbitration agreement here because Plaintiffs never agreed to arbitrate with Defendants. (Order at 6-12.) Second, and separately, the Court held that even if such an agreement existed, Defendants have waived any rights to compel arbitration in this case. (Order at 12-15.) Defendants do not bother to explain how the Court erred, much less identify any "serious questions" bearing on the Court's analysis likely to result in reversal. *Citigroup*, 598 F.3d at 35. Merely resuscitating their meritless arguments does not raise any "serious questions;" if it did, that requirement would be rendered meaningless. Moreover, Defendants' prospects for success on appeal are especially grim because there are two alternative grounds on which the Court's opinion can and should be affirmed. *See In re Albicocco*, No. 06 Civ 3409, 2006 WL 2620464, at *2 (E.D.N.Y. Sept. 13, 2006) (Bianco, J.) (denying stay and emphasizing that movant could not show likelihood of success on the merits unless it demonstrated likely appellate reversal on *each* of the independent grounds on which its motion was denied).

Further, since the completion of briefing on Defendants' motion to compel in September 2019, new evidence has emerged in discovery that only reinforces the Court's holding that Plaintiffs never agreed to arbitrate with Defendants. Specifically, contracts between ACN and Defendants—produced by Defendants in January 2020—explicitly confirm that "no Party is or can or shall be deemed to be an agent or employee of another Party for any purpose." (TTO_000485.) This new evidence bolsters the Court's conclusion that Defendants were not agents of ACN (*see* Order at 11-12), and further diminishes any remote possibility that Defendants will persuade the Court of Appeals that they are somehow a party to the arbitration agreement between ACN and Plaintiffs. *See Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 418 (S.D.N.Y. 2004) (lifting a previously entered stay where the party opposing the stay came forward with new evidence that reduced the likelihood of success). This new evidence might also explain why Defendants are so desperate to halt discovery: that process has already unearthed documents that refute their arguments, including but not limited to their arguments bearing on arbitrability.

Having failed to identify any serious questions going to the merits, Defendants are not entitled to a stay pending appeal. *See Citigroup*, 598 F.3d at 35. But as noted above, there is more. Because Defendants seek a stay based only on supposed "serious questions," rather than an actual likelihood of success, Defendants must "additionally establish that the balance of hardships tips *decidedly* in [their] favor." *Id.* at 35. For the reasons given below, Defendants come nowhere close to making that additional showing, which independently forecloses their request for a stay.

**2. *Defendants will not suffer irreparable harm absent a stay.*** The only "irreparable harm" that Defendants identify is the "harm of continued litigation." (April 13 Letter at 3). It is

KAPLAN HECKER & FINK LLP

3

well established, however, that the mere process, inconvenience, and expense of litigation do not rise to the level of "irreparable harm." *See, e.g.*, *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980) ("[M]ere litigation expenses, even substantial and unrecoupable cost, does not constitute irreparable injury."); *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784, 2013 WL 5405696, at *4 (S.D.N.Y. Sept. 17, 2013) ("A stay is inappropriate here because the only 'irreparable harm' identified by Defendants is the cost of continuing to litigate this action."). Defendants' familiar complaints about the scope of discovery do not alter this basic principle and are unavailing in any event. Discovery in this case is neither overbroad nor unduly burdensome; it is precisely calibrated to the scope of Plaintiffs' claims and has been carefully overseen by the Court at all stages. As a matter of law, continued litigation here is not "irreparable injury."

That principle does not yield simply because Defendants gesture at a supposed arbitration agreement (albeit one that does not even bind these parties and that Defendants have waived any purported right to invoke). Courts in the Second Circuit have repeatedly held that continued litigation does not constitute "irreparable injury" for purposes of a stay pending appeal of denial of a motion to compel arbitration; many of these courts have noted that, in the event of reversal, "[a]ny depositions or other discovery taken [in litigation] during the pendency of the appeal could be used in any arbitration[] that eventually might take place." *United States v. Stein*, 452 F. Supp. 2d 281, 283 (S.D.N.Y. 2006); *see also LifeTree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC*, No. 14 Civ. 9075, 2017 WL 4862792, at *3 (S.D.N.Y. Oct. 27, 2017); *In re Anderson*, 560 B.R. at 92; *Hatemi v. M & T Bank Corp.*, No. 13 Civ. 1103S, 2015 WL 224421, at *2 (W.D.N.Y. Jan. 15, 2015); *Manigault v. Macy's E., LLC*, No. 06 Civ 3337, 2008 WL 238566, at *1 (E.D.N.Y. Jan. 28, 2008); *Adams v. Suozzi*, 393 F. Supp. 2d 175, 178 (E.D.N.Y. 2005).

