SPEARS & IMES LLP

51 Madison Avenue
New York, NY 10010
tel  212-213-6996
fax 212-213-0849

Joanna C. Hendon
tel 212-213-6553
jhendon@spearsimes.com

**Via ECF**                                        April 27, 2020
Honorable Lorna G. Schofield
United States District Judge
40 Foley Square, Courtroom 1106
New York, New York 10007

Re: *Jane Doe, et al. v. The Trump Corporation, et al.*, 18-cv-09936 (LGS)

Dear Judge Schofield:

This case presents "serious questions" going to the merits for the Second Circuit in its *de novo* review[1] particularly given the "emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011). Moreover, the equitable factors in the stay-pending-appeal analysis weigh strongly in favor of a stay given that Defendants will suffer irreparable harm without one, and both the balance of hardships and the public interest also support a stay. Given the importance of these issues to both parties, Defendants respectfully request permission to file a letter of four rather than three pages.

In response, Plaintiffs misstate the law in two respects. *First*, they are wrong about the test for evaluating the first factor under *Nken v. Holder*, 556 U.S. 418 (2009). The Second Circuit has recognized that the "serious questions" on appeal test gives the district court "flexibility in the face of varying factual scenarios" by not "[r]equiring in every case a showing that ultimate success on the merits is more likely than not." *Citigroup*, 598 F.3d at 35. "The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors," and "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (internal alterations omitted).[2]

*Second*, Plaintiffs fundamentally misapprehend the import of the Federal Arbitration Act in the context of a stay pending appeal of a decision *not* to enforce an arbitration agreement. As Defendants explained in their opening letter, Congress's decision to authorize an interlocutory appeal from any denial of arbitration evinces a congressional determination that the harm of continued litigation is typically irreparable. *See Meyer v. Kalanick*, 203 F. Supp. 3d 393 (S.D.N.Y. 2016). Plaintiffs' response is to criticize *Meyer* as "an outlier ruling" that "is inconsistent with *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004). (ECF No. 248 at 3.) This is demonstrably wrong in both respects. *Meyer* has been cited approvingly and otherwise stands in good company with the decisions of this Court and other courts. *See, e.g.*, *Starke v. SquareTrade, Inc.*, 16-CV-7036, 2017 WL 11504834, at *2 (E.D.N.Y. Dec. 15, 2017); *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 643 (S.D.N.Y. 2012). Neither *Meyer* nor any other of these cases is inconsistent with *Uzan*. *Uzan* stands only for the proposition that a nonfrivolous interlocutory

---

[1] *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

[2] Plaintiffs are also incorrect that Defendants "conspicuously have not" moved for expedited appeal (ECF No. 248 at 4), since the opportunity for their seeking a briefing schedule (of any length) has not presented itself under Second Circuit Local Rule 31.2.

appeal of a decision adverse to arbitration does not *automatically* stay proceedings in the district court. In the majority of courts that have considered that issue, a stay is *always granted* in such circumstances.[3] *Uzan* thus means only that, in this circuit, a stay pending appeal is not automatic, but rather a determination to be made on a case-by-case basis. *Meyer* simply recognizes that this determination *ordinarily* should be made in favor of a stay given that allowing litigation to proceed often will destroy the very arbitral rights that are the subject of the appeal. *See Meyer*, 203 F. Supp. 3d at 396; *Starke*, 2017 WL 11504834 at *2; *Sutherland*, 856 F. Supp. 2d at 643. Plaintiffs rely on *Denney v. Jenkins & Gilchrist*, 362 F. Supp. 2d 407 (S.D.N.Y. 2004) and its discussion of *Uzan*— ostensibly as proof that *Meyer* is inconsistent with *Uzan*—but of course, the Second Circuit promptly granted a stay pending appeal in that case after the district court failed to halt the proceedings. *See Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 64 (2d Cir. 2005) (defendants' "emergency motions in this Court seeking a stay of the district court proceedings pending appeal" were granted). Under a correct application of the law, a stay pending appeal is warranted. In particular, Defendants are likely to succeed, or at least present serious questions, on both the relationship test for equitable estoppel and the timeliness of their arbitration motion. On top of that, the balance of harms tips decidedly in favor of a stay.

<u>The Relationship Test.</u>  The Court fails to take into account relevant allegations in the Complaint, finding Plaintiffs understood Mr. Trump to be "independent" of ACN, because they believed his endorsement was unpaid. From that premise the Court concludes Plaintiffs could not reasonably have agreed to arbitrate with Mr. Trump when they agreed to arbitrate with ACN, such that it would be unfair to require them to do so now. (ECF No. 229 at 9.) But the Complaint does not allege Plaintiffs understood Mr. Trump to be independent of ACN. To the contrary, the Complaint alleges that ACN and Mr. Trump aggressively and publicly promoted their relationship for years, with the express purpose of enlarging ACN's network and recruiting new IBOs. (*See* Am. Compl. ¶¶ 3, 16, 17, 85-87, 96, 101, 144, 146-147, 173, 174, 177.) Whether Plaintiffs believed the endorsement was paid or unpaid is irrelevant, given these allegations. Under the circuit's precedent, the only question for the Court is whether it is fair to require Plaintiffs, who agreed to arbitrate with ACN disputes relating to the IBO Agreements they signed, to arbitrate such disputes with the spokesman they claim induced them – by "repeatedly, explicitly and bombastically endorsing [ACN] and touting his "special relationship" with its founders – to enter into those contracts. (Am. Compl. ¶¶ 17, 146.)

