MANDATE

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of July, two thousand twenty-one.

Before:    Robert D. Sack,
           Denny Chin,
           Raymond J. Lohier, Jr.,
                *Circuit Judges.*

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sep 24 2021

Jane Doe, Luke Loe, Richard Roe, Mary Moe, individually and on behalf of all others similarly situated,

              Plaintiffs - Appellees,

v.

Trump Corporation, Donald J. Trump, Donald J. Trump, Jr., Eric Trump, Ivanka Trump,

              Defendants - Appellants,

ACN Opportunity, LLC,

              Non-Party - Appellant.

---

**JUDGMENT**

Docket Nos. 20-1228(L), 20-1278(CON)

The appeals in the above captioned case from orders of the United States District Court for the Southern District of New York were argued on the district court's record and the parties' briefs. Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the orders of the district court denying the defendants' and ACN's motions to compel arbitration are AFFIRMED.

For the Court:
Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 09/24/2021

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2020

(Argued: December 01, 2020    Decided: July 28, 2021)

Docket Nos. 20-1228-cv/20-1278-cv

———————————————

JANE DOE, LUKE LOE, RICHARD ROE, MARY MOE,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,
*Plaintiffs-Appellees,*

v.

THE TRUMP CORPORATION, DONALD J. TRUMP, DONALD J. TRUMP, JR.,
ERIC TRUMP, IVANKA TRUMP,
*Defendants-Appellants,*

ACN OPPORTUNITY, LLC,
*Non-Party Appellant.*

———————————————

Before:        SACK, CHIN, AND LOHIER, *Circuit Judges.*

The anonymous plaintiffs-appellees brought a putative class action in the

United States District Court for the Southern District of New York against the

defendants-appellants, The Trump Corporation, Donald J. Trump, and various

members of his family, asserting claims for racketeering in violation of 18 U.S.C.

§ 1962(c), conspiracy to conduct the affairs of a racketeering enterprise in violation

of 18 U.S.C. § 1962(d), dissemination of untrue and misleading public statements

in violation of California law, unfair competition in violation of California law, unfair and deceptive trade practices in violation of Maryland and Pennsylvania law, common-law fraud, and common-law negligent misrepresentation. The plaintiffs-appellees allege that the defendants-appellants fraudulently induced them to enter into business relationships with non-party appellant, ACN Opportunity, LLC ("ACN"), by making a series of deceptive and misleading statements. The defendants-appellants moved to compel arbitration under principles of equitable estoppel. After the plaintiffs-appellees sought third-party discovery from ACN, ACN also moved to compel arbitration. The district court (Lorna G. Schofield, *Judge*) denied both motions to compel. The defendants-appellants and ACN both appeal the denial of their motions. We conclude that: (1) the defendants-appellants may not compel the plaintiffs-appellees to arbitrate their dispute on equitable estoppel grounds; and (2) the district court may not compel arbitration as to ACN's discovery dispute because the court lacked an independent basis for subject-matter jurisdiction over the parties' dispute. We therefore

     AFFIRM.

                                                  ROBERTA A. KAPLAN, Kaplan Hecker & Fink, LLP, New York, NY (John C. Quinn, Joshua

Matz, Alexander J. Rodney, Raymond P. Tolentino, Michael Skocpol, Kaplan Hecker & Fink, LLP, New York, NY, and Andrew G. Celli, Jr., O. Andrew F. Wilson, Emery Celli Brinckerhoff Abady Ward & Maazel LLP, New York, NY, *on the brief*), *for Plaintiffs-Appellees;*

THOMAS R. MCCARTHY (Tiffany H. Bates, *on the brief*), Consovoy McCarthy PLLC, Arlington, VA, *for Defendants-Appellants;*

BENJAMIN GLASSMAN, Squire Patton Boggs (US) LLP, Cincinnati, OH (Benjamin Beaton, G. Luke Burton, Squire Patton Boggs (US) LLP, Cincinnati, OH, and Stephanie E. Niehaus, Nelson Law LLC, New York, NY, *on the brief*), *for Non-Party Appellant*.

SACK, *Circuit Judge*:

This case arises out of the defendants-appellants' allegedly fraudulent, misleading, and deceptive statements. The plaintiffs-appellees assert that, through these statements, the defendants – the Trump Corporation, Donald J. Trump, and members of his family – induced them to enter into business relationships with non-party appellant, ACN Opportunity, LLC ("ACN"). ACN is a "multi-level marketing" company that enlists individuals to work on its behalf as "Independent Business Owners." While allegedly accepting large, secret payments from ACN, the defendants publicly represented that they were independent of the company and, as such, promoted ACN as a business opportunity that offered a

reasonable probability of success, a claim that the plaintiffs allege was knowingly, materially false. As a result, the plaintiffs – and many others like them – entered into business relationships with ACN as Independent Business Owners and suffered significant monetary losses. Each of the plaintiffs paid ACN a fee to enroll as an Independent Business Owner and agreed to submit any disputes that might arise between them to arbitration.

The plaintiffs brought suit in the United State District Court for the Southern District of New York. After more than ten months of litigation and the court's denial in part of a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the defendants moved to compel arbitration. Although not parties to the arbitration agreements between the plaintiffs and ACN, the defendants sought nevertheless to enforce these agreements against the plaintiffs under principles of equitable estoppel.

While the defendants' motion to compel arbitration was pending, the plaintiffs sought third-party discovery from ACN and served it with a subpoena duces tecum to that end. ACN objected to the production of documents and – in response to the plaintiffs' motion to compel discovery from it – requested that the district court compel arbitration.

The district court (Lorna G. Schofield, *Judge*) denied the defendants' and ACN's motions to compel arbitration. *Doe v. Trump Corp.*, 453 F. Supp. 3d 634, 637 (S.D.N.Y. 2020); A.538-40; A.544-58. The defendants and ACN appeal from those denials. The defendants argue that the district court erred in denying their motion because (1) the question of arbitrability must be decided by the arbitrator; (2) they are entitled to enforce the arbitration agreement under principles of equitable estoppel; and (3) they did not waive their right to arbitration. ACN argues that the district court erred in denying its motion to compel arbitration because (1) the district court had an independent jurisdictional basis over its motion to compel; (2) the arbitrator, rather than the district court, should have decided the threshold question of arbitrability; and (3) ACN is entitled to enforce the arbitration agreement under the doctrine of equitable estoppel.

