November 19, 2021

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Court for the Southern District of New York
40 Foley Square,
New York, NY 10007

*Catherine McKoy, et al. v. The Trump Corporation, et al.*, 18-cv-9936 (LGS)

Dear Judge Schofield:

We write jointly on behalf of Plaintiffs and nonparties Metro-Goldwyn-Mayer Studios Inc. and JMBP, LLC (collectively, "MGM"), regarding this Court's order compelling MGM to produce footage from two episodes of *The Celebrity Apprentice* (the "Relevant Footage") (Doc. No. 232), and pursuant to the Court's orders directing Plaintiffs and MGM to provide updates on "production of the responsive material" (Doc. No. 273; *see also* Doc No. 260). Because discussions concerning the logistics of production have unfortunately come to an impasse, we respectfully request an informal discovery conference, pursuant to Local Rule 37.2 and this Court's Individual Rule III.C.

**Background.** On September 6, 2019, Plaintiffs served Rule 45 subpoenas on MGM seeking the production of documents and discovery material, including footage from two *Celebrity Apprentice* episodes that featured ACN. Plaintiffs and MGM agreed on a document production, but MGM objected to Plaintiffs' request for footage. (*See* Doc. No. 156 at 3-5.) Plaintiffs moved (pre-COVID) to compel MGM "to make available to Plaintiffs a limited subset of video footage." (*Id.* at 1.) After briefing and argument, the Court granted Plaintiffs' motion, ordering MGM "to make available to Plaintiffs certain video footage," at Plaintiffs' expense. (Doc. No. 232.) Plaintiffs and MGM reached agreement on the scope of the Relevant Footage, and MGM produced "Asset Lists" to facilitate its identification (Doc. No. 254 at 1; Doc. No. 267). Plaintiffs and MGM met and conferred about logistics through May 2020, while MGM's offices remained closed due to COVID-19. (Doc. Nos. 254, 267.) Following the entry of an administrative stay in connection with Defendants' and ACN's appeals (since decided) concerning arbitration, this Court stayed all pending deadlines on June 1, 2020. (Doc. No. 282.)

After the stay was lifted on July 28, 2021, Plaintiffs resumed meeting and conferring with MGM. MGM identified ███████████ ████████████████████████████████████████████████████████████ In short, Plaintiffs propose a phased approach to production starting with (1) immediate production of the ████████████, followed by (2) digital copying of other priority assets (which Plaintiffs have identified based on the Asset Lists) by a vendor with state-of-the-art digital security, all at Plaintiffs' expense. MGM has offered to make the footage available in its current formats for Plaintiffs' in-person review on-site at MGM's offices, to be conducted in concordance with all COVID-19 protocols currently in place in Los Angeles, including a requirement that all personnel working indoors be fully vaccinated against COVID-19 and masked, with additional protocols of distancing, HEPA filters, and health questionnaires. Plaintiffs object to MGM's proposal based primarily on the ongoing risks presented by the COVID-19 pandemic, including travel and hotel stay. MGM objects to Plaintiffs' proposal based on burden and security risks that may compromise the footage, which MGM considers to be confidential, proprietary, and highly sensitive. Position statements follow.

**Plaintiffs' position.**  Recognizing "[t]he unfortunate reality" that "we all are constrained by COVID-19," this Court directed both Plaintiffs and MGM to "be reasonable and sensitive to people's needs during this time."  (Doc. No. 242 at 52:7-12.)  Plaintiffs' common-sense proposal for prioritized, secure digital copying is consistent with that directive.  Whatever the parties may have contemplated when Plaintiffs first moved to compel pre-COVID,[1] the reality now is that MGM's proposal would impose undue health and safety risks by requiring a team of lawyers, including associates and staff, to fly cross-country, stay in hotels, and work on-site at an indoor MGM facility for days or weeks—all to seemingly no end, since digital copying will ultimately be required at the end of the process anyway.  MGM's proposal contravenes the guidance of public health authorities, which continue to caution against gatherings of "many people from multiple households," especially where such events involve "lodging" or "long-distance travel."[2]

