# APPENDIX A

No. 21A-_____

# Supreme Court of the United States

◆◆

ACN OPPORTUNITY, LLC

*Applicant,*

v.

CATHERINE MCKOY, MILLARD WILLIAMS, MARKUS FRAZIER, AND LYNN CHADWICK, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Respondents.*

## APPLICATION FOR A STAY PENDING THE FILING AND DISPOSITION OF A PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Benjamin C. Glassman
*Counsel of Record*
G. Luke Burton
Ellen H. Phillips
Squire Patton Boggs (US) LLP
201 E. Fourth Street, Suite 1900
Cincinnati, OH  45202
Telephone:  513-361-1200
benjamin.glassman@squirepb.com
*Counsel for Applicant,*
*ACN Opportunity, LLC*

## PARTIES TO THE PROCEEDING

Applicant is ACN Opportunity, LLC. It was a movant in the district court and appellant in the court of appeals. Respondents are four former ACN Independent Business Owners. They were plaintiffs in the district court and appellees in the court of appeals.

## RELATED PROCEEDINGS

The related proceedings below are: *Doe et al v. Trump Corp. et al.*, Nos. 20-1228-cv, 20-1278-cv (2d Cir.) (judgment entered July 28, 2021; mandate issued September 24, 2021); *McKoy, et al. v. Trump Corp., et al.*, No. 1:18-cv-09936-LGS (S.D.N.Y.) (order denying motion to compel arbitration entered from the bench April 9, 2020).

## RULE 29.6 STATEMENT

Pursuant to Rule 29.6 of this Court, the undersigned counsel for ACN Opportunity, LLC, a nongovernmental corporate party, states as follows:

ACN Opportunity, LLC is wholly owned by LKN Communications, Inc. There is no publicly held corporation that owns 10 percent or more of ACN Opportunity, LLC's stock.

# TABLE OF CONTENTS

**Page**

PARTIES TO THE PROCEEDING ............................................................... i

RELATED PROCEEDINGS ........................................................................ i

RULE 29.6 STATEMENT ............................................................................ i

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ........................................................................................ 2

STATEMENT ............................................................................................... 2

    A.  Background ...................................................................................... 2

    B.  Facts and Procedural History ........................................................ 4

ARGUMENT ............................................................................................. 10

I.     THERE IS A REASONABLE PROBABILITY THIS COURT WILL GRANT CERTIORARI. ........................................................... 11

    A. The Decision Below Creates a Circuit Conflict. .............................. 11

    B. The Question Presented Is Important and Warrants Review. ........... 13

II.    THERE IS A SIGNIFICANT POSSIBILITY THIS COURT WILL REVERSE THE COURT OF APPEALS' DECISION. ............................ 17

III.  ABSENT A STAY, ACN WILL SUFFER IRREPARABLE HARM ........ 22

IV.  THE EQUITIES FAVOR A STAY. ............................................................ 26

CONCLUSION ......................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alascom, Inc. v. ITT N. Elec. Co.*,
  727 F.2d 1419 (9th Cir. 1984) ........................................................................23

*Barnes v. E-Systems, Inc. Grp. Hosp. Med. & Surgical Ins. Plan*,
  501 U.S. 1301 (1991) (Scalia, J., in chambers) ................................................10

*Community State Bank v. Knox*,
  523 F. App'x 925 (4th Cir. 2013) ...............................................................20, 21

*Community State Bank v. Strong*,
  651 F.3d 1241 (11th Cir. 2011) ................................................................*passim*

*Deaver v. United States*,
  483 U.S. 1301 (1987) ......................................................................................10

*Doe v. Trump Corp.*,
  Nos. 20-1228-cv, 20-1278-cv, 2021 U.S. App. LEXIS 22317 (2d
  Cir. July 28, 2021) ..........................................................................................14

*Ehleiterv. Grapetree Shores, Inc.*,
  482 F.3d 207 (3d Cir. 2007) ...........................................................................23

*Hall St. Assocs., LLC v. Mattel, Inc.*,
  552 U.S. 576 (2008)..........................................................................................3

*Hollingsworth v. Perry*,
  558 U.S. 183 (2010) (per curiam)....................................................................10

*Vaden v. Discover Bank*,
  556 U.S. 49 (2009).....................................................................................*passim*

**Statutes**

9 U.S.C. § 4 ..............................................................................................*passim*

9 U.S.C. § 16(a)(1)(A)-(C) ................................................................................23

28 U.S.C. § 2101(f)......................................................................................1, 10

**Other Authorities**

CNN, *Judge allows fraud suit against Trump, family and company to proceed,* available at https://www.cnn.com/2020/05/19/politics/fraud-suit-trump-family-company/index.html (last accessed Dec. 13, 2021)...........................................25

The Hill, *Judge refuses to halt class-action suit accusing Trump of promoting pyramid scheme*, available at https://thehill.com/regulation/court-battles/498488-judge-refuses-to-halt-class-action-suit-accusing-trump-of-promoting (last accessed Dec. 13, 2021).......................................................25

Law360, "Apprentice" Outtakes Relevant in Fraud Suit Against Trump, available at https://www.law360.com/articles/1262241/ (last accessed Dec. 13, 2021)..............................................................24

