10250 Constellation Blvd., Suite 1100
Los Angeles, California 90067
Tel: +1.424.653.5500  Fax: +1.424.653.5501
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Moscow |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

LATHAM & WATKINS LLP

January 4, 2022

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *Doe, et al. v. The Trump Corporation,* 18-cv-09936 (LGS)

Dear Judge Schofield:

      We write on behalf of nonparties JMBP, LLC ("JMBP") and Metro-Goldwyn-Mayer Studios Inc. ("MGM," collectively the "MGM Nonparties"), in response to Plaintiffs' December 21, 2021 letter (Doc. No. 350) requesting (for at least the second time) that this Court reconsider its Order (Doc. No. 343) denying Plaintiffs' request that JMBP digitize, copy, and send hundreds of hours of footage to Plaintiffs.

      Throughout the two-year history of Plaintiffs' motion, the security of the physical footage has been the MGM Nonparties' highest priority. Subject to that concern, the MGM Nonparties have been cooperative with Plaintiffs in all respects, including a substantial document production. The MGM Nonparties have made every reasonable effort to accommodate the Plaintiffs' review without compromising the security of the footage at issue, and then some. Plaintiffs' persistent requests for reconsideration after this Court definitively ruled on the issue is incredibly frustrating, particularly when the MGM Nonparties have already undertaken the substantial burden of coordinating and staffing an on-site review with security, production services, and legal department personnel.

      After the Court's initial order requiring the MGM Nonparties to permit access to the footage, the MGM Nonparties worked in good faith to arrange the planned on-site review. Two days after the discovery stay was lifted, on July 30, 2021, Plaintiffs contacted the MGM Nonparties to inquire how they "intend to facilitate Plaintiffs' review of the Relevant Footage as soon as possible". Counsel for the MGM Nonparties promptly began working with Plaintiffs on preparations for an in-person review, including preparing an inventory of the relevant footage and obtaining quotes for equipment rental and delivery—eventually planning, at Plaintiffs' request, for Plaintiffs to review the footage on-site in late September. Then, on September 21, 2021, Plaintiffs suddenly changed course, demanding instead that the MGM Nonparties provide digital copies of the footage. When the MGM Nonparties declined for the reasons already briefed, Plaintiffs sought reconsideration from this Court, not once, but twice, on November 19 and November 29, 2021.

Only after the Court denied Plaintiffs' request for a second time, on November 30, 2021, did Plaintiffs finally pursue the in-person review that the MGM Nonparties had been offering since August.

At that point—and despite the MGM Nonparties previously informing Plaintiffs they would need two weeks of lead time to arrange the review—Plaintiffs demanded that the MGM Nonparties provide access to the footage immediately. When the MGM Nonparties explained that MGM's offices would be closed from December 20-31, which would permit only four days of in-person review (necessitating a break and additional travel), Plaintiffs nonetheless insisted on commencing the on-site review the week of December 13, 2021. At Plaintiffs' request, the MGM Nonparties arranged to keep both the footage and the reviewing equipment accessible so that Plaintiffs could continue their review at the end of MGM's holiday closure, beginning January 3, 2022. That equipment remains on site at MGM's offices, as does the physical media, pending Plaintiffs' return to Los Angeles.

Plaintiffs now ask the Court to set aside these substantial efforts and require the MGM Nonparties to start over. While the MGM Nonparties are sympathetic to Plaintiffs' concerns, the entire world continues to cope with the pandemic. That two members of the Plaintiffs' team became mildly ill with the Omicron variant at some point does not mean that the in-person review is unsafe. Indeed, the review itself was conducted safely, consistent with current best practice COVID-19 protocols, and no MGM employees on site became ill as a result of their exposure to these individuals, nor (apparently) did other members of Plaintiffs' team.

Furthermore, Plaintiffs' claim that substantial relevant footage will need to be copied should be viewed with skepticism. Plaintiffs initially identified certain "priority" materials believed most likely to contain relevant footage. Of the approximately 100 pieces of media Plaintiffs have reviewed thus far, Plaintiffs have requested copies of 49. Even this—from Plaintiffs' "priority" set—appears to be over-designation, as Plaintiffs have simply demanded that the *entirety* of each piece of media be copied rather than only the relevant portion. Moreover, Plaintiffs have requested copies of duplicative footage, as multiple cameras capture the same scene. In any event, regardless of what Plaintiffs might consider relevant, Plaintiffs cannot use hundreds of hours of video footage in deposition, or at trial. The MGM Nonparties suggest that the existing in-person review serves both the MGM Nonparties' interest in security and all parties' interests in efficiency by requiring the Plaintiffs to be judicious in their copying requests—especially if the Court requires the Plaintiffs to designate only the limited portions of each piece of media that they *actually* need.

The MGM Nonparties respectfully request that this Court stand by its original rulings.

Respectfully submitted,

LATHAM & WATKINS LLP
Marvin S. Putnam
Jessica Stebbins Bina (*admitted pro hac vice*)

cc: All counsel of record (via ECF)