# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL     212.763.0884
DIRECT EMAIL   rkaplan@kaplanhecker.com

April 8, 2022

**BY ECF**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *Catherine McKoy, et al. v. The Trump Corporation, et al.,* 18-cv-09936 (LGS)

Dear Judge Schofield:

      We write on behalf of Plaintiffs to respectfully request a pre-motion conference pursuant to Rule III.A of Your Honor's Individual Rules concerning certain categories of relevant documents that Defendants have refused to search for or produce. Pursuant to the Court's order, ECF No. 377, Plaintiffs met and conferred again with Defendants on March 30 to attempt to resolve this dispute without Court intervention. Defendants stood on their blanket refusal to search for or produce any of the categories of documents identified below. Accordingly, Plaintiffs file this letter to respectfully seek the Court's assistance.

      As the Court knows, this case concerns a complex decade-long fraudulent scheme, in which Plaintiffs allege that Defendants were paid millions of dollars in secret to defraud Plaintiffs and thousands of others just like them into investing in a multi-level marketing business opportunity offered by American Communications Network ("ACN"). *See, e.g.*, 2d Am. Compl. ("SAC") ¶¶ 1-3, 5-11, 282-304 (Sept. 14, 2021), ECF No. 333. As the SAC details, each of the Defendants participated in this fraudulent scheme in distinct ways, and they used various corporate and charitable entities affiliated with The Trump Organization to carry it out. *See, e.g.*, *id.* ¶¶ 17-19, 86-103, 179-180, 282-304.

      In order to avoid duplication and undue burden, Plaintiffs' document discovery efforts initially focused on seeking communications and records from Defendant The Trump Corporation. Plaintiffs' persistence overcame many obstacles imposed by Defendants, *see, e.g.*, ECF Nos. 198, 344, 352, 358, but even to date, Defendants have produced only about 3,500 documents and other materials. Accordingly, Plaintiffs propounded 49 RFPs to Defendants Donald J. Trump, Donald Trump, Jr., Ivanka Trump, and Eric Trump (the "Individual Defendants") in November 2021. The Individual Defendants, however, agreed to produce documents in response to *only one of them*, and even there only in part.

KAPLAN HECKER & FINK LLP

By this letter, we seek the Court's intervention with respect to the following three relatively narrow categories of documents that are important as we proceed to depositions. As an initial matter, it is well-settled that Plaintiffs are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). And relevance is an "extremely broad concept" in discovery: material is relevant "if it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." *Virtu Fin. Inc. v. AXIS Ins. Co.*, No. 20 Civ. 6293, 2021 WL 3862857, at *2 (S.D.N.Y. Aug. 30, 2021).

1. **The Eric Trump Foundation's Involvement in the Promotion of ACN**

Defendants categorically refuse to search for documents concerning the Eric Trump Foundation ("ETF"), now known as Curetivity, notwithstanding the multiple key ways that Defendants used that entity in connection with the fraudulent promotion of ACN. Indeed, discovery to date has confirmed that ETF was █████████████████████████████ ███████████████████████████████

*First*, ETF's Supervisor, Lynne Patton, who oversaw much of the engagement between ACN and ETF and has hundreds of responsive emails (which Plaintiffs obtained in response to other requests), indicated in one such email that ████████████████████████████████ ████████████████████████████████████████████████████████████████ And Plaintiffs have obtained additional documents, via a public records request to the New York Attorney General, showing that ETF paid hundreds of thousands of dollars back to Trump-affiliated entities in connection with ETF fundraisers, including what appear to be tournaments sponsored by ACN and its executives. *See, e.g.*, The Curetivity Foundation, Minutes of the Meeting of the Board of Directors (Jan. 23, 2018). While this evidence strongly suggests that money flowed ████████████████ to Defendants, Defendants refuse to provide appropriate discovery about such transfers and transactions, or related agreements or communications.

