

Peter T. Shapiro
77 Water Street, Suite 2100
New York, New York 10005
Peter.Shapiro@lewisbrisbois.com
Direct: 212.232.1322

April 15, 2022

<u>VIA ECF</u>
Honorable Lorna G. Schofield
United States District Judge
United States Courthouse
40 Foley Square
New York, New York  10007

      Re:    *Jane Doe, et al. v. Trump Corp., et al.*
               Case No. 1:18-cv-9936 (LGS)

Dear Judge Schofield:

      We write on behalf of Defendants to address Plaintiffs' April 8, 2022 request for a pre-motion conference as to a discovery dispute concerning document production issues [DE 387].

      Preliminarily, we note that Plaintiffs have subverted Your Honor's rules governing the submission of discovery disputes by submitting two separate letter motions concerning both the above-referenced dispute and a dispute concerning document request responses and production. Those disputes should have been raised in one letter. We will respond separately to each letter.

### ERIC TRUMP FOUNDATION

      The first issue raised by Plaintiffs concerns Defendants' refusal to produce documents concerning non-party the Eric Trump Foundation (the "Foundation"). They contend that ACN's status as a donor to the Foundation somehow makes Defendants' records pertaining to that entity fair game. However, the reality is that the remaining claims in the Amended Complaint focus on alleged misrepresentations by Defendants[1], not the Foundation. While it is clear that the dismissal of the Plaintiffs' RICO claim renders superfluous the allegations about the involvement of such non-parties, Plaintiffs now attempt to create a basis for expansive discovery simply based on ACN's alignment of charitable interests with one of the individual defendants. That ACN might have also made donations to a foundation operated by one of the individual defendants bears no reasonable relationship to the claims at issue, and Plaintiffs' attempt to obtain discovery about the Foundation is simply unnecessary and harassing.

---

[1] Defendants have already produced documents reflecting any payments made by ACN to any of the Defendants for their promotional activities.

Hon. Lorna G. Schofield
April 15, 2021
Page 2

Absent any germane evidence and ignoring the actual claims in the case, Plaintiffs argue that the money paid to the Foundation by ACN made its way to Defendants solely because the Foundation paid other Trump-branded entities for the costs of hosting events and the like. It goes without saying that any such payments were above board. The Court should now allow Plaintiffs to use rank speculation about non-parties to this litigation (the Foundation and other Trump-branded entities) to obtain discovery by claiming that the Foundation's having adhered to best practices in paying fair-market rates for services rendered is somehow indicative of an under-the-table payment to any Defendant.

### THE INDIVIDUAL DEFENDANTS' COMPENSATION

Plaintiffs also seek information about the individual Defendants' compensation as executives. This is a blatant fishing expedition by which Plaintiffs seek information for no reason germane to their claims herein. There is no dispute that the individual Defendants are paid for performing their duties as executives of the Trump Corporation. It makes no difference if they are paid $100,000 per year or $1,000,000 per year because the numbers alone would in no way support any argument that the individuals were paid such compensation because they acted on behalf of ACN or how much of their compensation could theoretically be tied to their ACN-related activities.

Plaintiffs contend that they are entitled to discovery to determine whether funds from ACN to the Foundation to "Trump-owned entities" benefited the individual defendants. Necessarily, a corporate executive is indirectly benefited by virtue of his company earning revenues. But there is no possible way to trace those funds to the individuals' compensation, which was paid to them for all of the work they performed and was not broken down by project or otherwise (as would be typical for executive compensation). We have already made clear that there were no discrete payments made to any individuals, directly or indirectly, attributable to their ACN-related activities as distinct from all of their other duties and responsibilities. We suggest that Plaintiffs serve a request for admission to confirm that no such payments were ever made or can be identified in lieu of their fishing expedition seeking documents reflecting compensation for which they identify no valid purpose.

