**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0886
DIRECT EMAIL  jquinn@kaplanhecker.com

April 15, 2022

**BY ECF**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *Catherine McKoy, et al. v. The Trump Corporation, et al.,* 18-cv-09936 (LGS)

Dear Judge Schofield:

    We write on behalf of Plaintiffs pursuant to the Court's April 8, 2022 Order, ECF 388, and pursuant to Rule III.C.3 of your Honor's Individual Rules, to provide an update to the Court and to outline certain disputes concerning discovery sought from ACN.

    As we previously reported to the Court, recent discussions with ACN's counsel led Plaintiffs to believe that we were finally making progress over ACN's response to our subpoena, after years of resistance and delay. *See* ECF 381. Some initial productions were being made, and we were cautiously optimistic that we were nearing agreement on various categories of remaining discovery—as to which Plaintiffs have made numerous proposals to narrow and target our requests and minimize any burden. But while ACN held out the promise of progress and went through the motions of negotiation, in a number of key areas, ACN has continued to put up roadblocks and to try to run out the clock rather than proposing solutions. And, as noted in our letter dated April 12, 2022, ECF 390, we were taken aback by ACN's recent arbitration demands, in which it apparently seeks to relitigate Plaintiffs' right to discovery in this Court. Plaintiffs now have serious concerns over whether ACN has a genuine intention of complying with this Court's prior orders and its discovery obligations under Rule 45.

    As a result, it is not entirely clear to Plaintiffs where there are agreements with ACN on which we can rely, and where there are open disputes that require the Court's intervention. Accordingly, set forth below is a comprehensive update concerning Plaintiffs' current proposals to ACN and what we understand to be ACN's position with respect to each of them.

**I.      Key Non-Email Documents and Information**

    As an initial matter, Plaintiffs' efforts these past several months have not been entirely futile. ACN has produced 81 documents, mostly comprised of policies and procedures (including compensation plans), certain promotional materials, copies of IBO agreements, a list of payments from ACN to Defendants, charts providing information about the total number of IBOs and changes to that number over time, and a declaration from a company officer that, among other things,

KAPLAN HECKER & FINK LLP

2

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ All of this evidence is significant, and Plaintiffs are glad to report that we have driven some meaningful progress.[1]

At this point, two key areas of non-email discovery remain outstanding. *First*, from the outset, Plaintiffs have prioritized discovery into the truth or falsity of Defendants' representations concerning IBOs' prospects for economic success. As detailed in the Second Amended Complaint, Plaintiffs allege that one of the pillars of Defendants' fraudulent scheme was a series of false and misleading statements and omissions designed to induce recruits into believing that they had a realistic likelihood of making a profit if they pursued the ACN business opportunity. Obviously, ACN is a key source of discovery as to whether those representations were true or false.

Plaintiffs have made it clear that we are prepared to accept aggregated or individualized data, that we would be open to a sampling approach, and that we will accept data in the form in which it is maintained. We also have acknowledged that there may be certain categories of expenses into which ACN might not have insight—such as IBOs' individual travel costs. But ACN has essentially taken the position that it does not maintain and cannot produce any information whatsoever concerning IBO earnings or expenses. Plaintiffs have emphasized to ACN that this position is not tenable, particularly given that (1) records from other litigations obtained by Plaintiffs (and shared with ACN) show that ACN maintains an internal online tool called the "VIP Portal" that can be used by ACN to view IBO earnings and expenses;[2] (2) ACN for years has made regular IBO income disclosures in Canada; and (3) a 2010 Montana Securities Commission cease-and-desist order made detailed aggregate and average findings with respect to both IBO earnings and IBO expenditures. In short, it seems clear that ACN does have access to IBO earning and expense data when it needs to. (At the eleventh hour, ACN made a vague proposal to produce accounting information, but ACN has not detailed what that information is or whether it would speak to IBO earnings and expenses.)

