Case 1:18-cv-09936-LGS-SLC   Document 403   Filed 04/22/22   Page 1 of 5



200 Park Avenue
Suite 1700
New York, NY 10166
nelson.legal

Stephanie E. Niehaus
C: 440 897 1287 • O: 212 457 1668
stephanie.niehaus@nelson.legal

April 22, 2022

VIA ECF

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *McKoy, et al. v. The Trump Corp., et al.*, Case No. 18-cv-09936 (LGS)

Dear Judge Schofield:

We write on behalf of non-party ACN Opportunity, LLC ("ACN") in response to Plaintiffs' April 15, 2022 letter "outlin[ing] certain disputes concerning discovery sought from ACN" [ECF No. 397] (the "Discovery Letter"). ACN will not burden the Court's time by responding to the superfluous rhetoric in the preamble to the Discovery Letter, other than to reiterate that ACN intends to comply with its discovery obligations in this case, within the confines of the applicable Rules and this Court's direction, as stated in ACN's April 18, 2022 submission [ECF No. 398]. With respect to the "open disputes" in which Plaintiffs seek the Court's intervention, ACN responds as follows, using Plaintiffs' headings for reference:

I.    **Key Non-Email Documents and Information**

Plaintiffs request "that the Court order ACN to conduct a reasonable search and produce information bearing on IBOs' earnings and expenses, and on the composition of the IBO population by plan level; and allow Plaintiffs to inquire about these subjects during a Rule 30(b)(6) deposition and make targeted supplemental follow-up requests as appropriate." Discovery Letter at 2.

As Plaintiffs acknowledge, ACN has provided a declaration and produced various documents—along with responses to what have been relentless and oftentimes unfounded follow up requests—regarding IBO data and other information from the relevant period (now going back over a decade). As it has responded to Plaintiffs' requests, ACN has consistently explained that it does not track or aggregate any IBO data "by plan level," which can fluctuate even within a day. Accordingly, that line of inquiry has been and remains a dead end, no matter how much Plaintiffs wish it not to be. ACN also has explained that only an individual IBO would know the amount of his or her expenditures as an IBO; again, this is not a data point that ACN tracks or aggregates. Plaintiffs are welcome to confirm these explanations through a 30(b)(6) deposition, but ACN should not be required to spend any more time or resources searching for information "bearing on

New York, NY • Washington, DC • Cleveland, OH

. . . the composition of the IBO population by plan level" or individual IBO's expenses, having affirmed and explained multiple times that such information does not exist.

With respect to Plaintiffs' broader request for "information bearing on IBO earnings and expenses," as Plaintiffs also acknowledge, ACN has committed to provide Plaintiffs with additional "accounting information." Specifically, ACN will provide aggregate IBO compensation data by quarter for the period 2012-2016. ACN's production of this information has been slowed because ACN has changed accounting systems twice since the relevant period and the information must now be pulled from multiple systems. Still, ACN expects that it will be able to make this additional information available to Plaintiffs before the end of the month. ACN believes this production should moot any further inquiry into IBO earnings and expenses, and with this production it will have more than satisfied all of Plaintiffs' "Non-Email" document requests.

**II.     Emails and ESI**

Plaintiffs' Discovery Letter omits critical context regarding their demands that ACN produce emails and other ESI. Plaintiffs originally demanded—notably, in violation of the limitations on electronic discovery set out in this Court's Individual Rule II.A.1—that ACN produce documents from *twenty* custodial files, including the files of ACN's four founding executives and ACN's former in-house counsel, for an undefined period of time, that hit on any of the following search terms:

- Trump OR "Donald" OR "DJT" OR "Ivanka" OR "Don Jr." OR "Don Junior" OR
- "@trumporg.com"
- Apprentice
- "DSN Licensing"
- "T International Realty"
- "TNGC"
- Curetivity
- Graff
- Patton
- Butcher OR Archer OR dolphinent@aol.com OR "Dolphin Entertainment"
- Hicks
- Weisselberg

