# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL        212.763.0886
DIRECT EMAIL       jquinn@kaplanhecker.com

February 10, 2023

**VIA ECF**

The Honorable Sarah L. Cave
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

  Re: *McKoy, et al. v. The Trump Corp., et al.*, No. 18 Civ. 9936 – Request for Conference

Dear Judge Cave:

  We write pursuant to Rule II.C.2 of your Honor's Individual Practices to request a discovery conference on Plaintiffs' motion for an order precluding Defendants' experts under Federal Rule of Civil Procedure 37(c). The reason we are seeking preclusive relief is as follows: Plaintiffs recently learned that, prior to serving expert rebuttal reports, Defendants arranged a series of meetings over four days in which ACN executives Robert Stevanovski and David Merriman discussed with Defendants' experts a wide range of issues relevant to this litigation. Defendants not only failed to disclose these private meetings as required, but also orchestrated them to ensure that there would be no record of what was discussed—no video, no transcript, no authoritative notes, no list of materials reviewed, not even an agenda. Defendants went so far as permitting one of their experts to "destroy" her notes (their word), leaving only a single page of notes from a single expert, which provide no substantive disclosure beyond confirming the breadth and relevance of the discussions. This choreographed process makes it impossible for Defendants and their experts to comply with Rule 26(a)(2)(B)(ii)'s requirement that experts disclose all "facts or data" that they considered, prior to their depositions, in order to permit appropriate questioning.

  But it is even worse than that. As the Court is aware, Plaintiffs have twice sought leave to take Mr. Stevanovski's deposition. ECF 397; ECF 466. When Plaintiffs sought Mr. Stevanovski's testimony in April 2022, ACN opposed it on the basis that it would be "disruptive and damaging to the business" to remove him "from the operations of the company." ECF 403 at 5. After further discovery confirmed Mr. Stevanovski's central role in managing ACN's relationship with Defendants, in September 2022 Plaintiffs sought leave to depose him should Defendants call him at trial. *See* ECF 466 at 2. This time Defendants opposed, arguing his testimony was unnecessary because no important question "remains unanswered." ECF 470 at 1. It seems now that Defendants had many questions for Mr. Stevanovski—just none that they wanted answered under oath, on a transcript, or with Plaintiffs' counsel in the room.

  **Relevant Background.** On November 18, 2022, the parties exchanged affirmative expert reports. At the time, Defendants failed to produce any of the non-publicly available survey data and other materials considered by their sole affirmative expert, Dr. Peterson. Following our repeated inquiries, Defendants finally produced the required materials on December 21, more than a month after they were due. Defendants also conceded in response to our questions that Dr.

Peterson did not preserve survey information concerning respondents who started but did not complete certain surveys that Dr. Peterson relied on in his report, making it impossible to evaluate how respondents were excluded and how those surveys' populations were determined.[1]

The parties exchanged rebuttal expert reports on January 16. Defendants again failed to produce all of the materials considered by their three rebuttal experts, Dr. Hair, Dr. Cunningham, and Mr. Crandon, forcing Plaintiffs to ask more questions. Among other things, Dr. Cunningham's report appeared to cite ACN documents with bates prefixes that we did not recognize. When we asked about these citations, defense counsel essentially gaslit us, stating that the bates prefixes were "likely a mistake" and that we should ignore the prefixes and use the remaining digits to locate the pages in the ACN productions that we did have. After we reviewed the record (again) and determined that this process was obviously not identifying the cited materials, Defendants finally confirmed, on January 31, that they were in possession of additional discovery material from ACN "that should have been produced [to Plaintiffs] but that was overlooked."

These disclosure failures were frustrating and unfair, but did not rise to the level that would have prompted us to bring them to the Court. Critically, however, during our back-and-forth with Defendants, we also asked them to explain opaque references in Dr. Hair's report to "personal communications with ACN executives." Each of the reports had included a list of "materials considered," and none of those lists mentioned such communications, so it was only through these words in Dr. Hair's report that the issue began to surface. As we pursued it, Defendants ultimately revealed that there were "three calls the experts had with the executives Stefanovski [sic] and Merriman," and that "Mr. [sic] Hair has no notes from the calls." We followed up again, asking Defendants to clarify which "experts" attended, and Defendants clarified that they had organized four meetings and that those meetings included not just Dr. Hair, but all of Defendants' other experts too. (A chart summarizing the involvement of each expert is attached as Appendix A.)

On February 3, we informed Defendants of our intention to seek relief and asked to meet and confer. Defendants did not respond and instead sent seven emails attaching a slew of articles by Dr. Hair that had not previously been disclosed. Defendants said in the sixth email that it was "the last email with Hair citations," but they sent another one just a few minutes later.

We met and conferred on February 6, and Mr. Shapiro confirmed that Defendants had not maintained any recordings, transcripts, or other records of the meetings. Mr. Shapiro could not confirm whether Dr. Cunningham and Dr. Hair took notes, stating only that neither was "currently" in possession of any, and that if Dr. Cunningham had taken notes, she "destroyed them as per her practice." The parties agreed to proceed with taking Plaintiffs' experts' depositions, but took the depositions of Defendants' experts off calendar pending resolution of this dispute.

