```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


CATHERINE MCKOY, et al,          : Docket #18-cv-09936

                    Plaintiffs,  :

     -against-                   :

THE TRUMP CORPORATION, et al.,   : New York, New York
                                   February 16, 2023
                    Defendant.

--------------------------------:

                    PROCEEDINGS BEFORE
              THE HONORABLE SARAH L. CAVE
              UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For Plaintiff:        KAPLAN, HECKLER & FINK, LLP
                      BY:  JOHN C. QUINN, ESQ.
                           ROBERTA A. KAPLAN, ESQ.
                      350 Fifth Avenue, Suite 63rd Floor
                      New York, New York 10118

For Defendant:        LEWIS, BRISBOIS, BISGAARD &
                      SMITH, LLP
                      BY:  PETER T. SHAPIRO, ESQ.
                      77 Water Street, Suite 2100
                      New York, New York 10005




Transcription Service: Marissa Mignano Transcription
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com



Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

INDEX

E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None    |        |       |           |          |

E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None           |             |    |    |           |

1

2          THE COURT:  Good afternoon.  This is

3     Magistrate Judge Cave.  We're here for a conference

4     in McKoy versus The Trump Corporation, Case Number

5     18-cv-09936.

6          May I have appearances starting with the

7     plaintiff, please.

8          MR. QUINN:  Good afternoon, your Honor.

9     John Quinn, from Kaplan Hecker, on behalf of the

10    plaintiff.  I'm here with my partner, Roberta

11    Kaplan.

12         THE COURT:  Okay.  Good afternoon.

13         MR. SHAPIRO:  Good afternoon.  This is

14    Peter Shapiro, from Lewis Brisbois, for defendants.

15         THE COURT:  Okay.  Good afternoon.  All

16    right.  So we're here on the plaintiffs' letter

17    regarding the defendants' experts at ECF number 511.

18         I was hoping, Mr. Quinn, you might be able

19    to just back up a step or two for me.  I understand

20    that there are three -- I guess defendants have four

21    experts, Dr. Peterson, and then three rebuttal

22    experts.  Could you just, at a very high level, sort

23    of one sentence or phrase, just tell me what each of

24    these experts were opining on?

25         MR. QUINN:  Sure.  Defendants' affirmative

```
 1    expert is Dr. Peterson, who opines on a series of
 2    surveys, a number of preexisting surveys of NLM
 3    participants and one survey that he conducted
 4    himself.
 5              THE COURT:  Okay.
 6              MR. QUINN:  He's an affirmative expert.  I
 7    should mention he was disclosed to us as a rebuttal
 8    expert, but ultimately no rebuttal report was
 9    served.  So that's Dr. Peterson.
10              THE COURT:  Mr. Quinn, it's really hard for
11    me to hear you.  I don't know if you have a better
12    angle on your phone that you can use.
13              MR. QUINN:  All right, I just changed.  Is
14    this better, your Honor?
15              THE COURT:  That is much better.  So the
16    first, you said about Dr. Peterson, and I didn't get
17    anything after that.
18              MR. QUINN:  Then there are three rebuttal
19    experts.  Dr. Hare is an expert on, roughly
20    summarizing here, IBO compensation and sort of the
21    economics around the ACN business opportunity.
22    Mr. Crandon is more of a technical expert on certain
23    aspects of the ACN video phone.  And Dr. Cunningham
24    is an expert on what I call "the endorsement."
25              THE COURT:  Okay.
```

 1          MR. QUINN:  The general effects of

 2   celebrity endorsements and the nature of this

 3   endorsement in particular.

 4          THE COURT:  Okay.  So those all seem pretty

 5   substantive, sort of merits related.  How do they

 6   tie into the imminent class certification motion, if

 7   at all?

 8          MR. QUINN:  Yeah, I think difficult to

 9   know.  Any one of them, depending on how the

10   testimony develops, could be related to that.  I

11   think the most related to the class certification

12   issues is probably Dr. Hare, who opines on the

13   nature of the business opportunity, whether people

14   had consistent or inconsistent experiences and the

15   like.

