# EXHIBIT 10

This Appearance Agreement (this "**Agreement**") is entered into as of February 13, 2013 between ACN, Inc., a corporation organized under the laws of the state of Michigan with an address at 1000 Progress Place, Concord, NC 28025 (hereinafter referred to as "**ACN**"), and Donald J. Trump, an individual with an address at 725 Fifth Avenue, New York, New York 10022 (hereinafter referred to as "**Mr. Trump**", and sometimes hereinafter referred to collectively with ACN as the "**Parties**" and individually each of them a "**Party**"). The Parties agree that Mr. Trump shall provide the services described below, for the compensation described below, on the following terms:

    **1.**    <u>Events; Promotional Services</u>. ACN shall at its sole cost during the Term (as defined below) organize and stage ten (10) distinct events (as further described herein, each an "**Event**"), no less than one (1) Event per any calendar year and no less than three (3) Events in any consecutive two (2) calendar years. Each Event shall promote ACN's network marketing business to ACN's sales force (each an "**Event**"), and shall promote nothing else (and be attended solely by ACN's executives and employees, and ACN's independent business owners ("IBOs") or by invitation of ACN only), and such promotion of ACN shall be the central feature of each Event. No less than eight (8) of the ten (10) Events hereunder shall occur in the lower forty-eight (48) states of the United States. The specific dates and locations of the Events will be mutually determined by the Parties, and ACN shall coordinate such dates with the availability of Mr. Trump. The term of this Agreement (the "**Term**") will begin March 31, 2013, and will continue until April 1, 2018. The Term may be extended for no more than six (6) months by mutual agreement of ACN and Mr. Trump in the sole discretion of each of them, either to accommodate Mr. Trump's schedule, or in the event that the tenth (10th) such Event shall not have been staged during the Term.

    **2.**    <u>Personal Appearance and Live Speech at Events</u>. Mr. Trump agrees to appear, subject to the provisions of the Exclusivity Restrictions (as defined below), live and speak on stage before an audience consisting of ACN's employees and IBOs at such Events. Mr. Trump and ACN will mutually agree on the speech topic, format (i.e., monologue or interview) and basic talking points; provided that the specific content of the speeches shall be subject to Mr. Trump's sole discretion. The services to be provided by Mr. Trump at each Event shall be approximately two (2) consecutive hours (but in no event more than three (3) consecutive hours, unless mutually agreed upon by the Parties in their sole discretion) commencing from his arrival at the venue of the applicable Event, inclusive of all services. Such services shall include the above described interview or speech and may include one or more of the following: a question and answer session, video interview (of no more than ten (10) minutes in length) consisting of greetings for new ACN top leaders, and an organized meet and greet with photographs, each and all of the foregoing as shall mutually be agreed upon by the Parties; and, no more than once per calendar year, such activities at an Event may include a lunch with the ACN executives at such Event.

    **3.**    <u>Recorded Footage; Photographs</u>. Mr. Trump acknowledges and agrees that ACN may video record Mr. Trump's live presentation at each Event (the "**Appearance Footage**"), subject to the Video Conditions (as defined below). In addition, if requested, Mr. Trump will also be available no more than two (2) times per calendar year to make an on-camera, taped recording of a promotional greeting and subsequent video pick-up for the promotion of his Event appearances, provided that such taping shall be done at Mr. Trump's office in Trump Tower, New York, NY (subject in each case to ACN's entering into a location agreement with the owner of such premises on such owner's form, which shall include obligations on the part of ACN at ACN's sole cost to provide insurance covering such activities on such premises), or such other location as shall be mutually agreed upon, and no such taping shall take more than one (1) consecutive hour, and such footage shall be subject to the Video Conditions (the "**Video**

