UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CATHERINE MCKOY, MARKUS FRAZIER and
LYNN CHADWICK individually and on behalf of all
others similarly situated,                                    Case No. 18-cv-09936 (LGS)

                                 Plaintiffs,

              - against -

THE TRUMP CORPORATION, DONALD J. TRUMP,
in his personal capacity, DONALD TRUMP, JR., ERIC
TRUMP, and IVANKA TRUMP,

                                 Defendants.
-------------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

LEWIS BRISBOIS BISGAARD &
SMITH LLP
77 Water Street
New York, New York 10005

        -and-

ROBERT & ROBERT PLLC
526 RXR Plaza
Uniondale, New York 11556

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

STATEMENTS OF FACTS ................................................................................................... 3

ARGUMENT ......................................................................................................................... 4

    I.      PLAINTIFFS DO NOT SATISFY THE REQUIREMENTS FOR CLASS
           CERTIFICATION UNDER RULE 23(B)(3) ....................................................... 4

         A.      Numerous Substantive Issues of Law and Fact Predominate that
                Cannot Be Proven by Generalized Proof, Rendering a Class Action
                Trial Unmanageable ..................................................................................... 4

                1.      The Class Was Exposed to Disparate, Not Uniform,
                        Statements .................................................................................. 5

         B.      Plaintiffs Cannot Prove Causation/Reliance or Materiality on
                a Class Basis ................................................................................................ 9

         C.      Plaintiffs Fail to Provide a Model to Determine Damages on a
                Class-wide Basis and Allocate Recovery Among Defendants in
                Violation of *Comcast*; There Are Variations in Evidence as to
                What Individuals Will Need to Prove Damages ....................................... 16

         D.      Variations In State Law on Common Law Misrepresentation Claims
                Swamp Common Questions of Law and Make Trial Unmanageable ....... 20

                  1.      Choice-of-Law Rules Require the Court to Apply 50
                        State Laws ................................................................................. 21

                  2.      There Are Material Variations in Common Law Fraud and
                        Negligent Misrepresentation Claims Among the 50 States ......... 22

                  3.      Further Material Variations for Negligent Misrepresentation
                        Claims ....................................................................................... 24

    II.     PLAINTIFFS DO NOT SATISFY THE REQUIREMENTS FOR CLASS
           CERTIFICATION UNDER RULE 23(A).......................................................... 26

    III.    PLAINTIFFS' PROPOSED STATE SUBCLASSES SHOULD NOT BE
           CERTIFIED ......................................................................................................... 27

    IV.    A RULE 23(C)(4) ISSUE CLASS AS TO FALSITY AND MATERIALITY
           SHOULD NOT BE CERTIFIED....................................................................... 29

CONCLUSION................................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**     **Page**

*Allegra v. Luxottica Retail N. Am.*,
  341 F.R.D. 373 (E.D.N.Y. 2022) ...................................................................14, 16

*Am. Express Co. v. Italian Colors Restaurant*,
  570 U.S. 228 (2013) ...................................................................................................1

*Ardis v. Cox*,
  431 S.E.2d 267 (S.C. Ct. App. 1993) ...........................................................22

*In re Asacol Litig.*,
  907 F.3d 42 (1st Cir. 2018) ...........................................................................19

*Banque Franco-Hellenique v. Christophides*,
  106 F.3d 22 (2d Cir. 1997) ...........................................................................23

*Barr v. Dyke*,
  49 A.3d 1280 (Me. 2012) ...............................................................................23

*Beijing Metals Corp. v. Am. Bus. Ctr., Inc.*,
  993 F.2d 1178 (5th Cir. 1993) ......................................................................23

*Belfiore v. Procter & Gamble*,
  311 F.R.D. 29 (E.D.N.Y. 2015) ....................................................................14

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020) ..........................................................................30

*Bledsoe v. Capital One Auto Fin.*,
  2016 WL 1270206 (S.D. Ind. Mar. 31, 2016) ...........................................25

*Blondell v. Littlepage*,
  413 Md. 96 (2010) ..........................................................................................23

*Brown v. Broadway Lumber Co.*,
  508 N.E.2d 1170 (Ill. Ct. App. 1987) ..........................................................23

*Chowning v. Kohl's Dep't Stores, Inc.*,
  735 F. App'x 924 (9th Cir. 2018) .................................................................19

*Cincinnati Life Ins. Co. v. Mickles*,
  148 S.W.3d 768 (Ark. Ct. App. 2004) .........................................................23

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ...........................................................................4, 5, 16, 19

*In re Coudert Bros. LLP*,
   673 F.3d 180 (2d Cir. 2012).................................................................22

*Dandong v. Pinnacle Performance Ltd.*,
   2013 U.S. Dist. LEXIS 150259, 2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013)....................13

*DCCI, LLC v. Keith*,
   2014 WL 1269696 (D. Or. Mar. 26, 2014).................................................23

*Dungan v. Acad. at Ivy Ridge*,
   249 F.R.D. 413 (N.D.N.Y, 2008).............................................................29

*In re Facebook Advert. Litig.*,
   282 F.R.D. 446 (N.D. Cal. 2012)............................................................28

*Feld v. Idaho Crop Improvement Ass'n*,
   895 P.2d 1207 (Idaho Sup. Ct. 1995).......................................................25

*In re Fyre Festival Litig.*,
   2020 U.S. Dist. LEXIS 233484, 2020 WL 7318276
   (S.D.N.Y. Dec. 11, 2020) ......................................................11, 12, 13, 26

*Fox v. Pollack*,
   181 Cal. App. 3d 954 (1986) ...............................................................25

*Gianino v. Alacer Corp.*,
   846 F. Supp. 2d 1096 (C.D. Cal. 2012) ........................................21, 22, 23, 24, 26

*Goehring v. Chapman Univ.*,
   17 Cal. Rptr. 3d 39 (2004) ..................................................................25

*Golt v. Phillips*,
   308 Md. 1 (1986) ..........................................................................18

*In re Grand Theft Auto Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) ............................................................22

*Hallowell v. Citaramanis*,
   88 Md. App. 153-154 (1992) ................................................................28

*Haralson v. E.F. Hutton Group, Inc.*,
   919 F.2d 1014 (5th Cir. 1990) ..............................................................23

*Hasemann v. Gerber Prods. Co.*,
   331 F.R.D. 239 (S.D.N.Y. 2019), *aff'g* 2019 U.S. Dist. LEXIS 28770.................19, 21, 26

*Highlands Ins. Co. v. Hobbs Group. LLC*,
   373 F.3d 347 (3d Cir. 2004).................................................................25

*Hughes v. The Ester C Co.,*
  317 F.R.D. 333 (E.D.N.Y. 2016) ............................................................21, 22, 25, 26

*Hunt v. Sherrill,*
  15 So.2d 426 (MI 1943) .............................................................................................24

*Hunt v. United States Tobacco,*
  538 F.3d 217 (3d. Cir. 2008) (PA law) ......................................................................28

*Hydro Inv'rs, Inc. v. Trafalgar Power Inc.,*
  227 F.3d 8 (2d Cir. 2000) ...........................................................................................25

*Johnson v. Nextel Communs., Inc.,*
  780 F.3d (2d Cir. 2015) .......................................................................16, 20, 21, 26

*Kearney v. BMW Aktiengesellschaft,*
  2018 U.S. Dist. LEXIS 147746, 2018 WL 147746 (D.N.J. Aug. 29, 2018) ...................23, 25

*Kincaid v. SouthTrust Bank,*
  221 S.W.3d 32 (Tenn. Ct. App. 2006) .......................................................................22

*Korea Supply Co. v. Lockheed Martin,*
  29 Cal. 4th 1134 (2003) .............................................................................................28

*Kwikset Corp. v. Superior Ct.,*
  51 Cal. 4th 310 (Ca. 2011) .........................................................................................27

*Lama Holding Co. v. Smith Barney, Inc.,*
  646 N.Y.S. 2d 76 (Ct. App. 1996) ..............................................................................24

