UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CATHERINE MCKOY, MARKUS FRAZIER, and
LYNN CHADWICK, individually and on behalf of all
others similarly situated,

                Plaintiffs,

v.

THE TRUMP CORPORATION, DONALD J. TRUMP,
in his personal capacity, DONALD TRUMP, JR., ERIC
TRUMP, and IVANKA TRUMP,

                Defendants.

No. 1:18-cv-09936 (LGS)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

Kaplan Hecker & Fink LLP
350 Fifth Avenue, Suite 7110
New York, New York 10118
(212) 564-0883

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    COMMON ISSUES OF FACT AND LAW PREDOMINATE ..............................2

        A.    Trump's Messaging Was Sufficiently Uniform............................................2

        B.    Class-wide Reliance Can Be Proven Through Common Evidence................................................................................................4

        C.    Common Issues Predominate Notwithstanding Differences Among States' Common Law Claims ............................................5

        D.    The Proposed Classes Do Not "Violate" *Comcast*; No Damages Model Is Required to Certify the Classes ......................................7

        E.    The Existence of ▇▇▇▇▇▇▇ IBOs Who Profited From the IBO Opportunity Does Not Defeat Predominance ......................................8

    II.    THE RULE 23(a) FACTORS SUPPORT CLASS CERTIFICATION...................9

        A.    The Named Plaintiffs' Claims Are Typical of the Plaintiff Classes................................................................................................9

        B.    Plaintiffs Will Fairly and Adequately Serve as Class Representatives ........................................................................10

    III.    THE PROPOSED STATE CLASSES SHOULD BE CERTIFIED .......................10

    IV.    AT A MINIMUM, THE COURT SHOULD CERTIFY THE ISSUES OF FALSITY AND MATERIALITY UNDER RULE 23(c)(4)............................12

CONCLUSION................................................................................................................................12

i

# TABLE OF AUTHORITIES

**Cases**

*Allegra v. Luxottica Retail N. Am.*,
 341 F.R.D. 373 (E.D.N.Y. 2022) .................................................................................... 4

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013) ...................................................................................................... 12

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013) ...................................................................................................... 7, 8

*Flores v. Anjost Corp.*,
 284 F.R.D. 112 (S.D.N.Y. 2012) .................................................................................. 10

*Ge Dandong v. Pinnacle Performance Ltd.*,
 No. 10 Civ. 8086, 2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013) ................................... 9

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
 407 F. Supp. 3d 422 (S.D.N.Y. 2019) ................................................................. 1, 9, 12

*In re Fyre Festival Litigation*,
 No. 17 Civ. 3296, 2020 WL 7318276 (S.D.N.Y. Dec. 11, 2020) ............................... 4, 5

*In re Vale S.A. Sec. Litig.*,
 No. 19 Civ. 526, 2022 WL 122593 (E.D.N.Y. Jan. 11, 2022) ....................................... 9

*Korea Supply Co. v. Lockheed Martin Corp.*,
 29 Cal.4th 1134 (2003) ........................................................................................... 10, 11

*Neale v. Volvo Cars of N. Am., LLC*,
 794 F.3d 353 (3d Cir. 2015) ........................................................................................... 7

*Roach v. T.L. Cannon Corp.*,
 778 F.3d 401 (2d Cir. 2015) ....................................................................................... 7, 9

*Roamingwood Sewer & Water Ass'n v. Nat'l Diversified Sales, Inc.*,
 509 F. Supp. 3d 198 (M.D. Pa. 2020) .......................................................................... 11

*Robinson v. Metro-North Commuter R.R. Co.*,
 267 F.3d 147 (2d Cir. 2001), ........................................................................................ 12

*Rodriguez v. It's Just Lunch, Intern.*,
 300 F.R.D. 125 (S.D.N.Y. 2014) ........................................................................... 4, 5, 6

*Shersher v. Superior Court*,
 154 Cal. App. 4th 1491 (2007) ............................................................................... 10, 11

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) ................................................................................................ 7

*Thompson v. JP Morgan Chase Bank, N.A.*,
    No. 13 Civ. 1982, 2014 WL 4269060 (D. Md. Aug. 27, 2014) ........................................ 11

*Zeiger v. WellPet LLC*,
    526 F. Supp. 3d 652 (N.D. Cal. 2021) ............................................................................... 4

