**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL      212.763.0886
DIRECT EMAIL     jquinn@kaplanhecker.com

April 28, 2023

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Court for the Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *Catherine McKoy, et al. v. The Trump Corporation, et al.*, No. 18-cv-09936

Dear Judge Schofield:

    We write on behalf of Plaintiffs and the putative classes in response to Defendants' letter seeking leave to move for summary judgment. ECF 559. As an initial matter, the record evidence supporting Plaintiffs' claims is not only sufficient, but powerful. Discovery has confirmed that Defendant Donald J. Trump was ACN's marquee endorser for a decade, featured centrally in all of ACN's key pitch materials, at live events, in pay-to-play print media, and on national television. Trump consistently promoted ACN—often using the same scripted language word for word—as a great business opportunity to be "making more money" "without any of the risks most entrepreneurs have to take." He assured recruits that "I know what it takes to be a success, and ACN has a winning business model." He vouched for ACN's products as "breakthrough technology," and told his audiences that "the absolute truth is that this technology will be present in every home within the next several years." He concealed that he was being paid lavishly, and instead said he was giving his endorsement because he had "[REDACTED]." And he promised that his endorsement was based on thorough diligence: "We do a lot of research on companies before we agree to do something like I'm doing for [ACN] . . . and ACN's a great company."

    Not a word of this was true. The record evidence shows that in reality, ACN was high-risk and that only a [REDACTED] made any money— the company's records show, and Trump's expert agreed, that the large majority of participants never [REDACTED]. ACN's chief product was a lousy, low-function videophone that was obsolete from the moment it was introduced—again, even Defendants' expert acknowledged it was [REDACTED]. And the record shows that the Trumps did zero due diligence on ACN; there is no record of any diligence materials in the more than thirty-three thousand documents that were produced in this case, and not a single employee [REDACTED]. Instead, Trump and his employees repeatedly ignored red flags raised by [REDACTED] reporters—even their own [REDACTED]. The Trumps soldiered on undaunted.

    The fraudulent endorsement had its intended effect. Indeed, ACN executives privately gushed about the [REDACTED]. Trump himself boasted about the [REDACTED]. And the [REDACTED] confirm the tremendous impact—yet again, even Trump's own expert walked back his purported opinion that [REDACTED], when Trump finally ended the relationship as reporters began to ask tough questions.

**KAPLAN HECKER & FINK LLP**

2

Faced with this overwhelming evidence supporting Plaintiffs' claims, Defendants muster a few scattershot arguments for summary judgment, all of which either misstate the law or mischaracterize the record, or both. For the reasons outlined below, Defendants' motion should be denied.

I.   **Defendants are Not Entitled to Summary Judgment on the Statutory Claims.**

***Plaintiffs Can Recover Under their State Consumer Protection Laws.*** Defendants' argument that Cathy McKoy cannot recover restitution under California's False Advertising Law and Unfair Competition Law, because she did not pay her enrollment money directly to Trump, rests on a misreading of California law that has been squarely "rejected" by California courts. *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617, 2016 WL 3029783, at *31-32 (N.D. Cal. May 27, 2016) (explaining that no direct payment to the defendant is required, and collecting cases). As for Lynn Chadwick and Markus Frazier, they can recover under Pennsylvania's Unfair Trade Practices and Consumer Protection Law and Maryland's Consumer Protection Act, respectively, because they purchased their membership in ACN for their "personal" benefit. *See, e.g.*, *Sibeto v. Capella Univ.*, No. 13 Civ. 1674, 2014 WL 3547347, at *4 (W.D. Pa. June 13, 2014), *adopted by* 2014 WL 3547344 (W.D. Pa. July 17, 2014) (denying motion to dismiss consumer protection claim concerning payment of tuition to further professional career because Pennsylvania statute "appli[es] to individual consumers regardless of the profit motive of the purchaser"). What's more, both Defendants and ACN itself pitched ACN to a wide audience as a consumer products company with a "work from home" business opportunity, no expertise required.[1]

***Trump's Misrepresentations Were Not "Puffery."*** Defendants' suggestion that Trump's false statements were mere puffery is equally meritless. ACN did not have a "new technology," was not a "great opportunity," and did not allow participants to "make a lot of money," "without any of the risks most entrepreneurs have to take." *See United States v. Autuori*, 212 F.3d 105, 118-19 (2d Cir. 2000) (not puffery where business forecasts falsely described as "good" and "credible," and investment described as "safe"); *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 317-18 (S.D.N.Y. 2013) (not puffery where risk described as "minimal" and "limited"). Moreover, Trump did not "research" ACN, nor did he see "reports" on the company that were "unbelievable." *See Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) (indicating puffery defense would not protect claims that defendant conducted independent research if proven "literally false"). And, contrary to what he publicly represented, Mr. Trump was paid, by the ███, to endorse and promote ACN. *Cf. Fisk v. SuperAnnuities, Inc.*, 927 F. Supp. 718, 726 (S.D.N.Y. 1996) (representation that insiders would not receive compensation for sales of shares was actionable as fraud).

