UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CATHERINE MCKOY, MARKUS FRAZIER, and
LYNN CHADWICK, individually and on behalf of all
others similarly situated,

        *Plaintiffs*,

    v.

THE TRUMP CORPORATION and
DONALD J. TRUMP, in his personal capacity,

        *Defendants*.

No. 1:18-cv-09936 (LGS) (SLC)

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION TO EXCLUDE DR. PETERSON'S EXPERT
OPINIONS AND TO PRECLUDE DR. HAIR'S
SUPPLEMENTAL DECLARATION**

Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
(212) 763-0883

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ iii
INTRODUCTION ............................................................................................................................1
ARGUMENT ..................................................................................................................................1
   I.   PETERSON'S OPINIONS MUST BE EXCLUDED. ..........................................................1
   II.   HAIR'S UNTIMELY DECLARATION SHOULD BE PRECLUDED. ...............................5
CONCLUSION ................................................................................................................................6

# TABLE OF AUTHORITIES

**Cases**                          **Page(s)**

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*,
 364 F. Supp. 3d 291 (S.D.N.Y. 2019) .................................................................................... 4

*Apple v. Atl. Yards Dev. Co., LLC*,
 2015 WL 11182422 (E.D.N.Y. Mar. 31, 2015) ................................................................ 2, 3, 4

*Bryant v. Milhorat*,
 2013 WL 12368616 (E.D.N.Y. Sept. 30, 2013) ..................................................................... 4

*Chen-Oster v. Goldman, Sachs & Co.*,
 2022 WL 814074 (S.D.N.Y. Mar. 17, 2022) .......................................................................... 4

*CSL Silicones v. Midsun Grp.*,
 2017 WL 6055380 (D. Conn. Dec. 7, 2017) .......................................................................... 3

*Daubert v. Merrell Dow Pharms.*,
 509 U.S. 579 (1993) ................................................................................................................ 1

*Fleming v. Verizon N.Y., Inc.*,
 2006 WL 2709766 (S.D.N.Y. Sept. 22, 2006) ....................................................................... 5

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
 407 F. Supp. 3d 422 (S.D.N.Y. 2019) .................................................................................... 3

*In re Mirena Ius Levonorgestrel-Related Prod. Liab. Litig.*,
 341 F. Supp. 3d 213 (S.D.N.Y. 2018) .................................................................................... 2

*Kewazinga Corp. v. Microsoft Corp.*,
 2021 WL 4066597 (S.D.N.Y. Sept. 1, 2021) ......................................................................... 2

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*,
 2017 WL 3142072 (S.D.N.Y. July 24, 2017) ......................................................................... 3

*Lifeguard Licensing Corp. v. Kozak*,
 2017 WL 908199 (S.D.N.Y. Mar. 7, 2017) ............................................................................ 3

*Louis Vuitton SA v. Sunny Merch. Corp.*,
 97 F. Supp. 3d 485 (S.D.N.Y. 2015) .................................................................................. 3, 4

*Manbro Energy Corp. v. Chatterjee Advisors, LLC*,
 2022 WL 4225543 (S.D.N.Y. Sept. 13, 2022) ....................................................................... 2

*Morritt v. Stryker Corp.*,
 2011 WL 3876960 (E.D.N.Y. Sept. 1, 2011) ......................................................................... 5

*Rise-N-Shine, LLC v. Duner-Fenter*,
  2015 WL 876470 (S.D.N.Y. Feb. 28, 2015) .................................................................................. 3

*Roniger v. McCall*,
  2000 WL 1191078 (S.D.N.Y. Aug. 22, 2000) ............................................................................... 3

*State v. Deutsche Telekom AG*,
  419 F. Supp. 3d 783 (S.D.N.Y. 2019) .......................................................................................... 4

*Tiffany & Co. v. Costco Wholesale Corp.*,
  127 F. Supp. 3d 241 (S.D.N.Y. 2015) .......................................................................................... 3

*U.S. v. Williams*,
  506 F.3d 151 (2d Cir. 2007) ........................................................................................................ 3

*U.S. Info. Sys. v. IBEW Local No. 3*,
  313 F. Supp. 2d 213 (S.D.N.Y. 2004) .......................................................................................... 4

