**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
CATHERINE McKOY, MARKUS FRAZIER,  and
LYNN CHADWICK, individually and on behalf of          Case No. 18-cv-09936 (LGS) (SLC)
all others similarly situated,

                                        *Plaintiffs*,

                        -against-

THE TRUMP CORPORATION and DONALD J.
TRUMP, in his personal capacity,

                                        *Defendants*.
------------------------------------------------------------------X

---

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF MOTION FOR SUMMARY JUDGMENT

---


                        LEWIS BRISBOIS BISGAARD & SMITH LLP
                        77 Water Street, Suite 2100
                        New York, New York 10005

                                - and -

                        ROBERT & ROBERT PLLC
                        526 RXR Plaza
                        Uniondale, New York 11556

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 3

ARGUMENT ........................................................................................................... 4

I.      THE COURT SHOULD GRANT SUMMARY JUDGMENT IN
DEFENDANTS' FAVOR ON PLAINTIFFS' STATE LAW STATUTORY
CLAIMS ...................................................................................................... 4

      A.     Genuine and Material Issues of Fact do not Exist as to Ms. McKoy's
Claims Under the California False Advertising Law and Unfair
Competition Law ................................................................................ 4

      B.     Genuine and Material Issues of Fact Do Not Exist as to Ms. Chadwick and
Mr. Frazier's Claims under the Pennsylvania UTPCPL and Maryland CPA
.......................................................................................................... 8

      C.     Genuine and Material Issues of Fact Do Not Exist as to Reliance, Which is
Required Under the Foregoing Statutes ............................................... 9

      D.     President Trump's Alleged Misrepresentations are Non-Actionable
Puffery ............................................................................................. 15

II.     THE COURT SHOULD DISMISS PLAINTIFFS' COMMON LAW FRAUD
AND NEGLIGENT MISREPRESENTATION CLAIMS ................................. 17

III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR THE
ADDITIONAL REASON THAT PLAINTIFFS CANNOT CAUSALLY
RELATE ANY RECOVERABLE DAMAGES TO DEFENDANTS' ALLEGED
MISREPRESENTATIONS ........................................................................... 21

CONCLUSION ....................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Deloitte & Touche*,
  56 Cal. App. 4th 1468 (Cal. App. 1997) ................................................................. 19

*In re Am. Principals Holdings, Inc. Sec. Litig.*,
  1987 U.S. Dist. LEXIS 16945, 1987 WL 39746 (S.D. Cal. July 9, 1987) ............................. 5

*In re Anthem, Inc. Data Breach Litig.*,
  2016 U.S. Dist. LEXIS 70594, 2016 WL 3029783 (N.D.Ca. May 27, 2016) ........................... 6

*Ascher v. Target Corp.*,
  522 F. Supp. 2d 452 (E.D.N.Y. 2007) ....................................................................... 24

*Baney Corp. v. Agilysis NV, LLC*,
  773 F. Supp. 593 (D. Md. 2011) .............................................................................. 17

*Boatel Industries, Inc. v. Hester*,
  77 Md. App. 284 (1988) ........................................................................................ 9

*Bortz v. Noon*,
  729 A.2d 555 (1999) ............................................................................................ 18

*Bryan v. Fay Servicing, LLC*,
  2019 U.S. Dist. LEXIS 27982, 2019 WL 764705 (D. Md. Feb. 21, 2019) ........................... 17

*Carpenter v. Shu-Bee's, Inc.*,
  2012 U.S. Dist. LEXIS 92951, 2012 WL 2594276 (E.D. Pa. July 5, 2012) .......................... 8

*Daubert v. Merrell-Dow Pharmaceuticals, Inc.*,
  509 U.S. 567 (1993) ............................................................................................ 24

*Ferrington v. McAfee, Inc.*,
  2010 WL 391069 (N.D. Cal. Oct. 5, 2010) .................................................................. 5

*Fox v. Pollack*,
  181 Cal. App. 3d 954 (1986) .................................................................................. 20

*Gerfin v. Colonial Smelting & Refining Co., Inc.*,
  97 A.2d 71 (Pa. 1953) .......................................................................................... 20

*Gianino v. Alacer Corp.*,
  846 F. Supp. 2d 1096 (C.D. Cal. 2012) ..................................................................... 19

*Gillette Co. v. Wilkinson Sword, Inc.*,
  1989 WL 8276 (S.D.N.Y. July 6, 1989) ..................................................................... 17

*Height St. Skilled Care, LLC v. Liberty Mut. Ins. Co.*,
2022 WL 1665220 (E.D. Ca. May 24, 2022)..........................................................................7

*Hunt v. United States Tobacco*,
538 F.3d 217 (3d. Cir. 2008)..................................................................................................9

*Korea Supply Co. v. Lockheed Martin*,
29 Cal. 4th 1134 (2003) .........................................................................................................5

*Kovalev v. Lidl US LLC*,
2022 U.S. Dist. LEXIS 230259, 2022 WL 17858055 (E.D. Pa. Dec. 21, 2022)...................16

