**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
CATHERINE McKOY, MARKUS FRAZIER, and
LYNN CHADWICK, individually and on behalf of
all others similarly situated,

                  Case No. 18-cv-09936 (LGS) (SLC)

            *Plaintiffs*,

     -against-

THE TRUMP CORPORATION and DONALD J.
TRUMP, in his personal capacity,

            *Defendants*.
---------------------------------------------------------------X

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

LEWIS BRISBOIS BISGAARD & SMITH LLP
77 Water Street, Suite 2100
New York, New York 10005

- and -

ROBERT & ROBERT PLLC
526 RXR Plaza
Uniondale, New York 11556

125845879.1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

    I.    GENUINE AND MATERIAL ISSUES OF FACT DO NOT EXIST AS TO ANY OF PLAINTIFFS' FRAUD AND MISREPRESENTATION-BASED CLAIMS ........................................................ 1

        A.    The Alleged Statements Were Not Heard or Relied On by Plaintiffs ........ 2

        B.    The Alleged Statements Are Not Objectively False ................................... 4

        C.    The Alleged Statements Are Not Material or Fact-Based Misrepresentations ....................................................................................... 6

    II.    GENUINE AND MATERIAL ISSUES OF FACT DO NOT EXIST AS TO ANY OF PLAINTIFFS' STATUTORY CLAIMS .................................... 8

        A.    Defendants Cannot be Required to Make Restitution Under the UCL and FAL ............................................................................................. 8

        B.    Plaintiffs Cannot Recover Under the Maryland or Pennsylvania Statutes ................................................................................ 9

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Bridge v. ETrade Sec. LLC,*
  2011 WL 5444266 (N.D. Cal. 2011) ................................................................................... 3

*Clark Consulting, Inc. v. Fin. Sols. Partners, LLC*,
  2005 WL 3097892 (S.D.N.Y. Nov. 17, 2005) ..................................................................... 3

*Gillette Co. v. Wilkinson Sword, Inc.*,
  1989 WL 8276 (S.D.N.Y. July 6, 1989) .............................................................................. 7

*Green v. Wing Enters.,*
  2015 WL 7351478 (D. Md. Nov. 20, 2015) ........................................................................ 2

*In re MyFord Touch Consumer Litig.,*
  46 F. Supp. 3d 936 (C.D. Cal. 2014) ................................................................................... 4

*Luman v. Theisman,*
  647 Fed. Appx. 804 (9th Cir. 2016) ..................................................................................... 9

*Martin v. FRS Company*,
  2014 WL 206052 (C.D.C. Feb. 25, 2014) ........................................................................... 7

*Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*,
  86 Cal. App. 4th 303 (2000) ................................................................................................ 6

*Newcal Ind. Inc. v. Ikon Office Solution,*
  513 F.3d 1038 (9th Cir. 2008) ............................................................................................. 8

*Rhee v. Highland Dev. Corp.,*
  958 A.2d 385 (Md. Ct. Spec. App. 2008) ............................................................................ 3

*SodexoMAGIC LLC v. Drexel Univ.,*
  24 F.4th 183 (3d Cir. 2022) ................................................................................................. 3

*Summit Tech. v. High-Line Instruments Co.,*
  933 F. Supp. 918 (C.D. Ca. 1996) ....................................................................................... 8

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007) ................................................................................................ 7

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.,*
  709 F. Supp. 2d 821 (C.D. Cal. 2010) ................................................................................. 7

*United States v. Levy*,
  2013 WL 3832718 (S.D.N.Y. July 15, 2013) ...................................................................... 7

**PRELIMINARY STATEMENT**

Plaintiffs' opposition to Defendants' motion for summary judgment confirms that there are no genuine and material issues of fact as to any of Plaintiffs' claims. As further demonstrated below, the Court should grant summary judgment in Defendants' favor on all of Plaintiffs' claims and put an end to this meritless action.[1]

**ARGUMENT**

**I.   GENUINE AND MATERIAL ISSUES OF FACT DO NOT EXIST AS TO ANY OF PLAINTIFFS' FRAUD AND MISREPRESENTATION-BASED CLAIMS**

