```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                       Docket #18cv9936
MCKOY, et al.,                      : 1:18-cv-09936-LGS-SLC

                    Plaintiffs,     :

   - against -                      :

THE TRUMP CORPORATION, et al.,      : New York, New York
                                       September 20, 2023
                    Defendants.     :

------------------------------------ :


                    PROCEEDINGS BEFORE
              THE HONORABLE SARAH L. CAVE,
             UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:          KAPLAN HECKER & FINK LLP
                         BY:  JOHN QUINN, ESQ.
                         350 Fifth Avenue, 63rd Floor
                         New York, New York 10118

For Defendants:          LEWIS BRISBOIS BISGAARD & SMITH LLP
                         BY:  PETER SHAPIRO, ESQ.
                         77 Water Street, Suite 2100
                         New York, New York 10005

For Nonparty -           NELSON NIEHAUS LLC
ACN Opportunity,         BY:  STEPHANIE NIEHAUS, ESQ.
LLC:                     200 Park Avenue, Suite 1700
                         New York, New York 10017




Transcription Service:   Carole Ludwig, Transcription Services
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

<u>**INDEX**</u>

## <u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> |
|---|---|---|---|---|
| None | | | | |

## <u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                       PROCEEDING                    3

 2            THE COURT:  Good afternoon, this is Magistrate

 3    Judge Cave.  We're here for a conference in McKoy v. The

 4    Trump Corporation, case number 18cv9936.  Counsel,

 5    please state your appearance for the record.

 6            MR. JOHN QUINN:  Good afternoon, Your Honor,

 7    John Quinn from Kaplan Hecker on behalf of the

 8    plaintiffs.

 9            THE COURT:  Okay, good afternoon.  And for

10    defendants.  Okay, how about for ACM?

11            MS. STEPHANIE NIEHAUS:  Yes, good afternoon,

12    Your Honor, this is Stephanie Niehaus.

13            THE COURT:  Good afternoon.  And do we have any

14    counsel for defendants on the line?

15            MR. PETER SHAPIRO:  Yes, good afternoon, this

16    is Peter Shapiro for defendants.

17            THE COURT:  Okay, good afternoon, to all of

18    you, nice to meet you.  May I have the appearances

19    starting with the plaintiff please.

20            MR. PETER SHAPIRO:  Good afternoon, Your Honor,

21    John Quinn from Kaplan Hecker on behalf of the

22    plaintiffs.

23            THE COURT:  Okay.  So the issue for this

24    afternoon concerns ACN and some post-deposition

25    (indiscernible) for class that the plaintiffs had made
```

```
 1                           PROCEEDING                    4
 2   concerning the non-party IBO witnesses, Mr. Blum, Ms.
 3   David, Mr. Berringer, and Ms. Richardson, and
 4   specifically some ACN VIP portal records.  So, Mr.
 5   Quinn, would you like to start?
 6             MR. QUINN:  Sure, thank you, Your Honor.  And
 7   I'll be brief.  To start, I'll emphasize that while
 8   these individuals were only disclosed, you know, as the
 9   Court knows, on the last day of fact discovery, these
10   witnesses have become really central to defendant's case
11   as is clear from their class cert and their summary
12   judgment papers.  And all four of them in particular
13   testified that they were successful with ACN, and the
14   defendants have trumpeted that throughout their papers
15   as a direct response to the plaintiffs' claims here,
16   essentially arguing that plaintiff can't prove that what
17   Mr. Trump said about ACN was false because here are, for
18   example, the people who say they made money.  And
19   quoting from their brief in support of summary judgment,
20   that, in particular, the evidence is indisputable that
21   many IBO's made money in varying amounts in excess of
22   their investments.  That's ECF 592 at 28.
23             So central to their case has become the idea
24   that these four witnesses claim that success means
25   profitability, and ACN I think the other important piece
```

1                              PROCEEDING                         5

2  of background here is that ACN itself brought these

3  individuals into the case and these individuals have

4  entered the case voluntarily.  None of them, until our

5  deposition subpoenas, none of them received subpoena,

6  and all four of them testified that it was an ACN

7  executive who called them, asked them if they would, you

8  know, sort of do a favor, agree to testify in this case,

9  share their own experiences.  We don't know how many

10  people that individual asked, but these four said yes,

11  at which point ACN introduced them to defense counsel

12  and has paid for their, you know, arranged for counsel,

13  paid for counsel, and paid for their travel expenses.

