```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                              :
CATHERINE MCKOY, et al.,                      :
                           Plaintiffs,        :    18 Civ. 9936 (LGS)
                                              :
           -against-                          :    ORDER
                                              :
THE TRUMP CORPORATION, et al.,                :
                           Defendants.        :
-------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

     This case concerns Defendant Donald J. Trump's promotion of ACN Opportunity, LLC ("ACN"), a non-party multi-level marketing company. Plaintiffs are three individuals who participated in ACN as Independent Business Owners ("IBOs"): Catherine McKoy, a resident of California at the time she enrolled; Markus Frazier, a resident of Maryland at the time he enrolled; and Lynn Chadwick, a resident of Pennsylvania at the time she enrolled. Plaintiffs bring claims under those states' respective consumer protection statutes, each on behalf of a putative class "consisting of all persons in [California, Maryland or Pennsylvania] who made payments to ACN to participate in the IBO Opportunity but did not recoup from ACN an amount equal to or more than those payments." Plaintiffs together bring common law fraud and negligent misrepresentation claims on behalf of a putative nationwide class "consisting of all persons who made payments to ACN to participate in the IBO Opportunity but did not recoup from ACN an amount equal to or more than those payments." Defendants are the Trump Corporation and Donald J. Trump, in his personal capacity. The other Defendants, who are Trump family members, were dismissed pursuant to stipulation on May 19, 2023.

     Plaintiffs move to certify the four putative classes under Rule 23(b)(3) or, in the alternative, certify an issue class under Rule 23(c)(4) on the issues of the falsity and materiality of

statements made by Trump regarding ACN.[1]  Plaintiffs also move to bar the testimony of two of Defendants' experts cited in opposition to Plaintiffs' motion for class certification.  For the reasons given below, Plaintiffs' motions are denied.

I.     **BACKGROUND**

Familiarity with the underlying facts and procedural history is assumed.  *See Doe v. The Trump Corp.*, 453 F. Supp. 3d 634 (S.D.N.Y. 2020) (denying Defendants' motion to compel arbitration); *Doe v. The Trump Corp.*, 385 F. Supp. 3d 265 (S.D.N.Y. 2019) (denying in part and granting in part Defendants' motion to dismiss).  The following facts are drawn from the parties' evidentiary submissions in connection with Plaintiffs' motions.

ACN is a multi-level marketing company.  To have the right to sell ACN products, an IBO must pay a sign-up fee and an annual renewal fee.  An IBO then receives a commission on any sales of ACN products the IBO makes.  IBOs also receive payment for recruiting others to sign up as IBOs and receive a commission on any sales made by IBOs they recruit.  ACN IBOs are encouraged to host small gatherings or one-on-one meetings to recruit potential members.  At these meetings, IBOs overwhelmingly use marketing materials created by ACN, per ACN's instructions.

Between February 6, 2006, and June 20, 2015, (the "Endorsement Period") Trump and ACN were parties to a series of endorsement agreements under which Trump agreed to provide a celebrity endorsement of ACN in return for payment.  On February 6, 2006, Trump and ACN entered into the first such agreement, pursuant to which ACN paid Trump one million dollars for the endorsement and an additional one million dollars for appearing at ACN events.  ACN and

---

[1] Unless otherwise noted, all references to rules are to the Federal Rules of Civil Procedure.

Trump executed subsequent endorsement agreements in February 2008, January 2009, January 2011 and February 2013.  During the Endorsement Period, Trump appeared in ACN videos, in print and online interviews and at ACN events.  Trump featured prominently in some of ACN's materials, including its Opportunity Discs, which contained videos used to recruit new IBOs.  For example, in a video included on the December 2011 Opportunity Disc, Trump stated that "ACN has a reputation for success -- success that's really synonymous with the Trump name" and that potential IBOs "have a great opportunity before [them] at ACN without any of the risks most entrepreneurs have to take."  In a video on the September 2012 Opportunity Disc, he said, "When evaluating a business opportunity, people need to look for strong leadership, a solid track record, success stories, a strong product people really need and want and a clear plan for the future.  ACN has all of these things."  Trump also featured ACN twice on *The Celebrity Apprentice*, a television show he hosted.  On June 20, 2015, Trump and ACN executed a Mutual Termination of Appearance Agreement, in which ACN agreed that it would "cease all use of Mr. Trump's name and likeness . . . and all indicia or connection between ACN and Mr. Trump . . . [would] be eliminated."

