**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0883
DIRECT EMAIL   rkaplan@kaplanhecker.com

October 24, 2023

**BY ECF**

The Honorable Lorna G. Schofield
United States District Court for the Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, New York 10007

Re:   *McKoy, et al. v. The Trump Corporation, et al.*, No. 18-cv-9936 (LGS) (SLC)

Dear Judge Schofield,

We write on behalf of Plaintiffs in response to Your Honor's Order dated October 17, 2023 (ECF 640), which directed the parties to address the question of "why each Plaintiff's respective claims should or should not be severed from those of the other Plaintiffs under Rule 21, and then transferred to the appropriate District Courts in California, Maryland and Pennsylvania pursuant to 28 U.S.C. § 1404(a)." As discussed further below, having considered the question posed by the Court and given the denial of Plaintiffs' motion for class certification, we believe there are the following three potential options for how to move forward:

- *First*, the question posed by the October 17, 2023 Order suggests that the Court is considering severing and transferring the Plaintiffs' claims to three different federal district courts in California, Maryland, and Pennsylvania. As set forth below, we do not believe the Court can or should do this. Severing and transferring the Plaintiffs' claims would amount to a highly unusual and unprecedented exercise of this Court's discretionary jurisdiction and would be impermissible in these circumstances under the plain language of Section 1404(a).

- *Second*, the Court can decide Defendants' fully-briefed motion for summary judgment and proceed to trial, which is currently scheduled to begin on January 29, 2024. ECF 507. This is the path that Plaintiffs believe the Court should take. Defendants are all at home in this District, Plaintiffs have chosen this forum, the parties have litigated here for more than five years, the case is essentially trial-ready, and it will be impossible to schedule another trial date with Defendants for a very long time.

- *Third*, pursuant to 28 U.S.C. § 1367(c), the Court can decline to exercise supplemental jurisdiction and dismiss the case without prejudice for lack of subject matter jurisdiction. While we expect Defendants to argue in favor of this option, Plaintiffs respectfully submit that the interests of justice and judicial economy strongly militate in favor of proceeding to trial as scheduled.

**KAPLAN HECKER & FINK LLP**

### I. Option One: Severing and Transferring the Case to Separate District Courts in California, Maryland, and Pennsylvania

Under Section 1404(a), a district court may transfer a case "for the convenience of parties and witnesses, in the interest of justice" to "any other district or division *where it might have been brought*." (emphasis added). Accordingly, in order to effect such a transfer, the Court must first determine whether Plaintiffs' action could have been brought in the districts proposed for transfer. This requires assessing whether "venue, personal jurisdiction, and subject matter jurisdiction would have been proper in the transferee court at the time of filing." *Kumar v. Opera Sols., LLC*, 2021 WL 4442832, at *14 (S.D.N.Y. Sept. 28, 2021).

Here, because the requirements for transfer are not satisfied, the transfers contemplated by the Court are impermissible. First and foremost, this case could not have been brought in the proposed transferee districts. Mr. Trump has moved to dismiss at least nine prior lawsuits for lack of personal jurisdiction, and there is every reason to believe that Defendants would contest venue and personal jurisdiction in California, Maryland, and Pennsylvania. *See, e.g.*, *District of Columbia v. Trump*, No. 17 Civ. 1596 (D. Md. May 1, 2018), ECF 112 (challenging personal jurisdiction in Maryland); *Henry v. Trump*, No. 10 Civ. 5004 (C.D. Cal. Aug. 2, 2010), ECF 7 (same in California). Defendants will argue that because neither Donald Trump nor his corporation are at home in those districts, they are not subject either to personal jurisdiction or venue under 28 U.S.C. § 1391(b). They will also argue that their endorsement of ACN—which was largely negotiated and conducted from Mr. Trump's office in Trump Tower in New York City—did not substantially take place in, and was not sufficiently directed at, these states in order to subject them to specific jurisdiction. *See Bayer Schera Pharma AG v. Sandoz*, 2009 WL 440381, at *5-6 (S.D.N.Y. Feb. 18, 2009). Indeed, Defendants could not resolve these threshold barriers to transfer even if they wanted to by consenting to suit in California, Maryland, and Pennsylvania. *Id.* at *4 ("[A] defendant's consent to submit to jurisdiction of a proposed transferee court after an action is filed will not satisfy Section 1404(a)."). Subject matter jurisdiction, too, would be in doubt, since each of the transferee courts would likely ask why it should exercise discretionary jurisdiction over a case that has been pending for five years in another court and is brand new to it, when it can simply dismiss without prejudice for lack of subject matter jurisdiction. *See Hirsch v. Hargett*, 2019 WL 2613453, at *8 (C.D. Cal. June 26, 2019).

