

Peter T. Shapiro
77 Water Street, Suite 2100
New York, New York 10005
Peter.Shapiro@lewisbrisbois.com
Direct: 212.232.1322

October 24, 2023

**VIA ECF**
The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *Catherine McKoy, et al. v. Trump Corp., et al.,* No. 1:18-cv-9936 (LGS-SLC)

Dear Judge Schofield:

      As the Court is aware, this firm along with Robert & Robert PLLC represents the Defendants in the above-referenced action. We write in accordance with the Court's October 17, 2023 Order (ECF 640) (the "October 17 Order") directing the parties to submit "letter briefs…stating why each Plaintiff's respective claims should or should not be severed from those of the other Plaintiffs under Rule 21, and then transferred to the appropriate District Courts in California, Maryland and Pennsylvania pursuant to 28 U.S.C. § 1404(a)." For the reasons set forth below, Defendants respectfully submit that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss this action or, alternatively, sever the remaining state law claims and transfer them to the appropriate District Courts.[1]

      **A.**    **The Court Should Decline to Exercise Supplemental Jurisdiction**

      Based on the Court's October 17 Order which, *inter alia,* denied Plaintiffs' motion to certify a class, the only remaining claims are the three Plaintiffs' respective state claims under the laws of California, Maryland and Pennsylvania. Given that the Second Circuit "takes a very strong position that state issues should be decided by state courts" (*Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017)), the Court should decline to exercise supplemental jurisdiction over those remaining state law claims and dismiss this action. Although Defendants are mindful of this Court's precedent indicating that a court retains original subject matter jurisdiction under CAFA, 28 U.S.C. 1332(a), despite dismissal of class action claims, it is important to note that the Court would not have subject matter jurisdiction over the remaining state law claims based upon diversity

---

[1] Simultaneously herewith, Defendants will be filing a Notice of Motion seeking such relief.

of citizenship. Indeed, even if the Court aggregated the compensatory damages sought by all three Plaintiffs' claims together, those claims still would not come close to meeting the $75,000 threshold for diversity jurisdiction. Although Plaintiffs have not pled or articulated their actual damage amounts, Defendants' estimate based upon the evidence adduced during discovery in this action is that Plaintiffs' alleged total out-of-pocket losses are roughly $7,000; $5,109 for Plaintiff Catherine McKoy, $509 for Plaintiff Marcus Frazier ("Mr. Frazier"), and $749 for Plaintiff Lynn Chadwick ("Ms. Chadwick").

The mere fact that Plaintiffs seek punitive damages does not support a different result. "[I]n computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny . . . than a claim for actual damages." *Zahn v. Int'l Paper Co.,* 469 F.2d 1033, 1033 n.1 (2d Cir. 1972). "A trial court is plainly not compelled to accept a claim of punitive damages, however unwarranted, made for the purpose of conferring federal jurisdiction." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017) (citation omitted). Given the tenuous nature of Plaintiffs' remaining claims, and because any punitive damages award would need to be more than *ten times*[2] the alleged total out-of-pocket loses of roughly $7,000 to satisfy the $75,000 threshold for diversity jurisdiction, there would simply be no basis to accept the punitive damages claim for the purpose of conferring federal jurisdiction.

Ms. Chadwick and Mr. Frazier's claims for attorneys' fees and costs under the operative state statutes likewise do not exponentially increase the alleged total out-of-pocket losses. While Plaintiffs' counsel may have charged substantial legal fees and incurred substantial costs in the prosecution of this action, that would not provide a basis for federal jurisdiction. This is particularly so where the fees and costs were predominately incurred by pursuing this action as a nationwide class action. As noted by the United States Supreme Court, the outcome of a litigation is a crucial factor in determining the size of a fee award, and fees should not be awarded for services on unsuccessful claims that are distinct from the successful claims. *See Hensley v. Eckerhart,* 461 U.S. 424, 439 (1983). Where, as here, class certification is denied, courts will not award the exorbitant fees that might be appropriate for a class action but not for a modest individual action. *See, e.g., Betancourt v. Giuliani,* 325 F. Supp. 2d 330 (S.D.N.Y. 2004) (reducing fees sought by 90 percent when the plaintiff obtained limited relief and a class was not certified).[3]

