```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

LYNN CHADWICK, et al.,

            Plaintiffs,

       v.                              18 Civ. 9936 (LGS)

THE TRUMP CORPORATION, et al.,
                                       Conference
            Defendants.

------------------------------x
                                       New York, N.Y.
                                       November 8, 2023
                                       4:30 p.m.

Before:

                 HON. LORNA G. SCHOFIELD,

                                       District Judge

                      APPEARANCES

KAPLAN HECKER & FINK LLP
     Attorneys for Plaintiffs
BY:  ROBERTA ANN KAPLAN
     JOHN CHARLES QUINN
     DAVID PATTON
     MAX CREMA

EMERY CELLI BRINCKERHOFF & ABADY, LLP
     Attorneys for Plaintiffs
BY:  ANDREW G. CELLI
     OGILVIE ANDREW FRASER WILSON

LEWIS BRISBOIS BISGAARD & SMITH LLP
     Attorneys for Defendants
BY:  PETER T. SHAPIRO
```

1              (Case called)
2              THE DEPUTY CLERK:  Counsel, please state your name for
3    the record.
4              Everyone else can be seated.
5              MS. KAPLAN:  Roberta Kaplan, your Honor, Kaplan Hecker
6    for plaintiffs.  My colleagues can introduce themselves; is
7    that okay?
8              THE COURT:  Okay.  Good afternoon.
9              MR. QUINN:  Good afternoon, your Honor.  John Quinn
10   from Kaplan Hecker for the plaintiffs.
11             MR. WILSON:  Good afternoon, your Honor.  Andrew
12   Wilson from Emery Celli for the plaintiffs.
13             MR. CELLI:  Good afternoon, your Honor.  Andrew Celli
14   from Emery Celli for plaintiffs.
15             MR. PATTON:  David Patton with Kaplan Hecker.  Good
16   afternoon, your Honor.
17             THE COURT:  Good afternoon.
18             MR. CREMA:  Good afternoon, your Honor.  Max Crema
19   from Kaplan Hecker for the plaintiffs.
20             MR. SHAPIRO:  Good afternoon.  I'm Peter Shapiro for
21   defendants.
22             THE COURT:  You are all alone?
23             MR. SHAPIRO:  Yes.  I'll try not to be too lonely.
24             THE COURT:  So this is the defendant's motion we're
25   here on.  And your motion is asking for alternative relief.  It

1    looked like you were asking for one form of relief first in
2    your motion papers, but in your most recent papers, it sounded
3    like perhaps you had reversed the order.  So why don't I hear
4    from you first.  Tell me what it is you are looking for and in
5    what order.
6            MR. SHAPIRO:  Well, your Honor, I think our primary
7    ask, so to speak, would be that the Court dismiss, in its
8    discretion, on the grounds that there are no claims left in the
9    case that are appropriately in this court.  I think our papers
10   cover the reasons for that.
11           This is not the typical case where we have a mature
12   case, as in some of the cases cited by plaintiffs in that this
13   case has been radically transformed by virtue of the denial of
14   a class certification motion, a case that potentially involved
15   thousands of claimants and potentially large sums of damages,
16   if you aggregate all of those plaintiffs' claims, whereas now
17   it's about three people who, by our estimate, their total
18   claims are for roughly $7,000 in damages.  And it's our
19   position that a case of that magnitude or lack of magnitude,
20   better put, really doesn't belong in this court and there's no
21   compelling reason for the court to retain jurisdiction over
22   this and it should be relegated to state court and, presumably,
23   that would be state courts where the three plaintiffs reside,
24   which are far away from this courthouse.
25           In the alternative, since that's in the Court's

discretion, we have talked about the desirability of severing the claims and transferring them to those different district courts.  The grounds for that are, again, present in our letter.  But just briefly, I would say that we're dealing here with really very different claims by the three plaintiffs, primarily because their own experiences in becoming IBOs of ACN and their own particular exposures to the alleged misrepresentations of defendants are very different.

The case has been about representations made, statements made over an extended period of time in very different formats; discs, events and so forth, television shows.  And most of that is going to be irrelevant because these three plaintiffs were not exposed to most of it.  And most importantly, in our view, they didn't rely on any or most of those representations.

And in light of the factors that govern a severance situation, I don't think we can say accurately each of these plaintiffs' claims is about the same transaction or occurrence, even though there are certain common facts.

