**TLG LAW**

Ryan B. Simpson
T: (704) 900-2215
E: rsimpson@tlg-law.com

November 29, 2023

**By ECF**
The Honorable Lorna G. Schofield
United States District Court for the Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, New York 10007

*Re:   McKoy, et al. v. The Trump Corp., et al., No. 18 Civ. 9936 – ACN Request to Seal*

Dear Judge Schofield:

  This firm represents non-party ACN Opportunity, LLC ("ACN") in these proceedings. On November 16, 2023, this Court ordered that ACN "may file requests to maintain under seal the documents identified in the motions for sealing at Dkt. Nos. 529, 550, and 560" [ECF No. 672] (the "November 16 Order"). In the November 16 Order, the Court references, and ACN incorporates by reference, the letters filed by prior counsel on behalf of ACN, respectively ECF No. 539, ECF No. 555, ECF No. 569, and ECF No. 583 (collectively, the "ACN Letter Designations"). For the reasons set forth below, ACN respectfully submits this request to maintain under seal the documents referenced in the ACN Letter Designations and enumerated below.

  The November 16 Order indicates that the "Plaintiffs do not take issue with Defendants' or ACN's position that the Plaintiffs' responses to Defendants' Requests for Admission" should remain under seal. *See* ECF No. 672 at 2. In short, ACN maintains that Plaintiffs' responses to Defendants' Requests for Admission should remain under seal. Thus, as discussed, *infra.*, ACN seeks to maintain the following documents and redacted portions of the respective motions, memorandums, and declarations under seal:

1. Exhibit 1 to Declaration of Matthew D. Brinckerhoff in Support of Motion to Certify Class, dated March 10, 2023 (the "Brinckerhoff Declaration") [ECF No. 533];
2. Exhibit 2 to the Brinckerhoff Declaration;
3. Exhibit 13 to the Brinckerhoff Declaration;
4. Exhibit 29 to the Brinckerhoff Declaration;
5. Exhibit 33 to the Brinckerhoff Declaration;
6. Exhibit 34 to the Brinckerhoff Declaration;

7. Exhibit 2 to David Merriman Deposition (the "Merriman Deposition");
8. Exhibit 13 to the Merriman Deposition;
9. Exhibit 15 to the Merriman Deposition;

      10. Exhibit 15A to the Merriman Deposition;
      11. Exhibit 16 to the Merriman Deposition;
      12. Exhibit 17 to the Merriman Deposition;
      13. Exhibit 19 to the Merriman Deposition;
      14. Exhibit 20 to the Merriman Deposition;
      15. Exhibit 22 to the Merriman Deposition;
      16. Exhibit 23 to the Merriman Deposition; and
      17. Exhibit 60 to the Merriman Deposition.

### A. The Merriman Deposition Exhibits Not Included In Judicial Documents Should Remain Sealed

Exhibits 2, 13, 15, 15A, 16, 17, 20, and 60 to the Merriman Deposition[1] should remain sealed because these documents contain confidential ACN materials that were not included in any judicial document, and the information contained in these documents did not bear on the Court's ruling on the Plaintiffs' Motion to Certify Class. The aforementioned documents consist of the following confidential ACN information that should remain under seal:

- Internal financial data, marketing strategies, and agreements with specific vendors that provide ACN with market insights that have been derived by ACN over time and at great expense;
  - Exhibits 2, 13, 20, and 60 to the Merriman Deposition
- Personal information and compensation information for individual independent business owners ("IBOs");
  - Exhibits 2, 15, 15A, 16, 17, and 60 to the Merriman Deposition
- Internal employment information and compensation for employees and IBOs;
  - Exhibits 2, 15, and 60 to the Merriman Deposition
- Quarterly and annual financial reporting data for ACN; and
  - Exhibit 2, 20, and 60 to the Merriman Deposition
- Internal meeting minutes and agenda for board of directors' meetings that contain sensitive financial data and marketing strategies.
  - Exhibits 2 and 60 to the Merriman Deposition

As this Court discussed in the November 16 Order, a three-part inquiry determines whether to seal a document [ECF No. 672].[2] The first question is whether the document is a judicial document subject to the presumed right of public access, meaning that the document is relevant to the performance of the judicial function and useful in the judicial process [ECF No. 672]. The second step, if the presumption attaches, is to determine the weight of the presumption by assessing the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts [ECF No. 672]. The third step is to balance against the presumption any "competing considerations" such as "impairing law enforcement, judicial efficiency" and "the privacy interests of those resisting disclosure" [ECF No.