In an effort to sidestep the well-established rule in this Circuit that continued litigation does not amount to irreparable injury, Defendants cite *Meyer v. Kalanick*, 203 F. Supp. 3d 393, 396 (S.D.N.Y. 2016)—an outlier ruling—for the proposition that a court must stay proceedings if a party has filed a nonfrivolous appeal from an order denying arbitration. (April 13 Letter at 3.) In *Meyer*, Judge Rakoff granted a stay even though he found that the movant was *unlikely* to succeed on the merits and even though he deemed the public interest and balance of equities "largely irrelevant." *Id.* He justified this result with sole reference to the risk of irreparable injury, relying not on the specific facts before him, but instead on broad policies he discerned in the Federal Arbitration Act. *See id.* at 396-97. There is a good reason why the prevailing view in the Second Circuit is at odds with *Meyer*: it is inconsistent with *Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 53-54 (2d Cir. 2004). In that case, "the Second Circuit held that a district court has jurisdiction to proceed with a case despite the pendency of a non-frivolous appeal from an order denying a motion to compel arbitration." *Denney*, 362 F. Supp. 2d at 417–18; *see also Motorola*, 388 F.3d at 53 ("We hold that, although defendants' appeal was not frivolous, the District Court did have jurisdiction to continue with the case in the absence of a stay from this Court."); *Lucy v. Bay Area Credit Serv. LLC*, No. 3:10 Civ 1024, 2011 WL 13344167, at *2 (D. Conn. July 28, 2011) (rejecting litigation-as-irreparable-harm argument in arbitration setting because holding "otherwise would practically eliminate the court's discretion over whether to issue a stay" following an interlocutory appeal). Simply put, there is no basis in law or fact for treating routine litigation costs as "irreparable injury" when a party seeks to stay proceedings pending appellate review of denial of a motion to arbitrate. That is clear under binding Second Circuit law.

KAPLAN HECKER & FINK LLP

Defendants' assertions of irreparable harm are also strikingly out of key with their failure to seek expedited resolution of their interlocutory appeal. *See, e.g., Anderson*, 560 B.R. at 91 (observing that a party's failure to request expedited appeal "signals that the probability of harm . . . is not imminent"). For this reason, Defendants' reliance on *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 644 (S.D.N.Y. 2012), is misplaced. In *Sutherland*, the district court granted a stay on the condition that the defendant would "apply[] to the Second Circuit for an expedited briefing schedule." 856 F. Supp. 2d at 644. Defendants conspicuously have not done so here—which further confirms that continued litigation in this Court does not constitute "irreparable injury."

**3.** *A stay will inflict substantial injury on Plaintiffs.* While Defendants contend that "Plaintiffs will suffer no genuine prejudice from a stay" other than a "brief delay in resolution of their claims," that is unrealistic at best. (April 13 Letter at 4.) An indefinite delay to allow (non-expedited) appellate proceedings to unfold would severely prejudice Plaintiffs' ability to obtain discovery and secure a prompt resolution of their claims. *See Dreyfuss v. eTelecare Global Solutions-US, Inc.*, No. 1:08 Civ. 1115, Doc. No. 27 at 3 (S.D.N.Y. Dec. 12, 2008) ("[T]he Court also recognizes that if its decision is affirmed by the Circuit, Plaintiff would be harmed by staying discovery in this matter for an indefinite period of time.").

From the very outset of this litigation, Defendants have engaged in a relentless campaign of dilatory tactics to deny Plaintiffs' rights to prosecute their consumer fraud claims. In the past few months alone, Defendants waited until the last minute to renege on their agreement to jointly request a discovery extension from this Court; made a plainly deficient initial production of documents; and spent weeks ignoring Plaintiffs' request to meet and confer regarding those deficiencies. (Doc. No. 171.) Following motion practice and an order from this Court, the parties reached agreements in principle about the scope of further productions and the provision of additional information (Doc. No. 209), but to date Defendants have failed to make any further productions or provide any additional information.