In this regard, the Court exceeded its mandate to consider "all relevant" evidence and draw only "reasonable inferences" therefrom.[4] While the Court found "Defendants and ACN did not reveal themselves as financially and professionally tied" (ECF No. 229 at 10), the Complaint is replete with allegations reflecting the transactional nature of the relationship.[5]  "Serious questions"

---

[3] *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 214 (3d Cir. 2007); *Levin v. Alms & Assocs.*, 634 F.3d 260, 263 (4th Cir. 2011); *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 506 (7th Cir. 1997); *McCauley v. Halliburton Energy Servs., Inc.*, 413 F.3d 1158, 1160 (10th Cir. 2005); *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251-52 (11th Cir. 2004); *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, No. 02–7125, 2002 WL 31818924, at *1 (D.C. Cir. Dec. 12, 2002).

[4] *Starke v. Square Trade, Inc.*, 913 F.3d 279, 281 n.1 (2d Cir. 2019).

[5] *See, e.g.,* Am. Compl. n. 66 at 02:29 ("ACN and everyone involved has really enjoyed their partnership with you, have you enjoyed the partnership with them? I have and we've just extended it so I'm very happy about that"); *id.* n. 75 at 07:17 ("let's talk about the extended relationship that you have with ACN"); *id.* n. 70 at 02:08  ("[Y]ou obviously speak for a lot of companies, you see a lot of organizations"); *see also* ECF No. 85 "Chen Aff.", Exh. 3 at 23 ("When Donald Trump was negotiating with ACN to personally endorse the company and speak at their events, he made it clear that he

thus exist as to whether the inference, central to the Court's opinion, that Plaintiffs were familiar enough with Mr. Trump's celebrity to find him a compelling spokesman for would-be entrepreneurs, but deaf to his reputation for promoting his brand for money, will survive scrutiny.

<u>Timeliness.</u>  Under *La Stadium & Exposition Dist. v. Merrill Lynch*, 626 F.3d 156, 159 (2d Cir. 2010), the Court focuses almost entirely on events that transpired *after* Defendants notified the Court of their intention to compel Plaintiffs to arbitrate on July 19, 2019, and not the time elapsed "until the request for arbitration," *id.*, as it must.  The "eight months of litigation" to which the Court refers consisted of Defendants' motion to dismiss for failure to state a claim and an ancillary motion for a stay of discovery pending decision on that motion, activity that, on its own, no court in this circuit has found constitutes waiver.  As of July 19, 2019, the Court had held one conference with the parties  (not "multiple" proceedings" (ECF No. 229 at 14) and made a single substantive ruling for Defendants, to stay discovery pending decision on their Rule 12(b)(6) motion, which it did orally and without formal briefing or procedural to-do.  As for the "three successive scheduling orders" cited by the Court, *id.*, none had issued by July 19, and while it is true the Court adjudicated "multiple motions to seal and multiple discovery disputes" raising "complex and substantive issues," *id.*, these all post-date July 19, and the majority stem from Plaintiffs' excessive third party discovery – which came about solely because the Court denied Defendants' repeated requests that it follow the prevailing practice of this circuit and stay discovery pending decision on the motion to compel arbitration (ECF Nos. 101, 104, 114, 133, 177) and then took more than six months to decide the motion.  Defendants initiated none of the motion practice addressed to discovery in this case, and since September 5, 2019, when the Court lifted the stay imposed with the filing of the Rule 12(b)(6) motion, Defendants have served only one third party subpoena, for records previously sought in a Rule 45 subpoena issued by Plaintiffs.  (ECF No. 197 at 7.)

We also believe the Court's prejudice holding is wrongly decided.  The Court concludes Defendants have "benefit[ted] from information obtained through judicial proceedings that would be unavailable in arbitration," (ECF No. 229 at 14-15), ignoring that the AAA rules expressly permit parties to move to dismiss for failure to state a claim, *see* AAA Commercial Rules, R-33, and finds that "hav[ing] extracted what they can from the judicial proceedings," Defendants now "seek to move to a different forum. . . to use the FAA as a vehicle to manipulate the rules of procedure to [their] benefit and Plaintiffs' harm."  (ECF No. 229 at 15.)  Had Defendants "revealed" their intention to compel arbitration sooner, the Court finds, it "would have directed Defendants to file their motion to compel arbitration first and decided the appropriate forum before making any decision on the merits" of their motion to dismiss.  (*Id.*)  But these statements ignore undisputed facts.  *First*, until September 11, 2019, Defendants did not know the names of Plaintiffs and therefore could not have obtained their arbitration agreements any earlier – a direct result of the Court's decision, over Defendants' objection, to allow Plaintiffs to proceed anonymously not only on the docket but also from Defendants.  *Second*, Defendants "revealed" their intention to move to compel the case to arbitration before the Court decided the Rule 12(b)(6) motion, not afterwards, affording the Court the very opportunity it contends was lost.  On July 19, before the Court decided the motion to dismiss, Defendants wrote, in relevant part, "**[b]ecause the contemplated motion to compel arbitration would be dispositive, if granted, and because there is already pending a dispositive motion, we write respectfully to request the Court's guidance as to how to**