The truth or falsity of the plaintiffs' allegations is not before us. We neither express nor imply any views with respect to them. The only question before us is whether this case should be resolved before the district court or an arbitrator. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 118 (2d Cir. 2010) ("[T]he instant appeal considers whether the district court correctly held that [the plaintiff's]

claims should be heard in an arbitral forum.  Properly considered, this question takes no account of the merits of claims asserted in the complaint.").

For the reasons set forth below, we conclude that the defendants are not entitled to have the district court enforce the arbitration agreement under equitable estoppel principles or otherwise and that the district court lacked an independent jurisdictional basis over ACN's motion to compel.  We therefore affirm the district court's orders denying the defendants' and ACN's motions to compel arbitration.

## BACKGROUND

### *The Plaintiffs' Allegations*

Non-party appellant ACN[1] – a "multi-level marketing" company[2] – offers business opportunities to what it calls Independent Business Owners ("IBOs") in exchange for a sign-up fee and annual renewal fees.  IBOs can earn relatively small commissions by selling ACN's products and services to consumers or recruiting

---

[1] "ACN" is an abbreviation for "American Communications Network."

[2] Although ACN characterizes itself as a "[d]irect-[s]elling [c]ompany," ACN Br. at 6, it concedes that it engages in "multi-level marketing activities."  ACN Reply Br. at 8. Multi-level marketing involves "a system of distributing products or services in which each participant earns income from sales of a product to his or her downline and also from sales to the public."  *F.T.C. v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 531 (S.D.N.Y. 2000).

others to sign up as IBOs. The four pseudonymous plaintiffs are persons of modest financial means who maintain that they fell victim to the defendants' allegedly fraudulent scheme to induce consumers to invest in ACN by making false and misleading promotional statements about ACN's business. The defendants allegedly concealed the fact that they were paid handsomely by ACN for what purported to be unsolicited endorsements.

More specifically, the plaintiffs allege that in exchange for millions of dollars in secret payments from ACN to the defendants between 2005 and 2015, the defendants fraudulently promoted and endorsed ACN as offering legitimate business opportunities that were likely to afford IBOs success. The defendants allegedly misled consumers, including the plaintiffs, to believe that: (1) IBOs would have a reasonable likelihood of commercial success if they invested in ACN; (2) the defendant Donald J. Trump was independently promoting and endorsing the ACN business opportunity because he thought that it offered a reasonable probability of commercial success for investors; and (3) Mr. Trump's endorsement was predicated on the defendants' due diligence, familiarity with ACN and its business, and personal experience with ACN. The defendants conveyed this message in various forums, including at ACN events, in ACN

recruiting publications and videos, and on two episodes of "The Celebrity Apprentice" television show, where contestants seeking a job at the Trump Organization promoted ACN. The defendants' message was critical, the plaintiffs assert, in convincing consumers – including them – to invest in ACN as IBOs.

This message, however, was allegedly materially false. Contrary to the defendants' representations that ACN's business opportunity was a low-risk entrepreneurial venture that offered investors a viable source of income, investigations by regulatory agencies allegedly have demonstrated that ACN's business was high-risk and that investors had a minimal likelihood of commercial success. Despite claims that ACN's business opportunity would be highly profitable for investors, it is nearly impossible for IBOs to profit or earn a satisfactory income from such multi-level marketing arrangements. According to the amended complaint, multiple reports have found that multi-level marketing participants experience "extraordinary" loss rates, with the vast majority of ACN's IBOs suffering losses or earning minimal profits. In addition, while the defendants allegedly claimed to have conducted extensive due diligence and research regarding the ACN business opportunity and to have had access to inside information or personal experience with ACN, these statements were untrue. The

defendants had, in fact, conducted no such due diligence. They were instead endorsing ACN's business opportunity because they were being paid millions of dollars to do so – a fact that they deliberately failed to disclose.

The plaintiffs further allege that they all initially approached the ACN recruitment process with skepticism and that, for each of them, the defendants' allegedly false and misleading statements about ACN were the "turning point" that persuaded them to invest. After they enlisted as IBOs, each plaintiff was allegedly further persuaded by the defendants' endorsements to increase their investments in ACN. The plaintiffs, however, assert that none of them succeeded in making a profit from the relationship or even earning back the money that they had invested in ACN. The plaintiffs eventually concluded that the defendants' representations about ACN's business opportunity were false and therefore decided to abandon their pursuit of their ACN-based businesses.

### *The Arbitration Agreements with ACN*

ACN has represented, and it is assumed for purposes of these appeals, that in order to pursue his or her ACN-based business, each plaintiff entered into a contract with ACN (an "IBO agreement"). Because the plaintiffs allege that they enrolled in the ACN business opportunity in 2013, 2014, and 2016 the IBO

agreements from 2013, 2014, and 2016 are relevant here.  The 2013 version of the

IBO agreement states that the "IBO relationship is with ACN Opportunity, LLC

and not with any ACN Provider;" the 2014 and 2016 versions of the IBO agreement

similarly provide that the "IBO relationship is with ACN Opportunity, LLC and

not with any other ACN Company or ACN Provider."  A.436 ¶ 3; A.439 ¶ 3; A.442

¶ 3.[3]  The agreements define "ACN Provider" as "any carrier, supplier, service

provider or other party with whom ACN transacts or contracts business[.]"  *Id.*

The 2013 and 2014 versions of the IBO agreement also contain the following

arbitration clause:

> In the event of a dispute between me [(the investor signing the agreement)]
> and ACN as to our respective rights, duties and obligations arising out of or
> relating to this Agreement, it is agreed that such disputes shall be
> exclusively resolved through binding arbitration before the American
> Arbitration Association pursuant to the Commercial Rules of Arbitration.
> The arbitration shall be held in Charlotte, North Carolina before a panel of
> three arbitrators, each side choosing one and then the two choosing the
> third. . . . The laws of the state of North Carolina will apply to the resolution
> of the dispute unless otherwise agreed in writing.

A.436 ¶ 16; A.439 ¶ 16.

---

[3]  As cited herein, "A" refers to the Appendix submitted by the defendants-appellants
and non-party appellant ACN, and "SA" refers to the Supplemental Appendix
submitted by the plaintiffs-appellees.

The 2016 version of the IBO agreement also contains an arbitration clause:

> In the event of a dispute between ACN and me [(the investor signing the agreement)] as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is mutually agreed that such disputes shall be exclusively resolved through the process and according to the provisions specified in Section II.B. of the ACN Policies and Procedures ("Dispute Resolution Provisions"). . . . The Dispute Resolution Provisions require, without limitation, and except as otherwise expressly stated, that ACN and I will resolve all disputes through binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration. Both ACN and I agree that all disputes will be resolved on an individual basis and that each may only bring claims against the other in an individual capacity (and not as a claimant or class member in any purported class or representative proceeding).