While MGM suggests that it need only make footage "available," Rule 45 requires MGM to make the footage available for "copying," at Plaintiffs' expense. Fed. R. Civ. P. 45 (a)(1)(D). That is clear from the very cases that MGM itself cites.  *See Obiajulu v. City of Rochester*, 166 F.R.D. 293, 297 (W.D.N.Y. 1996) (plaintiff entitled "inspect and copy whatever documents he wishes by either bringing in his own portable copying machine or by paying defense counsel reasonable copying costs"); *De Varona v. Discount Auto Parts, LLC*, 285 F.R.D. 671, 673 (S.D. Fla. 2012) (plaintiff could have "paid for the photocopying of these documents").  In fact, MGM's authorities recognize that the obligation to make material available includes "digitiz[ing]" relevant material stored in a non-digital format.  *In re NHL*, No. 14 Civ. 2551, 2017 WL 1493671, at *11 (D. Minn. Apr. 26, 2017).  MGM notes that the court in *NHL* did not require digitization of everything, but the exclusion of certain material was on the basis of relevance—an objection the Court here has already rejected (Doc. No. 242 at 51:9-12).  While MGM speculates that much of the footage here may turn out to be irrelevant, MGM admits that it has not reviewed the footage, and the Asset Lists indicate that the footage (especially the footage Plaintiffs seek to prioritize) is relevant.  The same goes for MGM's bizarre assertion that ███████████████████████ ████████████████████████—nothing in the Asset Lists supports that rank speculation, and Plaintiffs obviously have no desire to review such footage (if it exists) in any event.

Plaintiffs' proposal also answers MGM's purported objections based on burden and confidentiality.  As to burden, MGM's price tag appears inflated based on estimates Plaintiffs have obtained, but whatever the costs, it does not matter since Plaintiffs have agreed to pay them. *See Apex Colors, Inc. v. Cheworld Int'l Ltd.*, No. 14 Civ. 273, 2017 WL 2274683, at *29 (N.D. Ind. May 25, 2017).  And the Protective Order (Doc. No. 112)—which MGM has itself repeatedly invoked—takes care of any concerns about confidentiality or sensitivity.  *See, e.g.*, *Ambac Assu. Corp. v. EMC Mortg. Corp.*, No. 10 Misc. 10, 2010 WL 2736893, at *3 (E.D.N.Y. July 9, 2010).[3] The parties to this litigation, and even MGM itself, have all produced significant numbers of sensitive documents, subject to the Protective Order, without issue.

---

[1] MGM also references a comment by Plaintiffs' counsel during a meet-and-confer about an upcoming trial in Los Angeles, but, as MGM knows, counsel did not actually attend that trial, which was handled by local attorneys.

[2] https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/considerations-for-events-gatherings.html.

[3] The cases that MGM cites, *infra*, do not suggest otherwise.  *In re Silicone Gel* dealt with unique concerns about a specific category of information—namely, "invaluable" medical "research data"—that do not apply here, 1996 WL 1358526, at *2.  And *Solow* turned on "relevance," not confidentiality, *see* 2008 WL 190340, at *5.  In all events, MGM already made the same confidentiality objection as a basis for withholding the Relevant Footage in the first place (Doc No. 173 at 9), and the Court rejected it (Doc. No. 232).

**MGM's Position.**  MGM is a non-party who has already spent several hundred hours reviewing potentially responsive materials and responding to Plaintiff's subpoenas, only for Plaintiffs to demand more.  For the past year, both Plaintiffs and MGM have contemplated that Plaintiffs would review the ▮▮ media assets in a secure manner onsite at MGM's offices.  In support of this plan, MGM reviewed its files, located the relevant media in off-site storage, and prepared an asset list for Plaintiffs' review.  MGM agreed to rent equipment necessary for the review and located a vendor with the relevant equipment.  MGM worked extensively with its corporate security team to prepare a safe review room, in full compliance with Los Angeles County's robust COVID-19 protection orders.  Then, Plaintiffs moved the goalposts.  Despite Plaintiffs' counsel planning to attend trials and hearings, and to travel to California for other matters, Plaintiffs suddenly declared that the pandemic made it impossible for Plaintiffs to conduct the planned on-site review.  Instead, Plaintiffs now demand that non-party MGM simply hand over the footage to Plaintiffs for digital copying.  The Court should reject this request.