Reuters, *Trump, children cannot arbitrate marketing scam case – U.S. appeals court*, available at https://www.reuters.com/world/us/trump-children-cannot-arbitrate-marketing-scam-case-us-appeals-court-2021-07-28/ (last accessed Dec. 13, 2021)..........................................................25

Washington Post, *Trump ordered to expand document search in suit alleging he endorsed pyramid scam*, available at https://www.washingtonpost.com/national-security/trump-ordered-to-expand-document-search-in-suit-alleging-he-endorsed-pyramid-scam/2020/03/14/c903fa0e-6579-11ea-acca-80c22bbee96f_story.html (last accessed Dec. 13, 2021) ...................................24

Yahoo, *Judge shoots down attempt by Trump family to keep lawsuit on pyramid scheme hidden from public view*, available at https://www.yahoo.com/entertainment/judge-shoots-down-attempt-trump-130048329.html (last accessed Dec. 13, 2021) ........................................25

No. 21A-_____

## Supreme Court of the United States

◆━◆

ACN OPPORTUNITY, LLC

*Applicant,*

v.

CATHERINE MCKOY, MILLARD WILLIAMS, MARKUS FRAZIER, AND
LYNN CHADWICK, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED, ET AL.

*Respondents.*

## APPLICATION FOR A STAY OF PROCEEDINGS PENDING A PETITION FOR A WRIT OF CERTIORARI

**TO THE HONORABLE JOHN G. ROBERTS, JR., CHIEF JUSTICE OF THE UNITED STATES AND SONIA SOTOMAYOR, CIRCUIT JUSTICE FOR THE SECOND CIRCUIT:**

Pursuant to 28 U.S.C. § 2101(f) and Supreme Court Rule 23, ACN Opportunity,

LLC ("ACN"), applies to stay proceedings in the district court pending a decision on

its forthcoming petition for a writ of certiorari.

## INTRODUCTION

This case presents a recognized and important circuit split regarding the proper interpretation of § 4 of the Federal Arbitration Act ("FAA"). The United States Court of Appeals for the Second Circuit misread this Court's decision in *Vaden v. Discover Bank*, 556 U.S. 49 (2009), and too narrowly construed § 4's text, allowing the Plaintiffs to subvert arbitration via artful pleading. The Second Circuit's decision creates an inter-circuit conflict, damages the federal policy favoring arbitration, and leaves ACN to be slimed in public while its arbitration rights sit there uselessly. To correct this error, ACN intends to file a writ of certiorari to this Court. In the meantime, however, the courts below intend to allow the case to proceed, which will irreparably harm ACN and render any relief sought in this Court moot. ACN therefore asks this Court to stay proceedings below so it has an opportunity to present this Court with its arguments on the important issue presented by this case.

## STATEMENT

### A.     Background

Nearly 100 years ago, Congress enacted the Federal Arbitration Act "[t]o overcome judicial resistance to arbitration, and to declare a national policy favoring arbitration of claims that parties contract to settle in that manner." *Vaden v. Discover Bank*, 556 U.S. 49, at 58 (2009) (internal citations and quotation marks omitted; first alteration in original). Section 4 of the FAA empowers a party to an arbitration agreement, aggrieved by the "failure, neglect, or refusal of another to

2

arbitrate," to petition a federal court for an order compelling the dispute to arbitration.  9 U.S.C. § 4.

The FAA does not itself confer subject-matter jurisdiction.  *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008) (noting that the FAA is "something of an anomaly in the field of federal-court jurisdiction in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis" (internal quotation marks omitted)).  Instead, courts engage in a "look-through" approach, examining the "substantive conflict" between the parties to the arbitration agreement to determine whether that dispute is one the federal courts would have jurisdiction over, "save for" the arbitration clause that requires the dispute to proceed in arbitration.  *Vaden*, 556 U.S. at 65–66.

This Court has cautioned courts to avoid viewing the "substantive conflict" from only one party's perspective.  *See id.* at 66 (instructing courts to look at the "entire, actual 'controversy between the parties,' as they have framed it").  The party resisting arbitration will, of course, paint an overly narrow view of the dispute, seeking to keep the case in the courts and out of arbitration.  It's the courts' job to sort through the parties' arguments to get at the truth of the matter.  The "relevant question," therefore, is "whether the whole controversy between the parties—not just a piece broken off from that controversy—is one over which the federal courts would have jurisdiction."  *Id.* at 67.

**B.    Facts and Procedural History**

1.    Applicant ACN Opportunity, LLC ("ACN") is a North Carolina-based company that markets and provides telecommunications and other essential home services.  ACN uses a "direct sales" model to market products and services through a network of Independent Business Owners ("IBOs").  The business grows as new IBOs acquire new customers and also introduce the ACN business opportunity to individuals within their personal networks.  Those who are interested in becoming IBOs pay an initial sign-up fee and execute an IBO Agreement. ACN's IBO Agreement contains mandatory arbitration language:

> In the event of a dispute between me and ACN as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is agreed that such disputes shall be exclusively resolved through binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration.

(App.436, ¶16).

The IBO Agreement also requires prospective IBOs to disclaim any representations of success:

> I acknowledge that as an IBO, I am not guaranteed any income nor am I assured any profits or success, and I certify that no claims of guaranteed profits or representations of expected earnings that might result from my efforts as an IBO have been made by ACN or my sponsor.