*Second*, documents obtained in response to other requests also confirm that ACN's support of ETF was inextricably tied up with Defendants' promotion of ACN. *See, e.g.*, ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████ Here too, while the record confirms that relevant evidence exists, Defendants refuse to conduct a proper search for agreements, communications, and documents concerning ETF's involvement in the promotion and endorsement of ACN.

2. **The Individual Defendants' Compensation**

The Individual Defendants also refuse to respond to a tailored request for information sufficient to show their annual compensation. Plaintiffs allege that the Individual Defendants participated in the fraud at issue in exchange for money, and that their compensation was not disclosed to the recruits they targeted. *See, e.g.*, SAC ¶¶ 2-3. Their compensation is thus the "quo" in a "quid pro quo" at the heart of this case. Defendants have produced documents reflecting ████████████████████████████████████, but they have represented that there was no

# KAPLAN HECKER & FINK LLP

3

specific stream of payments from ACN directly to the other Individual Defendants, and on that basis Defendants refuse to provide *any* discovery about the Individual Defendants' compensation.

As set forth above, however, the existing records strongly suggests that ████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ *See United States v. Ferguson*, No. CRIM.3:06CR137CFD, 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007) ("Evidence that links a defendant's financial compensation to his possible motives for participating in an alleged fraud is relevant to proving the fraud."). In addition, Defendants have represented that the Individual Defendants received general compensation for performing their job duties, including in relation to ACN. Because that compensation was thus, at least in part, remuneration for their promotion of ACN, Plaintiffs should be entitled to targeted discovery concerning such compensation.

Accordingly, Plaintiffs seek a limited order compelling the Individual Defendants to produce information sufficient to show their annual compensation from specific Trump-affiliated entities identified in the SAC in connection with Defendants' promotion of ACN, or identified through public records as being linked to such entities, namely: The Trump Corporation, ETF, Trump Organization LLC (d/b/a The Trump Organization), The Trump Organization, Inc., DJT Holdings LLC, DJT Holdings Managing Member LLC, The Donald J. Trump Revocable Trust, Trump National Golf Club, LLC, TNGC Charlotte, LLC, TNGC Charlotte Manager Corp., Trump National Golf Club Member Corp., and T International Realty, LLC.

### 3. Transcripts of Testimony by Defendants and/or Custodians in Other Fraud Cases

Plaintiffs have made a narrowly-tailored request for transcripts of sworn testimony given (1) by Defendants, or by individuals affiliated with Defendants who are noticed to be deposed in this action, and (2) in prior cases or proceedings involving allegations of fraud by the specific corporate or charitable entities at issue in this case (namely, those entities listed above). Defendants categorically refuse to produce any prior transcripts, no matter the witness or subject matter.

Prior testimony concerning allegations of fraud involving the very same entities at issue here are plainly relevant, particularly given Plaintiffs' allegations that Defendants knowingly participated in a fraudulent scheme for more than a decade. *See, e.g.*, *United States v. Watts*, No. S3 09 CR 62 CM, 2011 WL 167627, at *6 (S.D.N.Y. Jan. 11, 2011) (observing evidence of participation in other frauds is "routinely admissible" to establish "knowledge and intent in fraud cases such as this one."). Moreover, prior testimony by individuals testifying in this case may bear on the completeness, accuracy, and veracity of their testimony here. *See United States v. Hale*, 422 U.S. 171, 176 (1975) (noting that "prior inconsistent statements may be used to impeach the credibility of a witness.").

Because Plaintiffs only seek existing transcripts, the request would impose little if any burden. And the Protective Order already resolves any concerns about confidentiality. Accordingly, Defendants should be compelled to produce transcripts of such testimony with accompanying exhibits. *See, e.g.*, *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 112 (S.D.N.Y. 2013) ("defendants shall disclose transcripts of depositions in other RMBS cases where the deposed individual is a custodian in this case").

KAPLAN HECKER & FINK LLP

4

Respectfully submitted,

Roberta A. Kaplan

cc: Counsel of Record (*via* ECF)