### TRANSCRIPTS OF TESTIMONY IN OTHER FRAUD CASES

Plaintiffs contend that they are entitled to engage in another fishing expedition for transcripts of any testimony by Defendants in other proceedings in which fraud accusations were levied against the Trump Corporation and a myriad of other business corporations and charitable entities. The request is improper as to all other entities as they are not parties to this case and thus do not stand accused of any wrongdoing, even by these Plaintiffs who clearly plead with a broad brush. Even as to the party Defendants, the Court should deny Plaintiffs' overbroad and burdensome demand. Plaintiffs have not identified any other proceeding in which the Defendants are accused of conduct akin to that at issue here; viz, allegedly touting an independent company despite knowing it to be worthless. Accordingly, transcripts from other matters would in no way reveal any information germane to this case.

The authorities upon which Plaintiffs rely do not support their position. In *Fort Worth Employees' Ret. Fund v J.P. Morgan Chase & Co.,* 297 F.R.D. 99 (S.D.N.Y. 2013), the Court did not compel production

of transcripts in other cases involving different types of allegedly-unlawful conduct. Instead, it compelled production of transcripts in other RMBS[2] cases in which the defendant was involved, in light of the fact that there were many such cases which might well touch on issues in dispute in the case at bar. *See id.* at 111-112. Specifically, the transcripts at issue included those "from other cases dealing with some or all of the offering platforms, loans, and certificates at issue here," and "broader underlying issues such as the basic guidelines and procedures for acquiring, securitizing or selling residential mortgage loans, which apply across the business … provided they are not duplicative of other discovery production." *Id.* at 111-112 (internal quotation marks omitted). Here, by contrast, Plaintiffs cannot make a similar showing of a comparable nexus of fact between this and any other case. Hence, Plaintiffs' hope or purported expectation that any transcripts exist whose content might bear on alleged activities comparable to those alleged in Plaintiffs' Amended Complaint, is naught but wishful thinking.

*United States v. Watts,* No. S3 09 CR 62 CM, 2011 WL 167627 (S.D.N.Y. Jan. 11, 2011), a criminal case, is hardly instructive, since the observation therein about the admissibility in a criminal prosecution of participation in other frauds to prove knowledge and intent does not bear on the discovery standards applicable in this civil matter. *See id.* at *6 ("Evidence of a defendant's participation in other, similar frauds is routinely admissible pursuant to Rule 404(b) to show knowledge and intent in fraud cases *such as this one*.") (emphasis added). In a civil action, evidence of prior similar conduct is only admissible if offered for some "relevant purpose *other than to show propensity* to commit the act in question." *Brown v. City of N.Y.*, No. CV 2008-5095 (FB)(MDG), 2011 WL 4594276, at *2 (E.D.N.Y. Sept. 30, 2011) (emphasis added). "[T]o be discoverable, materials must be 'reasonably calculated to lead to the discovery of admissible evidence.'" *Estate of Richards by Stephens v. City of N.Y.*, No. 1:18-cv-11287-MKV, 2020 WL 6162130, at *1 (S.D.N.Y. Oct. 21, 2020) (quoting *Nat'l Congress for Puerto Rican Rights v. City of N.Y.*, 194 F.R.D. 88, 91 (S.D.N.Y. 2000)). As set forth above, Plaintiffs cannot demonstrate that the disclosure they seek would or could lead to any admissible evidence; as such their request is not reasonably calculated to that purpose.

Further, the observation in *United States v. Hale,* 422 U.S. 171, 176 (1975), that prior inconsistent statements may be used for impeachment purposes merely restates a black-letter evidentiary rule embodied by FRE 801. That rule of evidence does not give the plaintiff in a civil litigation the unfettered right to review all manner of unrelated materials based on the vague, speculative, hypothesis that a prior inconsistent statement might somehow be found as the proverbial needle in a massive haystack.

It is respectfully submitted that Plaintiffs' overzealous efforts to compel Defendants to provide such broad disclosures fail at the outset to make any *prima facie* showing to justify such an invasive, unduly burdensome request.

---

[2] "RMBS" stands for "residential mortgage-backed securities."

Hon. Lorna G. Schofield
April 15, 2021
Page 4

      We thank the Court for its attention to this matter.

                                                                    Respectfully,

                                                     /s/ Peter T. Shapiro

                                                        Peter T. Shapiro

cc:    all counsel of record (via ECF)