*Second*, Plaintiffs have made clear to ACN that, while its production of information about the overall size of ACN's IBO population is helpful, that information is of limited utility without some data bearing on how those IBOs are distributed among ACN's plan levels. To briefly explain, the ACN compensation system is designed to provide increasing rewards as an IBO becomes more senior in the plan hierarchy, and IBOs have to meet certain qualification targets to move from one level to the next. The distribution of IBOs across plan levels, and the extent to which IBOs actually do move between them, provides important insight on the prospects for new recruits. ACN has said that it does not track this information, but again that is a difficult representation to accept given that ACN's own transactions with IBOs depend on their plan level and that ACN's VIP Portal displays each IBO's plan level in real time.

Accordingly, Plaintiffs request that the Court order ACN to conduct a reasonable search and produce information bearing on IBOs' earnings and expenses, and on the composition of the IBO population by plan level; and allow Plaintiffs to inquire about these subjects during a Rule 30(b)(6) deposition and make targeted supplemental follow-up requests as appropriate.

---

[1] Of course, Plaintiffs reserve all rights to seek to supplement and/or clarify the record with respect to any of these categories of discovery as we review productions from ACN and other sources and proceed through depositions.

[2] ACN's counsel has stated that the VIP Portal displays information in real time rather than historically, but as we have emphasized in response, the fundamental point is that ACN appears to have access to the underlying data when needed, and in all events we served ACN with a preservation subpoena back in January 2019.

KAPLAN HECKER & FINK LLP

3

## II. Emails and ESI

During the past several months of correspondence and meet-and-confers, Plaintiffs have proposed numerous search terms and custodians, reviewed hit reports, paid the associated vendor costs (more than $60,000 and counting), and offered narrowing proposals at every turn. At this point, ACN has not agreed to produce any emails. Plaintiffs request that the Court order ACN to produce:

a. Responsive documents that hit on four search terms: "@trumporg.com"; "dolphinent@aol.com"; "TNGC"; and "T International Realty."[3] These terms hit on a total of 6,107 documents across all proposed custodians.

b. Responsive documents that hit on the search term "Trump" across four ACN executive and co-founder custodians: Greg Provenzano, Robert Stevanovski, and Mike and Tony Cupisz.

Plaintiffs have agreed to ACN's suggestion that both review sets could be further de-duped against the documents previously reviewed and produced by the Marketing Consultants, provided that ACN disclose the total number(s) of documents removed from their review set based on this de-duping process. We understand that even before such de-duping, the total number of emails across both sets would be around 20,000 documents, which we consider a reasonable compromise given the likely relevance of these communications. Finally, ACN has requested that Plaintiffs pay not only the costs of this review and production (which we have paid and continue to pay) but also ACN's attorney fees for a document-by-document review. Plaintiffs have addressed these concerns by prioritizing terms that include external email addresses and offering to agree to an enhanced clawback process for any inadvertently-produced documents that appear to be privileged. But Plaintiffs cannot agree to pay ACN's legal fees, especially given how much ACN appears to have spent in fees resisting and interfering with this process rather than completing it.

## III. Depositions

ACN has agreed that Plaintiffs should be entitled to a Rule 30(b)(6) deposition, and Plaintiffs intend to serve a Rule 30(b)(6) notice as soon as next week.

Plaintiffs also have served deposition subpoenas on the four key executive and co-founder custodians noted above, namely Greg Provenzano, Robert Stevanovski, and Mike and Tony Cupisz.[4] ACN has indicated that it will seek to oppose their depositions, but has not yet sought any such relief. The relevance of these individuals is beyond doubt: they appeared alongside Defendants during key promotional appearances, including in The Celebrity Apprentice episodes where they had highly relevant on-camera and off-camera discussions with Defendants (███████████████████████████████████████████); they entered into key agreements and had the power to act on behalf of ACN throughout the relevant period; and they sent or received thousands of relevant communications.

---

[3] The latter two terms relate to discrete allegations concerning payments involving ACN or its executives, and according to search term reports hit on a relatively small number of emails, a total of 113 for both terms.

[4] Plaintiffs served these subpoenas earlier today, after ACN's counsel finally confirmed, after multiple inquiries, that counsel was authorized to accept service on their behalf.

KAPLAN HECKER & FINK LLP

4

                                                      Respectfully submitted,

                                                      John C. Quinn

cc:    Counsel of Record (*via* ECF)
       Counsel for ACN (*via* ECF and e-mail)