After Plaintiffs agreed to cover the costs of engaging a third-party vendor to process and host the document collection, ACN's CIO and other employees spent countless hours gathering ESI for the identified custodians, the vast majority of whom left the company before this litigation was even filed, and working with the vendor and outside counsel to facilitate the collection. Outside counsel has since spent additional hours, at ACN's cost, coordinating efforts with the vendor and with Plaintiffs' counsel to narrow the review set, which initially amounted to over 120,000 documents inclusive of families and would have cost, using very conservative estimates, over $120,000 in

attorney time to review for privilege and confidentiality.[1]

As indicated in the Discovery Letter, as of April 12, 2022, Plaintiffs have agreed to narrow their request for ESI to documents containing (1) four specified search terms within all custodial files and (2) the single albeit incredibly broad search term, "Trump," within the four founding executives' custodial files. Plaintiffs also have agreed to ACN's proposals to de-duplicate the document set to eliminate documents that have been produced by other non-parties. The third-party vendor has been working on that de-duplication process and expects to be able to report results next week. In the meantime, the vendor has applied Plaintiffs' agreed revised search parameters and has informed ACN that the revised document set still contains 22,305 documents inclusive of families. Again using conservative estimates, this document set would likely require more than 200 hours of attorney review time at an estimated cost of more than $20,000.

Within this context—not to mention the context of this overall proceeding in which ACN's business continues to suffer the collateral damage of Plaintiffs' politically-motivated claims—requiring ACN to incur the added cost of reviewing 20,000 documents is hardly a "reasonable compromise" as Plaintiffs suggest. Indeed, this Court's Individual Rules would not permit Plaintiffs to impose this burden on a *party* without leave, and a non-party like ACN is entitled to even greater protection from unnecessarily burdensome and expensive discovery. Indiv. R. II.A.1; *see also* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.").[2]

ACN also rejects Plaintiffs' position that an "enhanced clawback process" would be sufficient to protect ACN's privilege, presumably requiring less attorney review time. *See* Discovery Letter at 3. Plaintiffs have already demonstrated that they will not hesitate to seek to invade ACN's privilege through their attempted challenge of certain redactions intended to protect ACN's privilege. *See* Memo Endorsement, ECF No. 380 (denying Plaintiffs' attempt to compel production of ACN's privileged information). Plaintiffs also have insisted that ACN include in its review set documents from the custodial files of Colleen Jones, who was ACN's in-house counsel for the relevant time-period. Especially under these circumstances, ACN is not willing to forego a thorough privilege review before producing documents to Plaintiffs.

Contrary to Plaintiffs' statements, ACN has not refused to produce any emails. Rather, ACN has refused to incur additional costs associated with Plaintiffs' burdensome discovery requests. ACN has agreed to produce emails, but only after a thorough review for privilege and

---

[1] These estimates assume that ACN would engage, directly or through the third-party e-discovery vendor, one or more contract review attorneys to complete the review at an agreed hourly or per-document rate. These estimates do not factor in additional likely costs for outside counsel to train the review team, perform quality control, and coordinate efforts with the various vendors, among others.

[2] As noted in ACN's April 18 submission [ECF No. 398], this Court has recognized that "it's not appropriate to burden third parties with requests that are overly broad," and directed Plaintiffs to meet and confer with ACN to reduce the burdens of their discovery. *See* Tr. of Apr. 9, 2020 Remote Teleconference at 20-22.


confidentiality, and only if Plaintiffs agree to cover for the cost of that review. This is a reasonable compromise. ACN will produce the categories of Email and ESI identified at page 3 of the Discovery Letter, but respectfully requests that the Court limit Plaintiffs to this production and require Plaintiffs to pay directly or reimburse ACN for the cost of its review.

### III.    Depositions

Plaintiffs are correct that ACN will oppose Plaintiffs' efforts to take the depositions of ACN's four founding executives, which Plaintiffs seek in addition to a 30(b)(6) deposition of ACN. On April 15, 2022, Plaintiffs served subpoenas for the depositions of ACN's Chairman, Robert Stevanovski; President, Greg Provenzano; and Co-Founders Mike and Tony Cupisz (the "Founding Executives"). Undersigned counsel accepted service of those subpoenas as a courtesy, reserving all rights and objections. Plaintiffs have not yet served a subpoena for the 30(b)(6) deposition that ACN has agreed to provide, also subject to any objections.