On February 8, Defendants produced a single half-page of notes that Mr. Crandon apparently took during his January 6 meeting with ACN executives. The barebones list of eight high-level topics is, as defense counsel previewed, "cryptic." Even so, it confirms that Defendants' experts discussed highly relevant issues with ACN, and underscores the incurable nature of Defendants' disclosure failures, as it is impossible to now recreate what Mr. Stevanovski and Mr. Merriman said about topics such as "Motorola OJO -> ??"—an apparent reference to a product Mr. Crandon went on to discuss and opine on in his rebuttal report. *See* Expert Report of Mark Crandon at 4.[2]

---

[1] Plaintiffs reserve all rights with respect to Dr. Peterson's failure to preserve or record this data, including in connection with potential *Daubert* motions or motion *in limine* practice.

[2] The notes relate only to a meeting with Mr. Crandon at which no other expert was present.

**Argument.** It is well-established that the substance of communications between witnesses and experts constitutes "facts and data considered by the expert" that must be disclosed in accordance with Rule 26(a). *See Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 9 Civ. 686, 2011 WL 6288415, at *11 (S.D.N.Y. Dec. 15, 2011). It is likewise black-letter law that a party that fails to comply with its Rule 26(a) obligations "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Defendants' disclosure violations here are not de minimis, justifiable, or harmless. Their orchestration of private meetings between their experts and key non-party witnesses—without documenting the facts and data disclosed to the experts during these secret meetings—leaves Plaintiffs unable to "prepare adequately to cross-examine" the experts or to "address the factual premises on which [their] opinions are based." *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, No. 7 Civ. 222, 2009 WL 1043974, at *4 (M.D. Fla. Apr. 17, 2009).

Dr. Cunningham and Mr. Crandon should be precluded because they failed to disclose their meetings with Mr. Stevanovski and Mr. Merriman altogether—their reports do not include *any* indication of what they learned and how it affected their understanding of the facts, and there is no way to recreate what was discussed because there are no records of the conversations. *See Bray*, 2009 WL 1043974, at *3-5 (precluding expert report that "did not provide . . . the substance of the discussions with identified and unidentified individuals"). This situation is thus entirely different from *Redcell Corp. v. A. J. Trucco, Inc.*, where the Court concluded there was no Rule 26(a) violation because the expert disclosed the interviews at issue and "produce[d] all of the facts or data [he] considered" during the interviews by "typ[ing] directly into his report the information that [the interviewees] provided to him." No. 20 Civ. 18, 2022 WL 3700148, at *12 (S.D.N.Y. Aug. 26, 2022) (cleaned up). Dr. Cunningham's apparent destruction of notes—with no resistance from Defendants—only compounds the prejudice, and "merits this Court's disapproval." *AFTRA*, 2011 WL 6288415, at *11.

Dr. Hair's report and testimony should also be precluded. While his report briefly references "personal communications with ACN executives," it does not describe them in any substance or clarify what information was provided. Moreover, unlike in *AFTRA*, where prejudice was mitigated because the party seeking preclusion had been allowed to depose the relevant fact witness, here ACN and Defendants adamantly resisted all of our efforts to depose Mr. Stevanovski, and as a result, Plaintiffs have not been able to take Mr. Stevanovski's deposition. *See also Redcell*, 2022 WL 3700148, at *5 (noting that relevant fact witness had previously been deposed).

Finally, Dr. Peterson's presence at the meetings with ACN means that his deposition and trial testimony too will be similarly tainted with uncertainty over the bases for his opinions. *Cf. Advanced Med. Optics, Inc. v. Alcon, Inc.*, No. 3 Civ. 1095, 2005 WL 782809, at *11 (D. Del. Apr. 7, 2005) (expert's reliance on understanding gained from private conversations, the contents of which were not properly disclosed, provided independent basis for precluding testimony).[3]

For the reasons set forth above, Plaintiffs respectfully request an order precluding Defendants' experts under Federal Rule of Civil Procedure 37(c).

---

[3] At a minimum, to limit the prejudice to Plaintiffs with respect to Dr. Peterson, Plaintiffs request the Court order that he may not offer any testimony during deposition or trial that is not expressly based in his affirmative expert report.

KAPLAN HECKER & FINK LLP

4

Respectfully submitted,

John C. Quinn

cc: Counsel of Record (*via* ECF)

### APPENDIX A: SUMMARY OF DEFENDANT EXPERT EXPOSURE TO UNDISCLOSED FACTS AND DATA

| Expert | Subject | Role | Meeting(s) with ACN Execs. | Records of Meeting(s) |
|---|---|---|---|---|
| Dr. Cunningham | Trump Endorsement | Rebuttal | Jan. 10, 11 | None |
| Dr. Hair | ACN IBO Compensation | Rebuttal | Jan. 9, 10, 11 | None |
| Mr. Crandon | ACN Video Phone | Rebuttal | Jan. 6 | Half-page list of eight topics with no substance |
| Dr. Peterson | Consumer Surveys | Affirmative | Jan. 9, 10, 11 | None |