16          THE COURT:  Okay.  Now, with respect to the

17   four meetings in January that are the basis for your

18   seeking to preclude the experts, what does the

19   report say about those meetings?  In other words, in

20   the report, is there a quote or a summary of what

21   was learned from the ACN executive, or is it just

22   merely a citation to the fact of that meeting?

23          MR. QUINN:  So I'll take them into three

24   groups.  Dr. Peterson, because his report, his

25   affirmative report, was finalized prior to the

1   meetings, while he went on to learn things at those

2   meetings, there's no reference to it in the report,

3   nor could there have been, because the meetings had

4   not yet happened.

5         For Mr. Crandon and Dr. Cunningham, the

6   reports make no mention of the meetings whatsoever,

7   even though they were in three days of meetings.

8   And that's both in the actual text of the reports as

9   well as in the lists of materials considered, none

10  of which included or referenced these meetings.  So

11  those reports are entirely silent.

12        Dr. Hare's report includes nine references

13  to meetings or communications with ACN executives

14  sprinkled in various places throughout the report.

15  And those references often do include -- the

16  references themselves include no substantive summary

17  of what specifically was said.  There's no quote or

18  anything.  There are specific data points.  They say

19  things like 30 percent of ACN IBOs renew after a

20  first year, and then in parentheses say,

21  conversation with ACN executives, but without any

22  disclosure of who said what exactly or based on what

23  data or anything like that.  So they're cited for

24  various propositions in the report, but no actual

25  summary of the discussion or quotation from it is

1    included.

2              THE COURT:  Okay.  And you haven't deposed

3    any of the four experts as yet, correct?

4              MR. QUINN:  As of yet, that's correct.

5              THE COURT:  Do you need to take those

6    depositions before the class certification motion is

7    filed next week?

8              MR. QUINN:  In full candor, your Honor, we

9    have a draft of the brief.  We think it's strong.  I

10   don't know that we need anything from these experts

11   to make that motion, although, you know, as I hope

12   the Court can understand, we obviously have some

13   discomfort about making a significant dispositive

14   motion like that while the record is still open or

15   unsettled.

16             So were this motion to preclude not to be

17   granted, I think our preference would be that there

18   be some adjustment so that we have a complete record

19   before we make that motion.  But should the Court

20   direct otherwise, we will be able to meet the

21   deadline and can deal with it and reply.

22             THE COURT:  Okay.  And without giving too

23   much away, is part of your argument that -- is part

24   of your argument in the motion that what the

25   defendants' experts are going to say doesn't

```
 1    undermine any of your arguments, or are you just
 2    saving that for reply?
 3          MR. QUINN:  I think, as with all good
 4    advocacy, we'll try to get ahead of it to some
 5    degree, but, yeah, we're making our arguments
 6    primarily based on the record evidence and the data
 7    from ACN and, of course, the record about the
 8    endorsement and promotion statements that were made
 9    and how those were encapsulated.
10          I mean, part of the core of it, really, is
11    there were only a couple of video recordings over
12    the ten-year period, and so the statements that were
13    made, the promotional statements, are really a small
14    and central library that was used and then repeated
15    over and over and over again.  So that is,
16    obviously, a key focus of the motion that I don't
17    know is affected by these experts.
18          You know, and then to the extent we get
19    into the idea that people that had consistent
20    experiences in ACN, they relied in a consistent way
21    and then they experienced the falsity and resulting
22    damage in similar ways.  You know, those I think, we
23    have a strong record from fact discovery for.  I do
24    think Dr. Hare's testimony in particular will
25    intersect with those issues.  But should we need to
```

```
 1    address that on reply, I think we can.  And the
 2    other experts, I think, will be even more ancillary
 3    to the motion.
 4              THE COURT:  Okay, thank you.  All right.
 5              So, Mr. Shapiro, after I agreed with you
 6    twice that Mr. Stevanovski didn't have any -- that
 7    the plaintiffs didn't have any compelling need to
 8    depose him, it seems rather bold of me that you
 9    would then go stick him in a meeting with your
10    experts.  Do you want to explain that?
11              MR. SHAPIRO:  Well, I would say this.
12    First of all, the first go-round was, obviously, ACN
13    that was objecting to having him be deposed because
14    they took the position that Mr. Merriman, the other
15    executive, would be able to provide the information.