Recording Sessions"). The "**Video Conditions**" shall mean that applicable recorded footage of Mr. Trump (i) may only be used internally to motivate ACN's IBOs during the Term and by individual IBOs during the Term to promote ACN opportunities to individual, potential sales representatives, (ii) shall not exceed ten (10) minutes, and (iii) shall be solely in DVD format and/or on the ACN corporate website, www.acninc.com (the "**ACN Website**") or any website issued by ACN for IBOs (the "**ACN-issued Websites**") (provided that such DVD shall be distributed solely to ACN's personnel and IBOs, or to such governmental agency or regulatory body as may be required by law, and that the ACN Website and ACN-issued Websites shall be solely internal websites inaccessible to the general public and not available to search engines queries (the "**Internal Website Requirements**") such that the video footage appearing on the ACN Website and/or ACN-issued Websites shall only be accessible by ACN's personnel and ACN's IBOs). Mr. Trump acknowledges and agrees that ACN may also photograph Mr. Trump at the ACN Events and Video Recording Sessions, and use such photographs for promotional purposes as part of the promotional activities expressly contemplated by this Agreement, subject to the requisite approvals; as an example of the foregoing, the photographs may appear along with (1) videos used in accordance with this Agreement and (2) the Magazine Article (as defined below) in accordance with Section 4 below. In addition, photographs (but no video footage) of Mr. Trump may appear on the home page of the ACN Website indicating that Mr. Trump appeared at or is scheduled to appear at applicable Events, and for similar reasons that shall be subject to Mr. Trump's approval in his sole discretion. As shall be requested by Mr. Trump from time to time, ACN shall provide Mr. Trump with copies of photographs of Mr. Trump selected by Mr. Trump that shall have been taken by or on behalf of ACN pursuant to this Agreement.

4. Inspirational Note; Magazine Article; Replacement Projects. Mr. Trump also agrees to collaborate with ACN, as set forth below in this paragraph, on an inspirational weekly note of encouragement by Mr. Trump to ACN's representatives (each an "**Inspirational Note**") to appear on the ACN Website until the expiration or termination of this Agreement. Material for such purposes will be prepared by ACN, and presented by ACN to Mr. Trump for his approval in advance each quarter; such approval shall be in Mr. Trump's sole discretion. ACN may cause an article (similar to the article featuring Mr. Trump that prior to the date hereof appeared in SUCCESS Magazine) indicating Mr. Trump's services provided to ACN hereunder (a "**Magazine Article**"), to appear in SUCCESS Magazine (but not elsewhere except on the ACN Website as described below), no more than once or twice per calendar year, but which in any event shall not appear therein unless approved by Mr. Trump in his sole discretion in each instance and subject to the provisions of Section 6 below; Mr. Trump shall use commercially reasonable efforts to respond to requests for approval of a proposed Magazine Article within fourteen (14) business days of such request (subject to extension of one (1) day for each day during which Mr. Trump shall be traveling during such review period). Notwithstanding the foregoing, ACN shall also have the right during the Term to cause a Magazine Article to appear on the ACN Website, provided that (i) the Internal Website Requirements are met such that the Magazine Article appearing on the ACN Website shall only be accessible by ACN's personnel and ACN's IBOs and (ii) ACN obtains the prior written, signed permission for same from all parties holding the rights to the Magazine Article for such purposes. ACN may request similar replacement projects (i.e., similar to the magazine articles or inspirational notes described in this paragraph) that Mr. Trump shall have the right to approve in his sole discretion, provided that in the event of such approval details shall be negotiated in advance, and an amendment of this Agreement may be required if so determined by Mr. Trump. ACN may also request approval for quotes from Mr. Trump regarding his appearance at an Event or similar topics ("**Quotes**") for use on the ACN Website, subject to the Internal Website Requirements, provided that the topic, content and each specific use of any Quote shall be subject to approval at Mr. Trump's sole discretion and the other provisions of Section 6 below. ACN may make a single announcement on ACN's (i) corporate Twitter account and (ii) corporate Facebook page, respectively, regarding

Mr. Trump's upcoming appearance for each respective Event, subject to the prior approval of Mr. Trump, at his sole discretion, as to the content of each such announcement.