*Lee v. Luxottica Retail N. Am., Inc.,*
  65 Cal. App. 5th 793 (2021) .......................................................................................28

*Lewis Tree Serv. Inc., v. Lucent Techs., Inc.,*
  211 F.R.D. 228 (S.D.N.Y. 2002) ................................................................................21

*In re LifeUSA Holding Inc.,*
  242 F.3d 136 (3d Cir. 2001) .......................................................................................26

*Marquis Towers, Inc. v. Highland Grp.,*
  593 S.E.2d 903 (Ga. Ct. App. 2004) ..........................................................................25

*Maywalt v. Parker & Parsley Petroleum Co.,*
  67 F.3d 1072 (2d Cir. 1995) .......................................................................................27

*Mazzei v. Money Store,*
  829 F.3d 260 (2d Cir. 2016) .......................................................................................26

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008)................................................................9, 29

*Miller v. State, Dep't of Envtl. Conservation*,
  353 P.3d 346 (Ak. 2015)..........................................................................25

*Milliken v. Jacono*,
  60 A.3d 133 (Pa. Super. 2012)................................................................22

*Novell v. Migliaccio*,
  724 N.W.2d 703 (Wis. 2006)....................................................................25

*Ostreyko v. B. C. Morton Org., Inc.*,
  310 So. 2d 316 (Fla. Dist. Ct. App. 1975)..............................................25

*Price v. Philip Morris, Inc.*,
  848 N.E.2d 1 (Ill. App. 2005)..................................................................24

*Prof'l Serv. Indus., Inc. v. Kimbrell*,
  834 F. Supp. 1289 (D. Kan. 1993)...........................................................23

*RD & J Props. v. Dalton Enters.*,
  600 S.E. 2d 492 (N.C. Ct. App. 2004)......................................................22

*Riley Hill, Inc. v. Tandy Corp.*,
  82 Or. App. 458 (1986).............................................................................23

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Assn.*, 55 Cal. 4th
  1169 (2013)...............................................................................................23

*In re Rail Freight Fuel Surcharge Antitrust Lit.*,
  934 F.3d 619 (D.C. Cir. 2019)..................................................................19

*In re Rhone-Poulenc Rorer, Inc.*,
  51 F.3d 1293 (7th Cir. 1995) ...................................................................21

*Rider v. Uphold HQ Inc.*,
  2023 U.S. Dist. LEXIS 29617, 2023 WL 2163208 (S.D.N.Y. Feb. 22, 2023).........................2

*Ries v. Ariz. Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012)..............................................................14

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015).......................................................................5

*Rodriguez v. It's Just Lunch, Intern.*,
  300 F.R.D. 125 (S.D.N.Y. 2014) ........................................................12, 13

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ........................................................................14

*Simmons v. Author Solutions, LLC*,
    2015 U.S. Dist. LEXIS 85868, 2015 WL 4002243 (S.D.N.Y. 2015)..................8, 9

*Sitrick v. Citigroup*,
    2009 WL 1298148 (C.D. Cal. Apr. 30, 2009) .........................................................23

*South County v. First W. Loan Co.*,
    871 S.W.2d 325 (Ark. 1994)...................................................................................25

*Starr-Gordon v. Mass. Mut. Ins.*,
    2006 WL 3218778 (E.D. Cal. Nov. 7, 2006)..........................................................28

*Stockroom, Inc. v. Dydacomp Dev. Corp.*,
    941 F. Supp. 2d 537 (D.N.J. 2013) .......................................................................23

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007)....................................................................................8

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)............................................................................................19

*Tropical Sales Corp. v. Yext, Inc.*,
    14 Civ. 7582 (JFK), 2017 U.S. Dist. LEXIS 38913 (S.D.N.Y. Mar. 17, 2017) .....................13

*Vaccariello v. XM Satellite Radio, Inc.*,
    295 F.R.D. 62 (S.D.N.Y. 2013) .............................................................................16

*In re Vizio Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................................................................25

*Voilas v. GMC*,
    170 F.3d 367 (3d Cir. 1999)...................................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)............................................................................................4, 17

*Walters v. Vitamin Shoppe*,
    2018 U.S. Dist. LEXIS 89081, 2018 WL 2424132 (D. Or. May 8, 2018) .............................24

*Wang v. Tesla, Inc.*,
    338 F.R.D. 428 (E.D.N.Y. 2021) ...........................................................................20

*Watson v. Jones*,
    25 So. 678 (Fla. 1899).............................................................................................25

*Zeiger v. WellPet LLC,*
  526 F. Supp. 3d 652 (N.D. Cal. 2021) ...................................................................19

**Statutes**

73 Pa. Stat. § 201-9.2(a) ....................................................................................18, 28

Ariz. Rev. Stat. Ann. § 12- 543(3) .............................................................................24

Cal. Bus. & Prof. Code § 17204 ...............................................................................18

Cal. Code Civ. Proc. § 338(d) ...................................................................................24

Idaho Code § 5-218(4) ...............................................................................................24

Iowa Code § 614.1(4) .................................................................................................24

Ky. Rev. Stat. § 413.120(11) .....................................................................................24

Md. Code Com. Law § 13-101(c)-(d) ........................................................................28

Md. Code Com. Law § 13-408(a) ..............................................................................18

Mo. Rev. Stat. § 516.120(5) .......................................................................................24

N.C. Gen. Stat. § 1-52(9) ...........................................................................................24

N.J. Stat. Ann. § 2A:14-1 ...........................................................................................24

Ohio Rev. Code § 2305.09(c) .....................................................................................24

S.C. Code § 15-3-530(5) .............................................................................................24

S.D. Codified Laws § 15-2-13(6) ...............................................................................24

Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) ............................................................24

**Rules**

Federal Rule of Civil Procedure 23 .....................................................................1, 4, 19

Federal Rule of Civil Procedure 23(a) .................................................................2, 26

Federal Rule of Civil Procedure 23(a)(4) ...................................................................27

Federal Rule of Civiil Procedure 23(b) ...............................................................4, 16

Federal Rule of Civil Procedure 23(b)(2) ..................................................................30

Federal Rule of Civil Procedure 23(b)(3) ...................................1, 4, 16, 19, 21, 24, 25, 26

Federal Rule of Civil ProcedureRule 23(c)(4)...................................................................2, 29

N.Y. CPLR 213(8) ..............................................................................................................24

**Treatises**
7A Wright et al., Fed. Prac. & Proc. § 1780.1 (3d ed. 2005)..........................................26

**INTRODUCTION**

This entire case is about ACN, Inc., the entity that sold Plaintiffs the ACN Opportunity and benefited from their involvement.  Instead of suing ACN for their alleged grievances, Plaintiffs commenced this action against President Donald J. Trump ("Mr. Trump"), three of his adult children, and a business entity, incredibly seeking to hold them responsible for Plaintiffs' putative predicament merely because Mr. Trump acted as a celebrity spokesperson for ACN. Plaintiffs offer no plan on how proceed in the absence of ACN, the party that distributed the alleged misrepresentations and with which they contracted, and now seek to certify a nationwide class without satisfying any of the "stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 234 (2013).

Plaintiffs' motion for class certification pays lip service to many of the Rule 23 requirements yet falls woefully short of satisfying those requirements. As an initial matter, Plaintiffs fail to satisfy the requirements of Rule 23(b)(3) because common issues do not predominate. Plaintiffs fail to identify a single common misrepresentation made by Donald J. Trump, Jr, Ivanka Trump, and Eric Trump, requiring this Court to deny certification as to the claims against them. As to the alleged misrepresentations made by Mr. Trump, there is no evidence, much less common evidence, that <u>all</u> putative class members heard the same alleged misrepresentations, or that they uniformly relied upon any such misrepresentations in deciding to sign up with ACN. Given the nature of ACN's business model, where individuals are predominantly introduced to the ACN Opportunity through incumbent ACN Independent Business Owners ("IBOs"), and where marketing and recruitment materials and spokespeople varied over time, Plaintiffs cannot credibly argue, much less meet their burden to demonstrate, that all class members uniformly signed up for ACN *because* of an alleged misrepresentation made by Mr.