*Zimmerman v. Portfolio Recovery Assocs., LLC*,
    276 F.R.D. 174 (S.D.N.Y. 2011) ...................................................................................... 10

**Rules**

Fed. R. Civ. P. 23(a)(4) ................................................................................................................. 10

Fed. R. Civ. P. 23(b)(3) ..................................................................................................... 7, 10, 12

Fed. R. Civ. P. 23(c)(4) ................................................................................................................. 12

**PRELIMINARY STATEMENT**

Defendant Donald J. Trump ("Trump") defrauded Plaintiffs, and thousands of others like them, into investing their money into ACN, a dead-end multi-level marketing ("MLM") scheme. Trump did so by misrepresenting the likelihood of success and the level of risk in becoming ACN "Independent Business Owners" ("IBOs"), misrepresenting the viability of ACN's products, misrepresenting the real reason why he was endorsing ACN, and misrepresenting that he had performed his own research and diligence in evaluating the IBO Opportunity. Trump's lies harmed thousands of people who, like Plaintiffs, mistakenly believed that Trump was offering them a secure path to financial success, and relied on Trump's fraudulent statements when they decided to spend $499 to join the IBO Opportunity. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

None of Trump's arguments against class certification have merit. Trump downplays the Fraudulent Statements he repeated throughout the Endorsement Period, and instead highlights other (irrelevant) comments he made about ACN. But they are red herrings: whatever else Trump said about ACN, Trump's Fraudulent Statements were a consistent, widespread, and uniform drumbeat of the same bogus claims. Trump also argues that individual reliance issues predominate because some class members may have relied on other IBOs when deciding to enroll in ACN, but ignores the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Trump insists that Plaintiffs' nationwide common law claims are too unmanageable for a class action, yet also demonstrates that Plaintiffs' common law claims share the same common elements. Finally, he ignores this Court's previous decision granting issue certification in *In re Foreign Exchange*, which provides an alternative pathway to materially advancing this litigation.

1

Plaintiffs and the thousands of defrauded IBOs just like them *all* deserve to have their day in court. Plaintiffs' motion for class certification should be granted.

## ARGUMENT

### I.  COMMON ISSUES OF FACT AND LAW PREDOMINATE

The common issues of falsity and materiality are more substantial than any individualized issues. Because the Fraudulent Statements were so central to ACN's marketing of the IBO Opportunity and so consistently communicated to hundreds of thousands, if not millions of prospective IBOs, Plaintiffs can establish they and other IBOs relied on the Fraudulent Statements using common proof, on a class-wide basis.

#### A.  Trump's Messaging Was Sufficiently Uniform

Trump made four consistent material misrepresentations—the Fraudulent Statements—regarding the ACN IBO Opportunity throughout the Endorsement Period. Trump misrepresented (1) the likelihood of success and the risk of investing the IBO Opportunity, (2) the commercial viability of ACN's products and services, (3) the true reason for his endorsement of the IBO Opportunity ▬▬▬▬▬▬▬▬▬▬▬▬, and (4) that he had performed due diligence in evaluating the IBO Opportunity. *See* Pls' Br. at 6.[1] ACN broadcasted the Fraudulent Statements to prospective IBOs across various means, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. *See id.* at 8-11.

Unable to dispute that he consistently made the Fraudulent Statements, Trump instead contends that his falsehoods—assuring prospective IBOs that the IBO Opportunity had ▬▬▬▬

---

[1] Citations to "Ex." are to the exhibits annexed to the March 10, 2023 Declaration of Matthew D. Brinckerhoff ("Brinckerhoff Decl.") (Dkt. 533), "Reply Ex." are to the exhibits annexed to the April 21, 2023 Declaration of Matthew D. Brinckerhoff; "Pls' Br." are to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (Dkt. 532), "Shapiro Decl." are to the April 7, 2023 Declaration of Peter T. Shapiro (Dkt. 552), and "Opp." are to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification (Dkt. 551). Citations throughout this brief have been cleaned up to omit non-substantive brackets and the like.