***Plaintiffs Relied on Trump's Misrepresentations.*** As for reliance, Plaintiffs have "repeatedly stated they *did* rely on" Trump's misrepresentations. *Jordan v. Paul Fin.*, 285 F.R.D. 435, 454 (N.D. Cal. 2012) (denying summary judgment on reliance based on plaintiffs' deposition testimony); *see, e.g.*, ECF 535 ¶ 3 (McKoy Decl.); ECF 536 ¶ 3 (Frazier Decl.); ECF 537 ¶ 3 (Chadwick Decl.).[2] Defendants' attempts to mischaracterize deposition testimony about additional conversations Plaintiffs had with others would at most create a triable issue of fact, *see Silvercreek Mgmt. v.*

---

[1] In the securities context, courts have recognized that similar investments, which involve passive income and/or residual commissions based on recruiting, are personal consumer investments under the Pennsylvania statute. *S. Kane & Son Profit Sharing Tr. v. Marine Midland Bank*, No. 95 Civ. 7058, 1996 WL 200603, at *3 (E.D. Pa. Apr. 25, 1996) (noting "Pennsylvania courts have held that the UTPCPL should be interpreted very broadly").

[2] Given the "complicated nature" of the ACN opportunity, and Trump's claimed expertise in business matters, Plaintiffs' receipt of ACN documents containing fine-print disclaimers "alone [is] insufficient to establish, as a matter of law, that they did not rely on" Defendants' representations. *Drelles v. Mfrs. Life Ins. Co.*, 881 A.2d 822, 841 (Pa. Super. 2005).

*Citigroup*, 346 F. Supp. 3d 473, 505 (S.D.N.Y. 2018), especially because, as a matter of law, Defendants' misrepresentations need not be the "sole or even the predominant or decisive factor" influencing Plaintiffs' decisions to join ACN, *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009).[3]

## II. Defendants are Not Entitled to Summary Judgment on the Common Law Claims.

***Defendants Acted with Intent.*** Defendants' knowledge and intent, quintessential jury issues, are also inappropriate for summary adjudication. As this Court has recognized, "courts should be lenient in allowing scienter issues to withstand summary judgment based on fairly tenuous inferences." *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, No. 17 Civ. 1580, 2021 WL 3727095, at *5 (S.D.N.Y. Aug. 23, 2021) (Schofield, J.) (cleaned up). Here the record as to Defendants' intent and knowledge is anything but tenuous, as evidenced for example by the Trumps' steamrolling past warnings and red flags, lying about diligence, and repeating the same false statements over and over for years, in exchange for ███████ payments. *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 649 (S.D.N.Y. 2007) ("[S]cienter may be found where there are . . . reasonably available facts, or 'red flags,' that should have put the officers on notice that the public statements were false.").[4]

***Sufficient Evidence Supports Ms. Chadwick's Claims.*** Nothing in *Pittsburgh Live, Inc. v. Servov*, 615 A.2d 438 (Pa. Super. 1992), requires that Ms. Chadwick recite "exactly," ECF 559 at 3, what Donald Trump said ████████████████████████████████████████████ when she was recruited into ACN. That decision simply holds that fraud must be proven by clear and convincing evidence—a standard that is easily satisfied here, given that Defendants' fraudulent statements were captured on video (and in print). *See, e.g.*, *7-Eleven, Inc. v. Upadhyaya*, 926 F. Supp. 2d 614, 627 (E.D. Pa. 2013) (clear and convincing evidence where there was video of fraud).

***All of the Defendants Are Liable.*** There is no real dispute that Donald Trump and the Trump Corporation acted in concert to perpetrate the fraud. Trump Corporation employees acting within the scope of their employment and at Trump's direction ████████████████████████████████ ████████████████████████████████████████████████ As Eric Trump testified at the Trump Corporation's Rule 30(b)(6) deposition, "████████████████████████████████████████████████████████████████████████████████████████."

The remaining individual defendants, close family members and high-ranking executives of the Trump Corporation, all acted knowingly to facilitate the fraudulent scheme. They gave interviews that ACN ████████ and appeared in photos and other promotional materials. They also participated in the promotion of ACN on *The Celebrity Apprentice*, with Ivanka Trump going so far as to ████████████████████████████████████████████████████. And they all ████████ from their family's promotion of ACN.[5]

---

[3] Because similar principles as to reliance govern Plaintiffs' common law misrepresentation claims, summary judgment is also inappropriate with respect to those claims. *See Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 919 (Cal. 1997); *Fort Wash. Res., Inc. v. Tannen*, 858 F. Supp. 455, 461 (E.D. Pa. 1994); *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 532 (D. Md. 2011).

[4] Summary judgment is also unwarranted on Defendants' omissions because they failed to disclose key facts "necessary to prevent an ambiguous or partial statement from being misleading." *N. Penn Towns, LP v. Concert Golf Partners*, 554 F. Supp. 3d 665, 705 (E.D. Pa. 2021); *see also Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1012-17 (N.D. Cal. 2020).

[5] At the same time, their testimony, and discovery generally, indicated that Donald J. Trump himself was the architect, principal actor, and largest beneficiary of the ACN relationship. Accordingly, in an effort to focus the trial and streamline the issues, we are working with Defendants on a potential stipulation to dismiss the claims against Donald Trump Jr., Eric Trump, and Ivanka Trump, provided that their deposition testimony remains properly admissible as party admissions.

KAPLAN HECKER & FINK LLP

4

\* \* \*

For the reasons outlined above, and those to be set forth more fully should the Court direct briefing, Defendants' proposed motion for summary judgment should be denied.

Respectfully submitted,

John C. Quinn

cc: *All Counsel of Record (via ECF)*