*Williams v. Cnty. of Orange*,
  2005 WL 6001507 (S.D.N.Y. Dec. 13, 2005) .............................................................................. 5

**INTRODUCTION**

Defendants' Opposition concedes that the relevant question here is "why Plaintiffs and possibly others chose to become ACN IBOs and whether President Donald J. Trump's celebrity spokesperson role played a significant part," Opp. at 1,[1] and the simple fact is that Dr. Peterson offers no data or analysis that answers that question. None of Peterson's surveys polled ACN IBOs. Instead, Peterson reviewed general surveys of participants across a diverse range of direct selling and multi-level marketing (and "gig economy") companies. Mot. at 2-7. But heterogeneity across companies does not suggest heterogeneity within a company. And all that Peterson offers to address the mismatch is a breezy assertion that the industry-wide survey results "generalize" to ACN IBOs because he "believes[s] they do." *Id.* at 4. Good enough, say Defendants, and any "quibbles" go to weight, not admissibility, and must be taken up on cross. Opp. at 1. That kick-the-can proposal is inconsistent with what *Daubert* requires. As a long line of cases makes clear, because the surveys do not "fit" the population at issue here, Peterson's opinions must be excluded. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591-92 (1993); *see also* Mot. at 5 (collecting cases).

As for Dr. Hair, the Opposition does not even try to argue that his "supplemental" declaration is timely or otherwise justified, nor does it address the obvious prejudice inherent in serving it in the midst of class certification briefing, after discovery had closed. All Defendants muster is the notion that Hair's new opinions, at the highest possible level of generality, are duplicative of opinions previously offered by Peterson. Opp. at 10. At best that is yet another argument for preclusion.

**ARGUMENT**

**I.   PETERSON'S OPINIONS MUST BE EXCLUDED.**

As set forth in Plaintiffs' opening brief, the surveys that Peterson relies on polled a broad population of participants in various direct selling, multi-level marketing, and even gig economy

---

[1] Citations to Defendants' Opposition are to "Opp." while citations to Plaintiffs' opening brief are to "Mot."

companies. Mot. at 2-4. For three of the four surveys, there is no indication that even a single respondent was an ACN IBO. *Id.* Peterson's off-the-rack analysis, unconcerned with the record in this case, amounts to "in essence an apples and oranges comparison," and exclusion is therefore warranted. *Manbro Energy Corp. v. Chatterjee Advisors, LLC*, 2022 WL 4225543, at *9 (S.D.N.Y. Sept. 13, 2022) (Schofield, J.).

Moreover, Peterson offers no data or analysis—apart from his *ipse dixit* "belie[f]"—to bridge the gap. Mot. at 4. This "failure to make any independent showing of representativeness renders his testimony unreliable and inadmissible." *Apple v. Atl. Yards Dev. Co., LLC*, 2015 WL 11182422, at *6 (E.D.N.Y. Mar. 31, 2015); *see also Kewazinga Corp. v. Microsoft Corp.*, 2021 WL 4066597, at *21 (S.D.N.Y. Sept. 1, 2021) (expert's failure to explain why two groups were indistinguishable for purposes of analysis prevented finding her methodology reliable under *Daubert*).

The Opposition attempts to counter this straightforward analysis by making up facts and misstating the law. *First*, Defendants suggest that participants in other direct selling companies "*might be* likely to consider becoming an ACN IBO" and that Peterson's surveys encompassed individuals "who would *presumably* have been receptive to marketing from ACN or other direct sellers." Opp. at 5-6 (emphases added). These "threadbare and speculative" arguments are insufficient as a matter of law. *In re Mirena Ius Levonorgestrel-Related Prod. Liab. Litig.*, 341 F. Supp. 3d 213, 305 (S.D.N.Y. 2018) (granting exclusion). An expert is required to present a "thesis" based on "reliable methodology," not a "hypothesis" made up out of thin air. *Id.* at 301.