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011) .............................................................................................4, 10, 17

*Lazar v. Superior Ct.*,
12 Cal. 4th 631 (1996) .........................................................................................................18

*Layton v. Aamco Transmissions, Inc.*,
717 F. Supp. 368 (D. Md. 1989) ...........................................................................................9

*Lee v. Luxottica Retail N. Am., Inc.*,
65 Cal. App. 5th 793 (2021) .................................................................................................5

*Lightfoot v. Borkon (In re Lightfoot)*,
399 B.R. 141 (Bktcy. E.D. Pa. 2008).....................................................................................8

*Lipton v. Nature Co.*,
71 F.3d 464 (2d Cir. 1995)...........................................................................................15, 16

*Liodas v. Sahadi*,
19 Cal. 3d 278 (1977) ...........................................................................................................18

*Lloyd v. Gen. Motors Corp.*,
916 A.2d 257 (Md. 2007) ................................................................................................9, 20

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008)................................................................................................23

*Martens Chevrolet v. Seney*,
292 Md. 328 (1982) ...............................................................................................................19

*McKenzie v. Comcast Cable Communications, Inc.*,
393 F. Supp. 2d 362 (D. Md. 2005) .....................................................................................17

*Milliken v. Jacono*,
60 A.3d 133 (Pa. Super. 2012)........................................................................................18, 20

*Morales v. Superior* Living Prods., LLC,
    2009 U.S. Dist. LEXIS 91578, 2009 WL 3234434 (E.D. Pa. Sept. 30, 2009) ........................8

*Nails v. S&R*,
    639 A.2d 660 (Md. 1994) .................................................................................................20

*Phoenix Light SF Ltd v. Wells Fargo Bank, NA*,
    574 F. Supp. 3d 197 (S.D.N.Y. 2021).............................................................................24

*Pittsburgh Live, Inc. v. Servov*,
    615 A.2d 438 (Pa. Super. 1992)......................................................................................20

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997)..............................................................................................23

*Rodriguez v. It's Just Lunch Int'l, Inc.*,
    2018 WL 3733944 (S.D.N.Y. Aug. 6, 2018)..................................................................21

*Rutherford v. BMW of N. Am., LLC*,
    579 F. Supp. 3d 737 (D. Md. 2022) ...............................................................................18

*Scaife Co. v. Rockwell Standard Corp.*,
    285 A.2d 451 (Pa. 1971), *cert. denied,* 407 U.S. 920 (1972) ..................................16

*Shersher v. Superior Court*,
    154 Cal. App. 4th 1491 (2007) .........................................................................................5

*Starr-Gordon v. Mass. Mut. Ins.*,
    2006 WL 3218778 (E.D. Cal. Nov. 7, 2006).....................................................................5

*Sullins v. Exxon/Mobil Corp.*,
    2010 U.S. Dist. LEXIS 4178, 2010 WL 338091 (N.D.Ca. Jan. 20, 2010)................................7

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007)............................................................................................16

*Troyk v. Farmers Gp., Inc.*,
    171 Cal. App. 4th 1305, 90 Cal. Rptr. 3d 589 (2009)................................................7

*Vitiosus v. Alani Nutrition, LLC*,
    2022 U.S. Dist. LEXIS 118090, 2022 WL 2441303 (S.D. Ca. July 5, 2022) ........................17

*V-Tech Servs. v. Street*,
    72 A.3d 270 (Pa. Super. 2013)........................................................................................18

*In re Vizio, Inc. Consumer Product Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..........................................................................21

*Weaver v. Real Estate Funding, LLC*,
 2010 WL 1662991 (D. Md. April 21, 2010) ............................................................9

*Weisblatt v. Minnesota Mut. Life Ins. Co.*,
 4 F. Supp. 2d 371 (E.D. Pa. 1998) ........................................................................21

*Werwinski v. Ford Motor Co.*,
 286 F.3d 661 (3d Cir. 2002), *overruled in part on other grounds, Earl v. NVR,
 Inc.*, 990 F.3d 310 (3d Cir. 2021) ...........................................................................8

*Wilson v. Century 21 Great Western Realty*,
 15 Cal. App. 4th 298 (1993) .................................................................................18

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
 2017 U.S. Dist. LEXIS 140212, , 2017 WL 3727318 (N.D. Cal. Aug. 30,
 2017) ....................................................................................................................17

**Statutes**
California Business & Professions Code § 17200 ..................................................... 4-6

California Business & Professions Code § 17500 ..................................................... 4-6

Maryland Code Com. Law § 13-101(c)-(d) ............................................................4, 9

Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 § 201-2(4) .................4, 8

73 Pa. Cons. Stat. § 201- 9.2(a) ................................................................................8

**Treatises**
4 Weinstein's Federal Evidence § 702.05 ................................................................23

## PRELIMINARY STATEMENT

This entire case is about ACN, Inc. ("ACN"), a multi-level marketing company that sold Plaintiffs the ACN Opportunity and benefited from Plaintiffs' involvement therein by virtue of receiving enrollment and other payments from Plaintiffs. Rather than suing ACN for their alleged grievances, Plaintiffs commenced this action against President Donald J. Trump ("President Trump"), three of his adult children[1] and the Trump Corporation, incredibly seeking to hold them responsible for Plaintiffs' failure to earn income while they were involved with ACN merely because President Trump acted as ACN's celebrity spokesperson. This, despite the uncontroverted fact that ACN disclosed to each new Independent Business Owner ("IBO") the risk that they could earn no income and that there was no guarantee otherwise. It is time to put this meritless action to bed.