As set forth in Defendants' opening brief, this entire case is about ACN,[2] a multi-level marketing company that sold Plaintiffs the ACN Opportunity and benefitted from their involvement therein. However, in an unprecedented move, Plaintiffs seek to hold President Trump and the Trump Corporation responsible for their failure to earn income while involved with ACN. This, despite the uncontroverted facts that President Trump was merely a celebrity spokesperson for ACN, had no ownership interest in ACN, had no contractual relationship with Plaintiffs, received no monies from Plaintiffs, and had no direct dealings with Plaintiffs at all. Although Plaintiffs try to downplay ACN's disclosures and disclaimers, it is also an uncontroverted fact that ACN cautioned Plaintiffs that they might earn no income from the ACN Opportunity and advised them that there was no guarantee otherwise. Having gone into the ACN Opportunity with their eyes wide open, Plaintiffs cannot now be heard to complain that they relied blindly on President Trump's alleged statements while completely ignoring ACN's disclosures and disclaimers.

In opposition, Plaintiffs again ignore what is right in front of them and attempt to persuade this Court that genuine and material issues of fact do exist as to their fraud-based claims. As with

---

[1] Defendants plan to file an application to strike improper portions of Plaintiffs' opposing papers on June 26, 2023.

[2] Terms defined in Defendants' opening brief ("Defendants' Brief") are hereby adopted and incorporated by reference.

the ACN disclosures and disclaimers, Plaintiffs simply cannot escape the fact that their own testimony demonstrates that the alleged statements made by President Trump were not heard by them, or that they did not rely upon any of the alleged statements. Plaintiffs also cannot escape the fact that the alleged statements are objectively not false, or that the alleged statements were not material or fact-based misrepresentations.

> A.  **The Alleged Statements Were Not Heard or Relied On by Plaintiffs**

As Defendants' Brief demonstrated, the deposition testimony of all three Plaintiffs confirmed that none of them could recall any specific alleged statements on which the Second Amended Complaint ("SAC") incredibly alleges they relied.[3] That the SAC is a work of fiction could not be more obvious. Not only do the allegations fall far short of raising any disputed genuine and material issues of fact that would prevent granting the instant motion, but what is alleged is not actionable in any event. For instance, the alleged statements about the ACN videophone being a product that had a bright future are ones that none of the Plaintiffs recall having heard or relied upon. The same goes for the alleged statements made by President Trump at ACN conferences. It is an undisputed fact that none of the Plaintiffs attended any of the various conferences and as a result thereof they could not have heard any such statements or relied upon them. Similarly, none of the alleged statements attributed to President Trump in the Success From Home article (Plaintiffs' Brief p. 6) are significant as none of the Plaintiffs testified that they read that article or any of the other articles Plaintiffs highlight.

---

[3] Plaintiffs' reliance on *Green v. Wing Enters.,* 2015 WL 7351478, at *4 (D. Md. Nov. 20, 2015), is misplaced. In *Green*, although the plaintiff could not recall the exact wording of the allegedly fraudulent statements, she did recall the thrust of what was presented. There was no suggestion in *Green*, as there is here, that the plaintiff could not recall multiple statements that the complaint alleged she did recall and/or relied upon. The only statements that the Court should consider as having been a factor in Plaintiffs' decisions to enroll as IBOs are those statements that they recalled during their depositions. (Notably, Plaintiffs do not attempt to rehabilitate their faulty memories by submitting declarations.) The existence of video of certain alleged statements that Plaintiffs did not recall (Plaintiffs' Brief p. 23) does not prove that Plaintiffs saw those videos and heard the contents therein.

Perhaps recognizing that their claims have unraveled, Plaintiffs now shift their focus to President Trump's alleged failure to disclose that he was being paid to act as a celebrity spokesperson for ACN. Significantly, it is an undisputed fact that President Trump did not create the ACN Opportunity discs that were the primary means by which IBOs, including Plaintiffs, would have heard President Trump's alleged statements. And, there is no basis in the laws of California, Maryland or Pennsylvania to find that every time President Trump made a statement about ACN that he was under an affirmative duty to ensure that the audience was advised that he was being paid as a celebrity spokesperson. *Cf. Clark Consulting, Inc. v. Fin. Sols. Partners, LLC*, 2005 WL 3097892, at *3 (S.D.N.Y. Nov. 17, 2005) (Lanham act imposes no affirmative duty of disclosure). ▌ The evidence bears out that Plaintiffs did not know or care about whether President Trump was being paid to act as a celebrity spokesperson for ACN, and did not reply upon any such undisclosed fact in deciding to become ACN IBOs.