14  So ACN has brought these people into the case, they've

15  come in voluntarily, and they have become key witnesses

16  for the defense.

17          The evidence that we're talking about now, the

18  VIP portals, are really critical evidence because at

19  their depositions all four individuals said they had

20  varying definitions of what success meant, they're not

21  sure that that really meant profitability per se, and,

22  in fact, they couldn't tell us how much money they made

23  in any particular year.  Mr. Plum said he had no idea

24  how much money he was making.  They couldn't estimate

25  their expenses.  They couldn't even state for any

1

2 particular year whether they, in fact, made a profit or

3 whether the expenses exceeded their income.

4        So they really weren't able to testify to the

5 point that defendants, you know, seek to glean from

6 their declarations.  Counsel has also since told us that

7 those individuals, despite some of their testimony to

8 the contrary, do not actually have records that bear on

9 these questions.  And ACN has also said it didn't save

10 their 1099's which was something that many of them

11 pointed to.  You know, I don't know, ACN sent me a 1099,

12 that's where I would look.  ACN didn't keep those, at

13 least not for the relevant years.

14        So these VIP portal records, which are

15 essentially just back office printouts that show what

16 was happening with these people, what transactions they

17 were engaging in with ACN, what products were they

18 ordering, what were they selling, how much money were

19 they making, what were the commissions, etc.  It is

20 essentially the only evidence that bears on the question

21 that defendants have made central to their defense.

22 We've been seeking their production since June, the

23 production of these documents.

24        You know, at the Court's directive, we took the

25 depositions first and we asked some of these questions

PROCEEDING                          7

1

2   to figure out what the witnesses could testify to and

3   what records did or did not exist.  And ACN has said, in

4   its sworn declaration, that it has the records right

5   front of it, it's looking at them, and it also, of

6   course, can't contest  that when the defendants asked to

7   see plaintiffs' records, ACN turned them over without

8   hesitation.  ACN has also not asserted any privilege nor

9   could they.  These aren't legal documents and they don't

10  involve communications with lawyers.

11          THE COURT:  Right.

12          MR. QUINN:  So I think at the end of the day,

13  this is pretty straightforward.  We are talking about

14  highly relevant evidence about central defense witnesses

15  that illuminates their actual experience with ACN, and

16  ACN can produce them with no burden and without

17  implicating any privilege.

18          So, you know, in those circumstances we call

19  for their production, as ACN did when the defendants

20  asked for these records for the plaintiffs.  ACN's

21  refused.  I can provide an update even beyond our

22  papers, but we had a meet and confer yesterday to try

23  one more time to resolve this during which ACN offered

24  to produce them but with heavy, heavy redactions for

25  relevance.  So all we would be able to see is what ACN

```
 1                          PROCEEDING                     8
 2   determined to be expense related.  We, of course,
 3   rejected that as inconsistent with what ACN did with
 4   respect to the plaintiffs, and because all of the
 5   context here about how these people were engaging with
 6   ACN in terms of transactions, it's just obviously
 7   relevant and presents no privilege or burden issue, and
 8   the confidentiality order really takes care of anything
 9   else.
10           I mean as this Court has recognized, and we've
11   looked at some of Your Honor's prior decisions, and I
12   can give the Court some cites, but unilateral redactions
13   for relevance when there's no privilege or burden issue
14   and there's a confidentiality order in please just
15   aren't, you know, acceptable.  So that was not an
16   acceptable compromise to us.
17           So I think that's what we are, and we've asked
18   accordingly for an order compelling production of the
19   VIP portal records that ACN has in front of it.
20           THE COURT:  So as I understand it, and I'll
21   hear from Ms. Niehaus in a second, but part of ACN's
22   argument is that they have provided you with equivalent
23   information.  Why is it that what ACN has already
24   provided doesn't satisfy your inquiry about being able
25   to answer this question about whether these four
```

1                        PROCEEDING                        9

2    individuals were successful?