    In 2014, Plaintiff Catherine McKoy, then a California resident, enrolled in ACN as an IBO.  She made only $38 through her participation in ACN over approximately two years.  In 2016, Plaintiff Markus Frazier, then a Maryland resident, enrolled in ACN and never made any money throughout his one-year participation.  In 2013, Plaintiff Lynn Chadwick, then a Pennsylvania resident, enrolled in ACN and never made any money throughout her participation in 2013 and 2014.  All three Plaintiffs testified that they relied on Trump's endorsement of ACN in deciding to enroll.

**II.     STANDARD**

Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The Second Circuit has also recognized an implied requirement of ascertainability in Rule 23, which demands that a class be "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017).

Where, as here, class certification is sought pursuant to Rule 23(b)(3), a plaintiff must also show "that the questions of law or fact common to class members predominate over any questions affecting only individual members" (the predominance requirement) and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (the superiority requirement).  Rule 23(c)(4) states that "[w]hen appropriate, an action may be . . . maintained as a class action with respect to particular issues."

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015); *accord Gil v. Pizzarotti, LLC*, No. 19 Civ. 3497, 2022 WL 970514, at *3 (S.D.N.Y. Mar. 31, 2022).  "[A] court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim[.]" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013).  Although factual disputes relevant to Rule 23's requirements must be resolved as necessary to adjudicate a motion for class certification, a court "should not assess any aspect of the merits unrelated to a

Rule 23 requirement." *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006); *accord Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 70 (S.D.N.Y. 2022).

## III.   DISCUSSION

Plaintiffs move to certify three state-wide classes and one nationwide class under Rule 23(b). Plaintiffs' proposed classes consist of "all persons who made payments to ACN to participate in the IBO Opportunity but did not recoup from ACN an amount equal to or more than those payments" in California, Maryland and Pennsylvania respectively for three of the putative classes (for purposes of their statutory claims) and nationwide for the fourth class (for purposes of their common law claims). Alternatively, Plaintiffs move to certify an issue class under Rule 23(c)(4) to resolve the issues of the falsity and materiality of Trump's allegedly false statements. The motion to certify is denied.

### A.   Rule 23(b) Classes – Individual Questions of Fact

Class certification of any Rule 23(b)(3) class is denied because, even if Plaintiffs establish the other requirements for class certification, common issues do not predominate over individual issues as required for certification. Predominance requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Plaintiffs offer four questions common to the class -- whether Trump's statements were false or misleading, whether those statements constituted fraud or misrepresentation or violated statutory law, whether Trump's conduct injured class members and whether Defendants can be held liable for any class members' financial loss as a result of participating as an ACN IBO. Plaintiffs have not established that these putative common issues predominate over individual issues.

In *Moore v. PaineWebber, Inc.*, the Second Circuit distinguished between "fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations." 306 F.3d 1247, 1253 (2d Cir. 2002). Only the former are potentially amenable to class treatment "because the standardized misrepresentations may be established by generalized proof," while the latter require plaintiffs "to submit proof of the statements made to each plaintiff, the nature of the varying material misrepresentations, and the reliance of each plaintiff upon those misrepresentations in order to sustain their claims." *Id.* "[T]he inquiry should remain focused on whether material variations in the misrepresentations existed [] [and] [n]o particular form of evidentiary proof is mandated." *Id.* at 1255.

Plaintiffs argue that prospective IBOs were exposed to what in substance amounted to the following misrepresentations by Trump: that ACN was low risk, that its products were commercially viable, that Trump had performed due diligence on ACN and -- by failing to disclose otherwise -- that he was not being paid for his endorsement. Although Plaintiffs identify multiple occasions when Trump made each of these alleged misrepresentations, individual questions predominate -- including whether a putative class member was exposed to some or all of the four alleged misstatements, whether the class member was misled by the particular misstatement(s) they saw or heard, and whether the class member enrolled as an IBO in reliance on, and because of, the alleged misstatements.

First, as to exposure, the current proposed class definition currently has no temporal limit and in theory would include IBOs who joined ACN before or long after Trump had any involvement with the company. The class therefore would include people who did not hear or see any of Trump's alleged misstatements. Even if the class definition were modified to limit the class to those IBOs who enrolled during the Endorsement Period, the evidence still does not show

6

that they necessarily were exposed to the alleged affirmative misstatements.  The nature of the endorsement, in different and evolving variations, across different media and over a period of almost ten years, suggests that a class member's exposure could be ascertained only through individual inquiry.  This could be a difficult and ultimately unproductive undertaking because at their depositions, the named Plaintiffs at best had only a generalized recollection of Trump's allegedly false statements, and some remembered even less.