Although these are the primary reasons why the venue transfers contemplated by the Court won't work, that is not all. None of the factors relevant to the determination of convenience and justice weigh in favor of transfer either. *First*, the convenience of the parties and non-party witnesses, "generally viewed as the most important factor," unequivocally weighs against transfer. *Haber v. ASN 50th St., LLC*, 2011 WL 1226282, at *1 (S.D.N.Y. Mar. 30, 2011). Nothing about this venue is inconvenient for Defendants or their counsel, who are at home here. Non-party witnesses, many of whom reside in or frequently travel to this District, would of course prefer appearing in this Court rather than traveling to courts across the country to testify multiple times. And as for Plaintiffs, not only is this their chosen forum, but also they would suffer significant inconvenience and undue delay if their claims are sent into three completely new forums with three different judges, after litigating together in this District for five years with the same counsel, who also reside in New York. *See id.*

**KAPLAN HECKER & FINK LLP**

3

*Second*, the locus of operative facts, also "a primary factor" in the appropriate analysis, further weighs against transfer. *Royal & Sun All. Ins. v. Nippon Express USA*, 202 F. Supp. 3d 399, 407-08 (S.D.N.Y. 2016). As noted above, Plaintiffs' claims emanate from New York, where Defendants planned and executed much of the fraud at issue. *See Kumar*, 2021 WL 4442832, at *16 ("To determine the locus of operative facts, courts look to the site of the events from which the claim arises."); *Berger v. Cushman & Wakefield*, 2013 WL 4565256, at *10 (S.D.N.Y. Aug. 28, 2013) (locus of operative facts was where fraud was planned and executed).

*Third,* trial efficiency and the interest of justice decisively militate against transfer as well. Again, this case has been litigated in this Court for five years and trial is imminent. A tripartite transfer, by contrast, would inevitably "delay resolution of this dispute as a new court familiarized itself with the facts of the case," *Hershman v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 603 (S.D.N.Y. 2009). Looking forward, such an outcome would inevitably duplicate effort, create a morass of potential inconsistency, and cause unnecessary delay. *See Romero v. Allstate Ins.*, 2018 WL 11416666, at *2 (E.D. Pa. Sept. 24, 2018) ("Severance and transfer creates an even greater risk to judicial economy and the possibility of inconsistent adjudication by the two courts."). Perhaps most troubling, the kind of tripartite transfer contemplated in the October 17 Order would dramatically complicate any appeal of the dismissal of Plaintiffs' RICO claims and the denial of class certification, potentially requiring Plaintiffs to seek review in three different circuit courts on differing timelines, a situation that would be unprecedented in the federal court system. Indeed, the Court's exercise of discretionary jurisdiction solely to effect a multi-district transfer at this advanced stage of the litigation would be extremely rare—we have not been able to locate a similar transfer ever taking place. *See, e.g.*, *Royal & Sun*, 202 F. Supp. 3d at 411 (denying transfer where "litigation appears to be well underway and moving towards trial"); *Haber*, 2011 WL 1226282, at *2 (denying transfer and finding that "judicial economy weighs strongly in favor of a final adjudication by this Court" given the "Court's familiarity with the action" and significant prior discovery and motion practice by parties); *see also Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 441 (S.D.N.Y. 2018) ("[C]ourts generally find that the farther along a case is in the litigation process, the less efficient a transfer would be.") (collecting cases).