For these reasons, the Court would not have had original subject matter jurisdiction over the remaining state law claims – absent CAFA – and should decline to exercise supplemental jurisdiction over the remaining claims based on the Second Circuit's "very strong position that state issues should be decided by state courts." *Cohen*, 873 F.3d at 405. As the Court stated in *Horton v. Dow Jones & Co., Inc.*, 2019 WL 952314 (S.D.N.Y. Feb. 27, 2019) (Schofield, J.), *aff'd*, 804 F. App'x 81 (2d Cir. 2020), "'in the usual case in which all federal-law claims are eliminated

---

[2] Any punitive damages determination must be "reasonable and proportionate" to the amount of actual (i.e., compensatory) damages. A punitive damages award that is grossly disproportionate to the amount of harm suffered will not withstand constitutional scrutiny. *See, e.g., State Farm Mutual Insurance Co. v. Campbell,* 538 U.S. 408, 426 (2003) (9:1 ratio of punitive to compensatory damages is the maximum that is constitutionally permissible).

[3] *See also Montgomery v. Kraft Foods Global, Inc.,* 2015 WL881585 (W.D. Mich. Mar. 2, 2015) (awarding fees of $6,417 rather than the requested $183,168.50 in a decertified class action).

before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* at *4 (citations omitted).

## B.  Alternatively, Plaintiffs' Respective Claims Should Be Severed

The interests of judicial economy and the principles laid out in the applicable Federal Rules of Civil Procedure dictate that severance of Plaintiffs' respective claims is necessary and appropriate. Pursuant to Rule 21, "[a]ny claim against a party may be severed and proceeded with separately . . . even without a finding of improper joinder, where there are sufficient other reasons for ordering a severance." *Wyndham Associates v. Bintliff*, 398 F.2d 614, 618 (2d. Cir. 1968) (citations and internal quotation marks omitted). In considering whether severance is appropriate, courts consider whether: (1) the claims arise out of the same transaction or occurrence; (2) the claims present some common questions of law or fact; (3) settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided if severance were granted; and (5) different witnesses and documentary proof are required for the separate claims. *Erausquin v. Notz, Stucki Mgmt. (Berm.),* 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2022).

As an initial matter, Plaintiffs' respective claims do not arise out of the same transaction or occurrence. Courts approach the transaction or occurrence factor "on a case by case basis" (*Kehr v. Yamaha Motor Corp., U.S.A.,* 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted)), and it is only satisfied "where the essential facts of the claims [are] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Colonial Funding Network, Inc. v. McNider Marine, LLC*, 2017 WL 5633160, *8-9 (S.D.N.Y. Nov. 21, 2017). Although Plaintiffs have each sued the same Defendants, there can be no doubt that there are, in essence, three transactions at issue here.

Plaintiffs reside in three different states and their individualized experiences with ACN occurred in those states. (ECF 333 ¶¶ 32, 34, 35). What each Plaintiff heard and read about ACN in each of those states and at each of those times also differed. (ECF 331 at 181-219, 235-257, 258-280). Indeed, each Plaintiff's interaction with ACN representatives and other individuals who might have influenced their decision to join (and stay involved with) ACN are entirely distinct. (ECF 331 at 181-219, 235-257, 258-280). Where there are multiple transactions or occurrences at issue, courts have held that severance is appropriate. *See Kalie v. Bank of Am. Corp.*, 297 F.R.D. 552, 557 (S.D.N.Y. 2013) (granting motion to sever where plaintiffs entered into different loan transactions at different times); *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 264, (D. Conn. 2012) (claims were not related where they arose out of plaintiffs' employment in different stores, in different states, under different circumstances). This is particularly so where, as here, a court has already denied class certification. *See Anderson v. NVR, Inc.*, 300 F.R.D. 116, 119 (W.D.N.Y. 2014) (finding that there was not a sufficient logical connection between "the essential facts of the various claims" which was mirrored in the Court's having denied class certification in a related action).