I think that predominance, as in the class certification analysis, is that individualized questions predominate, rely on fact.  I think that judicial economy is best served for this court by taking this case off the Court's docket, as you have very much weightier matters waiting to be heard by your Honor and the other judges in this court.  And in

1  that same regard, we're talking about a case that's going to be
2  decided under the statutory, common law of Pennsylvania,
3  California and Maryland.  No one would doubt your Honor's
4  ability to navigate those laws, but certainly, judges in those
5  jurisdictions are more familiar with it and, in our view, best
6  suited to make adjudication on issues on those laws.
7             I would just note one factor that the plaintiffs cited
8  is that a new judge or judges, if the case were severed,
9  transferred would have to get up to speed on the case.  And I'm
10 not so sure that's correct.  We're talking about a case, here,
11 putting aside summary judgments -- which potentially could be
12 dealt with in this court before the case is transferred and
13 severed -- basically, we have three pretty simple cases --
14            THE COURT:  I'm just going to interrupt you there,
15 only because I essentially know what argument it is that you
16 are trying to make, and I agree with you.  I mean, I assume
17 this is a jury trial.  And frankly, having presided over many
18 jury trials where I didn't know anything about the facts
19 essentially before it started, I was still able to adjudicate
20 it and that's not out of the ordinary at all, so I understand
21 your point.  Thank you.
22            And I'll hear from plaintiffs now.
23            MR. SHAPIRO:  Thank you.
24            MS. KAPLAN:  Thank you, your Honor.
25            If it's okay with your Honor, I'm going to take what I

1  just heard my friend on the other side, take the arguments in
2  reverse order, if that's okay, unless there's somewhere you
3  would want to go.
4              THE COURT:  You can take them any order you want.
5              One thing I'm interested in is kind of the same
6  question I asked him.  When I read your submission, it sounded
7  like you outlined correctly the three options, and it seemed
8  that you outlined them in the order that you would prefer them,
9  meaning that what you would like to do is stay here and have a
10 trial in this court.  But that if I were determined not to have
11 a trial in this court and thought that was inappropriate for
12 the reasons that we have just heard and that were raised in the
13 papers, then what is your position?
14             It sounds like your position is that you would prefer
15 that the case be dismissed so it would be the plaintiffs'
16 option to file where they like, other than in this court,
17 meaning in state court somewhere else.  And that your last
18 choice would be for me to sever and transfer cases to three
19 different district courts.  But you tell me.
20             MS. KAPLAN:  I think, your Honor, in terms of our
21 preferences, your Honor has it exactly right.  The only thing I
22 would say about transferring it, severing and transferring it,
23 we don't think that's permissible under the law under 1404(a),
24 we just don't think it works.  These cases, the language under
25 the statute, as your Honor knows, is would have been proper at

the time the case was brought in terms of personal jurisdiction. Both Judge Gardephe, in the case we cited in, I believe it was in the Hoffman case, the Supreme Court, has made it clear that you can't consent later to personal jurisdiction, it has to be jurisdiction at the time the case was filed. In two of the jurisdictions, Mr. Trump and his counsel actually have moved to dismiss for lack of personal jurisdiction. So for those reasons, I think it doesn't work --

THE COURT: Just a question -- and this may be something I have to do some further looking into -- so what I'm understanding the defendants to say, when they said in their letter that they don't object to proceeding in those courts is that they consent to personal jurisdiction in those courts. And I don't understand the case law -- but haven't looked at it for that particular question -- to say that they can't now consent to personal jurisdiction when it's not clear whether or not there would have been a finding of personal jurisdiction in this case had it been brought in those places originally.

MS. KAPLAN: Your Honor, I think the Hoffman case, Supreme Court, 1960, believe it or not, then cited by Judge Gardephe in the more recent case are directly on point.

THE COURT: Just tell me.

MS. KAPLAN: Both of those cases say that a party cannot consent later to jurisdiction under 1404(a), that's what the language is supposed to mean, if, at the time of filing,

1   there wouldn't have been personal jurisdiction.

2              THE COURT:  How do we know there wouldn't have been
3   personal jurisdiction?

4              MS. KAPLAN:  Because they have already taken the
5   position, in at least two of states, that neither Donald Trump
6   nor the Trump Corporation are at home for any other purposes,
7   your Honor is well familiar with, for personal jurisdiction in
8   those states.

9              THE COURT:  Well, but we know that there are different
10  kinds of personal jurisdiction.  One is general jurisdiction,
11  which depends on the party being at home in the state.
12  Certainly, I don't think anybody is saying that Donald Trump or
13  his corporation are at home in those states.

14             But there's also specific jurisdiction, which has to
15  do with the context of the state, in connection with the
16  transactions that we're talking about.  And I'm not sure that
17  has ever been disputed in those states or adjudicated in those
18  states, so there's no reason to think that there wasn't
19  personal jurisdiction.