---

[1] Enumerated above as Nos. 7, 8, 9, 10, 11, 12, 14, and 17.
[2] Internal citations and certain quotation marks omitted for clarity.

672]. In weighing the presumption against competing considerations, a court can seal documents only if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest [ECF No. 672].

To determine whether the qualified First Amendment right of access applies to written documents submitted to a court, the Second Circuit uses two methods. *Tropical Sails Corp. v. Yext, Inc.*, No. 14 CIV. 7582, 2016 WL 1451548 at *2 (S.D.N.Y. Apr. 12, 2016). One method, the so-called "experience and logic" approach, requires the court to determine "whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.'" *Id*. (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) *and* (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). The other method requires the court to determine the degree that the judicial documents derived from or are a necessary corollary of the capacity to attend relevant proceedings." *Id*. (internal citations omitted). This determination tracks the first step of the *Lugosch* balancing test. *Id*. Under the experience and logic method, the common law presumption of access to judicial documents generally supports a finding that the documents were historically open to the public. *Id*. (internal citations omitted). Similarly, under the second method, when the parties submit judicial documents in connection with public judicial proceedings that themselves implicate the right of access, a qualified First Amendment right of access extends to such documents. *Id*. (internal citations omitted).

Under either approach used by the Second Circuit, ACN's confidential information contained within these documents justifies a finding that the privacy interests of ACN, its IBOs, its employees, and its vendors outweigh public access to the confidential information and should not be designated as judicial documents.

Even if this Court were to determine that these documents are judicial documents, "a presumption of access applies to all judicial documents, but the 'weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *United States v. Amodeo*, 71 F.3d at 1048; *see also Olson v. Major League Baseball*, 29 F.4th 59, 89 (2d Cir. 2022) (stating that the presumption of public access exists along a continuum. The strongest presumption attaches where the documents determine litigants' substantive rights… and is weaker where the documents play only a negligible role in the performance of Article III duties) (internal citations omitted).

The information ACN seeks to redact falls within the established exceptions to the qualified right of public access to judicial documents that attaches under the common law and the First Amendment. The role of the material at issue and the resultant value of such information was not used to determine the underlying motion to certify class in this Court's October 17, 2023 Order (the "October 17 Order"). The October 17 Order concerned whether common issues predominate over individual issues as required for Plaintiffs' motion for class certification [ECF No. 640 at 5]. In particular, the Court analyzed whether Donald J. Trump's alleged misrepresentations about ACN were sufficient to maintain the Plaintiffs' claims [ECF No. 640 at 6], whether the Plaintiffs and putative class members could have relied solely on Donald J. Trump's alleged misrepresentations [ECF No. 640 at 6-7], and whether the Plaintiffs and putative class members

believed Donald J. Trump's alleged misrepresentations [ECF No. 640 at 9]. Most importantly, this Court did not refer to any of the information ACN seeks to remain under seal in the October 17 Order denying the Plaintiffs motion to certify a putative class. *Lugosch*, 435 F.3d at 121 (considering briefly what might fall into the middle of the continuum, the Second Circuit noted that a D.C. District Court judge has pointed out, for example, that where a district court denied the summary judgment motion, essentially postponing a final determination of substantive legal rights, the public interest in access is not as pressing) (internal citations omitted).

The limited information that ACN seeks to redact concerns confidential financial data, financial strategies, marketing strategies, compilations of IBO personal information and compensation, and agreements with specific vendors. The information under seal constitutes "trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like" and is exactly the type of information that is commonly sealed by courts. *See Hypnotic Hats, Ltd. v. Wintermantel Enterprises, LLC*, 335 F. Supp. 3d 566, 600 (S.D.N.Y. 2018) (holding that defendant's customer list would remain under seal and customer names would remain redacted). For example, in *AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. 117CV00598BKSCFH, 2021 WL 776701 (N.D.N.Y. Mar. 1, 2021), the court approved redaction of pricing, sales and revenue figures, the proposed purchase price and pricing structure of an attempted past acquisition, and sales and marketing strategies. *Id*. at *6-7. The court also allowed redaction of portions of expert reports that referred to such information. *Id*. at *8.