In short, issuing a stay would only reward Defendants' foot-dragging and exacerbate the prejudice Plaintiffs have already suffered as a result. That result is not just unfair; it is contrary to law. Where, as here, "discovery has been an uphill battle from the beginning," further delay "in and of itself, would constitute substantial injury." *Daniels v. City of New York*, 138 F. Supp. 2d 562, 565 (S.D.N.Y. 2001); *see also id.* ("To now postpone production of key discovery in the hope of [Defendants'] obtaining an unlikely reversal would only serve to further delay the progress of this lawsuit."). Plaintiffs' risk of substantial injury from a stay is particularly pronounced, "given that discoverable evidence tends to become less reliable with the passage of time, and given that the appeal in this case is not expedited." *Lucy*, 2011 WL 13344167, at *2.

**4.** *Issuing a stay would undermine the public interest.* Defendants contend that the "public interest also favors a stay" because this case is a "private dispute that does not directly implicate any public entity or public interest." (April 13 Letter at 4.) That is also incorrect.

Prompt resolution of this case is paramount given the nature of Plaintiffs' class-wide consumer fraud claims against Defendants. *See Lucy*, 2011 WL 13344167, at *2 ("The public has a strong interest in resolving whether [Defendant] is involved in illegal debt collection practices."). Indeed, the gravamen of Plaintiffs' complaint is that Defendants spent more than a decade using

KAPLAN HECKER & FINK LLP                                                                        5

their vast influence and celebrity to defraud working-class Americans out of huge sums of money. While courts have held that cases like this raise matters of grave and legitimate public concern in general, that argument is obviously even stronger here given Defendants' current positions of national responsibility. *See Daniels*, 138 F. Supp. 2d at 565 (holding that "the most expeditious resolution of this matter [was] in the public's best interest" where plaintiffs were "litigating a controversial matter of serious public concern"); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 306 (S.D.N.Y. 2012) (finding that expeditious resolution would "further an important public interest" where plaintiffs sought to "vindicate [consumer] rights").

Defendants' last-ditch invocation of the "emphatic federal policy in favor of arbitral dispute resolution" is also unavailing. (April 13 Letter at 4.)  The FAA's pro-arbitration policy has no application where—as here—the parties never agreed to arbitrate in the first place. *See Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 298 (2010) ("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute").  This Court would not further any statutory policy, or advance the public interest, by staying important litigation while Defendants appeal a well-reasoned decision ruling against them on two independent grounds, both of which are fully in line with binding precedent and neither of which raises any serious question going to the merits.

Finally, Defendants insist that a stay is necessary to further the public's interest in promoting "judicial economy."[1]  (April 13 Letter at 4.)  Defendants' professed concern for judicial economy is hard to credit given their documented pattern of obstruction and delay.  As the Court has recognized, Defendants made the self-serving decision to "aggressively litigate[] in this judicial forum for eight months before informing Plaintiffs of their intent to arbitrate the surviving claims." (Order at 15.)  As a result, Defendants have only themselves to blame for any needless expenditure of this Court's time and resources.  In fact, as this Court has noted, Defendants' delay tactics "undermine a fundamental purpose of the FAA to support economic resolution of claims." (Order at 15.)

* * *

In conclusion, all four stay factors support denial of a stay:  Defendants' appeal is unlikely to succeed and raises no serious questions going to the merits; Defendants will suffer no irreparable harm absent a stay; the issuance of a stay would prejudice Plaintiffs; and the public interest in swift administration of justice favors denial of a stay.  Defendants' request for a stay should be denied.

Respectfully submitted,

Roberta A. Kaplan

---

[1] While Defendants seek to rely on *Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P.*, 55 F. Supp. 2d 231 (S.D.N.Y. 1999), that decision has no application here.  In *Satcom*, the district court did not even apply the four stay factors; instead, it stayed proceedings based on the proposition (subsequently rejected by the Second Circuit in *Motorola*) that it lacked jurisdiction "during [the] pendency of an appeal under Section 16(a)" of the FAA. *Id.* at 236.