---

would not be doing it 'for the money.'  He has plenty of money, so something else had to be the deciding factor.  For him, it came down to the four ACN co-founders."); *id.*, Exh. 4 at 20 (same); *id.*, Exh. 5 at 68 (Trump's endorsement "not just a business deal between ACN and Donald Trump.").

**proceed**."  (ECF No. 94 (emphasis added.))  The Court made no response to that letter, proceeding instead to dismiss the RICO claims.  It is unlikely a reviewing Court would find prejudice on these facts.  (*See* ECF No. 114 at 16-20).  At the very least, the Court's decision to allow Plaintiffs to proceed anonymously hindered Defendants' ability to move this case to arbitration, circumstances which further underscore the serious questions going to the merits here.[6]

The Balance of Harms Tips Decidedly in Favor of a Stay.  In many cases, an interlocutory appeal is not a reason to halt proceedings in district court because the burden of continued litigation is not an irreparable harm.  But in a case where the district court has refused to enforce an arbitration agreement, continued litigation risks irreparably harming the appellants' arbitral rights in the absence of a stay.  This is precisely why Congress afforded a right to an interlocutory appeal *to all parties in Defendants' posture*.  9 U.S.C. § 16.  This is a congressional recognition of the fact that the harm of litigating is real, cognizable, and ordinarily irreparable.  Plaintiffs are wrong to suggest that the burden is mere "litigation expenses."  Neither *FTC v. Standard Oil Co.*, 449 U.S. 232 (1980) nor *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784, 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013) involved an appeal under the FAA.[7]  Plaintiffs argue that delaying discovery would by, itself, "constitute substantial injury" under *Daniels v. City of New York*, 138 F. Supp. 2d 562 (S.D.N.Y. 2001), (ECF No. 248 at 4), but the *Daniels* plaintiffs were challenging alleged ongoing widespread racial profiling by the NYPD, and while most evidence becomes "less reliable with the passage of time," *Lucy v. Bay Area Credit Serv LLC*, No. 3:10-CV-1024 (JCH), 2011 WL 13344167, at *2 (D. Conn. July 28, 2011), Plaintiffs have themselves to blame for waiting until October 2018 to bring a case based on events dating back to 2013.  Nor do the *Daniels* decision or *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 306 (S.D.N.Y. 2012), which involved allegations of gender discrimination, support the notion that Plaintiffs' purely private claims implicate the public interest.

Respectfully submitted,

*/s/ Joanna C. Hendon*

Joanna C. Hendon

---

[6] The Court committed numerous subsidiary errors, asserting, for example, that "the parties agreed to a protective order, which provided that Plaintiffs' identities would be disclosed only to defense counsel and their agents" (ECF No. 229 at 5 n.2), when Defendants strenuously objected to that order (ECF 104 at 9 ("whether and to what extent Plaintiffs will be permitted to proceed pseudonymously during merits discovery or at trial is not before the Court, and Defendants oppose Plaintiffs' bid to settle that issue now, in their favor, via debates about the scope of a protective order.")); and holding that *Ross* "explicitly rejected" the proposition that a plaintiff may not make conspiracy allegations against a signatory and non-signatory and avoid arbitration with the non-signatory (ECF No. 229 at 11), when the *Ross* panel simply declined to apply it to the facts before it, and it is the "longstanding rule of our Circuit that a three-judge panel is bound by a prior panel's decision until it is overruled either by this Court sitting *en banc* or by the Supreme Court."  *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 378 (2d Cir. 2016).

[7] The arbitration cases Plaintiffs cite are inapposite.  *See LifeTree Trading Pte., Ltd. v. Washakie Renewable Energy, LLC*, No. 14-CV-9075 (JPO), 2017 WL 4862792, at *1-2 (S.D.N.Y. Oct. 27, 2017) (arbitration first raised after "almost three years" of litigation); *Adams v. Suozzi*, 393 F. Supp. 2d 175, 177 (E.D.N.Y. 2005) (seeking a stay only after the court's deadlines had passed); *United States v. Stein*, 452 F. Supp. 2d 281, 283 (S.D.N.Y. 2006) (seeking to arbitrate the claims for legal fees of criminal defendants whose case was already scheduled for trial).