A.442 ¶ 17.

### *Procedural History*

In October 2018, the plaintiffs brought a putative class action against the defendants, but not ACN, in the United States District Court for the Southern District of New York. The complaint alleged racketeering and conspiracy to conduct a racketeering enterprise in violation of 18 U.S.C. § 1962(c)-(d). It also asserted various state-law claims, including dissemination of untrue and misleading public statements in violation of California law, unfair competition in violation of California law, unfair and deceptive trade practices in violation of

Maryland law, unfair and deceptive acts or practices in violation of Pennsylvania law, common-law fraud, and common-law negligent misrepresentation.

When the plaintiffs filed the complaint, they simultaneously moved for an order permitting them to proceed under pseudonyms.  On December 10, 2018, the defendants filed a pre-motion letter requesting leave to file a motion to dismiss.  The defendants filed a separate letter requesting a stay of all discovery pending resolution of the motion to dismiss.

Ten days later, on December 20, 2018, the district court issued an order granting the plaintiffs' motion for leave to proceed under pseudonyms "until a decision on the motion to dismiss and may be renewed at that time."[4]  A.207; Dist. Ct. Dkt. 54.  The district court's order also stayed discovery pending resolution of the defendants' motion to dismiss.  On December 21, 2018, the district court authorized the plaintiffs to serve a non-party subpoena on ACN requiring ACN to preserve documents relevant to this lawsuit.

---

[4]  At argument before us, plaintiffs' counsel represented that the plaintiffs sought and were granted permission by the district court to proceed under pseudonyms because they feared extra-judicial retaliation for the pursuit of this lawsuit by persons partial to the defendants.  Transcript of Oral Argument at 11:2-12:3, *Doe v. Trump Corp.* (Nos. 20-1228-cv/20-1278-cv).

On January 14, 2019, the defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Later that month, the plaintiffs filed an amended complaint.  On February 4, 2019, the district court denied the pending motion to dismiss as moot in light of that amendment.  Shortly thereafter, the defendants moved to dismiss the amended complaint.

Central to this appeal, on July 11, 2019, the defendants notified the plaintiffs – pursuant to the district court's individual rules – that they intended to move the court for an order compelling the plaintiffs to arbitrate their claims against the defendants and "stay[ing] litigation of this action pending completion of the arbitration[.]" SA.16.  Eight days later, on July 19, 2019, the defendants filed a pre-motion letter arguing that "in addition to failing to state a claim upon which relief may be granted, Plaintiffs' claims are arbitrable." SA.14.  Because there was a motion to dismiss the complaint then pending before the court, the defendants requested the district court's guidance as to how to proceed with respect to their motion to compel arbitration.

On July 24, 2019, the district court granted in part and denied in part the motion to dismiss.  The court dismissed the plaintiffs' federal racketeering claims but declined to dismiss the state-law claims.

On August 1, 2019, the defendants filed a letter requesting a stay of discovery pending resolution of the motion to compel arbitration. The district court extended the stay of discovery through a status conference scheduled for September 5, 2019. At that conference, the district court set a briefing schedule for the motion to compel arbitration but lifted the stay on discovery. The same day, the district court also entered a case management plan.

The defendants timely filed their motion to compel arbitration. They argued that the plaintiffs had agreed to arbitrate any disputes arising out of, or related to, their IBO agreements and that the plaintiffs' claims were thus covered by the arbitration agreements. The defendants also argued that principles of agency and estoppel allowed them – despite being non-signatories to the IBO agreements – to enforce the agreements to arbitrate against the plaintiffs. The defendants explicitly asserted that their motion to compel arbitration was timely.

While the defendants' motion to compel arbitration was pending, the parties engaged in pre-trial discovery. On September 6, 2019, the plaintiffs served ACN with a subpoena duces tecum seeking 32 categories of documents including, among other things, communications and agreements between ACN and the defendants, ACN's promotional materials making reference to the defendants, any

14

and all recordings or speeches given by Mr. Trump on behalf of ACN, records of any investment by a defendant in ACN's business, documents sufficient to reflect all payments made by ACN to the defendants, documents sufficient to show the fees charged by ACN to IBOs and the method by which IBOs were compensated, and documents sufficient to show quarterly revenue earned, or losses incurred, by ACN.

ACN objected to the plaintiffs' subpoena "to the extent it implicates or seeks to impair any right or remedy available to ACN pursuant to its agreements with the named Plaintiffs . . . or any other Independent Business Owner . . . including but not limited to ACN's right to have all disputes arising out of or related to its IBO agreements submitted to mandatory arbitration." A.463 ¶ 1. On January 31, 2020, after ACN refused to comply with the subpoena, the plaintiffs moved to compel the production of documents from the company.

On February 14, 2020, ACN filed its brief in opposition to the plaintiffs' motion to compel compliance with the subpoena. ACN requested that the district court compel arbitration of "this discovery dispute . . . along with all other disputes arising out of or in connection with [the plaintiffs'] IBO agreements, whether those disputes are with ACN or the Trump Defendants." Dist. Ct. Dkt. 168 at 9-10. ACN

argued that the subpoena violated its contractual right to arbitrate. It asserted that "discovery that is 'intertwined with the subject matter of a dispute to be arbitrated' is precluded," and that the question whether discovery "is so intertwined" is a threshold question of arbitrability that must be decided in arbitration. *Id.* at 3 (internal citation and brackets omitted).

One month later, on March 14, 2020, ACN submitted a letter to the district court requesting "limited, expedited relief" from the court's orders authorizing the plaintiffs to proceed under pseudonyms. A.515. ACN argued that this relief was "necessary to allow ACN to initiate actions against Plaintiffs with the American Arbitration Association ('AAA')." *Id.*

On April 8, 2020, the district court denied the defendants' motion to compel arbitration. In response to their assertion that they could require the plaintiffs to arbitrate under the doctrine of "equitable estoppel," the court concluded that while the defendants had satisfied the so-called "intertwined-ness" prong of the test, they had failed to establish the second requirement for equitable estoppel: a close relationship among the signatories to the arbitration agreement – the plaintiffs and ACN – and the non-signatory defendants. *Trump*, 453 F. Supp. 3d at 640-43. The district court also rejected the defendants' agency theory – that the defendants

were the agents of ACN and therefore entitled to enforce the arbitration agreements against the plaintiffs – on the ground that, under North Carolina law, the arbitration agreement applied only to non-signatory agents who are disclosed. *Id.* at 643. Lastly, the court concluded that the defendants had waived any contractual right to arbitrate. *Id.* at 643-45.