It is undisputed that the vast majority of footage responsive to Plaintiffs' requests is wholly irrelevant to their case.  Furthermore, some of this footage is highly sensitive;



Given the above, MGM proposed—and Plaintiffs initially agreed—to review the raw footage onsite in a secure environment, and to separately designate for secure copying any materials that Plaintiffs believed were necessary to this litigation.  This plan was reasonable, balancing MGM's need for security and Plaintiffs' need to review the footage.  Indeed, the Court's Order—like Plaintiffs' prior motion, required only that MGM make the footage "available" for Plaintiffs' review—an approach that is consistent with the Federal Rules of Civil Procedure.  *See, e.g.*, *Molock v. Whole Foods Market Group, Inc*., No. 16-cv-02483, 2019 WL 10375613 (D.D.C. Oct. 30, 2019); *Obiajulu v. City of Rochester, Dept. of Law*, 166 F.R.D. 293, 297 (W.D.N.Y. 1996); *De Varona v. Discount Auto Parts, LLC*, 285 F.R.D. 671, 673 (2012); *see also* 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2213 (3d ed. 2002).

Plaintiffs' new proposal, however, unfairly burdens MGM.  Estimates to digitize the entirety of the footage run more than $100,000, and would render the footage far less secure than its current format.  MGM will ultimately bear both the burden and the brunt if any sensitive footage was leaked to non-parties or otherwise mishandled.  Plaintiffs' own authorities do not countenance such an approach.  Rather, in *Nat'l Hockey Players*, the Court *denied* the plaintiff's broad request for voluminous digitization.  2017 WL 1493671, at *11 (D. Minn. Apr. 26, 2017).  Similarly, in *Apex Colors, Inc. v. Cheworld Int'l Ltd*., 2017 U.S. Dist. Lexis 80201 (N.D. Ind. May 25, 2017), the court did *not* require the producing party to undergo a "time consuming and burdensome" process of converting data into spreadsheets.  Moreover, courts recognize that a protective order is not always adequate to protect nonparties' highly confidential information.  *See, e.g., In re Silicone Gel Breast Implants Prod. Liabil. Lit.*, 1996 WL 1358526 (N.D. Ala. Apr. 11, 1996); *Solow v. Conseco*, 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008).

Respectfully submitted,

/s/ John C. Quinn_____

Roberta A. Kaplan
John C. Quinn
Alexander J. Rodney

KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
Facsimile: (212) 564-0883
rkaplan@kaplanhecker.com
jquinn@kaplanhecker.com
arodney@kaplanhecker.com

Andrew G. Celli, Jr.
Matthew D. Brinckerhoff
O. Andrew F. Wilson
David Berman
Nick Bourland

EMERY CELLI BRINCKERHOFF ABADY WARD &
MAAZEL LLP
600 Fifth Avenue at Rockefeller Center
New York, NY 10020
Telephone: (212) 763-5000
acelli@ecbawm.com
mbrinckerhoff@ecbawm.com
awilson@ecbawm.com
dberman@ecbawm.com
nbourland@ecbawm.com

*Attorneys for Plaintiffs*

/s/ Jessica S. Bina_____

Jessica Stebbins Bina

LATHAM & WATKINS LLP
10250 Constellation Blvd., 3rd Floor
Los Angeles, CA 90067
Telephone: (424) 653-5525
Facsimile: (424) 653-5501
jessica.stebbinsbina@lw.com

*Attorneys for nonparties Metro-Goldwyn Mayer Studios, Inc. and JMBP, LLC*