(App.436, 2013 IBO Agr., ¶5.)   And the IBOs further agreed to maintain the confidentiality of ACN's proprietary and confidential business information. (App.436, 2013 IBO Agr., ¶19.)

ACN IBOs receive access to extensive support, such as training materials and marketing tools. They may attend optional periodic conventions for a registration fee, where they can receive training, learn about products and services, and attend motivational presentations from highly successful IBOs or celebrity spokespersons. Between approximately 2005 and 2015, Donald J. Trump was one such speaker who provided motivational presentations at IBO conventions. In addition, he appeared as a celebrity spokesperson in some ACN marketing materials and twice showcased ACN's business on The Celebrity Apprentice.

2.     Four former ACN IBOs, proceeding under pseudonyms ("Plaintiffs"), filed a putative class action complaint in the United States District Court for the Southern District of New York, naming as Defendants then-President Donald Trump, various of his family members, and affiliated organizations ("Trump Defendants"). (App.43.)  ACN was not named as a Defendant in the caption of the Complaint, but was named more than 700 times in the Complaint's body, which contains a litany of allegations against ACN (including that ACN is a fraud and pyramid scheme). Plaintiffs' relationship with ACN also serves as the source of Plaintiffs' alleged injury and damages, as they seek to recover the funds they "invested" as IBOs. (*Id.*, ¶¶406– 408.)  Although they ostensibly seek to recover from the Trump Defendants, the money they principally seek is money they paid to ACN.  (*Id.*, ¶26 (alleging losses made up of "the initial fee to sign up with ACN," "renewal fees," "expenses attending

meetings and traveling to conventions," the costs of "business tools," and "other expenses in attempting to recruit customers and other participants.").)

Plaintiffs' allegations also directly target ACN.  They assert that ACN was a "scam" and a "pyramid scheme."  (*Id.*, ¶¶20, 218, 255.)  It allegedly made "secret payments" to Defendants to fraudulently promote ACN's IBO opportunity.  (*Id.*, ¶¶16, 17, 138, 139.)  According to Plaintiffs, however, "the likelihood of commercial success for an average new [IBO]" was "miniscule."  (*Id.*, ¶18.)  The Defendants allegedly "falsely misrepresented (1) the level of risk inherent in the ACN business opportunity; (2) the potential profitability to consumers of the ACN business opportunity and MLMs in general; and (3) the market for ACN's products and services." (*Id.*, ¶106.)

As a result, Plaintiffs claim that they have not (and could not) achieve a reasonable probability of financial success by "investing" in ACN.  (*Id.*, ¶109.)  That "business opportunity," they assert, has generated "a litany of [consumer] complaints." (*Id.*, ¶121.)  Further, Plaintiffs allege that ACN's videophone—one of its product offerings—"was doomed almost from the outset," (*id.*, ¶124), "less technologically advanced than any of its competitors," (*id.*, ¶136), and "anything but amazing," (*id.*, ¶124.  Plaintiffs specifically seek to recoup their "invest[ments]," which they calculate by subtracting the amount ACN paid them from the amount they paid ACN (or otherwise spent becoming IBOs). (*See, e.g.*, *id.*, at ¶¶406–408.)

3.    Despite not naming ACN as a defendant Plaintiffs quickly dragged ACN into the litigation, serving it with a 14-page subpoena seeking 32 categories of

documents.  Plaintiffs' requests sought ACN's confidential and proprietary business information, including ACN's quarterly revenue and loss information for a period of 15 years, all IBO enrollment information, IBO compensation information, and much else.  To resolve the dispute with Plaintiffs—created by Plaintiffs' complaint and the allegations against ACN it contains—ACN invoked its arbitration rights under the IBO Agreements with Plaintiffs.  Plaintiffs resisted.  ACN tried to initiate arbitrations against Plaintiffs, but the AAA rejected ACN's filings because ACN had not provided Plaintiffs' actual names or a copy of the particular IBO agreement they had signed.[1]

ACN then asked the district court, pursuant to FAA § 4, to compel Plaintiffs to arbitration to resolve the discovery motion Plaintiffs were currently pursuing, as well as "all other disputes arising out of or in connection with their IBO Agreements, whether those disputes are with ACN or the Trump Defendants."  The district court orally denied ACN's motion to compel arbitration.  (App.556–558.)  The court framed the dispute between ACN and Plaintiffs narrowly and only from the perspective of the Plaintiffs, not from the perspective of ACN—the contractual counterparty actually seeking to invoke arbitration.  Therefore the district court focused exclusively on the discovery dispute and ignored the controversy as framed in

---

[1] The District Court has now lifted the pseudonymity order. *See* Doc. 327, Case No. 1:18-cv-09936.

Plaintiffs' Complaint and ACN's arbitration demand concerning alleged violations of and liability under the IBO Agreements.

4.      ACN filed an interlocutory appeal of the district court's denial of the motion to compel arbitration. The Second Circuit stayed proceedings pending appeal, which temporarily preserved ACN's arbitration rights.