ACN believes that the subpoenas to the Founding Executives were served prematurely without authorization and are therefore invalid, as Plaintiffs' request to exceed the number of depositions permitted under the Federal Rules [ECF No. 383] remains pending and is opposed.[3] ACN agrees with and adopts the relevant portions of Defendants' arguments and authorities on this matter as set forth in their April 15, 2022 opposition letter [ECF No. 393]. At a minimum, Plaintiffs should be required to complete the depositions of party witnesses and the handful of non-party witnesses who have agreed to testify (including ACN's corporate representative), and then explain why the testimony they seek from any remaining non-party witnesses is truly necessary and not cumulative. This is particularly true since the questions Plaintiffs apparently seek to ask the Founding Executives relate exclusively to appearances they made and discussions they may have had with the Defendants, which also would be within Defendants' knowledge; ACN's corporate agreements and activities, which also would be within a corporate representative's knowledge; and communications the Founding Executives sent or received that Plaintiffs can only speculate are relevant to this proceeding based on the fact that they contain the word "Trump."[4] Discovery Letter at 3.

---

[3] Plaintiffs acknowledged as much in earlier correspondence, in which they indicated they viewed "further discussion of individual depositions [as] premature until we have the Court's guidance with respect to the overall deposition limit." Plaintiffs only reversed their position after ACN initiated individual arbitration proceedings against them. Thus, in addition to the other reasons set forth above, ACN objects to Plaintiffs' subpoenas to the Founding Executives as retaliatory and harassing.

[4] Plaintiffs also speculate that the Founding Executives ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, in part based on a mischaracterization of the declaration ACN submitted in response to Plaintiffs' discovery. ACN reiterates that discovery about any "diligence" conducted by Defendants should be directed to the Defendants, at least in the first instance. ACN further disputes that its declaration ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉


Even if the subpoenas were valid, ACN still would oppose Plaintiffs' efforts to take the Founding Executives' depositions, including because they would be inappropriate and impermissible under the Apex Doctrine and because they would impose an extraordinary burden on the company and its leadership. Apex depositions are disfavored in this Circuit unless the executive to be deposed has unique personal knowledge of facts relevant to the action. *All. Indus., Inc. v. Longyear Holding, Inc.,* 2010 WL 4323071, at *4 (W.D.N.Y. Mar. 19, 2010). "Because of the possibility of business disruption and the potential for harassment, courts give special scrutiny to requests to depose high-ranking corporate" officials. *Chevron Corp. v. Donziger*, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013); *see also All. Indus., Inc.,* 2010 WL 4323071, at *4. Even beyond the Apex Doctrine, this Court has authority to restrict discovery that is unreasonably burdensome. Fed. R. Civ. P. 26(b)(2), 45(d)(1); *see also Treppel v. Biovail Corp.,* 2006 WL 468314, at *2 (S.D.N.Y. Feb. 28, 2006) (granting motion for protective order precluding two executive depositions absent showing that the executives possessed "personal, non-duplicative knowledge of relevant facts").

Each of the Four Executives is actively involved in running ACN, with Mr. Stevanovski and Mr. Provenzano currently holding the highest leadership positions in the company. Requiring any of them, much less all of them, to remove themselves from the operations of the company to prepare for and provide hours of deposition testimony would be disruptive and damaging to the business. Plaintiffs have not identified any reason to believe that any of the Four Executives has unique personal knowledge of any material fact such as to justify the burden of a deposition. As Defendants aptly stated, Plaintiffs "are embarked on a fishing expedition, and are essentially asking this Court to charter their fishing vessel with no set course or known destination." ECF No. 393 at 2. Particularly given ACN's non-party status, and the significant burden and expense it already has been required to shoulder in and as a result of this litigation, Plaintiffs should not be permitted to include depositions of the Founding Executives in their expedition.

To the extent the Court requires a formal motion to quash the subpoenas to the Founding Executives, ACN respectfully requests that the Court construe its response here as a request for a pre-motion conference pursuant to Indiv. R. III.A. ACN appreciates the Court's consideration.

Respectfully,

*[signature: Stephanie Niehaus]*

Stephanie E. Niehaus

cc:   All Counsel of Record (via ECF)

---

[redacted]

To the extent Plaintiffs seek clarification or elaboration of this response from ACN, Plaintiffs should ask those questions of ACN's corporate representative.