16    And thereafter we said we think there's been enough
17    disclosure about ACN.  And I don't think any
18    compelling showing was made that anything unique to
19    Stevanovski was required.
20              THE COURT:  I'm so sorry, Mr. Shapiro, to
21    interrupt you.  I'm having a similar problem hearing
22    you.  I don't know if it's just my phone line that's
23    bad today, but you're sort of going in and out --
24              MR. SHAPIRO:  Oh, sorry.
25              THE COURT:  -- and I'm hearing about every
```

1    other word.

2          MR. SHAPIRO:  Sorry about that.  Is this

3    any better?

4          THE COURT:  Not really.  Are you on a

5    landline?

6          MR. SHAPIRO:  I am on a landline.  I'm not

7    sure what I can do.  Let me see if I can raise the

8    volume.

9          THE COURT:  No, it's sort of crackling.

10   Perhaps could I just ask you to hang up and dial

11   back in?  Maybe you'll just get a better signal.

12         MR. SHAPIRO:  Yeah, that's a good idea.

13   I'll do that right now.

14         THE COURT:  Thank you.  We'll just hold on

15   a minute.

16         (Pause)

17         MR. SHAPIRO:  Hi.  It's Peter Shapiro

18   again.  Is this better?

19         THE COURT:  It's kind of the same problem.

20   Go ahead.  We'll do our best.  If I --

21         MR. SHAPIRO:  Maybe I should try on my cell

22   phone.  It would be kind of odd for that to be

23   better, but I don't want to -- you know, I'm having

24   trouble hearing you now, actually.  So let me hang

25   up and try one more time.  Sorry.

1           THE COURT:  Thank you.

2           (Pause)

3           MR. SHAPIRO:  Hi.  Peter Shapiro again.

4           THE COURT:  Wonderful.

5           MR. SHAPIRO:  Better?

6           THE COURT:  Clear as a bell.  Go ahead.

7           MR. SHAPIRO:  Okay.  Let's hope it stays

8    that way.  I'll rub my rabbit's foot.

9           So I'll start over again because I wasn't

10   audible, apparently.  The first objection was by ACN

11   that there really was no need for two depositions

12   and that the Merriman deposition should be

13   sufficient.  And thereafter we took the position

14   that there really wasn't a showing that another

15   deposition was needed and that any information that

16   plaintiffs could acquire hadn't been provided.  And

17   I don't believe there was ever any showing of what

18   was missing.

19          In response to having seen the plaintiffs'

20   expert reports, evidently ACN was quite exercised

21   about feeling that they were inaccurate and

22   problematic and volunteered to provide some

23   information.  And I didn't control whether they --

24   you know, Mr. Stevanovski was deposed or not.

25   Obviously, I took a position, but it was up to him

```
 1    to decide that he could participate in a couple --
 2    not a couple, but several phone calls.  I think he
 3    was on three of them, and they were not long phone
 4    calls or detailed phone calls with review of
 5    documents and so forth.  And what Mr. Quinn
 6    recounted about who participated wasn't quite
 7    accurate.  I can get into that if you'd like.
 8              THE COURT:  Okay.  Yeah, please tell me who
 9    did participate.
10              MR. SHAPIRO:  Yeah.  Cunningham was on two
11    calls.  Crandon was on one call, in which he was the
12    only person speaking to the ACN people.  And in the
13    two calls that Cunningham was on, Hare and Peterson
14    were also there.  And Hare and Peterson were on one
15    additional call.  And on one of those calls, I
16    believe Stevanovski was not participating.
17              THE COURT:  Okay.  And you or someone from
18    defendants' counsel participated in each of these
19    calls?
20              MR. SHAPIRO:  Yes, I was there and ACN's
21    counsel was there.
22              THE COURT:  Okay.
23              MR. QUINN:  Your Honor --
24              MR. SHAPIRO:  There were no emails, by the
25    way.
```

```
 1                THE COURT:  Right, but we have partial
 2      notes from Mr. Crandon, right?
 3                MR. SHAPIRO:  Right.  Well, that apparently
 4      is all his notes, but they're clearly not very
 5      enlightening.