5. <u>Fee</u>. The fee for the services of Mr. Trump hereunder shall be FOUR MILLION FIVE HUNDRED THOUSAND UNITED STATES DOLLARS US$4,500,000 (the "**Fee**"), payable (in accordance with wire instructions to be provided by Mr. Trump which payment method may be changed from time to time by Mr. Trump in his sole discretion), as follows. For each Event at which Mr. Trump shall provide services pursuant to this Agreement, ACN will pay Mr. Trump an installment portion of the Fee equal to $450,000.00 (each an "**Event Installment**") (plus, for each Event outside of North America, the cost of two (2) first-class roundtrip airfare tickets (the "**Airfare Payment**")). The full amount of such Event Installment in respect of an Event shall be paid to Mr. Trump no later than ten (10) days prior to the scheduled commencement of the corresponding Event; and each applicable Airfare Payment shall be made within ten (10) days of request for such Airfare Payment. The obligation to pay the Fee hereunder and each Installment thereof shall be unconditional, regardless of whether or not ACN shall elect to receive the services hereunder in connection with the applicable Event (or otherwise), and regardless of whether or not ACN shall actually organize and/or stage any one or more of the Events contemplated hereunder. Without limiting the foregoing, in the event that in any calendar year no Event shall have been staged by ACN at which Mr. Trump shall have provided services hereunder (unless due to the fault of Mr. Trump in violation of his obligations under this Agreement), in such event ACN shall pay an Event Installment to Mr. Trump by no later than January 10 of the immediately following calendar year. In addition, within ten (10) days of the expiration of the Term, ACN shall pay Mr. Trump a sum equal to the difference between (i) $4,500,000.00 and (ii) the aggregate of all Event Installments (excluding any Airfare Payment) previously paid to Mr. Trump, which obligation shall survive expiration or termination of this Agreement.

6. <u>Trump Property; No Disparagement; Approval; Upon Expiration or Termination of this Agreement, Etc</u>. For avoidance of any doubt and except as otherwise expressly provided under this Agreement, ACN may not distribute (or encourage or permit any person or party to sell or distribute) anything containing Mr. Trump's name, image, likeness and/or voice (collectively "**Trump Property**"), including without limitation footage or photographs of Mr. Trump, any Inspirational Note or any Quote, or anything containing any of the foregoing. Notwithstanding anything to the contrary in this Agreement, any footage and/or photograph of Mr. Trump or other Trump Property, and the manner of their respective use in each instance, shall be subject to approval by Mr. Trump, in his sole discretion. Without limiting the foregoing, it is expressly understood that any of ACN's promotional material that references Mr. Trump or otherwise indicates his services contemplated under this Agreement shall be subject to Mr. Trump's approval in his sole discretion with respect to such reference and/or indication. Notwithstanding any use of Trump Property by ACN, including without limitation any reference to or inclusion of the name, likeness, image or voice of Mr. Trump in any material hereunder and/or any photograph or footage or any other use of Trump Property pursuant to this Agreement, Mr. Trump shall retain all right, title and interest to the Trump Property (including without limitation his name and the trademark "Trump"), and any goodwill generated by any such use. Except for the permission to use Trump Property expressly granted by the provisions of this Agreement during the Term, no rights of any kind in or to any of the Trump Property, including without limitation any goodwill symbolized or generated by the Trump Property or any such use, shall ever vest in ACN. Immediately upon the expiration or termination of this Agreement, ACN shall cease all distribution and use of video footage and photographs of Mr. Trump hereunder, the Inspirational Notes and Quotes, and otherwise any use of Trump Property, including without limitation on the ACN Website and any DVD, and, upon request, shall return or destroy all copies of any such footage and photographs of Mr. Trump and other Trump Property, and certify compliance therewith executed by an officer of ACN, which obligation shall survive any

termination or expiration of this Agreement. Notwithstanding anything to the contrary contained herein, ACN understands and agrees it shall not use any Trump Property, in any manner, (a) except as expressly provided under this Agreement, or (b) that expresses or implies a commercial tie-in, or (c) that would hold up to ridicule Mr. Trump or any of his family members or businesses that he or they own or control, directly or indirectly, or the affiliates of any such businesses (collectively the **"Trump Parties"**), or damage the name image or reputation of any of the Trump Parties.

7. <u>Indemnification</u>. ACN hereby agrees to indemnify, defend, and hold harmless the Trump Parties from and against any and all liabilities, claims, losses, causes of action (including without limitation under contract or tort) and reasonable out-of-pocket expenses, including, without limitation interest penalties, reasonable attorneys' fees and expenses and third party fees, and all amounts paid in investigation, defense/settlement of any claims, suit proceedings, judgments, losses, damages, costs liabilities and the like (individually and collectively) which may be incurred or paid by any of the Trump Parties arising in whole or in part, directly or indirectly, from ACN's (including any of its principals', owners', employees', officers', agents' and/or representatives') negligence or willful misconduct or action or omission in connection with or breach of this Agreement. ACN's indemnification obligations herein specifically exclude any claim to the extent caused by any act or omission of an IBO; however, ACN agrees to fully cooperate, at ACN's sole cost, with Mr. Trump in (a) any legal action taken against an IBO as a result of any act or omission of an IBO and (b) any efforts to remediate damage caused by any act or omission of an IBO.