Trump. The alleged representations made to prospective IBOs varied as much as the views and motivations of those who received them.

Plaintiffs also fail to proffer any damages model that demonstrates how the alleged "injury" here can be monetized for the putative class. This is unsurprising, as many of IBOs earned income. Some IBOs may not have made money because they decided the ACN Opportunity was not a good fit or they had to pull back their commitment. Because individual issues predominate on these fundamental points, determining whether any person has a viable claim and is entitled to a damages recovery would require individual mini-trials, a death knell to class certification.

In addition, Plaintiffs cannot show that it is possible to manageably try in one class action trial their common law fraud and negligent misrepresentation claims that are governed by 50 different state laws. As there is no presumption of reliance in a case based on alleged misrepresentations,[1] adducing the necessary proofs on a class-wide basis is simply impossible. Plaintiffs have likewise failed to satisfy the requirements of Rule 23(a) because they cannot demonstrate commonality, typicality or adequacy.

Plaintiffs proposed subclasses also fail. Plaintiffs cannot recover the restitution that is the only available remedy under the California statutes they sue under, as they did not pay anything to Defendants. They cannot succeed on their claims under the Pennsylvania and Maryland consumer-protection laws they invoke, which apply only to purchases for home use, not the commercial opportunities offered by ACN. These claims fail in any event because individual issues would still predominate.  For these same reasons, the proposed Rule 23(c)(4) issue class fares no better.

---

[1] *Rider v. Uphold HQ Inc.,* 2023 U.S. Dist. LEXIS 29617, *22, 2023 WL 2163208 (S.D.N.Y. Feb. 22, 2023).

## STATEMENTS OF FACTS[2]

ACN has operated a multi-level marketing company since 1993 in the US and internationally. ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████ Defendants did not sell anything to IBOs or ACN's customers and did not receive any remuneration from ACN's sales thereof.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

---

[2] While page limits preclude responding to all of the inaccurate statements in Plaintiffs' brief ("Plaintiffs' Br."), failure to address same does not constitute a concession as to any disputed facts.

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████ Plaintiffs do not identify any
misrepresentations made by Donald J. Trump, Jr., Ivanka Trump, or Eric Trump or by the Trump
Corporation.

## ARGUMENT

A party seeking to maintain a class action "must affirmatively demonstrate his compliance"
with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). "[A] party must not only be
prepared to prove that there are *in fact* sufficiently numerous parties, common question of law or
fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23, but
must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.*
(emphasis in original). A "rigorous analysis" is necessary to determine whether each Rule 23
requirement has been satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

I.      **PLAINTIFFS DO NOT SATISFY THE REQUIREMENTS FOR CLASS
        CERTIFICATION UNDER RULE 23(B)(3)**

   A.   **Numerous Substantive Issues of Law and Fact Predominate that Cannot Be
        Proven by Generalized Proof, Rendering a Class Action Trial Unmanageable**

"What matters to class certification . . . is not the raising of common 'questions'–even in
droves–but, rather, the capacity of a classwide proceeding to generate common answers apt to
drive the resolution of the litigation. Dissimilarities within the proposed class are what have the
potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350. The
predominance requirement is satisfied only "if resolution of some of the legal or factual questions
that qualify each class member's case as a genuine controversy can be achieved through
generalized proof, and if these particular issues are more substantial than the issues subject only

to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (reversing grant of class certification because the district court misapplied *Comcast* by failing to "evaluate whether the individualized damages questions predominate over the common questions of liability"). As set forth below, resolution of many of the factual and legal issues as to each putative class member's case cannot be achieved though generalized proof. Issues subject to individualized proof predominate here.

### 1. The Class Was Exposed to Disparate, Not Uniform, Statements

Plaintiffs contend that all class members were induced to join by several "Fraudulent Statements" (Plaintiffs' Br. p. 1). But potential IBOs were recruited via one-on-one and small group meetings with incumbent IBOs via recruiting pitches the content of which varied widely. Long before Mr. Trump was engaged as a spokesperson for ACN, a very large number of individuals signed up as IBOs, doing so for the same myriad of possible reasons and based on a myriad of representations which continued to exist once Mr. Trump became a spokesperson.

Critically, even Mr. Trump's statements varied during the course of his roughly nine-year relationship with ACN, making it virtually impossible to identify common misrepresentations that were the reason all IBOs decided to sign contracts with ACN. ███████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

---

[3] ███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ Plaintiffs do not meaningfully tackle these variations, much less attempt to analyze which the statements were heard, by whom, and which listeners relied on them. It is impossible to identify which IBOs heard and relied on which statements on a class-wide basis. In short, it is not enough to say that IBOs joined because of Mr. Trump's role as a spokesperson; the IBOs need to have uniformly relied on the same alleged misrepresentation. Plaintiffs have not demonstrated such class-wide reliance and the record refutes it.

Even if any alleged common exposure could be established through common proof (it cannot), a common *impact* (if any) of these statements cannot be presumed. The factors that influenced a decision by one class member to join after hearing a certain representation were likely different from someone induced to join at another time as a result of exposure to other statements by ACN, by others that recruited them, and/or by Mr. Trump. For example, some class members may have heard ACN and/or Mr. Trump promote the videophone and may have viewed the opportunity to sell that product as an important reason to sign up, some may have heard the same content and not cared about the videophone, ██████████████████████████ and others

may never have heard about the videophone at all. Other class members may have been influenced

only by clearly non-actionable statements ████████████████████████████████████████

████████████████████████████████████████████████

    ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

    Plaintiffs speculate without evidence that all class members were misled by statements that

led individuals to believe Mr. Trump was not being paid for being a spokesperson. Plaintiffs' Brief

pp. 7-8, 14. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████ The only common

theme is that every IBO took away something different (if anything at all) from Mr. Trump's

multiple statements at issue and ACN's marketing. Since Plaintiffs cannot establish uniformity on

---

[4] ████████████████████████████████████████████████████
████████████████████████████████████████ Any conference attendees who
relied on Mr. Trump would have relied on different representations than individuals who only
heard comments suggesting that Mr. Trump was acting for non-monetary reasons.

this fundamental issue as to themselves, they surely cannot do so across a nationwide class.

Moreover, many of the statements cannot be accurately characterized as actionable representations. The use of sales talk and puffery cannot support a consumer fraud claim. ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ and praising direct selling while stating "I've experienced the opportunity that exists when you're able to jump ahead of the curve and ACN gives you that opportunity" (SAC ¶ 107) are not actionable. *See Time Warner Cable, Inc. v. DIRECTV, In*c., 497 F.3d 144, 159 (2d Cir. 2007) ("Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language. Such sales talk, or puffing, as it is commonly called, is considered to be offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer.". . .").

*Simmons v. Author Solutions, LLC*, 2015 U.S. Dist. LEXIS 85868, *26-27, 2015 WL 4002243 (S.D.N.Y. 2015), is instructive. There, the court denied a motion to certify a class claiming misrepresentations because the defendant's "statements about its marketing services straddle the line between representation and puffery, making it all the more difficult to conclude that generalized proof could demonstrate that these statements would likely deceive a member of the public." The same logic applies here. Plaintiffs cannot establish which statements by Mr. Trump that they and the other IBOs heard or relied on. Again, exposure to various statements would have varied widely depending on when they joined and what marketing they were exposed to. Those exposed only to puffery of the sort largely at issue would not have any viable claim.

Again, class members' exposure to a wealth of other information provided by ACN under varying circumstances precludes a finding of predominance. *Id.*, 2015 U.S. Dist. LEXIS 85868, *26. The *Simmons* court found predominance lacking because "class members may have read

different parts of [defendant's] website (if they read it at all), and what they read may have been supplemented by any number and manner of telephone or email conversations with AS personnel. Whether particularized AS representations would be likely to deceive any given class member, in other words, is not susceptible to generalized proof." *Id.*

In sum, determining what, if any, representations were heard and relied upon by putative class members and whether they were misled and acted in reliance would require time-consuming individual mini-trials, which is inconsistent with proceeding as a class action.