2

██████████████████████████████████████████████

██████████████—could not have misled Plaintiffs about their likelihood of success as IBOs because *ACN*—but not Trump—"cautioned its IBOs" that "success at selling services is never guaranteed." Opp. at 17. This argument about ACN's supposed disclaimer appears to rest on ████████████████████████████████████████████████████████████████████████ ████ Whether the disclaimer is sufficient to ward off a claim that Trump fraudulently misled prospective IBOs goes to the merits of this case, not class certification. At this stage, the existence of █████████████████████████████████████ serves only to confirm the existence of uniformity and consistency in what was presented to IBOs. In any event, *Trump* never "cautioned" Plaintiffs that success at ACN was not guaranteed. He did the opposite every time he repeated the first Fraudulent Statement. *See* Pls' Br. at 6.[2]

Trump next concedes that the Fraudulent Statements were transmitted to prospective IBOs through ████████████████████████████████, but points to supposed "variations" in the Fraudulent Statements, claiming for example that ████████████████████████ ███████████████████████████████████████████. *See* Opp. at 5-6. That is incorrect on both the facts and the law. In fact, ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████. And as a matter of law, "[c]lass certification is not defeated where the representations at issue present minor deviations or non-material differences." *Allegra v. Luxottica Retail N. Am.*,

---

[2] Similarly, Trump argues that he did not mislead anyone about the fact that he was a paid endorser because ████████████████████████████████████████████████████████████████ Opp. at 7 n.4. Trump thus appears to concede that he did not make any appropriate disclosure, and no evidence of ████ exists in the record.

3

341 F.R.D. 373, 426 (E.D.N.Y. 2022) (collecting cases).³ The variations Trump highlights are immaterial—none affect the core misrepresentations in the Fraudulent Statements, many of which were consistent word for word throughout the Endorsement Period.

Trump also suggests that the Fraudulent Statements are not actionable because he made additional, non-fraudulent comments about ACN, such as when Trump ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉ There is no legal basis for such an argument. A speaker cannot evade responsibility for his fraudulent misrepresentations by supplementing them with trivial nonactionable statements. The fact that Trump occasionally said innocuous things about ACN does not make the Fraudulent Statements any less misleading.

### B. Class-wide Reliance Can Be Proven Through Common Evidence

Trump's Fraudulent Statements were so integral to ACN's marketing of itself to IBOs, so consistent, and so widespread that "reliance may be proved through circumstantial evidence that plaintiffs would not have purchased [the IBO Opportunity] but for [Trump's] uniform misrepresentations." *Rodriguez v. It's Just Lunch, Intern.*, 300 F.R.D. 125, 139 (S.D.N.Y. 2014).

In attempting to argue otherwise, Trump relies extensively on *In re Fyre Festival Litigation*, No. 17 Civ. 3296, 2020 WL 7318276, at *6-*7 (S.D.N.Y. Dec. 11, 2020) ("*Fyre Festival*"). But *Fyre Festival* does not stand for the proposition that reliance is never subject to such proof, and the facts upon which Judge Castel relied in that case are very different from the facts here. The case involved alleged misrepresentations by the organizers of the planned Fyre Festival, encouraging people to purchase tickets and make travel plans to attend the event. In

---

³ *See also Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 693 (N.D. Cal. 2021) ("The law does not demand that the statements be identical for every moment of the class period; courts have typically held that the predominance requirement is met when there were relatively insubstantial variations.").

4

holding that questions of individual reliance defeated predominance, the court emphasized, first, that the various statements promoting the festival "were decidedly not uniform." *Id.* at *6. Here, in contrast, the same Fraudulent Statements by Trump appeared across ACN media and in his ACN appearances throughout the Endorsement Period.

*Second*, in *Fyre Festival*, "several different actors"—including defendants, their company, internet influencers, and other individuals—made different statements to ticket purchasers, which meant the court was faced with multiple speakers communicating different messages. *Id.* at *3-*5. Here, Trump alone made the Fraudulent Statements.

Finally, in *Fyre Festival*, the plaintiffs did not allege that the various misrepresentations were part of any uniform communications program. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

### C. Common Issues Predominate Notwithstanding Differences Among States' Common Law Claims

Where, as here, Plaintiffs can demonstrate that: "(1) [Trump] made materially uniform representations to the entire prospective class"; "(2) the materiality of those representations can be demonstrated on a classwide basis"; and "(3) the class's reliance on [Trump's] representations can similarly be demonstrated on a classwide basis through generalized proof," there are "issues common to the class regardless of the state fraud law applicable to the class's claims." *Rodriguez*, 300 F.R.D. at 141 (cleaned up). Any substantive differences between states' common law fraud

5

and misrepresentation claims can be handled by dividing the Common Law Class at a later time into subclasses that correspond to different state common law requirements, or at trial by employing special interrogatories or special verdict forms.