*Second*, Defendants try to flip the applicable burden, complaining that Plaintiffs have presented "no basis" to find that ACN IBOs "are so distinct" from other direct selling participants to render the general surveys irrelevant. Opp. at 7. But it is the "*proponent* of expert testimony [who] has the burden of establishing by a preponderance of the evidence that the admissibility requirements of

2

Rule 702 are satisfied." *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 429 (S.D.N.Y. 2019) (Schofield, J.); *see also U.S. v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

Defendants likewise mangle the applicable precedent. *First*, Defendants suggest that in *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, 2017 WL 3142072 (S.D.N.Y. July 24, 2017) (Schofield, J.), this Court denied a motion to exclude even though "the expert had surveyed the wrong universe." Opp. at 4. In reality, the Court upheld Magistrate Judge Francis's order denying exclusion because the expert had likely surveyed *the correct* universe. *See Lifeguard Licensing Corp. v. Kozak*, 2017 WL 908199, at *5 (S.D.N.Y. Mar. 7, 2017) (Francis, M.J.) (contention that survey universe was incorrect "undermined by commentators and cases"). Peterson, by contrast, conceded that none of his surveys polled ACN IBOs. Mot. at 3-4.

*Second*, Defendants try to wave away the precedents excluding expert opinions that surveyed the wrong population, mostly by pointing out that in some of those cases there were additional methodological problems. Opp. at 6. But that is just a diversion—as several of those cases make explicit, surveying the wrong universe is, in and of itself, grounds for exclusion. *See Apple*, 2015 WL 11182422, at *6-9 (granting exclusion based on misfit between survey of national population and opinions about specific labor unions, and stating that separate sample size issue was "an independent basis for exclusion"); *Roniger v. McCall*, 2000 WL 1191078, at *4 (S.D.N.Y. Aug. 22, 2000) (fact that survey "concern[ed] the nation as a whole" sufficient for exclusion); *see also CSL Silicones v. Midsun Grp.*, 2017 WL 6055380, at *8 (D. Conn. Dec. 7, 2017) ("[E]rrors in selecting the universe of participants for the survey are sufficient to render the survey inadmissible.").[2]

---

[2] For their part, the cases Defendants cite where exclusion was denied are all inapposite because none involved the sort of categorical mismatch between survey population and target population that Peterson's analysis exhibits here. *See Tiffany & Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241, 250, 258-59 (S.D.N.Y. 2015) (survey targeted consumers "who would consider purchasing an expensive diamond ring from Costco" rather than consumers with a "present purchase interest in buying a diamond ring"); *Louis Vuitton SA v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 510 (S.D.N.Y. 2015) (survey targeted consumers "likely to purchase a pair of nonprescription sunglasses," rather than those likely to purchase particular companies' sunglasses); *Rise-N-Shine, LLC v. Duner-Fenter*, 2015 WL 876470, at *3-4

3

Finally, Defendants have little to say in response to the additional problems presented by Peterson's celebrity spokesperson survey. They have no answer at all to the fact that problems in the survey's design caused some respondents to provide nonsensical answers, which alone is a basis for exclusion. Mot. at 7 n.7. And while Defendants do attempt to deal with the small sample size issue, Opp. at 7-8, they falter at each step of their argument. *First*, Defendants accuse Plaintiffs of "inaccuracy," claiming that the survey included 286 respondents rather than 36. *Id.* at 7. In fact, 286 individuals began the survey, but most were screened out, such that Peterson's celebrity spokesperson opinion is based on data collected from just 36 respondents. ECF 552-18 at 10-12.

*Second*, Defendants claim that a small sample size alone is not enough to warrant exclusion, and that courts will only exclude where the lack of an adequate sample is "compounded" by "faulty methodology." Opp. at 8. Putting aside that the lack of a proper sample *is* compounded here by population misfit and nonsensical answers, the reality is that courts routinely exclude surveys solely for relying on insufficient sample sizes.[3] It is simply not correct, as Defendants claim, that "courts will admit surveys involving even smaller sample sizes." *Id.* A closer look at Defendants' authorities reveals that most actually involved larger samples than Peterson's. *Louis Vuitton SA v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 509 (S.D.N.Y. 2015) (200 and 100 test respondents); *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, 364 F. Supp. 3d 291, 326-327 (S.D.N.Y. 2019) (201 test respondents).[4] And Peterson did not even try to establish that his results were statistically significant. Mot. at 7.

---

(S.D.N.Y. Feb. 28, 2015) (survey targeting people likely to "purchase vitamins or supplements to promote healthy hair," rather than "people who want to reverse or prevent gray hair," admitted where 86% of respondents had gray hair).