First, the Court should grant summary judgment in Defendants' favor on Plaintiffs' state law statutory claims. Genuine and material issues of fact do not exist as to the Plaintiffs' claims under the California, Pennsylvania and Maryland consumer fraud statutes. Plaintiff Catherine McKoy cannot raise genuine and material issues of fact as to her claims under the California False Advertising Law ("FAL") and Unfair Competition Law ("UCL") because the statutes require a showing of reliance or injury as a result of the allegedly deceptive conduct, and the only monetary remedy available is restitution. There is no dispute that Ms. McKoy paid only ACN when she decided to become an IBO; she therefore cannot recover restitution from Defendants. Plaintiffs Lynn Chadwick and Markus Frazier cannot raise genuine and material issues of fact as to their claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")

---

[1] Plaintiffs dismissed their claims against Donald J. Trump, Jr., Eric Trump and Ivanka Trump with prejudice on May 19, 2023.

and the Maryland Consumer Protection Act ("CPA"), respectively, because they are not consumers protected by those statutes. Those statutes can be invoked only by persons who purchase products or services for personal or household use and Ms. Chadwick and Mr. Frazier became ACN IBOs in order to be part of a profitable business venture.

Even if Plaintiffs could overcome the foregoing threshold liability issues, their claims are still subject to dismissal because they cannot raise genuine and material issues of fact as to reliance, which is required under the foregoing statutes. The record evidence not only demonstrates that Plaintiffs joined ACN for reasons other than the alleged misrepresentations by President Trump, but that potential ACN IBOs were exposed to a host of recruiting information that was unrelated to President Trump. Critically, President Trump's alleged misrepresentations are non-actionable puffery; the use of sales talk and puffery by a celebrity spokesperson simply cannot support a consumer fraud claim.

Second, the Court should grant summary judgment in Defendants' favor on Plaintiffs' common law fraud or negligent misrepresentation claims. Plaintiffs cannot adduce the mandatory clear and convincing evidence of fraud required by Pennsylvania and Maryland law, or the preponderance of evidence of fraud required by California law. Like Plaintiffs' statutory law claims, their common law fraud claims fail because they are based on non-actionable puffery and Plaintiffs did not justifiably rely on the alleged misrepresentation made by President Trump.

Third, the Court should grant summary judgment in Defendants' favor for the additional reason that Plaintiffs cannot causally relate their alleged damages to the alleged misrepresentations.

**STATEMENT OF FACTS**

ACN has operated a multi-level marketing company since 1993 in the United States and internationally. Transcript of Robert Merriman Deposition ("Merriman Tr.") 15-16, 22, 37-38. In order to sell ACN's products and services, individuals contract with ACN, enabling them to access the "ACN Opportunity," meaning they can become IBOs. Defendants did not contract with the IBOs and were not paid by them. Merriman Tr. 22, 38, 41. ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████



**The Claims for Relief At Issue on This Motion**

Plaintiffs' Second Amended Complaint ("SAC") asserts claims for violations of the California Business & Professions Code §§ 17200 (Count Four) and 17500 (Count Three), the Maryland Consumer Protection Act § 13-301 (Count Five), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 § 201-2(4) (Count Six), as well as claims for common law fraud (Count Seven) and negligent misrepresentation (Count Eight). As set forth below, Plaintiffs cannot raise genuine issues of facts under each count and the Court should grant Defendants' motion for summary judgment accordingly.

**ARGUMENT**

I.    **THE COURT SHOULD GRANT SUMMARY JUDGMENT IN DEFENDANTS' FAVOR ON PLAINTIFFS' STATE LAW STATUTORY CLAIMS**

A.    **Genuine and Material Issues of Fact do not Exist as to Ms. McKoy's Claims Under the California False Advertising Law and Unfair Competition Law**

Ms. McKoy asserts claims under the California False Advertising Law (FAL) and Unfair Competition Law (UCL). Both statutes require that she prove reliance or "injury as a result" of

Defendants' allegedly deceptive conduct. *Kwikset Corp. v. Superior Ct*., 51 Cal. 4th 310, 322-326 (2011).  Under both the FAL and UCL, "[t]he only monetary remedy available . . . is restitution. . . . Damages are not recoverable." *Lee v. Luxottica Retail N. Am., Inc*., 65 Cal. App. 5th 793, 800 (2021). "The object of restitution . . . is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Id.* at 801. *Accord, In re Am. Principals Holdings,* Inc. Sec. Litig., 1987 U.S. Dist. LEXIS 16945, *57-58, 1987 WL 39746  (S.D. Cal. July 9, 1987).