The authorities cited by Plaintiffs for the proposition that Defendants had a duty of disclosure are all inapposite. *Bridge v. ETrade Sec. LLC,* 2011 WL 5444266, at *5 (N.D. Cal. 2011), indicates that a duty of disclosure may be imposed upon one owing a fiduciary duty (which is not alleged here), but does not stand for the proposition that such duty exists outside that context. *SodexoMAGIC LLC v. Drexel Univ.,* 24 F.4th 183, 211-212 (3d Cir. 2022), suggests that a duty to correct facts may exist when prior representations are found to have been inaccurate. Nothing of the sort occurred here. *Rhee v. Highland Dev. Corp.,* 958 A.2d 385, 396-97 (Md. Ct. Spec. App. 2008), involved a real property seller's duty to refrain from actively, intentionally concealing a

material defect in the property. That type of situation is obviously not present here. *In re MyFord Touch Consumer Litig.,* 46 F. Supp. 3d 936, 958-60 (C.D. Cal. 2014), applied a rule applicable in California product safety litigation under which a manufacturer may have a duty to disclose a defect in the product. Again, such a rule has no applicability here. In sum, there is no support for the insupportable proposition on which Plaintiffs rest their case.

### B.     The Alleged Statements Are Not Objectively False

As Defendants' Brief demonstrated, President Trump's alleged statements are not actionable. Plaintiffs' opposition focuses on a few select statements, to no avail. The alleged statement that the ACN Opportunity does not entail the same risks as starting a new business from scratch is true and accurate. The following are undisputable facts: unlike a stand-alone start-up entrepreneur, an ACN IBO does not have to spend time and money (1) finding products and services to sell, (2) contracting to purchase and purchasing those services and products, (3) marketing products and services, (3) renting space including for storing products; (4) delivering products, (5) procuring insurance, or (6) attempting to mitigate potential personal liability for liabilities and debts commonly incurred by fledgling entrepreneurs. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Plaintiffs place significant weight on their claim that it was untrue that they had the opportunity to earn money through ACN. However, statements that Plaintiffs <u>had</u> the opportunity to earn money through ACN were indisputably and literally true. Many IBOs were able to earn and did earn money, including by way of example ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Since each new IBO has the same opportunity to succeed, there can be no false statement associated with what Plaintiffs essentially claim without any factual basis amounts to selling an unmitigated "lemon" to prospective IBOs. The fact that it may be uncertain whether any given IBO will succeed does render false a statement of possible success. Indeed, Ms. McKoy, Ms. Chadwick and Mr. Frazier might have succeeded just as ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇ did. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Here, all Plaintiffs stayed with ACN for less than two years. They had the potential to succeed, albeit not a certainty, had they remained enrolled and worked to generate sales just as their colleagues did.[4]

Plaintiffs proceed to disparage the extent of President Trump's due diligence on the ACN Opportunity.[5] Plaintiffs completely ignore the fact that there is no accepted established standard for sufficient due diligence by a paid celebrity spokesperson. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇ Regardless of the extent of the due diligence, there is no evidence that any of the alleged statements President Trump made about ACN were false, or that he made any statements about ACN or its products or services that he knew to be false. That various unproven statements were

---

[4] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Everyone knows that there are risks to joining a direct marketing company and there is no guarantee of success. Plaintiffs' claim collapses because they depend on the fiction that these three individuals reasonably could have believed that if they did not make money that could only have happened because they were misled.

[5] Plaintiffs contend inaccurately that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Her unfounded assumptions are patently not a basis to tar President Trump for having misled her about the extent of his research or anything else.

made about ACN's business model proves nothing. ACN had a successful business for decades. Under the circumstances, there is no basis in the record to find that President Trump was knowingly misleading prospective IBOs and Plaintiffs have not raised a genuine fact issue.