3            MR. QUINN:  Well, I think two responses to

4    that.  Number one, what they provided so far is just a

5    list by year of total amounts earned.  No breakdown of,

6    you know, kind of how is that a reimbursement from a

7    prior year, it's genuine profit, you know, nothing else,

8    none of the color that they provided to the defendant

9    but not to plaintiffs.

10           THE COURT:  Okay.

11           MR. QUINN:  And they've now offered, you know,

12   we'll kind of do the same for expenses insofar as those

13   were things they purchased or ordered from ACN.  But

14   these records in total really are, I mean every piece of

15   them is sort of squarely relevant.  They just show what

16   was these witnesses' actual experience with ACN.  No one

17   has contended that they're not relevant to the case,

18   especially if they're witnesses who kind of voluntarily

19   come into this and claim success and become so central

20   to the defense theory.

21           So I think really two reasons.  One, you know,

22   a list of payments derived from them doesn't give, even

23   on the profit question, sufficient information to really

24   understand what's happening.  But, more broadly, I think

25   our position is everything in these records is

```
 1                         PROCEEDING                     10

 2  indisputably relevant.  These have become key witnesses,

 3  there's no privilege or burden issue, and insofar as ACN

 4  could even concoct another issue, it surely waived it

 5  when it produced these exact records with no relevancy

 6  redactions to the plaintiffs.  And these people aren't

 7  that differently situated.  They're not non-parties who

 8  were dragged into this.  They had voluntarily walked

 9  into it.  In fact, ACN brought them into it.  So it

10  should just produce their records.

11          THE COURT:  What was the volume for these

12  records for one of the plaintiffs, for example, is this

13  pages and pages or is it a small amount?

14          MR. QUINN:  I'm looking at one of the

15  plaintiffs' records in front of me and the printout, I

16  mean it's sort of a database, but the printout is eight

17  pages long.  I suspect for these folks, you know, who

18  are in a bit longer and had more involvement, that they

19  would be longer.  But, you know, they are a set of

20  records that have already been printed out and reviewed,

21  so I don't think that that volume creates any burden,

22  and there's no privilege issue, you know, whatsoever.

23  There aren't communications in here.  These are just

24  transaction records essentially.

25          THE COURT:  Okay.  Thank you, Mr. Quinn.  Ms.
```

```
 1                        PROCEEDING                  11

 2  Niehaus.

 3           MS. NIEHAUS:  Yes.  Good afternoon, again, Your

 4  Honor.  I think, you know, I can respond to some of the

 5  hyperbolic points that Mr. Quinn has made about who

 6  brought who to the table here and the critical

 7  significance of these four individuals who, frankly, you

 8  know, provided these statements a year ago, believing

 9  that was sort of going to be the end of the situation.

10  You know, what we have provided consistent with this

11  Court's order at 623, which is, in fact, an order and

12  not just a docket entry as plaintiffs tried to dismiss

13  it in their letter to the Court.  But we've provided a

14  declaration with available 1099 information for each of

15  the individuals going back to 2019 as well as a summary

16  chart of information drawn from their VIP portal

17  records.

18           I don't know why Mr. Quinn thinks they've been

19  printed out and they're just sitting in front of ACN.

20  They're not.  These are computerized electronic records

21  that were consulted and produced a summary chart of

22  their, well, it's not even their income from ACN.  It's

23  payments that were made by AN to them which could

24  potentially include reimbursements for certain amounts,

25  and that's just not clear from the VIP portal records.
```

1                          PROCEEDING                    12

2    So it's not even necessary income to them, but the

3    1099's were not available prior to 2019.  And that was

4    produced in conjunction with a declaration from an ACN

5    executive and produced to plaintiff.