Even assuming that all of the putative class members were exposed to at least one of the allegedly false statements -- i.e., the Trump endorsement without disclosure of the fact that he was being paid millions in return -- the reliance element of Plaintiffs' claims is fatal to class treatment.[2]  The Second Circuit has noted that an element of reliance in a cause of action makes establishing predominance "quite difficult." *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 (2d Cir. 2015) (finding that in the context of a RICO action, "because of the difficulty of proving reliance using generalized proof, it is quite difficult, though not impossible, to certify a class" under Rule 23(b)(3) for such claims); *see also UFCW Loc. 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 133 (2d Cir. 2010) ("[R]eliance on a misrepresentation made as part of a nationwide marketing strategy cannot be the subject of general proof.").

First and foremost, ACN's recruitment strategy for new IBOs defeats predominance.  Even though ACN created marketing materials, such as the Opportunity Discs, ACN relied on its

---

[2] While the elements of common law claims vary among the three states at issue, as is relevant for this decision, Plaintiffs acknowledge that states "either require a showing of justifiable or reasonable reliance" to prove these common law claims.  Plaintiffs' statutory claims also incorporate an element of reliance, though California law is discussed in greater detail in the text below. *See Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 885-88 (Cal. 2011); *Binks v. Ally Bank*, No. 20 Civ. 496, 2020 WL 5642257, at *3 (D. Md. Sept. 22, 2020); *Danganan v. Guardian Prot. Servs.*, 179 A.3d 9, 15 (Pa. 2018).

IBOs to recruit friends, family and other personal contacts as new IBOs, rather than using mass marketing. For each class member, the factfinder would need to determine whether Trump's misrepresentations or other factors, such as personal relationships or ACN's other marketing materials, caused putative class members to enroll. For example, ACN could have persuaded IBOs to enroll for reasons apart from Trump's endorsement, such as the flexibility offered by ACN, testimonials from participants, the nature of the products sold, among other factors. The majority of the content on the Opportunity Discs portrayed testimonials from various successful IBOs, highlighting how ACN has enabled them to have, for example, a relaxed work life, expensive cars and large homes. Individual evidence to determine what induced a particular class member to enroll would predominate over generalized evidence of Trump's misstatements.

The Second Circuit's discussion in *McLaughlin v. Am. Tobacco Co.* supports this conclusion. 522 F.3d 215 (2d Cir.2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008). There, using a standard of review with "even greater deference" than abuse of discretion, the Circuit reversed a grant of class certification for RICO claims based on fraud, arising out of tobacco companies' marketing of "Light" cigarettes. *Id.* at 221. The court found that "reliance [was] too individualized to admit of common proof," *id*. at 225, because it would be necessary to rebut "the possibility that a member of the purported class purchased Lights for some reason other than the belief that Lights were a healthier alternative -- for example, if a Lights smoker was unaware of that representation, preferred the taste of Lights, or chose Lights as an expression of personal style," *id.* at 223; *cf. In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013) (affirming grant of class certification where class members' payment of fraudulent invoices misrepresenting the amount due was circumstantial evidence of reliance and individualized proof was unnecessary).

The nature of Trump's alleged misstatements also raises individual questions of whether any given putative class member believed the statements and therefore relied on them. For example, Plaintiffs allege that putative class members were fraudulently induced to become IBOs by Trump's statement that he "love[d]" ACN coupled with the failure to disclose that he was being paid for his endorsement. Whether IBOs in fact relied on this statement and omission in deciding to participate in ACN requires individual proof; the record evidence shows that some IBOs knew or assumed that Trump was a paid spokesperson, while others gave no thought to whether he was being paid. Similarly, Trump made a variety of statements implying that participating in ACN was a low-risk venture because of its "winning business model," "reputation for success" and "proven track record" that is "creating millionaires" presenting "a great opportunity . . . without any of the risks most entrepreneurs have to take." These statements "straddle the line between representation and puffery, making it all the more difficult to conclude that generalized proof could demonstrate that these statements would likely deceive a member of the public." *See Simmons v. Author Sols., LLC*, No. 13 Civ. 2801, 2015 WL 4002243, at *9 (S.D.N.Y. July 1, 2015).