*Finally*, Plaintiffs' choice of forum, as the Second Circuit has "consistently held," is "presumptively entitled to substantial deference." *Atl. Recording v. Project Playlist*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009). That is particularly true where a plaintiff's choice "was motivated by legitimate reasons," as was the case here, as explained above. *Mears v. Montgomery*, 2004 WL 964093, at *11 (S.D.N.Y. May 5, 2004); *see also TouchTunes v. Rowe Int'l*, 676 F. Supp. 2d 169, 173 (S.D.N.Y. 2009). Plaintiffs chose to sue in this District for multiple reasons, including the amenability of Defendants to suit here, Plaintiffs' access to experienced counsel, and the location and availability of witnesses and evidence. *See Haber*, 2011 WL 1226282, at *1. Under such circumstances, a "plaintiff's choice of forum will not be disturbed unless . . . the balance of convenience and justice weighs heavily in favor of transfer." *Mears*, 2004 WL 964093, at *8.

## II. Option Two: Proceeding to Trial as Scheduled

Instead, we respectfully submit that what the Court should do is proceed to trial, as scheduled. The issues in this matter are ready for adjudication, and the parties are poised to proceed to trial on January 29, 2024. ECF 507. After five years of litigation, all involved are deeply familiar with the facts and issues in play. The parties have briefed—and the Court has resolved—at least

KAPLAN HECKER & FINK LLP

4

100 motions and associated requests for relief. The Second Circuit has ruled on multiple interlocutory appeals related to this matter in which Plaintiffs prevailed each time. *See* ECF 334. Magistrate Judge Cave has held at least eight conferences with the parties and non-parties in the litigation, and the discovery record assembled and reviewed by the parties includes 37 fact and expert witness depositions and more than 37,000 documents totaling more than 150,000 pages. Defendants' motion for summary judgment is fully briefed, ECF 590, and Plaintiffs have been preparing for and are ready to proceed to trial on the schedule set by the Court, ECF 507.

Equally if not more important, any delay in the existing trial date here would acutely prejudice Plaintiffs, given the challenges of scheduling a trial involving Defendant Donald J. Trump. As Your Honor will recall, the Court established the January 29 trial date nearly a year ago, ECF 507, after we wrote to the Court outlining Mr. Trump's history of leveraging his presidential-campaign activities to delay judicial proceedings, *see* ECF 499 at 2. Although Defendants derided our letter as rooted in "speculation, surmise and conjecture," ECF 503 at 3, the passage of time has only served to validate our legitimate concerns.[1] *See, e.g.*, Holmes Lybrand, *Donald Trump's Clearest Legal Strategy: Delay*, CNN Politics (Oct. 6, 2023, 5:01 AM), https://www.cnn.com/2023/10/06/politics/trump-seeks-delays-federal-cases; Madeline Halpert, *Trump Loses Bid to Delay New York Civil Fraud Trial*, BBC News (Sept. 28, 2023), https://www.bbc.com/news/world-us-canada-66931616. Indeed, despite having ample warning of the trial date, Defendants just recently requested an indefinite adjournment due to "scheduling issues" affecting two of Defendants' seven attorneys in this matter, Clifford S. Robert and Michael Farina, who also represent several of Mr. Trump's adult children in *People of the State of New York v. Donald J. Trump*, No. 452564/2022 (N.Y. Sup. Ct.) (the "NYAG Case"). ECF 639 at 2. But there is no conflict between trial in the NYAG Case, which will conclude in December 2023, and trial in this matter, which remains scheduled to begin on January 29, 2024. Defendants themselves anticipated that trial in the NYAG Case would "likely spill into December 2023," ECF 503 at 3, and therefore requested a trial date in early 2024, which the Court obliged, ECF 505 at 1; ECF 507.[2]

Even worse, this case has already been pending for five years and it is a near-certainty that Mr. Trump will argue that any new trial date must wait until after the 2024 presidential election. And if Mr. Trump wins that election, Plaintiffs are facing a delay of at least another five years or more since then-President Trump will argue that he should not be distracted with going to trial in this case during his second presidency. *See, e.g.*, *Low v. Trump Univ.*, No. 10 Civ. 940 (S.D. Cal. Apr. 30, 2010), ECF 567 (motion by Mr. Trump, following the 2016 presidential election, to adjourn the trial date so he may prepare for inauguration). This case, therefore, presents the rare situation where Plaintiffs face the very real possibility of never getting to trial at all.

---

[1] *See, e.g.*, *United States v. Trump*, No. 23 Crim. 8010 (S.D. Fl. July 10, 2023), ECF 66, ¶ 16 (Defs.' Opp'n to Proposed Scheduling Order) ("President Trump is running for President of the United States . . . . making the current schedule untenable and counseling in favor of a continuance.").