In addition, Plaintiffs' claims do not present common issues of law or fact. As set forth in the October 17 Order, "Plaintiffs have not established that…common issues predominate over individual issues." (ECF 640 at 5). In so ruling, the Court noted numerous individual issues of

fact, including whether each putative class member was (1) exposed to some or all of the alleged misstatements, (2) misled by the particular misstatements they saw or heard, or (3) enrolled as an IBO in reliance on, and because of the alleged misstatements. (*Id.*). Given the distinct experiences of each Plaintiff, the ultimate questions of fact in this case must be separately determined. Judicial economy would therefore be best served by severance, and a single trial could prove prejudicial to the Defendants for many reasons, including that a jury hearing the various state claims may find the various states' laws confusing. *Anderson*, 300 F.R.D. at 119; *Colonial Funding Network, Inc.*, 2017 WL 5633160, at *19.

Moreover, trial will certainly require calling different witnesses for each of Plaintiffs' claims, including Plaintiffs' friends, relatives, and ACN contacts in their home states who might be called to address the critical issue of why Plaintiffs enrolled in ACN. Litigating each of Plaintiffs' claims together and in one forum is simply not practicable where the witnesses are located in three different states. *See Erausquin,* 806 F. Supp. 2d at 723 (severance avoids the impracticalities associated with litigating in a forum where witnesses are not located).

### C. After Severance, Plaintiffs' Respective Claims Should Be Transferred

Rule 20(b) grants district courts the authority to order transfers to other districts to protect against "embarrassment, delay, expense, or other prejudice*." Wyndham,* 398 F.2d at 618 (internal citations and quotations omitted). Once severed, Plaintiffs' respective claims should be transferred to the appropriate district courts in Maryland, California and Pennsylvania ("Transferee Courts").

"A district court may transfer any civil action to any other district or division where it might have been brought*." Id.* at 618. "[A]n action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendant[], and if venue would have been proper in the transferee court." *Colbert v. P&G*, No. 16 Civ. 2636 (PGG), 2017 U.S. Dist. LEXIS 141268, at *11 (S.D.N.Y. Aug. 30, 2017) (granting transfer). Here, venue and subject matter jurisdiction (to the extent the court so holds) would likewise have been proper in the Transferee Courts at the time this action was filed. Defendants are alleged to have done business in each of the jurisdictions and they do not object to defending Plaintiffs' claims in the Transferee Courts. Venue would likewise be proper in the Transferee Courts because a substantial part of the events giving rise to the claims allegedly occurred in California, Maryland and Pennsylvania where Plaintiffs participated in the ACN Opportunity. *See* 28 U.S.C. § 1391.

Under 28 U.S.C. § 1404(a), "[a] district court may exercise its discretion to transfer venue 'for the convenience of parties and witnesses, in the interest of justice.'" *Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 105, 106-107 (2d Cir. 2006)) (citation omitted). In determining whether to transfer venue, courts consider the: (1) convenience of witnesses, (2) convenience of the parties, (3) location of relevant documents and the relative ease of access to sources of proof, (4) locus of operative facts, (5) availability of process to compel the attendance of unwilling witnesses, (6) relative means of the parties, (7) forum's familiarity with the governing law, (8) weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the

totality of the circumstances. *Id*. For the reasons set forth above and below, each of these factors also militates in favor of transfer.

As a starting point, the Transferee Courts would be more convenient for Plaintiffs and the local witnesses who have knowledge about each Plaintiff's decision to enroll in ACN and their experiences in connection therewith.[4] Moreover, it is highly likely that some non-party witnesses will be unavailable if this case is tried in this district. For example, Defendants expect to call as a witness Jessica Howard, an ACN IBO who was involved with Plaintiff Chadwick's experience with ACN and who, like Ms. Chadwick, resides in Pennsylvania. If Ms. Howard is unwilling to voluntarily travel to New York for trial, subpoenaing her will be more difficult. It is likewise more convenient for any local witnesses to testify in their local districts instead of traveling to New York. The convenience and potential unavailability of the non-party witnesses is obviously an important factor. *Aerotel Ltd. v. Sprint Corp.,* 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000).