20             MS. KAPLAN:  So generally, I litigate personal
21  jurisdiction all the time in New York State courts, which is
22  actually quite liberal, I think on these facts, the fact that
23  there's a plaintiff in a state would not be enough.  All the
24  actions took place in New York, the defendaants are in New
25  York, the negotiation of the contracts with ACN were in New

1  York.  The taping of the video that was shown over and over and

2  over again was taped in New York at Trump Tower.  We have took

3  Mr. Trump's deposition on that, that is the record.

4          So even with respect to specific jurisdiction, where

5  you have to show an intent, a purpose of going into that state,

6  they were obviously marketing this to people all over the

7  place.  But there was no intent with respect to those three

8  states, at least with respect, your Honor, to the current

9  version, we're no longer in -- you put a product into commerce,

10 that's enough, that's no longer the law of specific

11 jurisdiction.  And under the current law with respect to

12 specific jurisdiction, with respect to these plaintiffs the

13 only connection is that they lived in those states and they

14 purchased this so-called investment opportunity.  It would not

15 be enough for personal jurisdiction.

16          THE COURT:  My response is twofold.  One is, it

17 depends on what the long arm statutes in those states say.  And

18 then, of course, it depends on what the reach of due process is

19 for specific jurisdiction.

20          And yes, it does depend on the parties inserting

21 themselves into that state.  But I would think that there are

22 some plaintiffs, certainly, who might make the argument that

23 Donald Trump inserted himself into those states, marketing in

24 those states and so forth.  It sounds like the issue has not

25 been adjudicated.  So I'm not asking you to concede it, but

1    leave that aside and move on to your next argument.

2              MS. KAPLAN:  And then the other problem, you have,
3    your Honor, which we are all aware of -- let me put it this
4    way -- we are not aware of any federal judge transferring a
5    case to three different jurisdictions with no independent
6    federal jurisdiction.  We can't find a case where that has
7    happened.  Because obviously, the federal judges in those
8    states, upon getting a brand new case with no independent basis
9    for federal jurisdiction, are going to dismiss the case for
10   lack of federal jurisdiction.  Why would they want to take it
11   upon themselves -- or even talking yourself about state
12   court -- why would they want to take it upon themselves to have
13   this new case with no other independent basis.

14             And then you have a real problem, your Honor, which is
15   truly unprecedented, which is we're going to have appeals both
16   on the motion to dismiss the RICO claim under federal
17   jurisdiction, of your denial of class certification --

18             THE COURT:  I thought the date passed for the time to
19   appeal on class certification.

20             MS. KAPLAN:  No.  I believe not, your Honor.  I
21   believe not.

22             THE COURT:  I thought it was 14 days from the
23   decision.  But you probably care about that date more than I
24   do.

25             MS. KAPLAN:  So the problem that you have, your Honor,

1    is that you will have three appeals in three different
2    circuits; we're looking at the Ninth, the Third and the Fourth.
3    Again, we've scoured the federal reporters, we're never aware
4    of that happening.  That's obviously kind of a crazy situation.
5    Is it determined by the first circuit to have it, is it
6    determined by the second circuit to have it.
7         THE COURT:  The circuits decide different things on
8    the same issues all the time.
9         MS. KAPLAN:  Not the same case and decision, your
10   Honor.
11        So if your goal -- which we hope it's not -- is to not
12   retain the case and try the case, then I think the far better
13   approach would be just to dismiss it now for federal
14   jurisdiction, where we can take those appeals to the Second
15   Circuit.  I really don't think we want the Ninth Circuit and
16   the Third Circuit deciding whether your RICO decision was
17   proper or not.
18        THE COURT:  Let me ask this question.
19        MS. KAPLAN:  Sure.
20        THE COURT:  If I determined that I did not think it
21   was appropriate to try that case in this court, and so we were
22   left with two options of either dismissing or severing and
23   transferring, would you withdraw any objection to my dismissal
24   if it were clear that that's what I was going to do?
25        MS. KAPLAN:  No.  Because if I do that, there's

Supreme Court precedent that says I lose my appeal on the class cert. So I cannot do that.

But if you do do that, we're at least in one circuit, which is a huge advantage, I think, for a bunch of reasons. I called lawyers all over the country to ask if anyone has ever heard of this and no one ever has.

THE COURT: Just so you know, I have done things before that no one has ever heard of.

MS. KAPLAN: I understand, your Honor. But it would deprive our clients in a very fundamental way of a right to appeal your Honor's prior decisions in an orderly fashion. And I think, under the due process clause, they're entitled to that.