Moreover, ACN will be substantially harmed if the information it seeks to redact becomes public. Confidential research and development information, internal financial data, financial strategies, marketing strategies, vendor rates, and the terms of industry specific vendor agreements are closely guarded and disclosure of the same would place ACN at a significant competitive disadvantage in future negotiations. ACN is also bound by confidentiality obligations to its partner vendors in the industry, and ACN does not have authority to waive those obligations. If ACN's competitors have access to the confidential research and development information, financial strategies, marketing strategies, and pricing rates and terms, the competitors will gain an unfair advantage in developing their own strategies and negotiating pricing rates and terms in future agreements with vendors and potential business partners.

Lastly, ACN's request to seal these documents is narrowly tailored in that ACN has specifically selected documents that only contain confidential research and development information, internal financial data, financial strategies, marketing strategies, compilations of IBO personal information and compensation, and agreements with specific vendors.

ACN has made "a particular and specific demonstration of fact showing that disclosure of the sealed information would result in an injury sufficiently serious to warrant protection." *Tropical Sails Corp.*, 2016 WL 1451548 at *3. Thus, the secrecy of ACN's confidential financial data, financial strategies, marketing strategies, compilations of IBO personal information and compensation, and agreements with specific vendors contained within Exhibits 2, 13, 15, 15A, 16, 17, 20, and 60 to the Merriman Deposition should remain under seal because ACN's privacy interests are substantial and weigh against the presumption of access.

### B. The Brinckerhoff Declaration Exhibits and Merriman Deposition Exhibits Included In Judicial Documents Should Remain Sealed

The above enumerated Exhibits to the Brinckerhoff Declaration (as currently redacted) and Exhibits 19, 22, and 23 to the Merriman Deposition[3] should remain sealed because these documents did not bear on the Court's ruling on the Plaintiffs' Motion to Certify Class, and sealing these narrowly tailored documents is necessary to preserve the higher values of ACN, its IBOs, its employees, and its vendors. For purposes of this request, ACN will assume that the Exhibits in the Brinckerhoff Declaration and Exhibits 19, 22, and 23 to the Merriman Deposition are judicial documents. These documents consist of the following confidential ACN information:

- Internal financial data with specific vendors and customers that provide ACN with marketing strategies that have been derived by ACN over time and at great expense;
    - Exhibits 1, 13, 29, 33, and 34 to the Brinckerhoff Declaration and Exhibits 19, 22, and 23 to the Merriman Deposition
- Compensation information for individual independent business owners;
    - Exhibits 1, 2, 29, and 33 to the Brinckerhoff Declaration
- Internal employment information and compensation for employees and IBOs;
    - Exhibits 13, 29, 33, and 34 to the Brinckerhoff Declaration and Exhibit 23 to the Merriman Deposition
- Quarterly and annual financial reporting data for ACN, a private company;
    - Exhibits 29 and 33 to the Brinckerhoff Declaration and Exhibit 19 to the Merriman Deposition
- Internal meeting minutes and agenda for board of directors' meetings that contain sensitive financial and marketing strategies;
    - Exhibits 33 and 34 to the Brinckerhoff Declaration
- Sensitive competitive pricing information based on insights that have been derived by ACN over time and at great expense; and
    - Exhibits 1, 29, 33, and 34 to the Brinckerhoff Declaration and Exhibits 22 and 23 to the Merriman Deposition
- IBOs' sensitive personal information pertaining to individual IBOs' status, company involvement, productivity, and compensation that would be beneficial to competitor companies.
    - Exhibits 2, 29, 33 to the Brinckerhoff Declaration

As indicated above, the first question for the Court is whether the document is a judicial document subject to the presumed right of public access, meaning that the document is relevant to the performance of the judicial function and useful in the judicial process [ECF No. 672]. "A presumption of access applies to all judicial documents, but 'the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *United States v. Amodeo*, 71 F.3d at 1048. If a qualified First Amendment right of access exists, the Court then considers whether the proponent of sealing can demonstrate that "higher values" outweigh that right. *Lugosch*, 435 F.3d at 124. This determination tracks the third

---

[3] Enumerated above as Nos. 1 – 6, 13, 15, and 16.

step of the *Lugosch* balancing test's consideration of "countervailing factors." The First Amendment framework, however, is "more stringent" and "sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve the higher values and only if the sealing is narrowly tailored to achieve that aim." *Id*.