At a conference the next day, the district court – ruling from the bench – granted in part the plaintiffs' motion to compel subpoena compliance and denied ACN's cross-motion to compel arbitration. The court first noted "ambiguity" in ACN's briefing as to whether it was seeking to compel arbitration of the discovery dispute or of the entire case. A.553. ACN responded that it was appropriate to compel arbitration as to both the "appropriate scope of discovery" and "the entire matter, given that the entire matter implicates a dispute with ACN." A.554.

The district court concluded that ACN was not a party to the lawsuit and therefore had "no standing" to make an application to move the dispute to another forum. A.554; *see also* A.558. To the extent that ACN was suggesting in substance that the suit by the plaintiffs against the defendants was a "dispute with ACN," the court disagreed and declined to order arbitration on that basis. A.558. Addressing ACN's request to compel arbitration of the discovery dispute only, the court

denied it, reasoning that the discovery dispute did not fall within the scope of the arbitration agreement. The court explained:

> Plaintiffs' discovery requests here arise out of and relate to this lawsuit. And the lawsuit is about defendants' purported bad acts, not about plaintiffs' rights, duties, or obligations under the IBO agreement[s between the plaintiffs and ACN].

A.556. Relying on *Vaden v. Discover Bank*, 556 U.S. 49, 66 (2009), and *Landau v. Eisenberg*, 922 F.3d 495, 497 (2d Cir. 2019), the court also held that it lacked jurisdiction to compel arbitration of the discovery dispute.

The district court issued a written order later that day, *inter alia*, denying ACN's motion to compel arbitration of the discovery disputes and granting the plaintiffs' motion to compel "ACN to produce documents in response to Plaintiffs' subpoena duces tecum[.]" A.539. The district court also denied ACN's request for relief from the court's orders authorizing the plaintiffs to proceed under pseudonyms "to the extent that ACN seeks relief that is broader than the [c]ourt's direction to Plaintiffs and ACN to confer regarding the provisions of the protective order." A.540.

On April 13, 2020, the defendants appealed the district court's April 8, 2020 Opinion and Order "denying Defendants' Motion to Compel Arbitration, and from any and all of the [c]ourt's rulings adverse to [the] Defendants incorporated

in, antecedent to, or ancillary to the Opinion & Order." A.541. On April 16, 2020,

ACN appealed from the district court's April 9, 2020 order "and from any and all

of [c]ourt's rulings adverse to ACN incorporated in, antecedent to, or ancillary to

such [o]rder." A.543. These are the appeals that we address today.

## DISCUSSION

### I. Standard of Review

"We review *de novo* the denial of a motion to compel arbitration[,]" *Meyer v.*

*Uber Techs., Inc.*, 868 F.3d 66, 72 (2d Cir. 2017), and the "issue of [whether]

arbitrability is for the court or for the arbitrator[,]" *Contec Corp. v. Remote Sol. Co.*,

398 F.3d 205, 208 (2d Cir. 2005) (internal quotation marks omitted).

### II. The Trump Defendants' Motion to Compel Arbitration

On appeal, the defendants argue that the district court erred in denying their

motion to compel arbitration for three reasons. First, they assert that under *Contec*

the district court should have referred the questions of equitable estoppel and

waiver to the arbitrator for resolution. Second, they argue that they are entitled to

enforce the plaintiffs' arbitration agreements with ACN under equitable estoppel

principles.[5]  And third, they contend that the district court erred in concluding that the defendants waived their right to arbitrate.

We agree with the district court that the defendants may not compel the plaintiffs to arbitrate this dispute based on equitable estoppel principles and affirm the district court's order on that basis.  We therefore need not determine whether the defendants waived their right to arbitration.

### 1. *Contec*

The defendants argue that the district court erred in denying their motion to compel arbitration on equitable estoppel and waiver grounds because *Contec* requires that those issues be referred to the arbitrator.  The plaintiffs assert, however, that the defendants forfeited this argument by failing to make it before the district court.[6]  The plaintiffs further contend that – even if this argument

---

[5]  The defendants do not challenge the district court's conclusion that under agency principles, they are not entitled to enforce the arbitration agreements against the plaintiffs.  The defendants have therefore forfeited this argument.  *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

[6]  The plaintiffs also contend that the defendants waived this argument.  "The term 'waiver,' is best reserved for a litigant's intentional relinquishment of a known right.  Where a litigant's action or inaction is deemed to incur the consequence of loss of a right, or, as here, a defense, the term 'forfeiture' is more appropriate."  *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999); *see also Puckett v. United States*, 556 U.S. 129, 138 (2009) (Waiver occurs where a party "intentionally relinquishe[s] or abandon[s]" an argument.).  While we have discretion to consider forfeited arguments, a waived

were preserved – it lacks merit because (1) equitable estoppel is a non-delegable question of contract formation, and (2) the plaintiffs did not enter into an arbitration agreement with the defendants consenting to arbitrate threshold questions of arbitrability.

"[W]here the claimant is represented by counsel before the district court, the claimant must present the relevant legal arguments in that forum in order to preserve them for appellate review." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (alteration in original) (internal quotation marks omitted)). "'[M]erely typing out the [key] words' or 'merely incant[ing] the [key] phrase' 'without offering any argument or explanation of the point' to

---

argument may not be revived. *See United States v. Yu-Leung*, 51 F.3d 1116, 1122 (2d Cir. 1995) ("If a party's failure to take an evidentiary exception is simply a matter of oversight, then such oversight qualifies as a correctable 'forfeiture' for the purposes of plain error analysis. If, however, the party consciously refrains from objecting as a tactical matter, then that action constitutes a true 'waiver,' which will negate even plain error review."); *Am. Home Assurance Co. v. A.P. MollerMaersk A/S*, 609 F. App'x 662, 664 (2d Cir. 2015) (summary order) ("Given that waiver means that the 'relinquish[ment]' was 'knowing[] and intelligent[],' the effect of waiver is that there was no error, and hence even plain-error analysis is unavailable." (citations omitted)). We need not decide whether the defendants' failure to press their *Contec* argument before the district court rises to the level of waiver, because we conclude that the defendants forfeited any such argument.