ACN argued that the district court had misapprehended what ACN sought to arbitrate—it was neither just the discovery dispute nor the entire pending lawsuit against the defendants, but was instead the controversy between ACN and plaintiffs. Pointing to the text of the FAA and *Vaden v. Discover Bank*, 556 U.S. 49 (2009), ACN explained that a controversy between parties to an arbitration agreement need not itself be in litigation for a federal court to compel arbitration, and that, but for the arbitration clause, the district court would have subject-matter jurisdiction over its controversy with Plaintiffs on the same basis that the court had subject-matter jurisdiction over the underlying suit between Plaintiffs and the Trump Defendants— jurisdiction which had been invoked by Plaintiffs themselves.

The Court of Appeals affirmed, however, holding that there was "no actual case or controversy between the plaintiffs and ACN (largely, it would appear, because the plaintiffs chose not to assert one) and therefore no subject-matter jurisdiction." (Op. at 37.)   In its view, this conclusion followed from the facts that the "plaintiffs did not file any claims against ACN, ACN did not intervene in the underlying litigation, has not been impleaded, and is not a party to the proceedings." (*Id.* at 38.) The panel did

not address this Court's recognition in *Vaden* that the "parties' underlying dispute may or may not be the subject of pending litigation," its tethering of that recognition to the text of § 4 of the FAA, or its acknowledgment of the reality that a "party often files a § 4 petition to compel arbitration precisely because it does not want to bring suit and litigate in court."  556 U.S. at 63 n.13.

Importantly, the Second Circuit acknowledged that the Eleventh Circuit had prescribed the analysis that ACN advocated, and had reached a conclusion contrary to its own, in *Community State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011). But the Second Circuit rejected the "Eleventh Circuit's reasoning," finding it "inconsistent with *Vaden*" and therefore "unpersuasive." (Op. at 39.)  The Second Circuit instead purported to follow an unpublished decision from the Fourth Circuit and, like the district court, framed the dispute only from Plaintiffs' perspective, holding that the only dispute between ACN and the plaintiffs was about discovery.

5.    ACN sought rehearing and rehearing en banc of the Second Circuit's decision, and requested a continued stay of proceedings during that time.  The Second Circuit denied both requests, and the proceedings in the district court have resumed. Plaintiffs continue to seek voluminous discovery from ACN, including of proprietary business information, *see* Doc. 338, Case No. 1:18-cv-09936, while maintaining their allegation that ACN is a "pyramid scheme" and a "scam," (App.43, ¶¶20, 218, 255). If those proceedings continue while ACN pursues a writ of certiorari to this Court, ACN's right to arbitrate the dispute between it and Plaintiffs will be irreparably

harmed while its business reputation continues to suffer from media reporting on the Plaintiffs' scurrilous allegations against non-party ACN.   Therefore, ACN respectfully requests the proceedings below be stayed pending its petition of certiorari to this Court.

## **ARGUMENT**

Under 28 U.S.C. § 2101(f), this Court may stay proceedings in the district court pending the disposition of applicants' forthcoming petition for a writ of certiorari. In reviewing such a stay application, this Court considers whether there is (1) "a reasonable probability that certiorari will be granted," (2) "a significant possibility that the judgment below will be reversed," and (3) "a likelihood of irreparable harm (assuming the correctness of the applicant's position) if the [proceedings are] not stayed." *Barnes v. E-Systems, Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1302 (1991) (Scalia, J., in chambers); *see also Deaver v. United States*, 483 U.S. 1301, 1302 (1987).  "In close cases," the Court will further "balance the equities and weigh the relative harms to the applicant and to the respondent." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam).

This case satisfies those criteria.  The court of appeals erroneously decided an important question of law, and created a circuit split in doing so.  This case is an appropriate vehicle for review. If proceedings in the district court are not stayed, applicant will lose its bargained-for arbitration rights, face disclosure of its most-sensitive business information, continue to suffer reputational damage as the media reports on Plaintiffs' allegations, and accordingly suffer irreparable harm.  And the

10

balance of the equities weighs strongly in applicant's favor.  The application for a stay
should be granted.

## I.  THERE IS A REASONABLE PROBABILITY THIS COURT WILL GRANT CERTIORARI.

The Second Circuit's decision creates an acknowledged circuit conflict
regarding the proper scope of FAA § 4.  That split should be resolved by this Court to
prevent signatories from losing arbitral rights by the mistake of geography, especially
considering the importance of the Second Circuit as a forum for many arbitration-
related disputes.

### A.  The Decision Below Creates a Circuit Conflict.

The Second Circuit was clear:  it unequivocally rejected the Eleventh Circuit's
decision *Community State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011), finding it
inconsistent with this Court's holdings in *Vaden*.

In *Strong*, the Eleventh Circuit construed FAA § 4 and *Vaden* in the context of
a controversy between signatories to an arbitration agreement, where only one of the
signatories was involved in pending litigation.  That both signatories were not in
litigation was due to the plaintiff attempting to plead around its co-signatory, an
artful dodge that the Eleventh Circuit rightly rejected.

Specifically, in *Strong*, an individual brought a putative class action in state
court against the local marketer of a loan, alleging that the loan was illegal under
state law.  The bank that made the loan, despite not being named as a defendant in
the state-court action, then asked a federal court to compel arbitration of its dispute

11

with the plaintiff.  *Id.* at 1249–51.  Considering the full nature of the dispute between the bank and the plaintiff—including the bank's representations and the plaintiff's allegations concerning the bank in the state-court action—the Eleventh Circuit correctly determined that the dispute presented a hypothetical coercive claim against the bank that would support federal jurisdiction, and therefore held that the district court had subject-matter jurisdiction over the bank's request to compel arbitration. *See id.* at 1261.