 6                THE COURT:  Okay.  Mr. Quinn, I'm sorry.
 7      Go ahead.
 8                MR. QUINN:  Yes.  Thank you, your Honor.
 9                I don't have the protective order
10      immediately in front of me, but this is actually the
11      first time we've learned that our expert reports,
12      which were all designated confidential and served on
13      defendants, apparently were shared with ACN and that
14      their reaction to them is what prompted these
15      meetings.  That's a new disclosure for us.  And just
16      candidly, my initial reaction is that I'm not sure
17      that that's permitted or appropriate under the
18      protective order and discovery rules.
19                THE COURT:  Okay.
20                MR. SHAPIRO:  My response to that would be
21      that they signed the protective order, just like the
22      experts and presumably the others, and that's why
23      they have access to them.
24                THE COURT:  Well, that's good.  But if
25      they're not -- I don't have the protective order in
```

1    front of me, but if they weren't one of the

2    categories of people who could be shown something

3    designated confidential, just because they signed

4    the certification doesn't necessarily excuse them.

5            Again, let's set that issue to the side,

6    because, obviously, as Mr. Quinn said, he's just

7    learning about it, and none of us have the

8    protective order in front of us.

9            All right, well, so your letter,

10   Mr. Shapiro, suggests -- you request or suggest that

11   you could do supplemental reports.  With those

12   reports from the four experts, would they be able to

13   describe with some substance what information they

14   learned during each of the calls they participated

15   in?

16           MR. SHAPIRO:  Well, you know, I'm not sure

17   to what extent.  I have the impression for

18   Dr. Cunningham that she has no real recollection of

19   anything in particular that was said and that she

20   would say she didn't use anything from those

21   conversations in her report.

22           I think for Hare and Peterson -- you know,

23   Hare, we know what he relied on because he cited it

24   in his report.  Peterson didn't rely on anything,

25   although he may have learned some things, so he

1   could probably describe what he learned.

2        Crandon was really limited more

3   specifically to the video phone issue.  And I think

4   he probably would be able to say what he learned,

5   which was in the nature of where the video phone

6   came from and the extent of what ACN did in trying

7   to market that phone.

8        THE COURT:  Okay.  How soon could you do

9   these supplemental reports?

10        MR. SHAPIRO:  Well, obviously I have to

11   speak to the experts about their time frames.  I

12   have no reason to think that they're not available.

13   So I think, to be safe, I would say ten days would

14   be an appropriate amount of time.  And if I can get

15   them done sooner -- for example, Cunningham's may be

16   quite brief, I would certainly endeavor to do so.

17        THE COURT:  Okay.  All right.

18        Well, I know, Mr. Quinn, that's probably

19   not going to satisfy you, but aside from

20   supplementing their reports with a description about

21   what it is they learned or didn't learn in these

22   meetings, is there anything else that could help

23   with the prejudice that you perceive?

24        MR. QUINN:  Respectfully, your Honor, and

25   without, of course, any intention to aggravate the

1   Court, we do think at this point there are grounds

2   to renew the request to depose Mr. Stevanovski.  I

3   mean, it's clear that he had material information

4   that he felt personally compelled to share with each

5   of these experts on every subject covered by their

6   reports.

7          And, again, he's the founder, CEO, the

8   principal person who led this relationship.  I mean,

9   I just refer back to our prior filings as to his

10  unique role as a fact witness.  And we understood

11  the burden issues and everything else, but having

12  sort of voluntarily now injected himself into this

13  process and shared information with people, yeah,

14  respectfully, I think we should have a chance to

15  depose him.

16         THE COURT:  Yeah, no, I tend to agree with

17  you.  It's the point that I made to Mr. Shapiro a

18  few minutes ago.  Despite having gotten a pass

19  twice, he nevertheless waived that, so to speak, I

20  guess, by making himself suddenly important when we

21  might have otherwise passed him by.

22         MR. SHAPIRO:  I would just say perhaps ACN

23  should be given an opportunity to state their

24  position about that before you rule.  I can show a

25  rule and saying ACN should show cause or something

1   of why he shouldn't be deposed.