8. <u>Insurance</u>. ACN shall at all times throughout the Term, at its sole cost, obtain and maintain insurance policies in accordance with the requirements shown on Exhibit A attached hereto. ACN shall simultaneously with the execution of this Agreement, and additionally again at least 30 (but no more than 60) days prior to each Event, deliver (to Rhona Graff, by email to rgaff@trumporg.com, or such other representative and/or email address as shall be designated by Mr. Trump from time to time, on behalf of Mr. Trump) an insurance certificate evidencing that ACN is in compliance with the foregoing insurance requirements, including without limitation that the parties indicated on Exhibit A as additional insured parties are additional insured parties under such policies. Between September 1, 2015 and September 30, 2015, the Parties hereby agree to revisit the insurance coverage to be obtained by ACN for the duration of the Term. In addition to the coverage set forth in Exhihit A, the parties shall discuss other coverage, including without limitation, Media Liability Insurance and Network Liability including Privacy Coverage (the "Additional Coverage"). If the Parties agree that ACN shall obtain Additional Coverage, then, in accordance with Section 15 herein, such agreement shall be codified through an amendment to the Agreement covering any applicable revisions to Exhibit A.

9. <u>Security</u>. ACN shall implement, at its expense, such security procedures and hire such security personnel as shall be reasonably required by Mr. Trump to safeguard and protect Mr. Trump from personal injury while at the Event. A security plan must be developed by ACN and approved by Mr. Trump in his sole discretion at least ten (10) days prior to the Event Date. All security procedures and personnel should be subject to Mr. Trump's or his representative's written approval.

10. <u>Exclusivity</u>. During the Term, Mr. Trump shall not provide **"Promotional Services"** (as defined below) directly to any party (except for ACN) for such party's Network/Multi-level Marketing Business. "**Network/Multi-level Marketing Business**" shall mean (a) the business of Amway, NUSkin, Shaklee, Avon, Herbalife or 5Linx (collectively, "**Prominent Network/Multi-level Marketing Companies**"), or (b) any business similar to the Prominent Network/Multi-level Marketing Companies, operated by a member of the Direct Selling Association, the sales of which business are solely (and are generally identified by the general public as being conducted solely) to individual retail customers on the basis of multi-