### B.   Plaintiffs Cannot Prove Causation/Reliance or Materiality on a Class Basis

Plaintiffs' common law misrepresentation claims require proof of reliance or at least injury "as a result of" Defendants' conduct. *See* Pt. I(B). Certification is inappropriate because reliance is too individualized and not susceptible to common proof. *McLaughlin v. Am. Tobacco Co., 5*22 F.3d 215, 224-25 (2d Cir. 2008). Plaintiffs cannot rely on a presumption of reliance, yet they have no class-wide evidence of reliance. Plaintiffs argue that prospective IBOs were induced to join by Mr. Trump's representations about ACN via various media at different times: specifically, on Opportunity Discs, two Celebrity Apprentice episodes, several magazine articles and 14 presentations at ACN conferences.  The circumstances under which each IBO joined, their reasons for joining, and what representations, if any, they relied on at different times over years would necessarily be disparate.

Plaintiffs' theory of the case is undermined by the variations in the content of ACN's representations at the various meetings and presentations by ACN and various IBOs that may have led IBOs to sign up. That many IBOs would have heard brief generalized statements by Mr. Trump in videos played at introductory meetings does not suggest that such brief content would have been a factor in the decision for many or most, much less the deciding factor, given the predominance of non-Trump content.[5] Merely because three cherry-picked plaintiffs parrot that the "Trump endorsement" was critical to them does not show it was equally influential for all of the hundreds of thousands of IBOs. There is no class-wide evidence showing Mr. Trump's statements were material to all IBOs' decisions to enroll or stay with ACN. Evaluation of what led each IBO to decide to become an IBO will require an individualized inquiry.[6]

The decision in *In re Fyre Festival Litig.*, 2020 U.S. Dist. LEXIS 233484, *12, 2020 WL 7318276 (S.D.N.Y. Dec. 11, 2020), is on point. The court there denied plaintiff's motion to certify a class of individuals who purchased tickets to the infamous Fyre Festival based on the promoter's allegedly fraudulent statements. The court found that questions of law or fact common to class members did not predominate:

> The fraud claim requires plaintiffs to identify knowingly false statements made by [defendant] and demonstrate individual reliance on such statements. Different putative class members acted in reasonable reliance upon *different statements at different times. Some may have been influenced by puffery while others may have been deceived by factual misrepresentations.* Some bought tickets early but others purchased tickets much later in the evolving marketing process. Some cancelled travel plans early and received refunds; others did not.



5 ███████████████████████████████████████████████████████

6 ███████████████████████████████████████████████████████
███████████████████████████████████████ Necessarily, active IBOs who had already paid to enroll were not induced to join by statements they heard after-the-fact.

> Plaintiff would *have to prove that each individual plaintiff heard or saw the fraudulent statement and relied on it in purchasing tickets or making travel plans*, as distinguished from individuals who purchased tickets merely because their friends or acquaintances had decided to attend. Because the [complaint] alleges fraudulent statements made across several years of planning the festival, through different mediums such as Instagram, Youtube, and the festival website, this inquiry would be different for each plaintiff. Some statements, such as those contained in a 'pitch deck,' may have been seen by financial backers and promoters but not by many of the class members.

*Id.* at *18-19 (emphasis and brackets added). Similarly here, Mr. Trump made a number of different statements at different times in different settings and during the same period IBOs heard multiple other statements via ACN's own marketing and by ACN representatives at meetings that necessarily impacted enrollment decisions. ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Some IBOs may have disliked Mr. Trump or, like McKoy, did not know anything about him; some may have ignored his statements because they did not value statements by a celebrity spokesperson. ████████████████████ It defies common sense to argue that every IBO uniformly heard and relied on the same statements by Mr. Trump when signing up for ACN (particularly since ACN enrolled IBOs successfully before and after Mr. Trump was its spokesperson). In sum, it is undeniable that the factors that led IBOs to sign up are heterogeneous.

Plaintiffs cannot cite a single decision that granted class certification that is similar to this one. They rely principally on *Rodriguez v. It's Just Lunch, Intern.,* 300 F.R.D. 125 (S.D.N.Y. 2014). That case is distinguishable. A class was certified because the defendant matchmaking service's uniform sales pitch via one-on-one marketing calls to "prospective customers about multiple matches" were "so fundamental that it is reasonable to infer not only that defendants intended for their misrepresentations to induce plaintiffs' reliance, but that plaintiffs in fact relied

on those representations in becoming customers." Here, by contrast, potential IBOs heard varied statements through different means from ACN as well as, to a lesser extent, Mr. Trump over many years. As the *Fyre* court pointed out in distinguishing *Rodriguez*, the defendant's "misrepresentations were decidedly not uniform. They were made across several years, through various outlets, by different people, and to different audiences. Common evidence will not suffice to demonstrate reliance in this circumstance." 2020 U.S. Dist. LEXIS 233484, *19-20. So too here, reliance is not susceptible to common proof given the individual questions as to what representations were made and by whom and whether they were material to the recipients.

*Dandong v. Pinnacle Performance Ltd.*, 2013 U.S. Dist. LEXIS 150259, *5-6, 2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013), is likewise not on point. The plaintiffs there were allegedly defrauded when defendants sold multiple series of credit-linked notes via brochures that failed to reveal the true nature of the financial arrangement. The court held that reliance could be presumed on a class-wide basis because a reasonable investor would not have purchased if the brochures had revealed that the notes were risky. ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████ If anything, Mr. Trump's puffery was simply an additional marketing pitch and many IBOs joined without relying on his statements. Class certification is appropriate only if the court can determine that "a reasonable factfinder [could] conclude beyond a preponderance of the evidence that each individual plaintiff relied on the defendant's [uniform] representations.'" *Dandong,* at *32 (brackets in original)). Because the record here confirms that the representations were not uniform and numerous other marketing factors were at play, Plaintiffs cannot possibly prove universal reliance. *See, e.g., Tropical Sales Corp. v. Yext, Inc.*, 14 Civ. 7582 (JFK), 2017 U.S. Dist. LEXIS 38913, *40-41 (S.D.N.Y. Mar. 17,

13

2017) (denying class certification for fraud claims based on the idiosyncratic personal choice involved in deciding whether to subscribe to defendant's online search services such that individual issues of reliance would predominate).

In *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 538-39 (N.D. Cal. 2012), class certification was appropriate because every class member saw virtually the same allegedly misleading beverage labels with only slight variations. The court also noted that under the California UCL statute at issue plaintiffs could obtain restitution without proof of reliance. Here, by contrast, restitution is unavailable from these Defendants (*see* Pt. I(B) below), and class members were exposed to varying marketing information from ACN and from Mr. Trump such that there is no class-wide reliance on one uniform statement.  *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015), similarly involved the defendant's uniform advertisement that its product grew grass that was 50 percent thicker with half the water compared to ordinary seed (and certified classes only under two states' laws); liability turned on whether the product was actually worthless. Here it is beyond dispute that the ACN Opportunity was not worthless for all IBOs. Also, unlike the Plaintiffs here, the *Scotts* plaintiff offered a viable damages model in support of the class certification motion. *Id.* at 414.[7]

Additionally, the cited decisions are distinguishable because the plaintiffs in those cases had sued the companies that made misrepresentations about their own products. By contrast, Plaintiffs here seek to hold responsible only a spokesperson while ignoring ACN's central role in authorizing all the representations at issue and its retention of the spokesperson.

████████████████████████████████████

---

[7] Both *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 398, 410-11 (E.D.N.Y. 2022), and *Belfiore v. Procter & Gamble,* 311 F.R.D. 29, 62 (E.D.N.Y. 2015),  are distinguishable because they involved ad campaigns and labels with uniform content which have no counterpart here.