Trump discounts that these commonplace devices can be used to manage class treatment of Plaintiffs' common law claims. Instead, to make the Common Law Class appear unwieldy, he catalogs the differences between states' fraud and negligent misrepresentation causes of action. *See* Opp. at 22-26. But "[a] claim can implicate common issues and be litigated collectively, despite the existence of state law variations, so long as the elements of the claim are substantially similar and any differences fall into a limited number of predictable patterns which can be readily handled by special interrogatories or special verdict forms." *Rodriguez*, 300 F.R.D. at 141. "The scienter element of states' fraud laws," for example, "fall[s] into such limited patterns" and "does not create individual issues that predominate over common ones with respect to the fraud claims of the proposed national class." *Id.*

As Trump helpfully demonstrates in a bulleted list organized by element, Plaintiffs' common law claims do "fall into a limited number of predictable patterns." For example, by Trump's account: 19 states require scienter for a fraud claim, 31 do not; states require proof of fraud by either clear and convincing evidence or a preponderance of the evidence; a handful of states "do not require showing of intent to induce reliance"; and states either require a showing of justifiable or reasonable reliance. Opp. at 23-24. The differences between states' negligent misrepresentation claims follow similar patterns. *See id.* at 25.

### D. The Proposed Classes Do Not "Violate" *Comcast*; No Damages Model Is Required to Certify the Classes

Defendants claim that certifying a class here would "violat[e]" the Supreme Court's decision in *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), because of the absence of "a class-wide damages model." Opp. at 16. That argument misreads *Comcast*.

In *Comcast*, an antitrust suit, the asserted class action failed because plaintiffs presented no measure for calculating the damages flowing from the only viable theory of liability. *See* 569 U.S. at 35 ("Calculations need not be exact, but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case . . . ."). The case thus stands for the limited proposition that where "a model for determining classwide damages [is] relied upon to certify a class under Rule 23(b)(3)," it "must actually measure damages that result from the class's asserted theory of injury." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015). That proposition has no application here.

As the Second Circuit explained, *Comcast* "did not hold that a class cannot be certified under Rule 23(b)(3) simply because damages cannot be measured on a classwide basis," and "did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance." *Id.*[4] Before *Comcast*, "the fact that damages may have to be ascertained on an individual basis was simply one factor that [courts] had to consider in deciding whether issues susceptible to generalized proof outweigh individual issues when certifying the case as a whole." *Id.* at 405. That principle was "left undisturbed by *Comcast*." *Id.* at 409.[5]

---

[4] *See also Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 375 (3d Cir. 2015) ("[I]t is a misreading of *Comcast* to interpret it as precluding certification under Rule 23(b)(3) in any case where the class members' damages are not susceptible to a formula for classwide measurement," and denying certification on the basis that damages must be calculated on an individual basis would "amount[] to an abuse of discretion").

[5] *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (holding that post-*Comcast*, "common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.").

7

In this case, there is no *Comcast* "problem" because Plaintiffs' damages are consistent with the specific theories of liability alleged—Plaintiffs' damages are measured by the enrollment and renewal fees they paid ACN. And unlike in *Comcast*, an antitrust case where complex damages models were necessary to prove damages, Plaintiffs' damages are straightforward—the fees every class member paid to ACN ███████████████████.

### E. The Existence of ███████ IBOs Who Profited From the IBO Opportunity Does Not Defeat Predominance

The fact that ████████ IBOs ████████████████ were "unharmed" because they managed to "financially benefit[]" from the IBO Opportunity, Opp. at 19, does not defeat predominance because these individuals are not members of the proposed classes.