[3] *See Chen-Oster v. Goldman, Sachs & Co.*, 2022 WL 814074, at *8 (S.D.N.Y. Mar. 17, 2022) (exclusion based on small sample of 17 respondents "appropriate when an expert does not show that his data is 'a fair proxy'"); *Apple*, 2015 WL 11182422, at *9 ("[F]ailure to confirm that . . . calculations are statistically significant—combined with the tiny size of the sample—provides an independent basis for exclusion."); *State v. Deutsche Telekom AG*, 419 F. Supp. 3d 783, 790 (S.D.N.Y. 2019) (finding "too great a gap between the small sample size of data on which [expert] relies and the conclusion that he derives from that data to justify admission").

[4] Defendants also overstate the relevance of two cases that did not involve surveys. In *U.S. Info. Sys. v. IBEW Local No. 3*, the "small sample" of 60 to 90 was permissible because the expert proved its statistical significance. 313 F. Supp. 2d 213, 232 (S.D.N.Y. 2004). And in *Bryant v. Milhorat*, the data was provided by, and specific to, the defendants, and found "representative." 2013 WL 12368616, at *10 (E.D.N.Y. Sept. 30, 2013).

## II.     HAIR'S UNTIMELY DECLARATION SHOULD BE PRECLUDED.

The Opposition does not attempt to argue that Hair's supplemental declaration was timely. That makes sense: it was filed eleven weeks after the deadline for expert reports and more than two weeks after the parties certified the close of expert discovery, in clear violation of Rule 26(a)(2). Mot. at 8-9. And while the Opposition baldly asserts that Hair's "declaration is consistent with" his earlier report, Opp. at 10, Defendants make no effort to explain or support that assertion, because, as set forth in our opening brief, the declaration contains what are plainly new opinions. Mot at 8.

Instead, Defendants argue that Hair's "allegedly new opinion regarding the heterogeneity of the ACN IBOs" is harmless because *Peterson* opined that "IBOs' reasons for joining [ACN] are heterogenous." Opp. at 10. Even if true, the redundancy would cut against admission of the late report. *See Williams v. Cnty. of Orange*, 2005 WL 6001507, at *5 (S.D.N.Y. Dec. 13, 2005) (precluding untimely expert testimony that overlapped with other expert's timely disclosed opinions). But properly read, Hair's "supplemental" declaration is obviously new: he opines, for example, that ACN IBOs comprise "multiple subgroups" with "diverse characteristics." ECF 552-20 ¶ 2. This has nothing to do with Peterson's analysis of direct selling participants' "reasons for joining" in the first place. Opp. at 10.

Finally, Defendants' last-ditch effort to avoid preclusion by proposing yet more surrebuttals and depositions, Opp. at 10, is contrary to precedent, which recognizes that endless reopening and prolonging of discovery *is* prejudice, not an answer to prejudice. *Fleming v. Verizon N.Y., Inc.*, 2006 WL 2709766, at *8 (S.D.N.Y. Sept. 22, 2006) (excluding declarations submitted at summary judgment where moving party "made its motion . . . based on what it thought to be all of the evidence accumulated in discovery"); *Morritt v. Stryker Corp.*, 2011 WL 3876960, at *7 (E.D.N.Y. Sept. 1, 2011) (recognizing "severe" prejudice where "discovery would have to be reopened"). That is all the more true here, as a "firm" trial date has already been set. Mot at 10.

## CONCLUSION

For the foregoing reasons, the Court should exclude Peterson's expert opinions and preclude Hair's "supplemental" declaration.

Dated: New York, New York
May 24, 2023

Roberta A. Kaplan
John C. Quinn
Christopher R. Le Coney
Maximillian L. Feldman
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Tel: (212) 763-0883
rkaplan@kaplanhecker.com
jquinn@kaplanhecker.com
cleconey@kaplanhecker.com
mfeldman@kaplanhecker.com

Andrew G. Celli, Jr.
Matthew D. Brinckerhoff
Vasudha Talla
Nick Bourland
EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
600 Fifth Avenue at Rockefeller Center
New York, New York 10020
Tel: (212) 763-5000
acelli@ecbawm.com
mbrinckerhoff@ecbawm.com
vtalla@ecbawm.com
nbourland@ecbawm.com

*Attorneys for Plaintiffs*