Even if Ms. McKoy could prove deceptive conduct by Defendants, which she cannot do, she cannot obtain restitution from Defendants because she never paid any funds to them, including funds as to which she had an "ownership interest." ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████ *Korea Supply Co. v. Lockheed Martin*, 29 Cal. 4th 1134, 1149 (2003) (a UCL plaintiff cannot sue a stranger to the transaction at issue absent a "vested" or "ownership interest" in money held by that party that would provide a basis for recoverable "restitution"); *see also Starr-Gordon v. Mass. Mut. Ins.*, 2006 WL 3218778, at *7 (E.D. Cal. Nov. 7 , 2006) ("non-restitutionary disgorgement is not an available remedy under the UCL").

Although "[t]he UCL permits restitution from a defendant whose unfair business practices caused plaintiff to pay money to a third party, as long as it is reasonable to infer that the defendant indirectly received that money from the third party" (*Ferrington v. McAfee, Inc.,* 2010 WL 391069, at *8 (N.D. Cal. Oct. 5, 2010)), that principle does not aid Ms. McKoy because Defendants did not receive any part of Ms. McKoy's payments to ACN. This case is unlike cases in which the defendant sold a good or service to the plaintiff by way of a distributor, store, supplier, agent or

licensee and thereafter received payment for its service or product indirectly from plaintiff's payment. For example, in *Shersher v. Superior Court*, 154 Cal. App. 4th 1491 (2007) , the defendant company sold products through retailers and argued that the plaintiffs who purchased the products through retailers could not recover money from it. The Court of Appeals rejected that argument, reasoning that the California UCL requires "only that the plaintiff must once have had an ownership interest in the money or property acquired by the defendant through unlawful means." *Id.* at 1498-50. Similarly, in *In re Anthem, Inc. Data Breach Litig.*, 2016 U.S. Dist. LEXIS 70594, at *180, 2016 WL 3029783 (N.D.Ca. May 27, 2016), the restitution claim was held to be viable because the offending product was sold through an intermediary to plaintiffs.

Here, by contrast, there is no possible basis to conclude that Defendants received any part of Ms. McKoy's payments to ACN, and the SAC does not so allege.

6

███████████████████████████████████

████████████████████████

Notably, in *Sullins v. Exxon/Mobil Corp.*, 2010 U.S. Dist. LEXIS 4178, 2010 WL 338091 (N.D.Ca. Jan. 20, 2010), the court drew this very distinction in deciding that it was required to dismiss a restitution claim. The plaintiff there asserted a California UCL restitution claim against an oil company to pay to clean up the plaintiff's property which the oil company had polluted when it owned the property.

> Plaintiffs do not allege that Defendant has wrongfully taken money or property from them. Nonetheless, citing *Troyk v. Farmers Gp., Inc.*, 171 Cal. App. 4th 1305, 1339, 90 Cal. Rptr. 3d 589 (2009), Plaintiffs argue that restitution includes the return of money from a defendant whose unlawful business practices caused the plaintiff to pay that money to a third party. Thus, Plaintiffs argue, they are entitled to the return of money they paid to any third party as a result of Defendant's unfair business practices.
>
> In *Troyk*, the court did state that, to establish standing to bring a UCL claim, a plaintiff need not have paid money directly to the defendant. *Id*. However, the facts in *Troyk* distinguish it from this case. In *Troyk,* the defendants, Farmers Group, Inc. (FGI) and Farmers Insurance Exchange (FIE), were sued over service charges paid by the plaintiffs to Prematic Service Corporation of California and Prematic Service Corporation of Nevada (Prematic), subsidiaries of FGI that handled customer billing for FIE. *Id.* at 1315. The court held that, even though the plaintiffs made their payments to Prematic, it could be inferred that a substantial portion of the payments were indirectly received by FGI as the parent corporation. *Id.* at 1340. Also, because Prematic was FIE's billing agent, FIE, as Prematic's principal, could be held liable for restitution for service charges paid to Prematic. *Id*. at 1341.
>
> Unlike *Troyk*, Plaintiffs do not allege that there is a special relationship between Defendant and the third parties to whom Plaintiffs made payments to remediate the property. What Plaintiffs seek is disgorgement, not restitution, and thus they lack standing to bring a UCL claim.

2010 U.S. Dist. LEXIS 4178, at *10-12. *Accord Height St. Skilled Care, LLC v. Liberty Mut. Ins. Co.*, 2022 WL 1665220 (E.D. Ca. May 24, 2022) (dismissing restitution claim because the plaintiff "alleges neither that [defendant] wrongfully took money or property that it was not entitled to keep, nor that it gave up money or property that it was entitled to keep"). *Sullins* and the authorities discussed above make crystal clear that Ms. McKoy cannot recover restitution from Defendants.