### C. The Alleged Statements Are Not Material or Fact-Based Misrepresentations

As Defendants have demonstrated, there is no factual basis for Plaintiffs' claim that President Trump made false statements of existing fact. A statement of existing fact, not a view about what might happen in the future or an opinion, is required to prove fraud. *E.g., Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells*, 86 Cal. App. 4th 303, 309–10 (2000). In opposition, Plaintiffs sidestep this issue and claim to have relied on President Trump's statements about ACN because he effectively affiliated himself with ACN and thereby endorsed its business generally, not any particularized false statements he allegedly made about ACN. This is not a certified class action in which representations made to members of a large class over many years are at issue. Moreover, President Trump's statements to the effect that ACN is a great company or he is fond of ACN's founders are puffery and opinion, not factual misrepresentations. Plaintiffs' putative reliance on generalized positive statements about the ACN Opportunity is legally deficient.

President Trump's opinions and his general belief in the ACN Opportunity, supported by due diligence and his regular interaction with satisfied IBOs, amount to puffery and hyperbole that cannot form the basis of misrepresentation claims. Plaintiffs attempt to evade the absence of liability for puffery by claiming it is a seller's privilege that only the seller can invoke.[6] The cases cited, including in their footnote 15, do not so hold.[7] No decision has been identified that holds

---

[6] Accepting Plaintiffs posit that President Trump is in a materially different position from a seller for this purpose would mean he cannot be held liable under the UCL and FAL as effectively the party to the transactions with IBOs who can be compelled to make restitution.

[7] Plaintiffs argue that Defendants' puffery defense is based on "federal law." That is not the case. There are no federal claims in this case. The cited decisions of various courts announce principles that have clear application outside the contexts in which the issues arose, such as false advertising under the Lanham Act in *Time Warner Cable, Inc. v.*

that puffery is a privilege reserved to sellers in all cases. In *United States v. Levy*, 2013 WL 3832718, at *3 (S.D.N.Y. July 15, 2013), the court found that defense unavailable to third-party promoters and touters in a case involving securities fraud violations, including false representations to the public securities market, which are obviously not at issue here. The Court should instead be guided by decisions arising from factual scenarios more like those present here. For example, the court in *Martin v. FRS Company*, 2014 WL 206052 (C.D.C. Feb. 25, 2014), dismissed false advertising claims against celebrity endorser Lance Armstrong on puffery grounds. (Although Armstrong was added to the seller's board, he was still an endorser, not the product seller, and successfully asserted this dispositive defense.) Similarly, in *TYR Sport, Inc. v. Warnaco Swimwear, Inc.,* 709 F. Supp. 2d 821, 831 (C.D. Cal. 2010), the court dismissed false advertising claims against Mark Schubert, a paid spokesperson, because his puffing statements about Speedo products were not actionable. Moreover, there is no principled basis to bar a celebrity spokesperson from being able to rely on the puffery defense in the instant context. It would be paradoxical to do so, because the law would then be that a seller could avoid liability for puffing statements despite being in the best position to verify the accuracy of the statements being made, while the hired celebrity spokesperson would be saddled with liability for the puffing statements.

Plaintiffs cannot refute that the alleged misrepresentations are all in the nature of general touting and do not constitute actionable misrepresentations of existing facts. As the Ninth Circuit explained, 'a statement that is quantifiable, that makes a claim as to the "specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective

---

*DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007). *See also Gillette Co. v. Wilkinson Sword, Inc*., 1989 WL 8276 (S.D.N.Y. July 6, 1989) (company's superlatives about the quality of their shaving product are puffery, not false advertising under Lanham Act). In any event, Defendants rely on decisions under state consumer protection and common law previously and hereinabove. *See* Defendants' Brief pp. 15-17.

claim about a product is nonactionable puffery." *Newcal Ind. Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1053 (9th Cir. 2008) (citation omitted). The alleged misrepresentations that Plaintiffs might actually have heard or relied upon fall on the general, subjective side. *See also, e.g., Summit Tech. v. High-Line Instruments Co.,* 933 F. Supp. 918, 932 (C.D. Ca. 1996) (seller's claim that its machines are perfectly reliable held to be puffing).

The statements of opinion or about future events at issue here are simply not actionable as fraud. President Trump's opinion about ███████████████████████ are certainly genuine. Plaintiffs do not argue otherwise, and those statements cannot be construed as false statements of existing fact under any analysis. President ███████████████████████████ ████████████ was nothing more than an opinion about what might happen; it cannot be recast as a false statement of existing fact.