6           They have since come back, as you know, and as

7    Mr. Quinn explained, and demanded full VIP portal

8    records for each of these individuals.  Yesterday, at my

9    request, based on the representations made to this Court

10   and the plaintiffs' letter of Friday, that what they

11   were really interested in is profitability information

12   for these four individuals.  I said that ACN was willing

13   to provide information from the VIP portal records to

14   demonstrate amounts paid to ACN by each of these four

15   individuals either in a summary form or we could produce

16   printouts that may be redacted but printouts of the

17   relevant portions from VIP portal showing expenses.

18          As plaintiffs have acknowledged, as has been

19   clear all the way through, that is not necessarily all

20   amounts paid by these individuals or any other

21   individual IBO in connection with their IBO business,

22   but it's amounts that the IBO's may have been paid to

23   ACN for materials for registrations, things along those

24   lines.  That is the information that is available to

25   ACN.

```
 1                      PROCEEDING                    13

 2              And, you know, that is what plaintiffs have

 3   been focused on both as they represented to Your Honor,

 4   during the depositions, and the recent correspondence,

 5   and in their requests to ACN, they want to know what the

 6   net profit was for each of these individuals.  We have

 7   now offered to provide that to them in conjunction with

 8   a declaration if they'd like from ACN that these, that

 9   this is information drawn from the VIP portal records.

10              But the plaintiffs want the full VIP portal

11   records for these individuals which are not indisputably

12   relevant to anything at issue in this case.  There are

13   proportionality limitations particularly as it relates

14   to non-parties, and I can cite to Your Honor guidance

15   from a New York district court on that specific issue.

16   I think it cannot go unrecognized that these are for

17   individuals who do have privacy considerations.  They

18   have not put themselves at the center of this

19   litigation.  They did appear voluntarily, they offered

20   testimony, and they do have an interest as does ACN in

21   protecting the other information that is in their VIP

22   portal or that may be in their VIP portal.

23              Each of these individuals has been with ACN for

24   a much longer period of time than the plaintiffs in this

25   case, meaning that their VIP portal records are
```

```
 1                    PROCEEDING                14
 2  substantially longer and include much more information,
 3  including name, address, email address, date of birth,
 4  their start date, their approved contact personal
 5  information, case information, their upline and downline
 6  information.  Those are, you know, that's information
 7  for other individuals who are not even potential
 8  witnesses in this case.  It may include any RAF
 9  (phonetic) codes that reflect the calls that they may
10  have made to ACN over time.
11          Mr. Plum, for example, his service goes back to
12  2003, so you can understand that these are significantly
13  more voluminous, would require much more review and
14  redaction at the very least of personal identifying
15  information.
16          And, you know, frankly, Your Honor, this feels
17  like a fishing expedition especially over the back of
18  these depositions that plaintiffs conducted where they
19  focused not so much on the declarations that these
20  individuals submitted or the substance of those
21  declarations, but, for example, in the case of Ms.
22  Richardson, whether she was baptized by somebody in her
23  ACN upline.  They put in front of her pictures from her
24  social media and asked her questions about whether she
25  had been baptized, whether she had found Jesus as a
```

1

2   result of ACN, completely unrelated and irrelevant and

3   obviously intended to embarrass and harass her.

4          The concern here is that is exactly what

5   plaintiffs are angling for by seeking the entire VIP

6   portal records for these individuals, not the

7   information that they have represented to this Court

8   that they feel is necessary to develop their case which

9   is profitability information which is what ACN has

10  offered to provided.

11         We would ask the Court to direct the plaintiffs

12  to discontinue their efforts to get overbroad

13  information from both ACN and these individual IBO's.

14  We will provide the expense information, as I informed

15  Mr. Quinn yesterday, but that should be sufficient to

16  satisfy the express document demands that plaintiff has

17  issued to these individuals and ACN outside of the

18  discovery period and, you know, without even a subpoena

19  at this point for that information because this Court

20  denied their request for, to issue document requests to

21  ACN back in June.

22         THE COURT:  Okay, so what is the information

23  that, if you were to provide the expense information on

24  the portal records, what is the information you're

25  suggesting you would be redacting?