Plaintiffs rely on *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 139 (S.D.N.Y. 2014), and *Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086, 2013 WL 5658790, at *9 (S.D.N.Y. Oct. 17, 2013). These cases are distinguishable because both involved common proof of reliance and, in any event, are not binding. *Rodriguez* certified a nationwide class alleging fraud claims against a matchmaking service, where "virtually all evidence in the record indicates that . . . [It's Just Lunch ("IJL")] staff relied on a uniform script to inform prospective customers . . . that IJL already had at least two matches in mind for those customers' first dates regardless of whether or not that was true." 300 F.R.D. at 131. The nature of these

9

representations meant the script could serve as common evidence of reliance, because sales representatives were instructed not to deviate from this point, customers were given sales contracts immediately after hearing the misrepresentation, and because "it is hard to imagine a reasonable consumer not being swayed at least in part by IJL touting its supposed matches." *Id.* at 139-40. *Dandong* certified a class of purchasers of secured notes bringing claims against the notes' issuers regarding misstatements about the nature of the underlying collateral. 2013 WL 5658790, at *1. The court found that the plaintiffs could establish reliance based on a document that all of the representative plaintiffs reviewed and that contained one of the allegedly misleading statements. *Id.* at *6. Common issues predominated in part because reliance could be adduced by common evidence. Here there is no common evidence showing that putative class members decided to enroll because of Trump's alleged misstatements. While *individual* plaintiffs may show that they reasonably relied on Trump's endorsement of ACN when enrolling, that reliance cannot be inferred about all class members when IBOs were recruited through personal contacts in small meetings and with various marketing materials that contained inducements independent of Trump.

Finally, the standard to determine reliance under California law does not change this result with respect to the putative California class asserting claims under California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL"). Both statutes require a showing of reliance that is implicated in any predominance inquiry to determine class certification. *See Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) (unpublished) (noting that UCL and FAL both require showings of reliance and that violations of FAL "necessarily support" a UCL claim); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1043 (C.D. Cal. 2018) ("[F]or purposes of class certification, the UCL [and] FAL . . . are

materially indistinguishable."). The standard to determine reliance differs between named plaintiffs and absent ones. A named plaintiff must show individualized proof of "actual reliance," while absent class members receive a "presumption" of reliance. *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630-31 (9th Cir. 2020) (relying on *In re Tobacco II* Cases, 207 P.3d 20, 35-40 (Cal. 2009), and interpreting UCL to establish a presumption). However, that "presumption will not arise in every UCL case." *Id.* at 631. There is no presumption of reliance for absent class members when, "[f]or example," "there was no cohesion among the members because they were exposed to quite disparate information from various representatives of the defendant." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); *accord Lynch v. Matterport, Inc.*, No. 22 Civ. 3704, 2023 WL 5310558, at *4 (N.D. Cal. Aug. 16, 2023) ("There cannot be a presumption of reliance for absent class members where it might well be that there was no cohesion among the members because they were exposed to quite disparate information from various representatives of the defendant."). Here, there is no cohesion among putative class members to justify applying the presumption that they relied on Trump's statements in deciding to enroll, because they were exposed to different marketing pitches from sources in addition to Trump, including statements made by their own personal contacts and marketing materials from ACN. Reliance still will need to be determined on an individual basis, considering the same individual circumstances discussed above. *See, e.g., Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*, No. 14 Civ. 7242, 2016 WL 5920345, at *8 (C.D. Cal. June 23, 2016) (denying class certification in UCL and FAL case for failure to meet predominance requirement "[b]ecause issues of reliance and materiality require individualized inquiry" where exposure to the alleged misleading advertising and labeling varied); *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th

11

830, 849 (Cal. Ct. App. 2009) (denying class certification in UCL case because class members were not exposed to "identical misrepresentations and/or nondisclosures by the defendants made to the entire class" but rather to independent agents who were not adhering to a script or using standardized materials). Class certification of all four proposed classes is thus inappropriate because of the lack of predominance.

### B.      Nationwide Common Law Class

Certification of what Plaintiffs call the "nationwide common law class" is denied for the additional reason that, with the potential application of fifty state laws, Plaintiffs have not sustained their burden of showing that common questions of law or fact predominate over individual questions. The surviving causes of action are common law claims for fraud and negligent misrepresentation. The laws of all fifty states -- any state where an IBO was induced to enroll -- could govern. *See Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (in a diversity case, the forum state's choice of law principles apply); *In re Thelen LLP*, 736 F.3d 213, 219-20 & n.7 (2d Cir. 2013) (applying New York choice-of-law principles to conclude that the applicable state substantive law is where the injury was inflicted and not where the fraudulent act originated); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 51 (2d Cir. 2013) (concluding that a full interest analysis may point to the law where the fraudulent act occurred). Plaintiffs do not specify which state law they seek to apply, nor do they engage in any choice-of-law analysis. They do not dispute that fifty state laws could apply, but merely assert that the various laws can be grouped according to their requirements.