[2] Although not mentioned in Defendants' letter dated October 16, 2023, ECF 639, defense counsel Peter T. Shapiro, Greg Johnson, Eric Y. Kizirian, and Carrie C. Turner, who are not involved in the NYAG Case, are deeply familiar with this matter and, indeed, signed as primary drafters on Defendants' summary judgment or class certification briefs.

KAPLAN HECKER & FINK LLP

5

### III. Option Three: Declining to Exercise Supplemental Jurisdiction and Dismissing Plaintiffs' Claims

Because Plaintiffs asserted their state-law claims pursuant to the subject matter jurisdiction granted to the Court by both the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and supplemental jurisdiction, 28 U.S.C. § 1367(a), *see* ECF 333, ¶ 41, we recognize that this Court has "discretion whether to exercise supplemental jurisdiction over the" remaining state-law claims. *Horton v. Dow Jones & Co.*, 2019 WL 952314, at *4 (S.D.N.Y. Feb. 27, 2019) (Schofield, J.), *aff'd*, 804 F. App'x 81 (2d Cir. 2020). In the circumstances present here, however, Plaintiffs respectfully submit that "the values of judicial economy, convenience, fairness, and comity," *id.*, all point only in one direction—toward this Court retaining supplemental jurisdiction and resolving Plaintiffs' outstanding claims.

*First,* judicial economy favors resolving Plaintiffs' claims in a single trial before this Court, given that "discovery ha[s] been completed, dispositive motions ha[ve] been submitted, and the case [will] soon be ready for trial." *Kroshnyi v. U.S. Pack Courier Servs.*, 771 F.3d 93, 102 (2d Cir. 2014). Indeed, courts in this District routinely hold that judicial economy favors retaining supplemental jurisdiction in cases far less advanced than this case. *See Simon Prop. Grp. v. U.S. Bank Nat'l Ass'n*, 2022 WL 2473341, at *5 (S.D.N.Y. July 6, 2022) (retaining supplemental jurisdiction where summary judgment briefing "had commenced" and fact discovery had been "substantially completed"); *Chimarev v. TD Waterhouse Investor Servs.*, 280 F. Supp. 2d 208, 226 (S.D.N.Y. 2003) (holding that judicial economy warranted exercising supplemental jurisdiction over state law claims where discovery had been completed and motions made with respect to plaintiff's claims).

*Second*, convenience and fairness would be ill "served by setting backwards the course of a case the parties had vigorously litigated for nearly [five] years and causing them to expend who knows how much time, legal fees, and distraction starting over in state court." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018) (vacating and remanding district court's order declining to exercise supplemental jurisdiction). In addition to the risk of having to relitigate already-decided questions, the parties would suffer "inevitable delay in the resolution of the remaining dispute" in state court following dismissal for want of federal jurisdiction, *Fisher v. N.Y. Health & Hosps.*, 989 F. Supp. 444, 450 (E.D.N.Y. 1998), and that delay is likely to be particularly long here, as noted above.

*Finally*, comity favors resolving Plaintiffs' claims in the present forum, where the core merits issues have recently been briefed and in part at least addressed by the Court, and the parties are on the threshold of trial, rather than "saddling a state court colleague." *Catzin*, 899 F.3d at 86. Plaintiffs' fraud and consumer protection claims do not present issues "of special state court expertise"; rather, they are of the sort "that [are] tried in federal court every day." *Id.* To be sure, Defendants have challenged Plaintiffs' reliance on their respective states' consumer protection statutes, ECF 592 at 14, but the fact-bound question of whether Plaintiffs are "consumers" under Maryland and Pennsylvania law are "not so groundbreaking as to preclude the exercise of jurisdiction." *Kroshnyi*, 771 F.3d at 102.

\*        \*        \*

KAPLAN HECKER & FINK LLP

6

      For all of these reasons, we respectfully contend that the Court should retain jurisdiction over Plaintiffs' remaining claims, decline to sever or transfer the case, reinstate the Court's deadlines for pre-trial submissions, and bring this case to trial on January 29, 2024, as scheduled.

                                            Respectfully submitted,

                                            Roberta A. Kaplan

cc:     Counsel of Record (via ECF)