In addition, the locus of operative facts is spread across three different states. "Courts routinely transfer cases when the principal events occurred in another district and the principal witnesses are located there. To determine where the locus of operative facts lies, courts look to 'the site of events from which the claim arises.'" *Age Group v. Regal Logistics, Corp*., 2007 WL 2274024, at *3 (S.D.N.Y. Aug. 8, 2007) (citations and internal quotation marks omitted); *see 800-Flowers, Inc. v. Intercontinental Florist, Inc*., 860 F. Supp. 128, 134 (S.D.N.Y. 1994). Again, each Plaintiff learned about the ACN Opportunity, allegedly heard or read the alleged misstatements statements, signed up for ACN, attended meetings, and attempted to sell the ACN Opportunity in their respective home states. (ECF 331 at 181-219, 235-257, 258-280).

The Transferee Courts are also more familiar with the laws and consumer-deception statutes in each of the respective states. Plaintiffs' choice of forum in this district should be given little to no weight. The operative facts alleged by Plaintiffs have little to do with this district. Indeed, the mere fact that Plaintiffs chose to sue in this district does not mitigate against transfer as "a plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the chosen forum[.]" *Colbert,* 2017 U.S. Dist. LEXIS 141268, at *23-24 (quoting *Ivy Soc'y Sports Group, LLC v. Baloncesto Superior Nacional*, 2009 WL 2252116, at *9 (S.D.N.Y. July 28, 2009)). Moreover, "in putative class actions, a representative plaintiffs' choice of forum is given less weight than in an individual action." *Id.* at *23 (quoting *Sebrow v. Zucker, Goldberg & Ackerman, LLC*, No. 2012 WL 911552, at *4 (E.D.N.Y. Mar. 16, 2012) (*citing In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995))).

Finally, the interests of justice and reducing the burden on the federal courts supports the transfer of each of Plaintiffs' respective claims to the districts in which they reside, given the comparative trial burdens of those district courts compared to that faced by this Court.[5] "The

---

[4] Although Plaintiffs will not invoke the relative means of the parties as a basis to transfer this case to the three different states, the Court should note that Plaintiffs' deposition testimony confirms that they are persons of limited means.

[5] According to the June 2023 National Judicial Caseload Profile, the time from filing to trial in the Southern District of New York is 47 months and there are 3,461 civil cases that are more than 3 years old which is 26.7 percent of the total cases pending. By comparison, in the Eastern District of Pennsylvania the time to trial is 24.7 months, with 2,082

Hon. Lorna G. Schofield
October 24, 2023
Page 6

relative calendar conditions of the two courts involved are a factor which the court may properly consider on a motion to transfer." *Wyndham,* 398 F.2d at 619.

Based upon the foregoing, and because this Court has a greater interest in litigating cases brought by persons who reside and/or allegedly sustained harm in this district, the Court should sever each of the Plaintiffs' respective claims and transfer them to the Transferee Courts.

Thank you for your attention to this matter.

Respectfully,

/s/ Peter T. Shapiro

PETER T. SHAPIRO of
LEWIS BRISBOIS BISGAARD &
SMITH LLP

cc: All Counsel via ECF

---

pending cases, or 30 percent of the total, over three years old; in the District of Maryland the time to trial is 41.1 months, there are 853 cases more than 3 years old or 20.7 percent of the total pending cases; and in the Central District of California the time to trial is 27.8 months, with 972 cases that are more than 3 years old which is 9.2 percent of the total.  *See* https:///www.uscourts.gov/sites/default/files/data_tables/fcma_na_distprofile0630.2023.pdf.