So obviously, your Honor, what we think your Honor should do -- you have already signaled that -- is keep the case and try it. And the reason -- there are two reasons that we think are crucially important -- first of all, your Honor, when you look at the cases where courts tend to do -- certainly, in this district and in this circuit -- tend to dismiss cases for lack of jurisdiction at this point, they are far, far, far less developed than the record here. You know that because you made that decision in the Horton case. You said you were dismissing it because the case was relatively early.

Judge Parker, in the Kessler case actually reversed a district court, an SDNY judge, for dismissing a case precisely

1   on the grounds -- this is a 2018 decision, your Honor --

2   precisely on the grounds -- I'm going to read Judge Parker's

3   words here -- he said, "Nor does the record lend itself to an

4   understanding as to how convenience or fairness was served by

5   setting backwards the course of the case the parties had

6   vigorously litigated for two years and causing them to expend

7   who knows how much time, legal fees and distraction sorting

8   things over in state court."

9             As strong as that argument was in the Kessler case,

10  your Honor, it's a thousand degrees stronger here.  We have

11  been litigating this case since 2018.  We have had hundreds of

12  motions.  We have had two appeals to the Second Circuit taken,

13  interlocutory and come back.

14            I have to disagree, respectfully, with you and my

15  friend on the other side, it is not going to be a simple thing

16  for a state court judge to take this over and just get a trial

17  date.  First of all, they're going to have to learn the record,

18  they have to decide summary judgment.  And what do we do there,

19  send the same summary judgment papers to three different judges

20  that were all litigated according to your rules?  They could

21  say, no, I don't want these papers, do it over again under my

22  rules in whatever state court we're in.

23            For that reason, the very strong policy in this

24  district and this circuit, which I am very proud that we have

25  this policy here, is when cases have gone this far, what this

1  court and what this district should do is exercise its pendent
2  jurisdiction to give the plaintiffs their day in court.  And it
3  shouldn't matter, it really shouldn't matter, your Honor, I
4  implore you to listen to this, it shouldn't matter the size of
5  the claim.  That's really not an appropriate consideration when
6  you are under the diversity threshold anyway.  The $7,000 that
7  these plaintiffs lost is just as important to them as the
8  millions of dollars Mr. Trump talks about when you hear him
9  testify in the NYAG case every day.  And to try to make that
10 distinction, your Honor, is unjust and unfair.
11         The other reason, your Honor, I would say these
12 plaintiffs should have their day in court and, I would submit,
13 have it in this court is because, effectively speaking, by
14 transferring it or even by dismissing it without prejudice
15 right now, what you would be doing is effectively depriving
16 these plaintiffs of any day in court ever.  And there are two
17 reasons for that.
18         One, your Honor, we all are well aware of Mr. Trump's
19 litigation schedule.  He's got case after case after indictment
20 after indictment, and there is, as a realistic matter, no way
21 that these plaintiffs are going to get a trial date in any
22 court prior to your Honor's.
23         THE COURT:  I'm just curious, we set our trial date a
24 long time ago.  Just looking casually at the newspapers, it
25 looks like Mr. Trump is going to be in trial indefinitely

1  through January.  Our trial is in January.  Is that wrong?
2           MS. KAPLAN:  I'm not sure, your Honor.  It depends
3  what case they put on.  My understanding was that Ivanka Trump
4  was the NYAG's last witness.
5           MR. SHAPIRO:  I can speak to that briefly, your Honor.
6           THE COURT:  Yes.
7           MR. SHAPIRO:  What I was advised by trial counsel is
8  that it's anticipated it's going to continue through mid
9  December.  The wildcard is whether the state is going to put on
10 a rebuttal case, and they should know about that soon.  If that
11 is going to happen, they believe the case will continue into
12 January, but they just don't know that yet.
13          THE COURT:  Okay.
14          MS. KAPLAN:  The other thing I would say, your Honor,
15 as well, we're on for January 29th, and this issue came up when
16 we scheduled it in the first place.  I said, let's go before
17 the NYAG.  They said no, no, no, do it after the NYAG trial.
18 There's no facts on the ground that have changed.  And they
19 committed to that date.  And if your Honor graciously agrees to
20 our preference here, that date should stick.  If it has to move
21 a week or so, obviously, the parties can work with that.
22          So that, your Honor, is a unique consideration that
23 I'm not aware of in any of the case law on this issue.  But
24 given the policies at stake in terms of the exercise of pendent
25 jurisdiction, knowing as a practical matter that the parties