The documents ACN seeks to remain sealed were submitted in support or in opposition to a motion for class certification. The role of the material at issue and the resultant value of such information was not used to determine the underlying motion to certify class in the October 17 Order. The October 17 Order concerned whether common issues predominate over individual issues as required for class certification [ECF No. 640 at 5]. In particular, the Court analyzed whether Donald J. Trump's alleged misrepresentations about ACN were sufficient to maintain the Plaintiffs' claims [ECF No. 640 at 6], whether the Plaintiffs and putative class members could have relied solely on Donald J. Trump's alleged misrepresentations [ECF No. 640 at 6-7], and whether the Plaintiffs and putative class members believed Donald J. Trump's alleged misrepresentations [ECF No. 640 at 9]. Most importantly, this Court did not refer to any of the information ACN seeks to remain under seal in the October 17 Order denying the Plaintiffs motion to certify a putative class. *Lugosch*, 435 F.3d at 121 (considering briefly what might fall into the middle of the continuum, the Second Circuit noted that a D.C. District Court judge has pointed out, for example, that where a district court denied the summary judgment motion, essentially postponing a final determination of substantive legal rights, the public interest in access is not as pressing) (internal citations omitted).

The limited information that ACN seeks to redact concerns confidential research and development information, internal financial data, financial strategies, marketing strategies, compilations of IBO personal information and compensation, and agreements with specific vendors. The information under seal constitutes "trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like" and is exactly the type of information that is commonly sealed by courts. *See Hypnotic Hats, Ltd.*, 335 F. Supp. 3d at 600. In addition, this Court has held that a "legitimate privacy interest certainly exists in the financial documents of a privately held company." *Tropical Sails Corp.*, 2016 WL 1451548 at *4; *see United States v. Amodeo*, 71 F.3d at 1051 ("Financial records of a wholly owned business ... will weigh more heavily against access than conduct affecting a substantial portion of the public."); *accord Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485 (S.D.N.Y. 2015) (permitting redactions of confidential business information for a closed business). In addition, the publication of individual IBOs' personal information and compensation would greatly exceed the legitimate privacy interest held by those non-party IBOs, especially when ACN is also a non-party. *See United States v. Amodeo*, 71 F.3d at 1050–51 (stating that the privacy interests of innocent third parties should weigh heavily in a court's balancing equation and are a venerable common law exception to the presumption of access) (internal citations omitted); *see also Lown v. Salvation Army, Inc.*, No. 04-cv-01562 (SHS), 2012 WL 4888534, at *2 (S.D.N.Y. Oct. 12, 2012) (ordering redaction of third parties' salary information); *accord* Dodona I, 119 F.Supp.3d at 156–57; *Saks Inc. v. Attachmate Corp.*, No. 14-cv-4902 (CM), 2015 WL 1841136, at *19 (S.D.N.Y. Apr. 17, 2015).

ACN will be substantially harmed if the information it seeks to redact becomes public. Confidential research and development information, internal financial data, financial strategies,

marketing strategies, vendor rates, and the terms of industry specific vendor agreements are closely guarded and disclosure of the same would place ACN at a significant competitive disadvantage in future negotiations. ACN is also bound by confidentiality obligations to its partner vendors in the industry, and ACN does not have authority to waive those obligations. If ACN's competitors have access to the confidential research and development information, financial strategies, marketing strategies, and pricing rates and terms, the competitors will gain an unfair advantage in developing their own strategies and negotiating pricing rates and terms in future agreements.

      Lastly, ACN's request to seal these documents is narrowly tailored in that ACN has specifically selected documents that only contain confidential research and development information, internal financial data, financial strategies, marketing strategies, compilations of IBO personal information and compensation, and agreements with specific vendors. Moreover, ACN has negotiated with counsel for the parties to unseal portions of sealed documents to the extent that the non-confidential information is available to the public with narrowly tailored redactions of ACN's confidential information. Thus, the secrecy of ACN's confidential research and development information, internal financial data, financial strategies, marketing strategies, compilations of IBO personal information and compensation, and agreements with specific vendors contained within the Exhibits to the Brinckerhoff Declaration (as currently redacted) and Exhibits 19, 22, and 23 to the Merriman Deposition should remain under seal because ACN's privacy interests are substantial and weigh against the presumption of access.

      Based on the foregoing, and because ACN has carried its burden of demonstrating that closure of the above referenced documents is essential to preserve higher values and is narrowly tailored to serve that interest, this Court should maintain said documents under seal.

Sincerely,

/s/ Ryan B. Simpson
Ryan B. Simpson

Cc: All Counsel via ECF