the district court is 'insufficient to preserve the issue for appeal.'" *Compagnie Noga D'Importation Et D'Exportation S.A. v. Russian Fed'n*, 350 F. App'x 476, 477 (2d Cir. 2009) (summary order) (alterations in original) (quoting *United States v. Harrell*, 268 F.3d 141, 146 (2d Cir.2001)); *see also 23-34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health*, 685 F.3d 174, 184 n.8 (2d Cir. 2012) (a "single, conclusory, one-sentence argument is insufficient to preserve any issue for appellate review" (internal quotation marks omitted)). "Although we may exercise discretion to consider [forfeited] arguments where necessary to avoid a manifest injustice, the circumstances normally do not militate in favor of an exercise of discretion to address . . . new arguments on appeal where those arguments were available to the [parties] below and they proffer no reason for their failure to raise the arguments below." *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (second alteration in original) (internal quotation marks omitted); *Patterson v. Balsamico*, 440 F.3d 104, 112 (2d Cir. 2006) ("[T]his Court has discretion to decide the merits of a forfeited claim or defense where the issue is purely legal and there is no need for additional fact-finding or where consideration of the issue is necessary to avoid manifest injustice." (internal quotation marks omitted)).

The defendants did not adequately raise before the district court their argument that, under *Contec*, the issue of arbitrability was for the arbitrator to determine or, more broadly, that the questions of equitable estoppel and waiver should have been determined by an arbitrator. Nor did they assert that the district court lacked authority to resolve these issues. To the contrary, the defendants briefed – and asked the district court to resolve – these questions and asked the district court to compel arbitration on equitable estoppel grounds. The only mention of *Contec* was in a passing string cite for the limited proposition that questions of arbitrability may be delegated to the arbitrator. Dist. Ct. Dkt. 114 at 9. The defendants did not say or suggest that the questions of equitable estoppel and waiver constituted arbitrability questions that should be resolved by the arbitrator, nor did the defendants provide any briefing in support of such an argument. This casual citation to *Contec*, without further explanation or argument, neither made nor preserved any such argument.

While we may exercise our discretion to consider forfeited arguments, the defendants fail to present a compelling reason for our doing so here. Indeed, the defendants' passing citation to *Contec* in the briefing submitted to the district court suggests that they may have been aware of this argument but failed to raise

it.  They provide no reason for not having done so and do not argue that failure to consider it will result in manifest injustice.  Instead, the defendants simply insist that their failure to make this argument should be excused because "ACN [(*not* the defendants)] pressed it below."  Def. Reply Br. at 7-8 n.5 (internal quotation marks and alterations omitted).  Although ACN did contend that the arbitrability of its dispute with the plaintiffs should be resolved by the arbitrator, it never made such an argument on behalf of the defendants or suggested that the equitable estoppel and waiver issues implicated by the defendants' motion to compel arbitration should be resolved by an arbitrator.  This argument was waived.[7]

---

[7]  We note nonetheless that even if this argument had been preserved, it would likely fail on the merits because the IBO agreements between the plaintiffs and ACN do not provide "clear and unmistakable evidence" that the parties intended the question of arbitrability with respect to non-signatories to be determined by an arbitrator rather than the court.  *See Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11, 12-13 (2d Cir. 2012) (summary order).  The IBO agreements expressly provide for arbitration only between ACN and the IBOs and state that the "IBO relationship is with ACN Opportunity, LLC and not with any ACN Provider," strongly suggesting that non-signatories have no contractual right to compel arbitration of questions of arbitrability. A.436 ¶ 3.  Where, as here, the arbitration clause is limited to the signatory parties and the agreement states that it is intended exclusively to govern the rights of the signatory parties, the language of the contract evinces the parties' intent to arbitrate arbitrability with the signatories and no one else.  *See BNP Paribas*, 472 F. App'x at 13 ("Where, as here, the arbitration clause does not clearly vest any right to invoke arbitration in a non-party such as Iraq, *a fortiori*, it does not afford Iraq the right to have arbitrators rather than a court determine the arbitrability of its dispute."); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) (where the terms of the arbitration clauses were

## 2. *Equitable Estoppel*

We now turn to the district court's determination that the defendants are not entitled to compel the plaintiffs to arbitrate their dispute under the doctrine of equitable estoppel. As a preliminary matter, the parties dispute whether we should apply North Carolina law or "federal common law" in order to resolve this question.[8] The district court acknowledged that "state law governs whether a non-signatory may enforce an arbitration clause," but instead relied on "Second

---

"expressly limited" to the signatory parties, the language of the contract "evidences [the party opposing arbitration's] intent to arbitrate arbitrability with the [other signatory] and no one else").

Unlike in *Contec*, where the non-signatory was one of the signatory party's corporate successors, the defendants and ACN do not share any type of corporate relationship, such that the plaintiffs could be deemed to have known of, and consented to, the extension of their arbitration agreement to the defendants. *See Contec*, 398 F.3d at 209. Nor did the plaintiffs and defendants conduct themselves as though the defendants were subject to the rights and obligations of the IBO agreements. In the absence of such circumstances, the defendants would appear to have "no claim to be in any sense a 'party' under the language of the arbitration clause, and thus [they] cannot demand an arbitral rather than judicial determination of arbitrability." *BNP Paribas*, 472 F. App'x at 13.

[8] The IBO agreements contain a choice-of-law provision that states: "This Agreement shall be governed by the laws of the state of North Carolina." A.436 ¶ 18. And the Supreme Court has instructed that state law governs whether a non-signatory may enforce an arbitration clause. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009) ("[S]tate law . . . is applicable to determine which contracts are binding under § 2 [of the FAA] and enforceable under § 3 if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." (internal quotation marks and emphasis omitted)).

Circuit law, which incorporates general principles of contract law," because both parties vigorously contended that Second Circuit law applied and neither argued that North Carolina law governed the dispute.  A.527-28 n.4.  Because both parties affirmatively relied on our precedents before the district court, they have waived any argument regarding the applicability of North Carolina law.  *See, e.g.*, *Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 164 (2d Cir. 1998) ("Without reaching the merits of [the defendant's] contention, we conclude that he has waived this argument.  He failed to bring New Jersey law on unconscionability to the attention of the district court . . . ."); *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 130 (2d Cir. 1997) ("On appeal, the franchisees make an elaborate argument that either Illinois or Connecticut law should apply, or at least 'have some significance,' on the waiver issue.  However, they apparently waived this choice-of law argument by not raising it in the district court.").  We therefore proceed with the equitable estoppel inquiry as governed by Second Circuit precedent.