The *Strong* court, invoking *Vaden*, "look[ed] through" the petition to compel arbitration to determine whether the "substantive dispute between the parties" was one over which the federal courts would ordinarily have jurisdiction.  To "understand the 'full flavor' of the parties' underlying dispute," the Eleventh Circuit "examine[d] the Bank's allegations in its FAA petition," as well as the plaintiff's "state-court complaint" and "correspondence between the parties regarding arbitration."  *Id.* at 1257.  Examining those allegations, the court held that a federally justiciable dispute between the bank and the plaintiff existed, which gave the court jurisdiction to compel the matter to arbitration under FAA § 4.

The Second Circuit rejected this analysis, holding instead that plaintiffs can simply plead around their co-signatories by not naming them in the *caption* of the complaint—regardless of the dispute created by the *substance* of the complaint.  The court did not consider ACN's allegations about the full-fledged dispute, nor did it meaningfully address the myriad allegations in the Complaint that implicate ACN in

alleged wrongdoing. "ACN's characterization of the underlying litigation as a dispute between the plaintiffs and ACN over their respective obligations and performance under the IBO agreements," according to the Second Circuit, "was inconsistent with the plaintiffs' complaint and the claims asserted against the defendants." The court did not describe how it was inconsistent (other than that Plaintiffs had not yet named ACN as a defendant); why the complaint did not implicate ACN's and Plaintiffs' rights under the IBO Agreements, given that Plaintiffs themselves alleged ACN "was central to the aspect of Defendants' fraudulent scheme that is challenged by this action," (App.209, ¶16); or address Plaintiffs' claimed damages, which stem directly from the very agreements that contain the arbitration provisions at issue. Instead, the court held that the "actual litigation" should frame the controversy, which, to the Second Circuit, meant that Plaintiffs get to frame their own controversy via the names in the caption of the complaint.

### B.    The Question Presented Is Important and Warrants Review.

1.    This case presents an important question and is an apt vehicle for resolving it. The Second Circuit's decision allows plaintiff-signatories to race to the federal courthouse, sue only a non-signatory for claims implicating their contractual counterparty, and thereby defeat arbitration by claiming that the non-defendant signatory cannot invoke a court's jurisdiction to enforce the arbitration agreement at issue in the lawsuit. This undermines the FAA by permitting a party resisting arbitration to avoid arbitration by suing a non-signatory, while litigating arbitrable claims against the non-defendant signatory. The FAA commands that federal courts

enforce arbitral rights, not provide a safe harbor for those wrongly resisting their arbitration obligations.

The Second Circuit's decision puts form over function, allowing the plaintiff to avoid arbitration, even if the "actual dimensions" of the "full-fledged" controversy encompass a co-signatory, by simply refusing to name the co-signatory in the caption of the complaint. Indeed, the Second Circuit seemed to recognize Plaintiffs' artful pleading here but condoned it anyway, holding that "[t]here is no actual case or controversy between the plaintiffs and ACN (largely, it would appear, because the plaintiffs chose not to assert one) and therefore no subject-matter jurisdiction." *Doe v. Trump Corp.*, Nos. 20-1228-cv, 20-1278-cv, 2021 U.S. App. LEXIS 22317, at \*36 (2d Cir. July 28, 2021).

But nothing in *Vaden* or the FAA says that a party to an arbitration agreement is not an "aggrieved party" just because the plaintiff has not formally named its co-signatory. Were that the case, any number of arbitration agreements could be circumvented by, say, suing agents, employees, and spokespeople, rather than the co-signatory itself. *Vaden* and § 4, properly construed, prevent such gamesmanship by having courts look to the "whole controversy" between the co-signatories; neither invites courts to prioritize a petitioner's or plaintiff's view of the controversy, rather than seeking the true "substantive dispute" between the parties.

But the Second Circuit has picked sides in this plaintiff-said-petitioner-said argument, planting itself firmly on the side of litigants who sue around their co-

14

signatories, rather than searching for the actual, full-fledged controversy between the parties. To be sure, *Vaden* was clear that courts should not look just to the "controversy the § 4 petitioner seeks to arbitrate." But neither does it say that the "whole controversy" can be determined by skimming the case caption.

The Eleventh Circuit's approach, which considers the arguments of both plaintiffs and petitioners, while evaluating other materials (including the relevant complaint, if any), is consistent with § 4's text and with *Vaden*'s holding construing that text. The Second Circuit's approach, in contrast, will consistently fail to capture the whole controversy because it listens to only one side of the argument. The results will be predictable: more artful pleading and more broken promises to arbitrate.

2. The practical impacts of the Second Circuit's decision are far-reaching. Rather than look to the actual complaint—which clearly implicated a dispute between plaintiff and ACN—the Second Circuit looks only to the case caption, thereby allowing plaintiffs to plead around ACN, while dragging ACN into the litigation (via its allegations and discovery requests) and besmirching its name and business model in the process. Surely other signatories will see the Second Circuit's decision as an easy workaround, and will have now caselaw to support their efforts to keep clearly arbitrable disputes out of arbitration. They may do so, as plaintiffs did here, by litigating against their signatories by proxy, using individuals that promoted a business to make allegations against the business itself. Or they might do so by suing companies that facilitated a loan transaction, rather than suing the bank that

15

actually made the loan, as in *Strong* (though that court rightly saw through the plaintiffs' efforts).  651 F.3d at 1248–51.  Or they may sue subsidiaries, affiliated companies, employees, board members, or executives to do the same.  Opportunities abound; lawyers are creative.