2          THE COURT:  Well, is ACN on this call?  Do

3   we have counsel for ACN on this call?

4          MR. SHAPIRO:  No.  I didn't alert them that

5   this might be an issue.  It didn't occur to me that

6   that might be something --

7          THE COURT:  Why not?  I mean, it's the

8   fourth line of the plaintiffs' letter.  Why not?

9   Why should we waste any more time on this?

10          MR. SHAPIRO:  Well, your Honor, I

11   understand.  I apologize for that.  It just simply

12   didn't occur to me.  And I suppose that if you issue

13   an order saying that Mr. Stevanovski should be

14   deposed and they want to object, that's going to be

15   up to them.

16          THE COURT:  Yeah, I certainly think there's

17   good cause to order it.  And if they felt -- well,

18   obviously, they may not have known it.  All right.

19          So then I assume, Mr. Quinn, you want those

20   reports and then proceed with the experts'

21   depositions, right?

22          MR. QUINN:  I think ideally, yes, your

23   Honor, we would get the supplemental disclosures so

24   we have as much of the disclosed factual material as

25   possible, and I think preferably then depose

```
 1    Mr. Stevanovski, followed quickly by the experts.
 2    And, you know, understanding it's a firm trial date
 3    with absolutely no intention of ever putting that at
 4    risk, if we could have some adjustment to the class
 5    certification deadline just to complete those -- I
 6    mean, we have outlines for all of them.  We're ready
 7    to move as quickly as they can make themselves
 8    available.
 9         THE COURT:  Yeah, I can't do that.  That's
10    Judge Schofield's deadline, so you would need to ask
11    her.  I mean, what I was trying to get at is -- a
12    few minutes ago when you and I were speaking, was
13    that it seems to me like you have most of what you
14    need.  Obviously, you know, you have grounds to
15    complain about whatever it is that defendants have
16    submitted already.  That may or may not be cured,
17    but you can certainly preserve your objection at
18    this point.
19         And then, as I see it, you'll have the
20    opportunity on reply -- certainly by the time of the
21    reply, which is April 7th, hopefully all of this
22    would be done, and so you'll have an opportunity
23    there to either say what you know based from the
24    supplemental declarations and the depositions.  And
25    then, obviously, a summary judgment, I assume,
```

1   whether the experts are in or out, will be something

2   that you'll be raising.

3           So I guess the bottom line is if you want

4   to change the class certification deadlines, you're

5   going to have to ask Judge Schofield.  I can't do

6   that.  But consider -- you know, in light of how

7   important staying on schedule is for keeping the

8   trial date, just consider whether you really need to

9   do that or not.  But that's obviously your decision

10  to make.

11          MR. SHAPIRO:  Your Honor, can I just raise

12  one point that's relevant to that?  And this is a

13  very unfortunate turn of events in the last 24

14  hours, but one of my partners, who was slated to

15  work on this class certification opposition, passed

16  away yesterday.

17          THE COURT:  Oh, I'm sorry to hear that.

18          MR. SHAPIRO:  So we're all kind of reeling

19  here from that, young fellow and had some illness

20  and took a turn for the worse, unfortunately.

21          And so I'm hoping that I'll be able to

22  slide someone else in to work on the class

23  certification opposition, but just from a logistics

24  point of view and my firm having some additional

25  time to put our team back together and have somebody

1     ready to start working on that class certification

2     motion when it's received, you know, at least a

3     couple more weeks would be ideal from our end.

4            THE COURT:  Okay.  I understand.  It's just

5     I'm not at liberty to change the Judge Schofield's

6     previous schedule, so you can certainly explain that

7     to her.

8            So I guess where I'm coming out, as it's

9     probably clear at this point, is that the

10    plaintiffs' motion to preclude the defendants'

11    experts would be denied today without prejudice.

12    The steps that we'll take next is within ten days,

13    which takes us to -- we'll calculate what that is in

14    a second -- that there will be supplemental reports

15    or affirmations or declarations from each of the

16    four defendants' experts specifically addressing the

17    calls that they participated in with the ACN

18    individuals.  And then we'll proceed to depose those

19    experts.