level, network direct marketing, by which such business's sales force are each an independent contractor compensated not only for sales directly generated by such salesperson, but also, on a "multi-tiered" compensation basis, for the "downline" sales generated either by (x) another salesperson directly recruited by the first such salesperson, or (y) another salesperson deemed to have been indirectly recruited by the first such salesperson due to direct recruitment performed by another salesperson who is directly or indirectly "downline" from the first such salesperson. The terms "**multi-tiered**" and "**downline**" shall have the meanings generally used as of the date hereof for such terms by the Direct Selling Association's members. For avoidance of any doubt, none of the following shall be deemed a Network/Multi-level Marketing Business: The business of sales in physical or "brick and mortar" retail stores or other sales outlets, wholesale sales or sales to retail outlets (unless, in the case of any such retail or wholesale sales in physical brick and mortar outlets in the continent of Asia, such sales are conducted in brick and mortar venues, by a business that would otherwise qualify as a Network/Multi-level Marketing Business, solely to comply with government regulations requiring Network Marketing Businesses to conduct retail and/or wholesale sales (as the case may be) in physical, brick and mortar outlets therein). Without limiting the generality of the foregoing, and solely for the avoidance of any doubt and without limitation, (x) nothing in this Agreement shall prohibit Mr. Trump from (i) appearing in (or otherwise being associated with, benefitting economically from or entering or into agreements in respect of) the news, information and/or entertainment portion of any film, TV show, live event and/or other program regardless of any underwriting sponsorships or commercial tie-ins, including without limitation the television program "The Apprentice" or any promotional campaign in respect thereof, notwithstanding that any of the foregoing (including without limitation its promotional campaign) advertises, promotes and/or markets various goods, products and/or services that may include a Networking Marketing Business; and Mr. Trump shall expressly be permitted to appear on any of the foregoing (including without limitation The Apprentice) and its promotional campaign as an observer, advisor, judge, assessor or in any other capacity and including without limitation projects featuring or otherwise connected with competitive tasks or other segments, whether or not any such program, segment, campaign or advertisement constitutes, directly or indirectly, an advertisement, promotion, or marketing of one or more Network/Multi-level Marketing Businesses, and (y) nothing in this Agreement shall prohibit any hotel, golf property or other property or business owned directly or indirectly by Mr. Trump or associated with the name Trump (each a "**Trump Location**"), to engage in business dealings with any Network/Multi-level Marketing Business or any Network/Multi-level Marketing Business Party (as defined below), including without limitation for any party, event, conference or outing concerning a Network/Multi-level Marketing Business (or that is organized by a Network/Multi-level Marketing Business or by any Network/Multi-level Marketing Business Party), that may take place at the premises of a Trump Location (and such parties, events, conferences and outings shall expressly be permitted to take place threat); nor shall anything in this Agreement prohibit Mr. Trump (or any entity that owns or controls any such business or property even if owned or controlled by Mr. Trump) from entering into any agreement for any of same. "**Promotional Services**" shall mean (i) motivational speeches, which are similar to Mr. Trump's speeches under this Agreement, conveyed at personal appearances to live audiences of Network/Multi-level Marketing Business salespeople (other than ACN's IBOs), or (ii) paid personal endorsements of a Network/Multi-level Marketing Business (other than ACN) expressed before a live audience of the salespeople of such Network/Militia-level Marketing Business or (iii) paid personal endorsements of a Network/Multi-level Marketing Business (other than ACN) that Mr. Trump causes to be circulated by social media or to appear on the Internet, which are similar to the services provided by Mr. Trump under this Agreement and are to motivate the sales force of such Network/Multi-level Marketing Business. "**Network/Multi-level Marketing Business Party**" shall mean any company or other party or group that owns, controls, operates or is otherwise involved in a Network/Multi-level Marketing Business. The provisions of this Section 10 shall collectively be referred to as the "**Exclusivity Restrictions**".

**11.** <u>Brokers</u>. ACN acknowledges that ACN has engaged Dolphin Media Group, and/or Anne Archer (collectively "**Archer**") as a broker to facilitate the relationship and transactions that are the subject matter of this Agreement. Each Party (the "**Indemnifying Party**") represents and warrants to the other Party that, except for ACN's foregoing engagement of Archer, the Indemnifying Party has not dealt with any broker with respect to the subject matter of this Agreement, and such Indemnifying Party agrees to indemnify and hold the other Party harmless from and against any claim for any brokerage or other commission or finder's fee or other compensation (collectively any of the foregoing a "**Broker Fee**") made by any person or entity claiming to have acted on the behalf of such Indemnifying Party in connection therewith, including without limitation for all costs and expenses in connection with same (including without limitation attorney fees). Without limiting the generality of the foregoing, ACN agrees that ACN is solely responsible for any Broker Fee payable to Archer, if any, and shall indemnify Mr. Trump for any claim for any Broker Fee by Archer, including without limitation for all costs and expenses in connection with any such claim (including without limitation attorney fees). The obligations set forth in this paragraph shall survive the expiration or earlier termination of this Agreement.

**12.** <u>Notices</u>. (a) Each notice required or permitted to be given hereunder or in connection with the subject matter hereof, (expressly excluding, however, Ordinary Course Communications (as defined below), must be given in writing and delivered (i) personally or (ii) by a nationally recognized courier, or (iii) sent by prepaid certified mail, return receipt requested; or (iv) transmitted via email to the Party (provided that another copy is within two (2) business days sent as provided in subsection (ii) or (iii) of this Section 12(a)), as follows:

**If to ACN :**

| | |
|---|---|
| Address: | ACN, Inc. |
| | 1000 Progress Place |
| | Concord, NC  28025 |
| Attention: | Robert Stevanovski, Chairman and Co-Founder |
| Email. | robert@acninc.com |

with a copy simultaneously sent to:

| | |
|---|---|
| Address: | Dolphin Media Group |
| | 111 Spartina Court, Mooresville, NC 28117 |
| Attention: | Anne Archer, Vice President |
| Email: | Dolphinent@aol.com |

**If to Mr. Trump:**

| | |
|---|---|
| Address: | The Trump Organization LLC, 725 Fifth Avenue, New York, NY, 10022 |
| Attention: | Donald J. Trump, President |
| Email: | rgraff@trumporg.com |

with a copy simultaneously sent to:

| | |
|---|---|
| Address: | The Trump Organization LLC, 725 Fifth Avenue, New York, NY, 10022 25th floor |
| Attention: | Jason Greenblatt, EVP & General Counsel |
| Email: | jgreenblatt@trumporg.com |

**Confidential Treatment Pursuant to Protective Order**

or to any other address, email address or person that a Party designates in the manner above-provided. Any notice shall be deemed to have been given when actually received, if received before 5:00 p.m. on a business day, but will be deemed to have been given on the next business day if received after 5:00 p.m. on a business day.

(b) Ordinary Course Communications may be delivered by email. **"Ordinary Course Communications"** shall mean communications between the Parties conveyed in the ordinary course of carrying on the relationship hereunder, including without limitation communications requesting or granting consent or approval pursuant to this Agreement. Archer shall be deemed a representative of ACN for purposes of Ordinary Course Communications, until such time, if any, as ACN shall in accordance with Section 12(a) hereof notify Mr. Trump that Archer is no longer a representative of ACN for such purposes.

13. Default. Either party may terminate this Agreement, in writing delivered to the other party, in the event that the other party hereto shall have materially breached a provision of this Agreement and such breach is not cured within ten (10) business days of written notice of such breach. Without limiting the generality of the foregoing, in addition to events of default by ACN in respect of the other provisions of this Agreement, and without waiving any right or remedy available to Trump, Trump shall have the additional right to terminate this Agreement in the event that ACN does any of the following:

    (a) fails to timely make any payment due to Mr. Trump hereunder when the same is due and shall fail to cure such failure after ten (10) business days (but in all events prior to commencement of the applicable Event in respect of which an Installment for payment is due); or

    (b) breaches any of the provisions of this Agreement prohibiting ACN from directly or indirectly assigning, transferring, sublicensing or otherwise encumbering this Agreement, or

    (c) files a petition in bankruptcy or is adjudicated as bankrupt or insolvent, or makes an assignment for the benefit of creditors, or an arrangement pursuant to any bankruptcy law, or if ACN discontinues its business, or if a receiver is appointed for ACN or for ACN's business and such receiver is not discharged within the earlier to occur of (i) thirty (30) days thereafter or (ii) ten (10) days preceding an Event; or

    (d) fails to obtain or maintain insurance as required by the provisions of this Agreement after the earlier of (i) five (5) business days notice to ACN, or (ii) five (5) business days preceding the commencement of any Event.

In the event that ACN terminates this Agreement in accordance with this paragraph for Mr. Trump's breach, ACN shall pay Mr. Trump that portion of the Fee for Events for which Mr. Trump shall have provided services hereunder, to the extent not previously paid, which obligation shall survive such termination. In the event that Mr. Trump terminates this Agreement in accordance with this paragraph for ACN's breach, the full unpaid portion of the Fee shall be payable by ACN, no later than ten (10) business days following the effective date of such termination, which obligation shall survive such termination.

14. Entire Agreement; Existing Agreement. This Agreement represents the entire agreement between the Parties with respect to the appearances and other services and activities

described above for the Term of this Agreement, and supersedes all previous agreements, whether written or oral, between the Parties concerning same. Notwithstanding the foregoing, (i) the Parties acknowledge that they have entered into an agreement dated January 14, 2011 (the "**Existing Agreement**") pursuant to which the parties agreed that Mr. Trump shall provide certain services described therein during the term of such Existing Agreement, for the fee described therein, all on the terms thereof, and (ii) the Parties agree that this Agreement is not intended to amend, modify or supersede the Existing Agreement, and that all of the terms of the Existing Agreement shall remain in full force and effect in respect of the services to be provided thereunder.