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████

Plaintiffs have not offered evidence that Mr. Trump's representations were the driver of any class losses. Plaintiffs' theory is that most ACN IBOs did not make money and had no reasonable prospect of making money. ████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████

*Vaccariello v. XM Satellite Radio, Inc.,* 295 F.R.D. 62 (S.D.N.Y. 2013), is analogous. The court there denied certification to a putative class of satellite radio subscribers whose subscriptions were automatically renewed on the grounds that there was no injury on a class-wide basis because some subscribers requested, wanted or approved renewals. *Id.* at 68-69. Similarly here, those who found their IBO experience rewarding would not have sustained the same injury (or, indeed, any injury) as class members who claim to be damaged. In sum, the putative class is untenable because it necessarily encompasses IBOs who made money and found their experience valuable, IBOs who were not exposed to or not influenced by Defendants' statements, and IBOs influenced by various different statements including ACN's (not Defendants') marketing statements.

### C.   Plaintiffs Fail to Provide a Model to Determine Damages on a Class-wide Basis and Allocate Recovery Among Defendants in Violation of *Comcast*; There Are Variations in Evidence as to What Individuals Will Need to Prove Damages

The Supreme Court has clarified that plaintiffs seeking certification have the burden to supply a class-wide damages model and actually "prove" that individualized questions—including questions relating to damages—do not predominate over common questions. *Comcast,* 569 U.S. at 33. Plaintiffs must submit "evidentiary proof" sufficient to withstand "rigorous analysis" that their damages are "in fact" capable of calculation in a manner conducive to class treatment. *Id.* "To satisfy predominance under Rule 23(b), Plaintiffs must put forth a damages model that measures "only those damages attributable to [their] theory" of liability.'" *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 445 (E.D.N.Y. 2021) (quoting *Comcast*, 569 U.S. at 35). "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.* at 35. When, as here, "there are significant individualized questions going to liability [] the need for individualized assessments of damages is enough to preclude 23(b)(3) certification." *Johnson,* 780 F.3d at 138-

39 (citation and internal quotations omitted).

Plaintiffs' motion should be denied because their liability case is dubious and because they fail to offer proof of a common injury attributable to each Defendant (*Dukes*, 564 U.S. at 356), or a method of how to attribute any injury to Defendants. Plaintiffs' premise is that "all persons who made payments to ACN" who allegedly did not make money should be allowed to collect from a celebrity spokesperson and four related non-ACN defendants all "payments" that each made to ACN. Notice, Dkt. 530 at 2. That is not a model. ███████████████████████ ████████████████████ Plaintiffs' motion does not provide a single sentence addressing how they propose to prove damages on a class basis or to allocate damages among the five defendants for every IBO's payments to non-party ACN, even though every class member's relationship was solely with ACN.

Plaintiffs argue that damages is a common issue because they can look at "ACN's internal records" which show "common evidence" of "injuries." Plaintiffs' Brief pp. 15, 21. Reference to the records does not provide the mandatory damages model. The records would only show what every class member paid to ACN. Plaintiffs assume without explanation that Defendants are liable for all the "payments" made to ACN by every IBO who allegedly lost money. But Defendants will raise individual defenses as to each person, including the argument that only ACN could be held liable for inducing prospective IBOs to join. Plaintiffs seek "those damages attributable to [their] theory" of liability which cannot include ACN. But they are seeking all "payments to ACN" as if ACN were a defendant. Plaintiffs also assume conveniently that every IBO who did not make money was in that position because they were misled. In fact, success at selling services is never guaranteed, as ACN cautioned its IBOs. Many IBOs may have decided early on that they were not well suited for selling products. Some may have never made a serious effort to succeed. ███

17

▮▮▮▮▮▮▮ Such persons should not be entitled to a windfall based on the false premise that the claimed shortfall in earnings occurred solely due to representations they likely never relied on and quite possibly never heard.

Additionally, Plaintiffs have not cited any authority showing that a celebrity spokesperson can be held solely liable for transactions that class members entered into with other contracting parties. Plaintiffs cannot proceed on a class basis without a model to show how they can attribute liability and damages to each of the five Defendants and to what extent ACN rather than those Defendants is liable.

Plaintiffs' common law and statutory claims enable them to recover only actual damages they can prove were suffered due to the misrepresentations caused by a particular Defendant.[8] They have no common evidence showing how the members of the putative class were injured solely by Defendants as opposed to by ACN. Under Pennsylvania law, plaintiffs can collect "actual damages" that were caused by each Defendant. 73 Pa. Stat. § 201-9.2(a). Under Maryland law, any payment is "purely compensatory." *Golt v. Phillips*, 308 Md. 1, 12 (1986) ("in determining the damages due the consumer, we must look only to his actual loss or injury caused by the unfair or deceptive trade practices").

Plaintiffs also have not supplied a model for how they can be entitled to a full refund for all payments to ACN. They would need class-wide evidence to show that the ACN Opportunity

---

[8] *See* Point I(C). *See also* 73 Pa. Stat. § 201-9.2(a) ("Any person who purchases or leases goods or services … and thereby suffers any ascertainable loss of money or property, real or personal, *as a result of* the use or employment *by any person* of a method, act or practice declared unlawful…may bring a private action to recover actual damages"); Md. Code Com. Law § 13-408(a) ("any person may bring an action to recover for injury or loss sustained by him *as the result of* a practice prohibited by this title"); Cal. Bus. & Prof. Code § 17204 (an action can be brought by a "person who has suffered injury in fact and has lost money or property *as a result of* the unfair competition").

had no value whatsoever to every single putative class member because "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). That evidence does not exist. It is conceded that many IBOs financially benefited. Plaintiffs fail to offer any suggestion of how that problem can be solved. It cannot be solved. *See In re Asacol Litig.*, 907 F.3d 42, 51-58 (1st Cir. 2018) (reversing certification because "around 10%" of the proposed class was uninjured); *In re Rail Freight Fuel Surcharge Antitrust Lit.*, 934 F.3d 619, 624-25 (D.C. Cir. 2019) (reversing certification based on existence of uninjured class members). Here, the cacophony of harmed and unharmed individuals cannot establish standing and predominance under Rule 23.[9]

In sum, Plaintiffs do not offer any valid damages model or provide any method for proving damages and other elements of their claims with common evidence. They have not met their burden to provide a damages model that is "capable of proof at trial through evidence that [was] common to the class rather than individual to its members," and have not shown that damages are "measurable on a class-wide basis through use of a common methodology." *Comcast*, 569 U.S. at 30. The lack of a "common method" shows that damages assessments and other issues with proving the fact of any damages will predominate over common questions. *E.g., Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 675 (N.D. Cal. 2021) (denying certification under Rule 23(b)(3) because the plaintiff "has not… put forward an admissible damages model or shown that he can.").

---

[9] Plaintiffs might have tried to present a price premium model which in some cases may present a valid measure of damages. *E.g., Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 258 (S.D.N.Y. 2019). Each class member would need to show that their entire involvement with ACN was worthless. This is an individualized inquiry since what may be worthless to some is not worthless to everyone. *Chowning v. Kohl's Dep't Stores, Inc.*, 735 F. App'x 924, 925 (9th Cir. 2018) ("Chowning admits that she received some value from the articles of clothing and, thus, rescission is not available."). The ACN Opportunity was not worthless to many putative class members ████ ██████

### D.     Variations In State Law on Common Law Misrepresentation Claims Swamp Common Questions of Law and Make Trial Unmanageable

"Variations in state law. . . affect the feasibility and purported benefit of trying the [] claims on a classwide basis." *Johnson v. Nextel Communs., Inc.*, 780 F.3d, 128, 147 (2d Cir. 2015) (reversing grant of class certification). As an initial matter, Plaintiffs' effort to certify a class covering all 50 states fails because they fail to satisfy their burden to identify what "common law" applies.  Plaintiffs reside in three states (McKoy - CA, SAC ¶ 21; Frazier -MD, ¶ 23; Chadwick - PA, ¶ 25). This action was filed in New York, and it only remains in federal court based on diversity since the RICO claim was dismissed. Plaintiffs fail to clarify whether their claims are asserted under one or all of those four states' common law or under the laws of every state and fail to show via a detailed analysis how the claims under those law are sufficiently similar to try in one class action trial. It is problematic when, as here, "Plaintiffs' causes of action are identified merely by their general monikers" and where "Plaintiffs identify neither the various applicable state statutes nor their respective elements" and also "fail to plead or suggest that the various state-law elements are sufficiently similar such that a class action is the superior method of adjudicating the claims and that any legal differences do not predominate common legal questions." *Wang v. Tesla, Inc.*, 338 F.R.D. 428, 442 (E.D.N.Y. 2021).