In opposition to Plaintiffs' motion, Trump submits the Declarations of four handpicked ACN insiders: ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████ Trump refers to these four witnesses as "putative class members" and argues that their lack of damages defeats predominance and standing. Opp. at 19 & 19 n.9. They do no such thing. None of these individuals is a putative member of any of the proposed classes, which include only "persons who made payments to ACN to participate in the IBO Opportunity but did not recoup from ACN an amount equal to or more than those payments." Pls' Notice of Mot. for Class Cert. at 1-2.[6] And even if the proposed class

---

[6] ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

8

definitions did include *all* IBOs and Trump's four "successful" IBO witnesses were putative class members, the fact that a "class includes individuals whose recovery may be zero" is "no[t] a basis to deny class certification," *In re Vale S.A. Sec. Litig.*, No. 19 Civ. 526, 2022 WL 122593, at *21 (E.D.N.Y. Jan. 11, 2022), *report and recommendation adopted*, 2022 WL 969724 (E.D.N.Y. Mar. 31, 2022), because, as detailed above, "individualized damages determinations alone cannot preclude certification under Rule 23(b)(3)," *Roach*, 778 F.3d at 409.[7]

## II.   THE RULE 23(a) FACTORS SUPPORT CLASS CERTIFICATION

Rule 23(a)'s four requirements are met for each Class. Trump does not challenge that joinder of thousands of potential class members is impracticable or that commonality is satisfied, and instead dedicates a scant few paragraphs to the remaining factors: typicality and adequacy.

### A.   The Named Plaintiffs' Claims Are Typical of the Plaintiff Classes

Typicality is easily satisfied here because "each class member's claim arises from the same course of events"—Trump's Fraudulent Statements—and each member of each proposed class "makes similar legal arguments." *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 437 (S.D.N.Y. 2019) ("*In re Foreign Exchange*"). Trump's Fraudulent Statements *were* the pitch to join ACN: if a person joined ACN as an IBO during the Endorsement Period, he or she heard the Fraudulent Statements prominently during the recruitment process, just like Plaintiffs did. *See* McKoy Decl. ¶ 3; Frazier Decl. ¶ 3; Chadwick Decl. ¶ 3. *See Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086, 2013 WL 5658790, at *6 (S.D.N.Y. Oct. 17, 2013) (typicality satisfied where each named plaintiff appeared to have reviewed "one of [defendant's] allegedly misleading statements").

---

[7] Plaintiffs respectfully reserve their right to seek depositions of these new and previously un-deposed witnesses as the case proceeds. *See* Dkt. 474.

### B. Plaintiffs Will Fairly and Adequately Serve as Class Representatives

Plaintiffs McKoy, Chadwick, and Frazier will protect the interests of the class, as Rule 23(a)(4) requires. Here, each Plaintiff affirms that they understand their role as a proposed class representative, are familiar with the pleadings, have remained in contact with their counsel throughout the litigation, and actively participated in discovery. Adequacy is satisfied. *See Zimmerman v. Portfolio Recovery Assocs., LLC*, 276 F.R.D. 174, 180 (S.D.N.Y. 2011).

### III. THE PROPOSED STATE CLASSES SHOULD BE CERTIFIED

In addition to a nationwide Common Law Class, the Court should certify a Rule 23(b)(3) class as to each of Plaintiffs' consumer protection statutory claims under California, Pennsylvania, and Maryland state law. Trump's merits-based arguments to the contrary should be addressed in full at the summary judgment stage, not at this certification stage, where "[t]he dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012). To the extent Trump's merits arguments are conceivably relevant to the Rule 23 factors, they should be rejected for three reasons.

*First*, Plaintiffs can recover restitution from Trump under the California Unfair Competition Law ("UCL") and False Advertising Law ("FAL"). Trump, citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003), argues that Plaintiffs cannot recover restitution from Trump, who they characterize as a "stranger to the transaction" between Plaintiffs and ACN, because Plaintiffs did not pay any funds directly to Trump. Opp. at 28. California courts have rejected Trump's application of *Korea Supply*. While restitution is limited to funds in which the plaintiff "has an ownership interest," *id.* at 801, the plaintiff need not have provided the funds directly to the defendant to state a UCL claim. *Shersher v. Superior Court*, 154 Cal. App. 4th 1491 (2007), is instructive. In that case, the plaintiff brought a UCL action against Microsoft, alleging

that the packaging for certain Microsoft products sold through retailers misrepresented the products' capabilities. *Id.* at 1494-95. The California Court of Appeal held that plaintiffs stated a claim against Microsoft although they had not directly paid Microsoft, stating that *Korea Supply* was not "intended to preclude consumers from seeking the return of money they paid for a product that turned out to be not as represented." *Id.* at 1498. "Rather, the holding of *Korea Supply* on the issue of restitution is that the remedy the plaintiff seeks must be truly 'restitutionary in nature'— that is, it must represent the return of money or property the defendant acquired through its unfair practices." *Id.*