**B.    Genuine and Material Issues of Fact Do Not Exist as to Ms. Chadwick and Mr. Frazier's Claims under the Pennsylvania UTPCPL and Maryland CPA**

Plaintiffs Lynn Chadwick and Markus Frazier cannot raise genuine issues of fact as to their claims under the Pennsylvania UTPCPL and Maryland CPA, respectively, because they are not consumers protected by those statutes.

A UTPCPL claim can only be based on the purchase of "goods or services primarily for personal, family or household purposes." 73 Pa. Cons. Stat. § 201- 9.2(a). The statute  only applies to products purchased for personal, family, or household purposes. *Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir.  2002), *overruled in part on other grounds, Earl v. NVR, Inc.*, 990 F.3d 310 (3d Cir. 2021). Products purchased for use in business are not consumer goods purchased primarily for personal, family or household purposes. *Morales v. Superior* Living Prods., LLC, 2009 U.S. Dist. LEXIS 91578, at *35, 2009 WL 3234434 (E.D. Pa. Sept. 30, 2009) (purchased products were not consumer goods where "[plaintiff] was engaged in the business of bathroom renovation, bathroom product installation and bathroom product sales and wishe[d] to purchase Superior's products in an effort to market, sell, distribute and install Superior's products as part of [his] business."); *accord Lightfoot v. Borkon* (*In re Lightfoot*), 399 B.R. 141, 152 (Bktcy. E.D. Pa.  2008) ("the Debtor cannot succeed under her UDAP claim because she lacks a private right of action. The statute pertains to the purchase of goods or services primarily for personal, family or household purposes. . . . These purchases were made in the course of the business of the Debtor

and her husband."); *Carpenter v. Shu-Bee's, Inc.*, 2012 U.S. Dist. LEXIS 92951, at *18, 2012 WL 2594276  (E.D. Pa. July 5, 2012) (same).

Similarly, the Maryland CPA applies only to claims involving "consumer goods" and "consumer services" intended "primarily for personal, household, family, or agricultural purposes." Md. Code Com. Law § 13-101(c)-(d). *Layton v. Aamco Transmissions, Inc.*, 717 F. Supp. 368, 371 (D. Md. 1989), is on point. The district court held there that purchasers of a franchise opportunity were "not consumers and therefore have no cause of action under the Maryland Consumer Protection Act." *Accord Boatel Industries, Inc. v. Hester*, 77 Md. App. 284, 303 (1988) (a boat purchased for use in business was not a consumer good intended primarily for personal, household or family purposes); *Weaver v. Real Estate Funding, LLC*, 2010 WL 1662991 (D. Md. April 21, 2010) (a commercial loan is not covered by the CPA).

 Any contention that these Plaintiffs were harmed as consumers is spurious since the premise of the instant claims is that they were induced to join ACN by virtue of the alleged representations, i.e., that they could earn income as ACN salespeople.

### C.   Genuine and Material Issues of Fact Do Not Exist as to Reliance, Which is Required Under the Foregoing Statutes

Even if Plaintiffs could overcome the foregoing threshold liability issues, their state law statutory claims are still subject to dismissal because Plaintiffs cannot raise genuine and material

issues of fact as to reliance, which is required under each statute *See Hunt v. United States Tobacco*, 538 F.3d 217, 222-225 (3d. Cir. 2008) (PA law); *Lloyd v. Gen. Motors Corp*., 916 A.2d 257, 277 (Md. 2007); *Kwikset Corp.,* 51 Cal. 4th at 326-327. The record evidence shows that all three Plaintiffs became ACN IBOs based on ACN marketing directed at them, not based on any alleged misrepresentations made by President Trump.

---

[2] To the extent that the Plaintiffs allege that ACN was selling a video phone that was not a viable product, contrary to Defendants' alleged statements, the argument is a red herring.

The SAC alleges specifically that class members were misled by statements that led individuals to believe President Trump was not paid for his role as a celebrity spokesperson. SAC ¶¶ 137-161. ██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

Furthermore, Plaintiffs cannot be said to have reasonably or justifiably relied on President Trump's statements regarding their likelihood of earning income by being an ACN IBO. ███████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████

In sum, even assuming that Plaintiffs heard any alleged misrepresentations of fact made by President Trump, which is not the case, the record evidence confirms that any claim that those statements induced reliance given the facts is spurious.

### D.   President Trump's Alleged Misrepresentations are Non-Actionable Puffery

Dismissal of Plaintiffs claims is further compelled because the alleged misrepresentation made by President Trump – particularly the few general statements that Plaintiffs were even able to recall – are all non-specific, general descriptions of the ACN Opportunity and about ACN's services and products that are not false statements of fact and instead are most accurately characterized as non-actionable puffery and opinion.

Plaintiff allege four principal alleged misrepresentations made by President Trump about the following: (1) the level of risk associated with the ACN Opportunity; (2) the viability of ACN's videophone; (3) his compensation as a celebrity spokesperson; and (4) the extent of his due diligence about ACN. ███████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

General expressions by Donald J. Trump as to his opinion about ACN and praise for the ACN Opportunity, as opposed to factual assertions that are demonstrably false, can only be characterized as puffery. The Second Circuit's explanation of puffery is instructive.