## II. GENUINE AND MATERIAL ISSUES OF FACT DO NOT EXIST AS TO ANY OF PLAINTIFFS' STATUTORY CLAIMS

### A. Defendants Cannot be Required to Make Restitution Under the UCL and FAL

As set forth in Defendants' Brief, there is no dispute that ████████████████ ████████████████████; she therefore cannot recover restitution from Defendants. In opposition, Plaintiffs argue that Ms. McKoy can receive restitution under California's UCL and FAL from President Trump because he was the indirect recipient of payments made by Ms. McKoy to ACN. This argument holds no water. ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ Plaintiffs strategically chose not to sue ACN; it has therefore never been established that ACN itself can be compelled to make restitution for what Plaintiffs paid to join and participate in the ACN Opportunity. As such,

there is no basis to require President Trump to make restitution to Plaintiffs as a purportedly indirect beneficiary of the monies they paid solely to ACN. The Court should follow the Ninth Circuit's ruling in *Luman v. Theisman,* 647 Fed. Appx. 804 (9th Cir. 2016), where consumer claims against a celebrity spokesperson brought under the California false advertising law were dismissed because he was not the seller of the consumer products at issue.

### B.  Plaintiffs Cannot Recover Under the Maryland or Pennsylvania Statutes

Defendants' Brief shows that Plaintiffs' claims under the UTPCPL and the CPA fail because those laws apply only to claims for consumer goods or services intended for personal, household and family purposes. In opposition, Plaintiffs half-heartedly attempt to show the opposite by citing a string of cases where statutory claims were sustained based on allegations that investors were tricked into investing in securities or other financial vehicles. Plaintiffs attempt to persuade the Court that the ACN Opportunity was akin to a security or investment opportunity, bringing the claims within the definition of a "service" or an investment vehicle for personal rather than business use that would be encompassed by the statutes, should be rejected. The ACN Opportunity was not a security or similar investment scheme; rather, it was the chance to join an existing business and earn money from one's own labor and that of other IBOs.



The ACN Opportunity is not akin to a security or investment vehicle that would be governed by these statutes. Plaintiffs' argument that the Court should focus on the purpose of Plaintiffs' purchases (Plaintiffs' Brief p.

15), proves this point. It is undisputed that the purpose for joining ACN was to earn money not to buy goods for Plaintiffs' own use.

The Pennsylvania cases on which Plaintiffs rely (each decided at the motion to dismiss stage) are inapposite as they all concerned individual securities investments, not transactions for the purpose of earning income as is the case as to the ACN Opportunity. Plaintiffs additionally cite a string of cases in a footnote, some of which involve illegal pyramid schemes and none of which involve the Maryland or Pennsylvania statutes (Plaintiffs' Brief p. 15). Most of the cited cases were brought under the FTC Act, which does not apply to the claims at issue here, or other state consumer protection laws which do not apply to Plaintiffs' instant claims. The cited decisions are not controlling or even instructive.

## CONCLUSION

For the foregoing reasons and those set forth in the moving papers, the Court should grant Defendants' Motion for Summary Judgment and dismiss this action with prejudice.

Dated: New York, New York
June 23, 2023

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: /s/ /Peter T. Shapiro
Peter T. Shapiro
Greg Johnson
Carrie C. Turner
77 Water Street, Suite 2100
New York, New York 10005
(212) 232-1300
Peter.Shapiro@lewisbrisbois.com
Greg.johnson@lewisbrisbois.com
Carrie.turner@lewisbrisbois.com

          **ROBERT & ROBERT PLLC**
          Clifford S. Robert
          Michael Farina
          526 RXR Plaza
          Uniondale, New York 11556
          (516) 832-7000
          crobert@robertlaw.com
          mfarina@robertlaw.com

          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      Peter T. Shapiro, an attorney duly admitted to practice before this Court, certifies that on June 23, 2023, he caused Defendants' Reply Memorandum of Law to be filed and served by ECF upon all attorneys of record.

                                                    /s/ Peter T. Shapiro
                                                        Peter T. Shapiro