1

2          MS. NIEHAUS:  Well, we could probably - I think

3   the easiest approach is to do what we did with the

4   payment information that was derived from VIP portal

5   records, and that is to create a summary chart and

6   produce that with a declaration authenticating it and

7   explaining how the information was pulled out of the VIP

8   portal records.  The alternative would be to print the

9   portion of the VIP portal record that includes that

10  expense information and redact anything that goes beyond

11  the expense information that might be included in that

12  section of the VIP portal.

13          I'm frankly not - I've never been on VIP

14  portal, I'm not familiar with it, but my understanding

15  from my client is that it would be possible to extract

16  that expense information and produce it.  Our concern,

17  of course, would be that if there's PII or some other

18  information sort of outside the scope of that request,

19  that we would redact that.  But we've offered to produce

20  the information to plaintiffs in one of those two ways,

21  and their response was no, we want the whole VIP portal

22  record because that's what you gave defendants pursuant

23  to a subpoena, by the way, for the plaintiffs.

24          It feels punitive and it feels like an effort

25  to make this extremely difficult on these four

```
 1                          PROCEEDING                    17

 2   individuals and ACN who continue to be non-parties in

 3   this litigation.

 4         THE COURT:  Well, I mean, as we've talked about

 5   several times, ACN is a little bit different than the

 6   typical non-party.  You know, we've seen you quite a

 7   bit, and we've had a number of issues relating to ACN.

 8   So it's a little bit different than a typical, you know,

 9   non-party completely unfamiliar with the subject matter

10   of the litigation.

11         But the concern that I have about what you've

12   provided and the option about providing just a summary

13   document with a declaration is admissibility.  And

14   obviously we're not addressed admissibility of this

15   evidence today, but down the road, when this case gets

16   to trial in front of Judge Schofield, you know, the

17   better evidence is an original record rather than a

18   summary chart that was prepared by someone.  And maybe

19   defendants are not going to have an issue with the

20   authenticity or, frankly, the plaintiff as well, you

21   know, the parties may not have an objection necessarily,

22   but I'm just trying to avoid an issue coming up in front

23   of Judge Schofield that could be resolved by simply just

24   providing the records themselves and not having to worry

25   about disputes about the authenticity and the
```

1                           PROCEEDING                   18

2   correctness of an information that's provided in a

3   summary chart.  So I think that's a valid concern on the

4   part of the plaintiff to, you know, to have a document

5   that's just generated as opposed to the original records

6   themselves.

7           MR. QUINN:  Your Honor, if I might just briefly

8   speak to that and address a point that Mr. Niehaus made.

9           THE COURT:  Sure.

10          MR. QUINN:  Yeah, I think it's – well, first,

11  I'd like to just briefly address the suggestion that we

12  in any way harassed these witnesses or behaved --

13          THE COURT:  I don't want to retry – I already

14  had this take a phone call from you guys during a

15  deposition, and I tried to tamp down on the subject

16  matter.  So I'm really not interested in relitigating

17  what these witnesses were asked or not asked and just

18  focus on these documents.  So if you need to make a

19  record, that's fine, but I'm not really interested in

20  that.

21          MR. QUINN:  Okay.  Understood.  I'll simply

22  move past the point, Your Honor.  I think important to

23  note that, even in her comments today, Ms. Niehaus very

24  carefully parsed a distinction that I'm not even sure I

25  understand between payments versus income, acknowledged

1                          PROCEEDING                    19

2   that in some ways, you know, reimbursement may

3   complicate that picture.  There was kind of similar

4   parsing around the expense question.  All of which just

5   highlights, you know, context is key.  Seeing the

6   reality, the actual evidence, what happened, what were

7   these transactions, what was the flow of money as

8   between ACN and these people.  That is key, and despite

9   Ms. Niehaus' presentation, I don't think there can be

10  any denial ACN contacted these people, they inserted,

11  they made these declarations voluntarily, and defendants

12  relied very extensively on them.