Certification of a nationwide class that would entail the application of the various states' laws of fraud and negligent misrepresentation is inappropriate given the variations in state law. *See, e.g.*, *Wang v. Tesla, Inc.*, 338 F.R.D. 428, 438 (E.D.N.Y. 2021) (denying class certification

12

where "the laws of misrepresentation in all states in which putative members are found -- potentially the laws of all 50 states -- would be at issue"); *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 352 (E.D.N.Y. 2016) (denying class certification where "there are sufficiently significant variations between the laws of the fifty states to defeat Rule 23(b)(3)'s predominance requirement[, t]he most obvious [of which] . . . is that not every State recognizes the tort of negligent misrepresentation, and some states only recognize it under certain circumstances"); *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002) (denying certification of a multi-state common law fraud class because common issues of law cannot predominate when "[t]he elements of fraud vary greatly from state to state, with respect to elements including mitigation, causation, damages, reliance, and the duty to disclose"); *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. 19-2875, 2023 WL 1818922, at *60-61 (D.N.J. Feb. 8, 2023) (multidistrict litigation decision cataloguing state law variations in common law fraud and collecting cases that have denied class certification on that basis). Plaintiffs have failed to show predominance of common issues for this additional reason, the variance in state law.

  **C. Rule 23(c)(4) Issue Class**

Plaintiffs move to certify a Rule 23(c)(4) issue class regarding the falsity and materiality of Trump's statements as an alternative to the proposed Rule 23(b)(3) class. The motion is denied because "issue certification would not reduce the range of issues in dispute and promote judicial economy." *McLaughlin*, 522 F.3d at 234.

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." This rule may be employed "to certify a class on a particular issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance

13

requirement." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006); *accord Nnebe v. Daus*, No. 6 Civ. 4991, 2022 WL 615039, at *6 (S.D.N.Y. Mar. 1, 2022). However, issue certification is appropriate "only where resolution of the particular common issues would materially advance the disposition of the litigation as a whole." *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 437 (S.D.N.Y. 2019); *see also Houser v. Pritzker*, 28 F. Supp. 3d 222, 254 (S.D.N.Y. 2014); 1 McLaughlin on Class Actions § 4:43 (20th ed.); Manual for Complex Litigation, Fourth, § 21.24. Certification must "reduce the range of issues in dispute and promote judicial economy." *McLaughlin*, 522 F.3d at 234. Certification of an issue class under Rule 23(c)(4) is inappropriate here because individual issues of exposure, reliance and the related concept of causation would remain to be tried. The individual plaintiffs would still need to establish what allegedly false statements they saw or heard, the extent to which they believed the statement and whether they relied on the statement in their decision to enroll at ACN considering the other influences of other actors in their decision-making, all as discussed above. This is not a case where resolution of complex and significant issues would leave a limited number of simpler issues that could be quickly resolved in later litigation. *See, e.g.*, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789, 2022 WL 3971006, at *6 (S.D.N.Y. Aug. 31, 2022) (denying reconsideration of certification of an issue class where "[i]ssue certification makes class members' claims more manageable even though certain individual liability issues are excluded from class treatment"). This case is more like *McLaughlin*, in which the court overruled class certification because of lack of predominance and refused to certify an issue class: "given the number of questions that would remain for individual adjudication, issue certification would not reduce the range of issues in dispute and promote judicial economy." *McLaughlin*, 522 F.3d at 234. The court explained, "Certifying, for example, the issue of

defendants' scheme to defraud, would not materially advance the litigation because it would not dispose of larger issues such as reliance, injury, and damages." *Id.* So too here, certifying the issue of Trump's alleged misstatements would not dispose of larger issues such as deception (was the plaintiff deceived), reliance and causation. Plaintiffs' request for issue certification is denied.

\*   \*   \*

For the foregoing reasons, Plaintiffs' motion to certify a class is **DENIED.** Plaintiffs' motion to bar the testimony of Dr. Peterson and Dr. Hair is **DENIED** as moot because their testimony was unnecessary to adjudicate Plaintiffs' motion.

By **October 24, 2023**, the parties shall submit respective letter briefs not to exceed five pages stating why each Plaintiff's respective claims should or should not be severed from those of the other Plaintiffs under Rule 21, and then transferred to the appropriate District Courts in California, Maryland and Pennsylvania pursuant to 28 U.S.C. § 1404(a). *See Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968) (approving severance for the purpose of transfer); *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (listing non-exclusive list of factors to be considered for transfer). By **October 24, 2023**, any party in favor of such severance and transfer may file a Notice of Motion seeking such relief and identifying the relevant District Courts, though the Court may act *sua sponte*. The deadlines for pre-trial submissions are adjourned *sine die* pending a decision on this issue.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 530 and 578.

Dated: October 17, 2023
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　**LORNA G. SCHOFIELD**
　　　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**