1  will not get a trial date at all -- your Honor, since I have
2  litigated these issues in the other courthouse across the
3  street multiple times now -- if Donald Trump is elected
4  president, there's no way there's going to be a trial on these
5  claims, there's no way they'll allow there to be a trial on
6  these claims, so we're talking another four years.
7          So given those extremely unique circumstances, your
8  Honor, given how badly these plaintiffs -- it may not seem like
9  a lot of money to my friend, but to them, it was a lot of
10 money -- given how they believe they were defrauded by
11 Mr. Trump's statements and given the fact because it's no
12 longer a class, because it's no longer a class, we will do this
13 fast.  You have my word as an officer of this court that we
14 will streamline this trial quickly.  We can be done with our
15 case in chief in less than two weeks.  We said two to four.
16 The class would make it much more complicated.  With three
17 individual plaintiffs like this, we can get it done very
18 quickly, and I promise you that we will.  And I'm a person who
19 keeps their word.
20         And one other thing my friend on the other side said,
21 the vast majority of this case, your Honor, yes, there's
22 differences with respect to each plaintiff, but the bulk of
23 evidence in this case is what Mr. Trump said, how he said it,
24 what he said about the so-called business opportunity that our
25 clients supposedly invested in.  That's all common evidence.

1   It's the same in every case.  It's going to be the bulk of the
2   testimony at any trial.
3            And so for all the reasons, including the fact that
4   it's crazy to have three different judges deciding it in three
5   different state courts, it should be tried in one court, your
6   Honor.  And we believe it should be tried in this court in the
7   Southern District of New York, where the defendant is at home,
8   the Trump Corp. is at home and where most of the facts relevant
9   to this case actually happened.  And I can add also for the
10  witnesses, your Honor.  All of the witnesses are here in New
11  York or New Jersey.  He mentioned one woman who was out of
12  state, she's not even on their witness list, your Honor.  Thank
13  you.
14           THE COURT:  So, Mr. Shapiro, one question for you, on
15  the issue of appeals and due process and is it appropriate or
16  fair to have three different appellate courts hear the
17  dismissal of the RICO claim, for example, what about that
18  argument?
19           MR. SHAPIRO:  Well, I certainly understand that that's
20  the unique situation.  My thought process is that potentially
21  that could be dealt with via some kind of stipulation or order
22  under which we agree that the Second Circuit would be the right
23  court to hear appeals from rulings by your Honor, because
24  that's what they usually do.  And we would potentially give up
25  any argument that appeals should be heard in three different

1    circuit courts.

2            THE COURT:  I'm not sure that the Second Circuit would
3    buy that.  Maybe they would.

4            But I mean, I'll just be frank with you.  I don't
5    think I've been hiding my cards particularly.  I don't think
6    it's appropriate for me or for a single federal court to hear
7    these very disparate state law claims, none of which even
8    includes a New York State law claim.  But the real question is
9    whether dismissal is more appropriate or severance and transfer
10   is more appropriate.

11           And the only argument that gives me pause is the one
12   about appeal.  And so what I would love, Mr. Shapiro, is if you
13   could think about it a little bit and put your response in a
14   letter.  And if I could have that letter, say, by a week's
15   time, that would be very helpful.

16           MR. SHAPIRO:  That's no problem, your Honor.

17           And it occurs to me, part of a stipulation in that
18   regard could be that the defendants would say, we don't intend
19   to argue in this circuit or anywhere else that the appeal
20   shouldn't be heard here.  Again, you're right, we have to think
21   it over first.  We'll do that and submit a letter.

22           THE COURT:  And also a stipulation requires agreement,
23   by definition.  And I'm not sure that that would necessarily be
24   forthcoming.  But to the extent that you can talk to the
25   plaintiffs and arrive at any agreement, you can tell me about

1    that.  But in any event, give me some law and react to the
2    argument about the various appeals.
3            MR. SHAPIRO:  Sure.  I think it's fair to say there
4    hasn't been a lot of agreement between the two sides thus far.
5    But Ms. Kaplan referred to me today as her friend, so I'm
6    optimistic we can potentially make some progress.
7            MS. KAPLAN:  Mr. Shapiro is absolutely my friend,
8    number one.  And number two, can we also put something in on
9    that.  As far as we are aware, this is unprecedented, so we
10   would like to talk to some more academics about what they think
11   we can do here.
12           THE COURT:  Absolutely.
13           So why don't we have simultaneous submissions a week
14   from today by letter.
15           MS. KAPLAN:  Thank you, your Honor.
16           THE COURT:  Thank you.  We're adjourned.
17           (Adjourned)