### a.  Legal Standard

Arbitration is a creature of contract; a party therefore cannot be required to submit to arbitration any dispute which it has not agreed to submit.  *Ragone*, 595 F.3d at 126.  Nevertheless, "we have recognized a number of common law

principles of contract law that may allow non-signatories to enforce an

arbitration agreement, including equitable estoppel." *Ross v. Am. Express Co.*, 478

F.3d 96, 99 (2d Cir. 2007).

In *Choctaw Generation Ltd. Partnership v. American Home Assurance Co.*, 271

F.3d 403 (2d Cir. 2001), we observed (with approval) that other circuits had

recognized an estoppel theory requiring arbitration between a signatory and a

non-signatory where

> the relationships of persons, wrongs and issues, in particular whether the
> claims that the nonsignatory sought to arbitrate were intimately founded
> in and intertwined with the underlying contract obligations. . . .  In this
> way, the circuits have been willing to estop a signatory from avoiding
> arbitration with a nonsignatory when the issues the nonsignatory is
> seeking to resolve in arbitration are intertwined with the agreement that
> the estopped party has signed.

*Id.* at 406 (internal quotation marks and emphasis omitted); *accord Ragone*, 595

F.3d at 126–27.  "This does not mean, however, 'that whenever a relationship of

any kind may be found among the parties to a dispute and their dispute deals

with the subject matter of an arbitration contract made by one of them, that party

will be estopped from refusing to arbitrate.'" *Ragone*, 595 F.3d at 127 (quoting

*Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008)).  "'In

addition to the 'intertwined' factual issues, there must be a relationship among

the parties of a nature that justifies a conclusion that the party which agreed to

arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement.'" *Id.* (brackets omitted) (quoting *Sokol Holdings*, 542 F.3d at 359).

This test is used to assess whether the agreement to arbitrate can be "reasonably seen on the basis of the relationships among the parties as extending not only to [the other signatory], but also to [a non-signatory related to the latter], an entity that was, or would predictably become, with [the] knowledge and consent [of the party opposing arbitration], affiliated or associated with [the other signatory] in such a manner as to make it unfair to allow [the party opposing arbitration] to avoid its commitment to arbitrate on the ground that [the non-signatory] was not the very entity with which [the party opposing arbitration] had a contract." *Ross v. Am. Exp. Co.*, 547 F.3d 137, 146 (2d Cir. 2008) (alterations in original) (internal quotation marks omitted). In other words, the relationship between the parties must either support the conclusion that the signatory effectively consented to extend its agreement to arbitrate to the non-signatory, "or, otherwise put, made it inequitable for [the signatory] to refuse to arbitrate on the ground that it had made no agreement with [the non-signatory]."

28

*Sokol Holdings,* 542 F.3d at 361.  The application of equitable estoppel in this context is therefore consistent with "the black letter rule that the obligation to arbitrate depends on consent"; it simply recognizes that consent "need not always be expressed in a formal contract made with the party demanding arbitration." *Id.* at 361-62; *see also Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 533 (5th Cir. 2000) (Dennis, *J.,* dissenting) ("[A] non-signatory to the arbitration agreement has been allowed to compel arbitration under a[n] . . . estoppel theory when the peculiar integrated or interlocking circumstances of the parties' relationships, related contracts, contractually assigned responsibilities, conduct, and disputes would allow the inference that the signatory and non-signatory parties have by an agreement implied in fact become bound reciprocally by the arbitration clause or the contract of which it is a part.").

Applying this test, our "cases which have applied estoppel against a party seeking to avoid arbitration have tended to share a common feature in that the non-signatory party asserting estoppel has had some sort of *corporate* relationship to a signatory party; that is, this Court has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities."  *Ross*, 547 F.3d at 144.  It makes rather obvious sense to prevent an entity from avoiding its

29

obligation to arbitrate a dispute simply by morphing into another entity. We "have similarly held that estoppel is warranted when a non-signatory defendant owns or controls a signatory defendant." *Id.* In addition, we have "extended estoppel beyond situations involving affiliated corporate entities" in a limited number of circumstances "where a defendant, while a non-signatory to the . . . contract containing an arbitration clause, was nevertheless explicitly named therein as having certain tasks to perform under that contract," *id.* at 145, or the signatory seeking to avoid arbitration treated the other signatory and non-signatory as interchangeable with respect to its rights and responsibilities under the relevant contract, *see Ragone*, 595 F.3d at 127-28. Where, however, the non-signatory is alleged to be a third-party wrongdoer as it is here, we have made clear that the arbitration contract "in no way" extends to the non-signatory. *Ross*, 547 F.3d at 145 (internal quotation marks omitted); *Sokol Holdings*, 542 F.3d at 362.

### b. *Application*

In order to establish equitable estoppel in the present context so as to bind a signatory of a contract (here, the plaintiffs) to arbitrate with one or more non-signatories (here, the defendants), there must be a close relationship among the signatories and non-signatories such that it can reasonably be inferred that the

signatories had knowledge of, and consented to, the extension of their agreement

to arbitrate to the non-signatories.  Here, there neither is nor was such a

relationship.  There was no corporate relationship between the defendants and

ACN of which the plaintiffs had knowledge, the defendants do not own or

control ACN, and the defendants are not named in the IBO agreements between

ACN and the plaintiffs.

The defendants rely heavily on *Ragone* to support their theory of equitable

estoppel.  But *Ragone* is inapposite.  There, the plaintiff was required to arbitrate

her employment discrimination and sexual harassment claims against both the

signatory to her employment and arbitration agreement, Atlantic Video ("AVI"),

and a non-signatory, ESPN, which "she understood . . . to a considerable extent,

[to be] her co-employer."  *Ragone*, 595 F.3d at 127.  Although the plaintiff's initial

employment records and arbitration agreement did not mention ESPN, the

plaintiff understood that she was hired by AVI specifically to work for ESPN

(which was a significant client of AVI), she was required to follow the

instructions and directives of ESPN personnel and supervisors, she was

"supervised by ESPN personnel in the ordinary course of her daily duties," and

she alleged that she had been harassed by ESPN employees.  *Id.* at 127-28; *Ragone*