The Second Circuit's decision has thus created uncertainty regarding the strength of signatories' arbitral rights and the federal courts' commitment to upholding those rights.  ACN thought that allegations from IBOs challenging its business model and seeking damages under the IBO agreements would be arbitrated. That certainly seemed clear from the face of the agreements.  This expectation has proved wrong, however, because of Plaintiffs' artful pleading and the Second Circuit's endorsement of it.  Allowed to stand, the Second Circuit's decision undermines parties' bargained-for contract rights and will no doubt lead to increased, sometimes futile, litigation to enforce arbitral rights, when the very purpose of those rights was to avoid litigation in the first place.

At bottom, § 4 is designed to make sure arbitrable disputes are arbitrated, consistent with signatories' expectations. The Second Circuit's decision here interferes with that goal, though by being under-inclusive rather than over.  This is worse.  If a dispute is mistakenly sent to arbitration when it is not actually arbitrable, the arbitrator can serve as a check on the court's error by denying that the dispute is, in fact, arbitrable.  There is no such check where a court refuses to even consider whether a dispute is arbitrable in the first place, as happened here.  The signatory is

16

instead left in a lurch, unable to have court or arbitrator consider the arbitrability of the parties' dispute.

The Second Circuit's approach hamstrings common sense and invites abuse. It forces courts to ignore the actual dispute between parties—even as framed by the plaintiff's own complaint—and elevates form over substance. That is plainly contrary to *Vaden*, which eschewed overly formalistic frameworks to ensure that courts could look to the actual, entire controversy between the parties.

3.    This case is an apt vehicle in which to decide the important question presented. That question is a pure question of law, and it formed the sole relevant basis for the court's decision below as to ACN's arbitral rights. The Second Circuit fully analyzed the Eleventh Circuit's decision in *Strong*, and rejected it for clearly articulated reasons. It thus affords this Court a chance to clarify the contours of *Vaden* and announce which court (if either) got it right. In doing so, the Court's decision would greatly aid courts in determining what, exactly, they should look at when they look through a § 4 petition—a question largely left open by *Vaden*. The forthcoming petition for certiorari in this case will thus provide the Court with an ideal opportunity to consider and resolve the question presented.

## II.    THERE IS A SIGNIFICANT POSSIBILITY THIS COURT WILL REVERSE THE COURT OF APPEALS' DECISION.

There is a significant possibility, if not a high likelihood, that this Court will reverse the Second Circuit's decision. It is contrary to the text of § 4, at odds with

*Vaden*, conflicts with the reasoned opinion of its sister circuit, and undermines the federal policy favoring arbitration.

1. Section 4 of the FAA provides that a party—there, meaning a signatory to an arbitration agreement—aggrieved by a co-signatory's failure to arbitrate may petition a United States District Court for an order compelling the controversy between them to arbitration. Nothing in the statute requires the "controversy" to be one currently in litigation before the courts compels arbitration. *Vaden*, 556 U.S. at 68 n.16. Instead, § 4 provides that courts should consider whether, save for the arbitration agreement, they would have jurisdiction over the "controversy" between the signatories.

2. The Second Circuit's decision failed to consider the "controversy" between the signatories, electing instead to frame the controversy as set forth narrowly by Plaintiffs in the caption of their complaint. This is precisely what this Court has said courts should *not* do.

The plaintiffs in this case have sued the Trump Defendants, not ACN. Yet they have alleged that ACN's marketing materials were fraudulent and misleading; that its business model was unlawful; and that fees paid to ACN, less monies recouped, are the measure of damages. ACN is at the heart of their complaint. The only reason ACN is not a defendant is "because the plaintiffs chose not to assert" claims directly against ACN, despite threatening them in their suit, as the Second Circuit plainly recognized. (Op. at 37.)

18

ACN disputes all of the plaintiffs' allegations; it maintains that its marketing materials were not fraudulent or misleading, that its business model is lawful, and that plaintiffs have no entitlement to any monies that they paid to ACN under their IBO agreements. If the controversy between ACN and plaintiffs were the subject of litigation, federal jurisdiction would be proper, so § 4 enables ACN to seek an order compelling arbitration from any district court.

The Second Circuit's contrary conclusion depends entirely on the fact that the Plaintiffs chose not to name ACN as a defendant, even though the allegations of their complaint implicate a controversy with ACN that is not yet in court. According to the court below, the "only actual controversy implicated in the underlying suit is the dispute between the plaintiffs and the defendants," (Op. at 38), and none "between plaintiffs and ACN (largely, it would appear, because the plaintiffs chose not to assert one)," (*id.* at 37).

*Vaden* said that a court should not "dream up counterfactuals when actual litigation has defined the parties' controversy." 556 U.S. at 68. According to the Second Circuit, the litigation between the plaintiffs and their chosen defendants has "defined" the controversy between the plaintiffs and ACN. By choosing not to sue ACN, the panel opined, the plaintiffs had "defined" there to be no controversy with ACN. (See Op. at 37.)