20           And, in addition, I will order that

21    Mr. Stevanovski sit for a two-hour deposition

22    limited to the topic of the meetings that he

23    participated in with the defendants' experts, and if

24    defendants think there is good cause to have it

25    beyond that, you can come back to me.  But at this

```
 1    point that's the quote-unquote burning issue that I
 2    was looking for before and thought was absent and
 3    now feel is present.  So this definition would just
 4    be limited to that subject matter.
 5            Okay.  Mr. Quinn, anything else you'd like
 6    me to consider?
 7            MR. QUINN:  Two things, your Honor.  First,
 8    on the Stevanovski deposition, just in light of the
 9    way this touched all four reports and the nine
10    distinct references in Hare's report, if the Court
11    might consider giving us even three or four hours, I
12    think we may need it to get through this
13    productively, especially given that a lot of these
14    are reference data points, and if he says that there
15    is some data, we need to make sure we get into it
16    and understand what that support is or, if needed,
17    take a break to pull a document out of the discovery
18    record.  So just trying to really foresee in a very
19    realistic way what that's likely to be,
20    understanding that the Court wants us to be
21    efficient.
22            THE COURT:  Yeah.  I meant two hours on the
23    record, so I can be clear about that.  So if you
24    need to take breaks or anything, that won't count
25    against you.
```

1          MR. QUINN:  Understood, your Honor.  I'll

2    put in one last request for three or four, but

3    understand and we'll await the Court's order.

4          THE COURT:  I'm optimistic that you can be

5    efficient and do it in two.  If you've had two and

6    you need to call me and ask me for more time, you

7    can do so.

8          MR. QUINN:  Understood.  Thank, your Honor.

9          THE COURT:  Okay.

10         MR. QUINN:  And the only other point, on

11   the scheduling front, we'll reach out to Mr. Shapiro

12   and I'll add our condolences, in addition to the

13   Court's, and we'll see if we can work some minor

14   adjustments out that in no way affect the trial

15   date, which the Court knows is still a ways off.

16         THE COURT:  Yes.

17         MR. QUINN:  So hopefully we can work that

18   out and bring a stipulation to Judge Schofield early

19   next week and we'll work in good faith to do that.

20         THE COURT:  Great.  So hang on just one

21   second.

22         Okay, so I'm just going to add in an extra

23   day because of the holiday.  So February 28th will

24   be the deadline for the supplemental expert report.

25   And do we need to set a deadline for getting expert

 1   depositions and Mr. Stevanovski's deposition done,
 2   Mr. Quinn?  Or is that sort of something you think
 3   you can work out?
 4           MR. QUINN:  I suppose I'd propose in the
 5   first instance that we work with defendants and ACN
 6   to get availability and see if we can develop a
 7   workable schedule and bring it to the Court, and in
 8   the event of disputes or an inability to do so,
 9   we'll just let the Court know that.
10           THE COURT:  Is that all right with you,
11   Mr. Shapiro?
12           MR. SHAPIRO:  Yes, thank you.
13           THE COURT:  Okay, great.  On your side,
14   Mr. Shapiro, anything else you'd like to raise, or
15   any clarification?
16           MR. SHAPIRO:  No, I think it's been very
17   clear.  Thank you.
18           THE COURT:  Okay.
19           MR. SHAPIRO:  Clearer than my phone line,
20   in any event.
21           THE COURT:  Clearer than your phone.  All
22   right.  Well, again, condolences to you and your
23   colleagues, and you will see an order from us
24   shortly this afternoon.
25           Thank you very much, everyone.  We'll be

1   adjourned.

2           MR. SHAPIRO:  Thank you.  Bye.

3           MR. QUINN:  Thank you, your Honor.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3       I, Marissa Mignano, certify that the foregoing

4   transcript of proceedings in the case of

5   CATHERINE MCKOY, et al. v. THE TRUMP

6   CORPORATION, et al., Docket #18-cv-09936, was

7   prepared using digital transcription software and is

8   a true and accurate record of the proceedings.

9

10

11  Signature   *Marissa Mignano*_____

12                  Marissa Mignano

13

14  Date:      February 23, 2023

15

16

17

18

19

20

21

22

23

24

25