      **15.**    Amendment. This Agreement may be amended or altered only in writing, signed by both parties.

      **16.**    Governing Law; Venue. This Agreement is governed by the laws of the State of New York (without giving effect to New York's principles of conflicts of laws.) The State or Federal courts located in the City of New York in New York State shall have exclusive jurisdiction over any suit, action or proceeding arising out of or relating to this Agreement, provided that injunctive relief may be sought in any court located anywhere having jurisdiction.

      **17.**    Representation of Authority, Etc. ACN represents that it is a corporation organized under the laws of the State of Michigan and that it is fully authorized (including without limitation that it has obtained all corporation and similar authority necessary) to enter into and satisfy its obligations under this Agreement. The individual executing this Agreement on behalf of ACN, by so doing represents and warrants that he is fully authorized to so sign on behalf of ACN.

      **18.**    Assignment. Neither Party shall have the right to assign any rights or obligations under this Agreement to any other person or party, without the prior written consent of the other Party, which may be given or withheld in such other Party's sole discretion. A change of control of ACN shall be deemed an assignment by ACN of this Agreement. A "change of control of ACN" shall include without limitation a change in the ownership of a majority of the direct or indirect ownership or voting interests in ACN, or a change in the ability to control or direct the day to day or other operations of ACN.

      **19.**    Independent Contractors. In giving effect to this Agreement, no Party is or can or shall be deemed to be an agent or employee of another Party for any purpose. The relationship between the Parties will be and is that of, independent contractors. Nothing in this Agreement constitutes a partnership or a joint venture between the Parties, and neither Party has the right to enter into contracts or pledge the credit of or incur expenses or liabilities on behalf of the other Party.

      **20.**    Drafting for Convenience; Sophisticated Parties. To the extent this Agreement may have been drafted by either of the Parties or a representative thereof, the Parties agree that such drafting was as a convenience to the Parties only and shall not, by reason of such action, be construed against such Party. Each party acknowledges and agrees that it has had full opportunity to review this Agreement and has had access to counsel of its choice to the extent necessary to interpret its legal effect; and the Parties acknowledge and agree that (i) each Party is a sophisticated party with significant experience in the matters contemplated by this Agreement and (ii) each Party has had the opportunity to consult with and be advised by counsel in all applicable jurisdictions and has had the opportunity to make whatever investigation or inquiry each may have deemed necessary or desirable in connection with the subject matter of this Agreement prior to its execution. Each Party waives any claims that may be available at law or in equity to the effect that they did not have the opportunity to so consult with counsel.

21. <u>Headings and Captions</u>. Headings and captions used in this Agreement are intended for convenience only and shall not be used in interpreting the provisions of this Agreement.

<u>Execution; Counterparts</u>. This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and same instrument and any of the Parties may execute this Agreement by signing such counterpart. Delivery of an executed signature page of this Agreement by facsimile transmission or .pdf, .jpeg, .TIFF, or other electronic format or electronic mail attachment shall be effective as delivery of an original executed counterparty hereof.

ACN, INC.

By _____
Robert Stevanovski,
Chairman & Co-founder

_____
Donald J. Trump

**Confidential Treatment Pursuant to Protective Order**                                    TTO_000486

EXHIBIT A
Insurance Requirements

**Confidential Treatment Pursuant to Protective Order**                                                                                 **TTO_000487**

# EXHIBIT A

# SUGGESTED INSURANCE COVERAGES

| | |
|---|---|
| **GENERAL LIABILITY** | One Million ($1,000,000) per occurrence / Two Million ($2,000,000) general aggregate combined single limit, with a deductible amount not to exceed Ten Thousand Dollars ($10,000), for each single occurrence for commercial general liability insurance, bodily injury and/or for property damage, as well as product liability, automobile liability, contractual liability (written and oral, personal injury and advertising liability). |
| **UMBRELLA** | Umbrella liability policy with limits of not less than Twenty Five Million ($25,000,000). |
| **WORKERS' COMPENSATION** | Workers' Compensation coverage in statutory limits and Employers Liability with minimum limits of $500,000. |
| **CRIME** | Crime coverage including Third Party with limits of not less than One Million ($1,000,000) including Third Party Liability. |