Given that members of the putative class reside around the country, the Court would have to apply the laws of 50 states. That is not feasible because Plaintiffs have no way of meeting the predominance requirement due to the lack of a common legal framework for the claims across the class. The myriad of variations in state laws for common law claims are regularly held to preclude certification. For example, the Southern District refused to certify a nationwide consumer class of purchasers alleging fraud because "a nationwide class action in which plaintiffs raise claims of fraud would require the application of the law of at least fifty jurisdictions and would make class

action inappropriate" given that "[t]he elements of fraud vary greatly from state to state, with respect to elements including mitigation, causation, damages, reliance, and duty to disclose." *Lewis Tree Serv. Inc., v. Lucent Techs., Inc.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002). Similarly with respect to negligent misrepresentation, "there are sufficiently significant variations [among] the laws of the fifty states to defeat Rule 23(b)(3)'s predominance requirement," not the least of which is that certain states do not recognize that claim. *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 352 (E.D.N.Y. 2016). *See also Hasemann*, 331 F.R.D. at 253, *affirming* 2019 U.S. Dist. LEXIS 28770, at *47 (E.D.N.Y. Feb. 20, 2019); . *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1103 (C.D. Cal. 2012) (both denying certification).   The "common law" that Plaintiffs seek to apply is not common.[10]

Although Plaintiffs admit the elements of these claims "vary," they offer no plan to manage the variations at trial. Plaintiff's Brief pp. 26, 27. A choice-of-law analysis shows that the numerous variations that would need to be adjudicated would swamp any common questions of law, which would render a trial unmanageable.

### 1.   Choice-of-Law Rules Require the Court to Apply 50 State Laws

"When claims in a class action arise under state law—and the class comprises multiple states—the court must consider whether different state laws will apply to different members of the class." *Johnson*, 780 F.3d at 140. "Courts must exercise care in conducting a choice-of-law analysis in a putative Rule 23(b)(3) class action . . . in order to determine whether any conflicts in governing law will overwhelm the ability of the trier of fact meaningfully to advance the litigation through class[-]wide proof." *Id.* at 141.

---

[10]  As Judge Posner explained, certification of a nationwide class asserting tort claims is inappropriate where the laws of 50 states "sing negligence with a different pitch."  *In re Rhone-Poulenc Rorer, Inc.,* 51 F.3d 1293, 1301 (7th Cir. 1995).

A federal district court sitting in diversity generally applies the choice of law rules of the state in which it sits. *In re Coudert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012). Under New York choice of law principles, claims sounding in fraud . . . are governed by the law of the state in which the injury is deemed to have occurred, which is usually where the plaintiff is located." *Id.* (citation and internal quotation marks omitted). Here, because any injury would have occurred in the state in which the person signed up with ACN, class members' claims are governed by the law of their home state. *In re Grand Theft Auto Litig.*, 251 F.R.D. 139, 149 (S.D.N.Y. 2008) (applying law of state of purchase for fraud claims); *Hughes*, 317 F.R.D. at 352 (applying law of 50 states to negligent misrepresentation claim).

### 2. There Are Material Variations in Common Law Fraud and Negligent Misrepresentation Claims Among the 50 States

Certification should be denied because, as shown below, the material variations in the laws of the 50 states fatally undercuts Plaintiffs' ability to show predominate. Distinctions as to the elements of common law fraud claims include the following:

- **Scienter**: There is a split among the states as to whether a defendant must knowingly make a material misrepresentation or whether reckless disregard of the truth of the representation is sufficient. The 19 states that require scienter for a fraud claim include CA, AK, CO, CT, FL, IL, MA, NJ, NY, OR, VT, and WV; 31 states do not require scienter, including AZ, IN, MS, MO, NE, NH, ND, OH, PA, TX, and WY. *Gianino*, 846 F. Supp. 2d. at 1101.[11]

- **Standard of Proof**: There are significant state differences regarding the standard of proof. While some states require a plaintiff to prove a fraud claim by "clear and convincing evidence," including CO, CT, FL, IL, MA, NH, NY, PA, and WV, other states require proof by a "preponderance of the evidence," including AK, CA, DE, IN, NC, RI, TN, TX, and WY. *Gianino*

---

[11] For example, TN requires intentional deception (*Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006)); *RD & J Props. v. Dalton Enters.*, 600 S.E. 2d 492, 498-99 (N.C. Ct. App. 2004) (scienter requires actual knowledge that statement was false). PA and OR require knowledge or reckless disregard of falsity (*Milliken v. Jacono*, 60 A.3d 133, 140 (Pa. Super. 2012); *Huszar v. Certified Realty Co.*, 278 Ore. 29, 32 (1977) (scienter may be shown if the defendant made the statement "recklessly without any knowledge of its truth")). In SC, fraud claims require ignorance. *Ardis v. Cox*, 431 S.E.2d 267, 269 (S.C. Ct. App. 1993).

at 1101.[12]

- **Intent**: At least five states do not require a showing of intent to induce reliance, including AL, CO, TN, VT, and WV. *Id.*

- **Reliance**: States split on whether there needs to be "justifiable reliance" or "reasonable reliance." In Texas, "a plaintiff's reliance on the defendant's fraudulent conduct must be justifiable as well as actual." *Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1025 (5th Cir. 1990). Maryland and California require "justifiable reliance" as well. See *Blondell v. Littlepage*, 413 Md. 96, 119 (2010); *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Assn.*, 55 Cal. 4th 1169, 1183 (2013). In New York, Oregon and Kansas, whether reliance is justified hinges on subjective factors such as the plaintiff's ability to reveal and/or investigate the truth of the fraudulent statement and the relative sophistication of the plaintiff.[13] In cases alleging fraudulent concealment—*i.e.*, nondisclosure in the face of a duty to disclose—other states apply a more objective standard based on whether a "reasonable" or "ordinary" person would have relied.[14] These differences in the "reliance" element are material as "'[j]ustifiable reliance' represents a lesser burden on fraud plaintiffs that what 'reasonable reliance' might imply." *Beijing Metals Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1186 (5th Cir. 1993).[15]

- **Statutes of Limitations**: State statutes of limitations for fraud (and negligent misrepresentation) vary significantly from one to six years: one year (LA); two years (AL, KS, OK, OR-O.R.S. § 12.110(1), PA-Pa. C.S.A. § 5524(7); three years (AZ, CA, CO,  ID, MA, NH,

---

[12] *Compare Riley Hill, Inc. v. Tandy Corp.*, 82 Or. App. 458, 460 (1986) ("Fraud must be proved by clear and convincing evidence."); *Barr v. Dyke*, 49 A.3d 1280, 1286 (Me. 2012) (accord) *with Cincinnati Life Ins. Co. v. Mickles*, 148 S.W.3d 768, 778-79 (Ark. Ct. App. 2004) ("the burden of proof for fraud in a case at law is by the preponderance of the evidence").

[13] *See, e.g.*, *DCCI, LLC v. Keith*, 2014 WL 1269696, at *3 (D. Or. Mar. 26, 2014) (dismissing fraud claim because "fail[ure] to investigate despite being given the opportunity to do so . . . may result in the loss of the right to rely on the seller's representations"); *Banque Franco-Hellenique v. Christophides*, 106 F.3d 22, 26-27 (2d Cir. 1997) (reasonable reliance in "fraud cases under New York law has taken account of the degree to which the truth was accessible to the defrauded person"); *Prof'l Serv. Indus., Inc. v. Kimbrell*, 834 F. Supp. 1289, 1304 (D. Kan. 1993) (dismissing fraud claim where plaintiff had a high degree of sophistication and access to the facts).