*Second*, the question of whether the IBO Opportunity was purchased by Plaintiffs for personal or home use, as required to bring claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and Maryland Consumer Protection Act ("MCPA"), is not a "predominating individual issue" unsuited for adjudication on a class-wide basis. Opp. at 28-29. When deciding whether a service is used "primarily for personal, family or household purposes" under the UTPCPL, "courts look[] to the purpose of the purchase, rather than the type of product purchased." *Roamingwood Sewer & Water Ass'n v. Nat'l Diversified Sales, Inc.*, 509 F. Supp. 3d 198, 207 (M.D. Pa. 2020). Similarly, under the MCPA, courts "assess the primary or most significant use" of the service at issue to determine whether it is used for "personal, household, family, or agricultural purposes." *Thompson v. JP Morgan Chase Bank, N.A.*, No. 13 Civ. 1982, 2014 WL 4269060, at *4 (D. Md. Aug. 27, 2014). Individual trials will not be necessary to determine the underlying purpose of the IBO Opportunity and whether or not it was primarily used for personal, family, or household purposes.

*Third*, even if Trump's merits arguments were correct, they would *support* certification of the three state classes. Trump's arguments address predominating "questions of law or fact

11

common to class members." Fed. R. Civ. P. 23(b)(3). At the class certification stage, Plaintiffs "need not . . . prove that [these] predominating question[s] will be answered in their favor." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013). If the state classes are certified, Plaintiffs' failure to prove any element of any claim would "end[] the litigation" of that claim "for one and for all," *id.*, and thereby "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated"—the very purpose of Rule 23(b)(3). *In re Foreign Exchange*, 407 F. Supp. 3d at 430.

### IV.   AT A MINIMUM, THE COURT SHOULD CERTIFY THE ISSUES OF FALSITY AND MATERIALITY UNDER RULE 23(c)(4)

Tellingly, Trump does not apply, distinguish, or even acknowledge this Court's decision in *In re Foreign Exchange*, where the Court denied Rule 23(b)(3) certification but certified multiple issues under Rule 23(c)(4). *See id.* at 437-38. *In re Foreign Exchange* provides a roadmap for issue certification here, where the issues of falsity and materiality of Trump's Fraudulent Statements are central to each of Plaintiffs' claims, including Plaintiffs' state statutory consumer protection claims and common law claims.

If the Court does not grant Plaintiffs' motion to certify the (b)(3) classes, it should "take full advantage" of Rule 23(c)(4) and certify the issues of the falsity and materiality "in order to reduce the range of disputed issues in [this] complex litigation and achieve judicial efficiencies." *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 168 (2d Cir. 2001), *abrogated on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

### CONCLUSION

For the foregoing reasons and the reasons provided in Plaintiffs' opening brief, the Court should certify the proposed Classes under Rule 23(b)(3). In the alternative, the Court should certify as to the issues of the falsity and materiality pursuant to Rule 23(c)(4).

Dated: April 21, 2023
      New York, New York

| | |
|---|---|
| */s/ John C. Quinn* | */s/ Matthew D. Brinckerhoff* |
| Roberta A. Kaplan | Matthew D. Brinckerhoff |
| John C. Quinn | Nick Bourland |
| Christopher R. Le Coney | Katherine Rosenfeld |
| Maximillian L. Feldman | |
| | |
| KAPLAN HECKER & FINK LLP | EMERY CELLI BRINCKERHOFF |
| 350 Fifth Avenue, 63rd Floor | ABADY WARD & MAAZEL LLP |
| New York, New York 10118 | 600 Fifth Avenue at Rockefeller Center |
| Telephone: (212) 763-0883 | New York, New York 10020 |
| | Telephone: (212) 763-5000 |
| *Attorneys for Plaintiffs* | |