> This Court has had little occasion to explore the concept of puffery in the false advertising context. In *Lipton v. Nature Co.*, 71 F.3d 464

(2d Cir. 1995), the one case where we discussed the subject in some depth, we characterized puffery as '[s]ubjective claims about products, which cannot be proven either true or false.' *Id*. at 474 (internal quotation marks omitted). We also cited to the Third Circuit's description of puffery in *Pennzoil Co*.: 'Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language. Such sales talk, or puffing, as it is commonly called, is considered to be offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer. . . . The 'puffing' rule amounts to a seller's privilege to lie his head off, so long as he says nothing specific.' *Pennzoil Co*., 987 F.2d at 945 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 109, at 756-57 (5th ed. 1984)). Applying this definition, we concluded that the defendant's contention that he had conducted 'thorough' research was just puffery, which was not actionable under the Lanham Act. See [*Lipton v. Nature Co*., 71 F.3d 464, 474 (2d. Cir. 1995)].

*Time Warner Cable, Inc. v. DIRECTV, Inc*., 497 F.3d 144, 159 (2d Cir. 2007).

This principle applies to all of the common law and statutory claims at issue. The Pennsylvania statutory claim fails because "one who claims a violation of the UTPCPL, however, must overcome the hurdle of puffery," which Ms. Chadwick cannot do. *Kovalev v. Lidl US LLC*, 2022 U.S. Dist. LEXIS 230259, at *53-56, 2022 WL 17858055 (E.D. Pa. Dec. 21, 2022) ). Ms. Chadwick cannot prove justifiable reliance given her lack of reliance on any specific statement by President Trump that can be characterized as factually false. *Scaife Co. v. Rockwell Standard Corp*., 285 A.2d 451 (Pa. 1971), *cert. denied,* 407 U.S. 920 (1972). ████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████

Similarly, Ms. McKoy's claims under the UCL and FAL fail based on the principle that "puffery is not actionable for false advertising claims" such that "[s]ubjective, generalized, vague, and unspecified assertions that cannot be proven true or false constitute 'mere puffery upon which a reasonable consumer could not rely,' and thus are not actionable under the false advertisement prongs of" those statutes. *Vitiosus v. Alani Nutrition, LLC*, 2022 U.S. Dist. LEXIS 118090, *35-36, 2022 WL 2441303 (S.D. Ca. July 5, 2022) (citations omitted); *Accord In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 U.S. Dist. LEXIS 140212, at *103-106, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017); *see also Gillette Co. v. Wilkinson Sword, Inc.*, 1989 WL 8276 (S.D.N.Y. July 6, 1989). ██████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████

Likewise, Mr. Frazier cannot prove that any alleged "misrepresentation substantially induced [him] to act." *McKenzie v. Comcast Cable Communications, Inc.*, 393 F. Supp. 2d 362, 376 (D. Md. 2005); *see also, Baney Corp. v. Agilysis NV, LLC*, 773 F. Supp. 593, 608-609 (D. Md. 2011). ████████████████████████████████████████████████████████████

████████████████████████████████████ Those general statements are puffery, not actionable misrepresentations of fact. *Bryan v. Fay Servicing, LLC*, 2019 U.S. Dist. LEXIS 27982, at *11-14, 2019 WL 764705 (D. Md. Feb. 21, 2019).

## II.   THE COURT SHOULD DISMISS PLAINTIFFS' COMMON LAW FRAUD AND NEGLIGENT MISREPRESENTATION CLAIMS

Plaintiffs cannot raise any genuine issues of material fact as to their common law fraud and negligent misrepresentation claims for the reasons set forth above and because based on the record

they are unable to adduce the mandatory clear and convincing evidence of fraud required by Pennsylvania and Maryland law. *Rutherford v. BMW of N. Am., LLC*, 579 F. Supp. 3d 737, 747 (D. Md. 2022); *V-Tech Servs. v. Street*, 72 A.3d 270, 276 (Pa. Super. 2013), or the preponderance of evidence of fraud required by California law. *Liodas v. Sahadi*, 19 Cal. 3d 278, 291 (1977).[3]

In California, "[t]he elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Ct.,* 12 Cal. 4th 631, 638 (1996). Negligent misrepresentation is a species of fraud requiring a positive assertion. *Wilson v. Century 21 Great Western Realty,* 15 Cal. App. 4th 298, 306 (1993). In Pennsylvania, fraud requires a representation material to the transaction at hand made falsely, with knowledge of its falsity or recklessness as to whether it is true or false, with the intent of misleading another into relying on it, justifiable reliance and resulting injury proximately caused by the reliance. *Bortz v. Noon,* 729 A.2d 555, 560 (1999). Negligent misrepresentation differs in that the representation must be made under circumstances in which the speaker ought to have known of its falsity. *Milliken v. Jacono,* 60 A.3d 133, 141 (Pa. Super. 2012). In Maryland, a fraud claim requires proof that a false representation was made, that its falsity was either known to the maker or that the representation was made with such reckless indifference to the truth as to be equivalent to actual knowledge of falsity, that the representation was made for the purpose of defrauding the plaintiff, that the plaintiff not only relied on the representation but had a right to rely on it and would not have done the thing from which the injury arose had the misrepresentation not been made, and that the plaintiff actually suffered damage