13          And what I'll also just point out, you still

14  heard no assertion of privilege, not even clear what

15  review would be needed.  In every discussion we have

16  ever had about the protective order in this case, we

17  have acknowledged and reiterated that protecting PII is

18  something we have no issue with and that is properly

19  designated under the protective order and properly

20  sealed.  So I just don't understand why the protective

21  order is a sufficient solution here, and in the absence

22  of any privilege suggestion and given the voluntary

23  appearance in the prior production for the plaintiffs, I

24  think just production of the full records is

25  appropriate, and the protective order solved any

```
 1                        PROCEEDING                  20
 2  remaining concern.
 3            THE COURT:  Yeah, I mean I think Ms. Niehaus'
 4  point is that these are non-parties, and so to the
 5  extent that their email addresses and people they spoke
 6  to, I agree, it's really not relevant.  As you point
 7  out, said redactions for relevance purposes are not
 8  relevant in other cases, but do you have any objection,
 9  Mr. Quinn, to redacting things like contact information
10  or social security numbers or names of other people who
11  might appear in these portal records?
12            MR. QUINN:  I guess my main priority, Your
13  Honor, is to get as much evidence as possible about
14  these four individuals' interaction with ACN.  You know,
15  so if that's where the Court draws the line, I think
16  that, that's certainly better than where we were.  I do
17  think, and, again, we would've done all of this in
18  discovery if defendants had simply disclosed these
19  witnesses at the beginning instead of at the end of
20  discovery.  So I know that the timing is unfortunate for
21  everyone, ourself included.  We would like very much to
22  be preparing for trial and not trying to belatedly
23  understand the defendants' case and take appropriate
24  discovery on it, but that is where we are because of
25  their disclosure failures.
```

```
 1                        PROCEEDING                  21

 2            But, frankly, I do think if there are people

 3   that these four individuals recruited into ACN, I'm not

 4   sure why it wouldn't be appropriate for the plaintiffs

 5   to contact those individuals and ask questions about how

 6   that actually proceeded, and, you know, Mr. Plum said

 7   his definition of success is recruiting other people and

 8   teaching them how to become successful.  So if there are

 9   downline individuals, it does seem appropriate discovery

10   and genuine discovery to me to call those individuals

11   and ask them about that.  But should the Court determine

12   that's not appropriate, I think --

13            THE COURT:  I just think we're –

14            (interposing)

15            MR. QUINN:  -- a production of the authentic

16   records without --

17            (interposing)

18            THE COURT:  -- we're getting a little bit far

19   afield for people who are not parties to this case.  Go

20   ahead, Ms. Niehaus.

21            MS. NIEHAUS:  Yeah, thank you, Your Honor.  I

22   mean discovery is long closed at this point, and this

23   just is sort of the same thing that we've been dealing

24   with over and over again.  We say we'll give you exactly

25   what you just asked us for which is information to be
```

1
2  able to discern as best as possible based on the
3  information that's still available net profitability.
4  And now I'm hearing that they want to identify other
5  witnesses from these VIP portal records.  So this is
6  exactly what we're trying to cut off by offering, and it
7  wouldn't just be redaction of names and contact
8  information but I would request that we be required only
9  to provide (indiscernible) discovery obligations the
10 portions of the VIP portal records that include expense
11 information which would identify the types of payments
12 made, whether there were monthly fees or for tools or
13 for events.  So that's money that was paid by these
14 IBO's to ACN.  We could segregate that information so we
15 don't even need to worry about redacting things from the
16 rest of the VIP portal.

17       And we can also if they like (indiscernible)
18 segregate the portion of the VIP portal that includes
19 payment information.  I was not trying to parse anything
20 there.  I was trying to explain that these are imperfect
21 records that they're not necessarily income to these
22 IBO's but may include other amounts that ACN paid to
23 them.  It's payment information, that's what it is.  And
24 so, you know, plaintiffs are free to draw their
25 conclusions (indiscernible) --

```
 1                       PROCEEDING                    23

 2           THE COURT:  You're breaking up a little bit,

 3   Ms. Niehaus --

 4           MS. NIEHAUS:  -- very clear up until this point

 5   that what they are interested in is understanding net

 6   profitability for these four individuals because of the

 7   representations that have been made about them in this

 8   case.  And we've offered to provide that.  That's the

 9   (indiscernible) these individuals are non-parties, they

10   have privacy interests.  They are not central to this

11   case.  And the burden on ACN of going through these

12   records and redacting also is not insignificant --

13           THE COURT:  Well, that doesn't get you very far

14   because the easiest thing for you to do to minimize the

15   burden, there is a protective order in this case.  There

16   have been no issues with anybody violating it.  The

17   easiest thing for you to do to make it less burdensome

18   for you is to just produce the records marked as

19   confidential.  So I'm not super sympathetic to the

20   burden argument because I think you've already taken the

21   more burdensome route.  I understand why you've taken

22   it, but the consequences of that is that you've brought

23   more burden on yourself by the way that you've chosen to

24   do this.

25           MS. NIEHAUS:  Well, Your Honor, if I may.  We
```