31

*v. Atl. Video at Manhattan Ctr.*, No. 07 CIV. 6084 (JGK), 2008 WL 4058480, at *9, 2008 U.S. Dist. LEXIS 66369, at *29 (S.D.N.Y. Aug. 29, 2008). Here, by contrast, the plaintiffs were unaware of any corporate relationship between signatory ACN and the non-signatory defendants, and did not treat ACN and the defendants as "at least somewhat interchangeable with respect to the plaintiffs' rights and responsibilities under the relevant contract[.]" *See Medidata Sols., Inc. v. Veeva Sys. Inc.*, 748 F. App'x 363, 366-67 (2d Cir. 2018) (summary order). To the contrary, as the district court observed, the plaintiffs' claims turn on the premise that the "[d]efendants wrongfully held themselves out as offering an independent endorsement of ACN" when they were, in fact, being paid handsomely to promote and endorse ACN. *Trump*, 453 F. Supp. 3d at 641. Indeed, central to the plaintiffs' theory of fraud is that the defendants misled the plaintiffs to believe that the defendants and ACN were independent of one another and that the defendants were endorsing and promoting ACN based on an objective outside assessment of the value of ACN's business opportunity. Consistent with this understanding, there is no evidence to suggest that the plaintiffs treated the defendants as if they were effectively parties to the IBO agreement.

The plaintiffs allege that the defendants made false, misleading, and deceptive statements to induce the plaintiffs to enter into the IBO agreements with ACN. There is no unfairness in denying estoppel to a third-party wrongdoer aligned with a signatory in effectuating allegedly wrongful business practices. *See Ross*, 547 F.3d at 146 (non-signatory credit card issuer could not avail itself of the arbitration provisions of the cardholder agreements because "[t]he plaintiffs did not in any way treat [the non-signatory] as a party to the cardholder agreements . . . [and the non-signatory's] only relation with respect to the . . . agreements was as a third party allegedly attempting to subvert the integrity of the . . . agreements"); *Sokol Holdings*, 542 F.3d at 362 ("Where [the non-signatory] has become aligned or associated with $y$, which is a party to an arbitration contract with $x$, and has done so by wrongfully inducing $y$ to breach its obligation under that contract with $x$, there would be no unfairness in allowing $x$, the victim of the tortious interference, to insist that, while he agreed to arbitrate with his contractual counterparty $y$, he in no way consented to extend that agreement to an entity which tortiously subverted his rights under the agreement.").

For these reasons, the defendants are not entitled to compel the plaintiffs to arbitrate this dispute with them based on principles of equitable estoppel. We therefore affirm the district court's denial of the defendants' motion to compel arbitration.

## III.     ACN's Motion to Compel Arbitration

On appeal, ACN argues that the district court erred in several respects in denying its motion to compel arbitration. First, ACN contends that the district court erred in concluding that it lacked jurisdiction to entertain the motion. Second, ACN argues that the district court erred in ruling that the discovery dispute did not fall within the scope of the arbitration agreement between it and the plaintiffs because the arbitration agreement delegates threshold questions of arbitrability to the arbitrator and that question was therefore one for the arbitrator, not the court, to decide. Third, ACN argues that the doctrine of equitable estoppel bars the plaintiffs from avoiding arbitration.

Because, as explained below, the district court correctly concluded that it lacked jurisdiction to grant ACN's motion to compel and that issue alone is dispositive, we decline to address ACN's argument that the district court erred in

resolving the threshold question of arbitrability. We also conclude that ACN

forfeited its argument regarding equitable estoppel.

### 1. *Jurisdiction*

#### a. *Legal Standard*

"The party asserting subject matter jurisdiction carries the burden of

establishing, by a preponderance of the evidence, that jurisdiction exists." *Landau*

*v. Eisenberg*, 922 F.3d 495, 497 (2d Cir. 2019). "This Court reviews issues of subject

matter jurisdiction, which turn on questions of law, de novo." *Id.*

"As for jurisdiction over controversies touching arbitration," the Federal

Arbitration Act ("FAA") "is something of an anomaly in the realm of federal

legislation: It bestow[s] no federal jurisdiction but rather requir[es] [for access to

a federal forum] an independent jurisdictional basis over the parties' dispute."

*Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (alterations in original) (internal

quotation marks omitted).

Section 4 of the FAA provides that a party aggrieved by the failure,

neglect, or refusal of another to arbitrate under a written agreement for

arbitration

> may petition any United States district court which, save for such
> agreement, would have jurisdiction under title 28, in a civil action

35

or in admiralty of the subject matter of a suit arising out of the
controversy between the parties, for an order directing that such
arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. "The phrase 'save for [the arbitration] agreement' indicates that the

district court should assume the absence of the arbitration agreement and

determine whether it 'would have jurisdiction under title 28' without it." *Vaden*,

556 U.S. at 62 (alteration in original). Accordingly, "§ 4 of the FAA does not

enlarge federal-court jurisdiction; rather, it confines federal courts to the

jurisdiction they would have 'save for [the arbitration] agreement.'" *Id.* at 66

(alteration in original).

Section 4 therefore allows a party seeking to compel arbitration to obtain

federal court assistance "only if, 'save for' the agreement, the entire, actual

'controversy between the parties,' as they have framed it, could be litigated in

federal court." *Id.* The relevant "controversy " is the "substantive conflict

between the parties." *Id.* at 63 (internal quotation marks omitted). Moreover, the

"'parties' to which § 4 of the FAA refers are the parties to the petition to compel."

*Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995).

**b.** *Application*

The district court denied ACN's motion to compel arbitration because it concluded that it lacked an independent jurisdictional basis over ACN's discovery dispute with the plaintiffs. In reaching this conclusion, the district court rejected ACN's characterization of the underlying litigation as "in some way a dispute with ACN." A.558. ACN argues that the district court's reasoning was flawed, because "instead of focusing on Plaintiffs' underlying federal-court lawsuit, which precipitated the 'actual, entire controversy' here, the court broke off a small piece from that controversy (ACN's and Plaintiffs' discovery dispute)[.]" ACN Br. at 44. ACN contends that the controversy at issue here is "not merely a 'discovery dispute,'" but rather a dispute "between Plaintiffs and ACN over their respective obligations and performance under the IBO [a]greements[.]" *Id.* at 46-47. ACN's position, however, finds no support in either the record or the law.