The Second Circuit believed its conclusion followed from *Vaden*, but the situation is fundamentally different. In *Vaden*, the parties to the arbitration

19

agreement were involved in litigation with each other; the Supreme Court held that under those circumstances, all of the litigation—and not merely the counterclaims—had to be considered in assessing the existence of federal jurisdiction. 556 U.S. at 67. The Supreme Court also made clear in *Vaden*, however, that § 4 enables a party that has not already sued or been sued to compel arbitration. *Id*. at 68 n.16. Indeed, the Court recognized: "A party often files a § 4 petition to compel arbitration precisely because it does not want to bring suit and litigate in court." *Id*. at 63 n.13. That is the case here.

The rule announced by the Second Circuit eliminates these instructions from *Vaden*. Under that decision, where a party to an arbitration agreement threatens its counterparty with allegations of liability and disparages its reputation via a lawsuit against someone else, the strategic decision not to name the counterparty as a defendant disables § 4, allowing the plaintiff alone to define the controversy.

3.      Nor does the Second Circuit's decision find support in the Fourth Circuit's unpublished opinion in *Community State Bank v. Knox*, 523 F. App'x 925 (4th Cir. 2013), a case, like *Strong*, involving a bank seeking to compel arbitration against plaintiffs who had sued loan servicers but not the bank. The Second Circuit said that it did "agree with the reasoning of *Knox* and conclude that it applies with equal force here." (Op. at 41.)  Not so.

The Fourth Circuit in *Knox* did not "reach the same result" as the Eleventh Circuit in *Strong*, but that was not because it adopted different reasoning or a

different rule. 523 F. App'x at 931. Rather, the different result owed to "the facts presented [t]here." *Id.* The Fourth Circuit recognized—*contra* the Second Circuit's opinion—that "no preexisting litigation defines the controversy between Knox and CSB." *Id.* But it determined that, on the facts presented, there could not be any controversy between them. *Id.* That was because the "*Knox* complaint specifically disclaim[ed] any future action by Knox against CSB"; any "claims related to the *Knox* allegations" would "be time-barred"; given the indemnification agreement between the bank and the defendant loan servicers, the bank had "no stake in the Knox action"; and in fact the bank had never "asked Knox to arbitrate any claims at all." *Id.* at 930–31.

Every one of those facts differs materially from the case here: the Plaintiffs' complaint has not specifically disclaimed future action against ACN; any related claims would not necessarily be time-barred; it is not at all established that ACN has no stake in the action; and ACN has sought to arbitrate against the plaintiffs. Far from supporting the Second Circuit's decision, *Knox* is consistent with *Strong* and supports compelling arbitration here. The Second Circuit's opinion stands alone, on the wrong side of a widening circuit split.

4.     Plaintiffs, by winning a race to the federal courthouse, are not granted a license to control the parameters of the parties' dispute.  Nothing in *Vaden* provides to the contrary, and maintaining a strong federal policy favoring arbitration requires the Second Circuit's decision be reversed.  True, a petitioner's partial view of the

controversy should not distract courts from the true scope of the underlying dispute. But, under § 4, that cuts both ways. The statute does not say that the federal courts have jurisdiction to compel disputes to arbitration only where those courts already have jurisdiction over a plaintiffs' claims against its chosen named defendants. In fact, *Vaden* expressly rejected such a holding.

Yet the Second Circuit's holding here countermands *Vaden* in just this way. It allows a plaintiff resisting arbitration to complete its end run around an arbitration agreement by first filing a federal complaint, defining the controversy as it sees fit, and then stonewalling efforts to arbitrate against the aggrieved signatory. In effect, then, the aggrieved signatory can compel arbitration only if it is named in the suit. Even intervention, which is not necessary under the FAA in any event, will not help, since the Second Circuit's approach still looks to the dispute as framed only by Plaintiffs' choice of named defendants. Plus, requiring intervention to assert arbitral rights undermines the very purpose of arbitration—namely, to *avoid* the risks and responsibilities of litigation in the first place.

Accordingly, there is a significant possibility that the Court would reverse the Second Circuit's decision here, finding it contrary to § 4, this Court's instructions in *Vaden*, and the federal policy favoring arbitration.

## III.   ABSENT A STAY, ACN WILL SUFFER IRREPARABLE HARM.

Absent a stay of proceedings in the district court, applicant will suffer irreparable harm. Without a stay, the parties' dispute will likely be litigated on the merits in a federal court before a jury, not before an arbitrator. ACN will accordingly

22

be denied the contractual right to arbitrate that it has spent years protecting, and will have its proprietary business information—which Plaintiffs agreed to protect—subject to public disclosure.

The harms that follow from wrongful denials of motions to compel arbitration are well-known. Congress itself has recognized them, and has thus authorized immediate appeals from a district-court decision that "refus[es] a stay of any action under section 3" of the FAA, "den[ies] a petition under section 4 of [the FAA] to order arbitration to proceed," or "den[ies] an application under section 206 [of the FAA] to compel arbitration," while prohibiting appeals from orders granting motions to compel arbitration. 9 U.S.C. § 16(a)(1)(A)-(C). The FAA's interlocutory-appeal provisions "avoid[] the possibility that a litigant seeking to invoke his arbitration rights will have to endur[e] a full trial on the underlying controversy before [he] can receive a definitive ruling on whether [he] was legally obligated to participate in such a trial in the first instance." *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 214 (3d Cir. 2007) (internal quotation marks and citation omitted; alteration in original). If ACN "must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever." *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984).