[14] *See, e.g., Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013) (New Jersey requires "reasonable reliance"); *Brown v. Broadway Lumber Co.*, 508 N.E.2d 1170, 1176 (Ill. Ct. App. 1987) (reliance requires a determination of "whether the facts were such as to put a reasonable man on inquiry"); *Sitrick v. Citigroup*, 2009 WL 1298148, at *18 (C.D. Cal. Apr. 30, 2009) (reasonable reliance is examined through the lens of a person of "ordinary intelligence").

[15] *See also Voilas v. GMC*, 170 F.3d 367, 377 (3d Cir. 1999) ("justifiable reliance generally connotes a subjective standard, while 'reasonable reliance' usually suggests an objective standard and, possibly, some measure of a duty to investigate on the part of the claimant"); *Kearney v. BMW Aktiengesellschaft*, 2018 U.S. Dist. LEXIS 147746, *17, 2018 WL 147746 (D.N.J. Aug. 29, 2018) (finding an actual conflict in state laws on the fraud reliance element).

NC, SC,  WA)[16]; four years (FL, NM, OH, OH)[17]; five years (IL, IA, KY, MO)[18]; six years (HI, NJ, NY, SD, VT).[19] *Gianino*, 846 F. Supp. 2d at 1102.[20]

•  **Calculation of Damages**: States apply different methods of calculating damages. *Id.* at 1102. Some states use a "benefit of the bargain" method based upon plaintiff's expectation damages, including AZ, CA, CO, IL, KS, MA, NH, and TX. *Id. E.g., Price v. Philip Morris, Inc.,* 848 N.E.2d 1, 80 (Ill. App. 2005). Some states use an "out of pocket" method which allows a plaintiff to recover only reliance damages, including LA, MN, NY, PA, and WY. *Gianino,* 846 F. Supp. 2d at 1102. *E.g., Lama Holding Co. v. Smith Barney, Inc.,* 646 N.Y.S. 2d 76, 80 (Ct. App. 1996). Other states take a "flexible" approach to calculating damages, including FL, ID, IA, MD, NJ, VT, and WA. *Gianino,* 846 F. Supp. 2d at 1102.[21]

•  **Discovery Rule**: "State law also varies on determining when a plaintiff has actual or constructive notice of fraud." *Walters v. Vitamin Shoppe*, 2018 U.S. Dist. LEXIS 89081,*22, 2018 WL 2424132 (D. Or. May 8, 2018).

### 3.  Further Material Variations for Negligent Misrepresentation Claims

There are likewise "significant variations [among] the laws of the fifty states to defeat Rule

23(b)(3)'s predominance requirement" as to negligent misrepresentation, including that certain

states (e.g., AZ and ID) do not recognize this tort and others restrict it to specific circumstances.

---

[16] *See, e.g.*, Ariz. Rev. Stat. Ann. § 12- 543(3); Cal. Code Civ. Proc. § 338(d); Idaho Code § 5-218(4); N.C. Gen. Stat. § 1-52(9); S.C. Code § 15-3-530(5).

[17] *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 16.004(a)(4); Ohio Rev. Code § 2305.09(c).

[18] *See, e.g.*, Iowa Code § 614.1(4); Mo. Rev. Stat. § 516.120(5); Ky. Rev. Stat. § 413.120(11)

[19] N.J. Stat. Ann. § 2A:14-1; NY CPLR 213(8); S.D. Codified Laws § 15-2-13(6).

[20] Plaintiffs' motion is predicated in part on allegedly actionable statements made too long ago to have constituted fraudulent inducement within any applicable statute of limitations period. For example, Mr. Trump spoke at several ACN meetings from 2006 through 2011 (SAC ¶¶ 140-142, 148). Assuming any representations thereat induced anyone to join (and there is no evidence that a single person was induced to join by anything he said in any live appearance), they would not be actionable because the longest possible statute of limitations would be six years and this action was not filed until October 2018. Docket No. 1. Similarly, statements made on the Celebrity Apprentice in 2008 and 2011 would not be actionable to the extent a class member heard them in those years; at most the statements might be actionable to the extent they were recaptured via brief snippets on an Opportunity Disc sold and viewed during the limitations period. Merriman Tr. 277. Earlier discs would presumably not have circulated during the limitations period. The laborious individualized limitations analysis would be inconsistent with class certification.

[21] Benefit of the bargain damages are more difficult to calculate. *Hunt v. Sherrill,* 15 So.2d 426, 430 (MI 1943).

*Hughes*, 317 F.R.D. at 352 (brackets added).[22] Virginia only recognizes the claim as one for constructive fraud. *Id*. In Indiana the claim applies only as to employer-employee relationships. *Bledsoe v. Capital One Auto Fin.*, 2016 WL 1270206, at *8 (S.D. Ind. Mar. 31, 2016). Arkansas requires that a misrepresentation occur in the course of business and does not require intent to induce reliance. *Miller v. State, Dep't of Envtl. Conservation*, 353 P.3d 346, 348 (Ak. 2015). Georgia requires that the representation be made to a foreseeable person. *Marquis Towers, Inc. v. Highland Grp.*, 593 S.E.2d 903, 906 (Ga. Ct. App. 2004). Wisconsin requires the plaintiff to show belief in the truth of the misrepresentation. *Novell v. Migliaccio*, 724 N.W.2d 703 (Wis. 2006).

Specific critical variations among the states as to this tort are as follows:

- **Duty of Care**. The duty of care owed varies from state to state, depending on the nature of the relationship. For example, New York requires proof of a special relationship and defendant's knowledge that "the information supplied in the representation... [was] desired by the plaintiff for a serious purpose[.]" *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). California requires neither, but does require proof of intent to induce reliance and damages, neither of which are required by New York law. *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (1986).

- **Similar to Fraud or Not**: In Florida, "negligent misrepresentation is considered tantamount to actionable fraud." *Ostreyko v. B. C. Morton Org., Inc.*, 310 So. 2d 316, 318 (Fla. Dist. Ct. App. 1975); *Watson v. Jones*, 25 So. 678, 681–82 (Fla. 1899). Other courts do not require scienter, which is a mandatory fraud element. *Goehring v. Chapman Univ.*, 17 Cal. Rptr. 3d 39, 47 (2004).

- **Positive Assertions v. Omissions**: Some states permit negligent misrepresentation claims in cases involving omissions, while other states require a positive assertion. *See, e.g., In re Vizio Litig.*, 238 F. Supp. 3d 1204, 1230 (C.D. Cal. 2017) ("positive assertion required); *Highlands Ins. Co. v. Hobbs Group. LLC*, 373 F.3d 347, 355 (3d Cir. 2004); *Kearney*, 2018 U.S. Dist. LEXIS 147746, *20 (New Jersey permits claims based on silence or suppression of truth, explaining this itself is a material conflict).