---

[3] Only the common law of the three Plaintiffs' domiciles are addressed herein inasmuch as there is no certified class that would include IBOs from other states (nor should there be).

directly resulting from the misrepresentation. A negligent misrepresentation claim requires the plaintiff to prove that the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement; the defendant intended that the statement will be acted upon by the plaintiff; the defendant has knowledge that the plaintiff will probably rely on the statement which, if erroneous, will cause loss or injury; the plaintiff, justifiably, took action in reliance on the statement, and the plaintiff suffered damage proximately caused by the defendant's misrepresentation. *Martens Chevrolet v. Seney,* 292 Md. 328, 333, 337 (1982).

As with the statutory claims, Plaintiffs' common law claims fail because they are based on non-actionable puffery and because Plaintiffs cannot show knowledge or falsity or reckless disregard, or that they justifiably relied on any misrepresentations made by President Trump given the evidence that they actually relied on the myriad information provided by ACN and its representatives, including the friends and relatives who induced them to sign up. Reliance on general statements about the company as if they ensured an income would not be justifiable in light of ████████████████████████████████████████

Plaintiffs cannot raise genuine and material issues of fact as to their misrepresentation claims for a variety of additional reasons. Ms. McKoy cannot raise a genuine issue of fact as to scienter as required by California law. *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1103 (C.D. Cal. 2012); *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468 (Cal. App. 1997) (the "requisite state of mind, or scienter, for actual fraud or intentional misrepresentation is disbelief in the truth of the statement, *i.e.,* knowledge of falsity"). Even if Ms. McKoy could identify any false statements made by President Trump that she heard and relied on, which she cannot, she has no factual basis to credit the SAC's hollow averment that President Trump knowingly made false statements regarding ACN's services, products or opportunities. For the same reasons, Mr. Frazier

and Ms. Chadwick cannot raise genuine material issues of fact as to knowing falsity or reckless

indifference to the truth as required by Maryland and Pennsylvania law. *Nails v. S&R*, 639 A.2d

660, 668-669 (Md. 1994); *Milliken v. Jacono*, 60 A.3d 133, 140 (Pa. Super. 2012).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

     Ms. McKoy and Mr. Frazier's negligent misrepresentation claims fail for an additional

reason: neither can muster any evidence that President Trump, in making statements regarding the

ACN Opportunity, intended to induce their reliance. *Fox v. Pollack*, 181 Cal. App. 3d 954, 962

(1986); *Lloyd v. General Motors Corp.*, 916 A.2d 257, 273 (Md. Ct. App. 2007).

    Specifically, under Pennsylvania law Ms. Chadwick cannot raise a genuine issue of fact as

to her common law misrepresentation claim ████████████████████████████████

████████████████████████████████████████████████   *Gerfin v.*

*Colonial Smelting & Refining Co., Inc.,*  97 A.2d 71, 72 (Pa. 1953); *Pittsburgh Live, Inc. v. Servov*,

615 A.2d 438, 441 (Pa. Super. 1992) (if a fraud plaintiff cannot "distinctly remember the facts to

which [she] testif[ied], and narrate the details exactly," the claim fails).

Additionally, Ms. Chadwick and Ms. McKoy's fraud claims fail to the extent they are predicated on alleged omissions as opposed to affirmative misrepresentations because Defendants – who had no relationship with ACN IBOs –had no duty of disclosure to them. An omission claim is not viable under Pennsylvania and California law absent such a duty. *Weisblatt v. Minnesota Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 382 (E.D. Pa. 1998); *In re Vizio, Inc. Consumer Product Litig.*, 238 F. Supp. 3d 1204, 1230 (C.D. Cal. 2017).

## III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT FOR THE ADDITIONAL REASON THAT PLAINTIFFS CANNOT CAUSALLY RELATE ANY RECOVERABLE DAMAGES TO DEFENDANTS' ALLEGED MISREPRESENTATIONS

Plaintiffs, collectively, can adduce no admissible evidence that anything Defendants said or did was the legal cause of their alleged damages. Plaintiffs are simply unable raise a genuine and material issue of fact as to their claim that the ACN Opportunity was worthless. Generally, if an investment or business opportunity is not clearly worthless there is no damages claim. *See generally* Defendants' memorandum of law in opposition to class certification Point I(C) (Docket No. 553). *See also Rodriguez v. It's Just Lunch Int'l, Inc.,* 2018 WL 3733944 (S.D.N.Y. Aug. 6, 2018) (if a product or service is not completely worthless, a damages model is needed explaining what amount of refund or other monetary relief would apply). Yet Plaintiffs posit that they should be entitled to a complete refund of all monies they paid to ACN (not to Defendants). *See* Plaintiffs' reply memorandum of law in support of class certification motion p. 8 (Docket No. 562) ("Plaintiffs' damages are straightforward – the fees every class member paid to ACN . ."). If Plaintiffs had any prospect of making money from becoming IBOs, they would not be entitled to damages simply by virtue of the fact that, after joining and briefly acting as IBOs, they in fact did not make money. The evidence adduced by both sides shows that earning income was possible, as further explained below.