1                          PROCEEDING                    24

2   have another issue going on which is not ripe for this

3   Court's consideration, but the plaintiffs have

4   challenged all of ACN's confidentiality designations in

5   this case.  We're trying to work through that to come up

6   with a way that we can approach that process

7   efficiently, but they've taken the position that only

8   PII warrants confidential treatment.  So simply by

9   marking these productions confidential I have no

10  confidence that they won't come back and say we don't

11  agree with that.

12          THE COURT:  Well, but there's a mechanism in

13  the protective order for disputes about what's labeled

14  confidential.  So, you know, and nobody has any trouble

15  finding me to raise (indiscernible) about this or

16  anything else.  So there is a mechanism there.  But, Mr.

17  Quinn, you wanted to add statement?

18          MR. QUINN:  Yes, thank you, Your Honor, very

19  briefly.  As Ms. Niehaus pointed out, we are having

20  discussions about the protective order, but, as I

21  mentioned, we have been consistent and clear throughout

22  them that PII is properly designated and should remain

23  so.  So that remains a sufficient answer to the only

24  concern Ms. Niehaus has raised.

25          Just to be a little more specific about it, we

PROCEEDING                25

1

2   are concerns, of course, for the reasons Your Honor has

3   raised about overly manipulating these records or about

4   documents prepared unilaterally by counsel, and there

5   are some sections, should the Court determine that, you

6   know, PII including contact information for these

7   witnesses or members of their uplines or downlines isn't

8   appropriate, that would be pretty easy to address.

9   There's a box on the first page of representative

10  information that includes the individual's contact

11  information.  You know, that could simply be redacted in

12  some way.

13          And then the upline and downline sections, you

14  know, I think is it important that we see, given that

15  Mr. Plum, for example, said, yeah, his definition of

16  success is recruiting people, building a downline.  So I

17  think it's important that we have access to the evidence

18  to determine whether that's true, but there is just a

19  name column that could simply be redacted and allow us

20  to still see how many people were in the downline and

21  upline and all of the other important contacts.

22          So given that these are the only source of the

23  contemporaneous evidence, I think if the Court's

24  inclined not to rest of the protective order with

25  respect to PII either for these witnesses or for other

1                          PROCEEDING                      26

2   people the interacted with, redacting names and contact

3   information really doesn't appear very burdensome

4   looking at the records that were produced, of course,

5   without redactions for the plaintiffs.

6          THE COURT:  Okay.  All right, Mr. Shapiro, do

7   you want to make any comments on this issue?

8          MR. SHAPIRO:  No thank you, Your Honor.

9          THE COURT:  Okay.  All right, so my ruling is

10  that I will require ACN to produce the VIP portal

11  records for the four IBO witnesses that we've been

12  discussing.  I will permit ACN, you know, ACN may

13  produce them as is if it wants to minimize the burden

14  and make the documents subject to the protective order.

15  But if ACN choses, it may redact the personal

16  identifying information for the four individuals and

17  then the other person as well as the name column for the

18  upline or downline fields of the records.  Ms. Niehaus,

19  what would be your timing on (indiscernible)?