There is no actual case or controversy between the plaintiffs and ACN (largely, it would appear, because the plaintiffs chose not to assert one) and therefore no subject-matter jurisdiction. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) ("Article III limits federal judicial power to the resolution

of 'Cases' and 'Controversies.'" (quoting U.S. Const. art. III, § 2)); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1110 n.19 (11th Cir. 2004) ("[I]f a party makes a motion to compel arbitration under 9 U.S.C. § 4, a district court must determine if there exists a case or controversy in order for it to exercise its jurisdiction over that motion to compel.").  The plaintiffs did not file any claims against ACN, ACN did not intervene in the underlying litigation, has not been impleaded, and is not a party to the proceedings.  The only actual controversy implicated in the underlying suit is the dispute between the plaintiffs and the defendants concerning the defendants' allegedly untrue, misleading, and deceptive statements.  ACN, by contrast, is merely a non-party subpoena recipient. Because there is no live case or controversy between the plaintiffs and ACN that the plaintiffs have refused to arbitrate, ACN cannot compel arbitration under section 4 of the FAA.

*Community State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011), which ACN relies upon for support, does not persuade us to reach a different result.  There, the plaintiff obtained short-term – or "payday" – loans through loan servicers. The plaintiff filed suit against the loan servicers, asserting harm from those transactions.  *Id.* at 1248-50.  The plaintiff did not, however, assert any claim

against the nationally chartered bank that provided the loans.  *Id.* at 1249-50.  The

bank, together with the defendants the plaintiff had sued, commenced an

independent action by filing a petition to compel arbitration.  *Id.* at 1250.

Although the bank was not a party to the underlying lawsuit, the plaintiff

expressly disavowed any claims against the bank, and there was no preexisting

litigation that had "yet defined the contours of the controversy" between the

plaintiff and the bank, *id.* at 1254, the Eleventh Circuit held that the court should

"examine the dimensions of the 'full-bodied controversy' . . . between the parties,

and determine whether any hypothetical claims arising out of that controversy

would support federal jurisdiction."  *Id.* at 1255 (citation omitted).  The court then

went on to "hypothesiz[e] . . . well-pled, non-frivolous potential suits" and

"discern[ed] at least one potential basis for federal jurisdiction[.]"  *Id.* at 1258-59.

On that basis, the court held that there was subject-matter jurisdiction over the

bank's petition to compel arbitration under the FAA.  *Id.* at 1261.

The Eleventh Circuit's reasoning, however, is inconsistent with the

Supreme Court's decision in *Vaden* (although it cites *Vaden* as "rais[ing] a

substantially similar jurisdictional question," *id.* at 1247), and we therefore find it

to be unpersuasive.  In *Vaden*, the Supreme Court expressly rejected the

suggestion that it should treat a section 4 petitioner's "statement of the issues to be arbitrated as the relevant controversy," explaining that the text of section 4 "does not give § 4 petitioners license to recharacterize an existing controversy, or manufacture a new controversy, in an effort to obtain a federal court's aid in compelling arbitration." *Vaden*, 556 U.S. at 67-68. A petitioner's strategic characterization of the parties' dispute should be recognized as what it is – an "[a]rtful dodge[]" – and should not "divert us from recognizing the actual dimensions of that controversy." *Id.* While "events could have [perhaps] unfolded differently, . . . § 4 does not invite federal courts to dream up counterfactuals when actual litigation has defined the parties' controversy." *Id.* at 68.

Accordingly, applying *Vaden*, the Fourth Circuit declined to follow the Eleventh Circuit's reasoning in *Strong* in a case involving facts strikingly similar to those in that case. *See Cmty. State Bank v. Knox*, 523 F. App'x 925, 930-32 (4th Cir. 2013) (unpublished opinion). The *Knox* court concluded that the district court had correctly dismissed the bank's petition to compel arbitration because there was no underlying dispute between the plaintiff and the bank. *Id.* at 930. In so holding, the court rejected the bank's efforts to reframe the dispute or

"allow a purely hypothetical claim to support the Petition," finding that the

"underlying controversy between the parties . . . is concretely defined by the

*Knox* claims." *Id.*  The court emphasized that Knox "ha[d] not filed any claims

against [the bank]"; that Knox's complaint "specifically disclaim[ed] any future

action by Knox against [the bank]"; and that the claims that Knox had brought

were "distinct from any claims that could be made against [the bank], and do not

implicate any interest on [the bank's] part that could be compelled to arbitration

by a federal court." *Id.* at 930-32.  There was therefore no independent

jurisdictional basis for the bank's petition.  *Id.*

  We agree with the reasoning of *Knox* and conclude that it applies with

equal force here.  The only dispute between ACN and the plaintiffs is about

discovery.  ACN's characterization of the underlying litigation as a dispute

between the plaintiffs and ACN over their respective obligations and

performance under the IBO agreements is inconsistent with the plaintiffs'

complaint and the claims asserted against the defendants.  We will not accept

ACN's invitation to "dream up counterfactuals when actual litigation has defined

the parties' controversy."  *Vaden*, 556 U.S. at 68.  Because there is no actual case

or controversy between ACN and the plaintiffs, the district court correctly

denied ACN's motion to compel arbitration on the ground that it lacked subject-matter jurisdiction.

### 2.    *Equitable Estoppel*

ACN argues, in the alternative, that it is entitled to invoke equitable estoppel to compel the plaintiffs to arbitrate their claims against the defendants. The plaintiffs counter that ACN forfeited this argument by failing to present it to the district court and that, in any event, ACN's equitable estoppel theory lacks merit because the law of equitable estoppel applies where a non-signatory seeks to enforce an arbitration agreement.

In its request to compel arbitration, ACN never invoked the theory of equitable estoppel or mentioned it as a basis for compelling arbitration. Nor did ACN invoke any such argument when responding to the district court's questions regarding its motion to compel arbitration at the April 9, 2020, status conference. ACN nevertheless argues that it preserved this argument by "incorporat[ing] by reference the applicable facts and authorities set forth in [d]efendants'" motion to compel arbitration. ACN Reply Br. at 20. Such conclusory and generalized references to previously filed briefs are inadequate to preserve an issue for appeal. *See, e.g.*, *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (plaintiff's

conclusory, single-sentence objection to court's denial of his motion on Title VII claim was a "bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim."); *Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (summary order) (general objections to the magistrate's report based on broad references to previously filed briefs were inadequate to preserve issue for appeal). And even if ACN's generalized reference to the defendants' briefing could preserve this argument for appeal, it would not suffice here because the defendants argued only that they were entitled to equitable estoppel. The defendants never argued that equitable estoppel barred the plaintiffs from avoiding arbitration with ACN. Because ACN failed to raise this argument before the district court, ACN has forfeited it.

## CONCLUSION

We have considered the defendants' and ACN's remaining arguments on appeal and conclude that they are without merit. We therefore AFFIRM the orders of the district court denying the defendants' and ACN's motions to compel arbitration.