The harm is amplified here by the nature of Plaintiffs' claims against ACN. Though they have refrained from naming ACN as a defendant in their lawsuit, Plaintiffs have alleged that ACN is a scam, that its marketing materials are

fraudulent, and that its business model is unlawful; and they have sought voluminous, confidential business information from ACN by subpoena. ACN seeks to resolve its controversy with Plaintiffs by private arbitration, as bargained for, and not via public trial in which ACN can act as only a bystander as Plaintiffs proceed to damage its business reputation and disparage its business model and product offerings.

This litigation already has caused ACN material financial and reputational harm that it cannot meaningfully mitigate. Numerous articles have mischaracterized ACN's business model as a marketing scam, scheme, and fraud. The Washington Post, for example, echoed Plaintiffs' allegation that former President Trump "endorsed [a] *pyramid scheme*," Washington Post, *Trump ordered to expand document search in suit alleging he endorsed pyramid scam*, available at https://www.washingtonpost.com/national-security/trump-ordered-to-expand-document-search-in-suit-alleging-he-endorsed-pyramid-scam/2020/03/14/c903fa0e-6579-11ea-acca-80c22bbee96f_story.html (emphasis added) (last accessed Dec. 13, 2021). Law360 similarly repeated Plaintiffs' claim that "the Trumps used [the Apprentice] to hype ACN and conned them and others … to back what essentially was a worthless business venture. The suit says Trump and his family secretly controlled ACN and received secret payments." Law360, *"Apprentice" Outtakes Relevant in Fraud Suit Against Trump*, available at https://www.law360.com/articles/1262241/ (last accessed Dec. 13, 2021). CNN chimed

in to describe ACN's business model as "a fraudulent marketing scheme to prey on investors," CNN, *Judge allows fraud suit against Trump, family and company to proceed,* available at https://www.cnn.com/2020/05/19/politics/fraud-suit-trump-family-company/index.html (last accessed Dec. 13, 2021), and The Hill characterized the suit as a "class-action suit accusing Trump of promoting [a] pyramid scheme," The Hill, *Judge refuses to halt class-action suit accusing Trump of promoting pyramid scheme*, available at https://thehill.com/regulation/court-battles/498488-judge-refuses-to-halt-class-action-suit-accusing-trump-of-promoting (last accessed Dec. 13, 2021).

The harms to ACN's reputation from this litigation continue.  After the Second Circuit's decision affirming the district court, numerous press statements repeated Plaintiffs' allegations that ACN is a "marketing scam targeting the poor and working class," Reuters, *Trump, children cannot arbitrate marketing scam case – U.S. appeals court*, available at https://www.reuters.com/world/us/trump-children-cannot-arbitrate-marketing-scam-case-us-appeals-court-2021-07-28/ (last accessed Dec. 13, 2021), and a "get-rich-quick scheme" that "conned victims," Yahoo, *Judge shoots down attempt by Trump family to keep lawsuit on pyramid scheme hidden from public view*, available at https://www.yahoo.com/entertainment/judge-shoots-down-attempt-trump-130048329.html (last accessed Dec. 13, 2021).  This negative press coverage translates into material harm to ACN that is amplified with each iteration of media coverage.  As ACN has described previously, the company has received multiple

inquiries from IBOs, employees, and potential IBOs who have seen the media coverage. It has been clear from these inquiries that many have been left with the false impression that ACN is a defendant in a class action for fraud. IBOs have reported to ACN concern that these media reports are dissuading potential IBOs from joining ACN and customers from signing up for ACN's services. This is a fundamentally unfair situation for ACN.

ACN already has suffered reputational harm as the subject of a dispute that should never have been litigated, where ACN has no real opportunity to defend itself. ACN will continue to suffer that harm absent a stay.

## IV.   THE EQUITIES FAVOR A STAY.

Finally, the equities strongly favor staying the district court proceedings. Plaintiffs' complaint has been pending for over three years. The information that Plaintiffs seek from ACN via the subpoena has been subject to a litigation hold since fall 2019. That hold remains in place. The slight additional delay occasioned by a stay while this Court considers ACN's petition for certiorari will not harm Plaintiffs in any meaningful way, and certainly nowhere near the degree of harm ACN will suffer if a stay is denied.

Public policy also favors a stay. There is a strong federal policy favoring arbitration and the Second Circuit's decision undermines that policy. At a minimum, the effect of that decision on ACN should be placed on hold until this Court has time to consider ACN's forthcoming petition, lest the parties' resources and the district

26

court's time be wasted by litigating a case that will ultimately end up in arbitration, if this Court reverses.

## CONCLUSION

The application for a stay of proceedings pending a petition for a writ of certiorari should be granted.

Respectfully submitted,

**SQUIRE PATTON BOGGS (US) LLP**

By: _Benjamin C. Glassman_

Benjamin C. Glassman
G. Luke Burton
Ellen H. Phillips
201 E. Fourth Street, Suite 1900
Cincinnati, OH  45202
Telephone:  513-361-1200
benjamin.glassman@squirepb.com

27