It is evident that Plaintiffs cannot overcome the hurdle that the claims of the "common law" class must be adjudicated under numerous material and outcome-determinative variations in the

---

[22]  *South County v. First W. Loan Co.*, 871 S.W.2d 325, 326 (Ark. 1994); *Feld v. Idaho Crop Improvement Ass'n*,  895 P.2d 1207 (Idaho Sup. Ct. 1995).

law to be applied. The profound "[v]ariations in state law" negate the "feasibility" and "purported benefit of trying the [] claims on a classwide basis." *Johnson*, 780 F.3d at 147. That the laws are nowhere near identical to each other raises "insuperable obstacles to determining liability based on common proof" such that "[t]he application of the different jurisdictions' laws therefore renders individual issues predominant and undercuts the superiority of trying the common issues on a classwide basis." *Johnson*, 780 F.3d at 147-48.[23]

## II. PLAINTIFFS DO NOT SATISFY THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER RULE 23(A)[24]

### A. Plaintiffs Do Not Satisfy the Typicality Requirement

Typicality requires that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of the proposed class. *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016)); *Fyre Festival Litig.,* 2020 U.S. Dist. LEXIS 233484, *16 (typicality not present when the proposed class representative did not identify which statements he heard or saw, when he heard or saw them, or when he acted in detrimental reliance by making purchases; given that ticket purchasers relied on "different statements made over an extended period of time, by several different actors," plaintiff failed to demonstrate that he likely relied upon statements that were typical of those relied upon by the class). Plaintiffs

---

[23] *See also, e.g.*, *Gianino*, 846 F. Supp. 2d at 1102; *Hughes*, 317 F.R.D. at 352 (declining to certify nationwide negligent misrepresentation claims because the laws of fifty states have "material" differences); *In re LifeUSA Holding Inc.*, 242 F.3d 136, 147 (3d Cir. 2001) (predominance not satisfied where the law of 48 different jurisdictions applied in suit alleging negligent and fraudulent misrepresentations); *Hasemann*, 2019 U.S. Dist. LEXIS 28770, at *47 (questions of law predominate where multiple states' laws would apply to fraud and negligent misrepresentation claims). *See generally* 7A Wright et al., Fed. Prac. & Proc. § 1780.1 (3d ed. 2005) ("As a matter of general principle, the predominance requirement of Rule 23(b)(3) will not be satisfied if . . . class claims must be decided on the basis of the laws of multiple states.").

[24] Plaintiffs' failure to show commonality is evident since, as demonstrated, they cannot prove predominance. Defendants do not contest numerosity.

cannot show with common evidence whether the would-be class members were injured by the same statements and course of conduct as those alleged by Plaintiffs or that the would-be class suffered the same or similar injury as the class representatives. Again, the three Plaintiffs were unable to recall any of the specific statements that the SAC contends they recalled and relied upon. *See* p. 7 above. Their claimed reliance cannot be typical of a class that was exposed to varying statements by ACN and its representatives and to a lesser extent by Mr. Trump over the years.

### B.   Plaintiffs Do Not Satisfy the Adequacy Requirement

Under Rule 23(a)(4), "[c]lass certification may properly be denied where, as here, the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077-1078 (2d Cir. 1995). ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████ Hence, there is no real check on Plaintiffs' counsel.

### III.   PLAINTIFFS' PROPOSED STATE SUBCLASSES SHOULD NOT BE CERTIFIED

The Court should not certify the three state subclasses. The California False Advertising Law and Unfair Competition Law, the Pennsylvania Unfair Trade Practices and Consumer Protection Law and the Maryland Consumer Protection Act all require Plaintiffs to demonstrate reliance or "injury as a result" of the allegedly deceptive conduct, raising the same individual issues highlighted above. *Kwikset Corp. v. Superior Ct.,* 51 Cal. 4th 310, 322-326 (Ca. 2011); *Hunt v. United States Tobacco,* 538 F.3d 217, 222-225 (3d. Cir. 2008) (PA law); *Hallowell v.*

*Citaramanis,* 88 Md. App. 153-154, 160, 166 (1992).

Plaintiffs ignore the difference between restitution and damages. Under the California UCL and FAL, "[t]he only monetary remedy available … is restitution. … Damages are not recoverable." *Lee v. Luxottica Retail N. Am., Inc*., 65 Cal. App. 5th 793, 800 (2021). "The object of restitution … is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Id.* at 801. But the California plaintiff does not meet the burden to offer a model of how the putative California subclass could recover from Defendants who they never paid any funds in which they have an "ownership interest"; *i.e.*, funds paid to ACN.  Defendants cannot be required to "restore" funds the IBOs paid only to ACN. *Korea Supply Co. v. Lockheed Martin*, 29 Cal. 4th 1134, 1149 (2003) (a UCL plaintiff cannot sue a stranger to the transaction at issue absent a "vested" or "ownership interest" in money held by the defendant to provide a basis for recoverable "restitution").[25]

Fatally for the other two proposed subclasses, Plaintiffs cannot prove their claims under the circumscribed Pennsylvania and Maryland consumer laws under which they seek certification. Pennsylvania requires that a UTPCPL claim be based on "goods or services primarily for personal, family or household purposes." 73 Pa. Cons. Stat. § 201- 9.2(a). Likewise, the MCPA only applies to "consumer goods" and "consumer services" that the "consumer" intends to use "primarily for personal, household, family, or agricultural purposes." Md. Code Com. Law § 13-101(c)-(d). ███

███████████████████████████████████████████████

██████████████████████████████████ Because most IBOs signed up

---

[25]  *See also Starr-Gordon v. Mass. Mut. Ins.*, 2006 WL 3218778, at *7 (E.D. Cal. Nov. 7 , 2006) ("non-restitutionary disgorgement is not an available remedy under the UCL"); *In re Facebook Advert. Litig.*, 282 F.R.D. 446, 461 (N.D. Cal. 2012) (denying certification where plaintiffs could not establish entitlement to restitution "for all members of the class in a single adjudication").

to participate in a business opportunity to earn income, and not primarily to purchase consumer goods or services for themselves, Plaintiffs cannot offer class-wide evidence that these business purchases were "primarily" for personal/household purposes. The lack of a method to prove how these business opportunities come under the purview of the UTPCPL and the MCPA presents another predominating individual issue.

## IV.    A RULE 23(C)(4) ISSUE CLASS AS TO FALSITY AND MATERIALITY SHOULD NOT BE CERTIFIED

The Court should likewise deny plaintiffs' motion to certify a Rule 23(c)(4) class as to the issues of the falsity and materiality of Defendants' statements. *McLaughlin v. Am. Tobacco Co.*, is instructive. The Second Circuit held that certification would be improper as to such issues pertaining to the defendants' scheme to defraud, reasoning that it "would not materially advance the litigation because it would not dispose of larger issues such as reliance, injury, and damages" and "given the number of questions that would remain for individual adjudication, issue certification would not reduce the range of issues in dispute and promote judicial economy." 522 F.3d at 234. Likewise in *Dungan v. Acad. at Ivy Ridge*, 249 F.R.D. 413, 417 (N.D.N.Y, 2008), the court declined to certify a Rule 23(c)(4) class for misrepresentation claims where reliance issues meant that the inquiry was personal to each potential class member, predominated over any common issues such that "severing various elements of Plaintiffs' claims for purposes of class-action adjudication and leaving the remainder for individualized adjudication (i.e. issue certification) would not meaningfully reduce the range of issues in dispute and promote judicial economy and will lead to potential confusion and redundancy in the presentation of proof."

ACN's thousands of IBOs were exposed to representations and inducements to enroll by over a multi-year period by multiple means, including statements by Mr. Trump, but most saliently via ACN materials and statements by ACN personnel and IBOs who were friends and family

29

engaged in recruiting via ACN's marketing. There is no evidence of class-wide reliance on any particular statement and there are wide variations as to what IBOs in different states will need to prove their claims. Thus, issue certification would not reduce the range of issues in dispute or promote judicial economy.[26]

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

Dated:  New York, New York
      April 7, 2023

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: /s/ Peter T. Shapiro
      Peter T. Shapiro
      Eric Kizirian
      Greg Johnson
      77 Water Street, Suite 2100
      New York, New York 10005
      212-232-1300
      Peter.Shapiro@lewisbrisbois.com
      Eric.kizirian@lewisbrisbois.com
      Greg.johnson@lewisbrisbois.com

**ROBERT & ROBERT PLLC**
      Clifford S. Robert
      Michael Farina
      526 RXR Plaza
      Uniondale, New York 11556
      516-832-7000
      cobert@robertlaw.com
      mfarina@robertlaw.com

      *Attorneys for Defendants*

---

[26] The SAC alleges the existence of an injunctive-relief class under Rule 23(b)(2) (SAC ¶ 397). The Court should rule that this class cannot be certified as Plaintiffs wisely did not move to certify under Rule 23(b)(2). Notice, Dkt 530. Plaintiffs do not have standing to seek injunctive relief because they are no longer enrolled with ACN and Mr. Trump is no longer a spokesperson for ACN. *Berni v. Barilla S.p.A.,* 964 F.3d 141, 146-49 (2d Cir. 2020).