Based on the factual record, Plaintiffs cannot raise a genuine and material issue of fact as to their claim that President Trump's representations were the cause of their losses. ███████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

      ████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

[4] ██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████



Professor Bosley's opinion is seriously flawed and should be excluded from evidence in the context of this motion.[5]  The Second Circuit has provided the legal framework to support this outcome:  Under the seminal *Daubert* decision, "the district court functions as the gatekeeper for expert testimony. The court performs the same role at the summary judgment phase as at trial; an expert's report is not a talisman against summary judgment."  On summary judgment, the Court should "weed out cases in which 'there is no genuine issue as to any material fact and… the moving party is entitled to a judgment as a matter of law,' it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment."  These factors apply when the court addresses the admissibility of expert testimony. *Raskin v. Wyatt Co.*, 125 F.3d 55,

---

[5] "It is appropriate for a trial court to credit proffered expert testimony at the summary judgment stage on the basis of its reliability assessment, and either to deny summary judgment on the ground that the testimony presents a genuine issue of material fact or, in some instances, to grant summary judgment on the basis of reliable and undisputed expert testimony." 4 Weinstein's Federal Evidence § 702.05.

66 (2d Cir. 1997) (internal citations omitted);  *see also Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008); *see generally Daubert v. Merrell-Dow Pharmaceuticals, Inc.*, 509 U.S. 567 (1993).

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████  Given that glaring problem with her assertions, there is ample legal authority to exclude her ultimate opinion that Defendants' statements were the legal cause of Plaintiffs damages. As recently held: "a district court may exclude expert testimony if it determines that 'there is simply too great an analytical gap between the data and the opinion proffered.'" *Phoenix Light SF Ltd v. Wells Fargo Bank, NA*, 574 F. Supp. 3d 197, 201 (S.D.N.Y. 2021). *Accord Ascher v. Target Corp.*, 522 F. Supp. 2d 452, 461 (E.D.N.Y. 2007).  The Court should exclude or disregard Professor Bosley's evidence and grant summary judgment to Defendants because of this huge analytical gap.

While that contradiction in light of this authority alone should end the inquiry, there are additional reasons that widen the analytical gap between the data and the opinion and compel the conclusion that Plaintiffs cannot prove causation.  Professor Bosley fails to explain – and Plaintiffs cannot prove –  why Defendants' alleged misrepresentations were the proximate cause of damages instead of those damages being caused that myriad of reasons that individuals who embark on sales as a means of making a living frequently fail as a general proposition, or that, in this particular situation, ACN IBOs, including these three Plaintiffs, failed for any or all of those same reasons.  Professor Bosley undertook no analysis as to these individual Plaintiffs.  She failed to evaluate whether they possessed the skills and aptitude to be successful in sales.  She failed to evaluate the quality or extent of the efforts they expended to be successful.  She failed to evaluate

whether their efforts were consistent with the ACN sales template. In short, her work failed to rule out other undisputedly known and critical factors that bear on sales success or failure in order to arrive at her ultimate opinion. Her work suffers from such a monumentally wide gap between the facts/data and her opinion such that her opinion should be excluded from evidence.

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███

In sum, it is indisputable that Plaintiffs could have succeeded as IBOs just as other IBOs concededly did even if they were supposedly induced to join ACN by President Trump's misrepresentations. Why these three IBOs did not succeed while some of their peers did is attributable to a variety of factors. But on this record Plaintiffs have not raised a genuine issue of material fact as to their claim that Defendants' statements were the legal cause of the alleged damages under any of the statutes or common law theories they advance.

## CONCLUSION

For the reasons stated above and in the accompanying and referenced submissions, this Court should grant Defendants' Motion for Summary Judgment and dismiss this action with prejudice.

Dated: New York, New York
        May 26, 2023

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: /s/ /Peter T. Shapiro

    Peter T. Shapiro
    Greg Johnson
    Carrie C. Turner
    77 Water Street, Suite 2100
    New York, New York 10005
    (212) 232-1300
    Peter.Shapiro@lewisbrisbois.com
    Greg.johnson@lewisbrisbois.com
    Carrie.turner@lewisbrisbois.com


**ROBERT & ROBERT PLLC**

    Clifford S. Robert
    Michael Farina
    526 RXR Plaza
    Uniondale, New York 11556
    (516) 832-7000
    crobert@robertlaw.com
    mfarina@robertlaw.com

    *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

Peter T. Shapiro, an attorney duly admitted to practice before this Court, certifies that on May 26, 2023, he caused Defendants' Memorandum of Law to be filed and served by ECF upon all attorneys of record.

/s/ Peter T. Shapiro
Peter T. Shapiro