20         MS. NIEHAUS:  I will have to confer with my

21  client about how long it takes to download these

22  documents, and I will say I'm not certain that we have

23  even VIP portal records going back for the full extent

24  of Mr. Plum's tenure because he had two different

25  enrollments with IBO.  So I know when we gave payment

```
 1                      PROCEEDING                    27

 2  information, you know, when we gave payment information

 3  to plaintiff with the declaration, we only had

 4  information going back to 2013.  So I assume the same

 5  limitation exists --

 6              THE COURT:  You can only produce what you have,

 7  yes.

 8              MS. NIEHAUS:  Right.  So I will need to confer,

 9  but I would think two weeks would be --

10              THE COURT:  Okay.

11              MS. NIEHAUS:  I would hope that would be

12  sufficient.

13              THE COURT:  I'll make it October 6.  This gives

14  you a little bit of extra time.  That's a little more

15  than two weeks.

16              MS. NIEHAUS:  That is fine.  (indiscernible)

17  they will want to redact information, including because

18  I don't think, you know, they have permission

19  necessarily to be sharing other IBO information from

20  those IBO's.

21              THE COURT:  Well, if there are any issues with

22  meeting that deadline, you can confer with Mr. Quinn,

23  and if, you know, it's going to take you a few more

24  days, you can simply let me know.  I'm just – I'm trying

25  to move this along because I know we do have a January
```

```
 1                        PROCEEDING                    28

 2  trial date, and the parties have motions pending in

 3  front of Judge Schofield.  I'm not sure this will

 4  necessarily impact the pending motions or not, hopefully

 5  not.

 6            (interposing)

 7            MS. NIEHAUS:  As I'm looking at the information

 8  in these individuals' VIP portals, the information that

 9  wouldn't be in the plaintiffs' (indiscernible)

10  necessarily because I don't believe any of them have

11  paid any customers or created a downline organization,

12  but in addition to redacting the names and information

13  for uplines and downlines, can we include customer

14  information and permitted redactions just to avoid

15  dispute down the line?

16            THE COURT:  Customer names and contact

17  information.  The customer, it would just indicate

18  customer without the name or any contact information.

19            MS. NIEHAUS:  And obviously credit card

20  information, direct deposit details, payments to IBO's

21  including the names of the customers related to those

22  payments.

23            THE COURT:  What was the last part?  Certainly

24  credit card information, you know, bank routing

25  information, all of that would be --
```

```
 1                          PROCEEDING                    29

 2              (interposing)

 3              MS. NIEHAUS:  And beyond the amounts, and I'm

 4  not sure exactly what this refers to, but details of

 5  payments to IBO's including the names of customers.  I

 6  mean that would be encompassed I guess in the --

 7              THE COURT:  I think we addressed the customer

 8  names.  We'll issue an order that spells this out, and,

 9  Mr. Quinn, if you have any questions about the

10  redactions, certainly raise them hopefully in the meet

11  and confer with Ms. Niehaus.  But hopefully it will be

12  obvious what has been redacted and that it's not

13  problematic.  Okay?

14              MR. QUINN:  Will do, thank you, Your Honor.

15              THE COURT:  All right, anything --

16              MS. NIEHAUS:  Thank you, Your Honor.

17              THE COURT:  Mr. Quinn, anything further today?

18              MR. QUINN:  Nothing further from the

19  plaintiffs, Your Honor, thank you.

20              THE COURT:  All right, Mr. Shapiro, from the

21  defendants?

22              MR. SHAPIRO:  Nothing further, thank you.

23              THE COURT:  Okay.  All right, thank you

24  (indiscernible), I appreciate you participating and I

25  appreciate your help getting this figured out.  Thank
```

```
 1                         PROCEEDING                    30
 2   you --
 3             MS. NIEHAUS:  Thank you, Your Honor.
 4             THE COURT:  -- we'll be adjourned.
 5             (Whereupon the matter was adjourned.)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

31

<u>C E R T I F I C A T E</u>

        I, Carole Ludwig, certify that the foregoing
transcript of proceedings in the United States District
Court, Southern District of New York, MCKOY, ET AL.
versus THE TRUMP CORPORATION, ET AL., Docket No.
18cv9936, was prepared using digital electronic
transcription equipment and is a true and accurate
record of the proceedings.




Signature _____
                            *Carole Ludwig*

              CAROLE LUDWIG

Date:  September 21, 2023